ADR

1  Ben F. Pierce Gore (SBN 128515)
   PRATT & ASSOCIATES
2  1901 S. Bascom Avenue, Suite 350
   Campbell, CA 95008
3  Telephone: (408) 429-6506
   Fax: (408) 369-0752
4  pgore@prattattorneys.com

5  *Attorneys for Plaintiff*

**FILED**

E-FILING  MAY 14 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION                    **HRL**

12

13  KATIE KANE, individually and on behalf       Case No.  **CV 12-02425**
    of all others similarly situated,
14                                                **CLASS ACTION AND REPRESENTATIVE**
                     Plaintiff,                   **ACTION**
15
    v.                                            **COMPLAINT FOR DAMAGES,**
16                                                **EQUITABLE AND INJUNCTIVE RELIEF**
    CHOBANI, INC., also formerly known
17  as AGRO-FARMA, INC.,                          **JURY TRIAL DEMANDED**

18                   Defendant.

19

20        Plaintiff, through her undersigned attorneys, brings this lawsuit against Defendant

21  Chobani, Inc., also formerly known as Agro-Farma, Inc., (hereafter, "Chobani" or "Defendant")

22  as to her own acts, upon personal knowledge, and as to all other matters upon information and

23  belief. In order to remedy the harm arising from Defendant's illegal conduct, which has resulted

24  in unjust profits, Plaintiff brings this action on behalf of a class of California consumers who,

25  within the last four years, purchased Chobani's Greek Yogurt product either : (1) labeled with the

26  ingredient "evaporated cane juice;" or (2) labeled "All Natural Ingredients" or "Only Natural

27  Ingredients," but which contain artificial ingredients, flavorings, coloring, and/or chemical

28

*Class Action Complaint*

preserentimes (collectively, products in categories No. 1 and 2 are referred to herein as "Misbranded Food Products").

## INTRODUCTION

1.    Every day, millions of Americans purchase and consume packaged foods. Identical federal and California laws require truthful, accurate information on the labels of packaged foods. This case is about companies that flout those laws. The law is clear: misbranded food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of its purchase price.

2.    Chobani is a New York Corporation that conducts its yogurt business throughout the United States and internationally.  Chobani has also done business in the past as Agro-Farma Inc., before changing that name to Chobani, Inc. in January, 2012.  It is estimated that Chobani currently is one of the nation's top three manufacturers of yogurt and has approximately 20% of the yogurt market in the United States and up to 60% of the Greek yogurt market.  Chobani Greek Yogurt products are sold at a premium price.

3.    Chobani's expected sales revenues for 2012 from the sale of its yogurt products are stated to be on track to hit $1 billion.

4.    As part of its overall marketing strategy, Chobani has recognized the desire of many of its consumers to eat a healthier diet comprised of natural foods and foods that lack added sugar.  Chobani recognizes that natural and health claims drive sales, and, consequently, actively promotes the naturalness and health benefits of its products.

5.    For example, Chobani makes the following representations regarding its yogurt:

- "This unique straining process is what makes Chobani "Greek" and full of flavor and health benefits:  Only natural ingredients. No preservatives. No artificial flavors."

- "Free from synthetic growth hormones."

- "Includes ...3 probiotics."

- "Twice the protein of regular yogurts."

- "A good source of bone building calcium."
- "We. . . lightly sweeten our real fruit chunks with evaporated cane juice, a natural type of unrefined sweetener."

6.      Defendant's website, www.Chobani.com, is also largely dedicated to promoting the naturalness and nutritional and health aspects of it yogurt products.

7.      Defendant actively promote the purported naturalness and health benefits of its Misbranded Food Products, notwithstanding the fact that such promotion violates California and federal law.

8.      For example, the Nutrition Facts for Chobani's Greek Yogurt, Pomegranate flavor, state that it has 19 grams of sugar, but the ingredient section fails to list "sugar" or "dried cane syrup" as an ingredient. Instead, the label lists "Evaporated Cane Juice" as an ingredient, despite the fact that the FDA has specifically warned companies not to use this term because 1) it is "false and misleading;" 2) in violation of a number of labeling regulations designed to ensure that manufacturers label their products with the common and usual names of the ingredients they use and accurately describe the ingredients they utilize; and 3) the ingredient in question is not a juice.

9.      In addition, the FDA's Standard of Identity for yogurt (21 CFR § 131.200) prohibits the inclusion of any nutritive carbohydrate sweeteners not listed in the standard of identity. Evaporated Cane Juice is not included on the list of allowed sweeteners which is limited to:

> sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); brown sugar; refiner's sirup; molasses (other than blackstrap); high fructose corn sirup; fructose; fructose sirup; maltose; maltose sirup, dried maltose sirup; malt extract, dried malt extract; malt sirup, dried malt sirup; honey; maple sugar; or any of the sweeteners listed in part 168 of this chapter [21], except table sirup.

10.      In other marketing literature, Chobani represents that "Evaporated Cane Juice" Is "a natural type of unrefined sweetener." Chobani fails to disclose the fact that that "Evaporated Cane Juice" is, in its ordinary and commonly understood terms, "sugar," and/or "dried cane syrup,"

11.    For example, the list of ingredients for Chobani's Greek Yogurt, Pomegranate flavor is as follows:

| Nutrition Facts | Amount Per Serving | %Daily Value* | Amount Per Serving | %Daily Value* |
|---|---|---|---|---|
| Serving Size: 6oz (170g) | **Total Fat** 0g | **0%** | **Total Carbohydrate** 21g | **7%** |
| Servings Per Container 1 | Saturated Fat 0g | **0%** | Dietary Fiber 0g | **0%** |
| | *Trans* Fat 0g | | Sugars 19g | |
| Calories 140 | **Cholesterol** 0mg | **0%** | **Protein** 14g | **28%** |
| Calories from Fat 0 | **Sodium** 75mg | **3%** | | |
| *Percent Daily Values (DV) are based on a 2,000 calorie diet. | Vitamin A 0% • Vitamin C 0%  •  Calcium 15% • Iron 2% | | | |

INGREDIENTS: NONFAT YOGURT (CULTURED PASTEURIZED NONFAT MILK. LIVE AND ACTIVE CULTURES: S. THERMOPHILUS, L. BULGARICUS, L. ACIDOPHILUS, BIFIDUS AND L. CASEI). FRUIT ON THE BOTTOM (EVAPORATED CANE JUICE, POMEGRANATE SEEDS, POMEGRANATE JUICE CONCENTRATE, PECTIN, NATURAL FLAVOR, LOCUST BEAN GUM, FRUIT AND VEGETABLE JUICE CONCENTRATE [FOR COLOR]).

12.    Chobani currently has at least 18 different flavors of its Greek Yogurt which list "Evaporated Cane Juice" as an ingredient, all of which are misbranded for reasons stated herein. These are:

    a)    Apple Cinnamon

    b)    Blood Orange

    c)    Black Cherry

    d)    Lemon

    e)    Blueberry

    f)    Raspberry

    g)    Peach

    h)    Pomegranate

    i)    Strawberry

    j)    Vanilla

    k)    Passion Fruit

    l)    Mango

| | m) | Pineapple |
| | n) | Strawberry Banana |
| | o) | Vanilla Chocolate Chunk |
| | p) | Orange Vanilla |
| | q) | Very Berry (Berry Nana) |
| | r) | Honey-Nana |

13.     If a manufacturer is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled.  As described more fully below, Defendant has made, and continues to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.  These laws recognize that reasonable consumers are likely to choose products claiming to be natural or have a health or nutritional benefit over otherwise similar food products that do not claim such properties or benefits or that disclose certain ingredients.   More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition.

14.     Identical federal and California laws regulate the content of labels on packaged food.  The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, et seq. (the "Sherman Law").  Under FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

15.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.   If any one representation in the labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking

and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

16.     In promoting the naturalness and health benefits of its Misbranded Food Products, Defendant claims to understand the importance of communicating responsibly about its products. Nevertheless, Defendant has made, and continues to make, false and deceptive claims on its Misbranded Food Products in violation of federal and California laws that govern the types of representations that can be made on food labels.     In particular, in making its unlawful "Evaporated Cane Juice" claims on its Misbranded Food Products, Defendant has violated labeling regulations mandated by federal and California law by listing sugar and/or sugar cane syrups As "Evaporated Cane Juice." According to the FDA, the term "Evaporated Cane Juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR § 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup." According to the FDA, sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "Evaporated Cane Juice." The FDA considers such representations to be "false and misleading" under section 403(a)(1) of the FDCA (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR § 102.5.

17.     Defendant has also made unlawful "all natural ingredients" and/or "only natural ingredients" claims on its Misbranded Food Products, in that Defendant has violated labeling regulations mandated by federal and California law which forbid the use of such labeling if the product contains artificial ingredients, flavorings, coloring, and/or chemical preservatives.

18.     Defendant states the following on its website regarding its use of the term "natural" on its label: "Although the U. S. Food and Drug Administration (FDA) has yet to release a formal definition for the term "natural" to us, it recognizes that a product is free of processed ingredients along with artificial preservatives, flavors, and sweeteners.  And that is

exactly what Chobani is." Defendant excludes artificial colors from its understanding of the definition of "natural" which is false and misleading particularly, when the Defendant mislabels its unnaturally colored products so as to represent them as all natural.

19. Defendant's violations of law include the illegal advertising, marketing, distribution, delivery and sale of Defendant's Misbranded Food Products to consumers in California and throughout the United States.

20. Defendant has made, and continues to make, unlawful ingredient and all natural claims on food labels of its Misbranded Food Products that are prohibited by federal and California law and which render these products misbranded. Under federal and California law, Defendant's Misbranded Food Products cannot legally be manufactured, advertised, distributed, held or sold. Defendant's false and misleading labeling practices stem from its global marketing strategy. Thus, the violations and misrepresentations are similar across product labels and product lines.

## PARTIES

21. Plaintiff, KATIE KANE is a resident of Los Gatos, California who purchased various flavors of Chobani's Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the "Class Period").

22. Chobani, Inc. is a New York corporation doing business in the State of California and throughout the United States of America. It can be served with process by Service on its registered agent in California: Paracorp Incorporated, 2804 Gateway Oaks Drive, Suite 200, Sacramento, California

23. Defendant is a leading producer of retail yogurt products, including the Misbranded Food Products. Defendant sells its food products to consumers through grocery and other retail stores throughout California and the United States.

## JURISDICTION AND VENUE

24. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class;

1   (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims

2   of the proposed class members exceed $5,000,000 in the aggregate.

3          25.    The Court has jurisdiction over the federal claim alleged herein pursuant to 28

4   U.S.C. § 1331, because it arises under the laws of the United States.

5          26.    The Court has jurisdiction over the California claims alleged herein pursuant to 28

6   U.S.C. § 1367, because they form part of the same case or controversy under Article III of the

7   United States Constitution.

8          27.    Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

9   28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

10   between citizens of different states.

11          28.    The Court has personal jurisdiction over Defendant because a substantial portion

12   of the wrongdoing alleged in this Complaint occurred in California, Defendant is authorized to

13   do business in California, has sufficient minimum contacts with California, and otherwise

14   intentionally avails itself of the markets in California and the United States through the

15   promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by

16   this Court permissible under traditional notions of fair play and substantial justice.

17          29.    Because a substantial part of the events or omissions giving rise to these claims

18   occurred in this District and because the Court has personal jurisdiction over Defendant, venue is

19   proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

20                             **FACTUAL ALLEGATIONS**

21   **A.**    **Identical California And Federal Laws Regulate Food Labeling**

22          30.    Food manufacturers are required to comply with identical federal and state laws

23   and regulations that govern the labeling of food products. First and foremost among these is the

24   FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

25          31.    Pursuant to the Sherman Law, California has expressly adopted the federal

26   labeling requirements as its own and indicated that "[a]ll food labeling regulations and any

27   amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993,

28

1 | or adopted on or after that date shall be the food regulations of this state." California Health &

2 | Safety Code § 110100.

3 |        32.     In addition to its blanket adoption of federal labeling requirements, California has

4 | also enacted a number of laws and regulations that adopt and incorporate specific enumerated

5 | federal food laws and regulations. For example, food products are misbranded under California

6 | Health & Safety Code § 110660 if its labeling is false and misleading in one or more particulars;

7 | are misbranded under California Health & Safety Code § 110665 if its labeling fails to conform to

8 | the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted

9 | thereto; are misbranded under California Health & Safety Code § 110670 if its labeling fails to

10 | conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. §

11 | 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code §

12 | 110705 if words, statements and other information required by the Sherman Law to appear on its

13 | labeling are either missing or not sufficiently conspicuous; are misbranded under California

14 | Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to

15 | bear labeling that adequately informs consumers of its value for that use; and are misbranded

16 | under California Health & Safety Code § 110740 if they contain artificial flavoring, artificial

17 | coloring and chemical preservatives but fail to adequately disclose that fact on its labeling.

18 |     **B.**     **FDA Enforcement History**

19 |        33.     In recent years the FDA has become increasingly concerned that food

20 | manufacturers were disregarding food labeling regulations. To address this concern, the FDA

21 | elected to take steps to inform the food industry of its concerns and to place the industry on notice

22 | that food labeling compliance was an area of enforcement priority.

23 |        34.     In October 2009, the FDA issued guidance to the food industry that stated in part:

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading. The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

… Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

35.     The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

36. Defendants had actual knowledge of the 2009 FOP Guidance.

37. Despite the issuance of the 2009 FOP Guidance, Defendants did not remove the unlawful and misleading food labeling claims from their Misbranded Food Products.

38. On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" ("Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part, the letter stated:

> In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.
>
> With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections. ...
>
> As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.
>
> At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.
>
> To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal

proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices.

....

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

39.   Defendants continued to utilize unlawful food labeling claims despite the express guidance of the FDA in the Open Letter.

40.   At the same time it issued its Open Letter, the FDA issued a number of warning letters to companies whose products were misbranded as result of their unlawful labels.

41.   In its 2010 Open Letter to industry the FDA stated that the agency not only expected companies that received warning letters to correct their labeling practices but also anticipated that other firms would examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary. Defendant did not change the labels on its Misbranded Food Products in response to these warning letters.

42.   In addition to its general guidance about unlawful labeling practices the FDA has issued specific guidance about the unlawful practices at issue here. For example, in October of

2009, the FDA issued Guidance for Industry: Ingredients Declared as Evaporated Cane Juice, which advised industry and that the term Evaporated Cane Juice was unlawful.

43.   In addition to its guidance to industry in general, the FDA has repeatedly sent warning letters to specific companies regarding specific violations such as the ones at issue in this case.

44.   In particular the FDA has issued warning letters to at least a half-dozen companies for utilizing the unlawful term evaporated cane juice and for making natural claim about products that contained unnatural colors or ingredients.

45.   Despite the numerous FDA warning letters and the issuance of the 2009 FDA Guidance on Evaporated Cane Juice and the 2010 Open Letter, Defendant did not remove the unlawful and misleading food labeling ingredients from its Misbranded Food Products.

46.   Defendant also continued to ignore the 2009 FOP Guidance which detailed the FDA's guidance on how to make food labeling claims. Defendant ignored this guidance as well and continued to utilize unlawful claims on the labels of its Misbranded Food Products.  As such, the Defendant's Misbranded Food Products continue to run afoul of 2009 FOP Guidance as well as federal and California law.

47.   Despite the FDA's numerous warnings to industry, Defendant has continued to sell products bearing unlawful food labeling claims without meeting the requirements to make them.

48.   Plaintiff did not know, and had no reason to know, that the Defendant's Misbranded Food Products were misbranded and bore food labeling claims despite failing to meet the requirements to make those food labeling claims.

C.   **Defendant's Unlawful and Misleading Evaporated Cane Juice Claims**

1.   **The Standard Of Identity For Yogurt Does Not Permit The Use Of Evaporated Cane Juice As An Ingredient**

49.   As a matter of law it is unlawful to use Evaporated Cane Juice as an ingredient in yogurt.

50.     The FDA's Standard of Identity for yogurt (21 CFR § 131.200) prohibits the inclusion of any nutritive carbohydrate sweeteners not listed in the standard of identity. Evaporated Cane Juice is not included on the list of allowed sweeteners which is limited to:

> "sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); brown sugar; refiner's sirup; molasses (other than blackstrap); high fructose corn sirup; fructose; fructose sirup; maltose; maltose sirup, dried maltose sirup; malt extract, dried malt extract; malt sirup, dried malt sirup; honey; maple sugar; or any of the sweeteners listed in part 168 of this chapter [21], except table sirup."

51.     As discussed below, Evaporated Cane Juice is an unlawful term as it is merely a false and misleading name for another food or ingredient that has a common or usual name, namely sugar or dried cane syrup.   However, to the extent that Evaporated Cane Juice is considered to be the common or usual  name of a type of sweetener, that sweetener is not authorized for use in yogurt and if included in violation of the prohibition to do so, its presence would preclude the product it is added to from being called or sold as yogurt.

## 2.     Evaporated Cane Juice Is An Unlawful Term Prohibited From Use On A Product Label Or In Its Ingredient List

52.     21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California, prohibit manufacturers from referring to foods by anything other than their common and usual names. 21 C.F.R. § 101.4, which has been adopted by California, prohibits manufacturers from referring to ingredients by anything other than their common and usual names.  Defendant has violated these provisions by failing to use the common or usual name for ingredients mandated by law, or because the products lacked the ingredient entirely. In particular, the Defendant used the unlawful term Evaporated Cane Juice on it products in violation of numerous labeling regulations designed to protect consumers from misleading labeling practices. The Defendant's practices also violated express FDA policies.

53.     For example, Defendant violated the FDA's express policy with respect to the listing of certain ingredients such as dried sugar cane syrup.  As stated by the FDA, "FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as 'evaporated cane juice' because that term falsely suggests that the sweeteners are juice."

54.     The FDA "considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1) because they fail to reveal the basic nature of the food and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups) as required by 21 U.S.C. 102.5."

55.     In October of 2009, the FDA issued Guidance for Industry: Ingredients Declared as Evaporated Cane Juice, which advised industry and that:

"...the term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice...

"Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." ...

"As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name . . . ." The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))...

"Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)...

"The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."...

"Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should

not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

56.     Despite the issuance of the 2009 FDA Guidance, Defendant did not remove the unlawful and misleading food labeling ingredients from its Misbranded Food Products.

57.     Defendant often list ingredients with unlawful and misleading names.  The Nutrition Facts label of the Misbranded Food Products list "evaporated cane juice" as an ingredient.  According to the FDA, "'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup."  The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'"

58.     Various FDA warning letters have made it clear that the use of the term evaporated cane juice is unlawful because the term does not represent the common or usual name of a food or ingredient.  These warning letters indicate that foods that bear labels that contain the term evaporated cane juice are misbranded.

59.     Such products mislead consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label.

60.     Defendant's false, unlawful and misleading ingredient listings render products misbranded under federal and California law.  Misbranded products cannot be legally sold and are legally worthless.  Plaintiff and the class paid a premium price for the Misbranded Food Products.

61.     Defendant has also made the same illegal claims on its websites and advertising in violation of federal and California law.

**D.     Defendant Makes Unlawful "All Natural Ingredients" and/or "Only Natural Ingredients" Claims**

62.     Section 403(a) of the FDCA and California's Sherman Law prohibit food manufacturers from using labels that contain the terms "natural" and "all natural" when they contain artificial ingredients and flavorings, artificial coloring and chemical preservatives.

63.     For example, 21 C.F.R. § 70.3(f) makes clear that "where a food substance such as beet juice is deliberately used as a color, as in pink lemonade, it is a color additive." Similarly,

any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources. Further, the FDA distinguishes between natural and artificial flavors in 21 C.F.R. § 101.22.

64.     The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.

65.     The FDA has sent out numerous warning letters concerning this issue. Defendant is aware of these FDA warning letters.

66.     In its rule-making and warning letters to manufacturers, the FDA has repeatedly stated its policy to restrict the use of the term "natural" in connection with added color, synthetic substances and flavors as provided in 21 C.F.R. § 101.22.

67.     The FDA considers use of the term "natural" on a food label to be truthful and non-misleading when "nothing artificial or synthetic...has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* 58 FR 2302, 2407, January 6, 1993.

68.     Any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources. Further, the FDA distinguishes between natural and artificial flavors in 21 C.F.R. § 101.22.

69.     Defendant's "all natural" and "only natural" labeling practices violate FDA Compliance Guide CPG Sec. 587.100, which states: [t]he use of the words "food color added," "natural color," or similar words containing the term "food" or "natural" may be erroneously interpreted to mean the color is a naturally occurring constituent in the food. Since all added colors result in an artificially colored food, we would object to the declaration of any added color as "food" or "natural."Likewise, California Health & Safety Code § 110740 prohibits the use of artificial flavoring, artificial coloring and chemical preservatives unless those ingredients are adequately disclosed on the labeling.

70. Defendant has unlawfully labeled a number of its food products as being "all natural" or "only natural" when they actually contain artificial ingredients and flavorings, artificial coloring and chemical preservatives.

71. For example, a number of Chobani's Greek Yogurt flavors are unlawfully labeled as "all natural" and/or "only natural" despite being artificially colored and/or containing unnatural ingredients including, by way of example, the pomegranate flavor which artificially colors the yogurt product with "fruit or vegetable juice concentrate."

72. Defendant has unlawfully labeled a number of its food products as being "All Natural ingredients" and/or "Only natural ingredients" when they actually contain artificial ingredients and flavorings, artificial coloring and/or chemical preservatives. These products include the Chobani Greek Yogurt products listed above.

73. Defendant has also made the same illegal claims on its websites and advertising in violation of federal and California law.

74. A reasonable consumer would expect that when Defendant labels its products as "All Natural Ingredients," and/or "Only Natural Ingredients" the product's ingredients are "natural" as defined by the federal government and its agencies. A reasonable consumer would also expect that when Defendant labels its products as "All Natural and "Only Natural" the product ingredients are "natural" under the common use of that word. A reasonable consumer would understand that "All Natural Ingredients" and/or "Only Natural Ingredients" products do not contain synthetic, artificial, or excessively processed ingredients.

75. Consumers are thus misled into purchasing Defendant's products with synthetic or unnatural ingredients that are not "All Natural Ingredients" and/or "Only Natural Ingredients" as falsely represented on its labeling. Defendant's products in this respect are misbranded under federal and California law. Misbranded products cannot be legally sold and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

**E.   Defendant has Violated California Law**

76. Defendant has violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements that include statements on

products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

77.     Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

78.     Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

79.     Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

80.     Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented for special dietary uses, and its labels fail to bear such information concerning its vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

81.     Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

82.     Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

**F.     Plaintiff Purchased Defendant's Misbranded Food Products**

83.     Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

84.     Plaintiff purchased Defendant's Misbranded Food Products, including Chobani's Greek Yogurt Products, including but not limited to the pomegranate Flavor, with the listed ingredient "evaporated cane juice" on occasions during the Class Period.

85.     Plaintiff purchased the following of Defendant's Misbranded Food Products:

1    Chobani Greek Yogurt, Pomegranate (Non-fat)





Chobani Greek Yogurt, Lemon (Non-fat)





86.     Plaintiff read the labels on Defendant's Misbranded Food Products, including the Ingredient, "Evaporated Cane Juice" and the "All Natural Ingredients" and/or "Only Natural Ingredients" claims on the labels, before purchasing them.

87.     Plaintiff relied on Defendant's package labeling including the Ingredient, "Evaporated Cane Juice" and "All Natural Ingredients" and/or "Only Natural Ingredients" claims, and based and justified the decision to purchase Defendant's products in substantial part on Defendant's package labeling including the Ingredient, "Evaporated Cane Juice" and "All Natural Ingredients" and/or "Only Natural Ingredients" claims.

88.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's products were misbranded as set forth herein, and would not have bought the products had she known the truth about them.

89.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's "Evaporated Cane Juice" and "All Natural Ingredients" and/or "Only Natural

1  Ingredients" claims were unlawful and unauthorized as set forth herein, and would not have

2  bought the products had she known the truth about them.

3      90.    As a result of Defendant's unlawful "Evaporated Cane Juice" and "All Natural

4  Ingredients" and/or "Only Natural Ingredients" claims, Plaintiff and thousands of others in

5  California and throughout the United States purchased the Misbranded Food Products at issue.

6      91.    Defendant's labeling, advertising and marketing as alleged herein are false and

7  misleading and were designed to increase sales of the products at issue.    Defendant's

8  misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a

9  reasonable person would attach importance to Defendant's misrepresentations in determining

10 whether to purchase the products at issue.

11     92.    A reasonable person would also attach importance to whether Defendant's

12 products were legally salable, and capable of legal possession, and to Defendant's representations

13 about these issues in determining whether to purchase the products at issue. Plaintiff would not

14 have purchased Defendant's Misbranded Food Products had she known they were not capable of

15 being legally sold or held.

16                        **CLASS ACTION ALLEGATIONS**

17     93.    Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure

18 23(b)(2) and 23(b)(3) on behalf of the following class:

19          All persons in the state of California who, within the last four years, purchased
            Defendant's Greek Yogurt products: (1) labeled with the ingredient, "Evaporated
20          Cane Juice" and /or (2) labeled "All Natural Ingredients" and/or "Only Natural
            Ingredients" but which actually contain artificial ingredients, flavorings, coloring,
21          and/or chemical preservatives (the "Class").

22     94.    The following persons are expressly excluded from the Class:  (1) Defendant and

23 its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the

24 proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its

25 staff.

26     95.    This action can be maintained as a class action because there is a well-defined

27 community of interest in the litigation and the proposed Class is easily ascertainable.

28

1    96.    Numerosity: Based upon Defendant's publicly available sales data with respect to

2   the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that

3   joinder of all Class members is impracticable.

4    97.    Common Questions Predominate: This action involves common questions of law

5   and fact applicable to each Class member that predominate over questions that affect only

6   individual Class members. Thus, proof of a common set of facts will establish the right of each

7   Class member to recover. Questions of law and fact common to each Class member include, just

8   for example:

9           a.    Whether Defendant engaged in unlawful, unfair or deceptive
                  business practices by failing to properly package and label its
10                Misbranded Food Products sold to consumers;

11          b.    Whether the food products at issue were misbranded as a matter of
                  law;
12
            c.    Whether Defendant made unlawful and misleading ingredient and
13                natural claims with respect to its food products sold to consumers;

14          d.    Whether Defendant violated California Bus. & Prof. Code §
                  17200, et seq., California Bus. & Prof. Code § 17500, et seq., the
15                Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq.,
                  California Civ. Code § 1790, et seq., 15 U.S.C. § 2301, et seq., and
16                the Sherman Law;

17          e.    Whether Plaintiff and the Class are entitled to equitable and/or
                  injunctive relief;
18
            f.    Whether Defendant's unlawful, unfair and/or deceptive practices
19                harmed Plaintiff and the Class; and

20          g.    Whether Defendant were unjustly enriched by its deceptive
                  practices.
21

22   98.    Typicality: Plaintiff's claims are typical of the claims of the Class because

23   Plaintiff bought Defendant's Misbranded Food Products during the Class Period. Defendant's

24   unlawful, unfair and/or fraudulent actions concern the same business practices described herein

25   irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar

26   injuries arising out of Defendant's conduct in violation of California law. The injuries of each

27   member of the Class were caused directly by Defendant's wrongful conduct. In addition, the

28   factual underpinning of Defendant's misconduct is common to all Class members and represents

a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

99. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the members of the Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

100. <u>Superiority</u>: There is no plain, speedy or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

101. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds

1  generally applicable to the Class, thereby making appropriate final injunctive or equitable relief

2  with respect to the Class as a whole.

3        102.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

4  are met as questions of law or fact common to class members predominate over any questions

5  affecting only individual members, and a class action is superior to other available methods for

6  fairly and efficiently adjudicating the controversy.

7        103.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be

8  encountered in the management of this action that would preclude its maintenance as a class

9  action.

10  **CAUSES OF ACTION**

11  **FIRST CAUSE OF ACTION**
12  **Business and Professions Code § 17200,** *et seq.*
    **<u>Unlawful Business Acts and Practices</u>**
13

14        104.    Plaintiff incorporates by reference each allegation set forth above.

15        105.    Defendant's conduct constitutes unlawful business acts and practices.

16        106.    Defendant sold Misbranded Food Products in California and throughout the United

17  States during the Class Period.

18        107.    Defendant is a corporation and, therefore, each is a "person" within the meaning of

19  the Sherman Law.

20        108.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

21  Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the

22  misbranded food provisions of Article 6 of the Sherman Law.

23        109.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

24  Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

25        110.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

26  Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

27

28

111.    Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold, or held legally and which were legally worthless.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.

112.    As a result of Defendant's illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

113.    Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.

114.    As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

## SECOND CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Unfair Business Acts and Practices

115.    Plaintiff incorporates by reference each allegation set forth above.

116.    Defendant's conduct as set forth herein constitutes unfair business acts and practices.

117.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

118.    Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendant's Misbranded Food Products that they would not have purchased absent Defendant's illegal conduct.

119.    Defendant's deceptive marketing, advertising, packaging and labeling of its Misbranded Food Products and its sale of unsalable misbranded products that were illegal to

possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

120.     Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being legally sold or held and that were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

121.     Plaintiff and the Class who purchased Defendant's Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

122.     The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor. Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.

123.     As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

### THIRD CAUSE OF ACTION
#### Business and Professions Code § 17200, *et seq.*
#### Fraudulent Business Acts and Practices

124.     Plaintiff incorporates by reference each allegation set forth above.

125.     Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

126.     Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

127.     Defendant's misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentation that the products were salable, capable of

possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the Class were deceived. Defendant has engaged in fraudulent business acts and practices.

128. Defendant's fraud and deception caused Plaintiff and the Class to purchase Defendant's Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

129. Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and that were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

130. As a result of Defendant's conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

### FOURTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### <u>Misleading and Deceptive Advertising</u>

131. Plaintiff incorporates by reference each allegation set forth above.

132. Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendant.

133. Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

134. Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products. Defendant's advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that

1   such product packaging and labeling, and promotional materials were intended as inducements to

2   purchase Defendant's Misbranded Food Products and are statements disseminated by Defendant

3   to Plaintiff and the Class that were intended to reach members of the Class.  Defendant knew, or

4   in the exercise of reasonable care should have known, that these statements were misleading and

5   deceptive as set forth herein.

6       135.   In furtherance of its plan and scheme, Defendant prepared and distributed within

7   California and nationwide via product packaging and labeling, and other promotional materials,

8   statements that misleadingly and deceptively represented the composition and the nature of

9   Defendant's Misbranded Food Products.  Plaintiff and the Class necessarily and reasonably relied

10  on Defendant's materials, and were the intended targets of such representations.

11      136.   Defendant's conduct in disseminating misleading and deceptive statements in

12  California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable

13  consumers by obfuscating the true composition and nature of Defendant's Misbranded Food

14  Products in violation of the "misleading prong" of California Business and Professions Code §

15  17500, *et seq.*

16      137.   As a result of Defendant's violations of the "misleading prong" of California

17  Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the

18  expense of Plaintiff and the Class.  Misbranded products cannot be legally sold or held and are

19  legally worthless.  Plaintiff and the Class paid a premium price for the Misbranded Food

20  Products.

21      138.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are

22  entitled to an order enjoining such future conduct by Defendant, and such other orders and

23  judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any

24  money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

25                          **FIFTH CAUSE OF ACTION**
                     **Business and Professions Code § 17500,** *et seq.*
26                            **Untrue Advertising**

27

28      139.   Plaintiff incorporates by reference each allegation set forth above.

140. Plaintiff asserts this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

141. Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

142. Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products. Defendant's advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiff and the Class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

143. In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products. Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

144. Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of Defendant's Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

145. As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

146. Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

## SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

147. Plaintiff incorporates by reference each allegation set forth above.

148. This cause of action is brought pursuant to the CLRA. This cause of action does not currently seek monetary damages and is limited solely to injunctive relief. Plaintiff intends to amend this Complaint to seek damages in accordance with the CLRA after providing Defendant with notice pursuant to Cal. Civ. Code § 1782.

149. At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendant were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

150. Consequently, Plaintiff and the Class will be entitled to actual and punitive damages against Defendant for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

151. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

152. Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

153. Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

154.   Defendant's Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

155.   By engaging in the conduct set forth herein, Defendant violated and continues to violate Sections 1770(a)(5) of the CLRA, (because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

156.   By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

157.   By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

158.   By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

159.   Plaintiff requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

160.   Plaintiff incorporates by reference each allegation set forth above.

161.   As a result of Defendant's fraudulent and misleading labeling, advertising, marketing and sales of Defendant's Misbranded Food Products Defendant was enriched at the expense of Plaintiff and the Class.

162.   Defendant sold Misbranded Food Products to Plaintiff and the Class that were not capable of being sold or held legally and which were legally worthless.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.  It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class, in light of the fact that the products were not what Defendant purported them to be.  Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class of all monies paid to Defendant for the products at issue.

163.   As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Beverly-Song Act (Cal. Civ. Code § 1790, *et seq.*)

164.   Plaintiff incorporates by reference each allegation set forth above.

165.   Plaintiff and members of the Class are "buyers" as defined by Cal. Civ. Code § 1791(b).

166.   Defendant is a "manufacturer" and "seller" as defined by Cal. Civ. Code § 1791(j) & (l).

167.   Defendant's food products are "consumables" as defined by Cal. Civ. Code § 1791(d).

168.   Defendant's nutrient and health content claims constitute "express warranties" as defined by Cal. Civ. Code § 1791.2.

169.   Defendant, through its package labels, create express warranties by making the affirmation of fact and promising that its Misbranded Food Products comply with food labeling regulations under federal and California law.

170.   Despite Defendant's express warranties regarding its food products, they do not comply with food labeling regulations under federal and California law.

171. Defendant breached its express warranties regarding its Misbranded Food Products in violation of Cal. Civ. Code § 1790, *et seq.*

172. Defendant sold Plaintiff and members of the Class Defendant's Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless Plaintiff and the Class paid a premium price for the Misbranded Food Products.

173. As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 1794.

174. Defendant's breaches of warranty were willful, warranting the recovery of civil penalties pursuant to Cal. Civ. Code § 1794.

## NINTH CAUSE OF ACTION
## Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)

175. Plaintiff incorporates by reference each allegation set forth above.

176. Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

177. Defendant is "suppliers" and "warrantors" as defined by 15 U.S.C. § 2301(4) & (5).

178. Defendant's food products are "consumer products" as defined by 15 U.S.C. § 2301(1).

179. Defendant's nutrient and health content claims constitute "express warranties."

180. Defendant, through its package labels, create express warranties by making the affirmation of fact and promising that its Misbranded Food Products comply with food labeling regulations under federal and California law.

181. Despite Defendant's express warranties regarding its food products, they do not comply with food labeling regulations under federal and California law.

182. Defendant breached its express warranties regarding its Misbranded Food Products in violation of 15 U.S.C. §§ 2301, *et seq.*

183.    Defendant sold Plaintiff and members of the Class Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.

184.    As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of her claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendant as follows:

A.    For an order certifying this case as a class action and appointing Plaintiff and her counsel to represent the Class;

B.    For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek monetary relief under the CLRA, but intends to amend her Complaint to seek such relief;

C.    For an order requiring Defendant to immediately cease and desist from selling its Misbranded Food Products listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.    For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.    For an order awarding attorneys' fees and costs;

F.    For an order awarding punitive damages;

G.    For an order awarding pre-and post-judgment interest; and

///
///
///
///
///

1

H.      For an order providing such further relief as this Court deems proper.

2

Dated:  May 14, 2012.          Respectfully submitted,

3

4

5

Ben. F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA  95008
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28