1   MAYER BROWN LLP
    Dale J. Giali (SBN 150382)
2   *dgiali@mayerbrown.com*
    Michael L. Resch (SBN 202909)
3   *mresch@mayerbrown.com*
    Andrew Z. Edelstein (SBN 218023)
4   *aedelstein@mayerbrown.com*
    350 South Grand Avenue, 25th Floor
5   Los Angeles, CA  90071-1503
    Telephone: (213) 229-9500
6   Facsimile:  (213) 625-0248

7   Attorneys for Defendant
    CHOBANI, INC.

8
                    **UNITED STATES DISTRICT COURT**
9                 **NORTHERN DISTRICT OF CALIFORNIA**
                       **SAN JOSE DIVISION**
10

11  KATIE KANE, *et al.,* individuals, on behalf of       Case No. CV 12-02425-LHK
    themselves and all others similarly situated,
12                                                         **NOTICE OF MOTION AND MOTION
                         Plaintiffs,                       TO:**
13        v.                                               **(1) DISQUALIFY PLAINTIFFS'
                                                           COUNSEL;**
14  CHOBANI, INC.,
                                                           **(2) BAR PLAINTIFFS' COUNSEL
15                       Defendant.                        FROM DISCUSSING ISSUES IN THIS
                                                           CASE WITH REPLACEMENT
16                                                         COUNSEL; AND**

17                                                         **(3) BAR EAS CONSULTING GROUP
                                                           LLC FROM DISCUSSING ISSUES IN
18                                                         THIS CASE WITH PLAINTIFFS'
                                                           COUNSEL OR REPLACEMENT
19                                                         COUNSEL;**

20                                                         **MEMORANDUM OF POINTS &
                                                           AUTHORITIES IN SUPPORT;
21                                                         APPENDICES 1 TO 4 IN SUPPORT;
                                                           DECLARATIONS OF GEOFFREY C.
22                                                         HAZARD AND ELLEN R. PECK IN
                                                           SUPPORT**

23
                                                           [Request for Judicial Notice and
24                                                         Declarations of Michael Resch, Dale Giali,
                                                           Cathy King, and Frederick Degnan filed
25                                                         separately]

26                                                         Date:   July 11, 2013
                                                           Time:  1:30 p.m.
27                                                         Dept.: Courtroom 8; 4th Floor (San Jose)
                                                           Judge: Hon. Lucy H. Koh
28                                                         Complaint Filed:  May 14, 2012

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 11, 2013, at 1:30 p.m., or as soon thereafter as this may be heard, in Courtroom 8 of this Court, located at 280 South 1st Street, San Jose, California, before the Honorable Lucy H. Koh, defendant Chobani, Inc. ("Chobani") will and hereby does move the Court for an order (1) disqualifying plaintiffs' counsel; (2) barring them from discussing issues in this case with replacement counsel; and (3) barring EAS Consulting Group LLC from discussing issues in this case with them or with replacement counsel.

This motion is made pursuant to Fed. R. Civ. P. 26(b)(3)(A), 26(b)(3)(B), Cal. Bus. & Prof. Code § 60668(a), N.D. Cal. Civil Local Rule 11-4(a)(1), and *Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067 (1994), and is based on the following:

1. Plaintiffs' counsel have launched a coordinated set of lawsuits against the food industry in this District, including this case against Chobani.

2. As plaintiffs' counsel, themselves, have argued in proceedings in this District in their portfolio of cases against the food industry, there is *unambiguous and pervasive overlap* in the misbranding allegations between and among the cases.

3. From the commencement of this case, and pursuant to a written, signed "ad hoc" agreement, Elizabeth "Betty" Campbell from EAS Consulting Group LLC, a labeling expert, was a member of Chobani's legal team, and, as such, she was engaged in confidential communications with Chobani's attorneys relating to legal strategy and anticipated litigation responses regarding the specific issues in this lawsuit.

4. Well *after* she was working with the Chobani legal team, plaintiffs' counsel in *this* case hired Ms Campbell to serve on *their* litigation team for other cases in their portfolio of cases against the food industry – cases with *unambiguous and pervasive overlap* with the labeling issues raised in this case

5. At the time they first contacted her, Ms. Campbell provided notice to plaintiffs' counsel that she had a relationship with Chobani that would prohibit her from testifying against Chobani.

6.     Before hiring Ms. Campbell, plaintiffs' counsel did not contact Chobani to: (i) provide notice, (ii) obtain more information about or clarification of Ms. Campbell's role with Chobani, or (iii) obtain a waiver from Chobani.

7.      Even though it would have been factually and legally ineffectual to have done so, at no time did plaintiffs' counsel put up any formal mechanism whatsoever to screen Ms. Campbell from herself or from the plaintiffs' counsel working on *this* case; and, moreover, there was no formal screen in place to bar plaintiffs' counsel working on this case from communicating with Ms. Campbell, or from communicating with the other plaintiffs' counsel who were interacting with Ms. Campbell.

8.     Plaintiffs' counsel now find themselves in the legally impermissible position of having hired Chobani's expert – an expert who heard and contributed to Chobani's confidential litigation strategy, impressions and plans – with *full and prior knowledge* that she had a conflict with respect to being adverse to Chobani.  They must be disqualified, and they have absolutely no one to blame but themselves.

This motion is based on this notice of motion, the accompanying statement of issues to be decided, the accompanying memorandum of points and authorities, the accompanying appendices 1 through 4, and the accompanying declarations of Geoffrey Hazard and Ellen Peck; as well as the concurrently filed request for judicial notice, and declarations of Michael Resch, Dale Giali, Cathy King, and Frederick Degnan; as well as all pleadings and documents on file in this action, and on such other written and oral argument as may be presented to the Court.

DATED:  March 5, 2013                          MAYER BROWN LLP
                                               Dale J. Giali
                                               Michael L. Resch
                                               Andrew Z. Edelstein


                                               By: _____/s/ *Dale J. Giali*_____
                                                        Dale J. Giali
                                               Attorneys for Defendant
                                               CHOBANI, INC.

-2-

**STATEMENT OF ISSUES TO BE DECIDED**

Whether plaintiffs' counsel should be disqualified in this action because they hired Chobani's expert to opine on issues directly overlapping with issues in this case, where the expert heard and contributed to Chobani's confidential litigation strategy, impressions and plans with respect to the same issues, and where plaintiffs' counsel had full and prior knowledge that the expert had a conflict with respect to being adverse to Chobani.

1

1

**TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION ............................................................................................1

4   II.     SUMMARY OF RELEVANT FACTS .........................................................3

5           A.      The Coordinated Group Of Class Actions Filed By Plaintiffs' Counsel...............3

6           B.      Chobani And Its Counsel Disclosed Confidential Information To Its
                    Expert In This Lawsuit .................................................................................5
7
8           C.      Plaintiffs' Counsel Improperly Retained EAS, With Knowledge Of A
                    Chobani Conflict ..........................................................................................6

9           D.      Plaintiffs' Counsel's Reliance On A "Case-Specific" Distinction Is
                    Inconsistent With The Fact That All Of Their Cases Raise The Same
10                  Misbranding Issues .......................................................................................8

11          E.      Disqualification With An Ongoing Bar Order Is The Proper Remedy .................8

12  III.    ARGUMENT ...................................................................................................9

13          A.      The *Shadow Traffic* Standard ......................................................................9

14          B.      Chobani Easily Meets Its Burden, Creating A Presumption That EAS
                    Shared Chobani's Confidential Information With Plaintiffs' Counsel .................9
15
16          C.      The Coordinated Series Of Lawsuits – All Raising Identical Or
                    Substantially Similar Issues – Dooms Plaintiffs' Counsel's Response...............10

17          D.      Disqualification Of Plaintiffs' Counsel Is Necessary..........................................12

18  IV.     CONCLUSION ...............................................................................................15

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2
Page

3 CASES

4 *Alien Tech. Corp. v. Intermec Inc.*,
5     2007 WL 4261972 (D.N.D. Nov. 30, 2007)........................................................................12

6 *Astiana v. Dreyer's Grand Ice, Cream*,
     No. 3:11cv2910 (N.D. Cal.) ................................................................................................1

7 *Camden v. State of Md.*,
8     910 F. Supp 1115 (D. Md. 1996)........................................................................................14

9 *Campbell Indus. v. M/V Gemini*,
     619 F.2d 24 (9th Cir. 1980) ...............................................................................................11
10
11 *Cargill Inc. v. Budine*,
     2007 WL 1813762 (E.D. Cal. June 22, 2007) ...................................................................14
12
   *Coppock v. State Bar of Cal.*,
13     44 Cal. 3d 665 (1988)........................................................................................................14

14 *Cordy v. Sherwin-Williams Co.*,
     156 F.R.D. 575 (D.N.J. 1994) ......................................................................................12, 14
15
16 *Curtis v. Kellogg & Andelson*,
     73 Cal. App. 4th 492 (1999)...............................................................................................14
17
   *Erickson v. Newmar Corp.*,
18     87 F.3d 298 (9th Cir. 1996) ...............................................................................................11

19 *In re Complex Asbestos Litigation*,
     232 Cal. App. 3d 572 (1991)........................................................................................10, 11
20
21 *In re County of Los Angeles*,
     223 F.3d 990 (9th Cir. 2000) ...............................................................................................9
22
   *In re JDS Uniphase Corp. Sec. Litig.*,
23     2006 WL 2845212 (N.D. Cal. Sept. 29, 2006)..................................................................12

24 *MMR/Wallace Power & Indus. v. Thames Assocs.*,
     764 F. Supp. 712 (D. Conn. 1991) .....................................................................................12
25
26 *Pellerin v. Honeywell Int'l, Inc.*,
     2012 WL 112539 (S.D. Cal. Jan 12, 2012) .....................................................................8, 12
27

28

-ii-

# TABLE OF AUTHORITIES

**Page**

*Rico v. Mitsubishi Motors Corp.*,
    42 Cal. 4th 807 (2007)....................................................................................................10

*Shadow Traffic v. Superior Court*,
    24 Cal. App. 4th 1067 (1994).....................................................................................passim

*W. Digital Corp. v. Superior Court (Amstrad plc)*,
    60 Cal. App. 4th 1471 (1998).........................................................................................13

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ......................................................................................................10

**RULES**

Fed. R. Civ. P. 26 ................................................................................................................10

L.R. 11-4(a) ...........................................................................................................................9

**MISCELLANEOUS**

Cal. Pract. Guide Profes. Resp. Ch. 4-C § 4:232.5 (The Rutter Group 2012) ............................13

-iii-

1    **I.**      <u>**INTRODUCTION**</u>

2         About six months ago, plaintiffs' counsel called Chobani's outside federal labeling law

3  expert, Elizabeth "Betty" Campbell.[1]  Ms. Campbell is a former FDA official and currently a

4  Senior Advisor with EAS Consulting Group LLC ("EAS") and, among other things, she provides

5  expert testimony in litigation.  *See, e.g., Astiana v. Dreyer's Grand Ice, Cream*, No. 3:11cv2910

6  (N.D. Cal.), ECF Doc.59 (Aug. 7, 2012 Expert Decl. of Elizabeth Campbell on behalf of Nestlé

7  USA, Inc.).  Plaintiffs' counsel called Ms. Campbell to ask her to join *their* team in prosecuting

8  their portfolio of cases against the food industry – i.e., the numerous (currently 31), coordinated

9  lawsuits challenging product labels based on overlapping allegations of labeling irregularities

10  (i.e., "misbranding").

11         All the cases in plaintiffs' counsel's portfolio of cases against the food industry are

12  pending in this District and all were filed in the last 12 months by the same group of attorneys.

13  One of the cases, this case, is against Chobani.  Ms. Campbell had been working closely with

14  Chobani's in-house and outside lawyers since it was filed.  She has been a party to and

15  participant in *numerous* confidential meetings and telephone conferences with Chobani's in-

16  house and outside lawyers in which Chobani's litigation strategy and anticipated litigation

17  responses, including attorney impressions, were discussed, vetted and critiqued.

18         On that first phone call with plaintiffs' counsel, Ms. Campbell made crystal clear – as

19  both she and plaintiffs' counsel have confirmed – that she had a conflict such that she would be

20  unable to testify against Chobani.[2]  She provided no further detail, but that did not much matter

21  to plaintiffs' counsel.  They asked no further questions and obtained no clarification.  They saw

22  no need to (and did not) provide notice to, let alone obtain permission from, Chobani.  They had

23  it all figured out; they simply would not use Ms. Campbell on the Chobani case, but would use

24  her on the other cases, including, without limitation, on misbranding issues that overlap the

25  ───────────────
[1] Chobani does not know the date of plaintiffs' first call to Chobani's expert because plaintiffs'

26  counsel won't say.  All they have disclosed is that it was in the "Fall" of 2012.  There is no
dispute, however, that the call was well *after* this case was filed and after Ms. Campbell began

27  working with Chobani's attorneys in the defense of this action.

[2] Ms. Campbell also told plaintiffs' counsel that she had a conflict that prohibited her from

28  testifying against Nestlé USA.

MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL
CASE NO. CV 12-02425-LHK

Chobani case.  Oh, and they would rely on *Ms. Campbell* – a non-lawyer labeling expert with a bachelor's degree in chemistry – to sort out the professional ethics issues of what she could and could not disclose to plaintiffs' counsel.

Ms. Campbell became part of plaintiffs' counsel's team.  She began advising them on the misbranding issues in the cases she was working on.  As plaintiffs' counsel have affirmatively argued in filings in this District in their portfolio of cases against the food industry, the overlap in the issues in the cases is both pervasive and beyond dispute.  The overlap is so substantial, that plaintiffs have argued that the results (not just the reasoning) of decisions in one of their cases (Judge Davila's decision in the Hershey case, for example) should apply wholesale to the same misbranding theories in other of their cases because, according to plaintiffs, it does not matter the company or the product.  Because the *misbranding theory* is the *same* across the cases, then the *same* result is warranted in the other cases.  Accordingly, and by plaintiffs' own admission, the notion that Ms. Campbell never technically worked for plaintiffs on this case is a legal construct; *she certainly worked for plaintiffs on the misbranding theories they are alleging in this case*.

Based on this unambiguous record, plaintiffs' counsel should be disqualified as counsel in this case, as two noted professional ethics experts have independently concluded:

> [T]he conduct of Plaintiffs' counsel in consulting with Ms. Campbell, and perhaps presenting her as an expert in factually similar cases is a ***flagrant violation of recognized standards of professional conduct*** . . . .  The communications between Chobani and Ms. Campbell are lawyer work-product; that is, information assembled in confidence for use in evaluating a party's legal position and assessing the facts relevant to that position.  [Citations omitted.] . . . Lawyers are required to respect the confidentiality of an opposing party's lawyer work-product . . . .  A lawyer's duty to respect the confidentiality of an opposing party's lawyer product is not delegable.  A lawyer has a personal and professional duty to use reasonable care in his/her own conduct, specifically with regard to that duty . . . .  Here . . . , Plaintiffs' counsel seek to rely on assurances from EAS, the very party now involved in this breach of duty . . . .  EAS is not a lawyer and did not have a lawyer's responsibility in the matter.  On the contrary, EAS had an obvious conflict of interest in determining the proper course of action, for it stood to gain from an additional consultation if that consultation were deemed legally proper . . . .
>
> In my opinion the violation of recognized standards of professional conduct by Plaintiffs' counsel ***was gross and obvious at that time***.  Their attempted excuses in pointing the finger at EAS and arguing that the consultations were only in other of Plaintiffs' counsel's lawsuits in my opinion ***are frivolous*** . . . .  In my opinion ***a proper remedy for this kind of violation is disqualification*** of Plaintiffs' counsel

2

and an order barring Plaintiffs' counsel, EAS and Plaintiffs' counsel's replacement(s) form talking with one another about issues relevant in *Kane*.

Declaration of Geoffrey C. Hazard ("Hazard Decl."), ¶¶ 4, 5 (emphasis added) (attached); *see also* attached Declaration of Ellen R. Peck ("Peck Decl."), ¶¶ 4-8 ("Plaintiffs' counsel violated their professional duties under California law . . . [and] [d]isqualification . . . in the *Kane* case would be more than justified in these circumstances to protect the integrity of the judicial system"); *Shadow Traffic v. Superior Court*, 24 Cal. App. 4th 1067 (1994).[3]

## II.   SUMMARY OF RELEVANT FACTS

### A.   The Coordinated Group Of Class Actions Filed By Plaintiffs' Counsel.

Plaintiffs' counsel, the Barrett Law Group, P.A., Pratt & Associates, the Provost & Umphrey Law Firm, and the Fleischman Law Firm[4] (collectively "plaintiffs' counsel" or the "Barrett/Pratt Group"), have filed over thirty actions (including this case) in this District over the last year against the food and beverage industry for alleged misbranding of products under the Federal Food, Drug and Cosmetics Act (the "Food and Beverage Complaints" or the "Food and Beverage Class Actions").  (*See* attached Appendix 1.)  The cases substantially overlap.  For example, in the initial paragraphs of the Factual Allegations, the Complaints all contain nearly identical language about the FDA under the headings "Identical California and Federal Laws Regulate Food Labeling" and "FDA Enforcement History." (*Compare, e.g.*, RJN Ex. 17 (*Leonhart* Compl.) at ¶¶ 25-47 and Ex. 14  (*Smedt*. Am. Compl). at ¶¶ 40-56 *with Kane* SAC (RJN Ex. 6) at ¶¶ 37-52.)

In this specific case (*i.e.*, *Kane*), there have always been three theories of liability.  These are: (i) Chobani's labels are misleading under FDA's regulations because they claim "only natural ingredients," when the product contains a color additive (albeit from a natural source)

_____

[3] Chobani's motion to dismiss is fully briefed and set to be heard on March 28, 2013.  Chobani argued that plaintiffs' claims should be dismissed based on, among other things, lack of standing and failure to satisfy the reasonable consumer test.  If the Court is inclined to proceed with that motion (notwithstanding the serious issues raised in this motion) and it is granted with prejudice, this motion may become moot.

[4] Subsequent to filing almost all of the cases, the Clifford Law Offices joined the plaintiffs' counsel group and is included in the defined terms "plaintiffs' counsel" or the "Barrett/Pratt Group," and is subject to this disqualification motion.

3

1   (the "natural claim"); (ii) Chobani's labels are misleading under FDA's regulations and non-

2   binding draft guidance because they  identify "evaporated cane juice" as an ingredient (and other

3   various "sugar" issues) (the "sugar claim"), and (iii) Chobani's product fails to meet the FDA's

4   standard of identity for yogurt because it contains evaporated cane juice (the "standard of

5   identity claim").  (*See* ECF Doc.1 (Complaint) at ¶¶ 49-75; ECF Doc. 14 (First Amended

6   Complaint) at ¶¶ 48-70; and ECF Doc. 35 (SAC) at ¶¶ 53-85.)

7           Almost all of the complaints in the Food and Beverage Class Actions challenge FDA-

8   regulated labeling under at least one of these exact same theories.  Specifically, four other Food

9   and Beverage Class Action involve yogurt products and make the sugar, natural and/or standard

10  of identity claims.  (*See* Appendix 2.)  The allegations in these four cases are nearly identical to

11  *Kane*.  (*See* Appendix 3.)  Additionally, twenty-three of the Food and Beverage Class Actions

12  concern the sugar and/or natural claims.  (*See* Appendix 1.)  Again, the allegations in these non-

13  yogurt cases are often identical to Kane.  (*See* Appendix 4.)  The similarities between *Kane* and

14  the other Food and Beverage Complaints are straightforward, not disputable, and summarized in

15  the Appendices to this Motion.

16          Plaintiffs' counsel, themselves, assert that product differences (*e.g.*, Buitoni Shrimp &

17  Lobster Ravioli vs. Greek yogurt) are immaterial.  Indeed, in this case plaintiffs' counsel plead

18  that "the violations, misrepresentations and material omissions are similar across product labels

19  and product lines."  (SAC at ¶ 24 (emphasis added).)[5]  Plaintiffs' counsel have also made the

20  same assertion in other Food and Beverage Class Actions.[6]  Thus, according to Plaintiffs'

---

21  [5] *See also id.* at 16 (reasoning from FDA warning letters sent to "at least a half-dozen
    companies" applies to Chobani, even if different products were at issue); ECF Doc. # 42 (Opp'n
22  to Motion to Dismiss First Amended Compl.) at 6 (asserting that Judge Davila's "reasoning in
    rejecting Hershey's argument is equally applicable here" despite being about distinct products);
23  *id*. at 21 (alleging that another defendant used "the exact same tactic" in a case about all natural
    statements involving different products); *id*. at 22 (alleging that "the FDA has been quite
24  adamant that listing ECJ as an ingredient in any food is unlawful and misleading").

25  [6] *See, e.g.,* RJN at Ex. 31 (Plaintiffs' Memorandum in Opposition to Defendant's Motion to
    Dismiss Amended Complaint in *Trazo* (N. D. Cal. Case No.12-cv-02272-PSG, ECF Doc. # 44))
26  at 3, n.2 (asserting "'source of' nutrient claims remain viable" regardless of whether certain
    products are dismissed because the claim is what is important, not the particular product);  *id*. at
27  4 (plaintiffs allege that they have "properly pleaded" their claim for "no sugar added" that this
    was an "unlawful and misleading label . . .  whether it was on Buitoni Shrimp & Lobster Ravioli
28  or some other food product"); *id*. at 5, n.3 (referencing *Jones* (a case about products including    (cont'd)

---

4

counsel, whether the word "natural" appears on a can of tomatoes or a container of yogurt – it is the same issue in all of the Food and Beverage Class Actions. Likewise whether evaporated cane juice is in yogurt or pasta sauce, the same misbranding questions are at issue.

**B.** **Chobani And Its Counsel Disclosed Confidential Information To Its Expert In This Lawsuit.**

On May 16, 2012 – two days after this lawsuit was filed – Chobani's General Counsel, Cathy A. King, contacted EAS Consulting Group LLC ("EAS") and specifically EAS Senior Advisor Elizabeth "Betty" Campbell, to discuss the case. (Declaration of Cathy A. King ("King Decl.") at ¶ 6.) As detailed in Chobani's counsel's declarations submitted with this motion, from May 2012 through January 2013, in in-person meetings and telephone conversations, Chobani's counsel had repeated, detailed, and confidential strategy sessions about the allegations in this case with EAS and Ms. Campbell. These discussions were covered by a confidentiality provision in a written agreement (*id.* at ¶ 3) and all involved considered them confidential (*id.* at ¶¶ 3, 4, 7; Declaration of Michael Resch ("Resch Decl.") at ¶ 17; Declaration of Frederick Degnan ("Degnan Decl.") at ¶ 3.) In these strategy sessions, counsel not only discussed the specific allegations in the case (i.e., the sugar, natural, and standard of identity claims), but also Chobani's strategy in defending against these allegations. (King Decl. at ¶ 7; Resch Decl. at ¶¶ 12-16; Degnan Decl. at ¶ 3.) EAS's bills to Chobani confirm the attorney-work product-protected content of Chobani's attorneys' conversations with EAS. (*See, e.g.*, King Decl. at Ex. A; (EAS billing entry, "Telcon w/ C King re class action litigation"); (Resch Decl. at ¶ B) (EAS billing entry, "Telcon w/ M Resch re labeling issues for litigation").)

---

cooking spray and canned tomatoes) and *Khasin* (a case about Hershey chocolate products) and stating "the causes of action are identical and many unlawful label claims overlap with this case"); *id.* at 6, n.4 (plaintiff notes that all of the complaints in "other cases of this type" have been "similar in style and substance" despite being about numerous and diverse products); *id.* at 7 (plaintiff notes that "[r]egardless [of the particular product], this unlawful claim will be uniform for each product."); *id.* at 16 (plaintiff notes that FDA warning letters about unlawful 0 grams trans fat were "identical to these here and other warning letters for similar unlawful nutrient claims" despite being about different products); *id.* at 17 (plaintiff states that "Hershey engaged in identical or very similar practices" to those in which defendant is alleged to have engaged though that case was about chocolate products).

5

C.    **Plaintiffs' Counsel Improperly Retained EAS, With Knowledge Of A Chobani Conflict**

On January 30, 2013, Mayer Brown first learned that plaintiffs' counsel had retained EAS (and Ms. Campbell) as an expert on FDA labeling issues in many of the Food and Beverage Class Actions.  (Resch Decl. at ¶¶ 21-22; Giali Decl. at ¶¶ 6-10.)  That day, counsel for one of the other defendants in another Food and Beverage Class Action contacted Mayer Brown and said that he was under the strong impression, based on EAS's comments to him, that EAS was working with plaintiffs' counsel in the Food and Beverage Class Actions.  (*Id.*)  Later that evening, Mayer Brown called Ms. Campbell at her home on the East Coast and asked her if she was working for plaintiffs' counsel.  (Resch Decl. at ¶ 22.)  Ms. Campbell admitted that she was working for plaintiffs' counsel on the Food and Beverage Class Actions.  (*Id.*)  Ms. Campbell, who is not an attorney, attempted to justify her dual representation by claiming that she did not discuss Chobani or the *Kane* case with plaintiffs' counsel and asserted that there would be no conflict as long as she did not testify against Chobani.   (*Id.* at ¶¶ 22-24)

That same day and in subsequent phone calls with Mayer Brown, plaintiffs' counsel also confirmed that they had retained EAS, and Ms. Campbell, on FDA labeling issues in many of the Food and Beverage Class Actions.  (Resch Decl. at ¶¶ 26-28; Giali Decl. at ¶¶ 10-14.)  Plaintiffs' counsel explained that when they initially contacted EAS, EAS immediately informed plaintiffs' counsel that EAS had a conflict that would prohibit EAS from testifying against Chobani.  (Resch Decl. at ¶ 25; Giali Decl. at ¶ 10.)  Plaintiffs' counsel stated that he "did not remember" discussing evaporated cane juice with Ms. Campbell (and did not see a reference to it in his notes) but that it was "possible."  (Resch Decl. at ¶ 26; Giali Decl. at ¶ 12.)  When questioned about the many other claims and issues in this case and specifically whether he had spoken to Ms. Campbell about those other issues, including for example "natural" claims, plaintiffs' counsel respectfully declined to respond to such detailed inquiries.  (*Id.*)  Plaintiffs' counsel's comments made it clear that there was no screen in place to keep any of the attorneys in the plaintiffs' counsel group who were working on the Chobani case from speaking or working with

any other attorneys who were in communication with Ms. Campbell or who were working on cases in which Ms. Campbell was providing expert counseling.  (Resch Decl. at ¶ 26; Giali Decl. at ¶ 12.)  Plaintiffs' counsel also stated that he relied on Ms. Campbell to maintain an appropriate screen of information she was unable to share with plaintiffs' counsel from information she was permitted to discuss.  (Resch Decl. at ¶ 26; Giali Decl. at ¶ 12.)

Early in the morning, on January 31, 2013, Chobani terminated its relationship with EAS and Ms. Campbell because of their relationship with plaintiffs' counsel.  (Resch Decl. at ¶ 32.) As a result, Chobani has lost EAS's valuable services as a consultant and the ability to consider EAS as a potential testifying expert.

By Friday, February 1, 2013, Mayer Brown initiated contact with legal ethics experts Ellen Peck and Geoffrey Hazard to discuss the EAS issue with them.  (Resch Decl. at ¶ 35.) Over the next week, Mayer Brown consulted with these experts and they both confirmed that plaintiffs' counsel's conduct was improper and worthy of an order of disqualification.  (*Id*.)

On Monday, February 4, 2013, Mayer Brown sent plaintiffs' counsel a lengthy letter containing a series of questions regarding their communications with EAS (because plaintiffs' counsel refused to answer any questions over the phone).  (Resch Decl., Ex. D.)  On February 8, 2013, plaintiffs' counsel responded to this letter and (again) refused to answer any questions. (*Id*., Ex. E.)

The parties continued thereafter to discuss this issue.  On Monday, February 18, Chobani wrote plaintiffs' counsel and suggested the parties arbitrate this dispute.  (Resch Decl., Ex. J.) Chobani proposed that an arbitrator decide the primary issue of whether plaintiffs' counsel should be disqualified.  If plaintiffs prevailed, the *Kane* litigation would proceed in the normal course.  If Chobani prevailed, plaintiffs' counsel would withdraw from the case, but no disqualification order would be filed.  (*Id*.)  Chobani's motive in making this suggestion was to resolve the important conflict issue, but make  it clear that it had no tactical purpose to make this a public affair.  (*Id*.)  On Thursday, February 21, plaintiffs' counsel rejected Chobani's offer. (*Id.*, Ex. K.)  Plaintiffs' counsel have since subpoenaed EAS and Ms. Campbell for, among other

things, their communications with Mayer Brown.  (*Id*., Ex. I)

### D.  Plaintiffs' Counsel's Reliance On A "Case-Specific" Distinction Is Inconsistent With The Fact That All Of Their Cases Raise The Same Misbranding Issues.

Plaintiffs' counsel rely on a factually incoherent and legally dubious theory to excuse their conduct – a theory that *Shadow Traffic* rejects. 24 Cal. App. 4th at 1086.  Plaintiffs' counsel state that they avoided the Chobani conflict by not discussing Chobani or Chobani's products with Ms. Campbell, including, apparently, the nature of her conflict relating to Chobani.

The problem with the excuse is threefold.  One, Ms. Campbell cannot screen herself from herself.  *See e.g., Pellerin v. Honeywell Int'l, Inc*., 2012 WL 112539, at *3 (S.D. Cal. Jan 12, 2012) ("the human brain does not compartmentalize information in that manner").  Two, as detailed above and as plaintiffs' counsel admit: "the violations, misrepresentations and material omissions are similar across product labels and product lines" (*see* SAC at ¶ 24) and, therefore, across the Food and Beverage Class Actions.  That is, the fact that plaintiffs' counsel discussed only non-Chobani products with Ms. Campbell is irrelevant because they discussed the natural, sugar and/or standard of identity claims with Ms. Campbell.  Three, plaintiffs' counsel point the finger at Ms. Campbell, asserting that they relied on her representation that there was no conflict. Plaintiffs' counsel cannot, however, delegate their ethical duties to Ms. Campbell, particularly given her obvious financial self-interest in representing both Chobani and plaintiffs' counsel and her non-attorney status.  (Hazard Decl. ¶¶ 4(c), 4(e); Peck Decl. ¶¶ 10.4, 10.5.)

### E.  Disqualification With An Ongoing Bar Order Is The Proper Remedy.

Plaintiffs' counsel's unprecedented decision to proceed with an expert on its team who already was on Chobani's team violated the principles of legal ethics and *Shadow Traffic*.  It should result in the disqualification of plaintiffs' counsel in this action and an order barring them from consulting with replacement counsel and barring EAS from further discussions with the plaintiffs' counsel or their replacement about the issues in this case.  Disqualification is the only way to level the playing field.  (Hazard Decl. ¶ 5; Peck Decl. ¶¶ 8.3, 10.11.)

III.   **ARGUMENT**

A.   **The *Shadow Traffic* Standard.**

In *Shadow Traffic*, the California Court of Appeal set forth the law governing attorney disqualification when counsel makes *ex parte* contact with an expert to whom his opponent has conveyed confidential information.[7]  In *Shadow Traffic*, the Court affirmed the disqualification of Latham & Watkins ("Latham") because Latham hired Deloitte & Touche ("Deloitte") as an expert after Latham's opposing counsel had conveyed confidential information to Deloitte, in a single meeting, when opposing counsel interviewed (but did not hire) Deloitte as a potential expert in the same case.  24 Cal. App. 4th at 1086-89.

Under *Shadow Traffic*, to determine whether disqualification is appropriate, the Court asks two questions: (1) Did one side give material confidential information to an expert hired by the other side; and (2) If so, did that expert convey the confidential information to the other side. *Id.* at 1078.  Critically, if the movant establishes that it gave confidential information to an expert later hired by the other side (the first question), then there is a rebuttable presumption that the expert shared that confidential information with the other side (the second question).  *Id.* at 1085. "The effect of this type of presumption is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact."  *Id.* (internal quotations omitted). Unless the non-moving party rebuts the presumption "by a preponderance of the evidence," then disqualification is appropriate.  *Id.*

B.   **Chobani Easily Meets Its Burden, Creating A Presumption That EAS Shared Chobani's Confidential Information With Plaintiffs' Counsel**

Applied to this case, Chobani must first show that it conveyed information materially related to *Kane* to EAS with an expectation of confidentiality.  *Shadow Traffic*, 24 Cal. App. 4th at 1085.  Chobani, however, is not "required to disclose the actual information contended to be

---

[7] State law applies to lawyer conduct before this Court.  *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) (federal courts apply state law to matters of attorney disqualification); *see also*  L.R. 11-4(a)  ("Every member of the bar of this Court and any attorney [admitted *pro hac vice*] must . . . comply with the standards of professional conduct required of members of the State Bar of California").

9

confidential," but only "the nature of the information and its material relationship to the proceedings." *Id*. at 1085 (citing *In re Complex Asbestos Litigation*, 232 Cal. App. 3d 572, 596 (1991)).

Mayer Brown conveyed its "mental impressions, conclusions, opinions, [and] legal theories" about the *Kane* case generally, and about plaintiffs' allegations related to the standard of identity, natural and sugar claims, specifically.[8]  As discussed above (*see* supra §II, B), Mayer Brown spent many hours in person and on the phone with EAS about the *Kane* case.  These discussions included, for example, Chobani's pending Motion to Dismiss the SAC.  (Resch Decl. ¶ 16.)[9]

Chobani therefore easily meets its burden.  *See Shadow Traffic*, 24 Cal. App. 4th at 1083-84 (declarations established that "the discussion [with the conflicted expert] as being the factual and legal theories about the case, matters traditionally considered confidential"); *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 815 (2007) (attorneys personal impressions inextricably intertwined with facts "was absolutely protected work product" disqualifying entire firm for transgression of one counsel); *In re Complex Asbestos Litig.*, 232 Cal. App. 3d at 597 (confidential information included information sufficient to make a "rough analysis" of pending litigation).

## C.   The Coordinated Series Of Lawsuits – All Raising Identical Or Substantially Similar Issues – Dooms Plaintiffs' Counsel's Response

Because Chobani shared attorney-work-product-protected information with EAS, "a rebuttable presumption arises that the information has been used or disclosed" by EAS in communicating with plaintiffs' counsel.  *Shadow Traffic*, 24 Cal. App. 4th at 1085.  Plaintiffs' counsel must rebut this presumption "by a preponderance of the evidence."  *Id.*   In creating this

---

[8] The Federal Rules of Civil Procedure protect the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," *i.e.*, attorney-work product.  Fed. R. Civ. P. 26(b)(3)(B)); *see also Upjohn Co. v. United States,* 449 U.S. 383, 399-400 (1981).

[9] (*See also* Peck Decl. ¶ 10.1 and Hazard Dec. ¶ 4(a) (explaining attorney-work -product protection for expert communications).)

1  rebuttable presumption, the Court of Appeal relied on *In re Complex Asbestos Litigation*, 232

2  Cal. App. 3d 572 and emphasized, "the thrust of the opinion is to implement the important public

3  policy of protecting against the disclosure of confidential information and the potential

4  exploitation of such information by an adversary." *Shadow Traffic*, 24 Cal. App. 4th at 1085.

5      Here, plaintiffs' counsel consulted with the exact same individual, Ms. Campbell, in

6  conjunction with the Food and Beverage Class Actions, which raise the exact same FDA labeling

7  issues as *Kane*. Specifically, as discussed above, the other Food and Beverage Class Actions put

8  at issue the exact same FDA rules, regulations and guidance letters that are at issue in *Kane* and

9  which plaintiffs' counsel assert apply with equal force across product lines and labels. (*See supra*

10 §II A.).

11     Accordingly, plaintiffs' counsel cannot meet its burden by claiming it never talked with

12 Ms. Campbell about Chobani or *Kane*. Because, even if it that were true, it is beside the point.

13 The point is that plaintiffs' counsel discussed issues materially relevant to *Kane* with EAS and

14 Ms. Campbell. *Shadow Traffic*, 24 Cal. App. 4th at 1085. Controlling precedent recognizes the

15 salient impropriety of hiring the opposition's expert (in a pending case) in another case raising

16 the same issues. *See Erickson v. Newmar Corp.*, 87 F.3d 298, 302 (9th Cir. 1996) (defense

17 counsel who hired plaintiff's expert for a different case raising similar issues acted improperly

18 because he "entirely circumvented the discovery rules because [he] achieved unsupervised

19 access to plaintiff's expert"); *see also Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir.

20 1980) (*ex parte* contacts with opposing expert a "flagrant violation" of the discovery process).[10]

21     Plaintiffs' counsel have never disputed that they discussed subjects materially relevant to

22 *Kane* with EAS. (Resch Decl. at ¶ 26; Giali Decl. at ¶ 12.) Once Chobani conveyed its "mental

23 impressions, conclusions, opinions, or legal theories" to Ms. Campbell, she could not separate

24 those thoughts and impressions from her own. Thus Ms. Campbell's communications to

25 plaintiffs' counsel on the sugar, natural, and standard of identity claims inherently – consciously,

---

[10] Chobani's position is not that its experts can never work for opposing counsel or cannot represent both defendants and plaintiffs, only that they cannot consult for opposing counsel on the same issues on which they simultaneously are consulting for Chobani in a case against the same opposing counsel.

1   or otherwise – incorporated and reflected Chobani's attorney-work-product and thereby

2   conveyed material and confidential information relevant to this lawsuit.  *See, e.g., Pellerin*, 2012

3   WL 112539, at *3 (rejecting notion that expert could adequately rely on only newly acquired

4   information about his former employer because "the human brain does not compartmentalize

5   information in that manner") (citing *Alien Tech. Corp. v. Intermec Inc.*, 2007 WL 4261972, at *2

6   (D.N.D. Nov. 30, 2007)); *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 584-85 (D.N.J. 1994)

7   (disqualifying counsel and stating that to believe that party's former expert did not use trial

8   strategy he learned before switching sides, "even 'subliminally' . . . defies common sense and

9   human nature").[11]

10   Again, *Shadow Traffic* is directly on point.  A key element of the reasoning in *Shadow*

11   *Traffic* is that even if Latham did not ask Deloitte about the contents of opposing counsel's

12   communications, and Deloitte did not explicitly disclose those communications, Latham "could

13   still obtain the benefit of the information because the data, consciously or unconsciously could

14   shape or affect the analysis and advice" Deloitte rendered to Latham.  24 Cal. App. 4th at 1086

15   (emphasis added); *see also id.* (given that Latham and opposing counsel consulted Deloitte "on

16   the same issue . . . it is highly unlikely that [Deloitte] could conscientiously discharge" its duty of

17   confidentiality to one party and of competence to the other party).

18   **D.    Disqualification Of Plaintiffs' Counsel Is Necessary**

19   Importantly, plaintiffs' counsel's problem is entirely of their own making and is a flagrant

20   violation of their professional duties.  It is undisputed that EAS told plaintiffs' counsel of the Chobani

21   conflict *before* plaintiffs' counsel hired EAS.  (Resch Decl., Ex. E.)   As soon as plaintiffs'

22   counsel learned of this fact, the "point is clear:  a brief but professional exchange can

23   expeditiously resolve the issue and avoid needless litigation."  *Shadow Traffic*, 24 Cal. App. 4th

24   at 1084 (holding counsel should have contacted opposing counsel to learn details of potential

25   conflict); *Cordy*, 156 F.R.D. at 584 (when counsel learns of a potential conflict, he should "[a]t

---

26   [11] *See also MMR/Wallace Power & Indus. v. Thames Assocs.*, 764 F. Supp. 712, 727 (D. Conn.

27   1991) ("Even if as defendant maintains, no confidential information was actually disclosed, [the improper relationship] creates a 'nagging suspicion' that [counsel's] preparation and presentation

28   has already been unfairly benefitted.").

the very least" contact opposing counsel).  At that point, before confidences were violated, the parties could have made an arrangement, or, if that failed, plaintiffs' counsel could have sought guidance from this Court.  *Id.*; *cf In re JDS Uniphase Corp. Sec. Litig.*, 2006 WL 2845212, at *5 (N.D. Cal. Sept. 29, 2006) (granting "Defendants' Motion to Allow Participation of Consultant").

Indeed, plaintiffs' counsel would have had to have looked no further than the state's leading practice guide to determine the proper course of conduct:

> => [4:232.5] ***PRACTICE POINTER re retention interview*s:** Case law suggests the following steps to avoid disqualification arising solely from a retention interview with a potential expert:
>
> • <u>First, upon learning that a potential expert whom you wish to retain has been interviewed by the opposing side, dispel any basis for a subsequent recusal motion by immediately *contacting opposing counsel* in an attempt to obtain informed written consent to the retention and, if necessary, to agree upon acceptable parameters of discussion with the expert. This should be done before engaging the expert in any consultations about the case.</u> [See *Shadow Traffic Network v. Sup.Ct. (Metro Traffic Control, Inc.)*, supra, 24 CA4th at 1082, 1088, 29 CR2d at 701, 705 & fn. 10; see also *Western Digital Corp. v. Sup.Ct. (Amstrad plc)*, supra, 60 CA4th at 1488, 71 CR2d at 189]
>
> • Where the expert you wish to retain is part of a firm of experts, members of which were previously interviewed by the opposing side, instruct the firm to distribute a memorandum to all personnel announcing the creation of a *screening wall* around the interviewed expert(s). [See *Western Digital Corp. v. Sup.Ct. (Amstrad plc)*, supra, 60 CA4th at 1488, 71 CR2d at 189]
>
> • If opposing counsel objects to your retention of the expert (on the ground it will risk a breach of confidences), and you believe the objection unfounded, apply to the court for appropriate relief, explaining the necessity for the expert's services on your client's behalf. [See *Shadow Traffic Network v. Sup.Ct. (Metro Traffic Control, Inc.)*, supra, 24 CA4th at 1080, 1088, 29 CR2d at 700, 705 & fn. 9]
>
> *Comment:* In requesting opposing counsel's consent to retain the expert, you will be revealing the identity of your expert—and perhaps some of your strategy—well in advance of a CCP § 2034.210 expert witness list exchange. Opposing counsel is unlikely to consent, thus forcing you to apply for judicial relief, with no assurance of success. For these reasons, it might be better simply to seek out another expert.

Cal. Pract. Guide Profes. Resp Ch. 4-c §4:232.5 (The Rutter Group 2012) (underline added; bold and italics in original).

Instead, plaintiffs' counsel elected to "ask no questions" and proceeded in what could

13

only (and charitably) be described as "willful blindness." (*See, e.g.,* Resch Decl., Ex. E). This was a fatal error in judgment. A lawyer's duty to respect the confidentiality of an opposing party's lawyer's work- product is not delegable. (Hazard Decl. at ¶¶ 4(c), 4(e); Peck Decl. at ¶¶ 10.4, 10.5.) A lawyer has a personal and professional duty to use reasonable care in his/her own conduct, specifically with regard to that duty. (*Id.*) Here, as far as fulfillment of that duty, plaintiffs' counsel seek to rely on assurances from Ms. Campbell or EAS, the very party now involved in the breach of duty. But neither Ms. Campbell nor EAS is a lawyer nor under a lawyer's responsibility in the matter. On the contrary, EAS had an obvious conflict of interest in determining the proper course of action, for it stood to gain from an additional consultation if that consultation were deemed legally proper. Plaintiffs' counsel's conduct is therefore a "violation of recognized standards of professional conduct and . . . was gross and obvious at the time. [Plaintiffs' Counsel's] attempted excuse of pointing the finger at EAS . . . is frivolous." (Hazard Decl. ¶ 4(f).)[12]

Chobani seeks disqualification, not to gain a tactical advantage, but to ensure a level playing field, stop the ongoing harm plaintiffs' counsel caused by their own willful and wrongful conduct, and protect the integrity of the judicial system. Plaintiffs' counsel concede that they have not implemented an ethical screen and they freely talk strategy amongst themselves. Therefore, plaintiffs' counsel give this Court no choice but to right *their* wrong and disqualify all of the plaintiffs' counsel law firms and attorneys in whole. The "fairness and integrity of the judicial process and [a party's] interest in a trial free from the risk that confidential information has been unfairly used against him. . . . outweighs" a party's choice of counsel. *Cordy*, 156 F.R.D. at 584 (disqualifying law firm). (Peck Decl. ¶ 10.11). Where, as here, an opponent has "listened in at the legal confessional" and "the knowledge they wrongly obtained can never be erased from their minds" disqualification is proper. *Camden v. State of Md.*, 910 F. Supp 1115, 1124 (D. Md. 1996) (disqualifying law firm); *Shadow Traffic*, 24 Cal. App. 4th at 1088

---

[12] In analogous contexts, California courts have held attorneys' duties are non-delegable. *See, e.g., Coppock v. State Bar of Cal.*, 44 Cal. 3d 665, 680 (1988) (attorney has nondelegable duty to administer trust accounts properly); *Curtis v. Kellogg & Andelson*, 73 Cal. App. 4th 492, 505 (1999) (duty of undivided loyalty and diligence is "nondelegable")

1    (disqualifying counsel to protect the "integrity and function of our legal system"); *Cargill Inc. v.*

2    *Budine,* 2007 WL 1813762, at *14 (E.D. Cal. June 22, 2007) (disqualifying law firm because of

3    "the threat to the integrity of the trial process, because of the confidential and privileged

4    information involved, and the risk of unfair advantage").

5    **IV.**      <u>**CONCLUSION**</u>

6            For all the foregoing reasons, Chobani respectfully requests that the Court enter an order:

7    (1) disqualifying plaintiffs' counsel from the *Kane* case; (2) prohibiting plaintiffs' counsel from

8    discussing any factual or legal matters related to *Kane* with their replacement counsel, if any; and

9    (3) barring EAS from consulting in any of the Food and Beverage Class Actions and

10   communicating with plaintiffs' counsel relating to any issues in this case.

11
     DATED:  March 5, 2013                               MAYER BROWN LLP
12                                                       Dale J. Giali
                                                         Michael L. Resch
13                                                       Andrew Z. Edelstein

14

15                                                       By: _____ */s/ Dale J. Giali*
                                                             Dale J. Giali
16                                                       Attorneys for Defendant
                                                         CHOBANI, INC.

17

18

19

20

21

22

23

24

25

26

27

28