Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Facsimile:   (408) 369-0752
pgore@prattattorneys.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| KATIE KANE, DARLA BOOTH, and ARIANNA ROSALES, individually and on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>CHOBANI, INC., also formerly known as AGRO-FARMA, INC.,<br><br>                    Defendant. | Case No.  CV 12-02425 LHK<br><br>**PLAINTIFFS' RESPONSE TO CHOBANI, INC.'S MOTION TO: (1) DISQUALIFY COUNSEL; (2) BAR THEM FROM DISCUSSING ISSUES IN THIS CASE WITH REPLACEMENT COUNSEL; AND (3) BAR EAS CONSULTING, INC. FROM DISCUSSING ISSUES IN THIS CASE WITH PLAINTIFFS OR REPLACEMENT COUNSEL**<br><br>[Declarations of Ben F. Pierce Gore, Darren L. Brown, Keith Fleischman, Brian Herrington, Jay Nelkin, Robert A. Clifford, Michael S. Krzak, Colin H. Dunn, Ellen Pansky, Joshua P. Davis, Bruce Green, and Lawrence J. Fox filed separately]<br><br>Date:      July 11, 2013<br>Time:     1:30 p.m.<br>Dept.:     Courtroom 8; 4th Floor<br>Judge:    Hon. Lucy H. Koh |

1

# TABLE OF CONTENTS

2  TABLE OF AUTHORITIES ............................................................................................ ii

3  I.    INTRODUCTION ........................................................................................... 1

4  II.   BACKGROUND ............................................................................................. 3

5        A.    EAS and Campbell ............................................................................. 3

6        B.    Plaintiffs' Counsels' Limited Contacts with EAS and Campbell ........................... 4

7        C.    Plaintiffs' Counsel Contacts Ed Scarbrough For This Case ................................. 7

8        D.    Contact With EAS After Scarbrough Was Hired For This Case .......................... 7

9  III.  ARGUMENT .................................................................................................. 9

10       A.    The High Standard Required To Warrant Disqualification ................................... 9

11       B.    The Shadow Traffic Rebuttable Presumption Does Not Apply ........................... 10

12             1.   Defendant Has Failed To Show It Communicated Protected
13                  Confidences To EAS ................................................................ 11

                 2.   Defendant Has Failed To Show That EAS And Campbell
14                  Are Unavailable ..................................................................... 12

15       C.    There Is No Evidence That Any Confidences Were Passed On To Plaintiffs'
16             Counsel .......................................................................................... 14

         D.    There Is No Evidence That Confidential Information Was Disclosed ................ 15
17
         E.    The Case Law Relied Upon By Defendant Is Inapposite .................................. 16
18
         F.    Ethics Experts Reviewing the Complete Record Independently Conclude
19             That Plaintiffs' Counsel Acted Ethically and That Disqualification Is Not
               Appropriate ..................................................................................... 19
20
               1.   Professor Lawrence Fox ........................................................... 19
21
               2.   Professor Bruce Green ............................................................ 20
22
               3.   Ellen Pansky ........................................................................ 21
23
               4.   Professor Joshua Davis ............................................................ 23
24
25 IV.    CONCLUSION ............................................................................................ 25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Aero-General Corp. v. Transport Indemnity Ins.*,
    18 Cal. App. 4th  996 (1993)................................................................................ 24

4

*Allstate Ins. Co. v. Electrolux Home Products, Inc.*,
    840 F. Supp. 2d 1072 (N.D. Ill. 2012) ............................................................... 16

5

*Beck Development Co. v. Southern Pacific Transportation Co.*,
    44 Cal. App. 4th 1160 (1996)............................................................................. 14

6

7

*Collins v. State*,
    121 Cal. App. 4th 1112 (2004)................................................................*passim*

8

*DCH Health Servs. Corp. v. Waite*,
    95 Cal. App. 4th 829 (2002)............................................................................... 23

9

10

*Erickson v. Newmar Corp.*,
    87 F.3d 298 (9th Cir. 1996)........................................................................ 16, 17

11

*Fullerton Union High School Dist. v. Riles*,
    139 Cal. App. 3d 369 (1993).............................................................................. 14

12

13

*Gregori v. Bank of Am.*,
    207 Cal. App. 3d 291, 254 Cal. Rptr. 853 (Ct. App. 1989) ............................. 23

14

*Hewlett-Packard Co. v. EMC Corp.*,
    330 F. Supp. 2d 1087 (N.D. Cal. 2004) ........................................................ 9, 12

15

16

*Los Angeles County v. Superior Court*,
    222 Cal. App. 3d 647, 271 Cal. Rptr. 698 (1990) ............................................ 15

17

*N. Pacifica, LLC v. City of Pacifica*,
    335 F. Supp. 2d 1045 (N.D. Cal. 2004) ...................................................... 10, 18

18

19

*Nikkal Indus., Ltd. v. Salton*,
    689 F. Supp. 187 (S.D.N.Y. 1988)..................................................................... 12

20

*Optyl Eyewear Fashion Int'l Corp. v. Sytle Cos., Ltd.*,
    760 F.2d 1045 (9th Cir. 1985)........................................................................ 1, 10

21

22

*Plumley v. Doug Mockett & Co.*,
    2008 WL 5382269 (C.D. Cal. 2008).................................................................. 10

23

*Rico v. Mitsubishi Motors Corp.*,
    42 Cal. 4th 807 (2007) ....................................................................................... 24

24

25

*Rios v. Wal-Mart Stores, Inc.*,
    2013 WL 593252 (D. Nev. Feb. 13, 2013) .................................................... 1, 10

26

*Securities and Exchange Commission v. Tang*,
    831 F. Supp. 2d 1130 (N. D. Cal. 2011) .............................................................. 9

27

28

*Shadow Traffic Network v. Superior Court,*
    24 Cal. App. 4th 1067 (1994) ..................................................................................... 1, 10

*Shandralina G. v. Homonchuk,*
    147 Cal. App. 4th 395 (2007) .................................................................................... *passim*

*Space Sys./Loral v. Martin Marietta Corp.,*
    1995 WL 686369 (N.D. Cal. Nov. 15, 1995) .................................................................. 10

**Other Authorities**

ABA Committee on Ethics and Professional Responsibility Opinion  No. 340 (1975) .............. 23

Cal. Code Jud. Ethics, canon 2 .................................................................................................. 23

Restatement of the Law Governing Lawyers (3rd) 2000 ........................................................... 22

**Rules**

Fed. R. Civ. P. 26(b)(4) ............................................................................................................. 17

## I.     INTRODUCTION

In its Motion To Disqualify Counsel, Chobani, Inc. and its own experts disregard numerous recent opinions applicable to the question of whether an expert witness has been properly retained, while relying upon the 20 year old decision in *Shadow Traffic Network v. Superior Court*, 24 Cal App. 4th 1067, 1071 (1994) which is of "limited significance to this case." Green Dec., ¶ 12. Chobani seeks to have this Court not only disqualify an expert, an act which the Ninth Circuit has found to be a "drastic measure," but to disqualify counsel as well, something many courts have ruled should be imposed "only hesitantly, reluctantly, and rarely." Motions to disqualify opposing counsel must be closely scrutinized because of a significant possibility that the motion is brought for tactical reasons. *See Rios v. Wal-Mart Stores, Inc.*, 2013 WL 593252, at *2 (D. Nev. Feb. 13, 2013) (citing *Optyl Eyewear Fashion Int'l Corp. v. Sytle Cos., Ltd.,* 760 F.2d 1045 (9th Cir. 1985)). The actions of Chobani and its counsel in this case call for heightened scrutiny against such "tactical" conduct.

Faced with Defendant's motion, Plaintiffs contacted four ethics experts regarding the serious allegations. Professor Lawrence Fox characterizes disqualification of counsel as "essentially the death of the action and the wholesale disqualification of the lawyers around the country most active in the food misbranding litigation." Fox Dec., ¶ 6. Unlike Defendant's experts, these four experts reviewed the full factual record. They independently and unanimously conclude that Plaintiffs' Counsel did nothing wrong and that there is absolutely no basis to disqualify anyone. According to Professor Fox, it was Defendant's counsel who "violated the applicable rules of civil procedure" by intimidating EAS into withdrawing from its contract with Plaintiffs' Counsel, and the comments made by Defendant and its two experts "if not in a court filed pleading, would be libel." *Id*.

Defendant claims Plaintiffs' Counsel knew that EAS had a pre-existing litigation relationship with Defendant before retaining EAS to assist on *other* Food Misbranding cases. Incorrect. EAS promised Brian Herrington (who, along with Jay Nelkin, was the only Plaintiffs' Counsel to have contact with EAS or Campbell) that it would not work for the defendant in *any* case filed by Plaintiffs' Counsel. Plaintiffs' Counsel were entitled to rely upon that promise from

EAS.  Green Dec., ¶ 3; Fox Dec., ¶¶ 9, 10; Davis Dec., ¶ 5.  There was no basis for Plaintiffs' Counsel to believe EAS had an existing litigation relationship with Defendant.[1]

Defendant contends that it disclosed trial strategy to EAS's Betty Campbell and that this Court should presume that she disclosed that information to Plaintiffs' Counsel.  The uncontradicted declarations of Herrington and Nelkin confirm that no confidential information was disclosed by EAS or Campbell.  Defendant's own declarations reflect that EAS assured Defendant that no confidential information was revealed.  Defendant's motion depends *entirely* on the application of the *Shadow Traffic* rebuttable presumption, but there is no reason to presume anything since Defendant could have easily asked (and did ask) EAS and Campbell whether any confidential information was disclosed.  As other courts have found, Defendant's "conspicuous" failure to provide such evidence raises a "red flag" that strongly suggests no confidential information was disclosed.  Fox Dec., ¶ 13; Davis Dec., ¶¶ 33-4.

Without bothering to provide any evidence from EAS or Campbell (who are still available to Defendant), Defendant asks the Court to presume that EAS either expressly or subconsciously conveyed confidential information during discussions of *other* cases against *other*, unrelated companies. As Professor Green notes, however, "[n]o rule of professional conduct prohibited some plaintiffs' counsel from retaining EAS to provide expert services in *other* misbranding cases simply because the opposing party in this case had retained EAS to serve as an expert on similar legal issues."  Green Dec., ¶ 3.

Defendant claims Campbell must have necessarily divulged "trial strategy" its counsel discussed with her.  This claim has no basis.  The only interaction Herrington and Nelkin had with EAS and Campbell involved a few phone calls and one in-person meeting in which counsel

---

[1] Notably, Defendant has misstated its relationship with EAS.  Defendant contends that EAS was its "expert." But a comparison of Defendant's "Ad Hoc Consulting Agreement" with EAS (which Defendant did not provide this Court in its motion) to the billing statements submitted by Defendant in support of its motion (Resch Dec., Ex. A-C) shows that EAS has not performed any "Expert Witness Services" (defined in the agreement as "acting as expert witnesses in judicial or administrative proceedings" including "prepar[ing] for and participat[ing] in court testimony, depositions, affidavits, *etc.* (including review of documents))" for Defendant in this case.  None of the billing records disclosed by Defendant show that EAS ever provided any $450.00-per-hour "Expert Witness Services" for this case.  At the very least, EAS' billing records show that EAS itself did not believe it was engaged as Defendant's "expert" here.

described and reviewed the allegations contained in the filed cases.  Campbell only acknowledged that FDA regulations and policy applied to the labels in the filed complaints.  These discussions were limited to her review of the pleadings in other cases.  At no time did Campbell or anyone at EAS discuss any potentially privileged or confidential information.

Defendant's suggestion that Plaintiffs' Counsel secretly relied on Campbell in this case is belied by the court record.  Before Defendant brought this motion Plaintiffs submitted the sworn declaration of FDA expert, Ed Scarbrough ("Scarborough"), in support of their Motion for Preliminary Injunction.  (Doc. 44).  Scarbrough, an FDA expert with no connection whatsoever to EAS, is Plaintiffs' expert in this case.  EAS and Campbell never were.

It is the plaintiffs in the other Food Misbranding cases who have been wrongly deprived of an expert.  EAS and Campbell terminated their contract with Plaintiffs' Counsel and have stated that they will not discuss anything absent a court order or subpoena.  Defendant's motion now seeks to add insult to this injury.  But because there is simply no evidence to support Defendant's bare claim that EAS or Campbell conveyed any confidential information, and because ethics experts reviewing the entire factual record agree that Plaintiffs' Counsel engaged in no wrongdoing there is no basis to impose the extreme remedy of disqualification of counsel. Defendant's motion should be denied.

## II.      BACKGROUND

### A.      EAS and Campbell

EAS "specializes in Food and Drug Administration (FDA) regulatory matters." EAS is "staffed with former FDA compliance and inspection officials, and is assisted by an extensive network of consultants with many years of FDA and industry experience."  EAS's mission is "to provide quality regulatory advice and service and to represent the best interests of our clients in an ethical, timely, and cost efficient manner." http://www.easconsultinggroup.com/company/ (last visited April 15, 2013).

Betty Campbell is a "Senior Advisor for Labeling & Claims" and a "former Acting Director in the FDA's Office of Food Labeling" who played a leading role in writing the regulations implementing the Nutrition Labeling and Education Act (NLEA) in the 1990s. *Id.*

Campbell has published her specific views on FDA matters extensively. Campbell has stated that per FDA rules a company like Defendant cannot claim its yogurt product is natural when it uses a coloring ingredient not derived from the food being colored, even if that ingredient is itself a natural ingredient. *See* Ex. 1, Campbell, Elizabeth, *Label Claims: Communicating Product Benefits While Complying With Regulations*, Organic Processing, May/June 2012 Volume 9, Number 3, at page 47 ("A particular problem for manufacturers is the concept of 'natural color.' FDA has stated that any color additive, regardless of its source, artificially colors the food. Consequently, FDA considers it misleading to state 'natural color' or 'food color' unless the color ingredient is derived from the food being colored. When a color that is a natural ingredient is used, the claim 'natural (product)' cannot be used, but the naturally sourced color would not disallow 'all natural ingredients.'").

**B.     Plaintiffs' Counsels' Limited Contacts with EAS and Campbell**

On or about October 9, 2012, Herrington contacted Ed Steele to discuss retaining EAS to provide expert services regarding FDA rules and regulations. Herrington Dec., ¶ 2 ("BH Dec"). During this brief conversation, Herrington generically discussed the filed cases involving food labeling. Steele explained the consulting services provided by EAS. *Id.* ¶ 2. Herrington identified *Jones v. ConAgra Foods, Inc.*, as one of the cases for which he was seeking an FDA expert. *Id.* ¶ 3. Steele informed him that EAS had no conflict with ConAgra Foods, Inc, so Herrington emailed the First Amended Complaint in the *ConAgra* case to Steele and Campbell. *Id.* ¶ 3.

On October 11, 2012, Nelkin and Herrington[2] had a telephone call with both Steele and Campbell about the complaint in *ConAgra* and EAS's food labeling regulation expertise

---

[2] The only "Plaintiffs' Counsel" to have any contact with EAS or Campbell were Herrington and Nelkin. BH Dec., *generally*; Nelkin Dec. *generally*; Brown Dec., ¶ 2; Gore Dec., ¶ 2; Fleischman Dec., ¶ 2; Clifford Dec., ¶ 2; Krzak Dec., ¶ 2; Dunn Dec., ¶ 2.

generally.  BH Dec., ¶ 4; Nelkin Dec., ¶ 2.  At no time did they discuss litigation strategy, how food manufacturers devise their labels or how food manufacturers defend labeling suits. BH Dec., ¶ 4.  The conversation was limited to explaining the plaintiff's claims in *ConAgra.  Id.* ¶ 4. During that conversation, Campbell either expressed agreement with each claim or stated that she needed additional information to form an opinion, e.g., whether a particular ingredient was acting as a preservative. BH Dec., ¶ 4; Nelkin Dec., ¶ 4.

During the conversation, Steele stated that since EAS had performed work for some food companies, it would need to see the names of all of the defendants sued in the filed cases.  BH Dec., ¶ 5.  Steele did not identify any companies for which EAS had performed work, who at EAS had performed that work, the work it had done, or when the work was performed. *Id.*

On October 11, 2012, Herrington emailed to EAS a list of the filed cases, which included *Kane v. Chobani.  Id.* ¶ 6.  On October 12, 2012, Herrington signed and returned a form EAS contract for expert witness services.  *Id.* ¶ 7.[3]   On October 15, 2012, EAS emailed Herrington a list of the cases which EAS was interested in discussing. *Id.* ¶ 8.

On or about October 19, 2012, Herrington spoke with Steele and Campbell by phone and asked if they could describe the nature of the conflicts with cases that did not make the list EAS provided.  *Id.* ¶ 8.  Steele declined to provide any information about EAS's decision other than to say that, as a professional courtesy and a matter of company policy, EAS would not perform work on cases filed against a former or current client. BH Dec., ¶ 8; Nelkin Dec., ¶ 22.   Steele never stated that EAS had a conflict with a particular case, and he never stated that Campbell had any conflict whatsoever.  *Id.* ¶ 9.

Steele also never said that EAS had been hired in any capacity by any of the defendants identified in the list of filed cases.  *Id.*  In fact, Steele stated the exact opposite — that EAS would never appear for a defendant in any case on the list or provide expert services to a food manufacturer involved in those cases. *Id.* Herrington told Steele and Campbell that Plaintiffs' Counsel would not work with EAS unless it agreed it would not provide testimony or other expert

---

[3] A true and correct copy of that contract is attached to Brian Herrington's declaration as Exhibit "A."

services for the food manufacturers identified on the list provided. *Id*. ¶ 10. Herrington "made clear to EAS that [he] wanted confirmation that EAS would not appear against [plaintiffs] in [the] other filed cases." *Id*. Steele and Campbell agreed to the condition, and assured Herrington that EAS would never appear adverse to the plaintiff in any of those cases. *Id*. ¶¶ 9, 10, 13.

On October 24, 2012, Herrington and Nelkin met with Steele and Campbell at the EAS corporate offices in Alexandria, Virginia. BH Dec., ¶ 11; Nelkin Dec., ¶ 5. Prior to this meeting, EAS was requested to do a conflicts check and Campbell was asked to provide a CV, to disclose her prior expert consulting engagements, and to provide all reports or testimony from prior engagements. Nelkin Dec., ¶ 5. Prior to the meeting, Campbell provided Herrington and Nelkin with her employment history which did not disclose any prior work for Chobani. She indicated that she had served as an expert in two matters and provided her report in *Pom Wonderful, LLC v. Welch Foods, Inc*. Campbell never disclosed that she had been engaged by Chobani on any matter and never disclosed that she was serving in any capacity in this case. *Id*. ¶ 21. Neither EAS nor Campbell indicated they were providing any litigation related services to any of the defendants in any of the food labeling litigation cases in which Herrington, Nelkin and their co-counsel were involved. *Id*. ¶ 5. Nelkin and Herrington thus had no reason to believe that EAS or Campbell was working with Chobani on any issues involved in their cases. Nelkin Dec., ¶¶ 24-27; BH Dec., ¶¶ 13, 21, 28-29, 31-33, 36-37.

During this meeting, Herrington and Nelkin discussed the cases EAS agreed to discuss and work on. BH Dec., ¶ 11; Nelkin Dec., ¶ 5. They showed Campbell the filed complaints and asked whether she agreed with the allegations. BH Dec., ¶ 11; Nelkin Dec., ¶ 6. They never asked for or received any information on how food manufacturers might defend these lawsuits. BH Dec., ¶ 11; Nelkin Dec., ¶ 6. They never asked for and Campbell never gave any litigation advice. BH Dec., ¶ 11; Nelkin Dec., ¶¶ 6, 9, 10, 11. The limit of Campbell's statements was whether she agreed or disagreed with the allegations in each complaint, specifically, and whether she agreed or disagreed that the identified label statement violated FDA regulations. BH Dec., ¶ 11; Nelkin Dec., ¶¶ 6, 9, 10, 11. Campbell indicated that her opinions were based on her

experience from working for the FDA.  BH Dec., ¶ 12; Nelkin Dec., ¶¶ 6, 9, 10, 11.  They did not discuss strategy in any way.  BH, ¶¶ 11; Nelkin Dec., ¶¶ 6, 9, 10, 11.  Campbell either expressed her opinion on the specific allegations regarding the specific labels in the cases discussed or requested additional information.  Nothing was discussed at all regarding Chobani, the company or this case.  Nelkin Dec., p. 5-6, 9-10; BH Dec., p. 11-12.

### C.      Plaintiffs' Counsel Contacts Ed Scarbrough For This Case

On October 25, 2012, Herrington called Ed Scarbrough who agreed to serve as an expert witness and, four days later, Herrington emailed him a list of the filed cases, which included *Kane v. Chobani*. *Id*. ¶ 16.  After Scarbrough stated that he had no conflicts, he was hired to work on the cases, including this case. *Id*. ¶ 16.  Scarbrough has provided all of the expert services relating to the issues in this case. *Id*. ¶ 17.  Scarbrough provided a declaration in support of Plaintiffs' Motion for Preliminary Injunction, filed on February 5, 2013. BH Dec., ¶ 17; Doc. 44.

### D.      Contact With EAS After Scarbrough Was Hired For This Case

Between October 24, 2012, and January 30, 2013, Herrington's only contacts with Campbell were conversations devoted entirely to the *Kosta v. Del Monte* case.  BH Dec., ¶ 18.  They discussed the logistics of providing Campbell the relevant Del Monte product labels, *Id*., and did not discuss the merits of any particular claim.

On January 30, 2013, Herrington emailed Campbell to set up a call regarding *Del Monte*. *Id*. ¶ 19.  Later that day, Plaintiffs' Counsel, Pierce Gore, telephoned Herrington about a call that he had received from Defendant's Counsel, Michael Resch. *Id*. ¶ 21.

The next day, at 8:05 a.m., Campbell emailed Herrington, confirming that she could talk at 9:30 a.m. that day. *Id*. ¶ 19.  At 8:47 a.m., Campbell emailed Herrington stating that she could not talk at 9:30 a.m. and that she would get back to him as soon as possible. *Id*. ¶ 20.  This was the last communication Herrington received from her. *Id*.

After receiving those emails, Gore and Herrington called Resch. *Id*. ¶ 21.  Resch's partner Dale Giali joined the call. *Id*.  Giali and Resch stated that they had consulted with Campbell

specifically on the *Kane v. Chobani* case.  *Id*.  They claimed that EAS was precluded from working on any case involving the claims made against Defendant in this case.  *Id*.

Later, Herrington telephoned Resch and Giali to attempt to understand their argument that EAS was conflicted in any cases which involved similar claims against other defendants.  *Id*. ¶ 22.  Herrington asked: "Are you telling me that I can't sue Ford and Chevrolet at the same time over different defects and use the opposition's expert in Ford in my Chevrolet case?" *Id*.  Giali affirmed that it was Defendant's view that counsel could not do that unless Herrington dismissed the hypothetical Ford case. *Id*.  Herrington rhetorically asked: "So, I should dismiss the Chobani case?" *Id*.  Giali responded: "If you dismiss the case, this all goes away." *Id*.  Herrington attempted to contact Steele and Campbell, but neither would take his call.  *Id.* ¶ 23.

On Friday, February 1, 2013, Herrington called Resch to ask that he inform EAS that Defendant had no objection to EAS talking with Herrington.  *Id.* ¶ 24.  Resch claimed that he had not told EAS that it could not talk to Herrington.  *Id*.  Instead, Resch stated that he had only told EAS that it could not talk to Herrington about any issues similar to those in this case.  *Id*. Herrington told Resch that his "warning" had obviously caused EAS to cease all communications. *Id*.  Later that day, EAS's lawyer Craig Franco emailed to Herrington a letter in which EAS terminated its agreement.  *Id*.  During one telephone conversations with Resch, Herrington asked Resch: "Did you retain Ms. Campbell for work on the *Kane v. Chobani* case?"  *Id.* ¶ 27.  Resch responsed: "**It's our position** that we did."  *Id*.

Counsel for Chobani admit that the President of EAS told them that EAS had "researched the issue thoroughly and concluded it had no conflict in advising Plaintiff's counsel," in the cases in which EAS was retained by Plaintiffs' Counsel. Resch Dec., ¶ 33. The President of EAS also wrote to counsel for Chobani and stated EAS was "confident that there had been no conflict in our current engagements with third parties." *Id*. at ¶ 34.  Chobani's counsel admit that Campbell expressly told them "she did not discuss Chobani or the *Kane* case with plaintiffs' counsel." Motion to Disqualify, p. 6 citing Declaration of Michael Resch, ¶¶ 22-24.

According to Resch, Campbell told him she was not working with Plaintiffs in *Kane v. Chobani*, and that EAS had determined it could work for Plaintiffs in matters that did not involve its clients. Resch Dec., ¶ 22.  Moreover, EAS President and COO, Dean Cirotta, advised Resch that EAS had "researched the issue thoroughly" and concluded it had "no conflict" in advising the Plaintiffs. Resch Dec., ¶ 33.  In fact, although Cirotta wrote Resch on February 1, 2013 agreeing to terminate EAS' services with the Barrett Law Group, he reiterated that "…we are confident there has been no conflict in our current engagements with third parties…"  Resch Dec., ¶ 34 and Ex. H thereto.

## ~~III.~~
## ~~IV.~~III. ARGUMENT

Defendant's motion fails for three simple reasons.  First, the *Shadow Traffic* rebuttable presumption does not apply because there was and is no legal impediment to Defendant contacting EAS or Campbell to determine whether any confidential information was disclosed.  Second, the uncontradicted evidence is that no confidential information was disclosed by EAS or Campbell to Plaintiffs' Counsel.  Third, Plaintiffs' Counsel have not violated any legal or ethical rule.

### A.    The High Standard Required To Warrant Disqualification

Federal courts in California "look to state law to decide motions to disqualify." *Securities and Exchange Commission v. Tang*, 831 F. Supp. 2d 1130, 1141 (N. D. Cal. 2011). "A motion to disqualify a party's counsel may implicate several important interests. Consequently, judges must examine these motions carefully to ensure that literalism does not deny the parties substantial justice. Depending on the circumstances, a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *Collins v. State*, 121 Cal. App. 4th 1112, 1123 (2004).  "Disqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely."  *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004).  Courts should closely scrutinize a motion to disqualify opposing counsel because of

the significant possibility of abuse for tactical advantage. *Rios v. Wal-Mart Stores, Inc.*, 2013 WL 593252, at *2 (D. Nev. Feb. 13, 2013) (citing *Optyl Eyewear Fashion,* 760 F.2d at 1050). Courts should be extremely cautious when considering motions for disqualification of counsel "both because of the immediate effect disqualification has on a client by separating him from his counsel of choice, and because such motions are often interposed for tactical reasons." *Space Sys./Loral v. Martin Marietta Corp.*, 1995 WL 686369, at *4 (N.D. Cal. Nov. 15, 1995). Whether or not to impose disqualification is a decision reserved to the trial court's discretion. *See Shadow Traffic*, 24 Cal. App. 4th at 1088.[4]

### B.   The Shadow Traffic Rebuttable Presumption Does Not Apply

Because it has provided no evidence that confidential information was disclosed, Defendant's motion rests entirely on its claim that the rebuttable presumption of *Shadow Traffic* applies. That presumption "is a rule by necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff." *Shadow Traffic,* 24 Cal. App. 4th at 1085. "The rebuttable presumption is based on the recognition that the party seeking disqualification will be unable to acquire evidence to prove what was communicated to the adversary's attorney by his…retained expert because those communications would themselves be protected by privilege." *Shandralina G. v. Homonchuk*, 147 Cal. App. 4th 395, 410 (2007). "When the expert has gone to the other side and is no longer available to the side that originally retained him, the shifting of the burden of proof makes eminent sense." *Collins*, 121 Cal. App. 4th at 1129. However, it is "error to apply *Shadow Traffic's* burden-shifting

---

[4] Even if a court disqualifies an expert witness who previously consulted with the opposing party, it does not follow that the court should disqualify the lawyers who engaged the expert. *See, e.g.*, *Plumley v. Doug Mockett & Co.*, 2008 WL 5382269, at *4 (C.D. Cal. 2008) (disqualifying expert but not counsel, finding "no evidence that [the expert] disclosed any confidential information" to counsel, and that a presumption that the expert disclosed confidences was unjustified); *N. Pacifica, LLC v. City of Pacifica*, 335 F. Supp. 2d 1045, 1052 (N.D. Cal. 2004) (disqualifying defendant's expert witnesses but not defense counsel, where experts and defense counsel submitted affidavits stating that no confidential information was shared); *Space Sys./Loral*, 1995 WL 686369, at *5 (disqualifying experts but not counsel because the movant "has not demonstrated either that [opposing] counsel acted unreasonably or that their continued involvement in this case poses any threat to the fairness of this litigation," including because the movant "has not demonstrated that [the experts] have disclosed or are likely to disclose any confidential information to [the opposing party's] attorneys from which a taint can be imputed").

presumption" where "there is no legal impediment to [the challenging party] to obtain evidence

from [the expert witness] on the content of the conversation to satisfy the burden of proof."

*Shandralina G.*, 147 Cal. App. 4th at 412.

In *Collins*, the court explained the limited application of the *Shadow Traffic* rebuttable

presumption to circumstances where a moving party cannot communicate with the expert to

obtain information about what the expert discussed with the challenged attorney.  Although there

was evidence that confidential information was given to the expert, the *Collins* court held that the

rebuttable presumption did not apply because the expert, "[t]he most important source of the

information from which to ascertain whether [the expert] had passed on any confidential

information to [the challenged attorney] remained in [the moving party's] hands."  *Collins*, 121

Cal. App. 4th at 1129.  The *Collins* court found that, "[u]nder these circumstances, the reason for

shifting the burden of proof to the opposing party does not exist. We conclude the normal burdens

of proof, wherein the party moving for relief must establish its right to it, is appropriate."  *Collins*,

121 Cal. App. 4th at 1129.

The *Shadow Traffic* rebuttable presumption only applies when a moving party establishes

(1) that it had actually disclosed legally confidential information to the expert; and (2) the moving

party has no access at the time of the disqualification motion to evidence of the expert's

communications with the challenged lawyer.  Defendant has established neither factor—because

neither is present.

### 1.     Defendant Has Failed To Show It Communicated Protected Confidences To EAS

Under *Shadow Traffic* the defendant must first show that confidential information was

imparted to the expert.  *Collins*, 121 Cal. App. 4th at 1128-29.  Defendant's ambiguous and

contradictory declarations raise substantial questions as to whether the "confidences" that Resch

claims he shared with Campbell were legally privileged.  EAS's billing statements show that it

did not believe it was providing "Expert Witness Services" for Defendant. EAS's public

statements cast serious doubt on Defendant's claim that it had hired it for this case in May 2012.

EAS's newsletter of September 2012, which highlights this case, is directly at odds with Defendant's claim that EAS had already been retained. It is impossible to believe that EAS, a sophisticated expert service, would publicly comment on active litigation in which it had been requested to offer testimony. This is especially doubtful given EAS's strong statements that it advises its institutional clients to follow FDA regulations. These public comments by EAS are more consistent with its promise to Herrington that EAS was not involved in this case and would not be appearing adversely in any of the filed cases identified by Herrington.

Frankly, it would make no sense for Defendant to have used Campbell as an expert in this case – she was already on record as agreeing with Plaintiff's allegations in this case that Defendant's labels violated the law. (Ex. 1, Campbell Article, Ex. 2, EAS Newsletter from Sept. 2012).[56]

Further, technical information such as Campbell's knowledge of FDA regulation is not considered privileged. *Nikkal Indus., Ltd. v. Salton*, 689 F. Supp. 187 (S.D.N.Y. 1988). Moreover, such information was carved out from the confidentiality provisions of Chobani's contract with EAS which excluded knowledge possessed by EAS before entering into the contract.

### 2. Defendant Has Failed To Show That EAS And Campbell Are Unavailable

In order to obtain the benefit of the presumption Defendant must also prove that it cannot obtain evidence from EAS or Campbell about what might have been conveyed to Plaintiffs' Counsel. The *Collins* court explained the practical basis for the presumption and why it did not apply: "[t]he most important source of the information from which to ascertain whether [the

---

[5] Also available at www.easconsultinggroup.com/newsletter/EASseptember12newsletter.html/deskofchairman (last visited on April 15, 2013)

[6] Of course, Defendant could have "hired" EAS to block Plaintiffs from hiring EAS. But that practice would not only be unfair to EAS and Plaintiffs, it is also unethical and contrary to California law. *See e.g.*, *Hewlett-Packard Co.*, 330 F. Supp. 2d at 1096 (recognizing "the policies of allowing experts to pursue their trade, allowing parties to select their own experts, and preventing parties from creating conflicts solely for the purposes of preventing their adversary from using the services of the expert"). The record is clear that Defendant's "self-help" caused EAS and Campbell to refuse to work with the Plaintiffs' Counsel on all their food labeling misbranding litigation.

expert witness] had passed on any confidential information to [the plaintiff] thus remained in [the defendant's] hands." *Collins*, 121 Cal. App. 4th at 1129.

Defendant's submissions contradict any argument that EAS and Campbell were or are unavailable. Instead, they reflect that Defendant had access to EAS and Campbell to fully inquire and eliminate its concerns of breach. In fact, EAS assured Defendant that no confidential information was disclosed. Willful blindness is the only way to describe Defendant's failure to procure evidence from the "most important source."

Defendant's attempt to shift the burden to Plaintiff here is remarkably similar to that in *Shandralina,* where the court found that the presumption did not apply. The expert, the best source of evidence of what confidential information might have been conveyed to the challenged counsel, was available. In *Shandralina*, the defendant-doctor moved to disqualify the plaintiff's counsel because he had contacted an expert who failed to recall that he had previously been interviewed by defense counsel. The *Shandralina* court, applying *Collins*, rejected the rebuttable presumption because there was "no legal impediment to [the defendant] obtaining a declaration or (if [the expert] was recalcitrant) a deposition from [the expert] describing the content of the conversation." 147 Cal. App. 4th at 413. The *Shandralina* court also noted that defendant's counsel made no effort to obtain the expert's declaration, seek a deposition, or have the expert telephonically questioned by the court concerning the conversation with the plaintiff's attorney. The *Shandralina* court held that the defendant's failure to explore these evidentiary options were fatal to the defendant's arguments regarding the rebuttable presumption. *Id.* at 412.

*Shandralina* is directly on point. EAS and Campbell not only remained available but also fully cooperative. Resch states that he spoke with Campbell and EAS on several occasions to inquire about whether any confidential information was at risk. Resch Dec., ¶¶ 22, 31. Campbell and EAS unequivocally assured Defendant that nothing confidential was passed to Plaintiffs' Counsel. These facts alone preclude application of any presumption. *See Collins*, 121 Cal. App. 4th at 1129 (noting that the presumption did not apply where the "defendant's attorney's

declaration states explicitly that [the expert witness] spoke to him twice on the telephone and confirmed his original retention by [the defendant]").[7]

Defendant not only retained access, it had control over EAS and Campbell.  As Defendant admits in its motion, it *fired EAS.*  Defendant had access and control over EAS to obtain the necessary information.  These facts make the presumption factually unsupportable and legally inapplicable.  *See Shandralina G.*, 147 Cal. App. 4th at 412, n.14 (finding that while a challenging party having control over or a continuing relationship with the expert "would be *sufficient* for *Collins* to apply) (emphasis in original).  Defendant's tactical choice to fire EAS does not, retroactively, render EAS and Campbell "unavailable" in order to manufacture a rebuttable presumption.  *Collins* and *Shandralina* are controlling and the rebuttable presumption cannot apply.

### C. There Is No Evidence That Any Confidences Were Passed On To Plaintiffs' Counsel

Defendant's argument rests on its claim that an inference should be drawn that confidential information was conveyed by Campbell to Plaintiffs' Counsel.  Any inference, however, must be *reasonable* and not based on "suspicion, imagination, speculation, surmise, conjecture or guesswork." *Beck Development Co. v. Southern Pacific Transportation Co.*, 44 Cal. App. 4th 1160, 1204 (1996).  "[A] trier of fact may not indulge in inferences rebutted by clear, positive and uncontradicted evidence. *Fullerton Union High School Dist. v. Riles*, 139 Cal. App. 3d 369, 383 (1993).

Moreover, when there is no disparity in the parties' ability to produce evidence regarding disqualification challenges, courts do not permit presumptions, but rather impose the traditional burdens of proof. *Los Angeles County v. Superior Court,* 222 Cal. App. 3d 647, 271 Cal. Rptr.

---

[7] Defendant may in its reply brief claim a "legal impediment" due to some privilege as to the conversations between Plaintiffs' Counsel and EAS.  To the extent any privilege existed which might have constituted a "legal impediment," that argument is moot since Plaintiffs and Plaintiffs' Counsel have waived any privilege that might limit Defendant's ability speak with Campbell and EAS to confirm that she did not reveal any confidential information.  (Clifford Dec., ¶ 5)  After waiving privilege, Plaintiffs' Counsel suggested that Defendant contact Campbell to confirm no privileged communications were disclosed and withdraw this baseless motion. *Id.*  Defense Counsel evidently has declined this suggestion.

698 (1990).  Because the *Shadow Traffic* presumption does not apply, Defendant has the burden of proving that the confidential information it imparted to EAS and Campbell was transmitted to Plaintiffs.  *Collins*, 121 Cal. App. 4th at 1128-29.  The record here contains direct evidence that no confidential matters were disclosed.  Defendant has not and cannot meet this heavy burden.

## D.    There Is No Evidence That Confidential Information Was Disclosed

The uncontradicted declarations of counsel conclusively demonstrate that no confidential information was disclosed by EAS.  To the contrary, all the evidence (including that provided by Defendant) establishes that no such information was sought by or delivered to Plaintiffs' Counsel.  The declarations from Herrington and Nelkin unequivocally state that:

- they are the only attorneys among the firms challenged by Defendant in this motion that had any interaction with EAS and Campbell;

- they were unaware that EAS or Campbell had been retained by Defendant or its attorneys until being informed by Defendant's counsel;

- they never discussed the allegations in this case with EAS or Campbell;

- they never discussed any litigation strategies or theories in this case or any other case, including the ones EAS had been hired to work on;

- they never met with or spoke to "Ms. Leon" (identified by Resch)

- Campbell never disclosed any confidential information to them about Defendant's products or legal theories in this case or any other case;

- EAS and Campbell were not hired for this case and had no contact with Counsel of Record in this case.

These declarations are not contradicted by any evidence and, therefore, as the courts found in both *Shandralin*a and *Collins*, disqualification is not warranted.

In *Shandralina* the challenged attorney denied receiving any confidential information and the defendant submitted no direct evidence from the expert to impeach the attorney's description of the conversations.  The *Shandralina* court found that the declarations submitted by the challenged attorney conclusively demonstrated that no confidences were shared by the expert.  *Shandralina*, 147 Cal. App. 4th at 414-17.

In *Collins* the court found such contradictory evidence "conspicuously absent" and fatal to the disqualification motion.  *Id*. at 1130.  Despite the declaration by the defense attorney that he

had disclosed privileged information to the expert, the *Collins* court found "[t]he absence of this declaration raises a huge red flag against granting the motion to recuse in light of [the defense attorney's] sworn declaration that [the expert] is still [the moving attorney's] consultant" and that "the uncontradicted evidence in this case from [the plaintiff's attorney] was that he did not know that [the expert] had been previously retained by [the defendant] until after he disclosed this witness and defense counsel notified him of the conflict." *Id.* The court found disqualification unwarranted where the plaintiff's attorney swore under penalty of perjury that the expert had not disclosed any confidential information from opposing counsel. *Id.* at 1130-31.

Here, the uncontradicted declarations of Plaintiffs' Counsel (Herrington and Nelkin) are that no one at EAS disclosed any confidential information. The issues in this case were never even discussed. These declarations are bolstered by EAS' assurance that no confidences were breached.

Chobani relies on cases involving side-switching experts to argue that Campbell was incapable of maintaining confidential information. These cases have no persuasive application as EAS's work involved different cases. *See Allstate Ins. Co. v. Electrolux Home Products, Inc.,* 840 F. Supp. 2d 1072, 1084 (N.D. Ill. 2012) (it is not "a difficult task" for experts to "compartmentalize" information and asking experts to "exclude information obtained in one case while forming an expert opinion in another is not an impossibility; rather, it is a task performed in the court system each day").

Defendant has offered no evidence to overcome the affirmative evidence of the declarations of Herrington and Nelkin.

### E.   The Case Law Relied Upon By Defendant Is Inapposite

Defendant's reliance on *Shadow Traffic* and the Ninth Circuit's decision in *Erickson v. Newmar Corp.*, 87 F.3d 298 (9th Cir. 1996) is misplaced. *Shadow Traffic's* facts have no relevance here. In *Shadow Traffic* the expert actually "switched sides" in the *same case*. Defendant does not contend that EAS and Campbell "switched" sides here. It claims that EAS and Campbell "betrayed" it by agreeing to work on other cases involving other food company

defendants.  This is an incredible stretch of *Shadow Traffic* and its presumption, theoretically precluding every non-industry litigant from ever contacting EAS or Campbell regarding any matter involving a label which violates state or federal law.  The undisputed facts here are that EAS and Campbell did not "switch" sides in a case.

Defendant's reliance on *Erickson* is also misplaced.  In *Erickson*, a party discharged its testifying expert in response to his opposing counsel's impermissible *ex parte* during a break in the expert's deposition where the defendant's lawyer hired the plaintiff's expert ostensibly for a different litigation.  The plaintiff concluded thereafter that it could no longer use the expert because of the defense lawyer's possible influence.  The court of appeals found that the lawyer's conduct was an improper attempt to circumvent the civil procedure rules for expert discovery, particularly Fed. R. Civ. P. 26(b)(4).

Plaintiffs' Counsel never knew that EAS was providing *any* services to Defendant regarding this litigation or anything else.  There is certainly no reason to think that Plaintiffs' Counsel retained EAS as a subterfuge to drive a wedge between Defendant and its expert witness.

If, on the other hand, Defendant contracted with Campbell to serve only as a consulting expert, then *Erickson* is entirely inapposite.  *Erickson* rested on the understanding that then-Rule 26(b)(4) of the Federal Rules of Civil Procedure implicitly forbade *ex parte* communications with the opposing party's testifying expert regarding the expert's future testimony.  *Erickson*, 87 F.3d at 301 ("At the time of the present litigation, [Rule 26(b)(4)] provided that a lawyer's permissible contact with an opposing party's expert was limited to interrogatories and, upon leave of the court, depositions.").

Defendant also describes Campbell/EAS as its "legal expert" and attempts to characterize its relationship with them as akin to one with former counsel.  This attempt is factually unsupported and legally inaccurate.  EAS and Campbell, although experts in the field of food labeling regulations, are not lawyers. California law is clear that the role of the expert is different and the scope of privilege, even under the amended Federal Rule 26, is more limited than in situations where communications are with counsel.  *See Erickson*, 87 F.3d at 300 ("'[t]he expert

disqualification standard must be distinguished from the attorney-client relationship 'because experts perform very different functions in litigation than do attorneys.  Experts are not advocates in the litigation but sources of information and opinions'").

This case resembles *North Pacifica v. City of Pacific Heights*, 335 F. Supp. 2d 1045 (N.D. Cal. 2004), where the court held that the presumption of confidence sharing was rebutted by the declarations of challenged counsel, which clearly demonstrated that the expert had shared nothing.  The court noted that the test applicable to disqualification of counsel employing side-switching experts (which is, of course, not the case here) is: (1) did the expert have confidential information pertaining to the party's trial preparation and strategy; (2) did he disclose it to challenged counsel; and (3) if he did disclose it, does counsel's continued representation of the opponent threaten to taint all further proceedings? *North Pacifica,* 335 F. Supp. 2d at 1051.

The court noted that experts play a more limited role in litigation; they are tasked with providing opinions on specific matters raised in the litigation.  Analyzing the second question under *Shadow Traffic*, the *North Pacifica* court held that although there was a showing made to apply the presumption, it had been rebutted.  *Id.,* at 1052.  The court found that the declarations of challenged counsel unequivocally stated that no confidential information was shared; that the declarations were substantive, detailed, and complete; and that the moving party had done nothing to raise any substantial doubt about the credibility of the declarations. Instead, the *North Pacifica* court found that the factual circumstances indicated that the likelihood of disclosure of confidential information was extremely slim.  *Id.*

Defendant's motion is even more strained than in *North Pacifica.*  Defendant's challenge relates to an expert and counsel discussing an entirely separate action, involving different corporate defendants, involving different labels on different products.  In addition, no factual basis exists to apply a presumption.  Like *North Pacifica*, the declarations of counsel, Herrington and Nelkin, are clear, substantive, detailed, complete and unequivocal.  Defendant's submissions not only lack any evidence which raises any substantial doubt about the credibility of the

declarations of Herrington and Nelkin, they in fact corroborate the declarations of counsel: EAS and Campbell reported to Defendant's counsel that nothing confidential was shared.

Defendant claims that as soon as EAS indicated that it was not interested in working on all of the cases which Plaintiffs' Counsel identified, they should have known that EAS had been retained in this case. The declarations of Herrington and Nelkin make clear that this characterization is just not true. EAS, which publicly held itself out as experts in federal regulations relating to the food industry, only indicated that there were some impediments to its working on some of the cases. EAS never identified a conflict as to the *Kane v. Chobani* case. Instead it assured Plaintiffs' Counsel that it would not work for the defendants in any of the cases on the list provided by Plaintiffs' Counsel, including this case. The declarations of Defendant, together with the undisputed declarations of Plaintiffs' Counsel, demonstrate conclusively that EAS did not inform them that it had been retained in this case. Defendant's claim that counsel knowingly hired EAS in the face of an identified "conflict" is just not true.

### F.     Ethics Experts Reviewing the Complete Record Independently Conclude That Plaintiffs' Counsel Acted Ethically and That Disqualification Is Not Appropriate

Defendant has submitted the declarations of Geoffrey Hazard and Ellen Peck in support of its motion. These opinions should be given little if any weight. Neither Hazard nor Peck had the complete factual record before them to render any reasonable opinions, let alone their opinions that disqualification is the only potential remedy. Plaintiffs' ethics experts, reviewing the complete factual record, have concluded that (1) Plaintiffs' Counsel did nothing wrong and (2) there is no basis for disqualification.

#### 1.     Professor Lawrence Fox

Professor Fox is a Visiting Lecturer in Law at Yale Law School teaching legal ethics and professional responsibility and has taught and lectured on legal ethics at more than 35 schools throughout the country including Harvard Law School and the University of Pennsylvania Law School.

Fox believes that "[t]here is nothing in the law to prevent Betty Campbell, an independent expert, from working both for and against Chobani on unrelated matters at the same time." Fox Dec., ¶ 20.  In fact he believes "it is a mark of the ideal expert that he or she calls them as he or she sees them, acting totally independently from the party that hires the expert with but with one exception:  the expert who has been hired by one party cannot subsequently work for the opposing party in a particular case when a) the expert and the first party formed a confidential relationship; b) the expert actually learned privileged information relevant to the current case; c) fairness to the parties supports disqualification; and d) sound public policy supports disqualification, not of the hiring lawyer, but of the expert." *Id.*

Fox does not believe this exception applies because (1) "these plaintiffs' lawyers did not retain Ms. Campbell to testify against Chobani," (2) "Chobani did not retain Campbell to testify for Chobani in these cases," and (3) "public policy says that an expert like Campbell who had a role in developing the regulations at issue should be available to manufacturers, on the one hand, and those who challenge the conduct of the manufacturers, on the other, on an equivalent basis. By arguing that "once Chobani consulted her on the Chobani lawsuit, Campbell and, indeed, all of EAS, was forever barred from considering engagements adverse to the entire food industry when it came to those regulations," Professor Fox believes that "the defendant and its lawyers completely confuse the limitations on Mayer Brown, as lawyers, from taking positions adverse to the interests of Chobani (limitations on lawyers that this writer celebrates and seeks to enforce all the time), with the extremely narrow limitations on experts as independent operatives whose most valued quality is their objectivity."  *Id. ¶* 21.

### 2.     Professor Bruce Green

Professor Bruce Green, who for 26 years has been writing about and teaching ethics to law students, lawyers, and judges alike, believes that "Chobani has not established that any plaintiffs' counsel were in any way blameworthy for retaining EAS, given EAS's conclusion that it was entitled to serve as plaintiffs' expert in certain other matters and its implicit representation that it was not serving as defendants' expert in any misbranding lawsuits."  Green Dec., p. 3.

Professor Green also points out the unfairness of Chobani's argument to experts and other plaintiffs:

> Chobani appears to argue that wholly apart from its contract with EAS, by operation of ethics rules and opinions, EAS was obliged to decline to work with plaintiffs' counsel in other lawsuits to protect against the possibility of disclosing Chobani's confidences.  It would be economically unfair to experts, however, to impose restrictions on the acceptance of other engagements…It would be unfair to hold that once EAS agreed (assuming it did) to consult with Chobani as a defendant in a single lawsuit in which Chobani is accused of misbranding its yogurt product, EAS is implicitly barred from working as an expert in any other misbranding lawsuit based on similar legal theories."  *Id*. at 17.

According to Professor Green, "[P]laintiffs' counsel should not be disqualified because their involvement in this litigation will not taint the proceedings or harm Chobani: EAS has asserted that it never disclosed Chobani's confidential information to plaintiffs' counsel, and the declarations of Mr. Herrington and Mr. Nelkin confirm that to be true.  Chobani's speculation that EAS may have inadvertently, unconsciously and implicitly disclosed material confidential information to Mr. Herrington and Mr. Nelkin does not justify any sanction or remedy, much less the draconian disqualification order Chobani seeks." *Id*. at 3.

Professor Green is also critical of Ellen Peck's claim that lawyers have a "duty to protect the confidentiality of opposing parties' attorney-client information and work product and to recognize that protecting [the other side's] confidentiality is an imperative to be obeyed in both form and substance" (Peck Dec., at ¶ 6), and that, therefore, Plaintiffs' counsel had a duty to refrain from hiring EAS as an expert.  He believes:

> [Peck's] assertion vastly over-reads decisions she cites such as *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644 (1999), which requires a lawyer who receives privileged documents as a result of the other side's inadvertence to notify the other side.  To be sure, plaintiffs' counsel could not properly seek disclosure of Chobani's privileged information from EAS or accept it, but there is no suggestion that they did so.  The case law did not require other plaintiffs' counsel to deny their clients access to EAS's expert assistance as an extreme safeguard against inadvertent disclosures.  The principal responsibility for safeguarding Chobani's confidential information resided with Chobani's counsel, not with its opposing counsel.  (Green Dec., p. 18).

### 3. Ellen Pansky

Ms. Pansky is a former prosecutor for the State Bar of California, and had handled thousands of investigations and trial-level prosecutions based on attorney misconduct.  She also

served as Assistant General Counsel for the State Bar of California, briefing and arguing cases before the California Supreme Court, serving as counsel for various subcommittees of the State Bar's Board of Governors, and representing the State Bar in outside litigation.

Her review of the facts of this case have led her to opine:

> Based upon the undisputed fact that there is no evidence that plaintiffs' counsel in this matter ever received any confidential information relating to Chobani from any source, including and not limited to EAS and Campbell, coupled with the fact that plaintiffs' counsel never sought to retain EAS and Campbell in connection with the instant action, the conduct of plaintiff's lawyers has, at all times, been in full compliance with the requirements of the California rules of ethics and California case law." Pansky Dec., ¶ 7(a).

Specifically, her opinion is "based upon established California authorities including California Rules of Professional Conduct, published case law, and accepted legal ethics opinions, establishing  the following: (1) California does not subscribe to the theory of positional conflicts; (2) knowledge of a party's general "Playbook" of tactics and strategies does not constitute  a conflict of interest; (3) there is a presumption that lawyers will uphold their ethical duties; and (4) there is no evidence whatsoever that any confidential information provided to EAS by Chobani's attorneys was disclosed to plaintiff's counsel or otherwise."  Pansky Dec., ¶ 7(b).

Pansky believes that "[r]educed to its essence, movants' allegation is based on an assumption that a lawyer, and by extension, an expert consultant, is precluded from asserting a different position for different clients in a given area of law."  Pansky Dec., p. 10.  According to Pansky:

> California has never adopted a prohibition against positional conflicts limiting the ability of legal counsel to advocate antagonistic positions on behalf of different clients in separate legal matters."  *Id*. (citing American Bar Association Model rule 1.7, comment 24) ("Ordinarily, a lawyer may take inconsistent legal positions in different tribunals at different times on behalf of different clients. The mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter does not create a conflict of interest…"); Restatement of the Law Governing Lawyers (3rd) 2000, section 128, comment (f).  *Id*. at 10-11.

Ms. Pansky explains that "[i]n California, it is presumed that lawyers will uphold their ethical duties:"

> [i]t is well recognized that "the court should start with the presumption that, unless proven otherwise, lawyers will behave in an ethical manner. Society has

entrusted lawyers with confidences, and we should not assume that lawyers will violate these confidences when involved in particular relationships."

Pansky Dec., p. 13 (quoting *DCH Health Servs. Corp. v. Waite*, 95 Cal. App. 4th 829, 834 (2002)) (finding that while lawyer-wife held confidential information gained from her earlier affiliation with opposing lawyer-husband's client, there was no evidence any of this information had been disclosed to the lawyer-husband and the court refused to presume any disclosure of confidential information had occurred); *see also* ABA Committee on Ethics and Professional Responsibility Opinion No. 340 (1975).

Further, even if there was an appearance of impropriety, (which Ms. Pansky does not believe has been shown here), she opines that disqualification still would not be appropriate. Pansky Dec., p. 15 (citing *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 306, 254 Cal. Rptr. 853 (Ct. App. 1989) ("Despite the many references to the appearances standard in our case law, and despite occasional judicial statements that '[d]isqualification is proper ... to avoid any appearance of impropriety' [citation], there is no California case in which an attorney has been disqualified solely on this basis. …"); *DCH Health Services Corp. v. Waite*, 95 Cal. App. 4th at 833 ("[a]s distinguished from judicial recusals, which may be required on the basis of a mere 'appearance of impropriety' (Cal. Code Jud. Ethics, canon 2; *see* Code Civ. Proc., § 170.1, subd. (a)(6)(C)), such an appearance of impropriety by itself does not support a lawyer's disqualification.").

### 4.     Professor Joshua Davis

Professor Davis, an Associate Dean for Faculty Scholarship, Professor of Law, Director for the Center for Law and Ethics at the University of San Francisco School of Law, reaches the same conclusions as Fox, Green, and Pansky:

> Disqualification based on a relationship with an expert is different from disqualification based on a relationship with an attorney.  Even when counsel for one side consults with an expert and then the expert provides services to the other side *in the very same case*, California courts will not automatically disqualify counsel.  They will do so only if there is an appropriate basis for concluding that the former attorney (the "disclosing attorney") shared confidential information to the expert and the expert in turn shared that information with the latter attorney (the "challenged attorney").  Davis Dec., ¶ 26 (citations omitted).

Professor Davis believes:

Disqualification of Plaintiffs' Counsel would be inappropriate for two reasons, each sufficient by itself.  First, the evidence does not support the conclusion that Plaintiffs' Counsel learned any confidential information about Chobani from EAS.  Moreover, uncontroverted evidence shows the contrary:  that Plaintiffs' Counsel did *not* obtain any confidential information from EAS.  *Id*. ¶ 4.

Professor Davis also has opined:

The second reason disqualification would be inappropriate is that Plaintiffs' Counsel acted in an ethically proper manner.  EAS assured Plaintiffs' Counsel that EAS would not provide consulting services to any of the defendants in Plaintiffs' Counsel's misbranding cases.  Plaintiffs' Counsel acted in a responsible manner by relying on that representation.  Case law and policy considerations both counsel against disqualifying attorneys who act as Plaintiffs' Counsel did.  *Id*. ¶ 5.

Professor Davis also believes that Plaintiffs' Counsel had no reason to contact defendants:

True, EAS declined to provide services to Plaintiffs' Counsel in some of their cases.  And EAS refused to divulge information about why it had done so.  But EAS's reticence itself was understandable.  A company concerned with maintaining confidences would resist disclosing more information than necessary about the identity of its clients and the nature of the work it was doing on their behalf.  In short, Plaintiffs' Counsel—unlike the attorneys in *Shadow Traffic* (and *Western Digital*)—had no reason to press for further information about potential conflicts and good reason not to do so.  *Id*. ¶ 44.

According to Professor Davis, "California has indicated some culpability on the part of an attorney receiving confidential information is required for disqualification.  *Id*. ¶ 47 citing *Rico*, 42 Cal. 4th at 818 ("mere exposure to an adversary's confidence is insufficient, standing alone, to warrant an attorney's disqualification"); *Aero-General Corp. v. Transport Indemnity Ins.*, 18 Cal. App. 4th  996 (1993) (disqualification not warranted, in part, because the attorney "was free of any wrongdoing in his initial receipt of the [inadvertently disclosed] document" at issue).  Davis Dec., ¶ 45.

He also explains why disqualifying Plaintiffs' Counsel would be devastating to the plaintiffs' ability to have their claims determined in the merits:

To be sure, plaintiffs would lose their choice of counsel.  [Citation omitted]. Butthe harm they would suffer is much more grievous than that.  As Professor Hazard acknowledges, disqualification in this action "may be disastrous for the present prosecution of the suit."  *Declaration of Geoffrey C. Hazard*, ¶ 5.  Indeed, plaintiffs might not be able to proceed effectively with their case at all.  In effect, Chobani and the others would gain a tremendous strategic advantage. Davis Dec., ¶ 47.

On the other hand, he believes:

[I]t is hard to imagine what harm, if any, Chobani would suffer if the case were simply to go forward. Chobani has not provided even a hint of its risk of harm. The advice EAS gave Plaintiffs' Counsel seems quite straightforward and unrelated to any confidences Chobani might have shared with EAS.  Moreover, given that Plaintiffs' Counsel did not know Chobani was conferring with EAS about the misbranding cases—indeed, plaintiffs thought they knew Chobani was *not*—it would seem Plaintiffs' Counsel could not possibly have drawn any inferences about Chobani's strategy.  *Id*. ¶ 48.

## ~~V.~~ IV.   CONCLUSION

Based on the complete factual record there is simply no basis to grant Defendant's motion. Plaintiffs' Counsel did not know, and had no reason to suspect, that EAS had any existing relationship with Defendant when they hired EAS.  The clear declarations of Plaintiffs' Counsel reflect that absolutely no confidential information was disclosed.  There was no opportunity for any of Defendant's trial strategies to be leaked either expressly or subconsciously by Campbell. The ethics experts who have reviewed the complete factual record have unanimously concluded that Plaintiffs' Counsel did nothing wrong and that disqualification is not justified.  Plaintiffs respectfully request that this Court deny Defendant's motion.

Dated:  April 15, 2013

Respectfully Submitted,

CLIFFORD LAW OFFICES, P.C.


 /s/  *Robert A. Clifford*
Robert A. Clifford (*Pro Hac Vice*)
rac@cliffordlaw.com
Michael S. Krzak (*Pro Hac Vice*)
msk@cliffordlaw.com
Colin H. Dunn (*Pro Hac Vice*)
chd@cliffordlaw.com
120 North LaSalle, 31st Floor
Chicago, Illinois 60602
Telephone: (312) 899-9090
Facsimile:  (312) 251-1160

PRATT & ASSOCIATES
Ben F. Pierce Gore (SBN 128515)
pgore@prattattorneys.com
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Facsimile:   (408) 369-0752

PROVOST UMPHREY LAW FIRM LLC

Darren L. Brown (*Pro Hac Vice*)
dbrown@provostUmphrey.com
490 Park Street
Beaumont, Texas 77701
Telephone:  (409) 299-5178
Facsimile:   (409) 813-8630