UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| KATIE KANE, *et al.*, individuals, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHOBANI, INC.,<br><br>Defendant. | Case No.: 12-CV-02425-LHK<br><br>ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE FIRST AMENDED COMPLAINT |

Before the Court is Defendant Chobani, Inc.'s ("Defendant" or "Chobani") Motion to Dismiss Plaintiffs Katie Kane, Arriana Rosales, and Darla Booth's (collectively "Plaintiffs") Second Amended Complaint. ECF No. 38 ("Mot." or "Motion to Dismiss"). Having considered the submissions of the parties, the relevant law, and the arguments of the parties at the motion hearing, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion.

I.      BACKGROUND

A.      **Plaintiffs' Factual Allegations**

Plaintiffs allege that they purchased Defendant's yogurt products. *See* ECF No. 35 ("SAC" or "Second Amended Complaint") ¶¶ 93-95. Specifically, Plaintiffs allege that they purchased the

1

United States District Court
For the Northern District of California

pomegranate, lemon, peach, vanilla, strawberry, and blueberry flavors of Defendant's Chobani Greek Yogurt.  *See id.* ¶¶ 93-95.  Plaintiffs contend that Defendant's "Chobani Greek Yogurt" and "Chobani Greek Yogurt Champions"[1] (collectively, "Yogurts") are mislabeled.  Plaintiffs' mislabeling allegations fall into three categories:

    *Evaporated Cane Juice ("ECJ") Allegations* - Plaintiffs allege that Defendant's labels refer to the sweetener in Defendant's Yogurts as "evaporated cane juice" ("ECJ").  *Id.* ¶ 10.  Plaintiffs contend that ECJ is essentially just "sugar" or "dried cane syrup."  *Id.* ¶¶ 10, 12.  Plaintiffs allege that the use of the term ECJ to describe this ingredient is false and misleading and conceals the fact that the sweetening ingredient is "sugar" or "dried cane syrup."  *Id.*  Plaintiffs further allege that Defendant's use of the term ECJ violates various Food and Drug Administration ("FDA") regulations requiring manufacturers to refer to ingredients in food products by their "common and usual names."  *See id.* ¶ 56 (citing 21 C.F.R. §§ 101.2, 101.4, and 102.5); *id.* ¶ 58; *id.*, Ex. C (FDA Draft Guidance for Industry: Ingredients Declared as Evaporated Cane Juice) ("FDA Guidance re: ECJ") (stating that it is the "FDA's view that the term 'evaporated cane juice' is not the common or usual name of any type of sweetener") (citing 21 C.F.R. § 101.4).  Plaintiffs further allege that because the Standard of Identity for Yogurt, which governs when a product may be called a "yogurt," does not list ECJ as an authorized sweetener, Defendant was prohibited from marketing its products as a yogurt.  *Id.* ¶¶ 53-55 (citing 21 C.F.R. § 131.200 ("Standard of Identity for Yogurt")).  To the extent Plaintiffs' claims are based on Defendant's use of the term ECJ on Defendant's labeling, the Court refers to these claims generally as the "ECJ Claims."

    *No Sugar Added Allegations* - Plaintiffs also allege that Defendant claims that its Yogurts do not include any added sugar.  *Id.* ¶ 66.  Specifically, Plaintiffs cite to two statements on Defendant's website.  The first statement is as follows:

        Sugar isn't listed as an ingredient in your 0% Plain.  Where do the 7g come from?

        The 7g of sugar listed on the nutrition facts panels of our Plain 0% and 2% Chobani comes from a naturally occurring type of sugar found in all dairy products called "lactose."

---

[1] As will be discussed *infra*, Plaintiffs do not allege that they purchased the Chobani Greek Yogurt Champions product.

2

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

1

> This lactose often called "milk sugar," is the only sugar you'll find as *we don't add sugar to our yogurt.*

2

*Id.* (emphasis added by Plaintiffs).  Additionally, Defendant states:

3

> Does Chobani Champions contain extra sugar?

4

> No way! *Just because Champions is made for kids doesn't mean that we need to add extra sugar.*

5

6

> You won't find any high fructose corn syrup or artificial ingredients, flavors, or colors in our yogurt.  Just low-fat milk sourced from local-area farms; real fruit, lightly sweetened with evaporated cane juice; pure clover honey (in our Honey-Nana flavor); life and active cultures; and probiotics.

7

8

> We believe in delicious, healthy products that are made with only natural ingredients.

9

*Id.* ¶ 67 (emphasis added by Plaintiffs).  The Court refers to the italicized representations -- "Just

10

because Champions is made for kids doesn't mean that we need to add extra sugar" and "we don't

11

add sugar to our yogurt" -- as the "No Sugar Added Representations."  Plaintiffs also allege,

12

without citing any specific statement or source, that Defendant "utilizes various media to

13

disseminate claims that… its yogurt has 'no sugar added.'"  *Id.* ¶ 68.  Plaintiffs contend that,

14

because Defendant's Yogurts include ECJ, these statements are false and misleading and violate

15

FDA labeling requirements pertaining to the use of the phrases "no sugar added," "no added

16

sugar," and "without added sugar."  *Id.* ¶¶ 69.  The Court refers to Plaintiffs' claims based on the

17

No Sugar Added Representations as the "No Sugar Added Claims."

18

*All Natural Allegations* - Finally, Plaintiffs allege that Defendant has falsely stated that its

19

Yogurts contain "[o]nly natural ingredients" and are "all natural."  *Id.* ¶¶ 5-6, 12.  The Court refers

20

to Defendant's representations regarding the Yogurts' natural quality and use of natural ingredients

21

as the "All Natural Representations."  Plaintiffs allege that these representations appeared on the

22

labeling for Defendant's Yogurts and on Defendant's website.  *Id.*[2]  Plaintiffs allege that these

23

representations were false and misleading because the Yogurts include artificial ingredients,

24

flavorings, and colorings as well as chemical preservatives.  *Id.* ¶¶ 80-81.  While the SAC is not

25

26

27

28

---

[2] The Court notes that based on the images of the Yogurts provided in the SAC, *see id.* ¶¶ 5-6, it does not appear that the "all natural" claim appears on the label.  Rather, the label states only that Defendant's Yogurts contain "[o]nly natural ingredients."  *See id.*

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

1  entirely clear as to the specific ingredient Plaintiffs contend was unnatural, it appears that Plaintiffs

2  are concerned with Defendant's inclusion of "fruit or vegetable juice" "for color." *Id.* ¶¶ 14, 22,

3  81. Because fruit for color is the only unnatural ingredient that Plaintiffs have specifically

4  identified, Plaintiffs' claims alleging that the Yogurts included unnatural ingredients are limited to

5  this ingredient. The Court refers to Plaintiffs' claims based on the All Natural Representations as

6  the "All Natural Claims."

7      Plaintiffs allege that they each "read the labels on Defendant's [Yogurts], including the

8  [i]ngredient, 'evaporated cane juice' and the '[a]ll [n]atural [i]ngredients' and/or '[o]nly [n]atural

9  [i]ngredients' claims on the labels, before purchasing them." *Id.* ¶¶ 93-95. Plaintiffs allege that

10  they "believed Defendant's [Yogurts] contained only natural sugars from milk and fruit and did not

11  contain added sugars or syrups" and that the Yogurts "contained only natural ingredients." *Id.*

12  Plaintiffs also allege that, "[h]ad Plaintiff[s] known Defendant's [Yogurts] contained added dried

13  cane syrup and unnatural ingredients, [they] would not have purchased" them. *Id.* Plaintiffs also

14  allege that they "would not have purchased Defendant's [Yogurts] had they known they were not

15  capable of being legally sold or held." *Id.* ¶ 97.

16      Plaintiffs allege nine causes of action. Plaintiffs' first cause of action is for violation of the

17  unlawful prong of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"),

18  predicated on violations of: (1) the False Advertising Law, Cal. Bus. & Prof. Code § 17500

19  ("FAL"); (2) the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*. ("CLRA"); and (3)

20  California's Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code

21  §§ 109875 *et seq.* The Sherman Law incorporates "[a]ll [federal] food labeling regulations and any

22  amendments to those regulations…." Cal. Health & Safety Code § 110100(a). Plaintiffs also

23  allege causes of action for: (1) violation of the UCL's unfair prong; (2) violation of the UCL's

24  fraud prong; (4) violation of the FAL because Defendant's labeling and advertising are "false and

25  misleading"; (5) violation of the FAL because Defendant's advertising is "untrue"; (6) violation of

26  the CLRA; (7) unjust enrichment; (8) violation of the Song-Beverly Consumer Warranty Act; and

27  (9) violation of the Magnuson-Moss Warranty Act.

28

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

**B.      Procedural Background**

Plaintiffs filed their Complaint on May 14, 2012.  ECF No. 1.  Plaintiffs filed their First

Amended Complaint on August 30, 2012.  ECF No. 14.  Plaintiffs filed a Second Amended

Complaint on October 10, 2012.  ECF No. 35.  Defendant moved to dismiss the SAC on November

12, 2012.  ECF No. 38 ("Mot.").  Plaintiffs filed an Opposition to this Motion on January 14, 2013.

ECF No. 42 ("Opp'n").  Defendant filed a Reply on February 11, 2013.  ECF No. 46 ("Reply").

The Court held a hearing on the Motion to Dismiss on March 28, 2013.

On April 24, 2013, the Court granted the parties leave to file briefs to address the Ninth

Circuit's decision in *Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013).  Both parties filed their

supplemental briefs on May 1, 2013.  ECF No. 97 ("Def. Sur-Reply"); ECF No. 96 ("Pls. Sur-

Reply").

## II.      LEGAL STANDARD

**A.      Rule 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  For purposes

of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true

and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St.*

*Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the court need not accept as true allegations contradicted by judicially

noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may

look beyond the plaintiff's complaint to matters of public record" without converting the Rule

12(b)(6) motion into one for summary judgment,  *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

1995).  Nor is the court required to "'assume the truth of legal conclusions merely because they are

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

**B.     Rule 9(b)**

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  Courts in the Ninth Circuit have held that claims for both fraud and negligent misrepresentation are subject to Rule 9(b).  *See Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999).  To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. Glenfed, Inc. (In re Glenfed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996).

**C.     Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely

6

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

granted when justice so requires," bearing in mind "the underlying purpose of Rule 15… [is] to facilitate decision[s] on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations, quotation marks, and alterations omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original). "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quoting *In re Read-Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003)). Indeed, repeated failure to cure a complaint's deficiencies by previous amendment is reason enough to deny leave to amend. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (citing *Foman*, 371 U.S. at 182; *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).

## III.      DISCUSSION

Defendant seeks to dismiss Plaintiffs' Second Amended Complaint ("SAC") for the following reasons:  (1) Plaintiffs have not alleged facts showing that a "reasonable consumer" is likely to be deceived by the challenged advertising and a reasonable consumer would not be deceived by the challenged statements; (2) Plaintiffs lack standing to pursue their claims; (3) Defendant has not violated any labeling regulations; (4) Plaintiffs' claims are preempted; (5) Plaintiffs' claims fall under the primary jurisdiction of the FDA; (6) Plaintiffs have failed to comply with Rule 9(b); (7) unjust enrichment is not an independent cause of action; and (8) Plaintiffs fail to state a claim under the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 ("MMWA").  *See* Mot. at 5-25.  The Court addresses each of these issues below.

### A.      Standing

At the outset, the Court addresses Defendant's arguments that Plaintiffs lack standing under

7

Article III, the UCL, the FAL, and the CLRA. Mot. at 9. The Court sets forth the standards for standing first then addresses Defendant's arguments.

### 1.   Standards

#### a.   Article III Standing

An Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) ("'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'") (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) and that the injury is redressable by a favorable ruling. *Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2752 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000). Article III's standing requirements may be satisfied by allegations that a plaintiff purchased a product he otherwise would not have purchased, or spent more on such product, in reliance on the defendant's misrepresentations. *See, e.g.*, *Brazil v. Dole Food Co., Inc.*, --- F. Supp. 2d ---, 2013 WL 1209955, at *11-13 (N.D. Cal. Mar. 25, 2013) (holding that "Brazil suffered a concrete and particularized injury… [because] he allegedly was deceived, and then paid money that he would not otherwise have paid had he known about the true nature of Defendants' products"). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

#### b.   UCL, FAL, and CLRA Standing

Plaintiffs also must demonstrate standing under the UCL's unlawful, unfair, and fraudulent prongs, the FAL, and the CLRA. The standards for standing under these statutes are similar to the requirements for Article III standing. In order to have standing under the FAL and the CLRA, a plaintiff must allege reliance on the alleged misrepresentation and economic injury. *See e.g.* Cal. Bus. & Prof. Code § 17535 (providing that a plaintiff must have "suffered injury in fact and has lost money or property as a result of a violation of this chapter"); *Durell v. Sharp Healthcare*, 183

8

United States District Court
For the Northern District of California

1   Cal. App. 4th 1350, 1367 (2010) (finding plaintiff's CLRA claim failed because plaintiff failed to

2   allege facts showing that he "relied on any representation by" defendant).

3         Turning to the UCL, the UCL prohibits business practices that are unlawful, unfair, or

4   fraudulent.  Courts have held that, in order to have standing under the UCL's fraud prong, a

5   plaintiff must demonstrate that he or she actually relied upon the allegedly fraudulent

6   misrepresentation.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).  Courts have extended

7   this actual reliance requirement to claims under the UCL's unlawful prong to the extent "the

8   predicate unlawful conduct is based on misrepresentations."  *Durell*, 183 Cal. App. 4th at 1363.

9   Moreover, in *Kwikset Corp. v. Superior Court*, the California Supreme Court suggested that the

10  actual reliance requirement applies whenever the underlying misconduct in a UCL action is

11  fraudulent conduct.  *See id.*, 51 Cal. 4th 310, 326 (2011) (holding that plaintiff was required to

12  demonstrate actual reliance to establish standing to pursue claims under the UCL unlawful prong

13  because his claims were "based on a fraud theory involving false advertising and

14  misrepresentations to consumers").  Thus, this Court concludes that the actual reliance requirement

15  also applies to claims under the UCL's unfair prong to the extent such claims are based on

16  fraudulent conduct.  *See, e.g., In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL

17  3463491, at *8 (N.D. Cal. Sept. 1, 2010) *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (holding "that a

18  plaintiff must plead 'actual reliance,' even if their claim arises under the unlawful or unfair prongs,

19  so long as the pleadings assert a cause of action grounded in… deception.") (citations omitted).

20        Here, the gravamen of Plaintiffs' claims under the UCL's unlawful, unfair, and fraud prong

21  is that Defendant's labeling was deceptive.  *See, e.g.*, SAC ¶¶ 71 (alleging that "the term

22  'evaporated cane juice' misleads consumers"); *id.* ¶¶ 84-85 (alleging that Defendant's uses of the

23  word "natural" were likely to deceive reasonable consumers); *id.* ¶ 109 (alleging claim under the

24  UCL's unlawful prong based on Defendant's violations of the advertising and misbranding

25  provisions of the Sherman Law, as well as the FAL, which "forbids untrue and misleading

26  advertising," and CLRA); ¶ 124 (alleging that Defendant's marketing, advertising, and labeling

27  violated the unfair prong of the UCL because it was "deceptive"); ¶ 132 (alleging that Defendant's

28

9

labeling violated the fraud prong of the UCL because it contained "misrepresentations and material omissions"). Accordingly, Plaintiffs must demonstrate actual reliance and economic injury.

### 2. Defendant's Arguments

Defendant argues that Plaintiffs lack standing under Article III, the UCL, the FAL, and the CLRA because it is not plausible that Plaintiffs relied on Defendant's allegedly misleading advertising and labeling statements and, even if Plaintiffs did rely, Plaintiffs did not suffer any injury. Mot. at 9. Defendant also argues that Plaintiffs lack standing to challenge Defendant's representations that Plaintiffs did not see. Mot. at 11. The Court addresses each issue in turn.[3]

#### a. Reliance

The Court begins by addressing the issue of reliance. "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *In re Tobacco II*, 46 Cal. 4th at 326 (citation and alteration omitted). "A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence[,] the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* (citation and quotation marks omitted). As set forth *supra*, Plaintiffs' claims fall into three categories: (1) ECJ Claims; (2) No Sugar Added Claims; and (3) All Natural Claims. The Court considers in turn whether Plaintiffs have alleged reliance on the representations relevant to each category of claims.

##### i. ECJ Claims

With respect to Plaintiffs' ECJ Claims, the Court finds that Plaintiffs have demonstrated reliance. In the SAC, Plaintiffs allege that the term ECJ concealed the fact that the ingredient was essentially white sugar or dried cane syrup. SAC ¶¶ 10, 12, 53-64. Plaintiffs allege that, based on the labels, Plaintiffs believed the Yogurts contained "only natural sugars from milk and fruit and did not contain added sugars or syrups." *Id.* ¶¶ 93-95. Plaintiffs allege that they would not have

---

[3] Before proceeding, the Court notes that its analysis below pertains to standing under the UCL, the FAL, and the CLRA. To the extent Plaintiffs have demonstrated standing under the UCL, the FAL, or the CLRA, the Court finds that Plaintiffs have also demonstrated Article III standing. To the extent Plaintiffs have not demonstrated standing under the UCL, the FAL, and the CLRA, the Court need not address Article III standing as Plaintiffs' claims fail for lack of statutory standing.

10

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   purchased the Yogurts had they known that the Yogurts "contained added dried cane syrup...." *Id.*

2         The Court agrees with Defendant that Plaintiffs have not alleged facts sufficient to show,

3   under Rule 8 or Rule 9(b)[4], that Plaintiffs believed the Yogurts contained "only natural sugars from

4   milk and fruit and did not contain added sugars or syrups." SAC ¶¶ 93-95. Significantly,

5   Plaintiffs' allegations suggest that they understood that dried *cane* syrup was a form of sugar.

6   However, Plaintiffs have failed to allege what they believed evaporated *cane* juice to be if not a

7   form of sugar. *See id.* Indeed, Plaintiffs do not allege that there is some other form of cane besides

8   sugar cane.[5] Absent *some* factual allegation concerning what Plaintiffs believed ECJ to be if not a

9   form of sugar or a juice containing some form of sugar, Plaintiffs' allegations that they read the

10  label, were aware that the Yogurts contained ECJ, and nevertheless concluded that the Yogurts

11  contained "only natural sugars from milk and fruit and did not contain added sugars or syrups" is

12  simply not plausible.

13        Nevertheless, the Court is not persuaded that Plaintiffs' ECJ Claims must be dismissed.

14  Plaintiffs allege that they would not have purchased Defendant's Yogurts had they known they

15  "contained added dried cane syrup." *Id.* ¶¶ 93-95. Plaintiffs also allege that the use of the term ECJ

16  is deceptive to the extent it conceals the fact that the ingredient is "little different than [ordinary]

17  white sugar" or "dried cane syrup." *Id.* ¶¶ 10, 12, 62-64. Plaintiffs allege that the use of the term

18  ECJ to describe the sweetening ingredient suggests that the ingredient is more akin to "[n]atural

19  sugar cane." *Id.* ¶¶ 62-64. Plaintiffs allege that, unlike ECJ, white sugar, dried cane syrup, and

20  other refined sugars, natural sugar cane is "healthy and nutritious, containing vitamins, minerals,

21  enzymes, fibers, and phytonutrients...." *Id.* Moreover, to the extent ECJ suggests that the product

22  is derived from a juice, it may have plausibly suggested that the product is healthier than refined

23  sugars and syrups. Thus, the Court finds that Plaintiffs have established standing because they

24  alleged: (1) facts showing that Defendant's use of the term ECJ may have concealed the fact that

25

26  ---
[4] As will be discussed infra Section III.E.1, the Court finds that Rule 9(b) applies to Plaintiffs claims.

27  [5] Indeed, at the July 11, 2013 hearing on Plaintiffs' Motion for a Preliminary Injunction, ECF No. 44, Plaintiffs' counsel admitted that there was no other form of cane besides sugar cane.

28

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

the ingredient was equivalent to white sugar or dried cane syrup (refined forms of sugar with little nutritional value), and (2) Plaintiffs would not have purchased the Yogurts had they known they contained dried cane syrup. *See, e.g.*, *Khasin v. Hershey Co.*, 5:12-CV-01862 EJD, 2012 WL 5471153, at *6-7 (N.D. Cal. Nov. 9, 2012) (holding that allegations that plaintiff "would not have purchased [defendant's] products… had he known the truth about these products and had they been properly labeled in compliance with the labeling regulations" were sufficient to establish Article III and UCL standing).

### ii.    No Sugar Added Claims

The Court finds that Plaintiffs have not sufficiently alleged reliance with respect to the No Sugar Added Claims. As alleged in the SAC, these claims are based on Defendant's statements on its website that "we don't add sugar to our yogurt" and that "Just because Champions is made for kids doesn't mean that we need to add extra sugar." *Id.* ¶ 66-67 (emphasis omitted). Under the UCL and the FAL, as modified by Proposition 64, Plaintiffs are typically required to establish reliance by alleging facts showing they "viewed the defendant's advertising." *Kwikset*, 51 Cal. 4th at 321; *id.* at 326 (Plaintiffs must "demonstrate actual reliance on the allegedly deceptive or misleading statements"). CLRA imposes a similar reliance requirement. *See Durell*, 183 Cal. App. 4th at 1367. Here, Plaintiffs do not allege that they ever viewed Defendant's website. Thus, Plaintiffs could not have relied upon Defendant's No Sugar Added Representations. *See Id.* at 1363 (holding that there was no reliance where "SAC [did] not allege [plaintiff] ever visited [defendant's] Web site).

Plaintiffs argue that, notwithstanding Plaintiffs' failure to allege that they viewed Defendant's website, the Court may still find that Plaintiffs relied on Defendant's statements. *See* Opp'n at 11. Citing *In re Tobacco II*, Plaintiffs contend that Plaintiffs need not allege that they viewed Defendant's website because Defendant's website statements were part of a "long-term advertising campaign" and "[w]here [a] 'plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the

12

United States District Court
For the Northern District of California

1    plaintiff relied on particular advertisements or statements.'"  *Id.* (quoting *In re Tobacco II*, 46 Cal.

2    4th at 312).  Plaintiffs' reliance on *In re Tobacco II* is misplaced.

3          In *In re Tobacco II*, the California Supreme Court held that plaintiffs, who had been

4    exposed to a "decades-long campaign of deceptive advertising" aimed at down-playing the

5    negative health effects of smoking were not required to identify with particularity the particular

6    advertisements upon which the plaintiffs relied.  *Id.*, 46 Cal. 4th at 328.  However, the *In re*

7    *Tobacco II* Court also emphasized that plaintiffs were still required to allege facts showing that

8    defendants' advertisements "were an immediate cause of the" plaintiffs' decisions to purchase

9    defendants' cigarettes.  *Id.*  Thus, as explained by the California Court of Appeal in *Pfizer Inc. v.*

10   *Superior Court*, *In re Tobacco II* "does not stand for the proposition that a consumer who was

11   never exposed to an alleged false or misleading advertising or promotional campaign" may bring a

12   claim for relief.  *Pfizer Inc.*, 182 Cal. App. 4th 622, 632 (2010).  Rather, *In re Tobacco II* stands for

13   the narrower, and more straight-forward proposition that, where a plaintiff has been exposed to

14   numerous advertisements over a period of decades, the plaintiff is not required to "plead with an

15   *unrealistic degree* of specificity [the] particular advertisements and statements" the plaintiffs relied

16   upon.  *Id.*, 46 Cal. 4th at 328 (emphasis added).  It does not appear that *In re Tobacco II* would

17   permit a plaintiff who has never been exposed to a defendant's marketing campaign or to the

18   disputed misrepresentations to bring a claim for violation of the UCL, the FAL, or the CLRA.

19         Here, while Plaintiffs allege generally that "Defendant's misrepresentations and material

20   omissions are part of an extensive labeling, advertising[,] and marketing campaign,"  SAC ¶ 96,

21   Plaintiffs have not alleged that they were exposed to this campaign.  More importantly, Plaintiffs

22   have not alleged that they were exposed to any advertisements featuring statements similar to the

23   No Sugar Added Representations on Defendant's website.  Furthermore, Plaintiffs have not alleged

24   anything approaching a "decades-long campaign of deceptive advertising…."  *In re Tobacco II*, 46

25   Cal. 4th at 327.  Thus, Plaintiffs' reliance on *In re Tobacco II* is misplaced.

26         Plaintiffs argue that, because the claims on Defendant's website would violate FDA

27   labeling requirements, Defendant's Yogurts were misbranded, and thus, not capable of being sold

28

                                        13

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

legally. Opp'n at 11. Plaintiffs argue that they have alleged that they "would not have purchased Defendant's [Yogurts] had they known they were not capable of being legally sold or held." *Id.* (quoting SAC ¶ 97). These allegations are not sufficient to establish reliance.

Plaintiffs' theory would eviscerate the enhanced standing requirements imposed by Proposition 64 and the California Supreme Court's decision in *Kwikset*. Proposition 64 imposed a requirement that UCL plaintiffs have suffered economic injury "'as a result of' the unfair competition…." *Kwikset*, 51 Cal. 4th at 326. As explained in *Kwikset*, the voters enacted Proposition 64 in 2004 as a means of "confin[ing] standing to those actually injured by a defendant's business practices and… curtail[ing] the prior practice of filing suits on behalf of 'clients who have not used the defendant's product or service, *viewed the defendant's advertising*, or had any other business dealing with the defendant....'" *Id.* at 321 (emphasis added). Under *Kwikset*, Plaintiffs are required to "demonstrate actual reliance on the allegedly deceptive or misleading statements." *Id.*, 51 Cal. 4th at 326. If the Court were to hold that Plaintiffs, who never viewed the No Sugar Added Representations, have standing to bring claims based upon allegations that they would not have purchased a product that was misbranded, purchasers who never "viewed the defendant's advertising" or misleading labeling would have standing to sue. *Id.* Such a holding is inconsistent with Proposition 64 and *Kwikset*.[6]

Accordingly, the Court finds that Plaintiffs have not sufficiently established reliance and thus standing with respect to the No Sugar Added Claims and therefore dismisses these claims. However, because Plaintiffs may be able to correct the aforementioned deficiencies, Plaintiffs' claims are dismissed without prejudice. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend… unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

---

[6] Moreover, Plaintiffs' allegations seem to be suggesting that Defendant failed to disclose the *fact of Defendant's alleged non-compliance with labeling laws*. In order for Defendant to be liable for failing to disclose this fact, Defendant must have a duty to disclose. *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) (holding that plaintiff's UCL claim based on defendant's failure to disclose fees it charged to sellers failed where plaintiff failed to "allege any affirmative duty to disclose" such fees). Here, Plaintiffs have not alleged that Defendant had a duty to disclose or identified the basis for this duty (*e.g.*, fiduciary duty, duty as a seller, etc…).

14

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

### iii.     All Natural Claims

The Court finds that Plaintiffs have failed to allege facts showing reliance upon Defendants' All Natural Representations.  Plaintiffs allege that Defendant stated, on the Yogurts' labeling and on Defendant's website, that the Yogurts contain "[o]nly natural ingredients" and are "all natural."  SAC ¶¶ 5-6, 12.  Plaintiffs allege that these statements were misleading because some of Defendant's Yogurts, specifically the pomegranate flavor, are colored "artificially" using "fruit or vegetable juice concentrate."  *Id*. ¶¶ 12, 81.  Plaintiffs allege that they would not have purchased the Yogurts had they known the Yogurts "contained… unnatural ingredients."  *Id.*

These allegations will not suffice to establish reliance with respect to Plaintiffs' All Natural Claims.  As noted by Defendant, Defendant's labeling explicitly discloses that Defendant adds "fruit or vegetable juice concentrate [*for color*]."  *See id.* ¶ 13 (quoting label).  Plaintiffs purport to have read the label, including the ingredient list.  *See id.* ¶¶ 93-95 (stating that each Plaintiff read "the labels on Defendant's [Yogurts] including the [i]ngredient" ECJ and that each Plaintiff read the "evaporated cane juice" representation, which is contained in the ingredient list).  Because the labels clearly disclosed the presence of fruit or vegetable juice concentrate in the Yogurts, it is not plausible that Plaintiffs believed, based on Defendant's "[o]nly natural ingredients" or "all natural" representations, that the Yogurts did not contain added fruit juice.  Consequently, Plaintiffs' allegations of reliance fail and Plaintiffs' All Natural Claims are dismissed.[7]  However, because Plaintiffs may be able to cure the deficiencies, Plaintiffs claims are dismissed without prejudice. *See Lopez,* 203 F.3d at 1127 (holding that "a district court should grant leave to amend… unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

### iv.     Conclusions Regarding Reliance

In sum, the Court finds that Plaintiffs have demonstrated reliance with respect to Plaintiffs' ECJ claims.  Plaintiffs have not, however, demonstrated reliance with respect to Plaintiffs' No Sugar Added and All Natural Claims.  Accordingly, Plaintiffs' UCL, FAL, and CLRA claims based on the No Sugar Added and All Natural Representations are dismissed without prejudice.

---

[7] For the reasons set forth above, Plaintiffs also cannot establish standing to pursue the All Natural Claims based on Plaintiffs' allegation that they would not have purchased a product that was misbranded and therefore "not capable of being legally sold or held."  SAC ¶ 97.

15

The Courts' remaining analysis in Sections III.A.2-III.E will therefore focus on Plaintiffs' ECJ Claims.

### b.      Injury

Defendant argues that Plaintiffs' claims must be dismissed because Plaintiffs cannot plausibly allege that they were injured. *See* Mot. at 10.  Defendant argues that, in order to show injury, Plaintiffs must allege facts showing that they did not receive the product that was advertised. *See id.* (citing *Kwikset*, 51 Cal. 4th at 330).  Defendant argues that, because the Yogurts' labels disclose that an ingredient has been added for color and that the Yogurts contain evaporated cane juice, Plaintiffs received the product that was advertised and, accordingly, suffered no injury. *Id.*  The Court is not persuaded by this argument.

The question of injury in these types of cases is generally heavily intertwined with questions of reliance.  As observed by the California Supreme Court in *Kwikset*, a plaintiff's allegation that "he or she would not have bought the product but for the misrepresentation… is [generally] sufficient to allege economic injury." *Kwikset*, 51 Cal. 4th at 330.  Here, Plaintiffs have alleged facts showing that Defendant's use of the term ECJ concealed the ingredient's true nature as a refined sugar and that they would not have purchased the Yogurts had they known the truth. Thus, Plaintiffs have established that they were injured by Defendant's use of the term ECJ.

### c.      Products Plaintiffs Did Not Purchase

Plaintiffs allege that they purchased only the pomegranate, lemon, peach, vanilla, strawberry, and blueberry flavored Chobani Greek Yogurt. *See* SAC ¶¶ 93-95.  Nevertheless, Plaintiffs' claims in the SAC include within their scope other products, specifically the Chobani Greek Yogurt *Champions* Yogurts ("Chobani Champions") and other flavors of Chobani Greek Yogurt. *See id.* ¶ 6.  Defendant argues that Plaintiffs' claims based on products Plaintiffs did not purchase must be dismissed. *See* Mot. at 11-12.  As recognized in *Miller v. Ghirardelli Chocolate Co.*, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.*, No. 12-04936 LB, 2012 WL 6096593, at *6 (N.D. Cal. Dec. 7, 2012) (collecting cases).

16

With respect to the instant case, the Court notes at the outset that it is difficult to discern in the SAC which products Plaintiffs are contending contained each representation and for which products these representations were false.  In any amended complaint, Plaintiffs are ORDERED to include a list or a table specifically setting forth: (1) which products, including specific flavors, Plaintiffs are including within this lawsuit; (2) which and where representations appeared on each product; and (3) which representations were false, misleading, or unlawful with respect to each product.

Regarding the ECJ Claims, Plaintiffs allege that, like the products purchased by Plaintiffs, the Chobani Champions Yogurts and the other Chobani Greek Yogurt flavors' labeling uses the term ECJ.  SAC ¶ 14.  Thus, the allegedly deceptive language, "evaporated cane juice," was "substantially similar" across Defendant's Yogurts.  *Miller*, 2012 WL 6096593 at *6.  However, Plaintiffs do not allege facts sufficient to show that the Chobani Champions and Chobani Greek Yogurts Plaintiffs did not purchase are "substantially similar" to the Chobani Greek Yogurts Plaintiffs did purchase such that Plaintiffs may be permitted to pursue claims based on the products they did not purchase.  *Id.*  Accordingly, the Court dismisses Plaintiffs' ECJ Claims based on products Plaintiffs did not purchase.  However, because Plaintiffs may be able to amend the complaint to address these deficiencies, the Court's dismissal is without prejudice.  *See Lopez,* 203 F.3d at 1127.

### B.    Reasonable Consumer

In order to prevail on Plaintiffs' FAL, CLRA, UCL fraud prong claims, and Plaintiffs' UCL unlawful prong claim predicated on FAL and CLRA violations, Plaintiffs must satisfy the "reasonable consumer" test, which requires Plaintiffs to show that members of the public are likely to be deceived by Defendant's labeling statements.  *See Williams*, 552 F.3d at 938.  Whether a given statement is likely to deceive is "usually… a question of fact not appropriate for decision on demurrer."  *Id.*; *see also Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907, 2012 WL 6737800, at *7 (N.D. Cal. Dec. 28, 2012) (rejecting Defendant's argument that it was not plausible that the "reasonable consumer [was] likely [to] be deceived by the labeling of its nutrition bars" because

this question "is generally not amenable to resolution on the pleadings"). Here, Defendant argues that Plaintiffs' claims must be dismissed because it is not plausible that a "reasonable consumer" would be deceived by any of the alleged misstatements. Mot. at 6.

The Court has already dismissed the No Sugar Added and All Natural Claims. Accordingly, the Court does not address the reasonable consumer issue as to these claims. With respect to Plaintiffs' ECJ Claims, the Court has already found above that it is plausible that Defendant's use of the term ECJ suggests that ECJ is a healthier alternative to refined sugar and may conceal the fact that ECJ is "little different than [ordinary] white sugar" or "dried cane syrup." SAC ¶¶ 10, 12, 62, 64. Accordingly, the Court declines to dismiss Plaintiffs' ECJ Claims on the grounds that reasonable consumers would not have been deceived. *See Williams*, 552 F.3d at 938 (holding that whether consumers are likely to be deceived is "usually… a question of fact not appropriate for decision on demurrer").

### C.       Preemption

Defendant argues that Plaintiffs' claims should also be dismissed because they are expressly and impliedly preempted by the Food Drug & Cosmetics Act, 21 U.S.C. § 301, *et seq.* ("FDCA"), as amended by the Nutritional Label & Education Act ("NLEA"). Mot. at 16, 19. For the reasons set forth below, the Court disagrees.

#### 1.       Implied Preemption

The Court first addresses the issue of implied preemption. As explained by the Ninth Circuit in *Stengel v. Medtronic Inc.*, "[t]here are three categories of preemption: express, field, and conflict." *Id.*, 704 F.3d 1224, 1230 (9th Cir. 2013) (en banc) (citation omitted). "Field and conflict preemption are subcategories of implied preemption." *Id.* The latter form of preemption, conflict preemption, "exists when a state requirement actually conflicts with a federal requirement, making impossible compliance with both requirements." *Id.* at 1231. The former form of preemption, "[f]ield preemption… may be understood as a species of conflict pre-emption: A state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulations." *Indus. Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997) (citation and internal quotation marks omitted). "It is, however, a more potent species, for under

18

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    field preemption the state regulation is preempted whether or not it actually conflicts with the

2    federal scheme." *Id.* (citations omitted).

3         This Court previously addressed the issue of implied preemption in *Brazil*. In *Brazil*, as in

4    this case, the plaintiff, Chad Brazil, raised claims under the UCL, the FAL, and the CLRA based on

5    Dole Food Company, Inc. and Dole Packaged Foods, LLC's misbranding of certain food products.

6    *Id.*, 2013 WL 1209955, at *1. Dole argued that Brazil's claims were expressly and impliedly

7    preempted by the FDCA. After considering Dole's arguments (which largely mirror Defendant's

8    arguments in the instant Motion to Dismiss) and analyzing the relevant case law and authorities,

9    this Court found that the FDCA did not impliedly preempt Brazil's claims. *See Brazil*, 2013 WL

10   1209955, at *5-8.

11        As explained in *Brazil*, "[w]hen analyzing the scope of a preemption statute, a court's

12   analysis must 'start with the assumption that the historic police powers of the States [are] not to be

13   superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"

14   *Brazil*, 2013 WL 1209955, at *6 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996))

15   (alteration in original). "There is a strong presumption against federal preemption" in cases

16   involving food labeling regulations because "the regulation of health and safety, including laws

17   regulating the proper marketing of food, are traditionally within states' historic police powers." *Id.*

18   (citing *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963)).

19        Defendant argues that a finding of implied preemption is warranted in this case because 21

20   U.S.C. § 337(a) provides that only the United States may bring proceedings to enforce the FDCA.

21   *See* 21 U.S.C. § 337(a) (providing that "proceedings for the enforcement, or to restrain violations,

22   of [the FDCA] shall be by and in the name of the *United States*" (emphasis added)). In light of this

23   provision, Defendant argues that permitting a private person to prosecute a state law private right

24   of action based on a violation of the FDCA would conflict with Congress's intent. *See* Mot. at 16-

25   17. The Court is not persuaded.

26        As the Court observed in *Brazil*, while the FDCA prohibits individuals from bringing

27   causes of action under the FDCA, "there is no indication from the text of the NLEA," which

28

                                                  19

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

1    amended the FDCA, "or its legislative history that Congress 'intended a sweeping preemption of

2    private actions predicated on [identical labeling] requirements contained in state laws.'" *Id.* at *7

3    (quoting *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008)). Indeed,

4    "Representative Henry Waxman—who introduced the NLEA in the House of Representatives—

5    stated specifically that the NLEA 'recognizes the importance of the State role: by allowing *States*

6    to adopt standards that are identical to the Federal standard, which may be enforced in State court;

7    by allowing the *States* to enforce the Federal Standard in Federal court.'" *In re Farm Raised*

8    *Salmon Cases*, 42 Cal. 4th at 1090 (quoting Remarks of Rep. Waxman, 136 Cong. Rec. 1539 (daily

9    ed. July 30, 1990)).

10          Moreover, as recognized by the Third Circuit in *Holk v. Snapple Beverage Corp.*, NLEA

11   states that it "shall *not* be construed to preempt any provision of State law, unless such provision is

12   *expressly* preempted under [21 U.S.C. § 343-1] of the Federal Food, Drug, and Cosmetic Act." *Id.*,

13   575 F.3d 329, 336 (3d Cir. 2009) (emphasis added) (alteration in original) (quoting Pub. L. No.

14   101-535, § 6(c)(1), 104 Stat. 2353, 2364 (Nov. 8, 1990)). "NLEA declares that its express

15   preemption provision," Section 343-1 (which will be discussed *infra* in Section III.C.2), "'shall not

16   be construed to apply to any requirement respecting a statement in the labeling of food that

17   provides for a warning concerning the safety of the food or component of the food,' thereby

18   preserving state warning laws." *Id.* at 338 (quoting 104 Stat. 2353, 2364). This language

19   undermines any conclusion that the FDCA or NLEA were intended to impliedly preempt state law

20   claims seeking to enforce labeling standards that are identical to the federal standards.

21          Defendant also contends that a finding of implied preemption is warranted in light of the

22   Ninth Circuit's decision in *Pom Wonderful LLC v. Coca-Cola Co*, 679 F.3d 1170, 1175-76 (9th

23   Cir. 2012). *See* Mot. at 18. In *Pom Wonderful,* the Ninth Circuit found that "the FDCA and its

24   regulations bar[red]" the plaintiff's claims under the federal Lanham Act alleging that Coca-Cola's

25   labeling for its 'Pomegranate Blueberry' juice was false and misleading. *Id.*, 679 F.3d at 1174,

26   1176. This Court thoroughly reviewed the *Pom Wonderful* decision in *Brazil* and found that it did

27   not support the conclusion that the FDCA impliedly preempts state law claims. The Court will not

28

<div align="center">20</div>

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

<div style="writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

United States District Court
For the Northern District of California

1  recount its analysis in full, but, in short, the Court found that *Pom Wonderful* is inapposite for two

2  reasons.  "First, the Court in *Pom Wonderful* limited its ruling to the federal Lanham Act and

3  explicitly declined to address whether plaintiff's state law claims were also preempted."  *Brazil*,

4  2013 WL 1209955, at *7 (citing *Pom Wonderful,* 679 F.3d at 1179 ("remand[ing] so that the

5  district court can rule on the state claims")).  *Pom Wonderful* therefore "did [not] grapple with the

6  presumption that Congress did not intend to supplant state law," and accordingly "is not binding

7  authority."  *Id.* (citations omitted).  Second, as discussed *supra*, there is no indication in the NLEA

8  "that Congress 'intended a sweeping preemption of private actions predicated on requirements

9  contained in state laws.'"  *Id.* (quoting *In re Farm Raised Salmon Cases,* 42 Cal. 4th at 1090).

10  Thus, the Court finds that *Pom Wonderful* does not support the conclusion that the FDCA

11  impliedly preempts Plaintiffs' claims.

12      Notably, after *Brazil* was decided and after the Motion to Dismiss was fully briefed, the

13  Ninth Circuit issued its decision in *Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013), wherein the

14  Ninth Circuit addressed the issue of preemption in the FDCA context.  The parties requested and

15  were granted the opportunity to submit supplemental briefing regarding the impact of *Perez*.  ECF

16  Nos. 93, 95.  In Defendant's supplemental brief, Defendant argues that, in light of *Perez*, the Court

17  must find that Plaintiffs' claims are impliedly preempted.  *See* ECF No. 97 ("Def. Sur-Reply") at 1.

18  Plaintiffs take the opposite position.  *See* ECF No. 96 ("Pls. Sur-Reply").  For the reasons set forth

19  below, the Court finds that *Perez* does not require the Court to find that Plaintiffs' claims are

20  impliedly preempted.

21      In *Perez*, the plaintiff brought a common-law fraud-by-omission claim predicated on

22  allegations that Nidek, a manufacturer of medical devices, and certain physicians failed to disclose

23  the fact that Nidek's laser system, which defendants used to perform plaintiff's eye surgery, had

24  not been approved for that use by the FDA.  *Id.*, 711 F.3d at 1112-13, 1117.  The laser at issue was

25  a Class III medical device under the FDCA, as amended by the Medical Device Amendments of

26  1976 ("MDA"), 21 U.S.C. § 360c.  *Id.* at 1112.  Accordingly, "Nidek was required to get

27  premarket approval ('PMA') from the FDA" prior to distributing the laser.  *Id.*  Nidek had not

28

21

**United States District Court**
For the Northern District of California

1   received approval to use the laser for the type of surgery plaintiff received. *Id.* The *Perez* Court

2   held that the plaintiff's fraud-by-omission claim was impliedly preempted. The *Perez* Court relied

3   heavily on the Supreme Court's decision in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341

4   (2001). *See id.* at 1119.

5          In *Buckman*, the Supreme Court held that the FDCA impliedly preempted a claim alleging

6   that a consulting company had made fraudulent representations to the FDA regarding a bone screw

7   in the course of obtaining approval to market the screw. *Id.*, 531 U.S. at 353. As explained by the

8   *Perez* Court, the *Buckman* Court's implied preemption finding was premised upon the conclusion

9   that the plaintiff's claims alleging fraud on the FDA "conflicted with the federal statutory scheme,

10  which 'amply empowers the FDA to punish and deter fraud against the Administration.'" *Perez*,

11  711 F.3d at 1119 (quoting *Buckman*, 531 U.S. at 348). Because the *Buckman* plaintiff's fraud on

12  the FDA claim "'exist[ed] solely by virtue of the FDCA disclosure requirements,'" it was

13  preempted. *Id.* (quoting *Buckman*, 531 U.S. at 353).

14         The *Perez* Court reasoned that Perez's claim, which sought to hold the defendants

15  responsible for failing to disclose that the laser had not been approved by the FDA, similarly failed

16  because it "exist[ed] solely by virtue of the FDCA disclosure requirements." *Id.* (quoting

17  *Buckman*, 531 U.S. at 353). The *Perez* Court held that, in order "to escape preemption by the

18  FDCA," "a state-law claim must fit" through the following "narrow gap": "The plaintiff must be

19  suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)),

20  but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be

21  impliedly preempted under *Buckman*)." *Id.* at 1120 (quoting *In re Medtronic, Inc., Sprint Fidelis

22  Leads Products Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)). This latter statement mirrored a

23  statement by Judge Watford in his concurrence in *Stengel*, 704 F.3d at 1235. The Court finds that

24  Defendant's reliance on *Perez* is misplaced for several reasons.

25         As an initial matter, *Buckman*, *Perez*, and *Stengel* arose in the context of Class III medical

26  devices governed by the MDA. As the Supreme Court explained in *Buckman*, the MDA governs

27  the regulation of medical devices, which it separates into three categories. *Id.*, 531 U.S. at 344.

28

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

1    While Class I devices require only general manufacturing controls because they "present no

2    unreasonable risk of illness or injury," and Class II devices require more stringent controls because

3    they possess "a greater potential dangerousness," Class III devices "'presen[t] a potential

4    unreasonable risk of illness or injury' and therefore incur the FDA's strictest regulation." *Id*.

5    (quoting 21 U.S.C. § 360c(a)(1)(C)(ii)(II)).  Consequently, before a Class III device may be

6    marketed, it must complete a thorough premarket approval process with the FDA, which requires

7    an applicant to "demonstrate a 'reasonable assurance' that the device is both 'safe . . . [and]

8    effective under the conditions of use… [described] in the proposed labeling….'"  *Id*. (citing §§

9    360e(d)(2)(A), (B)).[8]

10          Here, while mislabeled food undoubtedly presents risks to consumers, there is not

11   necessarily the same substantial "unreasonable risk of illness or injury" present in the Class III

12   medical device context.  Importantly, there is no comparably rigorous review process that requires

13   premarket approval.  Thus, while the Court finds that the broad principles regarding preemption, as

14   espoused in *Stengel v. Medtronic* and *Perez v. Nidek*, are relevant to the Court's analysis in this

15   case, the Court declines to rely too heavily on these cases due to the important distinction between

16   the way the FDA extensively regulates Class III medical devices and the FDA's substantial, but

17   more limited oversight of food labeling requirements.

18          Furthermore, *Buckman* is distinguishable from this case because it involved "fraud-on-the-

19   FDA" claims to which the Supreme Court held that no presumption against preemption applied.

20   *Id.* at 347-348.  In so doing, the Supreme Court emphasized that, because "the federal statutory

21   scheme amply empowers the FDA to punish and deter fraud against the Administration," the

22   "balance of statutory objections . . . sought by the Administration [could] be skewed by allowing

23   fraud-on-the-FDA claims under state tort law."  *Id.* at 348.  Here, as noted previously, the

24   presumption against preemption *does* apply absent a "'clear and manifest purpose of Congress.'"

25   *Chae v. SLM Corp.*, 593 F.3d 936, 944 (9th Cir. 2010) (quoting *Wyeth*, 555 U.S. at 565).  Congress

26

27   [8] "The PMA process is ordinarily quite time consuming because the FDA's review requires an average of 1,000 hours [for] each submission."  *Id*. at 344-345 (internal quotation marks and citation omitted).

28

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

United States District Court
For the Northern District of California

1   has not set forth a "clear and manifest" statement indicating that it intended state food labeling

2   claims to be subject to implied preemption, and the NLEA explicitly states that the Act "shall *not*

3   be construed to preempt any provision of State law, unless such provision is *expressly* preempted

4   under [21 U.S.C. § 343-1] of the Federal Food, Drug, and Cosmetic Act." Pub. L. No. 101-535, §

5   6(c)(1), 104 Stat. 2353, 2364 (Nov. 8, 1990) (emphasis added).

6        Finally, the Court finds that *Perez, Buckman*, and *Stengel* are distinguishable from the

7   instant case because the claims in this case are not being brought "*because* the conduct violates the

8   FDCA." *Perez*, 711 F.3d at 1120 (quoting *In re Medtronic*, 623 F.3d at 1204). As set forth *supra*,

9   Plaintiffs bring claims for violations of: (1) the FAL; (2) the CLRA; (3) the UCL's fraud prong; (4)

10   the UCL's unfair prong; and (5) the UCL's unlawful prong predicated on violations of the Sherman

11   Law, the FAL, and the CLRA.[9]

12        The Court first addresses Plaintiffs' UCL unlawful prong claim predicated on the Sherman

13   Law. Like the FDCA, California's "Sherman Law broadly prohibits the misbranding of food." *In*

14   *re Farm Raised Salmon Cases*, 42 Cal. 4th at 1086 (citing Cal. Health & Safety Code § 110765).

15   Defendant argues that Plaintiffs' Sherman Law claim is preempted because the Sherman Law

16   incorporates "[a]ll food labeling regulations and any amendments to those regulations adopted

17   pursuant to the [FDCA]." Def. Sur-reply at 3 (quoting Cal. Health & Safety Code § 110100(a)).

18   Thus, Defendant contends that Plaintiffs are suing *because* Defendant's labeling violates the

19   FDCA. *See id.* The Court is not persuaded.

20        Although the Sherman Law incorporates the regulations set forth in the FDCA, the

21   Sherman Law expressly states that it is incorporating the federal regulations as "the food labeling

22   regulations *of this state*." Cal. Health & Safety Code § 110100(a) (emphasis added). Accordingly,

23   when a plaintiff sues under the Sherman Law, he is not "suing *because* [Defendant's labeling]

24   violates the FDCA," *Perez*, 711 F.3d at 1120, but rather because Defendant's labeling violates

25

---

26   [9] Plaintiffs also allege a claim for unjust enrichment and claims for violations of the Song-Beverly
     Consumer Warranty Act and the Magnuson-Moss Warranty Act. The Court need not decide
27   whether these claims are preempted because, as will be set forth *infra*, these claims fail for other
     reasons.
28
                                                        24

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

*California's* labeling laws.  This factor distinguishes Plaintiffs' Sherman Law claim from the fraud-by-omission claim at issue in *Perez*.  As recognized by the *Perez* Court, there was no independent California law imposing a duty on manufacturers of medical devices to "affirmatively tell patients when medical devices have not been approved for a certain use." *Id.*, 711 F.3d at 1118-19.  Thus, Perez's fraud-by-omission claim alleging that the defendants failed to disclose the lack of FDA approval "exist[ed] solely by virtue of the FDCA disclosure requirements" and was preempted. *Id.* at 1119.  Here, while Plaintiffs' Sherman Law claim draws its standards from federal labeling requirements, it is rooted in and "exist[s] by virtue of" California law.

Similarly, the Court finds that Plaintiff's FAL, CLRA, and UCL fraud and unfair prong claims, and UCL unlawful prong claim predicated on FAL and the CLRA violations are not impliedly preempted.  The gravamen of these claims is that Defendant's use of the term ECJ and No Sugar Added and All Natural Representations are likely to deceive reasonable consumers. *See, e.g.*, *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) (holding that "[t]he standard for" the FAL, the CLRA, and the UCL's fraud prong "is the 'reasonable consumer' test, which… [turns on whether] members of the public are likely to be deceived") (citing *Williams*, 552 F.3d at 938); SAC ¶ 141 (alleging that "Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide… was and is likely to deceive reasonable consumers"); *id.* ¶ 124 (alleging that Defendant's labeling was "deceptive"); *id.* ¶¶ 132, 148, and 160-163.  Thus, with respect to these claims, Plaintiffs are not "suing *because* [Defendant's labeling] violates the FDCA," *Perez*, 711 F.3d at 1120, but rather because Defendant's labeling is allegedly deceptive and misleading in violation of California law.

## 2.    Express Preemption

Defendant also argues that the FDCA expressly preempts Plaintiffs' claims.  The FDCA, as amended by NLEA, includes an express preemption clause, 21 U.S.C. § 343-1, which provides that "no state ... may directly or indirectly establish": (1) a requirement "for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity or that is not identical to the requirement of section 343(g) of this title," 21

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

U.S.C. § 343-1(a)(1); and (2) "[non-]identical" labeling requirements for nutrition information or

nutrient levels, *see* 21 U.S.C. § 343-1(a)(4)-(5).  Section 343-1 also prohibits a state from

establishing non-identical labeling requirements which are "of the type required by" Sections

343(b), (c), (d), (e), (f), (h), (i), (k), (w), or (x), *see* 21 U.S.C. § 343-1(a)(2)-(3).  The referenced

subsections of Section 343 address a range of topics.  For example, Section 343(i) requires that

foods and ingredients be referred to by their "common or usual name[s]."  *See* 21 U.S.C. § 343-

1(a)(4)-(5); 21 U.S.C. § 343(i).  Thus, pursuant to Section 343-1's express preemption provision, a

state would be prohibited from establishing a non-identical requirement relating to the names by

which food and ingredients must be referred.  Similarly, private plaintiffs are prohibited from

pursuing claims based on state law where the defendant's labeling meets the relevant FDA labeling

requirements.  *See, e.g.*, *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1103 (N.D. Cal. 2012)

(finding that claims based on defendant's labeling of its products as "fruit flavored" and "naturally

flavored" were preempted where defendant's labeling was "permitted by FDA regulations").[10]

  Plaintiffs' ECJ Claims are the only remaining claims at this stage.  Plaintiffs allege that ECJ

violates the FDA's requirements that ingredients be referred to by their "common and usual name."

*See id.* ¶ 56 (citing 21 C.F.R. §§ 101.2, 101.4, and 102.5).  Defendant argues that there is no FDA

requirement that the ingredient to which Defendant refers as ECJ be described using another name.

*See* Mot. at 13.  Defendant notes that Plaintiffs' contention that ECJ is not the common and usual

name of an ingredient and violates FDA regulations is premised on an FDA draft guidance

document regarding the use of the term ECJ.  *See* FDA Guidance re: ECJ (stating that it is the

"FDA's view that the term 'evaporated cane juice' is not the common or usual name of any type of

sweetener") (citing 21 C.F.R. § 101.4).  However, Defendant argues, this document explicitly

states that it is non-binding and that it does nto establish any requirements.  *See id.* (stating that the

guidance is a "draft," has not been "finalized," is "[n]onbinding," and "do[es] not establish legally

---

[10] In the Motion to Dismiss, Defendant included a section that was separate from Defendant's
express preemption section in which Defendant argued that its labeling complied with applicable
labeling regulations.  Because this issue and the issue of express preemption are interrelated (*i.e.*, a
finding that Defendant complied with labeling requirements would support a finding of express
preemption), the Court considers these issues together.

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

**United States District Court**
For the Northern District of California

1    enforceable responsibilities").  Thus, Defendant contends, to the extent Plaintiffs are seeking,

2    through their claims, to require Defendant to use a term other than the term ECJ, Plaintiffs are

3    seeking to establish a "non-identical" labeling requirement and Plaintiffs' claims are preempted.

4    *See id.* at 20-21; 21 U.S.C. § 343-1.  The Court is not persuaded.

5           The FDA Guidance document upon which Plaintiffs rely sets forth the FDA's view on

6    whether the use of the term ECJ is consistent with 21 C.F.R. § 101.4, which is the FDA's

7    regulation requiring that ingredients be referred to by their common and usual name.  *See* FDA

8    Guidance re: ECJ (stating that it is the "FDA's view that the term 'evaporated cane juice' is not the

9    common or usual name of any type of sweetener") (citing 21 C.F.R. § 101.4).  As set forth by the

10   Supreme Court in *Auer v Robbins*, an agency's interpretation of its "own regulation[]," even if set

11   forth in an informal document, is "controlling unless plainly erroneous or inconsistent with the

12   regulation."  *Id.*, 519 U.S. 452, 461 (1997) (internal quotation marks and citations omitted)

13   (holding that Secretary of Labor's views on proper interpretation of labor regulation set forth in

14   *amicus* brief were controlling).

15          While the Court is somewhat reluctant to rely on the FDA guidance document in the

16   present case because it is explicitly labeled as "[n]onbinding," *id.*, the Court observes that the FDA

17   has expressed the same view regarding the impropriety of the term ECJ in several Warning

18   Letters.[11]  *See* Warning Letter to Hail Merry, LLC (October 23, 2012) ("[Y]our product lists,

19   'Evaporated Cane Juice' in the ingredient statement; however, evaporated cane juice is not the

20   common or usual name of any type of sweetener"); Warning Letter to Bob's Red Mill Natural

21   Foods (July 31, 2012) (same); Warning Letter to Hato Portrero Farm, Inc. (April 3, 2008) (same).[12]

---

[11] Plaintiffs have requested that the Court take judicial notice of various warning letters.  *See* ECF
No. 43.  Defendant objects to the Court's taking judicial notice of these documents on the grounds
that they are informal and non-final and thus their contents are subject to reasonable dispute.  *See*
ECF No. 47.  The warning letters are publicly available documents and thus the relevant facts, *i.e.*
that the FDA issued them and that the FDA took a particular position in them, are not reasonably in
dispute.  *See Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1073 (E.D. Cal. 2010)
(taking judicial notice of warning letters because they "are matters of public record, available on
the FDA website").  Accordingly, Defendant's objections are overruled.
[12] The FDA Warning Letters are available at: http://www.fda.gov/ICECI/EnforcementActions/
WarningLetters /default.htm.

27

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

**United States District Court**
For the Northern District of California

1   While these warning letters are "informal and advisory" and do "not commit FDA to taking

2   enforcement action," they do "communicate[] the agency's position on a matter…." FDA Website,

3   Inspections, Compliance, Enforcement, and Criminal Investigations.[13]

4     Thus, in light of the FDA's Guidance and Warning Letters, the Court finds, for the purposes

5   of this Motion to Dismiss, that Plaintiffs have shown that it is the FDA's position that the use of the

6   term ECJ violates the FDA's regulations requiring that ingredients be declared by their common

7   and usual name and that this view is controlling. Accordingly, to the extent Plaintiffs' claims seek

8   to hold Defendant liable for using the term ECJ, Plaintiffs are not seeking to establish a

9   requirement which is not identical to the FDA's requirements. Consequently, Plaintiffs' claims are

10  not expressly preempted. *See Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586 SC, 2013 WL

11  1320468, at *10-11 (N.D. Cal. Apr. 1, 2013) (holding that plaintiff's claims, which alleged that the

12  defendant's labeling violated "nonbinding, informal [FDA] guidance," were not expressly

13  preempted because such guidance was owed deference under *Auer*); *Ivie v. Kraft Foods Global,*

14  *Inc.*, No. C-12-02554-RMW, 2013 WL 685372, at *9, *12 (N.D. Cal. Feb. 25, 2013) (holding that

15  ECJ claims were not expressly preempted even though "[t]here are no federal laws or regulations…

16  governing [ECJ] claims… [because] the FDA has nevertheless articulated a policy position").

17    In the SAC, in addition to alleging that Defendant's use of the term ECJ was misleading

18  and violated 21 C.F.R. § 101.4's common and usual name requirement, Plaintiffs have alleged that

19  Defendant's use of ECJ in its products violates the Standard of Identity for Yogurt, 21 C.F.R. §

20  131.200. SAC ¶¶ 54-55. The Standard of Identity for Yogurt sets forth a list of approved

21  "[n]utritive carbohydrate sweeteners" that may be included in a product designated as a yogurt.

22  *See* 21 C.F.R. § 131.200(d)(2).[14] While the list of sweeteners includes "[s]ugar (sucrose), beet or

23

24  [13] Available at http://www.fda.gov/ICECI/ComplianceManuals/RegulatoryProceduresManual/
     ucm176870.htm.

25  [14] The Standard of Identity for Yogurt lists the following sweeteners as sweeteners that may be
26  included in yogurt: "Sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); brown
     sugar; refiner's sirup; molasses (other than blackstrap); high fructose corn sirup; fructose; fructose
27  sirup; maltose; maltose sirup, dried maltose sirup; malt extract, dried malt extract; malt sirup, dried
     malt sirup; honey; maple sugar; or any of the sweeteners listed in part 168 of this chapter, except
28  table sirup." 21 C.F.R. § 131.200(d)(2).

28

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

cane," it is not entirely clear that ECJ is permitted. The Standard of Identity for Yogurt also requires that "[e]ach of the ingredients used in the [yogurt] shall be declared on the label as required by the applicable sections of parts 101 and 130 of this chapter," *i.e.*, by their common and usual name. 21 C.F.R. § 131.200(g). Defendant argues that Plaintiffs' claims based on the Standard of Identity for Yogurt are expressly preempted and must be dismissed. The Court agrees that Plaintiffs' claims should be dismissed, although not on the grounds of express preemption.

First, to the extent Plaintiffs are claiming that Defendant violated the Standard of Identity for Yogurt by not referring to ECJ by its common and usual name, Plaintiffs' claim is duplicative of Plaintiffs' other claims alleging that Defendant failed to comply with the common and usual name requirements of the Sherman Law and the FDCA. Accordingly, the Court dismisses Plaintiffs' Standard of Identity claims as duplicative. *See M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims"). Moreover, to the extent Plaintiffs' Standard of Identity claims are alleging that Defendant violated the Standard of Identity for Yogurt because ECJ is not an approved nutritive sweetener, Plaintiffs' claims fail for primary jurisdiction reasons which will be discussed *infra*.

### D. Primary Jurisdiction Doctrine

Defendant argues that, even if the Court finds that Plaintiffs' claims are not preempted, the Court should abstain and either dismiss or stay the case under the doctrine of primary jurisdiction. *See* Mot. at 21-22. The primary jurisdiction doctrine "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The primary jurisdiction doctrine applies when: "(1) [there is] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir.

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

1   2002) (amended).  "Primary jurisdiction is properly invoked when a claim is cognizable in federal

2   court but requires resolution of an issue of first impression, or of a particularly complicated issue

3   that Congress has committed to a regulatory agency."  *Id*. at 780 (internal citation and alterations

4   omitted); *Clark*, 523 F.3d at 1114 (same).

5         Defendant argues that the Court should dismiss this case because "[i]f every court in the 25

6   recent cases filed by plaintiffs' counsel adjudicates the alleged false advertising claims, there is a

7   clear danger that inconsistent rulings will leave the food and beverage industry in a state of

8   confusion."  Mot. at 21-22.  As to Plaintiffs' ECJ Claims generally, the Court is not persuaded that

9   these claims should be dismissed or stayed on primary jurisdiction grounds.  Significantly, the

10  FDA has issued guidance (albeit informal guidance) regarding whether ECJ is consistent with FDA

11  requirement.  Thus, at this stage, the Court is not persuaded that the Court will be required to

12  resolve an issue of "first impression" without the benefit of the FDA's opinion.  *Syntek*

13  *Semiconductor Co.*, 307 F.3d at 780.  Accordingly, the Court rejects Defendant's primary

14  jurisdiction argument as to the ECJ Claims.

15        However, the Court GRANTS Defendant's Motion to Dismiss on primary jurisdiction

16  grounds with respect to Plaintiffs' claims that Defendant's use of ECJ in its Yogurts violates the

17  Standard of Identity for Yogurt.  *See* 21 C.F.R. § 131.200.  Significantly, the FDA has proposed a

18  new Standard of Identity for Yogurt that allows any "safe and suitable sweetening ingredients."

19  *See* Milk and Cream Products and Yogurt Products; Proposal to Revoke the Standards for Lowfat

20  Yogurt and Nonfat Yogurt and to Amend the Standard for Yogurt, 74 FR 2443-02, 2455 (Jan. 15,

21  2009).  There is no allegation that evaporated cane juice is not a "safe and suitable sweetening

22  ingredient."  *Id.*  The FDA has also suggested that it will not enforce violations of the current

23  Standard of Identity if companies comply with the proposed one.  *Id.* at 2456 ("Pending issuance of

24  a final rule amending the existing standard of identity for yogurt . . . FDA intends to consider the

25  exercise of its enforcement discretion on a case-by-case basis when yogurt products are in

26  compliance with the standard of identity proposed in this proposed rule").  Given the possibility

27  that the FDA will soon change the Standard of Identity for Yogurt to permit the use of ECJ and the

28

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

**United States District Court**
For the Northern District of California

1   indications that the FDA will not bring claims against manufacturers who comply with the

2   proposed revised Standard of Identity, Plaintiffs' claims based on the Standard of Identity for

3   Yogurt are dismissed on primary jurisdiction grounds.   *See Taradejna v. Gen. Mills, Inc.*, 909 F.

4   Supp. 2d 1128, 1135 (D. Minn. 2012) (dismissing plaintiff's claims that defendant's yogurt

5   violated the Standard of Identity for Yogurt by including milk protein concentrate since the

6   Proposed 2009 Rule would permit the use of MPC); *Ivie*, 2013 WL 685372, at *7 (dismissing

7   "'one mint' serving size claims" on primary jurisdiction grounds because "the FDA is currently

8   engaged in rulemaking procedures to *change* its existing requirements").   However, because the

9   FDA may announce that it is not amending the Standard of Identity for Yogurt, the Court's

10  dismissal is without prejudice.   *See Lopez,* 203 F.3d at 1127.

       **E.**     **Rule 9(b)**

           **1.**      **Applicability of Rule 9(b)**

11        Next, the Court addresses Defendant's arguments that Plaintiffs' allegations fail to satisfy

12

13  Rule 9(b).   *See* Mot. at 22.   At the outset, the Court determines whether Rule 9(b)'s heightened

14  pleading standard applies to Plaintiffs' claims.   *See* Fed. R. Civ. P. 9(b) (a plaintiff alleging fraud

15  "must state with particularity the circumstances constituting fraud").   Plaintiffs do not dispute the

16  applicability of Rule 9(b) to the majority of Plaintiffs' causes of action.   However, Plaintiffs argue

17  that Rule 9(b) does not apply to Plaintiffs' UCL unlawful prong claim.   Opp'n at 22 n.25.

18        "Rule 9(b) applies to 'averments of fraud' in all civil cases in federal district court."   *Vess v.*

19  *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).   Even if "fraud is not a necessary

20  element of a [particular] claim," Rule 9(b) will apply if the plaintiff has "allege[d] a unified course

21  of fraudulent conduct and rel[ied] entirely on that course of conduct as the basis of [the] claim."

22  *Id.* at 1103.   In such a case, the claim "is said to be 'grounded in fraud.'"   *Id.*   If a claim is grounded

23  in fraud, it must be pled with particularity.   *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127

24  (9th Cir. 2009) (holding that, where "TAC allege[d] a unified fraudulent course of conduct," claims

25  were "grounded in fraud" and the "entire complaint" had to be pled "with particularity").

26        Here, Rule 9(b) applies to Plaintiffs' UCL unlawful claims based on the FAL and the

27  CLRA because Plaintiffs' FAL and CLRA claims allege that Defendant's representations on its

28

31

labeling and in its advertising were "misleading and deceptive," SAC ¶ 137, "untrue," *id.* ¶ 145, "misrepresented" the truth, *id.* ¶¶ 139, 147, and "constitut[ed]… fraud[]," *id.* ¶¶ 161-63.  Plaintiffs UCL unlawful prong claim predicated on the Sherman Law is premised on the same allegations of false and misleading labeling representations as Plaintiffs' other claims.  Because the alleged violations of the Sherman Law are premised on the same "unified course of fraudulent conduct" as Plaintiffs' other claims, Plaintiffs' UCL unlawful prong claim predicated on the Sherman Law is subject to Rule 9(b).  *See Brazil*, 2013 WL 1209955, at *14 (holding that Rule 9(b) applied to cause of action alleging "violation of the UCL for unlawful business acts and practices" where it was "predicated on the same course of conduct as his other UCL, FAL, and CLRA claims").

### 2.      Application of Rule 9(b) to Plaintiffs' Claims

Defendant makes several arguments concerning why Plaintiffs' allegations do not comply with Rule 9(b).  With respect to the ECJ Claims, Defendant's arguments reiterate Defendant's arguments regarding reliance and lack of standing.  The Court addressed these arguments above.  The only argument not addressed above is Defendant's argument that Plaintiffs' allegations fail to satisfy Rule 9(b)'s particularity requirement because Plaintiffs do not identify with specificity when Plaintiffs purchased the products.  *See* Mot. at 23.  This argument fails.  Plaintiffs allege that they purchased Defendant's Yogurts "starting approximately one year ago until shortly before this complaint was filed," SAC ¶ 93 (Kane), and "[s]tarting approximately two years ago until shortly before this complaint was filed," SAC ¶¶ 94-95 (Booth and Rosales).  Defendant has not shown that Defendant used a term other than ECJ during the period in which Plaintiffs purchased the Yogurts.  Accordingly, the Court is not persuaded that, in this case, Plaintiffs should be required to allege with more specificity each time they went to the grocery store and purchased a cup of Defendant's Yogurt.  *See Astiana*, 2011 WL 2111796, at *6  (holding that allegations that the plaintiffs purchased ice cream "since at least 2006," and "throughout the class period" were sufficient to satisfy Rule 9(b)).  For the reasons set forth above, the Court DENIES Defendant's motion to dismiss the ECJ Claims on Rule 9(b) grounds.

### F.      Plaintiffs' Unjust Enrichment and Warranty Claims Fail

Defendant argues that Plaintiffs' seventh cause of action for unjust enrichment must be

32

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

dismissed.  *See* Mot. at 24.  The Court agrees.  As recognized by this Court in *Brazil*, "there is no

cause of action for unjust enrichment under California law."  *Id.*, 2013 WL 1209955, at *18; *see,*

*e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (collecting cases).

Accordingly, Plaintiffs' unjust enrichment claim is dismissed.

The Court also finds that Plaintiffs' eighth cause of action under the Song-Beverly

Consumer Warranty Act ("Song-Beverly Act") and ninth cause of action under the Magnuson-

Moss Warranty Act ("MMWA") must be dismissed.  Plaintiffs' claim under the Song-Beverly Act

fails because this act does not cover warranties made with respect to "consumables," Cal. Civ.

Code § 1791(a), and Defendant's Yogurts are consumables.

Plaintiffs' claim under the MMWA, which creates a civil cause of action for consumers to

enforce the terms of implied or express warranties, *see* 15 U.S.C. § 2310(d), similarly fails.  The

MMWA applies only to products that cost more than five dollars.  15 U.S.C. § 2302(e).  Here,

Plaintiffs allege that they paid less than five dollars for their yogurt.  *See* SAC ¶¶ 93-95 (alleging

that Plaintiffs paid between $1.69 and $1.89 for their yogurt); 15 U.S.C. § 2302(e); 15 U.S.C. §

2310(d)(3)(A).  Moreover, the MMWA applies to "written warrant[ies]," 15 U.S.C. § 2301(6)(A),

and, as recognized by this Court in *Brazil*, "'product descriptions [such as 'all natural'] do not

constitute warranties against a product defect' for the purposes of a MMWA claim[]."  *See Brazil*,

2013 WL 1209955, at *17 (quoting *Astiana*, 2012 WL 2990766, at *3).

Thus, for the reasons set forth above, Plaintiffs' unjust enrichment, Song-Beverly Act, and

MMWA claims are dismissed.  Moreover, because Plaintiffs cannot show that: (1) unjust

enrichment is a separate cause of action; (2) the Yogurts were not consumable; or (3) the Yogurts

cost $5 or more, these claims are dismissed with prejudice.  *See Carvalho*, 629 F.3d at 892-93

(holding that a court "may… deny leave to amend due to… futility of amendment.").

G.      **Conclusion**

For the reasons set forth above, the Court:

1.   GRANTS with leave to amend Defendant's Motion to Dismiss Plaintiffs' ECJ

claims to the extent they are based on products Plaintiffs did not purchase;

33

2.   GRANTS with leave to amend Defendant's Motion to Dismiss Plaintiffs' UCL,
FAL, and CLRA claims based on the No Sugar Added and the All Natural
Representations;

3.   GRANTS Defendant's Motion to Dismiss Plaintiffs' UCL, FAL, and CLRA claims
based on Defendant's purported violation of the Standard of Identity for Yogurt.  If
the FDA retracts its previous notice that it intends to amend the Standard of Identity
for Yogurt, Plaintiffs may seek leave to amend.

4.   GRANTS with prejudice Defendant's Motion to Dismiss Plaintiffs' unjust
enrichment, Song-Beverly Act, and MMWA claims.

5.   DENIES Defendant's Motion to Dismiss in all other respects.

If Plaintiffs wish to file an amended complaint addressing the deficiencies identified with
respect to Plaintiffs' SAC, Plaintiffs must do so within 30 days of this Order.  Plaintiffs may not
add new claims or parties without seeking Defendant's consent or leave of the Court pursuant to
Federal Rule of Civil Procedure 15.  If Plaintiffs fail to file an amended complaint within 30 days
of this Order or to cure the deficiencies addressed in this Order, the deficient claims shall be
considered dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: July 12, 2013

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

34

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT