UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KATIE KANE, an individual, DARLA BOOTH, an individual, and ARIANNA ROSALES, an individual on behalf of themselves and all others similarly situated, | Case No.: 12-CV-02425-LHK |
| Plaintiffs, | ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| CHOBANI, INC., also formerly known as AGRO-FARMA, INC., | |
| Defendant. | |

Plaintiffs Katie Kane, Darla Booth, and Arianna Rosales ("Plaintiffs") filed a motion for preliminary injunction to enjoin Defendant Chobani, Inc. ("Defendant") from selling, advertising, and distributing Chobani Greek Yogurt products and ordering them to remove and recall all such products from their distributors and retailers. For the reasons that follow, Plaintiff's motion is DENIED.

I.      BACKGROUND

In this action, Plaintiffs on behalf of themselves and others who are similarly situated, allege that they purchased misbranded yogurt products from Defendant, including Defendant's "Chobani Greek Yogurt" and "Chobani Greek Yogurt Champions" (collectively "Yogurts," "Yogurt Products," or "Products"). *See* ECF No. 35 ("SAC" or "Second Amended Complaint") ¶¶ 5-6. Plaintiffs contend that Defendant deceives consumers into purchasing and consuming its

1

products by mislabeling and misbranding sugar ingredients as "evaporated cane juice" ("ECJ"). SAC ¶¶ 10, 12. In addition, Plaintiffs contend that Defendant misrepresents that it does not add sugar to its yogurt products, SAC ¶¶ 65-73, and that they contain only natural ingredients, SAC ¶¶ 5-6, 12. Plaintiffs claim that by presenting their products in this way, Defendant is knowingly violating California and Federal food labeling laws and deceiving consumers who believe Defendant's products are healthy choices. Mot. at 3.

Plaintiffs filed their Complaint on May 14, 2012. ECF No. 1. Plaintiffs filed their First Amended Complaint on August 30, 2012. ECF No. 14. Plaintiffs filed their Second Amended Complaint on October 10, 2012. ECF No. 35 ("SAC"). Plaintiffs have alleged nine causes of action. The Court has dismissed with prejudice Plaintiffs' cause of action for unjust enrichment and causes of action for violations of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act") and Magnuson-Moss Warranty Act ("MMWA"). ECF No. 125 ("Order re: MTD"). Plaintiffs' remaining causes of action allege violations of: (1) the unlawful prong of the Unfair Competition Law ("UCL"), predicated on (a) California's Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), (b) the False Advertising Law ("FAL"), and (c) the Consumer Legal Remedies Act ("CLRA"); (2) the unfair prong of the UCL; (3) the fraud prong of the UCL; (4) the FAL because Defendant's labeling and advertising are "false and misleading"; (5) the FAL because Defendant's advertising is "untrue"; and (6) the CLRA. *See id.*[1]

On September 10, 2012, Plaintiffs filed a Motion for a Preliminary Injunction. ECF No. 16. Plaintiffs withdrew their Motion for Preliminary Injunction on November 1, 2012. ECF No. 37. Three months later, on February 5, 2013, Plaintiffs filed the instant Motion for Preliminary Injunction. ECF No. 44. Plaintiffs seek to: (1) enjoin Defendant "from selling, advertising or distributing Chobani Greek Yogurt Products as currently labeled and formulated," and (2) require Defendant "to remove and recall all Chobani Greek Yogurt products, as currently labeled and formulated, from its distributors and retailers." ECF No. 44-25 at 1. On April 15, 2013, Defendant

---

[1] The Court also dismissed Plaintiffs' UCL, FAL, and CLRA claims without prejudice to the extent they are based on Defendant's: (1) representations on its website indicating that the yogurts do not contain added sugar, and (2) representations that its yogurts are "all natural" and contain "only natural ingredients." ECF No. 125 at 34. Thus, the only claims remaining are those predicated on Defendant's use of the name ECJ on its labeling.

Case No.: 12-CV-02425-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1    filed an Opposition.  *See* ECF No. 86 ("Opp'n").  On June 14, 2013, Plaintiffs filed a Reply.  *See*

2    ECF No. 103 ("Reply").  The Court held a hearing on July 11, 2013.

3    **II.     LEGAL STANDARD**

4          "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be

5    granted unless the movant, *by a clear showing*, carries the burden of persuasion.'"  *Lopez v.*

6    *Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation omitted) (emphasis in original).  Federal

7    Rule of Civil Procedure 65 sets forth the procedural requirements for issuing a preliminary

8    injunction.  The Supreme Court has advised that "[a] plaintiff seeking a preliminary injunction

9    must establish[:] [1] that he is likely to succeed on the merits, [2] that he is likely to suffer

10   irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in his

11   favor, and [4] that an injunction is in the public interest."  *Winter v. Natural Resources Defense*

12   *Council, Inc.*, 555 U.S. 7, 20 (2008).

13         In the Reply, Plaintiffs appear to argue that California law, and not federal law, governs the

14   issuance of injunctive relief in this case.  *See* Reply at 8.[2]  The Court surmises that Plaintiffs adopt

15   this position because they believe that they are not required to show irreparable harm under

16   California law.  The Court is not persuaded.

17         As an initial matter, the Court observes that California law requires that the parties weigh

18   "the relative interim harm to the parties from the issuance or nonissuance of the injunction."  *See*

19   *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1449 (2002) (citation and quotation marks

20   omitted).  One of the factors courts must consider in balancing the relative harms is whether the

21   party seeking the injunction is likely to suffer irreparable harm.  *See Intel Corp. v. Hamidi*, 30 Cal.

22   4th 1342, 1352 (2003) ("Indeed, in order to obtain injunctive relief the plaintiff must ordinarily

23   show that the defendant's wrongful acts threaten to cause *irreparable* injuries, ones that cannot be

24   adequately compensated in damages." (emphasis in original)); *Vo v. City of Garden Grove*, 115

25   ─────────────────────
     [2] In the Motion for Preliminary Injunction, Plaintiffs acknowledge that, while state law governs
26   whether an injunction is "permissible" in a particular case, federal law, specifically Federal Rule of
     Civil Procedure 65, governs "'whether the Court should exercise its discretion' to issue the
27   injunction." Mot. at 14 n.11 (quoting *Kaiser Trading Co. v. Associated Metals & Minerals Corp.*,
     321 F. Supp. 923, 931 n.14 (C.D. Cal.1970)).  However, in Plaintiffs' Reply, Plaintiffs appear to
28   argue that state law governs both whether an injunction is permissible *and* the procedures for
     issuing it.  *See* Reply at 8.

1   Cal. App. 4th 425, 435 (2004) ("An evaluation of the relative harm to the parties upon the granting

2   or denial of a preliminary injunction requires consideration of: '(1) the inadequacy of any other

3   remedy; (2) the degree of irreparable injury the denial of the injunction will cause; (3) the necessity

4   to preserve the status quo; [and] (4) the degree of adverse effect on the public interest or interests

5   of third parties the granting of the injunction will cause.'" (citing *Cohen v. Board of Supervisors*,

6   40 Cal.3d 277, 286, n.5 (1985))).  While there are some exceptions to the balancing of the harms

7   requirement under California law, as will be discussed below, Plaintiffs have not identified any that

8   are applicable here.  Thus, the Court is not persuaded that the result in this case would be different

9   if California as opposed to federal law is applied.[3]

10      The Court further observes that applying choice of law principles supports application of

11  federal law.  Two tests are relevant in determining whether state or federal law should apply in a

12  given situation.  When a state law directly conflicts with a federal rule of civil procedure, courts

13  apply the test set forth in *Hanna v. Plumer*, 380 U.S. 460, 470 (1965).  *See Walker v. Armco Steel

14  Corp.*, 446 U.S. 740, 750 (1980).  However, when state law does not directly conflict with state

15  law, courts apply the test set forth in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 73 (1938).  *Id.*  As will

16  be set forth below, both the *Hanna* test and the *Erie* test support application of federal law.

17      Turning first to the *Hanna* test, there is a federal rule, Rule 65, governing the procedure for

18  issuing a preliminary injunction.  *Hanna* instructs that, when faced with a conflict between a state

19  law and a federal rule of civil procedure, courts apply "the Federal Rule, and can refuse to do so

20  only if the Advisory Committee, [the Supreme Court], and Congress erred in their prima facie

21  judgment that the Rule" is within the scope of the Rules Enabling Act and the Constitution.  *Id.*,

22  380 U.S. at 471.  Courts have held that the Rule 65 is both constitutional and within the scope of

23  the Rules Enabling Act.  *See Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir.

24  1991) ("Rule 65 meets the criteria of *Hanna*, and therefore we apply federal procedure to

25  determine whether the preliminary injunction was properly issued.").  Thus, to the extent California

26  law conflicts with Rule 65, the federal rule should be applied in this case.  *See id.*

27

28  ────────────────
    [3] The Court discusses the balancing of the harms under California law *infra* in Section III.B.1.c.iii.

4

United States District Court
For the Northern District of California

1    *Erie* principles also support the application of federal law.  Under the *Erie* tests, courts are

2    instructed to apply state law over federal law where applying federal law would alter the outcome

3    of the litigation.  *See Sims Snowboards*, 863 F.2d at 647.  Here, applying federal standards to

4    determine whether a preliminary injunction should be issued will not alter the final outcome of the

5    litigation.  As an initial matter, as set forth above, the federal and California standards both

6    consider irreparable harm in determining the propriety of injunctive relief.   Moreover, the Court

7    observes that, even if the Court determines that Plaintiffs are not entitled to enjoin Defendant's

8    labeling practices at this stage, Plaintiffs will still have the opportunity to seek a permanent

9    injunction after trial on the merits.  Thus, Plaintiffs will still be able to achieve the outcome they

10   desire.[4]  Accordingly, the Court concludes that, in this case, the preliminary injunctive relief sought

11   is not outcome determinative. Consequently, the *Erie* test, like the *Hanna* test, supports applying

12   federal law.  *See Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp.

13   947, 956 (E.D. Cal. 1990) (explaining that, because the preliminary injunction merely "preserve[s]

14   the relative positions of the parties" and does not require the court to make any binding

15   determinations regarding the merits, the application of the federal standards was not "outcome

16   determinative for purposes of the *Erie* doctrine" (citations omitted)).

17        For the reasons set forth above, the Court concludes that the Court should apply federal

18   standards in determining whether or not to grant a preliminary injunction.  Indeed, the Court

19   observes that courts in the Ninth Circuit have repeatedly applied the federal standard when faced

20   with requests for injunctive relief based on state causes of action.  *See e.g. Anselmo v. Mull*, No.

21   12-CV-01422 WBS EFB, 2012 WL 5304799, at *5, (E.D. Cal. Oct. 25, 2012); *Kremen v. Cohen*,

---

[4] This case is therefore distinguishable from *Sims*, wherein the Court held that a California anti-injunction statute had an outcome determinative effect for *Erie* purposes.  In *Sims*, the plaintiff Sims Snowboards sought to enjoin Craig Kelly from endorsing the products of Sim's competitor, Burton Snowboards.  *Sims*, 863 F.2d at 644.  California law expressly barred injunctive relief to prevent the breach of a personal service contract.  *Id.* at 645 (Cal. Civ. Code § 3423).  Federal law, on the other hand, might have permitted the relief.  The *Sims* Court held that were the Court to enjoin Kelly "from competing for Burton, Sims [would] accomplish[] what California has prohibited—the enforcement of a personal service contract."  *Id.*  Thus, in *Sims*, applying federal law over California law would have an outcome determinative effect.  Here, in contrast, even if the federal law did prohibit Plaintiffs from obtaining a *preliminary* injunction, Plaintiffs will have the opportunity to seek an injunction after trial on the merits.  Thus, the choice of law at the preliminary injunction stage will not have an outcome determinative effect.

5

United States District Court
For the Northern District of California

No. 11-CV-05411 LHK, 2012 WL 44999, at *5, *11-12 (N.D. Cal. Jan 7, 2012); *Dixon v. Cost Plus*, No. 12-CV-02721 LHK, 2012 WL 2499931, at *6 (N.D. Cal. June 27, 2012).

## III.    DISCUSSION

### A.    Likelihood of Success

Plaintiffs argue that they are likely to succeed on their claims relating to Defendant's use of the name ECJ to describe the sweetening ingredient in Defendant's yogurts.[5]  At the July 11, 2013 hearing, Plaintiffs further clarified that their request for injunctive relief is based solely on their belief that they are likely to succeed on their UCL unlawful prong claim alleging that Defendant's use of the name ECJ violates the Sherman Law.[6]  Accordingly, the Court considers only whether Plaintiffs are likely to succeed on this claim.

Both the Sherman Law and the FDCA require that ingredients be referred to by their "common or usual" name.  Cal. Health & Safety Code § 110725l; 21 C.F.R. § 101.4.  As set forth in the Order Regarding Defendant's Motion to Dismiss, the FDA has stated in (admittedly non-binding) draft guidance and in FDA warning letters issued to manufacturers that the FDA does not consider ECJ to be the common and usual name of the sweetening ingredient for the purposes of the FDA's common and usual name regulation, 21 C.F.R. § 101.4, and that the common and usual name for this ingredient is sugar.  *See, e.g.*, Declaration of Darren Brown, ECF No. 44-1, Ex. 5 ("FDA Guidance re: ECJ") (stating that it is the "FDA's view that the term 'evaporated cane juice' is not the common or usual name of any type of sweetener") (citing 21 C.F.R. § 101.4); *id.*, Ex. 9 (FDA Warning Letter to Bob's Red Mill Natural Foods Inc. dated July 31, 2013), at 1 (stating that Redmill's use of the term ECJ instead of sugar violated 21 C.F.R. § 101.4).[7]  The Court is generally bound to consider the FDA's informal interpretations of its regulations as controlling. *See Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) ("[W]here an agency interprets its

---

[5] Notably, while Plaintiffs have alleged claims based on Defendant's purportedly misleading and unlawful use of the term "natural" to describe its yogurts, in Plaintiffs' Motion for Preliminary Injunction Plaintiffs do not make any arguments regarding why they are likely to succeed on these claims.  Accordingly, the Court does not consider them.
[6] Plaintiffs similarly focused on the unlawful prong claim in their Reply.  *See* Reply at 2.
[7] Defendant objects that the FDA Guidance and the warning letter are "unfairly confusing and misleading, and without evidentiary foundation" and should therefore be excluded under Federal Rules of Evidence 401 (relevance), 403 (prejudice), and 602 (personal knowledge).  *See* Opp'n at 22.  Defendant's objections are overruled.

Case No.: 12-CV-02425-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the regulation.'") (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). Thus, the FDA's statements support the conclusion that Defendant has violated the FDA's common and usual name regulations. Because the Sherman Law incorporates federal standards, the FDA's statements support the conclusion that the Sherman Law's requirements have been violated as well. *See* Cal. Health & Safety Code § 110100(a) (incorporating "[a]ll [federal] food labeling regulations and any amendments to those regulations"). Accordingly, the Court will accept *arguendo* that Plaintiffs are likely to succeed on the merits of their Sherman Law claim based on the common and usual name requirement.

   **B.    Irreparable Harm**

      **1.    Plaintiffs Are Not Excused from Demonstrating Irreparable Harm**

   Turning to the issue of irreparable harm, Plaintiffs argue that they fall under several exceptions to the irreparable harm requirement. Mot. at 10-14. Plaintiffs argue they do not need to demonstrate irreparable harm because: (1) they are acting as "private attorneys general"; (2) they are seeking to enjoin a public nuisance; and (3) they are seeking to enforce statutory provisions and therefore irreparable harm may be inferred. *Id.* The Court is not persuaded by these arguments.

         **a.    Private Attorneys General Exception**

   Plaintiffs claim that they are Private Attorneys General acting to enjoin an activity which endangers the public, and as such do not need to demonstrate irreparable harm. Mot. at 14-15. While the California Supreme Court has acknowledged that plaintiffs bringing a case under the CLRA, as Plaintiffs do here, may "play[] the role of a bona fide private attorney general," *see Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1080 (1999), Plaintiffs cite only out-of-jurisdiction authority for the proposition that private attorneys general do not need to demonstrate irreparable harm, Mot. at 14-15. The Ninth Circuit precedent Plaintiffs cite in support of their argument speaks only to the fact that a claim is not defective simply because it is brought "on behalf of the general public." *See* Mot. at 14; *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 994-95 (C.D. Cal. 2008). Instead, courts in the Ninth Circuit have required plaintiffs to demonstrate irreparable harm even when, as here, they seek injunctive relief for the benefit of

7

United States District Court
For the Northern District of California

1  the public.  *See Peviani v. Natural Balance, Inc.*, No. 10-CV-2451 AJB, 2012 WL 441098, at *1-2

2  (S.D. Cal. Feb. 9, 2012) (requiring plaintiff to demonstrate irreparable harm even though plaintiff

3  claimed potential health risks to those who used defendant's product); *Fradis v. Savebig.com*, No.

4  CV 11-07275 GAF, 2011 WL 7637785, at *12-13 (C.D. Cal. Dec. 2, 2011) (requiring plaintiff to

5  demonstrate irreparable harm despite claiming widespread potential that defendant's website could

6  deceive the public).  Accordingly, Plaintiffs cannot avoid demonstrating irreparable harm, by

7  claiming that they are Private Attorneys General.

8           **b.**       **Public Nuisance Exception**

9       Plaintiffs also contend that Defendant's conduct constitutes a public nuisance and that,

10  under California law, when a private plaintiff seeks to enjoin a public nuisance they may be

11  granted a preliminary injunction without demonstrating irreparable harm.  Mot. at 16.  This

12  argument fails.

13       California Civil Code Section 3493 provides that "[a] private person may maintain an

14  action for a public nuisance, if it is specially injurious to himself, but not otherwise."  As

15  recognized in *Virtual Media Group, Inc. v. City of San Mateo*, "'[a] *legislatively* declared public

16  nuisance constitutes a nuisance per se against which an injunction may issue without allegation or

17  proof of irreparable injury.'"  *Id.*, No. 01-1089 MMC, 2002 WL 485044 (N.D. Cal. Mar. 27, 2002)

18  (quoting *People ex. rel. Dep't. Pub. Works v. Adco Advertisers*, 35 Cal. App. 3d 507, 511 (1973))

19  (emphasis added), *aff'd*, 66 F. App'x 129 (9th Cir. 2003).  Thus, in cases where a statute

20  specifically declares a condition or activity to be a nuisance, California law permits an injunction to

21  be issued without a showing of irreparable harm.  *See Adco*, 35 Cal. App. 3d at 511 (holding that

22  billboard that did not comply with the Outdoor Advertising Act was subject to removal because

23  Cal. Bus. & Prof. Code § 5461 provided that "'[a]ll advertising displays which are placed or which

24  exist in violation of the provisions of [the Act] are *public nuisances* and may be removed'"

25  (emphasis added)).  Here, Plaintiffs have not directed the Court's attention to a statute or other

26  legislative enactment in which the Legislature has declared that the failure to use the common and

27  usual name of an ingredient or the misbranding of food generally is a public nuisance.

28

8

United States District Court
For the Northern District of California

1    Plaintiffs' public nuisance claim additionally fails because Plaintiffs have not included a

2  cause of action for public nuisance in the SAC.  Moreover, in order to have standing to pursue a

3  public nuisance claim, "a plaintiff suing on this basis must show special injury to himself of a

4  character different in *kind*—not merely in degree—from that suffered by the general public."

5  *Institoris v. City of Los Angeles*, 210 Cal. App. 3d 10, 20 (1989) (emphasis added).  Plaintiffs

6  contend that Defendant's mislabeling of its products causes consumers to consume excess sugar[8]

7  and to purchase a product they would not otherwise purchase.  *See* Mot. at 18-21.  Plaintiffs have

8  not argued that they would suffer any "special injury to [themselves] of a character different in

9  *kind*" than those suffered by other consumers.  *See Institoris*, 210 Cal. App. 3d at 20.  Thus,

10  Plaintiffs lack standing to pursue a claim for public nuisance.  Accordingly, Plaintiffs cannot avoid

11  demonstrating irreparable harm by claiming that the Public Nuisance Exception applies.

12                    **c.      Statute Provides Injunctive Relief**

13    Finally, Plaintiffs argue that Plaintiffs are not required to demonstrate irreparable harm

14  because the statutes upon which Plaintiffs' claims are based expressly authorize injunctive relief.

15  Mot. at 15-16.  Plaintiffs' argument is based on certain Ninth Circuit authorities holding that a

16  plaintiff who has shown a likelihood of success on a federal statute need not also show irreparable

17  harm.  *See, e.g.*, *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000) ("The

18  traditional requirements for equitable relief need not be satisfied since [the statute] expressly

19  authorizes the issuance of an injunction." (citation omitted)); *Burlington N. R.R. Co. v. Dep't of*

20  *Revenue*, 934 F.2d 1064, 1074 (9th Cir. 1991) ("The standard requirements for equitable relief

21  need not be satisfied when an injunction is sought to prevent the violation of a federal statute which

22  specifically provides for injunctive relief" (internal quotation marks and citation omitted)).  These

23  authorities are inapposite for several reasons.

24                    **i.      Plaintiffs' Claims Are Not Based on Federal Law**

25    As an initial matter, the authorities upon which Plaintiffs rely authorize injunctive relief

26  upon a showing of a violation of a "*federal* statute."  *Burlington*, 934 F.2d at 1074 (emphasis

27

28  _____

[8] As will be discussed below, the Court is not persuaded that there is a likelihood that consumers
will consume additional, unwanted sugar.

Case No.: 12-CV-02425-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

added).  The rationale behind this rule is that where "Congress[]" has demonstrated a "clear purpose to 'authorize . . . injunctive relief to prevent . . . violations'" of a law, a showing of irreparable harm should not be required.  *Id.* (citation omitted).  In the present case, Plaintiffs' claims arise under three state statutes (the UCL, the FAL, and the CLRA).  Given that Plaintiffs are proceeding on claims under state and not federal law, the Court is not persuaded that the *Burlington* exemption for violations of federal law applies.

### ii.   Categorical Presumptions are Disfavored

The Court doubts that the presumption endorsed in *Burlington* is still good law, even with respect to federal claims.  Two United States Supreme Court cases -- *Winter* and *eBay* -- disfavor categorical presumptions and raise serious concerns as to whether the *Burlington* presumption survives.

In *eBay*, the Supreme Court considered the propriety of the Federal Circuit's "general rule" pursuant to which, absent extraordinary circumstances, a "permanent injunction [would] issue once infringement and validity have been adjudged," regardless of whether irreparable harm had been shown.  *Id.*, 547 U.S. at 393-94 (citation omitted).  The Supreme Court rejected the Federal Circuit's application of this rule and generally disparaged the use of such "categorical" rules.  *Id.* The Supreme Court held that "[a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test . . . ."  *Id.* at 391.  The first factor in the Supreme Court's formulation of this test was "irreparable injury."  *Id.*  The Supreme Court further reasoned that "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court."  *Id.*  The Supreme Court held that "a major departure from" these principles of equity "should not be lightly implied."  *Id.* (internal quotation marks and citation omitted).  The Supreme Court reasoned that such a departure was not appropriate in that case because "[n]othing in the Patent Act indicates that Congress intended such a departure."  *Id.* at 391-92.

Two years later, in *Winter*, the Supreme Court took up the standards for injunctive relief once again.  In *Winter*, the Court reversed decisions by the district court and the Ninth Circuit which enjoined the Navy from conducting certain training exercise "based only on a 'possibility' of

10

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   irreparable harm" to marine wildlife.  *Id.*, 555 U.S. at 20.  The Supreme Court once again restated

2   its four-factor test, wherein "irreparable harm" is one of the essential factors in granting injunctive

3   relief.  *Id.*, 555 U.S. at 20.  The Court further held that the "'possibility' standard is too lenient"

4   and emphasized that "plaintiffs seeking preliminary [injunctive] relief [must] demonstrate that

5   irreparable injury is *likely*."  *Id.* (emphasis in original).

6          Since *eBay* and *Winter*, the Ninth Circuit has addressed the status of presumptions of

7   irreparable harm in several cases.  In *Antoninetti v. Chipotle Mexican Grill, Inc.*, the Ninth Circuit

8   recognized that "[t]he standard requirements for equitable relief need not be satisfied when an

9   injunction is sought to prevent the violation of a federal statute which specifically provides for

10  injunctive relief."  *Id.*, 643 F.3d 1165, 1175 (9th Cir. 2010) (citations omitted).  But these

11  statements may have been dicta.  *See id.* (stating that it was not necessary to "address the question,

12  which the parties vigorously dispute but which the district court did not decide, whether the

13  Disabilities Act authorizes a district court to deny injunctive relief after finding a violation of the

14  Act").  Subsequently, in *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.* and *Perfect 10, Inc. v.*

15  *Google, Inc.*, the Ninth Circuit declared that, following *eBay* and *Winters*: "our long-standing

16  precedent finding a plaintiff entitled to a presumption of irreparable harm on a showing of

17  likelihood of success on the merits in a copyright infringement case . . . has been effectively

18  overruled."  *Id.*, 654 F.3d 989, 998 (9th Cir. 2011); *Perfect 10*, 653 F.3d 976, 981 (9th Cir. 2011)

19  *cert. denied*, 132 S. Ct. 1713 (2012) (same)[9].  One year later, in *Meyer v. Portfolio Recovery*

20  *Assocs., LLC*, the Ninth Circuit, citing *Flexible Lifeline*, recognized that the presumption of

21  irreparable harm was no longer permitted in copyright cases.  *Meyer*, 707 F.3d 1036, 1044 (9th Cir.

22  2012) *cert. denied*, 133 S. Ct. 2361 (U.S. 2013).  However, the *Meyer* Court cautioned that "[o]ur

23  Circuit has not yet determined whether irreparable harm must be shown in order to obtain

24  injunctive relief in all types of cases," and noted the statement in *Antoninetti* that "'[t]he standard

25  requirements for equitable relief need not be satisfied when an injunction is sought to prevent the

26

27  _____

    [9] *See also Flexible Lifeline*, 654 F.3d at 995 ("As we prophetically proclaimed in *Elvis Presley* that
    '[t]he King is dead,'… referring to Elvis Presley the man, today we proclaim that the '*King* ' is
28  dead, referring to *Elvis Presley* the case—to the extent it supported the use of a presumption of
    irreparable harm in issuing injunctive relief.") (citation omitted)

Case No.: 12-CV-02425-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1  violation of a federal statute which specifically provides for injunctive relief.'" *Id*. (quoting

2  *Antoninetti*, 643 F.3d at 1175-76).

3      The Court distills from these cases, that presumptions and categorical rules regarding

4  irreparable harm are strongly disfavored, *see eBay*, 547 U.S. at 393-94, and that a preliminary

5  injunction should generally only issue upon a finding of a likelihood of irreparable harm, *see*

6  *Winter*, 555 U.S. at 20.  To the extent that presumptions are permissible, they may only be

7  employed upon a showing that Congress clearly intended for a presumption to apply.  *See eBay*,

8  547 U.S. at 391-92.  Accordingly, the court "must analyze each statute [upon which Plaintiffs are

9  relying] separately to determine whether Congress intended to make 'a major departure from the

10  long tradition of equity practice' and create a statutory presumption or categorical rule for the

11  issuance of injunctive relief."  *Perfect 10*, 653 F.3d at 981 (quoting *eBay*, 547 U.S. at 391-92).

12      In this case, Plaintiffs' claims are based on state and not federal law.  Thus, Congress has

13  not authorized the Court to make a "major departure" from traditional equity practice.  *Id.*

14  Moreover, as will be discussed below, it does not even appear that the California Legislature

15  intended to authorize Plaintiffs to obtain injunctive relief under the statutes at issue without

16  demonstrating irreparable harm.

17            **iii.**      **There is No Indication that the California Legislature**
       **Intended to Eliminate the Irreparable Harm Requirement**

18                          **for Plaintiffs Claims Under the UCL, FAL, and CLRA**

19      Here, Plaintiffs' claims are based on the UCL (predicated in part on a violation of the

20  Sherman Law), the CLRA, and the FAL.  Mot. at 13.  Plaintiffs have failed to present any clear

21  evidence showing that the California Legislature intended to depart from traditional principles of

22  equity and permit private plaintiffs to obtain a preliminary injunction under these statutes based

23  solely on a showing of likelihood of success.

24      Significantly, the sections of the UCL, the FAL, and the CLRA which govern injunctive

25  relierf merely provide a remedy for injunctive relief and say nothing to suggest that irreparable

26  harm may be presumed.  *See* Cal. Bus. & Prof. Code § 17203 (providing that, under the UCL

27  "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be

28  enjoined"); Cal. Bus. & Prof. Code § 17535 ("Any person, corporation, . . . or any other association

12

or organization which violates or proposes to violate [the FAL] may be enjoined . . . ."); Cal. Civil

Code § 1780 ("Any consumer who suffers any damage as a result of the use or employment by any

person of a method, act, or practice declared to be unlawful by [the CLRA] may bring an action

against that person to recover or obtain . . . [a]n order enjoining the methods, acts, or practices.").

        Moreover, California law generally requires that a court determining whether to issue a

preliminary injunction weigh "the relative interim harm to the parties from the issuance or

nonissuance of the injunction." *See Whyte*, 101 Cal. App. 4th at 1449 (citation and quotation

marks omitted).  This requirement has also been stated in cases involving claims under the UCL.

*See, e.g., People ex rel. Brown v. Black Hawk Tobacco, Inc.*, 197 Cal.App.4th 1561, 1567-68

(2011) (quoting *Whyte*, 101 Cal. App. 4th at 1449).[10]  Significantly, as set forth *supra*, one of the

factors courts must consider in balancing the relative harms is whether the party seeking the

injunction is likely to suffer irreparable harm.  *See Intel Corp.*, 30 Cal. 4th at 1352 ("Indeed, in

order to obtain injunctive relief the plaintiff must ordinarily show that the defendant's wrongful

acts threaten to cause *irreparable* injuries, ones that cannot be adequately compensated in

damages." (emphasis in original)); *Vo*, 115 Cal. App. 4th at 435 ("An evaluation of the relative

harm to the parties upon the granting or denial of a preliminary injunction requires consideration

of: '. . . (2) the degree of irreparable injury the denial of the injunction will cause. . . .'" (citing

*Cohen*, 40 Cal.3d at 286, n.5)).

        Here, as will be discussed below, Plaintiffs and other consumers are unlikely to experience

any significant, much less irreparable, harm if Defendant is not required to re-label its yogurts at

this time.  In contrast, the harm to Defendant, and retailers of Defendant's yogurts, if the Court

grants Plaintiffs' requested relief, especially Plaintiffs request that Defendant be required to

remove and recall all Chobani Greek Yogurt products, would be substantial.  *See*  Opp'n at 21.

Indeed, Defendant notes that it would not be able to re-label recalled yogurt in time for resale.  *See*

---

[10] In *Brown*, the Court of Appeal ultimately held that it was not necessary to weigh the relative
harms because, in that case, the plaintiff was a governmental entity.  *See Brown*, 197 Cal. App. 4th
at 1571 ("Where a public entity seeks an injunction, the second traditional factor of weighing the
relative harm to the parties usually does not apply.").  As will be discussed *infra*, the governmental
entity exception does not apply to Plaintiffs because Plaintiffs are private parties.

Case No.: 12-CV-02425-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

1    Declaration of Neil Sandfort, ECF No. 92, ¶ 8.  Consequently, this yogurt would have to be thrown

2    out, resulting in millions of dollars of losses.  *See id.*  Thus, balancing the relative harms to the

3    parties weighs against granting injunctive relief.  Accordingly, even under California law,

4    injunctive relief would not be appropriate.

5            The Court notes that California Courts have followed pre-*eBay* cases like *Burlington* in

6    dispensing with the irreparable harm requirement "where an injunction is authorized by statute."

7    *Paul v. Wadler*, 209 Cal. App. 2d 615, 625 (1962) ("[w]here an injunction is authorized by statute,

8    a violation thereof is good and sufficient cause for its issuance.").  However, this exception has

9    been explicitly limited to government agencies.  *See Leach v. City of San Marcos*, 213 Cal. App. 3d

10   648, 661-62 (1989) ("When the plaintiff is not a governmental entity and the statute does not

11   expressly provide otherwise, a finding of interim harm is necessary.").  Plaintiffs are not

12   government entities.  The fact that California law explicitly limits the statutory exception to the

13   irreparable harm requirement to government entities further supports the conclusion that Plaintiffs

14   in this case are not exempted from the irreparable harm requirement.

15           The Court also observes that Plaintiffs' UCL claim is based on the Sherman Law and the

16   Sherman Law provides that "[t]he Attorney General or any district attorney, on behalf of the

17   department, may" seek an injunction and shall not be required "to show . . . irreparable damage or

18   loss."  Cal. Health & Saf. Code §§ 111900.  However, this provision does not persuade the Court

19   that Plaintiffs should be permitted to gain an injunction without a showing of irreparable harm.  As

20   an initial matter, Plaintiffs are not the attorney general or district attorneys and are not suing on

21   behalf of the State Department of Health Services.  Moreover, Plaintiffs are not suing under the

22   Sherman Law, but rather under the UCL.  Accordingly, the UCL governs the availability of

23   remedies and the terms pursuant to which they are afforded.  *See, e.g.*, *Southwest Marine, Inc. v.*

24   *Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 810 (N.D. Cal, 1989) (holding that, despite the fact

25   that the Racketeer Influenced and Corrupt Organizations Act ("RICO") provides treble damages, a

26   plaintiff bringing a claim under the UCL for a violation of RICO could not recover treble damages

27   because they were punitive in nature while relief under the UCL is limited to restitution and

28   injunctive relief.); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145 (holding

14

that, because the UCL only provided for restitutionary relief, plaintiff could not obtain

disgorgement of profits).  As set forth above, Plaintiffs have failed to identify any support for the

conclusion that the California Legislature intended that the UCL would provide for preliminary

injunctive relief without a showing of irreparable harm or a balancing of the equities.

Thus, for all the reasons set forth above, Plaintiffs must demonstrate irreparable harm.

### 2.    Plaintiffs Have Failed to Demonstrate Irreparable Harm.

In order to obtain an injunction, Plaintiffs must show that "irreparable injury is *likely* in the

absence of an injunction."  *Winter*, 555 U.S. at 22 (emphasis in original).  Plaintiffs argue that they,

and other consumers, are likely to suffer two forms of irreparable harm.  First, Plaintiffs argue that

they and "countless consumers" are likely to suffer irreparable health effects because Defendant's

labeling deceives them into over-consuming sugar.  *See* Mot. at 18.  Second, Plaintiffs argue that

they and other consumers will suffer economic harms because they will be induced to purchase a

product they would not otherwise purchase, and that Defendant's competitors' positions in the

market will be detrimentally impacted.  *See id.* at 20.  The Court is not persuaded by Plaintiffs'

irreparable harm arguments.

### a.    Irreparable Harm to Health.

Plaintiff argues that increased sugar consumption has a "negative impact… on public

health."  *Id.* at 18.  Plaintiff relies chiefly on the testimony from Plaintiff's expert, Dr. Robert

Lustig, a professor of pediatrics, regarding the detrimental health effects of sugar and the

increasing prevalence of obesity in American society.  *See* Brown Decl., Ex. 1 ("Lustig Decl."), ¶¶

9, 11.  Dr. Lustig opines that the term ECJ conceals the fact that the ingredient is, in fact, "added

sugar," and that "[u]nsuspecting consumers who purchase products labeled with ECJ will often be

unaware that they are actually consuming extra sugar . . . ."  *Id.* ¶ 15; *see also id.* ¶ 24 ("The

continued use of ECJ by some manufacturers . . . misleads many consumers because they do not

recognize that ECJ is sugar.").  Plaintiffs' evidence does not persuaded the Court that Defendant's

use of the term ECJ is likely to cause irreparable harms to health.

As an initial matter, notwithstanding Dr. Lustig's testimony, the Court is not persuaded that

consumers are likely to be confused as to whether evaporated *cane* juice is a form of sugar or an

15

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  ingredient containing sugar.  The fact that the name of the ingredient discloses that it is derived

2  from cane seriously undermines any contention that consumers are unlikely to be under the

3  impression that the ingredient is or contains sugar.  Thus, the Court is not persuaded that

4  consumers are likely to be deceived into consuming unwanted sugar.

5  Moreover, and perhaps more significantly, each of Defendant's yogurts explicitly discloses

6  the total amount of sugar, including the sugar from the ECJ, on the label.  *See* Declaration of Dr.

7  Ran Kivetz in Support of Defendant's Opposition, ECF No. 91, ¶ 58; Brown Decl., Ex. 12 at 2.

8  Plaintiffs do not dispute this fact.  Plaintiffs argue generally that the label fails to disclose what

9  portion of the sugar is from the ECJ, *i.e.* what portion of the sugar constitutes what Plaintiffs refer

10  to as "added sugar."  *See* Reply at 7.  However, Plaintiff cannot present any evidence that a

11  consumer who knows the total amount of sugar in a yogurt will suffer health effects as a result of

12  not knowing how much of the total sugar count is from the ECJ.  Given that the labels accurately

13  disclose the total amount of sugar in each yogurt, the Court is not persuaded that Defendant's use

14  of the term ECJ is likely to cause consumers to unintentionally consume excess sugar and to suffer

15  irreparable health effects from the over-consumption of sugar.

16  Thus, for the reasons set forth above, the Court rejects Plaintiffs' argument that consumers

17  are likely to suffer irreparable health effects if no injunction is issued.

18  **b.      Irreparable Economic Harms**

19  Plaintiffs also argue that consumers are likely to suffer economic harms to the extent they

20  are induced to purchase yogurts they otherwise would not have purchased, and that Defendant's

21  mislabeling is likely to have negative effects on "market competition."  Mot. at 20.  Neither of

22  these arguments is persuasive.  As an initial matter, both harms are monetary and may be

23  compensated by a monetary judgment.  Thus, these harms are not irreparable.  *See, e.g.*, *Colorado*

24  *River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850-51 (9th Cir. 1985) ("The possibility that

25  adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily

26  against a claim of irreparable harm . . . [P]urely monetary injury is compensable, and thus not

27  irreparable." (internal citations and quotations omitted)).  Furthermore, the Court finds Plaintiffs'

28  allegations regarding the negative effects on market competition vague, entirely speculative, and

16

not warranting an injunction. *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm." (citation omitted)); *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." (citation omitted)).

**IV.     CONCLUSION**

Thus, Plaintiffs have not shown that irreparable harm is likely in the absence of a preliminary injunction. *See Winter*, 555 U.S. at 21. In light of this failure, the Court DENIES Plaintiffs' request for a preliminary injunction. *See Amylin Pharms., Inc. v. Eli Lilly & Co.*, 456 Fed. Appx. 676, 679 (9th Cir. 2011) ("because [plaintiff] has failed to carry its burden of showing a likelihood of irreparable harm, we need not address the remaining factors necessary for injunctive relief.").

**IT IS SO ORDERED.**

Dated: July 15, 2013

LUCY H. KOH
United States District Judge

Case No.: 12-CV-02425-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION