UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KATIE KANE, *et al.*, individuals, on behalf of themselves and all others similarly situated, | Case No.: 12-CV-02425-LHK |
| Plaintiffs, | ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL |
| v. | |
| CHOBANI, INC., | |
| Defendant. | |

Presently before the Court is the Motion of Defendant Chobani, Inc. ("Chobani") to: (1) Disqualify Plaintiffs' Counsel; (2) Bar Plaintiffs' Counsel from Discussing Issues in this Case with Replacement Counsel; and (3) Bar EAS Consulting Group LLC from Discussing Issues in this Case with Plaintiffs' Counsel or Replacement Counsel, filed on March 5, 2013. ECF No. 64 ("Motion to Disqualify" or "Mot."). Chobani filed an accompanying Request for Judicial Notice. ECF No. 69. On April 15, 2013, Plaintiffs' Counsel filed an Opposition. ECF No. 84 ("Opp'n"). On June 14, 2013, Chobani filed a Reply. ECF No. 110 ("Reply"). A hearing was held on July 25,

1

2013 (the "July 25 hearing").  On July 29, 2013, Plaintiffs filed a Motion to Stay Decision on the Motion to Disqualify and for Leave to Conduct Discovery.  ECF No. 133 ("Motion to Stay").  On July 30, 2013, counsel for Chobani sent an e-mail to the Courtroom Deputy, objecting to the Motion to Stay, and on July 31, 2013, Plaintiffs' Counsel sent a reply by e-mail to the Courtroom Deputy.  On August 1, 2013, Plaintiffs' Counsel filed a Notice of Withdrawal of the Motion to Stay.  ECF No. 139.  Also on August 1, 2013, Plaintiffs filed another Motion to Stay Decision and for Leave to Conduct Discovery.  ECF No. 140 ("Second Motion to Stay").

For the reasons set forth below, Chobani's Motion to Disqualify is GRANTED in part and DENIED in part.  Plaintiffs' Second Motion to Stay is DENIED as moot.

## I.  Background

### A.  Procedural Context

At the July 25 hearing, current Plaintiffs' Counsel represented that thirty-six actions have been filed in this District against the food and beverage industry for alleged misbranding of products under the Federal Food, Drug and Cosmetics Act (the "Food and Beverage Class Actions"), including the instant case.  *See also* Mot., App'x 1.  The respective plaintiffs in these cases are all represented by the Barrett Law Group, P.A., Pratt & Associates, the Provost & Umphrey Law Firm, and the Fleischman Law Firm (collectively, "Plaintiffs' Counsel").  *See* Mot. at 3.  Additionally, the Clifford Law Offices joined Plaintiffs' Counsel after almost all of the Food and Beverage Class Actions were filed.  *Id.*  The Court granted the Pro Hac Vice motions of attorneys from the Clifford Law Offices to appear in this case on February 21, 2013, before the Motion to Disqualify was filed.  *See* ECF Nos. 58; 59; 60.  The Clifford Law Offices are also subject to Chobani's disqualification motion, and the Court includes the Clifford Law Offices in the term "Plaintiffs' Counsel."

In the instant case, Plaintiffs asserted multiple theories of liability against Defendant Chobani, Inc., arising out of Chobani's marketing of its yogurt products.  In the instant motion, Chobani groups Plaintiffs' theories of liability into three categories: (1) Chobani's labels are misleading and violate the regulations of the Food and Drug Administration ("FDA") because they claim "only natural ingredients," although the product contains a color additive (concededly from a

United States District Court
For the Northern District of California

natural source) (the "all natural claim"); (2) Chobani's labels are misleading and violate FDA's regulations and non-binding draft guidance because they identify the sweetener in Chobani's yogurts as "evaporated cane juice," ("ECJ") rather than "sugar" or "dried cane syrup" (the "ECJ claim"); (3) Chobani's product fails to meet the FDA's standard of identity for yogurt because it contains evaporated cane juice (the "standard of identity claim"). *See* Mot. at 3–4. Chobani notes that almost all of the complaints in the Food and Beverage Class Actions challenge FDA-regulated labeling under at least one of these three theories. *See* ECF No. 64-1, Mot., App'x 1–4 (detailing overlap between claims filed by Plaintiffs' Counsel).[1]

**B.  Factual Background of the Instant Motion**

**1.  Chobani's Relationship with EAS Consulting Group**

On November 23, 2010, Chobani entered into an *ad hoc* consulting and confidentiality agreement with EAS Consulting Group ("EAS"), a consulting group specializing in FDA regulatory matters. Amended Decl. Robert A. Clifford in Supp. Opp'n, ECF No. 101 ("Clifford Decl."), Ex. A.[2] At the time the instant case was filed on May 14, 2012, EAS was providing services to Chobani based on this agreement, including "consulting, training, auditing and information services." Decl. Michael Resch in Supp. Mot., ECF No. 65 ("Resch Decl."), ¶ 7.

Between May 16, 2012, and January 30, 2013, Chobani's General Counsel and outside counsel had a series of confidential conversations with EAS, and specifically with EAS consultants Elizabeth Campbell and Gisela Leon, about the claims in the instant lawsuit, including conversations on May 16, 2012 (Decl. Cathy King in Supp. Mot., ECF No. 68 ("King Decl.") ¶ 6;

---

[1] The Court GRANTS Chobani's Request for Judicial Notice in support of the instant Motion, ECF No. 69, and takes judicial notice of the documents filed in other Food and Beverage Class Actions which are included in Chobani's Request for Judicial Notice. *See* Fed. R. Evid. 201; *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts.") (citations omitted). The Court does not take judicial notice of facts in the public record that are "subject to reasonable dispute," but rather of the existence of the filed documents. *See Lee v. City of L.A.,* 250 F.3d 668, 690 (9th Cir. 2001).
[2] Plaintiffs originally submitted the *ad hoc* consulting and confidentiality agreement to the Court with an Administrative Sealing Motion pursuant to Civil Local Rule 79-5(d) on April 15, 2013. *See* ECF No. 85. However, Plaintiffs publicly filed the document on May 23, 2013. *See* ECF No. 101. Accordingly, the Court DENIES as moot Plaintiffs' Administrative Sealing Motion.

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

*id.* at Ex. A); September 5, 2012 (Resch Decl. at ¶ 13; *id.* at Ex. B), September 26, 2012 (Resch Decl. at ¶ 15); October 1, 2012 (Resch Decl. at ¶ 14; *id.*at Ex. C); October 11, 2012 (*id.*); October 18, 2012 (Resch. Decl. at ¶ 15); and January 8, 2013 (Resch Decl. at ¶ 14; *id.* at Ex. C). These communications included both in-person meetings and telephone conversations. Resch Decl. ¶ 12. For example, on September 5, 2012, Chobani's counsel from the law firm Mayer Brown LLP, Michael Resch, had a lengthy telephone discussion with Campbell about the sugar claim and the standard of identity claim, and the arguments Chobani was considering making in a motion to dismiss. *Id.*¶ 13. Resch also met in person with Campbell and Leon on September 26, 2012, and October 18, 2012, and discussed the specific allegations in this case, including the "all natural" claim, the ECJ claim, and the standard of identity claim, as well as "details about Chobani's anticipated litigation strategy." *Id.* ¶ 15.

Resch states that these confidential conversations included discussions of "defense arguments, ways to simplify the issues for the Court, Plaintiffs' Counsel [sic] tendencies, and strategies to expose the fundamental flaws in Plaintiffs' misbranding allegations and claims." *Id.* ¶ 24. Resch further states that he asked for EAS's advice and assistance in litigating this case. *Id.* ¶ 16.

### 2. Campbell and EAS Publications

Between May and September of 2012, both Campbell and EAS publicly commented on the issues in the instant litigation. Campbell published at least two articles discussing the "all natural" claims. *See* Decl. Jay P. Nelkin in Supp. Opp'n, ECF No. 84-9 ("Nelkin Decl."), ¶ 12 (citing Campbell, Elizabeth, *Free Claims Sell, But Are They Safe?*, Natural Products Insider, Vol. 17, No. 9, September 2012, p. 198); Opp'n, Ex. 1, Campbell, Elizabeth, *Label Claims: Communicating Product Benefits While Complying with Reglations*, Organic Processing, Vol. 9, No. 3, May/June, 2012, pp. 12-15, 47-48. Additionally, the September 2012 issue of the EAS newsletter featured a story entitled "Food Labels Face Stronger Legal Challenges," referencing the ECJ claim in the instant lawsuit, and discussing issues related to the "all natural" claims raised in various lawsuits. Opp'n, Ex. 2 ("EAS Sept. 2012 Newsletter").

### 3. Plaintiffs' Counsel's Relationship with EAS

4

On October 9, 2012, Plaintiffs' Counsel Brian Herrington contacted EAS Chairman and CEO Ed Steele to discuss retaining EAS to provide expert services regarding FDA rules and regulations.  Decl. Brian Herrington in Supp. Opp'n, ECF No. 84-8 ("Herrington Decl."), ¶2.  On October 11, 2012, Herrington and another of Plaintiffs' Counsel, Jay Nelkin, had a telephone call with both Steele and Campbell in which they discussed another of the Food and Beverage Class Action cases.  Herrington Decl. ¶ 4; Nelkin Decl. ¶ 2.  During that conversation, Steele stated that EAS had performed work for food companies, and thus would need to see the names of all the defendants sued by Plaintiffs' Counsel before agreeing to work with Plaintiffs' Counsel. Herrington Decl. ¶ 5.  On October 11, 2012, Herrington emailed Steele and Campbell a list of Plaintiffs' Counsel's filed cases, including each plaintiff's name and each defendant's name.  *Id.* ¶ 6.  On October 12, 2012, Herrington signed and returned a contract provided by EAS for expert witness testimony.  *Id.* ¶ 7, and Ex. A.  On October 15, 2012, EAS emailed a list of the cases that EAS was interested in discussing with Plaintiffs' Counsel.  Herrington Decl. ¶ 8.  EAS agreed to be retained eleven cases, which represented a subset of Plaintiffs' Counsel's list and did not include the instant case.  *Id.* ¶ 11.

On or about October 19, 2012, Herrington talked with Steele and Campbell and asked if they could tell him "the nature of the conflicts with cases that did not make the list."  *Id.* ¶ 8. Steele "declined to provide any information about EAS's decision [to refuse to be adverse to Chobani]."  *Id.*  Steele did not identify any specific conflict, but rather allegedly stated that EAS "would never appear in a case against [Plaintiffs' Counsel]" or "provide expert services to a food manufacturer involved in one of [Plaintiffs' Counsel's] cases or cases against other food manufacturers on the list."  *Id.* ¶ 9.

Herrington and Nelkin provide varying characterizations of their impressions of this EAS policy.  Both Herrington and Nelkin's respective declarations indicate that EAS stated it would not "appear" or provide testimony for a party adverse to Plaintiffs' Counsel in the Food and Beverage Class Actions.  *See* Herrington Decl. ¶¶ 9, 10, 21; Nelkin Decl. ¶¶ 22, 24, 25.  Nelkin's declaration also states that Steele represented that EAS's corporate policy prohibited EAS from "being adverse to any former client."  Nelkin ¶ 22.  Herrington states that he told Steele and Campbell that

5

Plaintiffs' Counsel "could not work with EAS unless it agreed that it would not provide testimony *or other expert services* for the food manufacturers which we had sued," and that he "made clear to EAS that [he] wanted confirmation that EAS would not appear against [Plaintiffs' Counsel] in [their] filed cases. Mr. Steele and Ms. Campbell stated that EAS agreed to this condition." Herrington Decl. ¶ 10 (emphasis added). From EAS's representations, Nelkin states that he "was certain that neither EAS nor Ms. Campbell was *working for* any defense counsel" or defendant in connection with the Food and Beverage Class Actions. Nelkin Decl. ¶ 22 (emphasis added).

On October 24, 2012, Herrington and Nelkin met in person with Steele and Campbell. Herrington Decl. ¶ 11; Nelkin Decl. ¶¶ 5–6; 12–16. Herrington states that during the meeting, Nelkin and he discussed with Campbell the filed complaints in the eleven cases on which EAS agreed to be retained, and asked Campbell if she agreed with each allegation in the complaints. Herrington Decl. ¶ 11. Campbell "agreed that the identified label statements violated FDA regulations except in one instance she indicated that she would need some additional information." *Id.* Herrington states that neither Nelkin nor he ever asked Campbell about how food manufacturers might defend these lawsuits. *Id.* Campbell never gave any "litigation advice." Herrington states that Nelkin, Campbell, and he never discussed strategy "in any way, shape or form," and never mentioned Chobani in anyway. *Id.* ¶ 11. Herrington's declaration states that his conversations with Steele and Campbell "led [him] to believe that EAS had *not* worked on any of the cases on the list that [he] sent to EAS. Mr. Steele and Ms. Campbell specifically stated that EAS would not act as an expert for any of the defendants identified on the filed cases list, which included *Kane v. Chobani*." *Id.* ¶ 13. Nelkin confirms that based on his discussions with EAS and Campbell, he was "certain" that neither EAS nor Campbell was working for any defense counsel or any defendant in connection with any of the Barrett Law Group food litigation matters. Nelkin Decl. ¶ 22.

Herrington's declaration further states that he had "a couple" of other conversations with Campbell between October 24, 2012, and January 30, 2013, which focused on logistics related to other cases, and "did not discuss the merits of any particular claim." Herrington Decl. ¶ 18.

**4.      Chobani's Discovery of EAS Relationship with Plaintiffs' Counsel**

6

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

On January 30, 2013, counsel for one of the other defendants in another Food and Beverage Class Action contacted Chobani's Resch, to share a "strong impression . . . that EAS was working with Plaintiffs' Counsel in the Food and Beverage Class Actions."  Resch Decl. ¶ 21.  That same day, Resch called Campbell, who allegedly acknowledged that she and EAS were working for Plaintiffs' Counsel on the Food and Beverage Class actions, but not specifically against Chobani on the *Kane* Case.  Resch Decl. ¶ 22.  Campbell allegedly told Resch that "EAS as a company had made the decision that its experts could simultaneously advise opposing sides of the same issue in the Food and Beverage Class Actions, so long as the expert did not *testify* against a client."  Resch Decl. ¶ 22 (emphasis in original).

Later that day, Resch and Giali telephoned one of Plaintiffs' Counsel, Pierce Gore, to notify him of the conflict.  Resch Decl. ¶ 25.  Gore confirmed that Plaintiffs' Counsel were working with EAS and Campbell on the Food and Beverage Class Actions.  Resch Decl. ¶¶ 26–28; Decl. Dale Giali in Supp. Mot., ECF No. 66 ("Giali Decl."), ¶¶ 9–14.  In a phone call with Resch, Giali, Gore, and Herrington, Herrington allegedly stated that he "did not remember" discussing evaporated cane juice with Campbell, and did not see a reference to it in his notes, but that it was "possible" that the topic was discussed.  Resch Decl. at ¶ 26; Giali Decl. at ¶ 12.  Herrington declined to respond to detailed inquiries about whether other claims had been discussed with Campbell, such as the "all natural" claims.  *Id.*

On January 30, 2013, Resch instructed EAS not to have any further communication with Plaintiffs' Counsel related to any matter at issue in the Chobani lawsuit.  Resch Decl. ¶ 31 and Ex. F.  On January 31, 2013, Resch instructed EAS by email that EAS should immediately stop all work for and related to Chobani.  Resch Decl. ¶ 32, Ex. H.  On February 1, 2013, Dean Cirotta, the President and COO of EAS, notified Resch that EAS had decided to terminate its consulting services with Plaintiffs' Counsel, and reassured Resch about EAS's protection of confidential information.  Resch Decl. ¶¶ 33, 34, Ex. H.

On February 4, 2013, Mayer Brown sent a letter to Plaintiffs' Counsel containing questions about Plaintiffs' Counsel's communications with EAS.  Resch Decl. ¶ 29, Ex. D.  On February 8,

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

2013, Plaintiffs' Counsel responded to the letter and declined to answer any of the questions. Resch Dec. ¶ 30., Ex. E.

On March 5, 2013, Chobani filed the instant motion.  Between March 19 and March 25, 2013, Robert A. Clifford of the Clifford Law Offices, P.C., in conversations with Resch, waived any privilege that might protect communications between EAS and Plaintiffs' Counsel.  Resch Decl. ¶ 5.  On April 2, 2013, Clifford attempted to obtain a declaration from EAS regarding the content of its communications with Plaintiffs' Counsel, but EAS refused to provide one.  *Id.* ¶ 4.

## II.    Analysis

Below, the Court first addresses whether Chobani shared confidential information with EAS such that EAS should be precluded from further communications with Plaintiffs' Counsel on issues in this case.  The Court then discusses whether EAS has already transmitted this confidential information to Plaintiffs' Counsel, such that Plaintiffs' Counsel must also be disqualified.

### A.    Motion to Bar EAS from Discussing Issues in this Case with Plaintiffs' Counsel

Chobani has not brought a motion to disqualify EAS as an expert, but rather seeks to bar EAS from discussing issues in this case with Plaintiffs' Counsel or Plaintiffs' replacement counsel. The Court entertains this motion under the same inherent power to protect the integrity of the adversary process, protect privileges, and promote public confidence in the legal system that permits the Court to disqualify experts, and finds a similar inquiry appropriate.  *See Hewlett–Packard Co. v. EMC Corp.,* 330 F.Supp.2d 1087, 1092 (N.D. Cal. 2004) (citing *Campbell Indus. v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir. 1980)).

"There is no bright-line rule for expert disqualification."  *Veazey v. Hubbard,* No. 08-00293, 2008 WL 5188847, at *5 (D. Haw. Dec.11, 2008) (citing *Hewlett–Packard,* 330 F. Supp. 2d at 1092).  Rather, courts balance the policy objectives that favor disqualification—ensuring fairness and preventing conflicts of interest—against policies militating against disqualification, including guaranteeing that parties have access to witnesses who possess specialized knowledge and allowing witnesses to pursue their professional callings.  *Space Systems/Loral v. Martin Marietta Corp.,* No. 95-20122, 1995 WL 686369, at *2 (N.D. Cal. Nov. 15, 1995).

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

1  Courts have recognized that "disqualification may be appropriate . . . when a party retains

2  expert witnesses who previously worked for an adversary and who acquired confidential

3  information during the course of their employment." *Id.* Courts generally disqualify an expert

4  based on a prior relationship with an adversary if "(1) the adversary had a confidential relationship

5  with the expert and (2) the adversary disclosed confidential information to the expert that is

6  relevant to the current litigation." *Hewlett–Packard,* 330 F. Supp. 2d at 1092; *see also Veazey,*

7  2008 WL 5188847, at *5; *In re JDS Uniphase Corp. Sec. Litigation,* No. 02-1486, 2006 WL

8  2845212, at *1 (N.D. Cal. Sept. 29, 2006). "In addition to these two factors, the Court also should

9  consider whether disqualification would be fair to the affected party and would promote the

10  integrity of the legal process." *Hewlett–Packard,* 330 F. Supp. 2d at 1093. The Court examines

11  each factor in turn.

12  **1.    Confidential Relationship and Disclosure of Confidential Information**

13  Generally, "[t]he party seeking disqualification of an expert witness bears the burden of

14  demonstrating that it was reasonable for it to believe that a confidential relationship existed, and, if

15  so, whether the relationship developed into a matter sufficiently substantial to make

16  disqualification or some other judicial remedy appropriate." *Hewlett-Packard*, 330 F. Supp. 2d at

17  1093 (citing *Mayer v. Dell,* 139 F.R.D. 1, 3 (D.D.C. 1991)). Specifically, courts inquire whether

18  the adversary "disclosed confidential information to the expert that is relevant to the current

19  litigation." *See Ziptronix, Inc. v. Omnivision Techs., Inc.,* No. 10-05525, at *1, 2013 WL 146413

20  (N.D. Cal. Jan. 14, 2013) (citing *Hewlett–Packard,* 330 F. Supp. 2d at 1093 (internal quotations

21  omitted)). Confidential information is defined as information "of either particular significance or

22  [that] which can be readily identified as either attorney work product or within the scope of the

23  attorney-client privilege," including discussions of a party's "strategy in the litigation," a party's

24  "view of the strengths and weaknesses of each side," and the "role of each of [a party's] experts to

25  be hired and anticipate defenses." *Hewlett–Packard,* 330 F. Supp. 2d at 1093 (alteration in

26  original, internal quotations omitted).

27  In this case, Chobani's counsel have represented that they reasonably believed that a

28  confidential relationship existed between Chobani and EAS. Specifically, Chobani's counsel had

9

"repeated, detailed, and confidential strategy sessions" about the allegations in the instant case, which were "covered by a confidentiality provision in a written agreement," and which all parties involved considered to be confidential.  *See* Mot. at 5 (citing King Decl. ¶¶ 3, 4, 7; Resch Decl. ¶ 17, Decl. Frederick Degnan in Supp. Mot., ECF No. 67 ("Degnan Decl."), ¶ 3.

Moreover, Chobani has represented that it shared "confidential information" with EAS, including discussions of its strategy in the litigation.  *See id.*  Chobani's outside counsel, Michael Resch, states that he discussed with EAS "specific allegations in the case" as well as "Chobani's strategy in defending against those allegations."  Resch Decl. ¶ 12.  He "spoke specifically about Plaintiffs' counsel in this case, efforts they would try to avoid dismissal of their claims on a motion to dismiss, and arguments to expose the flaws in Plaintiffs' anticipated responses to Chobani's challenges to their misbranding theories."  *Id.*  He "asked for EAS's advice and assistance in litigating this case," and "conveyed to EAS [his] mental impressions, conclusions, opinions, and legal theories regarding Plaintiffs' claims and Chobani's anticipated defenses in this case, as well as other strategy considerations in responding to Plaintiffs' claims."  *Id.* ¶ 16.  Such information concerning litigation strategy and anticipated defenses falls squarely within the realm of disclosed confidential information that requires expert disqualification.  *See Ziptronix, Inc.*, 2013 WL 146413, at *1 (citing *Hewlett–Packard,* 330 F. Supp. 2d at 1094).

Plaintiffs' Counsel contest the conclusion that Chobani communicated protected confidences to EAS.  *See* Opp'n at 11.  However, Plaintiffs' Counsel introduce no persuasive evidence to support this contention.  Plaintiffs' Counsel suggest that "confidences" shared with EAS may not have been legally privileged, because: (1) EAS did not bill its consulting time as "Expert Witness Services; (2) EAS commented on the litigation in its newsletter of September 2012; and (3) Campbell was arguably on record agreeing with Plaintiff's position.  *See* Opp'n at 11-12.  The Court does not find these allegations sufficient to undermine Chobani's counsel's sworn declarations that they discussed litigation strategy with EAS, and especially with Campbell.

Accordingly, the Court finds that Chobani had a confidential relationship with EAS, and disclosed to EAS confidential information relevant to the current litigation, such that EAS is disqualified from serving as an expert in the instant litigation.  Nonetheless, Plaintiffs' Counsel

10

suggest that they should be free to consult with EAS on identical issues arising in other cases. *See* Opp'n at 20. However, Plaintiffs' Counsel do not contest the fact that the three misbranding theories Kane alleges against Chobani (the "all natural" claim, the ECJ claim, and the standard of identity claim), which Chobani's counsel discussed with Campbell, are exactly the same in numerous other cases filed by Plaintiffs' Counsel. *See* Resch Decl. ¶ 12; Mot. App'x 1-4 (noting the "all natural" claim, the ECJ claim, and the standard of identity claim raised in other Food and Beverage Class Actions cases, including nearly identical allegations in the respective Complaints). The Court finds that Plaintiffs' Counsel's further consultation with EAS on the identical claims raised in this case would undermine the protective effect of disqualifying EAS in the instant litigation, and continue to risk compromising the integrity of the adversary process, the protection of privileges, and the promotion of public confidence in the legal system. *See Hewlett–Packard Co.,* 330 F.Supp.2d at 1092 (citing *Campbell Indus.,* 619 F.2d at 27). As such, Plaintiffs' Counsel will be disqualified from this case if Plaintiffs' Counsel communicates further with EAS about the issues in the instant litigation, absent a waiver from Chobani.

### 2.      Fundamental Fairness

Considerations of fundamental fairness, especially any prejudice that might occur if an expert is or is not disqualified, further support the Court's conclusion. *See Hewlett–Packard,* 330 F. Supp. 2d at 1094–95 (citing *Stencel v. Fairchild Corp.,* 174 F.Supp.2d 1080, 1083 (C.D. Cal. 2001); *United States ex rel., Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc.,* 994 F. Supp. 244, 251 (D.N.J. 1997). In disqualifying an expert, a court must ask whether the opposing party will be unduly burdened, especially at late stages in the litigation. *See id.* (citing *Cherry Hill Convalescent Ctr.*, 994 F. Supp. at 251). Additionally, the Court must consider other policy concerns "to achieve the goal of protecting the integrity of the adversary process and of promoting public confidence in the legal system," including the avoidance of creating incentives that could motivate experts to "sell their opinions to the opposing parties or the highest bidder without concern about potential confidentiality of their previous consultations." *See id.* (citation omitted). At the same time, if "experts are too easily disqualified, unscrupulous attorneys may attempt to create relationships with numerous potential experts at a nominal fee hoping to preempt

11

the ability of their adversaries to obtain expert assistance." *Id.* (quoting *Stencel*, 174 F. Supp. 2d at 1083).

As noted above, if Plaintiffs' Counsel were to continue to communicate with EAS, Chobani could be irreparably prejudiced through the direct or indirect disclosure of Chobani's confidential legal theories and anticipated defenses.  Such disclosures would not only unfairly advantage Plaintiffs' Counsel, but also undermine the very integrity of the adversary system.  *See Space Sys./Loral v. Martin Marietta Corp.*, No. 95-20122, 1995 WL 686369, at *5 (N.D. Cal. Nov. 15, 1995).

By contrast, the Court does not find that Plaintiffs' Counsel would be unduly prejudiced by the disqualification of EAS.  The litigation in the instant case is still in the initial stages, and discovery has not yet commenced.  Plaintiffs' Counsel have not suggested that they would be unduly burdened if they were precluded from discussing issues in the instant action with EAS or Campbell.  Indeed, after EAS declined to work on the instant action, Plaintiffs' Counsel retained another FDA expert, Ed Scarbrough, who prepared an expert declaration in support of Plaintiffs' motion for a preliminary injunction in this case.  Herrington Decl. ¶¶ 14-17.  Moreover, Plaintiffs' Counsel knew from their initial contacts with EAS that EAS had a conflict with Chobani.  The Court does not find that Plaintiffs' Counsel will be prejudiced by the imposition of restrictions that Plaintiffs' Counsel should have voluntarily implemented as soon as they became aware of this conflict.

Lastly, with respect to broader policy implications, the Court notes that Chobani had a preexisting relationship with EAS pursuant to the parties' *ad hoc* agreement signed in 2010.  As such, the Court need not consider the situation in which a party retains an expert solely for the purpose of preempting access to that expert by opposing counsel.  Additionally, Plaintiffs' Counsel's expert Professor Fox raises concerns that the restrictions which Chobani seeks to apply would require that Campbell be "forever barred from considering engagements adverse to the entire food industry" with respect to the regulations she discussed with Chobani.  *See* Decl. Prof. Lawrence Fox in Supp. Opp'n., ECF No. 84-7, ¶ 21.  This is decidedly not the rule which guides the Court.  Rather, the Court finds that, after engaging in confidential conversations about litigation

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

**United States District Court**
For the Northern District of California

1   strategy with counsel for Chobani, EAS and Campbell may not then consult with Plaintiffs'

2   Counsel on identical claims in concurrent litigation, without first obtaining a waiver from Chobani.

3       **B.    Disqualification of Counsel**

4       In considering disqualification of counsel due to contact with an opposing party's expert,

5   the Court begins by determining whether the party seeking disqualification has shown that the

6   disputed expert "possesses confidential attorney-client information materially related to the

7   proceedings before the court." *See Collins v. State*, 121 Cal. App. 4th 1112, 1126 (2004) (quoting

8   *Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067, 1085 (1994)).  If the expert is

9   found to possess such information, California courts then ask whether the expert has used or

10  disclosed the confidential information in communications with opposing counsel. *Id.*  Lastly, if the

11  expert has disclosed the information to opposing counsel, courts inquire whether opposing

12  counsel's continued representation would threaten to taint all further proceedings.  *See N. Pacifica*

13  *v. City of Pacifica*, 335 F. Supp. 2d 1045, 1051 (N.D. Cal. 2004) (citing *Cordy v. Sherwin–*

14  *Williams Co.,* 156 F.R.D. 575, 583 (D.N.J. 1994)).

15      Thus, the Court's above determination that EAS must be disqualified because EAS

16  obtained Chobani's confidential information does not resolve the more difficult question of

17  whether EAS has already disclosed that information to Plaintiffs' Counsel, such that Plaintiffs'

18  Counsel must also be disqualified.  *See, e.g.*, *Plumley v. Doug Mockett & Co.*, No. 04-2868, 2008

19  WL 5382269, at *4 (C.D. Cal. 2008) (disqualifying expert but not counsel, finding "no evidence

20  that [the expert] disclosed any confidential information" to counsel, and finding a presumption of

21  disclosure unjustified); *N. Pacifica*, 335 F. Supp. 2d at 1052 (disqualifying defendant's expert but

22  not defendant's counsel); *Space Sys./Loral*, 1995 WL 686369, at *5 (disqualifying experts but not

23  counsel in light of movant's failure to demonstrate that opposing counsel acted unreasonably or

24  threatened the fairness of the litigation).

25      Like disqualification of experts, disqualification of counsel is "a discretionary exercise of

26  the trial court's inherent powers."  *See Certain Underwriters at Lloyd's London v. Argonaut Ins.*

27

28

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

*Co.,* 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). [3]  However, disqualification of counsel presents more dramatic competing policy considerations: "On the one hand, a court must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court. . . .  [O]n the other hand, it must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement." *Gregori v. Bank of America,* 207 Cal. App. 3d 291, 300 (Cal. App. 1st 1989) (citations omitted).  While the Court's "paramount" concern should be "the preservation of public trust in the scrupulous administration of justice and the integrity of the bar[, . . .] disqualification [of counsel] is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety." *DeLuca v. State Fish Co.*, 217 Cal. App. 4th 671, 685-86 (2013) (quoting *Roush v. Seagate Tech., LLC,* 150 Cal. App. 4th 210, 218–19 (2007)).  Because of their susceptibility to tactical abuse, "[m]otions to disqualify counsel are strongly disfavored." *See Visa U.S.A. v. First Data Corp.,* 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003); s*ee also Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.,* 760 F.2d 1045, 1050 (9th Cir. 1985).  Therefore, "disqualification motions should be subjected to particularly strict judicial scrutiny." *Id.* (quotation and quotation marks omitted).

### 1. Material Confidential Information Shared By Chobani

California courts have held that "[d]isqualification of an expert (and, by extension, the law firm that retained the expert) can only be justified where the moving party establishes the expert actually 'possesses confidential attorney-client information materially related to the proceedings before the court.'" *W. Digital Corp. v. Superior Court*, 60 Cal. App. 4th 1471, 1487 (1998) (quoting *In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 596 (1991)).  As discussed above, Chobani has alleged that it entered into an *ad hoc* agreement with EAS that included a

---

[3] Under Civ. L.R. 11–4(a)(1), all attorneys who practice in this Court must comply with the standards of professional conduct required of members of the State Bar of California.  This Court, therefore, applies state law in determining matters of disqualification of counsel. *See In re County of L.A.,* 223 F.3d 990, 995 (9th Cir. 2000).

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

confidentiality clause, and that its counsel discussed litigation strategy with EAS, and specifically with Campbell, under the assumption that these conversations were confidential. *See supra*, Section II.A.1. The Court finds that Chobani has satisfied its burden of showing that it shared material confidential information with EAS.

### 2. Disclosure of Information to Plaintiffs' Counsel

In light of the Court's finding that Chobani shared material confidential information with EAS, the Court must examine the "pivotal issue" of whether EAS in fact disclosed confidential information to Chobani. *Shadow Traffic*, 24 Cal. App. 4th at 1084. In so doing, the Court first identifies the applicable evidentiary framework, and then applies it to the instant case.

#### a. The *Shadow Traffic* Rebuttable Presumption and Its Limits

Chobani contends that after establishing that it shared material confidential information with an expert who subsequently had ex parte contact with the opposing party, a rebuttable presumption arises that the expert shared the confidential information with the opposing party. Mot. at 9 (citing *Shadow Traffic*, 24 Cal. App. 4th at 1085).

Chobani relies on *Shadow Traffic*, a business torts case brought by Metro Traffic Control ("Metro") against its competitor, Shadow Traffic Network ("Shadow Traffic"). Metro's counsel interviewed members of an accounting firm to discuss their retention as an expert witness on the complex damages issues. Metro's counsel "extensively discussed Metro's litigation and trial strategies, including an explanation of Metro's potential damages theories," and the accounting firm personnel offered suggestions and comments on Metro's damages strategy. 24 Cal. App. 4th at 1082.

Metro's counsel decided not to retain the accountants, and Shadow Traffic's counsel interviewed one of the same accountants a few weeks later. *Id.* at 1071-1073. The accountant told Shadow Traffic's counsel that he had also met with Metro's counsel about the identical issues. *Id.* at 1072-74. Nonetheless, Shadow Traffic's counsel spoke briefly with the accountant, including discussing Metro's damages theory, and retained the accountant as Shadow Traffic's expert witness. *Id.* at 1072-74, 1086.

15

In upholding the trial court's decision to grant Metro's motion to disqualify Shadow Traffic's counsel, the appellate court analogized the case to the evidentiary presumptions in non-lawyer employee conflict of interest cases. The *Shadow Traffic* Court held that once the moving party meets its initial burden of establishing that material confidential information was shared with an expert, a rebuttable presumption arises that the information has been used or disclosed to an opposing party. *Id.* at 1084-85. The *Shadow Traffic* Court justified this presumption as an evidentiary "rule by necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff." *Id.* at 1128. This rebuttable presumption requires a court to find that confidential information was revealed, unless persuaded by a preponderance of the evidence of the nonexistence of the presumed fact. *Id.* (internal citations omitted). The *Shadow Traffic* Court further justified this presumption by noting that, "given that both Metro and Shadow consulted Thompson on the same issue—Metro's  damages—it is highly unlikely that Thompson could conscientiously discharge his duty to Shadow as its retained expert and at the same time discharge his duty not to divulge confidential information received from Metro." *Shadow Traffic*, 24 Cal. App. 4th at 1086.

However, more recent California cases have found the *Shadow Traffic* presumption inapplicable in contexts where the disputed expert remains available to the moving party. *See Collins v. State*, 121 Cal. App. 4th 1112, 1129 (2004); *Shandralina G. v. Homonchuk*, 147 Cal. App. 4th 395, 400 (2007). First, in *Collins*, the Court concluded that the *Shadow Traffic*'s rebuttable presumption of disclosure of confidential information should not apply when the disputed expert remained a consultant to the moving party, and the moving papers did not show the expert was "no longer available" for purposes of presenting evidence that confidential information was passed to the challenged attorney. *See Collins*, 121 Cal. App. 4th at 1129. Because "[t]he most important source of the information from which to ascertain whether [the expert] had passed on any confidential information to [the challenged attorney] remained in [the moving party's] hands," the *Collins* Court found that the reasons justifying shifting the burden of proof to the opposing party did not exist. *Id.*

16

**United States District Court**
For the Northern District of California

Subsequently, *Shandralina G. v. Homonchuk*, 147 Cal. App. 4th at 412-414, found that the reasoning of *Collins* was not limited to contexts in which the expert remained under the control of the moving party.  The *Shandralina G.* Court found it was error to apply the *Shadow Traffic* burden-shifting presumption "because there was no legal impediment to [the moving party's] ability to obtain evidence from [the disputed expert] on the content of the conversation to satisfy the burden of proof." *Id.* at 412 (noting "there was apparently no legal impediment to [the moving party] obtaining a declaration or (if [the disputed expert] was recalcitrant) a deposition").

Chobani seeks to distinguish *Collins* and *Shandralina G.* on numerous bases, none of which the Court finds compelling. Reply at 10-11.  First, Chobani notes factual distinctions between those cases and the case at bar, including the extent to which Plaintiffs' Counsel were on notice of a potential conflict with the expert, and the extent of contacts with the experts.  *Id.*  Neither of these distinctions provides any grounds to distinguish the reasoning of these cases.  Both *Collins* and *Shandralina G.* hold that the "normal burdens of proof, wherein the party moving for relief must establish its right, is [sic] appropriate," unless evidence from the expert regarding the content of potentially disclosed information is "unavailable" to the moving party .  *See Shandralina G. v. Homonchuk*, 147 Cal. App. 4th at 412 (citing *Collins*, 121 Cal. App. 4th at 1129).  The cases do not ground this evidentiary analysis in questions of whether the opposing party was on notice of the conflict.

Chobani also notes that *Collins* is distinguishable because in that case, the expert remained employed by the moving party, and was thus more "available" than EAS is to Chobani, since Chobani has chosen to terminate its relationship with EAS.  *Id.*  However, *Shandralina G.* specifically held that it was error to apply *Shadow Traffic*'s burden-shifting presumption when there was no "legal impediment" to the moving party obtaining evidence from the expert, regardless of whether the expert remains "under the control" of the moving party.  *See Shandralina G.*, 147 Cal. App. 4th at 413-14 ("Certainly, *Collins* held that retention of control over the expert is a *sufficient* basis for declining to apply the presumption, but *Collins* did not hold that it is a *necessary* predicate to retaining the ordinary burden of proof in lieu of the presumption.").

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

Chobani further argues that Campbell is "not 'available' to Chobani in any legally relevant manner," Reply at 11, n. 8, but fails to explain why this is so.  Chobani's counsel confirmed at the July 25 hearing that Chobani never sought a declaration, affidavit or deposition from Campbell regarding the content or scope of her conversations with Plaintiffs' Counsel.  Chobani's briefing provided no explanation of why Chobani "chose to ignore those evidentiary avenues." [4] *Shandralina G.*, 147 Cal. App. 4th at 413.  Although Chobani notes that Plaintiffs' explicit waiver of privilege to facilitate such a conversation was not communicated to Chobani until after Chobani filed this motion, Chobani has not represented that it previously sought such a waiver, nor that it made any attempt to contact Campbell following the receipt of the waiver.  Rather, Chobani argued at the July 25 hearing that Chobani need not seek further information from Campbell because the factual record before the Court is sufficient to find in Chobani's favor.[5]

Chobani's other attempts to distinguish *Collins* and *Shandralina G.* are similarly unavailing.  Chobani notes that in both cases, the disputed experts had voluntarily submitted evidence to the Court.  However, neither case indicates that this fact was decisive in its reasoning.  Similarly, Chobani argues that in *Shandralina G.*, an order barred the opposing party from communicating with the expert.  Although the *Shandralina G.* Court does discuss this issue in a footnote, commenting that it would be "paradoxical" to place the burden of proof on a party who could not contact the disputed expert, the opinion's reasoning does not rely on this "paradox." *Shandralina G.*, 147 Cal. App. 4th at 413 n.15.  Rather, the opinion clearly rests on the finding that, absent the "impossibilities" of obtaining information directly from the expert which justified *Shadow Traffic*'s reasoning, "the reasons for the [*Shadow Traffic*] presumption are not present." *Id.* at 414.

Accordingly, because there is no indication that the "most important source" of information was legally unavailable to Chobani, the Court finds the *Shadow Traffic* presumption inapplicable.

---

[4] At the July 25 hearing, conflicting representations were made to the Court as to whether the parties had stipulated not to depose Campbell.

[5] Chobani has emphasized that it has not waived privilege, nor is it required to do so.  *See* Reply at 1 n.1 (citing *Shadow Traffic*, 24 Cal. App. 4th at 1085) (movant is "not required to disclose the actual information contended to be confidential").

18

*Collins*, 121 Cal. App. 4th at 1129.  As the moving party, Chobani therefore bears the burden of proof to show that confidential information was disclosed.

**b.     Application to the Instant Case**

Chobani asserts that it has carried its burden of showing that confidential information was disclosed to Plaintiffs' Counsel by EAS, and specifically by Betty Campbell, the EAS expert with whom Chobani alleges that it shared confidential information.  Chobani rests its case on the fact that it is "undisputed that Ms. Campbell discussed the exact same claims and defenses at length and in detail, with Plaintiffs' Counsel that she discussed with Chobani's counsel."  Reply at 11.  In evaluating Chobani's assertion, the Court must rely on the record presented by Plaintiffs' Counsel, because Chobani neither sought a declaration from or deposition of Campbell.  Thus, the record regarding what Campbell disclosed to Plaintiffs' Counsel consists solely of Plaintiffs' Counsel's declarations.[6]

According to this record, Campbell is a "Senior Advisor for Labeling & Claims" and a "former Acting Director in the FDA's Office of Food labeling."  *See* Opp'n at 4 (citing http://www.easconsultinggroup.com/company/ (last visited April 15, 2013)).  Plaintiffs' Counsel has represented that Brian Herrington and Jay Nelkin are the only Plaintiffs' Counsel to have contact with EAS or Campbell.  *See* Opp'n at 1.  Both of these attorneys have presented detailed declarations describing these contacts.  *See* Herrington Decl. and Nelkin Decl.  These declarations represent that Herrington and Nelkin showed Campbell the filed complaints in the eleven cases on which EAS agreed to work, and asked whether she agreed with the allegations in those complaints. Herrington Decl. ¶ 11; Nelkin Decl. ¶ 5-6.  Neither counsel ever asked for or received any information on how food manufacturers might defend these lawsuits.  Herrington Decl. ¶ 11; Nelkin Decl. ¶¶ 6, 9, 10, 11.  Campbell stated only whether she agreed or disagreed that the

---

[6] Plaintiffs' Counsel sought to submit a declaration by Campbell, but Campbell refused to provide one.  *See* Clifford Decl. ¶ 4.  On July 29, 2013, Plaintiffs' Counsel filed a motion to seek further discovery, including the depositions of both Campbell and Steele.  ECF No. 133.  As noted above, following e-mails to the Courtroom Deputy, Plaintiffs' Counsel withdrew and then re-filed a motion to seek further discovery.  *See* ECF No. 139; ECF No. 140.  Because the Court finds that Chobani bore the evidentiary burden for the purposes of this Motion, the Court does not find that the absence of these depositions should be construed against Plaintiffs' Counsel.  In light of the Court's ruling in this Order, Plaintiffs' Counsel's motion for further discovery is DENIED as moot.

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

identified label statements in the complaint violated FDA regulations.  Herrington Decl. ¶ 11; Nelkin Decl. ¶ 6, 9, 10, 11.  Campbell indicated that her opinions were based on her experience working for the FDA.  Herrington Decl. ¶ 12; Nelkin Decl. ¶¶ 6, 9, 10, 11.  At no time did Plaintiffs' Counsel discuss strategy, the Chobani company, or the Chobani lawsuit.  Herrington Decl. ¶¶ 11-12; Nelkin Decl. ¶ ¶ 5-6, 9-10.

As a preliminary matter, Plaintiffs' Counsel emphasize that the disqualification cases upon which Chobani relies are "side-switching" cases in which an expert consults with opposing parties in the same litigation.  *See* Opp'n at 16.  By contrast, in this case, EAS expressly declined to work on the instant litigation, and Chobani does not challenge Plaintiffs' Counsel's declarations that Plaintiffs' Counsel never discussed this litigation or Chobani with EAS or Campbell.  Rather, Chobani raises concerns that Plaintiffs' Counsel discussed identical claims in other lawsuits with EAS.  As noted above, in light of the overlapping claims in the Food and Beverage Class Actions, the fact that Chobani was not specifically discussed does not assuage the Court's concerns that EAS could disclose Chobani's confidential information to Plaintiffs' Counsel through conversations about identical claims in Plaintiffs' Counsel's other cases.  *See supra* Section II.A.1.  On the other hand, the fact that Plaintiffs' Counsel never discussed Chobani is not entirely "irrelevant," as Chobani suggests.  *See* Reply at 5.  Because the instant lawsuit was never discussed, the Court need not consider concerns that EAS divulged case-specific information about Chobani or the specific factual scenarios at issue in the instant litigation.  Rather, the Court must determine whether EAS disclosed Chobani's confidential information regarding the three theories in the instant case that overlap with those in the other Food and Beverage Class Actions:  (1) the standard of identity for yogurt; (2) the "all natural" issue; and (3) "evaporated cane juice."

With respect to the standard of identity claim, Nelkin declares that the cases for which Campbell was interviewed did not involve the standard of identity for yogurt, Nelkin Decl. ¶ 11, and there is no indication in the record that Plaintiffs' Counsel ever discussed the standard of identity claims with EAS.  Accordingly, there is no evidence that Campbell transmitted Chobani's confidential information about the standard of identity claim to Plaintiffs' Counsel.

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

**United States District Court**
For the Northern District of California

1  With respect to the "all natural" claim, Nelkin declares that the only "all natural" issue he

2  discussed with Campbell was whether it would violate the labeling law to call a product "all

3  natural" if it contained artificial or synthetic ingredients or added colors regardless of sources.  Ms.

4  Campbell confirmed that it did.  *Id.* ¶ 14.  Although this is an issue that arises in the instant case,

5  and could raise concerns that Campbell was consciously or subconsciously influenced by her

6  conversations with Chobani's counsel, Plaintiffs' Counsel has declared that everything discussed

7  on the "all natural" issue was already previously disclosed in Campbell's multiple publicly

8  disseminated publications on the issue.  *Id.* ¶ 12 (citing Campbell, Elizabeth, *Free Claims Sell, But*

9  *Are They Safe?*, Natural Products Insider, Vol. 17, No. 9, September 2012, page 198); Opp'n, Ex.

10  1, Campbell, Elizabeth, *Label Claims: Communicating Product Benefits While Complying with*

11  *Reglations*, Organic Processing, Vol. 9, No. 3, May/June, 2012, pages 12-15, 47-48 ("FDA

12  considers it misleading to state 'natural color' or 'food color' unless the color ingredient is derived

13  from the food being colored.  When a color that is a natural ingredient is used, the claim 'natural

14  (product)' cannot be used, but the naturally sourced color would not disallow 'all natural

15  ingredients.'").  Nelkin further notes that Campbell's written opinions on this issue are the same as

16  those expressed by EAS in its monthly newsletter of September 2012, which states that "FDA has

17  an informal policy for 'natural' that excludes artificial flavors, preservatives, any added color, and

18  anything artificial that is not expected to be in the product.  That means, for example, adding

19  natural or artificial colors to the product will disqualify the product from being natural."  *See*

20  Nelkin Decl. ¶ 12; EAS Sept. 2012 Newsletter, at 4.  In light of the fact that all of Campbell's

21  comments on the "all natural" claim were previously disclosed in her or EAS' prior publications,

22  the Court finds no evidence that Campbell disclosed Chobani's confidential information to

23  Plaintiffs' Counsel.

24  With respect to the evaporated cane juice claim, the EAS Newsletter specifically references

25  this claim, in connection with the instant lawsuit.  *See* EAS Sept. 2012 Newsletter, at 4 ("[A] suit

26  filed by the firm of Mississippi attorney Don Barrett against Chobani, the Greek yogurt maker,

27  argues that it is 'false and misleading' for Chobani to list evaporated cane juice as an ingredient,

28  instead of simply listing sugar.").  Nelkin's declaration states that the "only discussion of the term

21

'evaporated cane juice' involved my asking Ms. Campbell whether she would have an opinion that differed from the FDA's stated position in its warning letters and guidance that 'evaporated cane juice' was not the common or usual name for a sweetener derived from sugar cane.  She said that her opinion would be consistent with the FDA's position."  Nelkin Decl. ¶ 16.  This limited comment does not suggest that Campbell transmitted Chobani's confidential information to Plaintiffs' Counsel.

In sum, Plaintiffs' Counsel has averred the standard of identity claims were not discussed, Campbell's expressed opinions on the "all natural" claims were limited to those she or EAS had previously published, and her thoughts on the ECJ claims consisted of a conclusion that her opinion would be consistent with the FDA's position.[7]  In light of these sworn declarations, and in the absence of other evidence, the Court cannot assume that Campbell disclosed Chobani's confidential information.

Other cases in this district have also declined to disqualify counsel in the absence of proof of disclosure of confidential information.  *See N. Pacifica v. City of Pacifica*, 335 F. Supp. 2d 1045, 1052 (N.D. Cal. 2004) (finding the *Shadow Traffic* presumption of disclosure applicable but rebutted, in part because the party seeking disqualification had "done nothing to raise any substantial doubt about the credibility" of the declarations of the counsel and experts that no confidential information was shared); *Space Sys./Loral v. Martin Marietta Corp.*, No. 95-20122, 1995 WL 686369 (N.D. Cal. Nov. 15, 1995) (disqualifying expert but not the counsel with whom the expert consulted because the moving party failed to demonstrate that confidential information had been disclosed).  The Court notes that the risk of disclosure of privileged information in each of those cases was less grave than in the case at bar.[8]  Nonetheless, the evidentiary analysis

_____

[7] As noted above, Nelkin's declaration also states, "[w]e only required [Campbell's] services to deal with whether there was a violation of law and a triggering of the unlawful prong of the UCL," Nelkin Decl. ¶ 18, an inquiry which could easily encompass Chobani's defenses.  However, neither Plaintiffs' Counsel nor Chobani has provided any indication that these subjects were actually discussed with Campbell.  Moreover, Nelkin specifically states that Herrington and he did not discuss defenses with Campbell.  Nelkin Decl. ¶ 19.

[8] The *N. Pacifica* Court found an absence of overlap in material fact between the two representations, 335 F. Supp. 2d at 1052, and the *Space Sys./Loral* Court emphasized that only

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

United States District Court
For the Northern District of California

articulated in those cases is consistent with California appellate courts' "careful review" of disqualification orders for "substantial evidence" warranting disqualification. *See Shandralina G*, 147 Cal. App. 4th at 416 (citing *W. Digital Corp. v. Superior Court*, 60 Cal. App. 4th 1471) (1998); *see also Khani v. Ford Motor Co.*, 215 Cal. App. 4th 916, 920 (2013) ("[A] disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion.") (citation omitted). For the reasons set forth above, the Court finds such substantial evidence lacking in the instant case.

        In urging a contrary conclusion, Chobani relies in part on *Pellerin v. Honeywell Int'l Inc.*, No. 11-1278, 2012 WL 112539 (S.D. Cal. Jan. 12, 2012), an expert disqualification case that discusses whether an expert obtained confidential information from the moving party and thus must be disqualified. *Pellerin* does not directly address the standard for disqualification of counsel, and this standard's additional requirement that the expert actually disclosed confidential information to the opposing counsel. *See id.* In finding expert disqualification warranted, the *Pellerin* Court found that the disputed expert's knowledge of the moving party's confidential information posed a "substantial risk [that the expert] *may* inadvertently use confidential information he is contractually barred from disclosing," because "the human brain does not compartmentalize information in that manner." *Id.* at *3 (emphasis added). Similarly, in the case at bar, if Plaintiffs' Counsel continued to consult with Campbell, the Court does not doubt that disclosures of confidential information *might* occur, and these hypotheticals underlie the Court's justifications for disqualifying EAS. However, in disqualifying counsel, the Court must make the distinct determination of whether the expert *already has* transmitted the moving party's confidential information to opposing counsel, and Chobani has failed to satisfy its burden of showing Plaintiffs' Counsel's "*actual* acquisition" of confidential information from EAS. *See Shandralina G.*, 147 Cal. App. 4th at 412.[9]

---

factual material that would be subject to discovery was at risk of disclosure, rather than work-product or attorney-client privileged material, 1995 WL 686369, at *5.

[9] Chobani also relies on *Shadow Traffic*, itself. However, even the *Shadow Traffic* Court, applying the presumption of disqualification, did not find disqualification was necessarily required when opposing counsel confirmed that it had explicitly discussed moving counsel's damages theory with the disputed expert. 24 Cal. App. 4th at 1086. Rather, the *Shadow Traffic* Court found only that

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

### 3.    Taint of Further Proceedings

Because the presumption of confidence-sharing has been rebutted, the Court does not conclude that the disclosure of confidences would taint further proceedings sufficiently to require disqualification. *See N. Pacifica*, 335 F. Supp. 2d at 1052-53.  In reaching this conclusion, and declining to disqualify counsel based on hypothetical disclosures, the Court emphasizes that its inquiry has been guided by the overarching principle that "the business of the court is to dispose of litigation and not to oversee the ethics of those that practice before it unless the behavior taints the trial." *See Cont'l Ins. Co. v. Superior Court*, 32 Cal. App. 4th 94, 111 n.5 (1995) (citation and internal quotation marks omitted); *see also Kirk v. First Am. Title Ins. Co.,* 183 Cal. App. 4th 776, 815 (2010) ("The purpose of a disqualification order is prophylactic, not punitive.") (citing *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 308-09 (1989)).  The Court finds the "drastic" measure of disqualification inappropriate in this case because there is not "a genuine likelihood that allowing the attorney to remain on the case will affect the outcome of the proceedings before the court." *See Kirk*, 183 Cal. App. 4th at 815; *Ramirez v. Trans Union, LLC*, No. 12-00632, 2013 WL 1164921, at *2 (N.D. Cal. Mar. 20, 2013) ("Because motions to disqualify are often tactically motivated and can be disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored and imposed only when absolutely necessary.") (citing *Optyl Eyewear Fashion Int'l Corp. v. Sytle Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985).[10]

In this case, one of a coordinated group of lawsuits brought by the approximately 90 attorneys encompassed in the definition of "Plaintiffs' Counsel," Chobani's own expert recognized that disqualification of Plaintiffs' Counsel "may be disastrous for the present prosecution of the class suit."  Decl. Geoffrey C. Hazard, Jr. in Supp. Mot., ECF No. 64-2, ("Hazard Decl.") ¶ 5.  Due

---

the record did not "compel the conclusion that the trial judge exceeded the bounds of reason by implicitly concluding that [the opposing party] had failed to carry its burden of persuading the court of the existence of the presumed fact [that confidences were disclosed]." *Id.* at 1087.

[10] Plaintiffs' Counsel's experts note the absence of California precedent supporting disqualification of counsel solely to avoid appearances of impropriety. *See, e.g.*, Decl. Ellen Pansky in Supp. Opp'n, ECF No. 84-4, at 15 (citing *Gregori*, 207 Cal. App. 3d at 306; *DCH Health Servs. Corp. v. Waite*, 95 Cal. App. 4th 829, 833 (2002)) ("[a]s distinguished from judicial recusals, which may be required on the basis of a mere 'appearance of impropriety' (Cal. Code Jud. Ethics, canon 2; *see* Code Civ. Proc. S 170.1, subd. (a)(6)(C)), such an appearance of impropriety by itself does not support a lawyer's disqualification.").

24

United States District Court
For the Northern District of California

1   to the absence of evidence that Plaintiffs' Counsel actually acquired confidential information, the

2   Court does not find such a drastic remedy to be required or appropriate.

3          However, this determination does not condone Plaintiffs' Counsel's conduct.  Plaintiffs'

4   Counsel were on notice that EAS had a conflict with Chobani that would prevent EAS from

5   appearing adverse to Chobani.  Although EAS declined to elaborate on the nature of this conflict,

6   Plaintiffs' Counsel could easily have inquired directly from Chobani as to whether this relationship

7   would present a conflict.  Such caution is strongly advisable, as indicated in *Shadow Traffic*, 24

8   Cal. App. 4th at 1088 (finding that counsel should have contacted opposing counsel to learn details

9   of potential conflict); *see also* Cal. Pract. Guide Profess. Resp. Ch. 4-c § 4:232.5 (The Rutter

10  Group 2012) ("[U]pon learning that a potential expert whom you wish to retain has been

11  interviewed by the opposing side, dispel any basis for a subsequent recusal motion by immediately

12  *contacting opposing counsel* in an attempt to obtain informed written consent to the retention and,

13  if necessary, to agree upon acceptable parameters of discussion with the expert.") (emphasis in

14  original) (citing *Shadow Traffic*, 24 Cal. App. 4th at 1082, 1088).  A "simple phone call" to

15  opposing counsel would have obviated the need for the instant motion, and the real risk of

16  disqualification if Plaintiffs' Counsel had continued their relationship with EAS.  *See Shadow*

17  *Traffic*, 24 Cal. App. 4th at 1078, n.7; *id.* at 1084 ("The point is clear: a brief but professional

18  exchange can expeditiously resolve the issue and avoid needless litigation.").  If a dispute arose,

19  the parties could have proactively applied to the Court for appropriate relief.  *See id.* at 1080 n.9;

20  *cf. Gomez v. Vernon*, 255 F.3d 1118, 1135 (9th Cir. 2001) ("The path to ethical resolution is

21  simple: when in doubt, ask the court.").  Plaintiffs' Counsel's failure to make this "simple phone

22  call" risked breaching Chobani's confidences, and could have required Plaintiffs' Counsel's

23  disqualification.

24          Plaintiffs' Counsel maintains that they did not take these precautionary steps because they

25  were under the impression that EAS would not appear against Plaintiffs' Counsel, and that EAS

26  would not "provide testimony or other expert services for food manufacturers" sued by Plaintiffs'

27  Counsel.  Herrington Decl. ¶ 10.  Herrington states that he was "astounded" to learn from

28  Chobani's counsel that Campbell had consulted specifically with Chobani on the *Kane v. Chobani*

25

United States District Court
For the Northern District of California

case, "because EAS had assured [Plaintiffs' Counsel] that [EAS] would not appear adversely in any of the cases on the list which [Plaintiffs' Counsel] had provided initially."  Herrington Decl. ¶ 21.

Chobani accuses Plaintiffs' Counsel of "play[ing] a semantic game by saying that they were assured by EAS that EAS 'would never *appear* adverse to' plaintiffs in the cases in which EAS had a conflict," implying that Plaintiffs' Counsel may in fact have been aware of the possibility that EAS would consult with opposing counsel but not appear as a witness.  Reply at 6, n.4 (quoting Opp'n at 6) (adding emphasis).  On the other hand, Plaintiffs' Counsel's assumptions have some credibility, in that Chobani's counsel similarly could not believe that EAS would work with opposing counsel.  *See* Giali Decl. ¶ 6 (explaining that he initially believed "it was not possible that EAS was working with the plaintiffs' lawyers"); Resch Decl. ¶ 21.  ("Based on the confidential, comprehensive, detailed and revealing manner in which I had spoken with EAS and Ms. Campbell about this case and Chobani's litigation strategies and anticipated responses to Plaintiffs' allegations, I did not think it was possible that EAS simultaneously would be working for Plaintiffs' Counsel on the overlapping issues in the group of coordinated Food and Beverage Class Actions."); Resch Decl. ¶ 23 (stating that Resch explained to Campbell that he was "surprised to learn of her relationship with Plaintiffs' counsel").

Because the Court's focus in deciding this disqualification motion is prophylactic rather than punitive, *Kirk,* 183 Cal. App. 4th  at 815, and the Court has not found that confidential information was in fact disclosed to Plaintiffs' Counsel, the Court need not decide the precise level of Plaintiffs' Counsel's scienter or willful ignorance.  However, both Chobani's counsel and Plaintiffs' Counsel's alleged surprise at EAS's conduct only underscores the fact that counsel cannot rely on non-attorney experts with pecuniary incentives to discharge an attorney's ethical duties.  At the July 25, 2013 hearing, Plaintiffs' Counsel confirmed that their information about EAS's conflict with Chobani was obtained from EAS Chairman and CEO Ed Steele – a non-attorney with no legal training or financial incentives to determine counsel's appropriate ethical boundaries.  The Court is deeply disappointed that Plaintiffs' Counsel abdicated their ethical responsibilities to Mr. Steele.

To conclude, the Court notes that Plaintiffs' Counsel "bears some fault in this matter for not immediately and forthrightly disclosing" its intent to hire EAS, "once the possibility of a conflict of interest from such employment became apparent." *W. Digital Corp. v. Superior Court*, 60 Cal. App. 4th 1471, 1488 (1998) (citing *Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th at 1082, n.10.). However, while the failure to take these steps may be "justly criticized," it does not justify the potentially "disastrous" consequences of disqualifying counsel in this case. *See id*; Hazard Decl. ¶ 5. Accordingly, the Court DENIES Chobani's motion to disqualify Plaintiffs' Counsel, and DENIES as moot Chobani's motion to bar Plaintiffs' Counsel from discussing issues in this case with replacement counsel. Because Chobani confirmed at the July 25 hearing that it does not seek additional or intermediate sanctions against Plaintiffs' Counsel, the Court does not consider any other potential remedies.

## IV.     Conclusion

For the reasons explained above, Chobani's Motion to Disqualify is GRANTED in part and DENIED in part. The motion to bar EAS and Campbell from discussing issues in this case with Plaintiffs' Counsel is GRANTED, in that EAS and Campbell are disqualified as experts, and Plaintiffs' Counsel will be disqualified from this case if they communicate further with EAS about the issues in the instant action, absent a waiver from Chobani. The motion to disqualify Plaintiffs' Counsel is DENIED, and the motion to bar Plaintiffs' Counsel from discussing issues in this case with replacement counsel is DENIED as moot.

**IT IS SO ORDERED.**

Dated: August 2, 2013

LUCY H. KOH
United States District Judge

Case No.: 12-CV-02425-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL