```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                  SAN JOSE DIVISION

 4


 5

      KATIE KANE, AN INDIVIDUAL,      )  C-12-02425 LHK
 6    DARLA BOOTH, AN INDIVIDUAL, AND  )
      ARIANNA ROSALES, AN INDIVIDUAL,  )  SAN JOSE, CALIFORNIA
 7    ON BEHALF OF THEMSELVES AND ALL  )
      OTHERS SIMILARLY SITUATED,       )  JULY 25, 2013
 8                                     )
                    PLAINTIFFS,        )  PAGES 1-111
 9                                     )
             VS.                       )
10                                     )
      CHOBANI, INC., ALSO FORMERLY     )
11    KNOWN AS AGRO-FARMA, INC.,       )
                                       )
12                  DEFENDANT.         )
      _____)
13
                   TRANSCRIPT OF PROCEEDINGS
14            BEFORE THE HONORABLE LUCY H. KOH
                 UNITED STATES DISTRICT JUDGE
15

16    A P P E A R A N C E S:

17    FOR THE PLAINTIFF:    PRATT & ASSOCIATES
                            BY:  BEN F. PIERCE GORE
18                          1871 THE ALAMEDA, SUITE 425
                            SAN JOSE, CALIFORNIA  95126
19
                            CLIFFORD LAW OFFICES
20                          BY:  ROBERT A. CLIFFORD
                            120 NORTH LASALLE STREET, SUITE 3100
21                          CHICAGO, ILLINOIS  60602

22            APPEARANCES CONTINUED ON NEXT PAGE

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

1

2      APPEARANCES (CONTINUED)

3

4      FOR THE DEFENDANT:      MAYER BROWN
                               BY:  MICHAEL L. RESCH
5                                   DALE J. GIALI
                               350 SOUTH GRAND AVENUE, 25TH FLOOR
6                              LOS ANGELES, CALIFORNIA  90071

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    SAN JOSE, CALIFORNIA                    JULY 25, 2013
 2                    P R O C E E D I N G S
 3         (COURT CONVENED AND THE FOLLOWING PROCEEDINGS WERE HELD:)
 4             THE COURT:  WE'RE GOING TO HANDLE THE KANE MATTER
 5    FIRST, SO IF THE SILVA V. TEKSYSTEMS FOLKS, IF YOU WANTED TO
 6    COME BACK, IT'S UP TO YOU, BUT WE'LL HANDLE THE OTHER MATTER
 7    FIRST.
 8             THE CLERK:  CALLING CASE NUMBER C-12-02425 LHK, KANE
 9    VERSUS CHOBANI, INCORPORATED.
10             MR. CLIFFORD:  GOOD AFTERNOON, YOUR HONOR.
11    ROBERT CLIFFORD AND PIERCE GORE ON BEHALF OF THE PLAINTIFFS.
12             MR. RESCH:  GOOD AFTERNOON, YOUR HONOR.
13    MICHAEL RESCH AND DALE GIALI OF MAYER BROWN ON BEHALF OF
14    CHOBANI.
15             THE COURT:  OKAY.  GOOD AFTERNOON.
16        JUST FOR THE CASE MANAGEMENT CONFERENCE PORTION OF TODAY,
17    LET'S GO AHEAD AND JUST SET A FURTHER -- WELL, ACTUALLY, BEFORE
18    I DO THAT, I'D LIKE TO HANDLE TODAY THE MOTION FOR
19    RECONSIDERATION, OR FOR LEAVE FOR RECONSIDERATION, AS WELL AS
20    THE DISQUALIFICATION MOTION.
21             MR. CLIFFORD:  YOUR HONOR, ROBERT CLIFFORD AGAIN.
22             THE COURT:  YES.
23             MR. CLIFFORD:  ON THE MOTION FOR RECONSIDERATION,
24    WHICH WE JUST RECEIVED --
25             THE COURT:  WHY DID YOU JUST RECEIVE IT?  IT WAS
```

1    FILED ON THE 22ND.

2         MR. CLIFFORD:  MAYBE I'M THINKING OF THE WRONG

3    MOTION, YOUR HONOR.  I JUST -- WE JUST -- I JUST GOT THIS

4    WITHIN THE LAST SEVERAL DAYS, BUT THE POINT BEING THAT WE

5    UNDERSTAND THEIR GOAL TO HAVE BROUGHT TO THE COURT'S ATTENTION

6    CERTAIN THINGS.

7       WE, TOO, BELIEVE THAT, UPON REVIEW OF THIS AND THE RECORD,

8    THAT WE'D LIKE TO BRING SOME THINGS TO YOUR ATTENTION AS WELL

9    THAT THE COURT MAY WISH TO RECONSIDER.

10      SO WHAT WE WOULD REQUEST YOU TO CONSIDER IS THE IDEA OF A

11   JOINT FILING, IF YOU'RE GOING TO DO THIS, A JOINT FILING OF ANY

12   MOTIONS FOR RECONSIDERATION.

13        THE COURT:  NO.  I'M NOT GOING TO GIVE YOU LEAVE

14   UNTIL I SEE WHAT ISSUES YOU THINK WERE WRONGLY DECIDED.

15        MR. CLIFFORD:  THAT'S FAIR.  THAT'S FAIR.  AND ALL I

16   WANTED TO DO, THOUGH, WAS BRING TO YOUR ATTENTION --

17        THE COURT:  WELL, I WANT TO HEAR YOUR RESPONSE TO

18   CHOBANI'S MOTION FOR LEAVE.

19        MR. CLIFFORD:  YOU WANT TO HEAR IT NOW OR YOU WANT --

20        THE COURT:  I WANT TO HEAR IT RIGHT NOW.

21        MR. CLIFFORD:  YOU WANT TO HEAR IT RIGHT NOW.

22        THE COURT:  YEAH.

23        MR. CLIFFORD:  WELL, OUR RESPONSE TO THEIR MOTION IS

24   THAT THEY CREATE THE ISSUES AND CLAIMS THAT, OUT OF WHOLE

25   CLOTH, THAT WHEN THEY TALK ABOUT YOUR RULING CREATING SOME NEW

1    CLAIM ABOUT HEALTHY SUGAR AND ABOUT THIS CASE BEING RIPE FOR AN

2    INTERLOCUTORY APPEAL TO THE NINTH CIRCUIT, WE DON'T AGREE.

3         THE COURT:  THAT'S IT?  THEN I'M GOING TO GRANT IT

4    BECAUSE YOU'RE NOT GIVING ME ANY ARGUMENTS TO THE CONTRARY.

5         MR. CLIFFORD:  WELL --

6         THE COURT:  IF IT'S JUST A CONCLUSION, THEN I, YOU

7    KNOW, AM GOING TO GRANT THE LEAVE.

8      WHAT'S YOUR THEORY OF THE CASE?

9         MR. CLIFFORD:  WELL, OUR THEORY OF THE CASE, AND ONE

10   THAT WE WANT TO BRING TO YOUR ATTENTION, IS THAT UNDER THE

11   UNLAWFUL PRONG --

12        THE COURT:  NO, NO, NO.  WHAT IS THE

13   MISREPRESENTATION?

14        MR. CLIFFORD:  THE MISREPRESENTATION IS THAT ECJ IS

15   AN INGREDIENT THAT IS MISIDENTIFIED WHEN IT'S ACTUALLY SUGAR,

16   AND IT'S NOT THE COMMON AND USUAL NAME, WHICH IS REQUIRED BY

17   THE FDA, AND THAT IT'S UNLAWFUL TO MISBRAND A PRODUCT.  IT'S

18   UNLAWFUL TO SELL A PRODUCT THAT IS MISBRANDED.  WE MAINTAIN

19   THAT IT'S MISBRANDED.

20     AND WE ALSO MAINTAIN, AND THIS IS ONE OF --

21        THE COURT:  SO WHAT DID YOUR CLIENT BELIEVE THAT IT

22   WAS?

23        MR. CLIFFORD:  WELL, YOU KNOW, YOU MENTIONED THAT AT

24   THE PRELIMINARY INJUNCTION HEARING, AND I THINK YOU -- NUMBER

25   ONE, I DON'T KNOW THAT -- UNLESS YOU RULE THIS WAY -- THAT

```
 1        THERE'S A REQUIREMENT THAT OUR CLIENTS STATE THAT THEY THOUGHT
 2    ECJ WAS SOMETHING SPECIFIC.
 3        AND THAT IS TO SAY, I THINK WE TAKE FOR GRANTED THAT
 4    EVERYBODY WHO'S BUYING A PRODUCT SEES ECJ ON A LABEL AND
 5    CONCLUDES THAT IT'S SUGAR.  I DON'T THINK THAT THAT'S
 6    SUPPORTABLE.
 7        I'M NOT SAYING THAT THE VAST MAJORITY OF PEOPLE DON'T SEE
 8    IT THAT WAY, BUT WHAT I AM SAYING IS THAT --
 9            THE COURT:  OH, WAIT.  I'M SORRY.  CAN YOU REPEAT
10    WHAT YOU JUST SAID?  YOU THINK EVERYONE SEES THE LABEL AND SEES
11    ECJ AND ASSUMES THAT IT'S SUGAR?
12            MR. CLIFFORD:  I THOUGHT YOU INFERRED FROM YOUR
13    COMMENTS LAST --
14            THE COURT:  NO, I'M ASKING YOU, WHAT IS YOUR THEORY?
15    OKAY?  WHAT DID THE PLAINTIFFS BELIEVE ECJ WAS, YOUR CLIENTS?
16            MR. CLIFFORD:  AND MY POINT TO YOU IS, ARE YOU
17    HOLDING THAT THAT'S AN ELEMENT OF PROOF?
18            THE COURT:  SO YOU'RE NOT GOING TO ANSWER THE
19    QUESTION?
20            MR. CLIFFORD:  NO.  I'M GOING TO ANSWER THE QUESTION.
21            THE COURT:  OKAY.  WHAT IS THE ANSWER TO MY QUESTION?
22            MR. CLIFFORD:  I THINK THE ANSWER WOULD VARY FROM
23    CLIENT TO CLIENT.  I THINK IF YOU POLLED THE CLASS, YOU WOULD
24    FIND CLIENTS THAT THOUGHT ECJ WAS SUGAR.
25            THE COURT:  OKAY.  WELL, LET ME -- OKAY.  I'M -- YOU
```

```
1     ALL HAVE RAISED REALLY IMPORTANT QUESTIONS.

2          MR. CLIFFORD:  YES.

3          THE COURT:  AND I'M JUST ASKING FOR YOUR HELP TO GET

4     AN ANSWER.

5          MR. CLIFFORD:  AND I'M TRYING TO BE HELPFUL.  HOW AM

6     I NOT BEING HELPFUL?

7          THE COURT:  SO LET ME ASK YOU ABOUT KATIE KANE.

8          MR. CLIFFORD:  PARDON?

9          THE COURT:  WHAT DID KATIE KANE THINK IT WAS?

10         MR. CLIFFORD:  I DON'T WANT TO MISSTATE THAT TO THE

11    COURT, TO YOU.  I'VE NEVER INTERVIEWED KATIE KANE AND I DON'T

12    KNOW THE ANSWER TO THAT.  MAYBE MY CO-COUNSEL, MR. GORE,

13    SITTING WITH ME DOES.

14         THE COURT:  OKAY.  DO YOU KNOW, SIR?

15         MR. GORE:  KATIE KANE DIDN'T KNOW IT WAS SUGAR.  SHE

16    DIDN'T KNOW WHAT IT WAS.  SHE LEARNED FOR THE FIRST TIME THAT

17    EVAPORATED CANE JUICE WAS SUGAR ON THE DAY SHE MET ME.

18       SAME FOR DARLA BOOTH.

19       WE HAVE A THIRD PLAINTIFF, ARIANNA ROSALES, WHO'S THE

20    CLIENT OF PATTY SYVERSON, WHO I'VE NOT MET, SO I DON'T KNOW

21    WHAT HER STATE OF MIND IS.

22         THE COURT:  OKAY.

23         MR. GORE:  BUT KATIE KANE AND DARLA BOOTH DID NOT

24    KNOW THAT ECJ WAS SUGAR.

25         THE COURT:  AND WHAT DID THEY THINK IT WAS?
```

```
 1              MR. GORE:  THEY DIDN'T KNOW WHAT IT WAS.  THEY HAD

 2    NEVER -- THEY HAD NEVER -- THEY HAD NEVER RESEARCHED IT.  THEY

 3    DON'T HAVE THE BACKGROUND OR THE EXPERTISE TO KNOW WHAT IT

 4    MEANT.  THEY DON'T KNOW ANYTHING ABOUT FDA REGS.

 5              MR. CLIFFORD:  AND I THINK WHAT WE'RE --

 6              THE COURT:  AND AS FAR AS MS. ROSALES, YOU HAVEN'T

 7    HAD A CONVERSATION WITH HER?

 8              MR. GORE:  I HAVE NOT.

 9              THE COURT:  HAS ANY OF THE PLAINTIFFS' COUNSEL TEAM

10    SPOKEN WITH MS. ROSALES?

11              MR. GORE:  I BELIEVE THAT OUR CO-COUNSEL,

12    PATTY SYVERSON, HAS -- MS. ROSALES IS HER CLIENT.  I HAVE NOT

13    DISCUSSED THIS SPECIFIC ISSUE WITH MS. SYVERSON, BUT I WILL.

14              THE COURT:  OKAY.  LET ME ASK MR. GIALI, CORRECT?

15              MR. RESCH:  I'M MR. RESCH, YOUR HONOR.

16              THE COURT:  OH, I'M -- I APOLOGIZE.

17              MR. RESCH:  THAT'S OKAY.  BUT MR. GIALI IS HERE IN

18    CASE YOU WANTED TO TALK TO HIM.

19              THE COURT:  OKAY, SORRY.

20          WHAT IS THE CASE LAW THAT SAYS, OR REQUIRES, THE PLAINTIFF

21    TO ALLEGE WHAT THEY UNDERSTOOD THE MISSTATE -- THE MISLEADING

22    STATEMENT TO BE?  IS THERE A CASE THAT REQUIRES IT?

23              MR. CLIFFORD:  AND THAT --

24              MR. RESCH:  YES, YOUR HONOR.

25              MR. CLIFFORD:  WE CAN --
```

```
 1              THE COURT:  OKAY.

 2              MR. RESCH:  AND YOUR HONOR RECOGNIZED THIS POINT IN

 3     THE ORDER ON THE MOTION TO DISMISS, AND THAT IS THE CASE LAW,

 4     YOUR HONOR, THAT REQUIRES DECEPTION AND RELIANCE AND INJURY,

 5     AND YOUR HONOR VERY CLEARLY HELD THAT THOSE WERE REQUIRED

 6     ELEMENTS IN THIS CASE.

 7          WHEN YOU HAVE THE REQUIRED ELEMENTS OF DECEPTION AND

 8     RELIANCE, YOU CANNOT ALLEGE DECEPTION AND RELIANCE WITHOUT

 9     ALLEGING THAT YOU THOUGHT ONE THING THAT WAS PLAUSIBLE AND

10     PASSES THE REASONABLE CONSUMER TEST AND GOT SOMETHING

11     DIFFERENT.

12          THE THEORY -- PLAINTIFFS HAVE TWO THEORIES, BASICALLY, YOUR

13     HONOR.  THE FIRST IS THAT ALL THEY NEED TO DO IS ALLEGE A

14     REGULATORY VIOLATION AND THEY CAN MOVE FORWARD.

15          YOUR HONOR CORRECTLY REJECTED THAT THEORY BASED ON THE IN

16     RE: ACCTIMUNE AND OTHER DECISIONS, TOBACCO AND DURELL.  AND

17     THAT'S IN YOUR HONOR'S ORDER.

18          THEY THEN --

19              THE COURT:  I'M SORRY, LET ME INTERRUPT YOU A SECOND.

20              MR. RESCH:  YES.

21              THE COURT:  WHAT I HEAR MR. GORE SAYING IS ALL THEY

22     NEED TO SHOW IS THAT THEIR CLIENTS DID NOT KNOW IT WAS SUGAR,

23     BUT THEN IT TURNED OUT TO BE SUGAR AND THAT'S ALL THEY HAVE TO

24     ALLEGE.  THEY DON'T HAVE TO SAY, "WELL, I ACTUALLY THOUGHT THAT

25     IT WASN'T SUGAR," OR "I DIDN'T KNOW IT WAS SUGAR, BUT I THOUGHT
```

```
1        IT WAS X."
2           DO YOU SEE WHAT I'M SAYING?
3                MR. RESCH:  I DO, YOUR HONOR.
4                THE COURT:  THEY JUST NEED TO SAY, "I DIDN'T KNOW IT
5     WAS Y, BUT IT TURNED OUT TO BE Y."  THEY DON'T NEED TO SAY, "IN
6     ADDITION, I DIDN'T KNOW IT WAS Y, IT TURNED OUT TO BE Y, BUT I
7     ALSO THOUGHT IT WAS X."
8                MR. CLIFFORD:  AND THAT'S EXACTLY RIGHT.
9                THE COURT:  I DON'T THINK THERE'S A CASE THAT
10    SPECIFICALLY SAYS, IN ADDITION TO SAYING "I DIDN'T REALIZE IT
11    WAS Y, IT TURNED OUT TO BE Y, BUT I ALSO THOUGHT IT WAS X."
12               MR. RESCH:  HERE'S MY --
13               MR. CLIFFORD:  BUT YOU SEE, YOUR HONOR --
14               THE COURT:  IF THERE IS ONE, IT WOULD MAKE THIS SO
15    MUCH EASIER.
16               MR. CLIFFORD:  THAT'S EXACTLY --
17               MR. RESCH:  EXCUSE ME.  I'M -- WE'RE HAVING -- I'M
18    RESPONDING TO YOUR HONOR'S QUESTION.
19          YOUR HONOR REJECTED THE THEORY THAT THEY DIDN'T KNOW -- HAD
20    NO IDEA WHAT THIS WAS AND DIDN'T KNOW IT WAS ANY KIND OF FORM
21    OF SUGAR.  YOU ASKED, WHAT DO YOU THINK IT WAS, CANDY CANE?
22    ASPARAGUS?  IT SAYS "CANE."
23          AND IN YOUR HONOR'S ORDER, IT'S VERY SPECIFIC THAT IT IS
24    NOT PLAUSIBLE THAT SOMEONE READS THE WORD "CANE" AND DOESN'T
25    KNOW THAT IT'S A FORM OF SUGAR.  THAT WAS REJECTING PLAINTIFFS'
```

1    THEORY IN THIS CASE, PERIOD, FULL STOP.

2        THAT WAS THE ALLEGATION THEY MADE.

3        YOUR HONOR FOUND THAT IT WAS NOT PLAUSIBLE, WHICH IT'S NOT.

4    WE HAD THE DISCUSSION AT THE PRELIMINARY INJUNCTION HEARING,

5    FOR EXAMPLE.

6        SO, YOUR HONOR, HAVING REJECTED THEIR THEORY AS NOT

7    PLAUSIBLE, THEN THERE IS NOTHING LEFT ON THAT CLAIM BECAUSE

8    THERE'S NO ALLEGATION OF DECEPTION, AS WE POINT OUT IN THE

9    RECONSIDERATION MOTION.

10        IN OTHER WORDS, YOUR HONOR, THEY CAME TO THIS COURT AND

11    THEY SAID, "WE DIDN'T HAVE ANY IDEA WHAT THIS WAS.  WE DIDN'T

12    KNOW IT WAS SUGAR AND, LO AND BEHOLD, IT TURNED OUT TO BE A

13    FORM OF SUGAR."

14        YOUR HONOR CAREFULLY -- SPENT A LONG TIME ANALYZING THESE

15    ISSUES AND SAID THAT'S REALLY NOT PLAUSIBLE.

16        AND IT'S ESPECIALLY NOT PLAUSIBLE HERE, YOUR HONOR, BECAUSE

17    THESE SAME PLAINTIFFS SAY THEY KNEW WHAT DRIED CANE SYRUP WAS.

18    THEY KNEW CANE SYRUP WAS A FORM OF SUGAR.  THAT'S ALLEGED AND

19    IT'S IN THEIR DECLARATION SUPPORTING THE PRELIMINARY INJUNCTION

20    MOTION.

21        AND SO, YOUR HONOR, IT, OF COURSE, IS NOT PLAUSIBLE THAT

22    SOMEONE COMING TO THIS COURT KNOWING WHAT CANE SYRUP IS HAS

23    SIMPLY NOT THE FOGGIEST IDEA WHAT CANE JUICE IS.

24        THAT'S NOT PLAUSIBLE, IT'S NOT THE WAY PEOPLE THINK, AND SO

25    IT'S NOT PLAUSIBLE AS TO THESE PLAINTIFFS, WHICH YOUR HONOR

1    ALREADY FOUND IN YOUR ORDER ON THE MOTION TO DISMISS, AND IT'S

2    CERTAINLY NOT WHAT REASONABLE CONSUMERS THINK, WHICH, AS YOUR

3    HONOR NOTED IN THE WILLIAMSON DECISION, IS WHAT A SIGNIFICANT

4    PORTION OF THE PUBLIC WOULD THINK.

5        SO HAVING REJECTED THEIR THEORY AS NOT PLAUSIBLE, CORRECTLY

6    AND SOUNDLY, THERE IS SIMPLY NOTHING LEFT TO GO ON.

7        AND YOUR HONOR, YOUR HONOR'S ORDER RESPECTFULLY DEVELOPS A

8    NEW THEORY OF RELIANCE AND DECEPTION THAT WAS NOT ALLEGED, THAT

9    CANNOT BE ALLEGED BECAUSE IT'S TOTALLY INCONSISTENT WITH WHAT

10   THEY DID ALLEGE AND PUT IN THEIR DECLARATIONS --

11        THE COURT:  BUT HOW OFTEN IS IT THAT PLAINTIFFS WILL

12   PLEAD IN THE ALTERNATIVE?  I MEAN, ALL PARTIES PLEAD IN THE

13   ALTERNATIVE.

14        MR. RESCH:  WELL, THIS IS NOT PLEADING IN THE

15   ALTERNATIVE, YOUR HONOR.

16        THE COURT:  UM-HUM.

17        MR. RESCH:  THESE ARE -- THEY WENT -- THREE

18   COMPLAINTS.  WE'RE ON THE SECOND AMENDED COMPLAINT, AND EVERY

19   SINGLE TIME, IN ADDITION TO A DECLARATION UNDER OATH --

20        THE COURT:  UM-HUM.

21        MR. RESCH:  -- SAID "THIS IS WHAT WE BELIEVE.  THIS

22   IS WHAT WE BELIEVE."

23        AND THEY CAN'T NOW, UNDER THE LAW, YOUR HONOR, AND WE CITE

24   IT IN THE MOTION FOR LEAVE FOR RECONSIDERATION, THEY CAN'T NOW

25   COME AND SAY, "OH, EVEN THOUGH WE SAID ALL THAT ABOUT WHAT WE

```
 1        THOUGHT THIS MEANT, NOW WE'RE -- THIS IS OUR NEW THEORY."

 2             THE COURT:  UM-HUM.

 3             MR. RESCH:  AND, YOUR HONOR, THE NEW THEORY, AS WE

 4        POINT OUT IN THE MOTION FOR LEAVE FOR RECONSIDERATION, HAS A

 5        WHOLE SET OF OTHER PROBLEMS THAT IF THEY HAD ALLEGED THIS FROM

 6        THE BEGINNING, WE WOULD HAVE COME INTO THIS COURT AND OUR VIEW,

 7        AMONG OTHER THINGS, BESIDES THE FACT THAT THE PLAINTIFFS NEVER

 8        ALLEGE IT AND NOW THEY CAN'T ALLEGE IT BECAUSE IT'S

 9        INCONSISTENT, IT RAISES -- IT RAISES REASONABLE CONSUMER

10        PROBLEMS, YOUR HONOR, THAT A SIGNIFICANT PORTION OF THE PUBLIC

11        IS READING CHOBANI AND THINKING THAT, "OKAY, WE'RE NOT ONLY

12        GOING TO CARE ABOUT THE AMOUNT OF SUGARS, WE'RE GOING TO LOOK

13        TO THE INGREDIENT LIST, AND THEN WE'RE GOING TO LOOK TO THE

14        INGREDIENT LIST AND FORM THIS OPINION ABOUT A FORM OF SUGAR

15        THAT IT'S ACTUALLY HEALTHY."

16        IT'S JUST NOT -- A SIGNIFICANT PORTION OF THE PUBLIC IS NOT

17        GOING TO BUY CHOBANI BASED ON THAT, AND THOSE ARE THE TYPES OF

18        ARGUMENTS THAT WE NEVER BRIEFED BECAUSE THIS WAS NEVER THEIR

19        THEORY.

20        IT ALSO RUNS INTO PREEMPTION ISSUES, YOUR HONOR, BECAUSE

21        BASICALLY WHAT YOUR HONOR'S ORDER DISCUSSED WAS JUST HAVING THE

22        WORD "JUICE," JUST HAVING THAT WORD SOMEHOW IMPLIES HEALTHY,

23        AND THAT IS NOT CONSISTENT WITH THE FDA REGULATIONS ON IT.

24             AND THEN OF COURSE, YOUR HONOR, WE PUT IN THE --

25             THE COURT:  LET ME -- I'VE READ YOUR MOTION FOR
```

```
1        LEAVE.

2                MR. RESCH:  OKAY.  THANK YOU.

3                THE COURT:  OKAY.  LET ME ASK THE PLAINTIFFS'

4        COUNSEL, SO YOU ARE NOT ALLEGING THAT MS. KANE, MS. BOOTH,

5        MS. ROSALES, ANY PUTATIVE CLASS ACTUALLY THOUGHT THAT ECJ WAS A

6        HEALTHIER FORM OF SUGAR THAN, FOR LACK OF A BETTER WORD,

7        REGULAR REFINED WHITE SUGAR.  THAT'S NOT YOUR THEORY?

8                MR. CLIFFORD:  THAT IS NOT OUR THEORY.

9                THE COURT:  OKAY.

10               MR. CLIFFORD:  AND THEIR CONVERTING YOUR ORDER INTO

11       SAYING THAT IT IS WE THINK IS MISPLACED.

12               THE COURT:  WHY IS THAT?

13               MR. CLIFFORD:  BECAUSE OUR THEORY IS -- AS YOU

14       SPECIFICALLY NOTED, WE DO NOT BELIEVE THAT ALL OF OUR CLAIMS

15       ARE DEPENDENT UPON PROOF OF DECEPTION OR RELIANCE, AND WE THINK

16       THAT YOU REFER TO THAT, THE UNLAWFUL PRONG, WHAT I CALL THE PER

17       SE UNLAWFUL PRONG, IN A FOOTNOTE IN YOUR ORDER.

18           THERE IS A CREDIBLE BASIS FOR BELIEVING, AND COUNSEL -- AND

19       THEIR MOTION FOR RECONSIDERATION, WE THINK, OVERSTATES YOUR

20       ORDER THAT THERE IS A BASIS FOR THE CLAIM THAT HAS BEEN

21       ASSERTED, THAT THERE'S AN UNLAWFUL PRONG THAT DOES NOT REQUIRE

22       DECEPTION, DOES NOT REQUIRE RELIANCE BECAUSE IT'S BASED UPON A

23       VIOLATION OF THE LAW THAT ALLOWED -- THAT YOU CANNOT SELL AN

24       ILLEGAL PRODUCT.

25               THE COURT:  WELL, HOW DO YOU GET AROUND THE
```

```
 1        REQUIREMENT IN KWIKSET AND PROP 64?  I DON'T UNDERSTAND HOW YOU

 2        DO THAT IF YOU SAY "WE DON'T HAVE TO SHOW RELIANCE, WE" --

 3        THAT'S -- I DON'T THINK THAT'S, YOU KNOW, CURRENTLY THE STATE

 4        OF THE LAW SINCE PROP 64 PASSED AND SINCE WE HAVE KWIKSET.

 5            HOW DO YOU EXPLAIN THAT, THAT TENSION?

 6                MR. GORE:  KWIKSET WAS NOT A CASE BROUGHT UNDER THE

 7        SHERMAN LAW.  THIS CASE IS.

 8          IN KWIKSET THE PLAINTIFFS WERE ALLEGEDLY DECEIVED BY A

 9        LABEL THAT SAID "MADE IN THE U.S.A."

10            IT WAS -- THAT CASE WAS A PURE -- IT WAS A FALSE

11        ADVERTISING CASE.  IT WAS A CASE OF PURE CONSUMER DECEPTION

12        THAT DID NOT IMPLICATE A STATUTORY VIOLATION.

13            WE HAVE HERE VIOLATIONS OF A STRICT LIABILITY STATUTE.

14        THAT'S THE DIFFERENCE.  WE SATISFY PROP 64 BECAUSE OUR

15        PLAINTIFFS -- WE SATISFY KWIKSET BECAUSE OUR PLAINTIFFS BOUGHT

16        THE PRODUCT AND SUFFERED AN ECONOMIC INJURY AS DEFINED BY THE

17        CALIFORNIA SUPREME COURT.

18            BUT BECAUSE WE HAVE AN UNDERLYING REG -- A STATUTORY

19        VIOLATION THAT IMPOSES PER SE STRICT LIABILITY, WE NEED NOT

20        ALLEGE OR PROVE -- AS THE COURT HAS NOTED, WE PLEADED IN THE

21        ALTERNATIVE, BUT OUR CASE DOES NOT DEPEND UPON A SHOWING OF

22        DECEPTION OR RELIANCE.

23            THAT'S THE DIFFERENCE BETWEEN OUR CASE AND KWIKSET.  WE

24        SATISFY KWIKSET, BUT WE NEED NOT PROVE THE SAME DECEPTION AND

25        RELIANCE THAT WAS INVOLVED IN KWIKSET.
```

```
1              THE COURT:  AND YOUR, YOUR SUPPORT FOR THIS IS

2     MEDRAZO, OR WHAT?

3              MR. GORE:  IN PART, MEDRAZO.

4              THE COURT:  WHAT DO YOU BASE -- WHAT DO YOU BASE THIS

5     STRICT LIABILITY THAT SOMEHOW TAKES YOU OUTSIDE OF KWIKSET AND

6     PROP 64, WHAT DO YOU BASE THAT ON?

7              MR. GORE:  IN RE: TOBACCO II.

8              THE COURT:  OKAY.  WELL, I DISAGREE WITH YOU ON THAT.

9     I -- YOU KNOW, IF THAT'S WHAT YOU'RE GOING TO MOVE FOR

10    RECONSIDERATION ON, I'VE ALREADY SAID IN RE: TOBACCO II DOESN'T

11    APPLY.  I'VE ALREADY SAID THAT THIS UNLAWFUL THEORY IS NOT

12    CONSISTENT WITH THE KWIKSET REQUIREMENT OR PROP 64, SO IF

13    THAT'S GOING TO BE YOUR BASIS FOR LEAVE, I'M GOING TO -- I'M

14    GOING TO DENY THAT.

15       NOW, I APPRECIATE YOU ALL HELPING ME.  I'M TRYING TO

16    UNDERSTAND THESE ISSUES, SO I APPRECIATE YOU ANSWERING THE

17    QUESTIONS.

18       SO IF I UNDERSTAND CORRECTLY, YOU BELIEVE THAT YOU HAVE A

19    STRICT LIABILITY CLAIM WHICH TAKES YOU OUTSIDE OF PROP 64

20    REQUIREMENTS AND OUTSIDE OF KWIKSET REQUIREMENTS.  IS THAT

21    RIGHT?

22             MR. GORE:  NO.  I BELIEVE WE HAVE SATISFIED THE PROP

23    64 AND KWIKSET REQUIREMENTS.

24             THE COURT:  HOW?

25             MR. GORE:  BUT IN ADDITION --
```

```
 1              THE COURT:  BUT HOW IF YOU'RE SAYING "WE DON'T HAVE

 2     TO PROVE RELIANCE"?  I GUESS I'M UNCLEAR.  HOW ARE YOU -- IT

 3     SEEMS LIKE YOU'RE MAKING BOTH ARGUMENTS.  YOU'RE SAYING, "I

 4     DON'T HAVE TO SHOW ANY OF THAT.  THIS IS STRICT LIABILITY."

 5          BUT THEN ON THE OTHER HAND, YOU'RE SAYING, "BUT I'VE ALSO

 6     SATISFIED IT."

 7          SO CAN YOU CLARIFY THAT TENSION, PLEASE?

 8              MR. GORE:  WE PLEAD OUR FALSE ADVERTISING --

 9              THE COURT:  OKAY.

10              MR. GORE:  -- AND OUR UCL UNLAWFUL CLAIMS --

11              THE COURT:  OKAY.

12              MR. GORE:  -- IN THE ALTERNATIVE.  CONSIDER THE

13     HYPOTHETICAL.  TWO CONSUMERS WALK INTO THE SUPERMARKET.  BOTH

14     OF THEM BUY CUPS OF IDENTICALLY LABELED CHOBANI YOGURT.  ONE OF

15     THEM READS THE INGREDIENT LIST, THE LABEL.  THE OTHER DOES NOT.

16          BOTH HAVE CLAIMS.  THE ONE WHO READ THE LABEL WOULD HAVE A

17     FALSE ADVERTISING AND A UCL CLAIM.

18          BUT THE PERSON WHO DIDN'T READ THE LABEL WOULD NOT HAVE A

19     FALSE ADVERTISING CLAIM.  THEY WEREN'T DECEIVED.  THEY DIDN'T

20     RELY ON THE MISBRANDED LABEL.  THEY WOULD STILL HAVE A CLAIM

21     BECAUSE, UNDER THE SHERMAN LAW, IT IS AGAINST THE LAW TO

22     DISTRIBUTE, SELL, BUY, OR EVEN POSSESS MISBRANDED FOOD.  THE

23     SHERMAN LAW IS QUITE CLEAR.

24              THE COURT:  AND THAT IS, WHAT, A UCL CLAIM PREDICATED

25     ON A SHERMAN LAW CLAIM?  THAT'S YOUR POSITION?  I'M JUST -- I'M
```

```
1      JUST TRYING TO UNDERSTAND HERE.  THESE ARE VERY COMPLICATED

2      ISSUES SO I WANT YOU TO EDUCATE ME ON THIS.

3                 MR. GORE:  THAT'S RIGHT.

4                 THE COURT:  YOU'RE SAYING A PERSON WHO READS THE

5      LABEL AND IS DECEIVED AND RELIES HAS A UCL CLAIM AND HAS A

6      FALSE ADVERTISING CLAIM?

7                 MR. GORE:  YES.

8                 THE COURT:  A PERSON WHO DOES NOT READ THE LABEL IS

9      NOT DECEIVED, DOES NOT RELY, THERE'S NO RELIANCE, STILL HAS A

10     UCL CLAIM PREDICATED ON A SHERMAN ACT?

11                MR. CLIFFORD:  UNDER THE UNLAWFUL PRONG, THAT'S

12     CORRECT.

13          THERE ARE THREE PRONGS, OF COURSE.

14                THE COURT:  UH-HUH.

15                MR. GORE:  THE COURT IS FAMILIAR WITH THE UCL.  THEY

16     ARE SEPARATE, INDEPENDENT, AND DISTINCT.  THERE'S THE UNLAWFUL

17     PRONG, THE FRAUDULENT PRONG, AND THE UNFAIR PRONG.

18                THE COURT:  OKAY.  SO YOU WOULD AGREE THAT IN YOUR

19     FIRST INSTANCE, KWIKSET AND PROP 64 APPLY IN THE "I READ THE

20     LABEL, I WAS DECEIVED, AND I RELIED."

21          BUT YOU'RE SAYING IN THE SECOND CATEGORY, "I DID NOT READ

22     THE LABEL, I WAS NOT DECEIVED, I DID NOT RELY ON ANY

23     MISREPRESENTATION," YOU'RE SAYING THAT DOES NOT HAVE TO COMPLY

24     WITH ANY KWIKSET REQUIREMENT OR PROP 64 REQUIREMENT?

25                MR. GORE:  CORRECT.  AS I UNDERSTAND PROP 64, IT
```

```
1         GOVERNS ALL ASPECTS OF THE UCL.

2              THE COURT:  UH-HUH.

3              MR. GORE:  BUT PROP 64 WAS INTENDED TO FORECLOSE

4    ACTIONS BROUGHT PURPORTEDLY ON BEHALF OF THE PUBLIC BY PEOPLE

5    WHO SUFFERED NO ECONOMIC INJURY.  THAT'S THE REQUIREMENT THAT

6    KWIKSET IMPOSES.  WE SATISFY THAT REQUIREMENT.

7         YOU SATISFY THAT REQUIREMENT BY --

8              THE COURT:  BUT HOW CAN THERE BE AN INJURY?  "I

9    DIDN'T READ THE LABEL.  I WAS NOT DECEIVED.  I DID NOT RELY."

10   HOW CAN I CLAIM ANY INJURY?

11             MR. GORE:  BECAUSE YOU BOUGHT MISBRANDED FOOD THAT IS

12   ILLEGAL TO SELL, ILLEGAL TO POSSESS, ILLEGAL TO DISTRIBUTE.

13             THE COURT:  ALL RIGHT.

14             MR. GORE:  THE SHERMAN LAW, IN AND OF ITSELF, IMPOSES

15   NO REQUIREMENT OF DECEPTION AND RELIANCE.

16             THE COURT:  OKAY.

17             MR. GORE:  THE UCL -- THERE'S NO PRIVATE RIGHT OF

18   ACTION UNDER THE UCL.  THERE'S THE SHERMAN LAW THAT GIVES US

19   THAT PRIVATE RIGHT OF ACTION.

20             THE COURT:  OKAY.  AND YOUR BASIS FOR THIS SECOND

21   CLAIM, THE DID NOT RELY, DID NOT -- WAS NOT DECEIVED IS IN RE:

22   TOBACCO II?

23             MR. GORE:  THERE ARE --

24             THE COURT:  WHAT ELSE?  ANYTHING ELSE?  WHAT ARE

25   YOU -- WHAT ARE YOU BASING THIS ON?  I MEAN, YOU ALL HAVE
```

```
1    RAISED VERY COMPLEX ISSUES, SO I'M NOT TRYING TO, YOU KNOW, BE

2    DIFFICULT.

3              MR. GORE:  SURE.

4              THE COURT:  I JUST WANT TO UNDERSTAND.

5              MR. GORE:  OF COURSE.

6              THE COURT:  WHAT IS THE BASIS FOR THAT STRICT

7    LIABILITY THEORY FOR THAT CLAIM?

8              MR. GORE:  THE -- IT'S A GROUP OF CASES --

9              THE COURT:  OKAY.

10             MR. GORE:  -- THAT WE HAVE BRIEFED.  FIRST, WE WOULD

11   APPRECIATE THE OPPORTUNITY -- BECAUSE DEFENDANT MOVED FOR LEAVE

12   TO FILE A MOTION FOR RECONSIDERATION, RATHER THAN ARGUE IT

13   ORALLY HERE, WE WOULD LIKE TO PROPERLY BRIEF OUR REQUEST FOR

14   THE COURT, AND WE'LL GET IT ON FILE EARLY NEXT WEEK,

15   IDENTIFYING THE ISSUES THAT WE BELIEVE ARE WORTHY OF THE

16   COURT'S RECONSIDERATION.

17        I DON'T WANT TO HIJACK THE D.Q. MOTION HERE TODAY.

18             MR. RESCH:  YOUR HONOR, MAY I RESPOND?

19             THE COURT:  NO, I UNDERSTAND.  BUT I JUST WANT -- I'M

20   JUST TRYING TO UNDERSTAND HOW TO PROCEED WITH THIS CASE.

21             MR. RESCH:  CAN I --

22             THE COURT:  THERE'S A LOT OF ISSUES.  LET ME

23   INTERRUPT YOU ONE SECOND.

24        SO IN RE: TOBACCO II, MEDRAZO, IS THAT -- THAT'S THE -- I

25   MEAN, THAT'S WHAT I COULD SENSE FROM THE MOTION TO DISMISS AND
```

```
1      THE P.I. HEARING.  BUT IF THERE'S ANYTHING ELSE, I'D LIKE YOUR

2      HELP IN IDENTIFYING IT.  WHAT ELSE IS THERE OTHER THAN IN RE:

3      TOBACCO II AND MEDRAZO?

4              MR. GORE:  I APOLOGIZE FOR NOT BEING PREPARED TO

5      FULLY ARGUE OUR MOTION.

6              THE COURT:  ALL RIGHT.

7              MR. GORE:  OUR MOTION FOR LEAVE HERE TODAY.

8              THE COURT:  ALL RIGHT.

9              MR. GORE:  BUT WE'LL BRIEF IT UP AND SUBMIT IT THE

10     COURT.

11             MR. RESCH:  YOUR HONOR, MAY I --

12             THE COURT:  ALL RIGHT.  LET ME GO TO MR. RESCH.

13             MR. RESCH:  THANK YOU, YOUR HONOR.

14             THE COURT:  SO THIS -- THIS UNLAWFUL STRICT LIABILITY

15     THEORY, WHICH IS WHAT THE PLAINTIFFS RELIED UPON AT THE

16     PRELIMINARY INJUNCTION HEARING --

17             MR. RESCH:  AND IN THE OPPOSITION TO THE MOTION TO

18     DISMISS --

19             THE COURT:  I UNDERSTAND.

20             MR. RESCH:  -- FULLY BRIEFED AND YOU RULED ON IT.

21             THE COURT:  I UNDERSTAND.  BUT I -- I HAVE TO SAY, I

22     DIDN'T REALLY SEE THAT ADDRESSED HEAD ON IN YOUR MOTION TO

23     DISMISS OR IN ANY OF THE PRELIMINARY INJUNCTION BRIEFING.

24         SO WHY DON'T YOU ADDRESS THIS SORT OF UNLAWFUL, BECAUSE

25     IT'S MISBRANDED, NO -- IT COULD NOT LEGALLY BE SOLD, THIS
```

```
 1        ARGUMENT.  WOULD YOU, PLEASE?

 2              MR. RESCH:  YES, YOUR HONOR.  AND I WOULD POINT THE

 3        COURT TO PAGE 3 OF OUR REPLY IN SUPPORT OF THE MOTION TO

 4        DISMISS, HEADING "PLAINTIFFS' CLAIMS REQUIRE PLAUSIBLE

 5        ALLEGATIONS OF DECEPTION AND INJURY."

 6           BUT LET ME JUST TALK TO YOUR HONOR ABOUT IT.

 7           PROP 64 REQUIRES A PLAINTIFF WHO HAS SUFFERED INJURY IN

 8        FACT AND HAS LOST MONEY OR PROPERTY, QUOTE, "AS A RESULT OF

 9        SUCH UNFAIR COMPETITION."  THAT'S WHAT PROP 64 SAYS.  MR. GORE

10        ACKNOWLEDGES THAT IT APPLIES TO EVERY PRONG OF THE UCL,

11        INCLUDING THE UNLAWFUL PRONG.

12           THE CASES ANALYZE THIS ISSUE, INCLUDING TOBACCO II,

13        FOLLOWED THROUGH TO ACTIMMUNE, WHICH YOUR HONOR'S ORDER RELIES

14        ON.

15              THE COURT:  CAN I ASK YOU -- I'M SORRY TO INTERRUPT

16        YOU.

17              MR. RESCH:  YES.

18              THE COURT:  CAN YOU ADDRESS MEDRAZO?

19              MR. RESCH:  YES.

20              THE COURT:  BECAUSE IF I REMEMBER CORRECTLY, THAT WAS

21        THE ONE WHERE THE STATE LAW REQUIRES THAT YOU HAVE A PRICE TAG

22        ON THE MOTORCYCLE AND THAT YOU SPELL OUT IN THE PRICE TAG WHAT

23        THE BASE PRICE OF THE MOTORCYCLE IS AND THEN ANY TRANSPORTATION

24        FEES, SELLER FEES, AND THAT IN THAT CASE THERE WAS A DISPUTE

25        ABOUT WHETHER THERE WAS A TAG OR NOT, BUT THEN THE BUYER GOT
```

```
 1        THE CONTRACT --

 2              MR. RESCH:  YES, YOUR HONOR.

 3              THE COURT:  -- AND THAT'S THE FIRST TIME THEY LEARNED

 4      WHAT THE SELLER'S ADD-ON CHARGE WOULD BE TO THE BASE PRICE.

 5        SO WHAT --

 6              MR. RESCH:  YES.

 7              THE COURT:  I MEAN, I HAVE TO SAY, WHEN YOU READ THAT

 8      CASE, IT DOES APPEAR TO SUPPORT WHAT MR. GORE IS SAYING.

 9              MR. RESCH:  HERE'S WHY IT DOESN'T, YOUR HONOR.

10              THE COURT:  WHY?

11              MR. RESCH:  AND WE ADDRESS THIS IN FOOTNOTE 2 OF THE

12      REPLY.

13        MEDRAZO STATES ITSELF THAT THIS CONDUCT CAUSED THE

14      PURCHASE.  IN OTHER WORDS, WHEN YOU READ IT, IT SAYS THAT THERE

15      WAS A CAUSAL CONNECTION BETWEEN THE UNLAWFUL ACT AND THE

16      PURCHASE AND INJURY, MEANING --

17              THE COURT:  NOT REALLY, BECAUSE THE BUYER IN THAT

18      CASE GOT THE SALES CONTRACT BEFORE SHE DECIDED TO BUY THE

19      MOTORCYCLE, SO SHE KNEW BEFORE -- YOU KNOW, THE ONLY INJURY WAS

20      THAT SHE ENGAGED IN A SALES NEGOTIATION BEFORE THAT POINT

21      WITHOUT KNOWING WHAT THE SALE IS, BUT WHEN SHE ACTUALLY MADE

22      THAT PURCHASE, SHE KNEW FULL WELL WHAT THE ADD-ON CHARGES WERE.

23              MR. RESCH:  RIGHT.  BUT WHAT MEDRAZO SAYS, YOUR

24      HONOR, IS THAT EVEN THOUGH THAT OCCURRED -- AND YOU'RE

25      ABSOLUTELY RIGHT --
```

```
 1          THE COURT:  YEAH.

 2          MR. RESCH:  -- THE DECISION TO PURCHASE HAD ALREADY

 3    OCCURRED.

 4       IN OTHER WORDS --

 5          THE COURT:  BUT HOW IS THAT AN INJURY?

 6          MR. RESCH:  BECAUSE THEN THAT FLOWED THROUGH THE

 7    ULTIMATE SIGNING OF THE CONTRACT.

 8          THE COURT:  SOMEONE COULD SAY, "OH, WOW.  THAT'S THE

 9    ADD-ON CHARGE?  I'M NOT GOING TO BUY THE MOTORCYCLE HERE.  I'M

10    GOING TO GO NEXT DOOR."

11       I MEAN --

12          MR. RESCH:  WELL, YOUR HONOR, I DON'T DISAGREE THAT,

13    THAT THERE IS AN INTERVENING ACT.

14       BUT THE POINT OF MEDRAZO AND WHY IT'S NOT SUPPORTIVE OF

15    THIS, RIGHTLY OR WRONGLY, RIGHTLY OR WRONGLY, THE COURT OF

16    APPEAL FOUND THAT THERE WAS A CAUSAL CONNECTION BETWEEN THE

17    DECISION TO PURCHASE.  WE MAY DISAGREE WITH THAT CONCLUSION AND

18    THE APPLICATION OF THE LAW TO THE FACTS.

19       BUT MEDRAZO, STANDING ALONE, CERTAINLY DOESN'T STAND FOR

20    THE PROPOSITION THAT PROP 64 CAN BE SWEPT TO THE SIDE, "AS A

21    RESULT OF" DOESN'T MEAN ANYTHING, AND YOU NEED NOT SHOW ANY

22    CAUSAL CONNECTION BETWEEN THE UNLAWFUL ACT AND THE DECISION TO

23    PURCHASE, WHICH IS THE CASE HERE.

24       HE'S SAYING IF HE -- IF THE CONSUMER NEVER EVEN READ THE

25    LABEL, NEVER EVEN READ THE LABEL, AND PURCHASED IT, THEY NEVER
```

1    EXPLAIN, YOUR HONOR, HOW THAT WOULD SATISFY THE "AS A RESULT

2    OF" LANGUAGE OF PROP 64, AND THAT IS WHY YOUR HONOR'S ORDER IS

3    ABSOLUTELY CORRECT IN FINDING THAT PROP 64 DEFEATS THIS.

4        I WANT TO SAY THERE ARE TWO MORE VERY IMPORTANT POINTS ON

5    THIS, YOUR HONOR, AND WHY WE KNOW, ASIDE FROM PROP 64 AND IN

6    RE: ACTIMMUNE AND THOSE CASES THAT YOUR HONOR CITES IN HER

7    ORDER, THERE ARE TWO MORE REASONS WHY WE KNOW THIS THEORY

8    CANNOT BE THE LAW.

9        NUMBER ONE, YOUR HONOR, THERE IS NO PRIVATE RIGHT OF ACTION

10   UNDER THE SHERMAN LAW.

11           THE COURT:  UM-HUM.

12           MR. RESCH:  IF THEY CAN SIMPLY BRING AN UNLAWFUL

13   CLAIM WITH NOTHING MORE BUT A SHERMAN LAW VIOLATION, THAT WOULD

14   CREATE A PRIVATE RIGHT OF ACTION TO SUE FOR A STRICT

15   LIABILITY -- UNDER A STRICT LIABILITY THEORY UNDER THE SHERMAN

16   LAW.

17           THE COURT:  UM-HUM.

18           MR. RESCH:  THE FACT THAT THE LEGISLATURE HAS

19   CONFIRMED THAT THERE'S NO PRIVATE RIGHT OF ACTION UNDER THE

20   SHERMAN LAW IN AND OF ITSELF DEFEATS THEIR THEORY, IN ADDITION

21   TO PROP 64.

22           THE COURT:  UM-HUM.

23           MR. RESCH:  SO WE HAVE PROP 64 AND THE CASES LIKE IN

24   RE: ACTIMMUNE, ET CETERA.

25       WE THEN HAVE THE FACT THAT THERE'S NO PRIVATE RIGHT OF

```
 1        ACTION UNDER THE SHERMAN LAW --

 2              THE COURT:  UM-HUM.

 3              MR. RESCH:  -- WHICH THIS WOULD TRANSFORM.

 4          THEN THERE'S A THIRD VERY IMPORTANT THING, YOUR HONOR.  IN

 5        YOUR HONOR'S ORDER IN TERMS OF REJECTING THE BUCKMAN, PEREZ AND

 6        THE IMPLIED PREEMPTION ARGUMENT --

 7              THE COURT:  UM-HUM.

 8              MR. RESCH:  -- ONE OF THE THINGS THAT YOUR HONOR SAYS

 9        IS THAT THIS IS -- THERE'S DECEPTION HERE.  THERE'S DECEPTION,

10        SO IT BRINGS IT OUT OF BUCKMAN AND PEREZ AND BRINGS IT MORE

11        AKIN TO A TYPICAL OLD-FASHIONED STATE LAW CLAIM.

12          WE THINK THAT THAT EXPANDS THE NARROW GAP TOO MUCH, BUT

13        LET'S GO WITH THAT FOR A SECOND.

14              THE COURT:  UM-HUM.

15              MR. RESCH:  IF YOUR HONOR RULES AND THE THEORY IS

16        THAT THEY CAN PROCEED WITH NOTHING MORE THAN A REGULATORY

17        VIOLATION --

18              THE COURT:  UM-HUM.

19              MR. RESCH:  -- THEN ALL OF A SUDDEN WE ARE SQUARELY

20        INTO EXACTLY WHAT BUCKMAN AND PEREZ AND THE FDCA SAY THAT YOU

21        CAN'T DO, WHICH IS YOU CAN'T SUE SIMPLY BECAUSE THERE'S A

22        REGULATORY VIOLATION --

23              THE COURT:  UM-HUM.

24              MR. RESCH:  -- EITHER UNDER THE FDCA 337, OR UNDER

25        THE SHERMAN LAW.
```

```
1          SO, YOUR HONOR, THIS WAS BRIEFED.  THEY BRIEFED IT

2     CONSIDERABLY IN THEIR OPPOSITION TO THE MOTION TO DISMISS.  WE

3     ADDRESS IT HEAD ON IN OUR REPLY, AND YOUR HONOR'S ORDER

4     ADDRESSES IT HEAD ON.

5          AND THERE'S SIMPLY NO, NO AUTHORITY TO SUPPORT THAT THE "AS

6     A RESULT OF" LANGUAGE MEANS NOTHING FROM PROP 64.

7          NOW, MEDRAZO -- I'VE GIVEN YOU MY TAKE ON MEDRAZO, WHICH IS

8     THE COURT THERE, AGAIN, RIGHTLY OR WRONGLY, SAID THAT THE

9     DECISION TO PURCHASE, EVEN THOUGH NOT LEGALLY COMMITTED, THE

10    DECISION TO PURCHASE HAD BEEN MADE AS A RESULT OF THE UNLAWFUL

11    CONDUCT, SO THERE WAS A CAUSAL CONNECTION.

12         YOUR HONOR MAY SAY, "WELL, I WOULDN'T HAVE FOUND THAT THAT

13    WAS SUFFICIENT CAUSAL CONNECTION," BUT AT LEAST THE COURT OF

14    APPEAL UNDERSTOOD THAT THERE MUST BE A CAUSAL CONNECTION.

15         HERE, UNDER THE THEORY, THEIR OWN WAY THEY DESCRIBE THEIR

16    OWN THEORY --

17              THE COURT:  UM-HUM.

18              MR. RESCH:  -- WHICH IS THAT SOMEONE DOESN'T EVEN

19    NEED TO READ IT, STRICT LIABILITY --

20              THE COURT:  UM-HUM.

21              MR. RESCH:  -- THAT IS NOT ALLOWED AFTER PROP 64,

22    YOUR HONOR, AND KWIKSET AND THE CASES AND YOUR OWN ORDER.

23              THE COURT:  UM-HUM.  I'M SORRY.  CAN I INTERRUPT YOU

24    ONE MINUTE?

25              MR. RESCH:  YES.
```

```
 1            THE COURT:  LET ME ASK MR. GORE, WHAT IS YOUR

 2    RESPONSE TO THE ARGUMENT THAT YOU ARE BASICALLY CIRCUMVENTING

 3    THE FACT THAT THE SHERMAN LAW HAS NO PRIVATE RIGHT OF ACTION BY

 4    JUST SAYING, "WELL, WE'RE GOING TO DRESS THIS UP IN UCL CLOTHES

 5    AND HAVE THIS PARADE AROUND AS A UCL CLAIM" WHEN IT REALLY IS

 6    A -- I MEAN, MR. BARRETT, WHO WAS HERE AT THE P.I. HEARING,

 7    KEPT SAYING, "THIS IS JUST A SHERMAN LAW VIOLATION."

 8            MR. GORE:  IT'S BOTH.  IT'S PLED IN THE ALTERNATIVE.

 9        THERE'S A DIFFERENCE BETWEEN CAUSATION AND RELIANCE.

10        MY ANSWER TO MR. RESCH IS IN RE: STEROID HORMONE

11    PRODUCTS --

12            THE COURT:  UM-HUM.

13            MR. GORE:  -- WHICH IS CLOSER TO OUR FACTS --

14            THE COURT:  OKAY.

15            MR. GORE:  -- THAN MEDRAZO.

16        IN THAT CASE, NUTRITION STORES LIKE GNC WERE DISTRIBUTING

17    OVER THE COUNTER BODY BUILDING SUPPLEMENTS THAT ILLEGALLY

18    CONTAINED ANABOLIC STEROIDS.  IT'S ILLEGAL TO SELL ANABOLIC

19    STEROIDS OVER THE COUNTER.

20        AND ONE OF THE DEFENDANT'S ARGUMENTS WAS THE BODY BUILDERS

21    AREN'T DECEIVED.  THEY'RE BUYING THESE PRODUCTS BECAUSE THEY

22    WANT THE STEROIDS.  THEY'RE TRYING TO BUILD MUSCLE.  THAT'S WHY

23    THESE PRODUCTS ARE SO POPULAR.

24        THE CALIFORNIA APPELLATE COURT, POST PROP 64, SAID, "NO, NO

25    REASONABLE CONSUMER WOULD KNOWINGLY COMMIT AN UNLAWFUL ACT."
```

```
1          IT WAS UNLAWFUL TO SELL THESE SUPPLEMENTS, WHETHER OR NOT

2     THERE WAS ANY DECEPTION OR RELIANCE, AND IT WAS UNLAWFUL

3     BECAUSE OF THE SHERMAN LAW.

4          THE COURT:  UM-HUM.

5          MR. GORE:  YOU CAN'T -- THE CAUSATION IN OUR CASE HAD

6     NOTHING TO DO WITH THE DECEPTION.  THE CAUSATION IS IF YOU PUT

7     MISBRANDED FOOD ON THE SHELF AND OFFER IT FOR SALE TO

8     CONSUMERS, THAT SATISFIES -- AND THEY COME IN AND THEY BUY IT

9     AND THUS INCUR AN ECONOMIC INJURY UNDER KWIKSET, SATISFYING

10    PROP 64, THAT IS -- THAT SUPPORTS OUR UNLAWFUL CLAIM UNDER THE

11    UCL, WHETHER OR NOT THEY READ THE LABEL.

12         WE DO PLEAD -- PART OF THE PROBLEM IS THAT WE PLED OUR

13    CLAIMS IN THE ALTERNATIVE AND THEY HAVE BECOME WOVEN, BECAUSE

14    WE'RE PLEADING A NEW TYPE OF CASE THAT -- MOST OF THE FOOD

15    LABELING CASES THAT CAME BEFORE OUR GROUP SIMPLY PLED CONSUMER

16    DECEPTION.  THAT'S WHY IT SEEMS IT HAS BEEN DIFFICULT FOR THE

17    COURTS TO SEPARATE THE TWO.

18       BUT YOU HAVE --

19         THE COURT:  WELL, I MEAN, FRANKLY, YOUR COMPLAINTS

20    HAVE NOT BEEN VERY CLEAR.

21         MR. GORE:  WE'RE --

22         THE COURT:  AND I'LL SAY ON BOTH SIDES, THERE'S BEEN

23    A LOT OF SORT OF KITCHEN SINK APPROACH, BOTH TO THE PLAINTIFFS

24    IN THROWING EVERYTHING UP AGAINST THE WALL, AND THEN THE

25    DEFENDANTS ON THE MOTIONS TO DISMISS THROWING UP EVERYTHING
```

```
1    AGAINST THE WALL.

2              MR. CLIFFORD:  WE AGREE.

3              THE COURT:  I THINK IT'S ON BOTH SIDES.

4              MR. CLIFFORD:  THE SENIOR PEOPLE IN OUR GROUP AGREE,

5    YOUR HONOR.

6              THE COURT:  IT'S JUST MADE IT REALLY, REALLY HARD, I

7    THINK, ON THE COURTS BECAUSE YOU'RE RAISING IMPORTANT AND

8    COMPLEX ISSUES, BUT IT'S HARD WHEN YOU GET THIS KITCHEN SINK

9    APPROACH ALL THE TIME.

10       LET ME ASK, WHAT IS THE SIGNIFICANCE OF THIS CASE?  WHY IS

11   THIS CASE BEING LITIGATED THE WAY IT IS?  WHY IS THIS CASE THE

12   ONLY OF THE, YOU KNOW, 36 -- WHAT NUMBER ARE YOU AT IN THE

13   DISTRICT RIGHT NOW?  36?

14             MR. GORE:  THIRTY-SIX.

15             THE COURT:  OKAY.  IT'S THE ONLY ONE THAT'S MENTIONED

16   IN THE EAS NEWSLETTER.  WHY -- IS THIS ONE OF THE EARLIER ECJ

17   LABELING CASES, OR WHAT'S GOING ON HERE?  IS THERE MORE MONEY

18   AT STAKE HERE THAN IN OTHER ECJ CASES?  I --

19             MR. GORE:  WELL, THIS WAS ONE OF THE EARLIER CASES.

20             THE COURT:  I SEE.

21             MR. GORE:  AND THIS CASE WAS BEING LITIGATED EXACTLY

22   THE SAME AS ALL THE OTHERS UNTIL THE D.Q. MOTION.

23             THE COURT:  WELL, NO.  YOU FILED AN INJUNCTION

24   REQUEST HERE AND YOU DIDN'T IN THE OTHER 35.

25             MR. GORE:  THAT'S TRUE.
```

```
1            THE COURT:  SO -- OKAY.

2            MR. GORE:  AND PART OF THAT IS OUR VIEW, SUPPORTED BY

3    OUR SUGAR EXPERT, DR. LUSTIG, OF THE IMPORTANT -- THE PUBLIC

4    HEALTH IMPORTANCE OF SUGAR HIDDEN IN PACKAGED FOOD.

5        WE HAVE --

6            THE COURT:  I UNDERSTAND.  BUT THERE ARE MANY OTHER

7    CASES THAT HAVE ECJ CLAIMS, SO PRESUMABLY THE PUBLIC INTEREST

8    WOULD HAVE BEEN SIMILAR OR THE SAME IN THOSE OTHER CASES.

9        I DON'T WANT TO REHASH THE P.I.  I'M HOPING -- WE OBVIOUSLY

10   CAN'T MOVE PAST THE MOTION TO DISMISS, BUT I'M HOPING WE CAN AT

11   LEAST PROCEED ON --

12           MR. CLIFFORD:  I MEAN, YOUR HONOR --

13           THE COURT:  LET ME ASK, HAVE ANY OF THE CASES -- SO

14   MANY OF THESE CASES RAISE THE SAME ISSUES WITH REGARD TO

15   EXPRESS PREEMPTION, PRIMARY JURISDICTION AND SOME OF THE OTHER

16   DEFENSES.

17       HAVE ANY OF THEM BEEN APPEALED YET?

18           MR. RESCH:  NOT YET, YOUR HONOR.

19           MR. GORE:  NO.

20           THE COURT:  WHAT IS EVERYONE WAITING FOR?  I THOUGHT

21   I WAS ON THE KIND OF LATER WAVE AND, YOU KNOW, SOME OF THE

22   OTHER JUDGES, HAMILTON, CHEN, DAVILA WERE MUCH FURTHER ALONG.

23       WHAT'S THE STATUS OF -- YOU KNOW, WHAT'S GETTING TEE'D UP?

24           MR. RESCH:  WELL, I THINK, YOUR HONOR, THE

25   JUDGE ROGERS DECISION IN THE HOOD CASE WHICH WE CITE WHERE SHE
```

```
 1        RELIES ON PRIMARY JURISDICTION FOR THE ECJ --

 2              THE COURT:  UM-HUM.

 3              MR. RESCH:  -- I THINK THAT THAT MAY BE ONE OF, ONE

 4        OF THE ONES THAT ACTUALLY WAS DECIDED IN ITS ENTIRETY ON THE

 5        MOTION TO DISMISS --

 6              THE COURT:  OKAY.

 7              MR. RESCH:  -- WHEREAS OTHERS ARE GETTING LEAVE TO

 8        AMEND.  WE DON'T KNOW WHAT THE --

 9              THE COURT:  I SEE.

10              MR. RESCH:  -- PLAN IS WITH THAT.

11           SO I THINK THAT HAS SOMETHING TO DO WITH IT.

12           WE'VE ALSO INDICATED, YOUR HONOR, THAT --

13              THE COURT:  BUT WHAT ABOUT ON YOUR -- I'M SORRY TO

14        INTERRUPT YOU.  WHAT ABOUT ON YOUR OTHER PREEMPTION ARGUMENTS?

15        JUDGE ROGERS IS THE ONLY ONE WHO HAS BASICALLY GRANTED A MOTION

16        TO DISMISS WITH PREJUDICE?

17              MR. CLIFFORD:  THAT WAS PRIMARY JURISDICTION.

18              MR. RESCH:  THAT WAS PRIMARY --

19              THE COURT:  I KNOW.  I UNDERSTAND.  BUT WHAT ABOUT

20        YOUR OTHER PREEMPTION ARGUMENTS?

21              MR. RESCH:  THEY'VE BEEN MIXED, YOUR HONOR.  THEY'VE

22        BEEN MIXED.  SO SOMETIMES COURTS WILL FIND CERTAIN CLAIMS

23        EXPRESSLY PREEMPTED.  SOMETIMES NOT.

24              THE COURT:  UM-HUM.

25              MR. RESCH:  ON BUCKMAN AND PEREZ, THERE WAS A SERIES
```

```
 1        OF MOTIONS THAT RELIED ON POM.

 2               THE COURT:  UM-HUM.

 3               MR. RESCH:  I DON'T KNOW IF YOU REMEMBER, WHEN I WAS

 4        HERE ON THE MOTION TO DISMISS, I SAID SOMETHING THAT'S

 5        HAPPENING IS THERE WAS AN OVERRELIANCE ON THE POM WONDERFUL

 6        CASE.

 7           WE WERE LOOKING AT STENGEL AND BUCKMAN AND THEN PEREZ CAME

 8        OUT AND NOW COURTS ARE STARTING TO GRAPPLE WITH THAT.  I THINK

 9        JUDGE ROGERS MIGHT BE GRAPPLING WITH THAT ISSUE, TOO.

10               THE COURT:  UM-HUM.

11               MR. RESCH:  BUT WE HAVEN'T SEEN A CASE THAT HAS

12        CONCLUDED, BUT FOR A 1292(B), WHICH WE REFERENCE IN THE MOTION

13        FOR RECONSIDERATION --

14               THE COURT:  SURE.

15               MR. RESCH:  -- THERE WOULDN'T BE A NATURAL PLACE TO

16        GO UP.

17           NOW, WE HAVE DISCUSSED THAT HERE.

18               THE COURT:  UH-HUH.

19               MR. RESCH:  BUT OUR THOUGHT, YOUR HONOR, IS THAT THE

20        RECONSIDERATION MOTION REALLY OUGHT TO BE HEARD AND DECIDED,

21        AND TAKING FROM THE INITIAL COMMENTS, WE'D LIKE THE OPPORTUNITY

22        TO BRIEF THAT AND HAVE A HEARING ON IT BECAUSE WE THINK IT'S

23        IMPORTANT.

24           BUT -- AND AT THAT POINT, WE ARE PREPARED TO FILE, BUT I

25        THINK THAT THAT POINT IS -- IT MAKES MORE SENSE BECAUSE IF YOUR
```

```
 1    HONOR WERE TO BE INCLINED TO RECONSIDER AND CONCLUDE THE CASE,
 2    EITHER BASED ON THE PLAUSIBILITY, REASONABLE CONSUMER
 3    PREEMPTION, OR ON THE PRIMARY JURISDICTION THIS TIME AROUND,
 4    THAT WOULD BE THE FINAL -- COULD BE, DEPENDING ON HOW YOUR
 5    HONOR RULED, COULD BE A FINAL ORDER AT THAT POINT THAT COULD GO
 6    UP.
 7         THE COURT:  UM-HUM.  WELL, LET ME ASK, HOW WOULD --
 8    HOW SHOULD WE PROCEED HERE?  OBVIOUSLY GOING THROUGH TWO ROUNDS
 9    OF MOTIONS FOR RECONSIDERATION IS NOT IDEAL.
10      COULD WE -- WELL, LET ME HEAR FROM MR. CLIFFORD.  SO
11    YOU'RE -- IF YOU'RE GIVEN LEAVE TO AMEND, ARE YOU GOING TO DROP
12    THE ALL NATURAL AND NO SUGAR ADDED CLAIMS AND JUST GO WITH THE
13    ECJ CLAIMS?
14         MR. CLIFFORD:  I BELIEVE THAT WE'RE GOING TO FOLLOW
15    YOUR -- TRY TO FOLLOW YOUR ORDER TO NARROW THE CLAIMS DOWN AND
16    THE BREADTH OF THEM.  I BELIEVE THE ANSWER TO THE QUESTION IS
17    YES.
18      I'M SORRY TO DEFER ON THAT BUT, YOU KNOW, WE DO HAVE A
19    GROUP OF LAWYERS WHO KNOW THIS STUFF WELL AND THEY'VE BEEN
20    DEBATING THESE ISSUES --
21         THE COURT:  UM-HUM.
22         MR. CLIFFORD:  -- EVER SINCE YOUR ORDER CAME OUT AND
23    THEIR MOTION WAS FILED.
24      WE DO VIEW YOUR ORDER, HOWEVER, AS AN OPPORTUNITY TO
25    SPECIFICALLY TEE UP THIS UNLAWFUL PRONG THING, BECAUSE YOU
```

```
 1          DO -- YOU DO GET INTO IT.

 2              THE COURT:  YOU MEAN -- YOU MEAN FOR APPEAL?

 3              MR. CLIFFORD:  WELL, TO EITHER GET YOU TO SEE OUR WAY

 4      ABOUT IT, WHICH WE THINK YOU SHOULD, OR TO SAY YOU'RE WRONG AND

 5      TAKE IT UP.

 6              THE COURT:  AND TAKE IT UP.

 7          WELL, LOOK, I'M NOT OPPOSED TO BEING THE CANARY IN THE COAL

 8      MINE WHO HAS TO GO UP FIRST.

 9          BUT MY PREFERENCE, AND I WANT TO TALK WITH YOU -- I'M

10      TRYING TO BE IN PROBLEM SOLVING MODE -- IS HOW CAN WE TEE UP

11      THE ISSUES THAT THE CLARIFICATION FROM THE NINTH CIRCUIT WOULD

12      BE MOST HELPFUL FOR THE DISTRICT COURT JUDGES?

13          BECAUSE I HAVE TO SAY, SO MANY OF THE ISSUES YOU'RE

14      RAISING, THE LAW IS NOT PERFECTLY CLEAR.

15              MR. CLIFFORD:  RIGHT.

16              THE COURT:  AND, YOU KNOW, WE HAVE SO MANY OF THESE,

17      I THINK GUIDANCE WOULD BE HELPFUL.

18              MR. GORE:  WELL, OUR VIEW --

19              MR. RESCH:  YOUR HONOR --

20              THE COURT:  WHAT ISSUES WOULD WE TEE UP?  I THINK,

21      YOU KNOW, THE PRIMARY JURISDICTION, WHATEVER -- PRIMARY

22      JURISDICTION, WHETHER IT'S, YOU KNOW, BUCKMAN, STENGEL, PEREZ,

23      WHETHER IT'S YOUR STRICT LIABILITY.  I MEAN --

24              MR. RESCH:  YES, YOUR HONOR.

25              THE COURT:  -- I THINK SOME GUIDANCE WOULD GENERALLY
```

1    BE HELPFUL.

2              MR. RESCH:  HERE'S WHAT I THINK.

3              MR. GORE:  OUR ANSWER WOULD BE, WHAT WE --

4              MR. RESCH:  I'M SORRY.  HERE'S WHAT I WOULD SUGGEST,

5    YOUR HONOR --

6              THE COURT:  OKAY.  ALL RIGHT.

7              MR. RESCH:  -- IS THAT WE -- IF WE'RE GOING TO GO UP,

8    WE THINK THAT THE ORDER OUGHT TO BE -- TO AT LEAST ADDRESS SOME

9    OF THESE ISSUES WE RAISE IN THE RECONSIDERATION MOTION, AND THE

10   REASON, YOUR HONOR, IS THAT THERE ARE ISSUES IN THERE IN TERMS

11   OF THIS NEW THEORY THAT IF WE'RE GOING TO GO UP, WE MIGHT AS

12   WELL KNOW WHAT THE CASE IS ABOUT.

13             THE COURT:  WELL, THAT'S WHY I'M WONDERING IF WE

14   SHOULD LET THE PLAINTIFFS AMEND, MAKE A MORE NARROWLY FOCUSSED

15   UNLAWFUL STRICT LIABILITY CLAIM; HAVE YOU, YOU KNOW --

16             MR. RESCH:  BUT THE THING IS, YOUR HONOR, THEY'VE

17   ALREADY DONE --

18             THE COURT:  -- DO PREEMPTION, PRIMARY JURISDICTION;

19   AND THEN --

20             MR. RESCH:  THEY'VE ALREADY --

21             THE COURT:  I HAVEN'T MADE A FINAL DECISION ON ANY OF

22   THIS.  I'M JUST TRYING TO THINK THROUGH HOW WE PROCEED AT THIS

23   POINT.

24        OR LET SOME OF THE OTHER CASES GO UP FIRST.  I DON'T SEE

25   WHY THIS ONE HAS TO BE FIRST.

```
1              MR. RESCH:  HERE'S MY THOUGHT, YOUR HONOR --

2              THE COURT:  YEAH.

3              MR. RESCH:  -- IS THAT THE ISSUE OF THE UNLAWFUL

4     ARGUMENT THAT WE'VE BEEN --

5              THE COURT:  HAS THAT COME UP IN ANY OF THE OTHER 35

6     CASES?

7              MR. RESCH:  IT HAS, YOUR HONOR.

8              THE COURT:  OKAY.

9              MR. RESCH:  AND IT'S BEEN REJECTED.

10             THE COURT:  OKAY.

11             MR. GORE:  WE DISAGREE WITH THAT.

12             MR. RESCH:  AND YOUR HONOR'S ORDER -- EXCUSE ME.

13        YOUR HONOR'S ORDER IS THE CLEAREST REJECTION WHERE IT

14     ADDRESSES IT HEAD ON.

15        AND MY POINT, YOUR HONOR, IS THAT THIS WAS -- IF YOU READ

16     THE MOTIONS TO DISMISS, THE MOTION TO DISMISS --

17             THE COURT:  YES.

18             MR. RESCH:  -- THIS IS AS BRIEFED AS ANY ISSUE IN THE

19     MOTION PAPERS.  YOUR HONOR CONSIDERED IT CAREFULLY AND ISSUED A

20     RULING.

21        CONTRAST THAT TO OUR MOTION FOR LEAVE FOR RECONSIDERATION

22     ON AN ISSUE THAT WAS NOT BRIEFED, A THEORY THAT WAS NOT

23     ALLEGED, AND APPARENTLY STILL IS NOT BEING ALLEGED.

24             THE COURT:  UM-HUM.

25             MR. RESCH:  IN OTHER WORDS, MR. CLIFFORD SAID, "THAT
```

```
 1      IS NOT OUR THEORY."

 2            SO WE RESPECTFULLY SAY THAT IF THAT IS NOT THEIR THEORY --

 3                  THE COURT:  UM-HUM.

 4                  MR. RESCH:  -- THEN THEY CAN'T KEEP GOING IN THIS

 5      CASE BASED UPON THAT THEORY.

 6            SO I GUESS MY POINT IS AMENDING AND THEN HAVING ANOTHER

 7      MOTION TO DISMISS TO ADDRESS AN ISSUE THAT THE PARTIES FULLY

 8      BRIEFED AND YOUR HONOR CONSIDERED AND RULED UPON --

 9                  THE COURT:  UM-HUM.

10                  MR. RESCH:  -- THAT PROCESS DOESN'T MAKE SENSE TO ME.

11            IN FACT, WE WOULD TAKE IT AS A GIVEN THAT, ABSENT A

12      RECONSIDERATION ORDER OF SOME SORT, AND I DON'T THINK THERE'S

13      ANY BASIS FOR IT, THAT YOUR HONOR'S ORDER WOULD STAND AND THAT

14      IF PLAINTIFFS TRIED TO REARGUE THE SAME THING WHEN YOUR ORDER

15      ADDRESSES IT, THAT WOULD NOT BE PROPER.

16                  THE COURT:  UM-HUM.

17                  MR. RESCH:  SO I -- MY SUGGESTION, YOUR HONOR, MY

18      PROPOSAL IS THAT --

19                  THE COURT:  UM-HUM.

20                  MR. RESCH:  -- WE SET A BRIEFING AND HEARING SCHEDULE

21      THAT'S CONVENIENT FOR THE COURT ON THE RECONSIDERATION MOTION,

22      IT'S A NEW THEORY THAT THEY SAY THEY'RE NOT EVEN PURSUING, AND

23      YOUR HONOR CAN DECIDE IT AT THAT POINT.

24            IF THERE'S ANYTHING LEFT TO PROCEED ON, THEN WE CAN SEE AT

25      THAT POINT WHETHER OR NOT WE GO FORWARD OR GO UP TO THE COURT
```

1    OF APPEAL ON ANYTHING.

2        BUT I THINK IT IS, RESPECTFULLY, NOT APPROPRIATE FOR

3    PLAINTIFFS TO ORALLY REQUEST LEAVE FOR RECONSIDERATION.

4        THE COURT:  OH YEAH.  NO, THAT'S NOT BEING GRANTED.

5        MR. RESCH:  AND THEN, ON AN ISSUE THAT WAS FULLY

6    BRIEFED, THAT DOESN'T MEET THE RULE ON WHAT YOU NEED FOR

7    RECONSIDERATION, YOUR HONOR RULED ON IT.

8        IN THE FACE OF A DIFFERENT ISSUE WHERE WE SAY, "LOOK, THERE

9    IS A NEW THEORY THAT WASN'T ALLEGED," MR. CLIFFORD TODAY TOLD

10   YOUR HONOR, "THAT IS NOT OUR THEORY."

11       THE COURT:  UM-HUM.

12       MR. RESCH:  AND WE HAVE THE PRIMARY JURISDICTION

13   RULING FROM JUDGE ROGERS.

14       SO I WOULD PROPOSE THAT WE SET A BRIEFING SCHEDULE IF

15   PLAINTIFFS WANT TO FILE A MOTION FOR LEAVE FOR RECONSIDERATION

16   ON ANY OTHER ISSUES, IF THEY FEEL THEY MEET THE LOCAL RULES TO

17   DO THAT, THEY CAN DO THAT AND YOUR HONOR CAN REVIEW IT AT THAT

18   TIME.

19       BUT I THINK THAT WHAT'S BEEN SHOWN TODAY IS CLEAR THAT OUR

20   MOTION FOR LEAVE FOR RECONSIDERATION RAISES SOME IMPORTANT

21   ISSUES THAT HAVE MERIT AND SHOULD BE RULED UPON BEFORE, YOU

22   KNOW, WE HAVE TO GO UP.  SO THAT'S MY PROPOSAL.

23       AND, AGAIN, IF PLAINTIFFS WANT TO FILE SOMETHING, THEY CAN

24   FILE SOMETHING AND YOUR HONOR WILL TAKE A LOOK TO SEE IF IT'S

25   ALREADY BEEN ADDRESSED AND WHETHER OR NOT IT FALLS WITHIN THE

```
1     LOCAL RULE REQUIREMENTS.

2              THE COURT:  UM-HUM.  WELL --

3              MR. GORE:  YOUR HONOR?

4              THE COURT:  YES.

5              MR. GORE:  WE HAVE OUR OWN MOTION FOR LEAVE.

6              THE COURT:  AND WHAT IS THE BASIS?  I MEAN, I'LL LET

7     YOU BRIEF IT, BUT JUST CAN YOU GIVE ME SOME SENSE OF WHAT IT

8     IS?

9              MR. GORE:  WELL, THE -- IN THE COURT'S ORDER ON

10    DEFENDANT'S MOTION TO DISMISS, THERE'S SOMETHING FOR EVERYONE.

11    SOME ISSUES WENT IN FAVOR OF DEFENDANT, SOME ISSUES WENT IN

12    FAVOR OF PLAINTIFFS.

13       WE DISAGREE WITH THE COURT'S CONCLUSIONS CONCERNING,

14    PRIMARILY, OUR CLAIM UNDER THE UNLAWFUL PRONG.  WE DISAGREE

15    WITH THE COURT'S APPARENT SUGGESTION THAT IT IS NOT ENOUGH THAT

16    PLAINTIFFS DIDN'T KNOW WHAT ECJ WAS, THAT THEY -- WE REJECT --

17    WE RESPECTFULLY DISAGREE WITH THE COURT'S REASONABLE CONSUMER

18    ANALYSIS, PARTICULARLY CONCERNING THE USE OF THE WORD "CANE,"

19    THAT THAT SOMEHOW CLUES IN THE REASONABLE CONSUMER.

20       THERE'S BEEN NO SHOWING IN THIS CASE THAT THE REASONABLE

21    CONSUMER RECOGNIZES, YOU KNOW, THE WORDS "CANE JUICE" AS SUGAR.

22       WE'D LIKE TO -- WE AGREE THAT DEFENDANT'S MOTION RAISES

23    SOME IMPORTANT ISSUES.  WE'D LIKE TO CLARIFY THE RECORD.

24              THE COURT:  CAN I GET A STIPULATION?  ON DEFENDANT'S

25    MOTION FOR LEAVE, DO YOU JUST STIPULATE TO IT?
```

```
1            MR. GORE:  SURE.

2            THE COURT:  OKAY.  SO THEN YOU'LL RE-BRIEF THE TWO

3     ISSUES OF THE ECJ THEORY ABOUT ECJ BEING A HEALTHIER FORM OF

4     SUGAR, AS WELL AS THE PRIMARY JURISDICTION ISSUE.

5         HOW MUCH OF THE PRIMARY JURISDICTION ISSUE DEPENDS UPON

6     THIS PARTICULAR ECJ THEORY?  OR IS IT REALLY JUST THAT

7     JUDGE ROGERS ISSUED A DECISION THAT CAME OUT THE OTHER WAY ON

8     THIS QUESTION?

9            MR. RESCH:  IT'S SLIGHTLY MORE THAN THAT.

10            THE COURT:  OKAY.

11            MR. RESCH:  BUT IT CERTAINLY IS SIGNIFICANT -- IT'S

12    SUBSTANTIALLY BASED ON JUDGE ROGERS' DECISION AND ASKING YOUR

13    HONOR TO TAKE A LOOK AT THAT.

14            THE COURT:  OKAY.  BUT DOES IT DEPEND ON -- AND I'M

15    SORRY TO INTERRUPT YOU.  DOES IT DEPEND ON THE FIRST -- LIKE,

16    YOU KNOW, YOUR MOTION FOR LEAVE HAS TWO PARTS.

17            MR. RESCH:  RIGHT.

18            THE COURT:  DOES THE SECOND PART, THE PRIMARY

19    JURISDICTION PART, IN ANY WAY DEPEND ON WHAT THE THEORY IS FOR

20    THE ECJ CLAIM?  OR NOT?

21            MR. RESCH:  I WOULD SAY THAT IT DOESN'T NECESSARILY

22    DEPEND UPON IT, BUT IT IS INFORMED BY IT.

23            THE COURT:  OKAY.

24            MR. RESCH:  IN OTHER WORDS, IF THAT'S THE THEORY

25    THAT'S GOING TO GO FORWARD, THEN I THINK THAT WE WOULD WANT TO
```

```
 1        ADDRESS PRIMARY JURISDICTION AGAINST THAT THEORY, WHICH FOR THE

 2        FIRST SET OF REASONS WE DON'T THINK SHOULD GO FORWARD.

 3                  THE COURT:  UM-HUM.

 4                  MR. RESCH:  BUT I GUESS -- LOOK, THE PRIMARY BASIS

 5        FOR THE PRIMARY JURISDICTION ARGUMENT --

 6                  THE COURT:  UM-HUM.

 7                  MR. RESCH:  -- IS THAT THE FDA HAS RECEIVED COMMENTS

 8        ON A PENDING, NON-BINDING GUIDANCE.

 9                  THE COURT:  UM-HUM.

10                  MR. RESCH:  AND WE THINK THAT IN THAT SITUATION, AS

11        JUDGE ROGERS FOUND, IT DOESN'T MAKE SENSE TO HAVE THE ARGUMENT

12        HERE.

13                  THE COURT:  UM-HUM.

14                  MR. RESCH:  THE REASON THAT I SAY IT'S INFORMED BY

15        THE FIRST ARGUMENT, YOUR HONOR, ON THE NEW THEORY AND IT'S NOT

16        JUST JUDGE ROGERS --

17                  THE COURT:  UM-HUM.

18                  MR. RESCH:  -- HERE'S WHY, BECAUSE PART OF WHAT

19        HAPPENED WHEN THE NEW THEORY AROSE ABOUT A HEALTHIER FORM OF

20        SUGAR WAS THIS NOTION OF "JUICE" MEANING HEALTHY, OR COULD BE

21        INTERPRETED AS HEALTHY, IT COULD BE INTERPRETED THAT WAY, WHICH

22        WAS NEVER ALLEGED.  BUT THAT STARTS TO STEP INTO THE EXPRESS

23        PREEMPTION ARGUMENT.

24         AND SO WHAT WE WOULD DO IS TRY TO SHOW YOUR HONOR THAT ONE

25        OF THE REASONS THIS COURT DOESN'T MAKE SENSE AS THE FORUM TO
```

```
 1    TRY TO ADJUDICATE THE EVAPORATED CANE JUICE CLAIM, UNDER THAT

 2    THEORY, IS EVERY TIME IT SHIFTS THEORIES, YOU RUN INTO A

 3    DIFFERENT FDA REGULATION THAT, THAT MAY BE RELEVANT.

 4         AND SO THAT'S -- WE'RE TRYING TO DEMONSTRATE, THROUGH THE

 5    NEW THEORY, EXACTLY WHY PRIMARY JURISDICTION HAS SUCH FORCE

 6    HERE.

 7              THE COURT:  OKAY.

 8              MR. RESCH:  BECAUSE AS YOU START TO TRY TO FIND

 9    THEORIES, IT STARTS TO RUN INTO OTHER FDA REGULATIONS AND

10    THAT'S WHY IT REALLY OUGHT TO BE LEFT TO THE FDA TO FIGURE OUT,

11    IS THIS THE COMMON AND USUAL NAME?  WHAT DO THEY FEEL ABOUT IT

12    HAVING AFTER RECEIVED COMMENTS?  AND WHAT DOES THE INDUSTRY DO

13    IF YOU HAVE ONE JUDGE IN CALIFORNIA SAYING "IT SHOULD GO TO THE

14    FDA," AND ANOTHER JUDGE SAYING "WE'RE GOING TO ADJUDICATE IT

15    HERE IN COURT."

16              THE COURT:  UM-HUM.

17              MR. RESCH:  I THINK THAT THOSE ARE VERY RELEVANT

18    CONSIDERATIONS --

19              THE COURT:  UM-HUM.

20              MR. RESCH:  -- FROM A PRACTICAL STANDPOINT.

21         I MEAN, THESE ARE REAL PRODUCTS, REAL COMPANIES OUT THERE

22    THAT ARE TRYING TO NAVIGATE WHAT'S GOING ON.

23              THE COURT:  UM-HUM.

24              MR. GORE:  YOUR HONOR, 60 SECONDS?

25              MR. RESCH:  AND I THINK -- EXCUSE ME.  I'LL WRAP UP.
```

```
 1          BUT I THINK THAT THAT'S WHY IT'S INFORMED BY THE FIRST,

 2     BECAUSE AS THE EVAPORATED CANE JUICE THEORY CHANGES, WE NEED TO

 3     SAY TO YOUR HONOR THAT THIS IS THE VERY REASON WHY THE FDA

 4     OUGHT TO BE DOING THIS.

 5               MR. GORE:  YOUR HONOR, OUR --

 6               THE COURT:  ALL RIGHT.  SO THE PARTIES STIPULATE THAT

 7     THE DEFENDANT'S MOTION FOR LEAVE FOR RECONSIDERATION SHOULD BE

 8     GRANTED.

 9               MR. RESCH:  YES, YOUR HONOR.

10               MR. GORE:  YES, YOUR HONOR.

11               THE COURT:  OKAY.  ALL RIGHT.

12               MR. GORE:  YOUR HONOR, OUR ECJ THEORY HASN'T CHANGED.

13     IT IS ALLEGED IN AN IDENTICAL FASHION IN EVERY ONE OF OUR

14     CASES, AND JUDGE ROGERS IS THE ONLY JUDGE IN ANY OF OUR CASES

15     TO HAVE DISCUSSED OUR ECJ CLAIMS ON PRIMARY JURISDICTION

16     GROUNDS.

17          EVERY OTHER JUDGE WHO CONSIDERED OUR ECJ CLAIMS ALLOWED

18     THEM TO GO FORWARD, INCLUDING JUDGE RONALD WHYTE DOWN THE HALL.

19          WE RESPECTFULLY DISAGREE --

20               THE COURT:  WHO'S RULED ON -- I'M SORRY TO INTERRUPT

21     YOU.  WHO'S RULED ON ECJ, OTHER THAN JUDGE WHYTE?  I BELIEVE

22     JUDGE GREWAL AS WELL.  AND JUDGE ROGERS?

23               MR. GORE:  YES.

24               THE COURT:  IS IT JUST THE FOUR OF US?

25               MR. CLIFFORD:  DID JUDGE DAVILA?
```

```
 1              MR. GORE:  I'M NOT CERTAIN WHETHER JUDGE DAVILA HAS

 2    RULED ON ECJ.

 3              THE COURT:  OKAY.

 4              MR. GORE:  I'M NOT CERTAIN ON THAT.

 5              THE COURT:  ALL RIGHT.  SO IT'S JUST WHYTE, GREWAL,

 6    ROGERS, AND MYSELF?

 7              MR. CLIFFORD:  PROBABLY.  THAT'S OUR COUNT.  I

 8    THOUGHT POSSIBLY JUDGE DAVILA DID, BUT I MAY BE MISTAKEN.

 9              THE COURT:  OKAY.  ALL RIGHT.

10       LET ME HEAR FROM THE PLAINTIFFS.  WHEN ARE YOU GOING TO

11    FILE YOUR -- YOU KNOW, AN ORDER WAS NOT SUPPOSED TO GENERATE,

12    YOU KNOW, THIS MANY MOTIONS, BUT --

13              MR. RESCH:  YOUR HONOR, ON OUR MOTION, JUST TO

14    CLARIFY, SO DO WE HAVE THE BRIEFING AND HEARING SCHEDULE

15    PROPOSED?  OR DOES YOUR HONOR WANT TO SET ONE THAT'S CONVENIENT

16    FOR THE COURT?

17              THE COURT:  WELL, I KIND OF -- I'M SORRY TO INTERRUPT

18    YOU.  I KIND OF WANT TO WAIT AND SEE IF IT'S GOING TO -- IF --

19    I KIND OF WANT TO WAIT AND SEE WHAT THE PLAINTIFFS ARE GOING TO

20    MOVE FOR LEAVE ON BECAUSE IF I AM GOING TO GRANT THAT, THEN I

21    THINK IT MAKES SENSE TO HAVE A CONSOLIDATED BRIEFING AND

22    HEARING.

23       IF I'M NOT, THEN WE'LL JUST SCHEDULE YOURS.

24              MR. RESCH:  THAT MAKES SENSE, YOUR HONOR.

25              THE COURT:  YEAH.  SO WHEN CAN YOU -- AND I THINK --
```

```
1     PARDON ME -- IT WOULD BE HELPFUL TO HAVE A RESPONSE TO YOUR

2     MOTION FOR LEAVE.

3          SO CAN WE SET A DATE FOR YOU TO FILE YOUR MOTION FOR LEAVE,

4     AND THEN FOR MR. RESCH TO RESPOND TO THAT?

5          AND CAN WE PUT SOME PAGE LIMITS ON THIS JUST BECAUSE OF

6     LIMITED RESOURCES ON IT?

7               MR. GORE:  MAY WE HAVE UNTIL NEXT WEDNESDAY TO FILE

8     OUR MOTION?

9               THE COURT:  WHAT'S YOUR VIEW ON THAT?

10              MR. RESCH:  I THINK THAT'S FINE, YOUR HONOR.

11              THE COURT:  OKAY.  SO THEN THE PLAINTIFFS ARE GOING

12    TO FILE YOUR MOTION FOR LEAVE ON -- WHAT IS THAT, THE 31ST?

13              MR. GORE:  YES.

14              MR. CLIFFORD:  THE 31ST.

15              THE COURT:  OKAY.  THEN MR. RESCH, WHEN CAN YOU --

16         AND CAN WE SAY, SINCE THEY DID THEIRS IN SEVEN PAGES, CAN

17    WE SAY YOURS WILL BE SEVEN?

18              MR. CLIFFORD:  YES, OF COURSE.

19              MR. GORE:  OKAY.

20              THE COURT:  ALL RIGHT.  OKAY.  WHAT -- WHAT --

21              MR. RESCH:  ONE WEEK, YOUR HONOR?

22              THE COURT:  OKAY.  SO THAT WOULD BE AUGUST 7TH.

23              MR. RESCH:  YES.  AND SEVEN PAGES AS WELL, YOUR

24    HONOR?

25              THE COURT:  SEVEN PAGES AS WELL.
```

```
 1              I DON'T THINK I NEED A REPLY ON THIS.  OKAY?

 2                   MR. RESCH:  AGREED.

 3                   THE COURT:  ALL RIGHT.  I THINK --

 4                   MR. RESCH:  ONE THING I WANTED TO CONFIRM, YOUR

 5      HONOR, JUST FOR THE RECORD --

 6                   THE COURT:  YES.

 7                   MR. RESCH:  -- SO WE'RE ALL ON THE SAME PAGE.

 8                   THE COURT:  YES.

 9                   MR. RESCH:  1292(B) DOES HAVE A TIMELINESS COMPONENT

10      TO IT.

11                   THE COURT:  OKAY.

12                   MR. RESCH:  NOT A SPECIFIC DEADLINE.

13                   THE COURT:  OKAY.

14                   MR. RESCH:  BUT I WANTED TO MAKE SURE THAT WE

15      COLLECTIVELY ARE ALL ON THE SAME PAGE THAT WHILE WE'RE DOING

16      THIS, THERE'S NO SUGGESTION THAT SOMEHOW WE SHOULD BE MOVING

17      UNDER 1292(B), THAT EVERYONE AGREES IT MAKES SENSE TO HAVE THIS

18      RESOLVED.

19                   MR. GORE:  YES, ABSOLUTELY.

20                   THE COURT:  OKAY.  CAN YOU ALL FILE A STIPULATION TO

21      THAT EFFECT?

22                   MR. GORE:  WE WILL.

23                   MR. RESCH:  YES, YOUR HONOR.

24                   THE COURT:  OKAY.  WHEN CAN YOU DO THAT?

25                   MR. GORE:  MONDAY?
```

```
 1              THE COURT:  THAT'S FINE.  THAT WOULD BE JULY 29TH.
 2         OKAY.  SO LET ME -- JUST SO I UNDERSTAND FOR CASE
 3    MANAGEMENT, SO WE'RE GOING TO HAVE THE PLAINTIFFS' MOTION FOR
 4    LEAVE, OPPOSITION, AND THEN I'LL MAKE A DECISION ON THAT; AND
 5    THEN WE'LL NEED TO SET A BRIEFING SCHEDULE BECAUSE THE
 6    DEFENDANT'S MOTION FOR RECONSIDERATION IS GOING FORWARD AND
 7    WE'LL NEED TO SET A HEARING FOR THAT.
 8         NOW, AFTER THE RULING COMES OUT ON THAT MOTION, THEN AT
 9    THAT POINT ARE YOU GOING TO FILE YOUR 1292?
10              MR. RESCH:  DEPENDS, YOUR HONOR.  IF YOUR HONOR'S
11    ORDER ON RECONSIDERATION RESOLVES THE CASE, WE MAY NOT NEED A
12    1292.
13              THE COURT:  AND THEN THEY MAY WANT IT.
14              MR. RESCH:  THEY MIGHT WANT TO APPEAL.
15              THE COURT:  THEY MAY WANT TO APPEAL IT, YEAH.
16              MR. RESCH:  BUT IT WOULD JUST BE APPEALABLE AT THAT
17    POINT.  IN OTHER WORDS --
18              THE COURT:  RIGHT.
19              MR. RESCH:  -- I THINK WE NEED TO WAIT TO SEE EXACTLY
20    WHAT HAPPENS ON THE RECONSIDERATION MOTION.
21              THE COURT:  ALL RIGHT.  THEN I ASSUME -- I'M JUST
22    THINKING FOR SCHEDULING PURPOSES, THEN AFTER -- IF IT'S NOT
23    DISPOSITIVE OF THE CASE AND THUS MAKE IT APPEALABLE AND IT
24    TURNS OUT THAT IT'S MORE OF A MIXED RULING, THEN YOU'LL DO YOUR
25    1292 AND THEN WE CAN DECIDE THAT, WHETHER IT GOES UP OR NOT.
```

```
 1              MR. RESCH:  YES.

 2              THE COURT:  ALL RIGHT.  AND THEN IN THE INTERIM, WHO

 3     KNOWS.  I MEAN, I ASSUME SOME OF THESE ISSUES MUST STILL BE

 4     PENDING WITH SOME OF THE OTHER JUDGES ON OUR BENCH.

 5              MR. GORE:  THEY ARE.

 6              THE COURT:  OKAY.

 7              MR. GORE:  THEY ARE.  WE HAVE A NUMBER OF CASES IN

 8     VARIOUS STATES OF ADVANCEMENT.

 9              THE COURT:  OKAY.

10              MR. RESCH:  YOUR HONOR, ON THAT POINT, YOU KNOW,

11     DECISIONS ARE ISSUED, LIKE JUDGE ROGERS' DECISION --

12              THE COURT:  UM-HUM.

13              MR. RESCH:  -- AND I THINK BOTH PARTIES SUBMIT THEM,

14     STATEMENTS OF RECENT DECISIONS.

15              THE COURT:  UM-HUM.

16              MR. RESCH:  IS THAT THE WAY YOU'D LIKE US TO PROCEED

17     IN -- AS THESE MOTIONS ARE PENDING IN TERMS OF OUR

18     RECONSIDERATION MOTION, JUST CONTINUING TO FILE THEM IN THAT

19     WAY TO THE EXTENT THAT THEY COME OUT AFTER THE RECONSIDERATION

20     MOTION IS BRIEFED, FOR EXAMPLE?

21              THE COURT:  I THINK IT'S STILL HELPFUL FOR US TO

22     SEE --

23              MR. RESCH:  OKAY.

24              THE COURT:  -- HOW OTHER JUDGES ARE COMING OUT.  I

25     MEAN, JUDGE ROGERS' DECISION CAME OUT THE SAME DAY AS OURS, SO
```

```
1    FOR SOME OF THESE WE JUST MIGHT NOT BE ABLE TO CAPTURE, YOU

2    KNOW, ALL OF THE DIFFERENT VIEWPOINTS.

3        BUT IT'S HARD TO KEEP TRACK OF ALL THESE, SO IT IS HELPFUL

4    FOR US JUST TO KNOW.

5        GRANTED, YOU KNOW, IF WE WAIT FOR EVERY RULING FROM EVERY

6    JUDGE IN OUR COURT, WE'LL NEVER BE ABLE TO GIVE YOU AN ORDER,

7    SO AT SOME POINT WE'RE JUST GOING TO HAVE TO, YOU KNOW, CUT OUR

8    LOSSES AND MOVE FORWARD --

9            MR. RESCH:  YES, YOUR HONOR.

10           THE COURT:  -- SO THAT YOU CAN MOVE FORWARD.

11           MR. RESCH:  YES, YOUR HONOR.

12           THE COURT:  OKAY.  NOW, WE STILL HAVE A

13   DISQUALIFICATION MOTION, BUT I APPRECIATE YOU ALL -- NOW,

14   SHOULD WE -- IN TERMS OF HOW TO PROCEED, AFTER I SEE THE

15   PLAINTIFFS' MOTION FOR LEAVE, DO YOU ALL WANT TO THEN JUST GET

16   A HEARING DATE AND STIPULATE TO A BRIEFING SCHEDULE AMONGST

17   YOURSELVES?

18           MR. GORE:  THAT'S FINE WITH US.

19           THE COURT:  HOW WOULD YOU LIKE TO PROCEED ON THAT?

20           MR. GORE:  YES.

21           MR. RESCH:  THAT'S FINE, YOUR HONOR.

22           THE COURT:  OKAY.

23           MR. RESCH:  SO I GUESS WHAT YOU'RE SAYING IS THAT

24   AFTER YOU DECIDE WHETHER PLAINTIFFS WOULD BE GIVEN LEAVE, THEN

25   YOU'LL ISSUE AN ORDER SETTING A HEARING DATE ON AT LEAST OUR
```

```
 1        MOTION?

 2                THE COURT:  YES.

 3                MR. RESCH:  AND THEN AFTER THAT, WE WOULD AGREE ON A

 4        BRIEFING SCHEDULE LEADING UP TO THAT.

 5                THE COURT:  NOW, I MEAN, YOU ALL RAISE VERY COMPLEX

 6        ISSUES.  I WOULD LIKE AT LEAST A MINIMUM OF THREE WEEKS WITH

 7        THE REPLY BRIEF, BUT BEYOND THAT, HOW YOU WANT TO SCHEDULE THE

 8        TIMING BETWEEN THE FILING OF THE OPENING BRIEF, THE OPPOSITION,

 9        AND THE REPLY, THAT'S UP TO YOU.

10                MR. RESCH:  OKAY.

11                MR. GORE:  DID WE UNDERSTAND THE COURT CORRECTLY THAT

12        IF WE ARE GIVEN LEAVE TO MOVE FOR RECONSIDERATION, THAT THE

13        COURT IS INTERESTED IN A COMBINED --

14                THE COURT:  SOME CONSOLIDATING OF IT.

15                MR. GORE:  YEAH.

16                THE COURT:  I JUST DON'T THINK, WITH OUR LIMITED

17        RESOURCES, THAT WE COULD HANDLE, YOU KNOW, 65 PAGES OF BRIEFING

18        AND TWO COMPETING MOTIONS.

19            SO COULD THERE BE -- I MEAN, THIS IS PREMATURE BECAUSE I

20        DON'T KNOW WHETHER I'M GOING TO GRANT LEAVE TO THE PLAINTIFFS

21        OR NOT, BUT COULD THERE BE SOME TYPE OF CONSOLIDATION?

22                MR. RESCH:  MY PROPOSAL, YOUR HONOR --

23                MR. CLIFFORD:  WE WOULD PROPOSE A MEET AND CONFER --

24                MR. RESCH:  YES.

25                MR. CLIFFORD:  -- WHERE WE MET, WE WOULD SIT DOWN AND
```

```
 1        TRY TO WORK THIS OUT.

 2                 THE COURT:  OKAY.

 3                 MR. RESCH:  YES.

 4                 MR. CLIFFORD:  WE HEAR YOU.

 5                 THE COURT:  OKAY, YES.  I THINK THE -- I WOULD LOVE

 6        IT IF IT CAME IN ACTUALLY LOWER THAN THE CIVIL RULES PAGE

 7        LIMITS JUST BECAUSE THERE HAS ALREADY BEEN QUITE A BIT OF

 8        BRIEFING IN THIS CASE IN BOTH THE P.I. MOTION AND THE MOTION TO

 9        DISMISS.  SO, YOU KNOW, I -- I MAY GO AHEAD AND PUT IN THE

10        FINAL ORDER, ON AT LEAST THE MOTIONS FOR LEAVE, A PAGE LIMIT.

11           I DON'T EVEN THINK WE NEED -- IF IT'S ONLY THE DEFENDANT'S

12        MOTION, I DON'T THINK WE NEED 25, 25, 15.

13                 MR. RESCH:  I DON'T EITHER, YOUR HONOR.

14                 THE COURT:  WHAT DO YOU THINK WE NEED IF IT'S JUST

15        YOURS?

16                 MR. RESCH:  WE COULD CERTAINLY DO IT IN 15 PAGES.

17                 THE COURT:  SO, WHAT, 15, 15, 10?

18                 MR. RESCH:  THAT'S FINE.

19                 MR. GORE:  FINE WITH US.

20                 THE COURT:  OKAY.  NOW, IF IT TURNS OUT THAT IT'S

21        DEFENDANT'S AND PLAINTIFFS', THEN --

22                 MR. RESCH:  MAYBE WE COULD TALK AT THAT POINT, YOUR

23        HONOR, AND SUBMIT A STIPULATION.

24                 THE COURT:  WELL --

25                 MR. GORE:  THAT'S FINE.
```

```
1              THE COURT:  -- I WOULD STILL LIKE IT, IF AT ALL
2     POSSIBLE, TO BE 25, 25, 15 IF IT'S GOING TO BE BOTH.
3              MR. GORE:  AGREED.
4              MR. RESCH:  UNDERSTOOD.
5              THE COURT:  ALL RIGHT.  SO LET'S DO THAT.  OKAY?
6              MR. GORE:  YOUR HONOR, IN THE MEANTIME --
7              THE COURT:  YES.
8              MR. GORE:  -- ARE WE TO -- IS IT THE COURT'S
9     PREFERENCE THAT WE FILE THE AMENDED COMPLAINT THAT IS
10    PRESENTLY -- FOR WHICH WE HAVE A DEADLINE?
11             THE COURT:  I THINK THAT --
12             MR. RESCH:  MY VIEW, YOUR HONOR --
13             THE COURT:  YEAH.
14             MR. RESCH:  -- IS THAT IF THE PLAINTIFFS ARE NOT
15    GOING TO AMEND ON NATURAL AND ADDED SUGAR, WHICH I KNOW
16    MR. CLIFFORD WASN'T COMPLETELY SURE, BUT IT'S SUGGESTED THAT
17    THEY WEREN'T GOING TO, THEN I DON'T THINK THAT THERE'S ANY
18    REASON FOR THEM TO FILE AN AMENDED COMPLAINT BEFORE YOUR HONOR
19    RULES ON OUR ORIGINAL MOTION TO DISMISS.
20         SO MY VIEW IS THAT WE'RE -- WE HAVE FILED A MOTION FOR
21    LEAVE AND NOW WE HAVE BEEN GIVEN LEAVE TO RECONSIDER THE ORDER
22    ON THE FIRST MOTION TO DISMISS.  WE SHOULD WAIT TO HAVE THAT
23    ORDER TO SEE WHAT ANY AMENDED COMPLAINT WOULD BE.  THAT'S MY
24    VIEW.
25             THE COURT:  I THINK THAT'S FINE.  IT MAY ALSO CONFUSE
```

```
 1        ISSUES IF WE HAVE TWO COMPETING SORT OF CONTROLLING COMPLAINTS.

 2              MR. RESCH:  RIGHT.  AND THEN WHAT ARE WE SUPPOSED TO

 3        DO WITH THE AMENDED COMPLAINT?  AND THEN IF IT GOES UP ON

 4        APPEAL, WHAT IS THE OPERATIVE COMPLAINT?  I MEAN, I THINK IT

 5        DOES CONFUSE THINGS.

 6              THE COURT:  OKAY.

 7              MR. GORE:  WE WILL ASSUME, THEN, THAT THAT DEADLINE

 8        NO LONGER APPLIES.

 9              THE COURT:  THAT'S FINE.  WHY DON'T YOU INCLUDE THAT

10        IN YOUR STIPULATION, IF YOU WOULD, PLEASE, THAT YOU'RE FILING

11        ON MONDAY?

12              MR. GORE:  YES.

13              THE COURT:  OKAY.  LET'S DO -- AND I APOLOGIZE TO MY

14        OTHER CASE THAT'S BEEN PATIENTLY WAITING -- LET'S DO THE

15        DISQUALIFICATION MOTION AND THEN I'M GOING TO TAKE A SHORT

16        BREAK AND CALL THE NEXT CASE.

17           WELL, WITH REGARD -- THERE IS A CMC ON TODAY AS WELL.  I

18        DON'T THINK IT MAKES SENSE TO SET A CASE SCHEDULE.  YOU KNOW,

19        WE HAVE TO SETTLE ON WHAT'S EXACTLY GOING TO BE THE PLEADINGS

20        IN THIS CASE AND THESE OTHER ISSUES.

21           SO WHAT I COULD DO IS GO AHEAD AND SET A CMC THAT'S FAR

22        OUT, AND THEN WHAT WE'LL DO IS WHEN WE GET OUR HEARING ON THE

23        RECONSIDERATION, WHETHER IT'S ONE OR TWO MOTIONS, I'LL JUST,

24        YOU KNOW, MOVE THAT CMC DATE TO THE SAME DATE.

25              MR. CLIFFORD:  THAT MAKES SENSE.
```

```
1              THE COURT:  OKAY.  I NORMALLY SET THEM 90 TO 120 DAYS

2     OUT, THE CMC'S, SO WHY DON'T WE JUST SAY -- I DON'T KNOW.

3              MR. GORE:  OCTOBER 24?

4              THE CLERK:  THAT'S A DAY YOU WANTED TO KEEP LIGHT

5     BECAUSE OF ANSARI.

6              THE COURT:  YEAH, ALTHOUGH I MAY HAVE TO NOT DO THAT.

7         WELL, LET ME JUST SET A CMC DATE AND WHAT I WILL DO IS I'LL

8     JUST MOVE THE CMC DATE TO THE HEARING DATE.  I MEAN, THIS IS

9     KIND OF JUST A PLACE HOLDER SO I DON'T -- SO THE CASE DOESN'T

10    FALL THROUGH THE CRACKS, WHICH I DOUBT THAT WOULD HAPPEN

11    ANYWAY.

12             THE CLERK:  OCTOBER 30TH?

13             THE COURT:  OKAY.  WHY DON'T WE JUST SAY THAT?  SO

14    THE CMC IS GOING TO BE OCTOBER 30TH, BUT OBVIOUSLY THAT WILL

15    JUST MOVE TO A THURSDAY LAW AND MOTION DATE, BUT I'LL SET THAT

16    FOR A 2:00 O'CLOCK CMC DATE.

17             MR. GORE:  GREAT, THANK YOU.

18             THE COURT:  ALL RIGHT.  LET'S GO TO THE

19    DISQUALIFICATION MOTION.

20        NOW, LET ME START WITH MR. RESCH.  DID YOU ALL SEEK A

21    DECLARATION FROM MS. CAMPBELL OR EAS ABOUT WHAT SHE OR

22    MR. STEEL DISCUSSED WITH THE PLAINTIFFS' LAWYERS?

23             MR. RESCH:  NO.  SHE -- EAS AND MS. CAMPBELL ARE

24    REPRESENTED BY COUNSEL, AND WE DID NOT FEEL THAT THAT WAS

25    AVAILABLE TO US, YOUR HONOR.
```

```
 1            THE COURT:  OKAY.

 2            MR. RESCH:  THEY WERE BASICALLY TAKING THE POSITION

 3    THAT WE'RE -- YOU KNOW, "WE'RE GOING TO STAY OUT OF THIS."

 4            THE COURT:  OKAY.  BUT THERE WAS NO EXPLICIT

 5    STATEMENT TO THAT EFFECT?  THAT'S JUST THE SENSE THAT YOU GOT,

 6    THAT THEY WERE RESISTING BEING --

 7            MR. RESCH:  MAY I HAVE A MINUTE, YOUR HONOR?

 8            THE COURT:  IF YOU WOULD, PLEASE, YES.  IT'S AN

 9    IMPORTANT POINT.

10            MR. RESCH:  THANK YOU.

11        (DISCUSSION OFF THE RECORD BETWEEN DEFENSE COUNSEL.)

12            MR. RESCH:  ALL RIGHT.  TWO THINGS, YOUR HONOR.

13        FROM THE DISCUSSIONS WITH EAS'S COUNSEL --

14            THE COURT:  UM-HUM.

15            MR. RESCH:  -- I DON'T THINK THERE WAS THE EXPRESS

16    REJECTION AND REQUEST THAT YOUR HONOR IS ASKING ABOUT.

17        HOWEVER, I THINK ONE THING IS IMPORTANT ON THIS.

18            THE COURT:  OKAY.

19            MR. RESCH:  IT WAS OUR VIEW THAT THE RECORD OF WHAT

20    TRANSPIRED BETWEEN MS. CAMPBELL AND THE PLAINTIFFS' COUNSEL, AS

21    DESCRIBED BY PLAINTIFFS' COUNSEL --

22            THE COURT:  UM-HUM.

23            MR. RESCH:  -- WAS ALL THAT WAS NEEDED.  IN OTHER

24    WORDS, IT'S BASICALLY AN UNDISPUTED RECORD OF THEIR

25    COMMUNICATIONS, AND WE BELIEVE THAT THAT RECORD ESTABLISHES ALL
```

```
1        THAT IT NEEDS TO ESTABLISH, PUTTING ASIDE THE PRESUMPTION UNDER

2     SHADOW TRAFFIC.  SO I JUST WANT TO GIVE YOUR HONOR SOME INSIGHT

3     AS TO WHY THERE WAS NOT THAT PURSUIT.

4          THE OTHER THING THAT YOUR HONOR OUGHT TO KNOW IS THAT THE

5     PARTIES HAD AN AGREEMENT THAT THE DEPOSITION WOULD NOT BE

6     TAKEN, ESPECIALLY GIVEN THAT THEY WERE REPRESENTED BY COUNSEL,

7     BUT THAT WAS AN AGREEMENT MR. CLIFFORD AND I HAD.

8               THE COURT:  NOT TO DEPOSE MS. CAMPBELL?

9               MR. RESCH:  RIGHT.

10              MR. CLIFFORD:  WELL, I'D LIKE TO SPEAK TO THAT WHEN

11    IT'S MY TURN, BUT --

12              THE COURT:  OKAY.

13              MR. RESCH:  IT WAS BROADER THAN THAT, YOUR HONOR,

14    BUT --

15              THE COURT:  OKAY.  DID IT HAVE ANYTHING TO DO WITH

16    CHOBANI NOT WAIVING PRIVILEGE, OR --

17              MR. RESCH:  WELL, YES, CHOBANI WOULD NOT WAIVE ITS

18    PRIVILEGE WITH RESPECT TO --

19              THE COURT:  TO WHAT IT TOLD MS. CAMPBELL?

20              MR. RESCH:  RIGHT, OTHER THAN, YOU KNOW, UNDER SHADOW

21    TRAFFIC, IT SPEAKS AS TO WHAT MUST BE PRESENTED BY CHOBANI, AND

22    IT SPECIFICALLY SAYS THAT CHOBANI DOES NOT NEED TO WAIVE

23    PRIVILEGE, THAT OUR COMMUNICATIONS CAN BE DISCUSSED AND

24    DESCRIBED EXACTLY AS WE HAVE, WHICH IS ACTUALLY MORE DETAIL AND

25    MORE SUBSTANCE, FAR MORE THAN WAS IN SHADOW TRAFFIC.
```

```
1              THE COURT:  UM-HUM.

2              MR. RESCH:  SO, YES, THAT'S TRUE.  WE WERE NOT GOING

3      TO, AND STILL WOULD NOT.

4              THE COURT:  OKAY.  SO --

5              MR. RESCH:  BUT I THINK IT IS --

6              THE COURT:  I WOULD FIND THAT CHOBANI PROVIDED

7      CONFIDENTIAL INFORMATION TO MS. CAMPBELL.  I DON'T THINK

8      THERE'S THAT MUCH OF AN ISSUE WITH THAT.

9          BUT I AM STRUGGLING WITH THE ISSUE OF WHETHER MS. CAMPBELL

10     DISCLOSED CHOBANI'S CONFIDENTIAL INFORMATION TO THE PLAINTIFFS'

11     LAWYERS, AND I THINK A LOT HINGES ON WHETHER THE SHADOW TRAFFIC

12     PRESUMPTION APPLIES OR NOT.

13         SO I WANT TO HEAR BOTH SIDES, YOUR -- I MEAN, I'VE READ

14     YOUR PAPERS, SO TO THE EXTENT YOU CAN, PLEASE DON'T REPEAT WHAT

15     YOU'VE ALREADY BRIEFED BECAUSE I DO HAVE THIS OTHER CASE --

16             MR. RESCH:  YES, YOUR HONOR.

17             THE COURT:  -- WAITING.

18         BUT WHAT IS YOUR BEST ARGUMENT AS TO WHY THE PRESUMPTION

19     SHOULD OR SHOULD NOT APPLY?  AND MAYBE WE SHOULD GET INTO

20     EXACTLY WHAT PLAINTIFFS REPRESENTED THEY DISCUSSED WITH

21     MS. CAMPBELL THAT YOU BELIEVE IS THE CONFIDENTIAL INFORMATION.

22             MR. RESCH:  YES, YOUR HONOR.

23             THE COURT:  OKAY.

24             MR. RESCH:  ALL RIGHT.  SO TO ANSWER THE LAST

25     QUESTION FIRST --
```

```
 1                    THE COURT:  OKAY.
 2                    MR. RESCH:  -- THEY SPOKE ABOUT THE SAME ISSUES THAT
 3          I SPOKE ABOUT WITH MS. CAMPBELL.
 4              FOR EXAMPLE, ON OCTOBER 18TH, I HAD A DAY LONG MEETING WITH
 5          MS. CAMPBELL.  WE SPOKE ABOUT ALL THE ISSUES IN THIS CASE IN
 6          SUBSTANTIAL DETAIL, INCLUDING EVAPORATED CANE JUICE, FOR
 7          EXAMPLE.
 8              SIX DAYS LATER, ON OCTOBER 24TH, UNBEKNOWNST TO US,
 9          MS. CAMPBELL HAD A VERY LENGTHY IN-PERSON MEETING WITH THE
10          PLAINTIFFS' COUNSEL, AND THE RECORD THAT HAS BEEN PUT FORTH BY
11          THE PLAINTIFFS IS THAT SHE WAS RETAINED IN CONNECTION WITH
12          OTHER CASES RAISING THE EXACT SAME ISSUES AS THIS CASE,
13          MEANING -- AND YOUR HONOR ASKED THIS AT THE PRELIMINARY
14          INJUNCTION HEARING -- DID YOU RETAIN HER IN CASES ALLEGING
15          EVAPORATED CANE JUICE, NATURAL, ADDED SUGAR?
16              THEY SPOKE ABOUT THE SAME ISSUES, ALBEIT IN THOSE OTHER
17          CASES, THAT WE HAD SPOKEN ABOUT.
18              AND WHAT THE LAW SAYS VERY CLEARLY UNDER SHADOW TRAFFIC IS
19          THAT MS. CAMPBELL COULD NOT DIVORCE AND COMPARTMENTALIZE WHAT I
20          HAD TOLD HER ABOUT THESE SAME EXACT ISSUES WHEN SHE GOES AND
21          SPEAKS WITH THEM SIX DAYS LATER.  THAT'S JUST ONE EXAMPLE.
22              SO, YOUR HONOR, WHEN SHE TALKS TO PLAINTIFFS' COUNSEL
23          ABOUT THE EXACT SAME ISSUES AND SAME CLAIMS, SHE IS
24          INCORPORATING AND USING THE INFORMATION THAT I'VE GIVEN HER
25          ABOUT THE STRENGTHS AND THE WEAKNESSES AND THE DETAILS OF THE
```

```
 1    LAWSUIT AND THESE CLAIMS IN LITIGATION BEFORE THE NORTHERN

 2    DISTRICT WITH THESE SAME PLAINTIFFS' LAWYERS AND THEN SHE GOES

 3    AND TALKS ABOUT THE SAME ISSUES WITH THEM AND THAT, YOUR HONOR,

 4    IS SIMPLY NOT ALLOWED AND IT ALL COULD HAVE BEEN AVOIDED.

 5         AND WHEN YOU LOOK AT -- SO THAT'S THE CONFIDENTIAL --

 6         THE COURT:  LET ME ASK YOU A QUESTION.  WHAT ABOUT --

 7    THE PLAINTIFFS ARE CLAIMING, "HEY, SHE'S ALREADY PUBLISHED HER

 8    VIEWS ABOUT ALL NATURAL AND WHETHER AN ADDITIVE CAN BE USED OR

 9    ANYTHING NATURAL CAN BE USED TO COLOR THE PRODUCTS.  SHE'S

10    ALREADY -- ESSENTIALLY ANY INFORMATION SHE GAVE US WAS ALREADY

11    PUBLIC AND WAS NOT CONFIDENTIAL."

12         MR. RESCH:  YES.

13         THE COURT:  WHAT'S YOUR RESPONSE TO THAT?

14         MR. RESCH:  OKAY.  I DID NOT SPEND TWO FULL DAYS AND

15    CALLS JUST HEARING MS. CAMPBELL'S RECITATION OF REGULATIONS, I

16    PROMISE YOU.

17      OUR CONVERSATION -- I'M GOING TO START THERE AND THEN I'LL

18    TALK ABOUT THEIRS.  MY CONVERSATIONS WITH HER WERE ME TELLING

19    HER STRATEGY IN THIS CASE, IMPRESSIONS OF THE PLAINTIFFS'

20    COUNSEL, THEIR OTHER CASES, HOW THESE CLAIMS CAN BE

21    ADJUDICATED, HOW THEY SHOULDN'T, WHAT ISSUES THERE ARE, WHAT

22    CLAIMS THERE ARE, QUESTIONS THAT I HAD.

23      THIS WAS AS MUCH ME PROVIDING MS. CAMPBELL WITH

24    INFORMATION --

25         THE COURT:  UM-HUM.
```

```
1              MR. RESCH:  -- ABOUT THE LAWSUIT AND HOW THESE CLAIMS
2       WILL PROCEED IN A LAWSUIT --
3              THE COURT:  UM-HUM.
4              MR. RESCH:  -- AS IT WAS MS. CAMPBELL JUST TELLING ME
5       REGULATIONS.  WE DON'T SPEND DAYS AND HOURS AND HOURS JUST
6       HEARING THAT.
7          OKAY.  SO THEN WHEN SHE GOES TO TALK TO THEM, YOUR HONOR,
8       IT'S NOT JUST RECITING REGULATIONS FOR A FULL DAY MEETING.
9       THAT'S NOT THE WAY YOU CONSULT WITH AN EXPERT.  EVERYONE IN
10      THIS COURTROOM KNOWS THAT.  YOU HAVE A BACK AND FORTH AND
11      YOU'RE ASKING QUESTIONS TO GET INFORMATION AND SHE'S ANSWERING
12      THEIR QUESTIONS AND GIVING INFORMATION WITH THE BENEFIT OF
13      HAVING SPENT THAT MUCH TIME WITH ME ABOUT MY THOUGHTS ABOUT THE
14      CASE.
15             THE COURT:  UM-HUM.
16             MR. RESCH:  FOR EXAMPLE, LET'S SAY THAT THERE WAS A
17      PARTICULAR VULNERABILITY IN THE CASE AND I'VE GOT -- THIS IS
18      HYPOTHETICAL BECAUSE SHADOW TRAFFIC SAYS, AND RIGHTLY SO, THAT
19      I'M NOT REQUIRED TO PROVIDE THE DETAILS -- BUT IF THERE'S A
20      VULNERABILITY IN THE CASE AND I PROVIDE THAT VULNERABILITY TO
21      MS. CAMPBELL, IF SHE'S THEN THEIR EXPERT, HOW DOES SHE
22      DISCHARGE THAT ROLE WITHOUT AT LEAST RAISING THE POSSIBILITY,
23      NOT IN CONNECTION WITH CHOBANI, BUT, "HEY, HAVE YOU ALL THOUGHT
24      ABOUT THIS QUESTION?  WHAT ABOUT THESE DOCUMENTS?  WHAT ABOUT
25      THIS KIND OF INFORMATION?"
```

 1            AND THEN THAT INFORMATION IS GIVEN TO THE SAME PLAINTIFFS'

 2     LAWYERS THAT ARE SUING US IN THIS COURTROOM, AND THAT IS

 3     SPECIFICALLY NOT ALLOWED AND SHADOW TRAFFIC IS VERY CLEAR ABOUT

 4     THAT.

 5            SO, YOUR HONOR, THIS IS -- THIS IS VERY SPECIFIC IN TERMS

 6     OF WHAT I TOLD HER AND THEN SHE'S GOING OFF AND MEETING WITH

 7     THEM ON THE EXACT SAME ISSUES THAT CAN BE USED AGAINST US IN

 8     THIS CASE.

 9            AND, AGAIN, WHEN YOU LOOK AT THE CASES, SHADOW TRAFFIC AND

10     COLLINS, THAT ADDRESS THIS ISSUE, YOUR HONOR, FIRST OF ALL,

11     NONE OF THEM THAT I'VE SEEN HAVE THE TYPE OF SUBSTANTIAL

12     AMOUNTS OF INFORMATION BEING PROVIDED AND THE AMOUNT OF TIME

13     THAT'S GOING ON.

14            BUT ONE KEY FACT IS ALWAYS WHAT DID THE PLAINTIFFS'

15     LAWYERS, OR WHATEVER LAWYERS ON THE OTHER SIDE OF THIS MOTION,

16     WHAT DID THEY DO WHEN THEY HEARD THERE WAS A CONFLICT?  THAT'S

17     A QUESTION THAT IS CENTRAL TO THE ANALYSIS.

18            THERE IS NO DOUBT, IF YOU LOOK AT MR. HERRINGTON'S

19     DECLARATION, THAT AT THE VERY BEGINNING OF THE RELATIONSHIP --

20     THIS IS PARAGRAPH 29 -- HE SAYS, "I ASKED MR. STEEL ABOUT THE

21     NATURE OF ANY CONFLICT IN THE CASES NOT ON EAS'S LIST AND

22     MR. STEEL SIMPLY SAID THAT THERE IS A CONFLICT."

23            THAT REQUIRES THAT THEY EITHER STOP TALKING TO THE EXPERT

24     OR CONTACT US OR GO TO THE COURT, AND BECAUSE THEY DIDN'T DO

25     THAT, WE ARE HERE.

1      NOW, THAT LEADS INTO ADDRESSING YOUR HONOR'S QUESTION

2  ABOUT THE PRESUMPTION.

3          MR. CLIFFORD:  YOUR HONOR, CAN I AT SOME JUNCTURE

4   ADDRESS SOME OF THESE THINGS?

5          THE COURT:  YEAH.  I HAVE QUESTIONS FOR YOU, TOO.

6   DON'T WORRY.

7          MR. CLIFFORD:  OKAY.

8          MR. RESCH:  THAT, YOUR HONOR, LEADS TO THE

9   PRESUMPTION QUESTION.

10     THE PRESUMPTION IS PARTLY ARISING OUT OF AN ISSUE OF

11  RESPONSIBILITY AND FAIRNESS AND WHO IS TO BLAME FOR THE

12  SITUATION WE FIND OURSELVES IN.

13     THE CASES WHERE A PRESUMPTION IS NOT FOUND, LIKE COLLINS,

14  ARE CASES WHERE THE OTHER LAWYERS DO THE RIGHT THING WHEN THEY

15  FIND OUT THERE'S A CONFLICT.  THEY STOP TALKING TO THE EXPERT.

16     HERE THEY FOUND OUT THERE WAS A CONFLICT -- THEY KNEW

17  THAT -- AND THEY PRESSED FORWARD FOR MONTHS WITH MS. CAMPBELL.

18     AND WHEN YOU HAVE THAT SITUATION, YOUR HONOR, THE

19  PRESUMPTION COMES INTO PLAY.

20     NOW, WHY THE PRESUMPTION IN ADDITION TO THAT?  BECAUSE,

21  YOUR HONOR, WE WEREN'T THERE.  I WASN'T THERE.

22     BUT WHAT WE KNOW IS THAT MS. CAMPBELL SPOKE ABOUT CASES

23  THAT INVOLVE IDENTICAL ISSUES AS THE ISSUES HERE.  THAT IS THE

24  END OF THE ANALYSIS IN TERMS OF FINDING THAT THERE IS A

25  TRANSFER, AS SHADOW TRAFFIC SAYS, CONSCIOUSLY OR

1    SUBCONSCIOUSLY.

2         THERE IS NO WAY THAT MS. CAMPBELL -- AND I KNOW WHAT I

3    TALKED TO HER ABOUT, YOUR HONOR.  I KNOW WHAT I TALKED TO HER

4    ABOUT AND IT WAS DETAILED.  IT WAS VERY SPECIFIC LEGAL STRATEGY

5    THEORIES THAT I PROVIDED TO HER.

6         IT WOULD HAVE BEEN IMPOSSIBLE, IMPOSSIBLE FOR HER TO HAVE

7    IGNORED WHAT I TOLD HER AND PUT IT IN ONE SIDE OF HER BRAIN

8    WHEN SHE TALKED TO THEM.

9         AND THAT, YOUR HONOR, IS, BESIDES THE FACT THAT THEY HAD

10   THE ABILITY TO AVOID THIS, ONE REASON WHY THE PRESUMPTION, A,

11   APPLIES; AND B, EVEN IF IT DOESN'T, WHY WE'VE MET OUR BURDEN.

12        NOW, THE OTHER THING, YOUR HONOR, IN THE CASES LIKE

13   COLLINS WHERE THE PRESUMPTION DIDN'T APPLY IS THE EXPERT WAS

14   STILL ENGAGED WITH THE PARTY THAT WAS MOVING FOR

15   DISQUALIFICATION.  THAT'S COLLINS AND THE OTHER CASES WHERE

16   THEY FIND NO PRESUMPTION.

17        THERE ARE TWO MAJOR DISTINGUISHING FACTORS.  ONE IS THE

18   FIRST, THAT THE COUNSEL ACTED PROPERLY.  THE SECOND THEY FOUND

19   OUT THERE WAS A CONFLICT, THEY STOPPED COMMUNICATIONS.  THAT

20   DIDN'T HAPPEN HERE.

21        THE SECOND IS THAT THE EXPERT WAS STILL WORKING AND HAD A

22   RELATIONSHIP WITH THE COMPANY MOVING FOR DISQUALIFICATION.

23        THAT'S NOT --

24             THE COURT:  BUT YOU'VE KIND OF CREATED THAT SECOND

25    CONDITION BY ESSENTIALLY TERMINATING YOUR RELATIONSHIP WITH

```
 1        EAS.

 2                  MR. RESCH:  WELL, I DON'T THINK --

 3                  THE COURT:  WHY SHOULD THAT THEN NOW BENEFIT YOU?

 4                  MR. RESCH:  WELL, I DON'T THINK SO, YOUR HONOR.  I

 5        DON'T THINK THAT IT BENEFITS US.

 6                  THE COURT:  UM-HUM.

 7                  MR. RESCH:  THE QUESTION IS, WHEN YOU'RE FACED WITH

 8        THE POSITION WE WERE, WHAT DO YOU HAVE TO DO TO PROTECT YOUR

 9        CONFIDENTIAL INFORMATION?  SO I DON'T THINK IT'S A SITUATION OF

10        OUR OWN CHOOSING.

11            ALSO, THEY HAD A CONTRACT WITH MS. -- WITH EAS THAT SAID,

12        "YOU'RE NOT GOING TO WORK FOR ANY OTHER PEOPLE THAT WE'RE

13        OPPOSING," IN ESSENCE, AND EAS'S OPINION WAS THAT, "WELL, WE

14        CAN -- AS LONG AS WE DON'T APPEAR AND TESTIFY AGAINST ONE OF

15        OUR CLIENTS, THEN WE'VE DONE ALL THAT WE NEED TO DO.  WE CAN BE

16        CONSULTING WITH WHOEVER WE WANT ON BOTH SIDES OF THE TABLE."

17            BUT, YOUR HONOR, I -- I SUBMIT, RESPECTFULLY, THAT IT'S NOT

18        SOMETHING THAT IS DEEMED OF OUR OWN CHOOSING AND THEN WE'RE

19        TRYING TO TAKE ADVANTAGE OF IT WHEN WE ARE FACED WITH THE

20        SITUATION WE WERE, WHICH WAS SHE WAS, AT THE SAME TIME,

21        CONSULTING WITH THE PLAINTIFFS' COUNSEL.

22            IF WE HAD DONE ANYTHING ELSE, I DON'T KNOW THAT IT WOULD

23        HAVE BEEN PRUDENT AND DILIGENT AT ALL.

24            AND SO I DON'T THINK IT'S, FLIPPING IT AROUND, APPROPRIATE

25        TO HOLD THAT AGAINST US.
```

```
 1          BUT THE KEY FACTOR, YOUR HONOR, IS THAT --

 2              THE COURT:  WELL, I GUESS I'M JUST INTERESTED IN THE

 3      WHOLE AVAILABILITY OF THE EXPERT TO THE MOVING PARTY.  THAT'S

 4      SORT OF WHAT THE SHADOW TRAFFIC PRESUMPTION HINGES ON.

 5          AND I HAVE TO SAY, THAT IS PROBABLY THE PLAINTIFFS'

 6      STRONGER ARGUMENT.

 7              MR. RESCH:  WELL, YOUR HONOR, TWO THINGS:  ONE IS WE

 8      DON'T BELIEVE THAT THE INFORMATION ABOUT THEIR COMMUNICATIONS

 9      WITH BETTY CAMPBELL -- WHICH THAT'S THE ISSUE, RIGHT?

10              THE COURT:  YEAH.

11              MR. RESCH:  IS THAT INFORMATION EQUALLY AVAILABLE TO

12      US?

13              THE COURT:  UM-HUM.

14              MR. RESCH:  LET'S LOOK AT IT.  THE FIRST THING IS

15      FEBRUARY 4TH, WE SENT A LETTER ASKING ALL THESE QUESTIONS,

16      "TELL US INFORMATION."  SO WE WANT TO KNOW.  WE WANT

17      INFORMATION ABOUT THESE MEETINGS.

18          ON FEBRUARY 8TH, THEY SAY, "WE'RE NOT ANSWERING A SINGLE

19      QUESTION OF YOURS.  NOT A SINGLE QUESTION OF YOURS ARE WE GOING

20      TO ANSWER."

21          THAT INFORMATION IS NOT EQUALLY AVAILABLE TO US AT THAT

22      POINT.

23              THE COURT:  UM-HUM.

24              MR. RESCH:  OKAY.  THEN EAS GETS A LAWYER,

25      INDEPENDENT COUNSEL.  THAT'S NOT ALL OF A SUDDEN EQUALLY
```

```
 1        AVAILABLE TO US BECAUSE THEY ACTUALLY ARE THE ONES WHO HAD THE

 2        COMMUNICATIONS.  SO WE CAN'T SIMPLY RECREATE THOSE

 3        COMMUNICATIONS.

 4            BUT HERE'S THE LARGER POINT, AND I THINK, YOUR HONOR, THIS

 5        IS A REALLY IMPORTANT FOCUS OF THIS MOTION:  WHAT WE KNOW

 6        HAPPENED, WHAT WE KNOW HAPPENED IS THAT BETTY CAMPBELL

 7        CONSULTED WITH THE PLAINTIFFS ON CASES AND ISSUES -- CASES

 8        RAISING IDENTICAL ISSUES HERE.  WE KNOW THAT.

 9            THAT IS THE END.  WHETHER THE PRESUMPTION APPLIES OR NOT,

10        THAT IS THE END BECAUSE IT PROVES, IT PROVES, UNDER SHADOW

11        TRAFFIC AND THE OTHER CASES TALKING ABOUT EXPERT CONVEYING

12        INFORMATION, THAT MY INFORMATION ABOUT OUR EVAPORATED CANE

13        JUICE CLAIM WAS IN HER HEAD AND THEN, SIX DAYS LATER, WITHOUT

14        ME KNOWING, SHE GOES AND TALKS ABOUT IT WITH THEM.

15            NOW, I DON'T KNOW -- SURE, IT WOULD BE A STRONGER CASE IF

16        WE HAD EVIDENCE THAT BETTY CAMPBELL SAID TO THEM, "THIS IS WHAT

17        MIKE RESCH TOLD ME, YOU KNOW, ABOUT THIS ISSUE."

18            BUT IT'S NOT NECESSARY, YOUR HONOR, UNDER THE LAW.  I MEAN,

19        SHADOW TRAFFIC DIDN'T HAVE THAT KIND OF EVIDENCE THAT THERE WAS

20        THAT KIND OF BLATANT TRANSFER OF INFORMATION.

21            WHAT ALL THE CASES TALK ABOUT IS THAT -- AND THEY'RE IN

22        OTHER CONTEXTS, TOO.  EXPERTS, ESPECIALLY LAY EXPERTS, YOUR

23        HONOR, ESPECIALLY LAY EXPERTS, JUST LIKE DELOITTE IN SHADOW

24        TRAFFIC, CAN'T HEAR INFORMATION, PUT IT IN ONE SIDE OF THEIR

25        BRAIN, AND THEN TALK ABOUT THE EXACT SAME ISSUE --
```

```
 1                THE COURT:  CAN I ASK YOU, WHEN I READ THAT, IT
 2       REMINDED ME OF AN INEVITABLE DISCLOSURE THEORY AND WHY THAT'S
 3       NOT THE LAW IN CALIFORNIA IN TRADE SECRET OR MISAPPROPRIATION
 4       CASES, AND I KNOW THIS IS A TANGENT, BUT AT LEAST IN CALIFORNIA
 5       TRADE SECRET MISAPPROPRIATION LAW, WE'RE NOT SUPPOSED TO ASSUME
 6       THAT THAT INEVITABLE DISCLOSURE WOULD HAPPEN IF, FOR EXAMPLE,
 7       AN EMPLOYEE LEAVES ONE EMPLOYER AND GOES TO ANOTHER.  WE'RE NOT
 8       SUPPOSED TO ASSUME THAT THEY'RE AUTOMATICALLY GOING TO CONVEY
 9       CONFIDENTIAL INFORMATION FROM THE PREVIOUS EMPLOYER.
10            IS THERE ANY KIND OF CONCERN ABOUT -- YOU KNOW, ARE THERE
11       DIFFERENT AREAS OF THE LAW THAT ARE KIND OF MEETING HERE?  IS
12       THERE ANY SORT OF RELATIONSHIP BETWEEN THAT INEVITABLE
13       DISCLOSURE DOCTRINE AND THE ARGUMENT HERE THAT EXPERTS CAN'T
14       CONSCIOUSLY AND UNCONSCIOUSLY SEPARATE OUT DIFFERENT KINDS OF
15       CONFIDENTIAL INFORMATION?
16                MR. RESCH:  I DON'T THINK SO, YOUR HONOR, AND HERE'S
17       WHY:  FIRST OF ALL, THE LAW IN THIS AREA IS CLEAR.  THERE ISN'T
18       THAT KIND OF SUGGESTION.
19                THE COURT:  UM-HUM.
20                MR. RESCH:  BUT MORE SPECIFICALLY, THE POLICIES
21       SURROUNDING WORK PRODUCT AND CONFIDENTIAL INFORMATION ARE SO
22       SERIOUS AND THEY CENTER AROUND THIS NOTION OF NOT ALLOWING IT
23       TO BE MISUSED OR DELIVERED INAPPROPRIATELY.
24            THOSE POLICIES -- AND ESPECIALLY GIVEN THE TYPES OF EXPERT
25       WITNESS ISSUES WE'RE TALKING ABOUT AND ATTORNEY WORK PRODUCT
```

```
1    AND PRIVILEGED INFORMATION -- I THINK UNQUESTIONABLY SEPARATE

2    THIS OUT AND IF EVER ADDRESSED -- I DON'T THINK THIS QUESTION

3    HAS BEEN ADDRESSED IN THE APPELLATE COURTS IN CALIFORNIA --

4              THE COURT:  UM-HUM.

5              MR. RESCH:  -- BUT IF IT WERE ADDRESSED, I THINK IT

6    WOULD BE VERY CLEAR WHY, IN THIS CONTEXT, SUCH A RULE MAKES

7    SENSE.

8         AND AGAIN, THE ONLY LAW THAT WE DO HAVE IS THAT THIS IS THE

9    RULE FOR THIS COURT TO APPLY IN THIS CASE ON THIS MOTION FOR

10   DISQUALIFICATION.

11             THE COURT:  UM-HUM.

12             MR. RESCH:  THERE'S NO SUGGESTION THAT A STANDARD

13   THAT OPERATES IN A SEPARATE PART OF THE LAW CAN SUB IN HERE.

14             THE COURT:  LET ME ASK MR. CLIFFORD A QUESTION.

15        PARAGRAPH 18 OF THE NELKIN DECLARATION SAYS, QUOTE, "WE

16   ONLY REQUIRED HER," AND IT'S MEANING MS. CAMPBELL, "SERVICES TO

17   DEAL WITH WHETHER THERE WAS A VIOLATION OF LAW AND A TRIGGERING

18   OF THE UNLAWFUL PRONG OF THE UCL."

19        CAN YOU EXPLAIN WHAT THAT ISSUE WAS?

20             MR. CLIFFORD:  WHAT THEY DID -- YOUR HONOR, FACTS

21   MATTER, AND I THINK THE RECORD SHOWS THAT WE HAVE TAKEN

22   EXTRAORDINARY STEPS TO DISCLOSE TO THE COURT THE CONVERSATIONS

23   BETWEEN --

24             THE COURT:  YES, BUT WHAT --

25             MR. CLIFFORD:  -- NELKIN AND HERRINGTON.
```

1          THE COURT:  BUT WHAT DOES THAT QUOTE MEAN?

2          MR. CLIFFORD:  WHAT THAT QUOTE MEANS --

3          THE COURT:  YES.

4          MR. CLIFFORD:  -- IS THAT THEY WENT THROUGH THE 11

5    COMPLAINTS ON A PARAGRAPH-BY-PARAGRAPH BASIS WITH

6    BETTY CAMPBELL.

7        THEY DID NOT DISCUSS CHOBANI.  THEY DID NOT DISCUSS THESE

8    OTHER CASES.

9          THE COURT:  DID THEY DISCUSS THAT THESE ARE FDA

10   GUIDANCES THAT ARE NON-BINDING AND WHETHER THOSE ACTUALLY

11   CREATE OBLIGATIONS ON THE PART OF FOOD MANUFACTURERS?  DID THEY

12   DISCUSS THAT?

13         MR. CLIFFORD:  I THINK A FAIR ANSWER TO THAT WOULD BE

14   YES.

15         THE COURT:  OKAY.  AND WHETHER WARNING LETTERS WERE,

16   IN FACT --

17         MR. CLIFFORD:  AN OBLIGATION OF THE --

18         THE COURT:  -- AN OBLIGATION ON A FOOD MANUFACTURER?

19         MR. CLIFFORD:  I BELIEVE THE ANSWER TO THAT WOULD BE

20   A YES.  I'M SURE THEY DID.  AT SOME POINT THEY CERTAINLY

21   DISCUSSED THAT.

22       BUT -- SO I HOPE I'M ANSWERING YOUR QUESTION.

23         THE COURT:  BUT WHY IS THAT NOT A DEFENSE?  BECAUSE,

24   YOU KNOW, I CERTAINLY DID SPEND A LOT OF TIME --

25         MR. CLIFFORD:  WELL, I --

```
 1            THE COURT:  -- ON THAT MOTION TO DISMISS AS TO, YOU

 2    KNOW, WHETHER THESE GUIDANCES AND WARNING LETTERS ARE BINDING.

 3    THAT IS A DEFENSE.

 4            MR. CLIFFORD:  BUT LET'S -- LET'S ASSUME FOR THE SAKE

 5    OF DISCUSSION --

 6            THE COURT:  YEAH.

 7            MR. CLIFFORD:  -- THAT IT IS.  WHAT THEIR THEORY IS,

 8    IT'S LIKE AN INTUITIVE TRANSFER OF CONFIDENTIAL INFORMATION,

 9    AND THEN THAT IS TO SAY -- NUMBER ONE, THE SHADOW TRAFFIC

10    PRESUMPTION, WE SUBMIT, DOES NOT APPLY HERE.

11         AND THE PURPOSE OF THE PRESUMPTION IS TO PROTECT COUNSEL'S

12    ACCESS TO INFORMATION ABOUT WHETHER THEIR CONFIDENTIAL

13    INFORMATION WAS TRANSFERRED, AND THE CASE LAW TENDS TO SAY, AND

14    DOES SAY, THAT YOU HAVE TO ASSUME THAT THE PERSON WHOSE

15    EXPERT'S BEEN ABSCONDED DOESN'T HAVE AN EQUAL ACCESS TO THAT

16    EXPERT.

17         THAT IS NOT TRUE HERE.  NUMBER ONE, THEY FIRED THIS COMPANY

18    IN A TISSY FIT WHERE THEY SAID THAT THEY WERE TREATED WITH

19    DISLOYALTY AND BETRAYAL.  THOSE ARE THE WORDS FROM MR. GIALI TO

20    THE COMPANY.

21         AND HERE WHAT HAPPENED WAS I OFFERED -- ONCE I GOT INVOLVED

22    IN THIS MATTER, I OFFERED TO MR. RESCH -- IT'S IN MY

23    DECLARATION -- FULL AND UNFETTERED ACCESS TO BETTY CAMPBELL AND

24    EAS, WAIVING ANY PRIVILEGE THAT WE WOULD HAVE, WAIVING ANY WORK

25    PRODUCT THAT WE WOULD HAVE.  THEY COULD GO TALK TO HER TO FIND
```

```
1    OUT AND CONFIRM WHAT WE WERE REPRESENTING, AND WHAT WE BELIEVED

2    SHE HAS IMPLIEDLY REPRESENTED IN HER COMMENTS TO THEM, THAT

3    THERE WAS NO TRANSFER OF CONFIDENTIAL INFORMATION.

4        THEY TALKED ABOUT THESE 11 CASES.  THEY DID NOT TALK ABOUT

5    HOW THEY WERE BEING DEFENDED.  THEY TALKED ABOUT WHETHER THE

6    COMPLAINTS WERE SUFFICIENT IN TERMS OF THE ALLEGATIONS THAT

7    WERE BEING MADE.

8        AND BETTY CAMPBELL IS -- GIVEN EVERYTHING THAT COUNSEL SAYS

9    ABOUT BETTY CAMPBELL -- BETTY CAMPBELL DID NOT BILL AT AN

10   EXPERT RATE.  BETTY CAMPBELL DID NOT KNOW --

11           THE COURT:  LET ME ASK YOU A QUESTION.

12           MR. CLIFFORD:  -- THAT SHE WAS AN EXPERT FOR THEM.

13       SHE'S EITHER LYING OR THERE'S A BIG --

14           THE COURT:  AND MAYBE SHE IS.  MAYBE SHE IS LYING.

15           MR. CLIFFORD:  BUT I ASKED TO GET HER DEPOSITION IN

16   ONE OF THE CASES WHERE DISCOVERY IS OPEN AND THEY BLOCKED ME.

17   THEY STOPPED ME FROM GETTING BETTY CAMPBELL'S DEPOSITION.

18           THE COURT:  OKAY.  LET ME ASK YOU A QUESTION.  WAS

19   THE FDA GUIDANCE ON WHETHER ECJ IS A COMMON OR USUAL NAME OF

20   ANY TYPE OF SWEETENER DISCUSSED WITH BETTY CAMPBELL AND YOUR

21   ATTORNEYS?

22           MR. CLIFFORD:  I'M SURE THAT THE ALLEGATIONS IN A

23   COMPLAINT -- ONLY IN THE -- I WASN'T THERE.  THEY COULD ONLY

24   HAVE BEEN IN THE CONTEXT OF THE ALLEGATIONS OF ONE OF THOSE

25   COMPLAINTS.
```

```
 1              THE COURT:  OKAY.  SO THE ANSWER IS YES?

 2              MR. CLIFFORD:  I WOULD SAY -- I'D HAVE TO CONCEDE

 3     THAT TO YOU.  I DON'T KNOW, JUDGE.

 4              THE COURT:  OKAY.  WELL, I THINK IT'S A LITTLE BIT

 5     INCONVENIENT THAT YOU DIDN'T BRING MR. HERRINGTON AND

 6     MR. NELKIN.  I FIND THAT THAT WAS PURPOSEFUL.

 7              MR. CLIFFORD:  WELL, WAIT A MINUTE.  YOU MEAN TODAY?

 8              THE COURT:  YOU'RE GOING TO SAY, "I DON'T KNOW THE

 9     ANSWER TO THAT.  THE LAWYERS WHO HAD THOSE CONVERSATIONS ARE

10     NOT HERE."

11          I JUST DON'T THINK THAT'S REALLY FAIR, RIGHT?

12              MR. CLIFFORD:  WELL, THEN SHAME ON ME.

13              THE COURT:  YOU'RE CONCEDING THAT YOU'RE --

14              MR. CLIFFORD:  THEN SHAME ON ME.

15          BUT I'M TELLING YOU, AS AN OFFICER OF THE COURT, A MEMBER

16     OF THE AMERICAN COLLEGE OF TRIAL LAWYERS, PAST PRESIDENT OF

17     CHICAGO BAR, PAST PRESIDENT OF SECTION OF LITIGATION OF THE

18     ABA, I DID -- THERE'S NOTHING PURPOSEFUL ABOUT IT AT ALL.

19          YOU HAVE EXTRAORDINARILY EXTENSIVE DECLARATIONS FROM BOTH

20     OF THESE MEN.

21              THE COURT:  I THINK THAT THEIR -- WELL, WE'LL GO INTO

22     THEM.  I'VE READ THEM.  OKAY?  WE'RE GOING TO GO INTO THEM.

23          ALL RIGHT.  SO THEY DID DISCUSS THE FDA GUIDANCE REGARDING

24     WHETHER ECJ WAS A COMMON OR USUAL NAME OF ANY TYPE OF

25     SWEETENER.
```

1        MR. CLIFFORD:  BUT LET'S ASSUME -- LET'S ASSUME THE

2    ANSWER TO THAT IS YES.

3        AS BETTY CAMPBELL IS SITTING THERE --

4        THE COURT:  BECAUSE THAT IS IN THE COMPLAINT.

5        MR. CLIFFORD:  -- DOES SHE KNOW ANYTHING MORE IN

6    THEIR PLAYBOOK?  DOES SHE KNOW ANYTHING MORE THAN THEIR

7    PLAYBOOK IN THIS?

8        I MEAN, YOU KNOW, THEY WOULD HAVE YOU ASSUME THAT SHE'S

9    LYING.  THERE'S NO EVIDENCE OF THAT.

10       THE LADY, IF SHE -- YOU KNOW, THEY SAY THAT THEY BILLED

11   OVER 500 HOURS SINCE THE KANE COMPLAINT WAS FILED.  THERE'S NO

12   EVIDENCE THAT ALL OF THAT TIME WAS SPENT ON THIS CASE.

13       I ASKED THEM TO UNREDACT THEIR DOCUMENTS.  THEY SAID NO.

14       I ASKED THEM TO SUBMIT IT TO YOU IN CAMERA.  THEY SAID NO.

15       THEY ARE EXAGGERATING THIS RELATIONSHIP WITH EAS.

16       AND IF YOU LOOK AT THE AD HOC AGREEMENT, JUDGE, OF EAS,

17   WHICH, BY THE WAY, THEY DID NOT WANT TO GIVE ME IN THE

18   BEGINNING.  I HAD TO PUSH THEM TO GET THAT.  IT'S AN AD HOC,

19   MEANING FOR THIS SPECIFIC THING, FROM NOVEMBER OF 2010.

20       IT -- THEY -- AND PART OF THE PROBLEM HERE IS THAT THEY DID

21   NOT PROPERLY DOCUMENT THEIR RELATIONSHIP WITH BETTY CAMPBELL

22   AND EAS WHEN THEY WENT TO THEM ABOUT THIS LAWSUIT.

23       AND SO WHAT THEY WOULD HAVE YOU DO, IN A DRACONIAN WAY, IS

24   DISQUALIFY 90 LAWYERS, TO DISQUALIFY HERRINGTON AND/OR

25   NELKIN -- AND BY THE WAY, HERRINGTON IS ONE OF THE MOST --

```
1            THE COURT:  AND THERE WAS NO ETHICAL -- THERE WAS NO

2      WALL, CORRECT, BETWEEN NELKIN, HERRINGTON, AND THE REST OF THE

3      COUNSEL?

4            MR. CLIFFORD:  AND WE DO HAVE ETHICAL WALLS.  THEY'RE

5      SAYING THAT THERE'S NOT --

6            THE COURT:  NO.  BUT WAS THERE A WALL THAT, THAT

7      SEALED OFF HERRINGTON AND NELKIN?  BECAUSE THAT'S NOT IN THEIR

8      DECLARATIONS.

9            MR. CLIFFORD:  THEIR -- YOUR HONOR, COUNSEL SAYS TO

10     YOU, IN HIS DECLARATION, "I GLEANED FROM WHAT HERRINGTON TOLD

11     ME THAT THERE'S NO ETHICAL SCREEN HERE AT ALL."

12           THE COURT:  WELL, WHY DIDN'T HE INCLUDE THAT IN HIS

13     DECLARATION?  HE DIDN'T.

14           MR. CLIFFORD:  BECAUSE HE SPECIFICALLY TALKS ABOUT

15     THE FACT THAT NONE OF THE INFORMATION WAS COMMUNICATED TO

16     ANYONE ELSE OTHER THAN HE AND -- HERRINGTON AND NELKIN, THE TWO

17     OF THEM.

18        I MEAN, THEY WOULD HAVE YOU BELIEVE THAT WE SAT DOWN AND

19     THEY WENT OVER 11 COMPLAINTS.

20           THE COURT:  OKAY.  SO THERE'S NO -- POINT TO ME

21     EVIDENCE IN THE RECORD THAT THERE IS AN ETHICAL WALL WALLING

22     OFF MR. HERRINGTON AND MR. NELKIN.

23           MR. CLIFFORD:  IN THE WAY YOU'RE ASKING THAT

24     QUESTION, I DON'T HAVE IT IN THE RECORD.

25           THE COURT:  OKAY.
```

1          MR. CLIFFORD:  I REPRESENT TO YOU, THOUGH, AS AN

2     OFFICER OF THE COURT, THAT WE HAVE A COMMITTEE STRUCTURE THAT

3     WOULD -- THAT SUPPLIES THAT SAME THING.

4          THE COURT:  I DON'T KNOW WHAT THAT MEANS.  SO --

5          MR. CLIFFORD:  WELL --

6          THE COURT:  SO MR. HERRINGTON AND MR. NELKIN SPOKE

7     WITH OTHER MEMBERS OF THE PLAINTIFFS' COUNSEL TEAM ABOUT THEIR

8     CONVERSATIONS WITH MS. CAMPBELL?

9          MR. CLIFFORD:  I WOULD -- I THINK AN ANSWER TO THAT

10    WOULD BE YES.

11         THE COURT:  OKAY.

12         MR. CLIFFORD:  AND THAT -- BUT I'M TELLING YOU -- BUT

13    THERE IS NO EVIDENCE OF A TRANSFER OF CONFIDENTIAL INFORMATION

14    FROM CHOBANI OR ITS COUNSEL TO EITHER OF THOSE LAWYERS.

15       THE -- WHEN THEY SAID, WHEN THEY -- THEY DID NOT KNOW THAT

16    SHE WAS AN EXPERT FOR THEM.  EAS AND ED STEEL AND

17    BETTY CAMPBELL SPECIFICALLY SAID THAT THEY COULD WORK ON 11

18    CASES.  THEY DIDN'T SPELL OUT ANY DETAIL OF WHY THEY COULDN'T

19    WORK ON 14 OTHER CASES.

20       EAS IS A BIG COMPANY.  THEY HAVE OVER 130 CONSULTANTS

21    WITHIN THEIR RANKS.  IT COULD BE ANY ONE OF A NUMBER OF

22    DIFFERENT BUSINESS CONFLICTS.

23       THE FACT THAT EAS WAS HIRED BY CHOBANI IN NOVEMBER OF 2010

24    WHEN THERE'S NO LITIGATION, AT LEAST NOT THIS LITIGATION, AT

25    ALL GOING ON THERE SPEAKS TO THE FACT THAT THEY CONSULT FOR A

```
1      LOT OF OTHER THINGS THAT THEY DO.

2          AND SO THE EVIDENCE HERE IS THAT YOU HAVE COUNSEL TRYING TO

3      CLAIM THAT THEY'VE BEEN PREJUDICED WHEN THEY HAD EVERY RIGHT TO

4      SEE IF THEIR CONFIDENTIAL INFORMATION HAD BEEN TRANSFERRED.

5          AND THEY ARE NOT -- THEY HAD FULL ACCESS TO HER.  THEY

6      STILL HAVE FULL ACCESS TO HER.

7              THE COURT:  OKAY.  SO DID PLAINTIFFS' COUNSEL,

8      MR. HERRINGTON AND MR. NELKIN, DISCUSS WITH MS. CAMPBELL ABOUT

9      THE INCLUSION OF FRUIT OR VEGETABLE JUICE IN A PRODUCT FOR

10     COLOR?

11             MR. CLIFFORD:  I WOULD THINK THE ANSWER WOULD BE YES

12     TO THAT.

13             THE COURT:  OKAY.

14             MR. CLIFFORD:  ONE OTHER POINT.  COUNSEL MAKES --

15             THE COURT:  AND WHETHER THAT'S NATURAL OR NOT?  AND I

16     UNDERSTAND ON THIS POINT YOU'RE SAYING SHE'S NOT PUBLISHED

17     STATEMENTS ON THIS POINT.

18             MR. CLIFFORD:  I THINK SHE HAS PUBLIC STATEMENTS ON

19     ALL -- PUBLISHED STATEMENTS ON ALL OF THIS, JUDGE.

20             THE COURT:  BUT WHERE IN THE RECORD DOES IT HAVE HER

21     SAYING THAT FDA GUIDANCE THAT SAYS IT'S NON-BINDING CREATES AN

22     OBLIGATION ON FOOD MANUFACTURERS, OR ON ANY MANUFACTURER?  I

23     DIDN'T SEE THAT.

24             MR. CLIFFORD:  NO.  THE CONTEXT OF MY ANSWER WAS

25     THAT --
```

1        THE COURT:  YEAH.

2        MR. CLIFFORD:  -- IF THAT'S AN ALLEGATION IN ONE OF

3   THOSE 11 COMPLAINTS, THEY -- NO QUESTION THAT THEY WENT THROUGH

4   EACH AND EVERY ALLEGATION OF THE 11 COMPLAINTS WITH HER AND

5   THOSE -- AND THOSE COMMENTS ARE IN THOSE COMPLAINTS.

6        THE COURT:  UM-HUM.

7        MR. RESCH:  AND, YOUR HONOR, THOSE COMPLAINTS ARE

8   THE -- ARE ALMOST WORD-FOR-WORD ON CERTAIN ALLEGATIONS IN THE

9   COMPLAINT HERE, AND I ALSO WENT THROUGH THOSE SAME THINGS WITH

10  HER AND TALKED ABOUT MY THEORY AND HOW I WAS GOING TO DEFEND

11  THOSE CASES.

12       MR. CLIFFORD:  AND WHAT HE'S TELLING THE COURT, THEN,

13  IS THAT THE MINUTE THEY HIRED THIS, THIS EXPERT WITNESS, SHE IS

14  GONE TO THE WORLD ON ANY DISCUSSION ON ANY TOPIC THAT INVOLVES

15  HER EXPERTISE.

16     SHE'S AN EXPERT WITNESS.  HE CONTEMPLATED HAVING HER AS A

17  TESTIFYING EXPERT WITNESS.  THEY TALK ABOUT ALL THE TIME THAT

18  HE SPENT WITH HER.

19     AND YET, SHE EITHER KNOWINGLY DECEIVED OUR LAWYERS THAT

20  THEY DID NOT KNOW THAT SHE WAS -- AND SHE DIDN'T TELL THEM THAT

21  SHE WAS AN EXPERT, OR SHE DIDN'T KNOW IT.

22     AND THERE'S NO REASON TO ASSUME THAT THIS LADY IS SUCH AN

23  EVIL PERSON THAT SHE DELIBERATELY HELD OUT FROM THESE LAWYERS

24  THE FACT THAT SHE HAD BEEN RETAINED AS AN EXPERT IN OTHER

25  CASES.

```
1              THE COURT:  DID ANY --

2              MR. CLIFFORD:  AND SHE WASN'T BILLED AS AN EXPERT.

3              THE COURT:  DID ANY OF PLAINTIFFS' COUNSEL UNDERSTAND

4     THAT EAS THOUGHT THAT THEY HAD NO CONFLICT IF THEY CONSULTED

5     WITH ONE COMPANY AS LONG AS THEY DIDN'T TESTIFY AGAINST THAT

6     COMPANY?

7              MR. CLIFFORD:  I'M NOT SURE -- COULD I HEAR THAT BACK

8     AGAIN?

9              THE COURT:  OKAY.  DID ANYONE ON YOUR TEAM OF

10    PLAINTIFFS' LAWYERS UNDERSTAND THAT THE WAY EAS WAS DEFINING A

11    CONFLICT WAS THAT THEY COULD BE ADVERSE TO A COMPANY AS LONG AS

12    THEY WERE JUST A CONSULTING EXPERT TO THAT COMPANY AND NOT A

13    TESTIFYING EXPERT?

14             MR. CLIFFORD:  I DON'T THINK THAT'S -- I DON'T THINK

15    THAT THAT'S WHAT THEY THOUGHT AT ALL.

16        I THINK THAT WHAT -- THAT WHAT HERRINGTON AND NELKIN

17    THOUGHT WHEN THEY SAW -- AND YOU HAVE IT IN THE DECLARATIONS --

18    WHEN EAS CAME BACK AFTER LOOKING AT A LIST OF SOME 25 CASES AND

19    SAID, "WE CAN WORK ON THESE 11.  WE CANNOT WORK ON THESE OTHER

20    14," WE -- WHEN ASKED, "WHY CAN'T YOU WORK ON THOSE OTHER 14?"

21    CHOBANI WASN'T SEPARATED OUT.

22        THE ANSWER IS THAT "WE HAVE CONFLICTS.  WE HAVE BUSINESS

23    RELATIONSHIPS.  WE DO THE SAME FOR YOU THAT WE DO FOR THEM,

24    MEANING THAT WE WILL NEVER BE ADVERSE TO YOU IN A CASE WHERE WE

25    HAVE A BUSINESS RELATIONSHIP WITH YOU."
```

1        THE IDEA OF LITIGATION -- AS HERRINGTON SPECIFICALLY SAYS

2    IN HIS DECLARATION, THE IDEA THAT CHOBANI -- THAT CHOBANI HAD

3    HER AS A WITNESS, AS AN EXPERT FOR THEM, CONSULTING OR

4    OTHERWISE, WAS THE FURTHEST THING FROM HIS MIND BECAUSE

5    SHE'S -- SHE SPECIFICALLY SAID, "WE WILL NOT BE ADVERSE TO

6    YOU."

7        I HOPE THAT ANSWERS THAT.

8          THE COURT:  WELL, THERE ARE MULTIPLE PLACES WHERE, IF

9    YOU LOOK AT THE TWO DECLARATIONS, WHERE SOMETIMES THEY SAY,

10   "WELL, EAS REPRESENTED THAT THEY WOULDN'T APPEAR ADVERSE TO

11   US" --

12         MR. CLIFFORD:  CORRECT.

13         THE COURT:  -- WHICH TO ME MEANS THEY SAID "WE WON'T

14   TESTIFY AGAINST YOU.  YOU WON'T SEE US BECAUSE WE'LL BE A

15   CONSULTING EXPERT BEHIND THE SCENES.  WE WILL NEVER APPEAR IN

16   COURT, AT A DEPOSITION."

17       CAN YOU --

18         MR. CLIFFORD:  I THINK -- I THINK YOU MIGHT BE -- I

19   THINK YOUR INTERPRETATION ABOUT THAT MAY WELL BE FAIR.

20       BUT THEN YOU HAVE TO GO THE NEXT STEP FURTHER AND SAY THAT

21   DURING THE COURSE OF THOSE DISCUSSIONS WITH COUNSEL, SHE

22   COMMUNICATED SOME CONFIDENTIAL INFORMATION.

23       AND THE BEST THAT YOU COULD GIVE THEM IS THAT IN HER MIND

24   WHEN SHE WAS TALKING TO THEM, SHE KNEW THEIR PLAYBOOK OR

25   SOMEHOW INTUITIVELY -- IN ANSWERING A QUESTION, SHE SOMEHOW

```
1      INTUITIVELY RESPONDED WITH SOME OF THEIR PLAYBOOK.

2          THAT IS ENTIRELY DIFFERENT THAN ALL OF THE CASES THAT YOU

3      HAVE SEEN.  THIS IS -- AND THESE ARE LAWYERS -- THIS IS NOT

4      EVEN A MATTER THAT'S BEFORE THE COURT IN TERMS OF THEY'RE

5      CONSULTING ON 11 CASES, NONE OF WHICH ARE HERE, AND WHAT THEY

6      HAVE YOU TRYING TO DO IS TO DISQUALIFY LAWYERS WHO AREN'T EVEN

7      BEFORE YOU.

8          AND SO THE -- YOU KNOW, THERE'S NOTHING THAT SHE WAS

9      TALKING ABOUT THAT'S MATERIALLY RELEVANT TO THE ISSUES THAT ARE

10     IN FRONT OF YOU IN THE CHOBANI CASE.

11         THERE'S NO QUESTION THAT ALL OF THESE MISBRANDING CASES

12     HAVE SIMILAR ISSUES OF ECJ, OF ALL NATURAL AND SO FORTH.

13         BUT YOU'VE SEEN IT YOURSELF THAT THESE CASES ARE -- THERE

14     ARE DIFFERENCES AND THEY'RE BEING DEFENDED DIFFERENTLY.  THERE

15     ARE COMMONALITIES, BUT THEY'RE BEING DEFENDED DIFFERENTLY.

16         THE MERE FACT THAT THEY HAVE THE SAME BODY OF REGULATORY

17     LAW DOES -- AND SO, THEREFORE, THERE ARE OVERLAPPING ISSUES, AS

18     THEY CALL THEM, IS NOT THE STORY.

19         THE FACT THAT AN EXPERT KNOWS THE PLAYBOOK ABOUT HOW ONE

20     COMPANY MIGHT DEAL WITH THOSE THINGS DOES NOT MEAN THAT --

21             THE COURT:  SO THE ALL --

22             MR. CLIFFORD:  -- THEY'RE REPORTING CONFIDENTIAL

23     INFORMATION.

24             THE COURT:  -- NATURAL AND NO SUGAR ADDED CLAIMS WERE

25     ALSO DISCUSSED WITH MS. CAMPBELL AND MR. HERRINGTON AND
```

```
 1        MR. NELKIN?

 2             MR. CLIFFORD:  I BELIEVE -- I -- AGAIN, I'M NOT

 3   THERE.  IF YOUR HONOR THINKS WE'VE SOMEHOW DECEIVED YOU BY NOT

 4   HAVING THEM HERE, THEN I SEEK YOUR LEAVE TO CONTINUE THIS

 5   HEARING AND BRING THEM IN FOR AN EVIDENTIARY HEARING.

 6             THE COURT:  WELL, THEY SAID THEY WENT THROUGH ALL THE

 7   11 COMPLAINTS.

 8             MR. CLIFFORD:  THEY DID.  I'M TELLING YOU THEY DID.

 9             THE COURT:  AND THEY WENT THROUGH THE ALLEGATIONS IN

10   THE COMPLAINT.

11             MR. CLIFFORD:  THEY DID.  THERE'S NO QUESTION.

12             THE COURT:  AND THESE ALLEGATIONS HAVE ALL NATURAL

13   CLAIMS, NO SUGAR ADDED CLAIMS --

14             MR. CLIFFORD:  I THINK SOME DO.

15             THE COURT:  -- AND EVAPORATED CANE JUICE CLAIMS.

16             MR. CLIFFORD:  I THINK SOME DO.

17             THE COURT:  SO WHAT'S THE ANSWER?  WE HAVE TO

18   CONTINUE THE HEARING?  WE HAVE TO CONTINUE THE HEARING?

19             MR. CLIFFORD:  THAT'S REALLY NOT A FAIR COMMENT.

20             THE COURT:  OKAY.  WELL, WHAT IS THE ANSWER?

21             MR. CLIFFORD:  THE ANSWER TO THE QUESTION IS YES.

22   YOU JUST SAID THE ANSWER.

23             THE COURT:  OKAY.

24             MR. CLIFFORD:  BUT I'M CURIOUS TO KNOW HOW THE COURT

25   GETS TO THAT COMMUNICATING CONFIDENTIAL INFORMATION.
```

```
 1              THE COURT:  WHAT IS THE -- I'M JUST ASKING QUESTIONS

 2    HERE.

 3              MR. CLIFFORD:  OKAY.

 4              THE COURT:  I'M TRYING TO GET INFORMATION FROM THIS

 5    HEARING.

 6              MR. CLIFFORD:  OKAY.

 7              THE COURT:  DO YOU WANT ME TO DO THAT OR DO YOU WANT

 8    ME TO JUST STOP AND WRITE THE ORDER WITHOUT ASKING QUESTIONS?

 9              MR. CLIFFORD:  NO.  I --

10              THE COURT:  I CAN DO THAT AS WELL.

11              MR. CLIFFORD:  WHAT I -- NO.

12              THE COURT:  I JUST HAVE QUESTIONS.

13              MR. CLIFFORD:  I'D LIKE FOR YOUR HONOR NOT TO THINK

14    ILL OF ME BECAUSE I'M NOT BEING ABLE TO NECESSARILY GET IN

15    SYNCH WITH YOU.  WE'RE WELL INTENTIONED.  THESE ARE TWO GOOD

16    LAWYERS WHO HAVE BEEN ACCUSED OF ETHICAL VIOLATIONS.  THEY'VE

17    DONE NOTHING WRONG.

18       THESE GUYS HAD EVERY ACCESS TO HER TO DETERMINE WHETHER OR

19    NOT SHE COMMUNICATED THEIR STUFF.  THEY DIDN'T TAKE ADVANTAGE

20    OF IT.  THEY FIRED HER.

21       I MEAN, IT'S JUST NOT RIGHT TO SUGGEST THAT THESE LAWYERS

22    WERE DELIBERATELY UNDERMINING THE RULE OF LAW OR THEIR

23    PROFESSION.  THEY'RE GOOD MEN AND THEY'VE DONE -- AND THEY DID

24    NOT KNOW THAT SHE WAS AN EXPERT.

25              IN THE WORST LIGHT, THEY WERE DELIBERATELY MISLED.  IN THE
```

```
1    BEST LIGHT, EVEN EAS AND BETTY CAMPBELL DIDN'T KNOW THE IMPORT

2    OF ALL OF THIS.

3         WHEN I TRIED TO GET A DECLARATION FROM BETTY CAMPBELL TO

4    BRING IN FRONT OF YOU, I COULDN'T GET IT.  THEY THREATENED EAS

5    WITH LITIGATION.  THEY INTIMIDATED BETTY CAMPBELL.

6         YOU KNOW, IT -- LET ME GO TAKE HER DEPOSITION.

7              THE COURT:  WELL, YOU'VE APPARENTLY STIPULATED THAT

8    YOU'RE NOT GOING TO.

9              MR. CLIFFORD:  I -- AND I DID NOT, AND THAT'S WHAT I

10   TOLD YOU IN THE BEGINNING.

11        WHAT WE STIPULATED TO --

12             THE COURT:  OKAY.  I HAVE QUESTIONS.

13             MR. CLIFFORD:  WAIT, BUT --

14             THE COURT:  DO YOU WANT TO ANSWER MY QUESTIONS OR

15   NOT?  I DO HAVE ANOTHER CASE PENDING.

16             MR. CLIFFORD:  BUT YOU JUST SAID SOMETHING THAT'S NOT

17   CORRECT.  I DIDN'T STIPULATE THAT WE WOULDN'T TAKE HER

18   DEPOSITION.

19        I STIPULATED THAT WE WOULDN'T TAKE THE DEPOSITIONS OF THESE

20   DECLARANTS TO THESE PLEADINGS, SUCH AS MR. RESCH OR

21   PROFESSOR PANSKY OR PROFESSOR DAVIS.  THAT'S WHAT I STIPULATED

22   TO.  OR MR. GIALI.

23             MR. RESCH:  YOU DIDN'T --

24             MR. CLIFFORD:  I DIDN'T STIPULATE TO NOT TAKING

25   BETTY CAMPBELL'S DEPOSITION.
```

```
 1              MR. RESCH:  THAT IS NOT CORRECT, YOUR HONOR.

 2              MR. CLIFFORD:  WELL, THERE YOU GO.

 3              MR. RESCH:  AND FOR THE RECORD, AND I DON'T WANT TO

 4    INTERRUPT --

 5              MR. CLIFFORD:  I'M NOT FINISHED.  I DON'T THINK --

 6              MR. RESCH:  ALL RIGHT.  I'LL STAY OUT OF IT.

 7              MR. CLIFFORD:  THANK YOU.

 8              MR. RESCH:  GO AHEAD, YOUR HONOR.

 9              MR. CLIFFORD:  I MEAN, IS IT REALLY A GRANT OF -- IS

10    THERE REALLY --

11              THE COURT:  OKAY.  MR. HERRINGTON AND MR. NELKIN'S

12    DECLARATIONS USE THE WORDS "APPEARING," "BEING ADVERSE," OR

13    "PROVIDING EXPERT SERVICES" INCONSISTENTLY, SO I JUST WANT TO

14    UNDERSTAND, WHAT WAS THE REPRESENTATION?  WAS IT THAT EAS WOULD

15    NEVER APPEAR?

16              MR. CLIFFORD:  THEY --

17              THE COURT:  I'M JUST NOT CLEAR.

18              MR. CLIFFORD:  YEAH.  THEY UNDER -- THEY UNDERSTOOD

19    THAT EAS WOULD NOT BE WORKING AGAINST THEM ON THE CASES.

20    THAT'S WHAT THEY UNDERSTOOD.

21         IT -- AS HERRINGTON SAYS IN HIS DECLARATION TO THE COURT,

22    HE WAS -- I DON'T KNOW IF THE WORD "SHOCKED" IS THERE, BUT HE

23    WAS SHOCKED THAT IT TURNED OUT THAT SHE WAS WORKING WITH

24    CHOBANI.

25              THE LAST THING IN THE WORLD THAT HE HAD -- THERE ARE A LOT
```

1    OF -- THIS IS A BIG COMPANY.  THEY COULD HAVE MANY BUSINESS

2    RELATIONSHIPS.  AND AS TO WHY, THEY COULD BE CONSULTING WITH

3    THEM ON A WHOLE HOST OF OTHER THINGS.

4        BUT NOT APPEARING AGAINST THEM OR NOT WORKING AGAINST THEM

5    WOULD BE IN ANY LITIGATION CONTEXT, AND THE BILLS BEAR THAT

6    OUT.  SHE'S NOT BILLED FOR WORKING ON LITIGATION.

7            THE COURT:  OKAY.  SO, I MEAN, I AM LOOKING AT

8    MR. HERRINGTON'S DECLARATION, PARAGRAPH 9, PARAGRAPH 10,

9    PARAGRAPH 12.  HE CONTINUOUSLY SAYS, "EAS WOULD NOT APPEAR

10   AGAINST US," "EAS WOULD NEVER APPEAR IN THE CASE AGAINST US,"

11   "THEY WOULD NOT APPEAR ADVERSELY IN ANY OF THE CASES ON THE

12   LIST."

13       SO YOUR POSITION IS THAT THERE'S REALLY NO MEANING TO

14   "APPEAR," BUT --

15           MR. CLIFFORD:  FROM THE --

16           THE COURT:  -- THAT HE JUST REALLY MEANT THEY'LL

17   NEVER WORK AGAINST YOU?

18           MR. CLIFFORD:  CORRECT.  I MEAN, IF YOU'RE DRAWING A

19   DISTINCTION BETWEEN COMING FORWARD AND TESTIFYING AS AN EXPERT,

20   I'M NOT -- THEY'RE NOT DRAWING THAT DISTINCTION BETWEEN

21   CONSULTING AND TESTIFYING.

22       AND MR. RESCH HAS HANDLED THAT ONE FOR US BY SAYING THEY

23   CONTEMPLATED THAT SHE WAS GOING TO BE A TESTIFYING WITNESS.

24       AND BY THE WAY, WHEN THEY WERE TOLD ABOUT THE CONFLICT,

25   THEY WERE TOLD THAT EAS HAD THE CONFLICT, YOUR HONOR.  THEY

```
 1      WEREN'T TOLD THAT BETTY CAMPBELL HAD THE CONFLICT.  SO THAT'S

 2      ONE THING THAT MAYBE ISN'T CLEAR TO THE COURT.

 3              THE COURT:  IF MR. -- I THOUGHT MR. HERRINGTON IS THE

 4      ONE WHO FOLLOWED UP AND ASKED ABOUT THE NATURE OF THE CONFLICT

 5      AND EAS --

 6              MR. CLIFFORD:  HE IS.

 7              THE COURT:  -- WOULD NOT RESPOND.

 8              MR. CLIFFORD:  RIGHT.  HE IS THE ONE, YES.

 9              THE COURT:  SO I'M JUST UNCLEAR BECAUSE MR. NELKIN

10      SAYS, "OH, NO, NO.  EAS AND MR. STEEL SAID THAT IT WAS JUST A

11      COURTESY THING AND THAT WE WOULD GET THE SAME COURTESY, AND ON

12      A BUSINESS DECISION, THEY DECIDED THAT THEY WOULD NOT WORK WITH

13      US FOR THE CASES WHERE THEY DIDN'T WANT TO WORK WITH US, BUT

14      THERE WAS NO LEGAL CONFLICT."

15              MR. CLIFFORD:  AND THAT --

16              THE COURT:  THAT'S WHAT HIS DECLARATION SAYS.  SO I'M

17      JUST CONFUSED, BECAUSE MR. HERRINGTON IS SAYING, "WE SAW THE

18      LIST, WE WANTED TO FOLLOW UP TO FIND OUT WHY ARE THESE OTHER

19      COMPANIES NOT ON THE LIST, AND THEY WOULDN'T PROVIDE AN

20      ANSWER."

21          BUT THEN MR. NELKIN IS SAYING, "NO.  THEY SAID IT WAS JUST

22      A PROFESSIONAL COURTESY.  THERE WAS NO CONFLICT."

23          I -- HOW AM I TO UNDERSTAND THIS DISTINCTION BETWEEN THE

24      TWO?

25              MR. CLIFFORD:  WELL, IT IS MY -- I THINK THE ANSWER
```

```
 1         TO THAT IS THAT THEY BOTH INDEPENDENTLY, BUT MORE HERRINGTON

 2         THAN NELKIN, HAD COMMUNICATIONS.  THEY BOTH SAT IN ON THE

 3         MEETING.

 4             THEY'RE NOT MUTUALLY EXCLUSIVE.  IT COULD EASILY HAVE

 5         BEEN -- WE HAD THEM INDEPENDENTLY GIVE THEIR BEST RECALL TO THE

 6         COURT ON THIS, AND THEY'RE NOT MUTUALLY EXCLUSIVE FOR

 7         HERRINGTON TO COME AWAY WITH IT AS HE RECORDS IT AND REPORTS IT

 8         TO YOU AND FOR NELKIN TO BE DOING THE SAME.  THEY'RE NOT

 9         MUTUALLY EXCLUSIVE FOR THOSE THINGS TO BE SAID.

10             AND IN THE BUSINESS CONTEXT -- YOU KNOW, ONE OF THE

11         COMMENTS MADE ABOUT SHADOW TRAFFIC AND DELOITTE -- AND EVEN IN

12         SHADOW TRAFFIC, THEY NOTE THAT DELOITTE IS A SOPHISTICATED

13         COMPANY.

14                 THE COURT:  SO I HAD A QUESTION.  FOR OTHER THINGS

15         YOU'VE SAID, "I WASN'T THERE.  I HAVEN'T TALKED TO THEM.

16         THEY'RE NOT HERE TO ANSWER."

17             HOW DO YOU KNOW THAT THIS, YOU KNOW, THIS LANGUAGE THAT

18         GOES BACK AND FORTH "WOULD NOT TESTIFY FOR A PARTY ADVERSE TO

19         THE BERRETT LAW GROUP, WOULD NEVER APPEAR ON THE OTHER SIDE OF

20         ANY OF OUR CASES," HOW DO YOU KNOW THAT THAT HAS NO MEANING AND

21         THAT WHAT EAS REALLY SAID WAS, "I WOULD NEVER, EVER WORK

22         AGAINST YOU, EITHER AS A CONSULTANT OR AS A TESTIFYING EXPERT"?

23                 MR. CLIFFORD:  I PARTICIPATED IN THE DRAFTING OF

24         THESE DECLARATIONS AND I'VE INTERVIEWED HERRINGTON AND I'VE

25         INTERVIEWED NELKIN.
```

```
 1              THE COURT:  OKAY.  SO FOR THIS ONE YOUR MEMORY IS
 2     CRYSTAL CLEAR, BUT FOR THE OTHER QUESTIONS, YOU'RE TELLING ME
 3     YOU NEED TO TALK TO THEM?
 4              MR. CLIFFORD:  I'M NOT SAYING THAT, JUDGE.
 5              THE COURT:  OKAY.
 6              MR. CLIFFORD:  AND, YOUR HONOR, I'M GIVING YOU --
 7     THIS IS NOT "I DON'T RECALL" WHERE IT RAISES THE SUSPICION
 8     ABOUT THE ACCURACY AND CREDIBILITY OF THAT.
 9         (PAUSE IN PROCEEDINGS.)
10              THE COURT:  NOW, MR. NELKIN MAKES ADDITIONAL
11     REPRESENTATIONS THAT MR. HERRINGTON DOES NOT.  WOULD THEY --
12     CAN YOU CONFIRM WHETHER THE FOLLOWING STATEMENTS WOULD ALSO BE
13     TRUE FOR MR. HERRINGTON THAT ARE IN MR. NELKIN'S DECLARATION?
14     HE SAYS, "I NEVER DISCUSSED THE STANDARD OF IDENTITY FOR YOGURT
15     WITH MS. CAMPBELL."  THAT'S PARAGRAPH 11 OF THE NELKIN
16     DECLARATION.  IS THAT TRUE FOR MR. HERRINGTON?
17              MR. CLIFFORD:  YES.
18              THE COURT:  "EVERYTHING DISCUSSED ON THE ALL NATURAL
19     ISSUE WAS ALREADY PREVIOUSLY DISCLOSED IN MULTIPLE PUBLICATIONS
20     BY MS. CAMPBELL THAT WERE PUBLICLY DISSEMINATED BY MS. CAMPBELL
21     AFTER THE FILING OF THE KANE V. CHOBANI CASE."  IS THAT CORRECT
22     FOR MR. HERRINGTON AS WELL?
23              MR. CLIFFORD:  YES.
24              THE COURT:  OKAY.  SO I JUST HAD A QUESTION.  THIS
25     OCTOBER 24TH MEETING IS EITHER DESCRIBED AS BEING A LENGTHY
```

```
 1      FULL DAY MEETING, OR ONE OF THE EXPERTS, I THINK IT'S

 2      MR. GREEN, SAYS IT WAS SIX HOURS LONG.

 3          WHY WOULD IT TAKE SIX HOURS IF IT'S JUST SAYING JUST THE

 4      COUPLE OF LINES THAT ARE IN THE TWO DECLARATIONS?  IT JUST

 5      DOESN'T SEEM THAT THAT WOULD TAKE --

 6              MR. CLIFFORD:  I ASKED THAT SAME QUESTION --

 7              THE COURT:  -- THAT LONG.

 8              MR. CLIFFORD:  -- AT THE VERY BEGINNING OF THIS WHEN

 9      I STARTED GOING THROUGH THIS WITH THEM.

10              THE COURT:  UM-HUM.

11              MR. CLIFFORD:  AND WHAT THEY DID -- THE PROCESS WAS

12      THEY MET AND THEY WENT OVER, IN A VERY DELIBERATE WAY, EACH AND

13      EVERY COMPLAINT OF THE 11 COMPLAINTS.  YOU'VE -- YOUR HONOR HAS

14      SEEN THESE COMPLAINTS.  THEY'RE VERY DETAILED.  THEY HAVE

15      PICTURES.  THEY HAVE COPIES OF ALL THE LABELS.

16          THEY WENT OVER THEM LINE-BY-LINE, AND IF YOU DIVIDE SIX

17      HOURS WITH, YOU KNOW, THE --

18              THE COURT:  THEY'RE VERY SIMILAR, AND IN SOME OF MY

19      CASES I'VE HAD OTHER ALLEGATIONS FROM OTHER COMPLAINTS

20      ACCIDENTALLY CUT AND PASTED INTO ANOTHER COMPLAINT.

21              MR. CLIFFORD:  I'M SURE.

22              THE COURT:  THAT HAS HAPPENED.

23              MR. CLIFFORD:  AND THAT WAS THE ANSWER THAT I WAS

24      GIVEN AND KNOWING THESE MEN AS I DO, I CAN -- I ACCEPT THAT.  I

25      HAVE NO HESITANCY TO ACCEPT THAT THAT WAS THE PROCESS.
```

1       ONCE AGAIN, I GAVE COUNSEL FOR CHOBANI EVERY OPPORTUNITY TO

2  GO SIT DOWN WITH BETTY CAMPBELL AND STEEL AND CONFIRM THAT AND

3  WITHOUT ANY PRIVILEGE OR WORK PRODUCT ISSUES BEING RAISED BY

4  US.

5       AND SO THAT'S MY UNDERSTANDING OF WHAT WENT ON.  THEY --

6            THE COURT:  OKAY.

7            MR. CLIFFORD:  MR. RESCH SPENT, ON ONE COMPLAINT, HE

8  SAYS HE SPENT 15 HOURS WITH HER.

9            THE COURT:  OKAY.  SO IT APPEARS THAT THERE WAS A

10 DISCUSSION ABOUT WHETHER THERE WAS, IN FACT, A VIOLATION OF LAW

11 AND THE TRIGGERING OF THE UNLAWFUL PRONG OF THE UCL.  THAT'S IN

12 MR. NELKIN'S DECLARATION.

13      AND WE'VE ALREADY TALKED ABOUT WHETHER THESE FDA GUIDANCE

14 AND WARNING LETTERS WOULD HAVE CREATED AN OBLIGATION ON FOOD

15 MANUFACTURERS.

16           MR. CLIFFORD:  AND I THINK THAT THEY BOTH GO FURTHER

17 TO SAY THAT ON THAT SCORE --

18           THE COURT:  UM-HUM.

19           MR. CLIFFORD:  -- THEY DID -- THOSE WERE QUESTIONS OF

20 LAW.  THEY DID NOT DISCUSS LAW, LEGAL THEORIES, LEGAL STRATEGY.

21 THEY WENT THROUGH THESE COMPLAINTS WITH A VIEW TOWARDS FDA

22 COMPLIANCE.

23      AND I THINK IT WAS SPECIFICALLY NELKIN THAT SPEAKS TO THE

24 NOTION THAT HE DIDN'T NEED ANY DISCUSSION WITH MS. CAMPBELL

25 ABOUT LAW DEFENSES OR ANYTHING TO THE EFFECT OF STRATEGY.

1          THE COURT:  RIGHT.  BUT IN THE PARAGRAPH ABOVE, HE

2     SAYS, "WE NEEDED HER SERVICES TO DEAL WITH WHETHER THERE WAS A

3     VIOLATION OF LAW AND A TRIGGERING OF THE UNLAWFUL PRONG OF THE

4     UCL."

5          MR. CLIFFORD:  WHICH PARAGRAPH ARE YOU ON, JUDGE?

6          THE COURT:  THAT MEANS WHETHER THE FDA GUIDANCE AND

7     WARNING LETTERS, WHICH FDA GUIDANCE SAYS IT'S NON-BINDING,

8     WHETHER THAT CREATES AN OBLIGATION ON FOOD MANUFACTURERS.

9          MR. CLIFFORD:  YOUR HONOR, YOU KNOW THERE'S A DEBATE

10    ABOUT THE BINDING EFFECT OF THE FDA --

11         THE COURT:  UM-HUM.  AND YOU WOULDN'T GO TO AN FDA

12    EXPERT TO ASK ABOUT THAT?

13         MR. CLIFFORD:  WELL, SHE IS AN FDA EXPERT.

14         THE COURT:  I KNOW.  SO I'M SAYING THAT THOSE

15    CONVERSATIONS WERE HAD WITH HER BECAUSE THAT'S HER EXPERTISE,

16    RIGHT?  YOU WOULDN'T -- ISN'T THAT WHY YOU WOULD GO TO AN FDA

17    EXPERT, TO FIND OUT HOW DOES THE FDA VIEW ITS OWN GUIDANCE AND

18    ITS OWN WARNING LETTERS?

19         MR. CLIFFORD:  AND THE ANSWER TO THAT COULD -- WOULD

20    BE YES.

21       BUT WHAT DOES THAT HAVE -- THAT DIDN'T GET -- WHATEVER HER

22    ANSWER WAS DIDN'T COME FROM MR. RESCH OR CHOBANI.  IT COMES

23    FROM HER OWN EXPERTISE, HER OWN UNDERSTANDING OF THE FDA

24    REGULATORY PROCESS.  THAT'S KIND OF THE POINT HERE.  THAT'S HER

25    EXPERTISE.  THAT'S -- SHE DIDN'T GET HER ANSWER TO THAT

```
 1       QUESTION FROM MR. RESCH.

 2              THE COURT:  LET ME ASK, THIS AD HOC CONSULTING AND

 3       CONFIDENTIALITY AGREEMENT, IT LOOKS LIKE IT'S SORT OF PUTTING

 4       SOMEONE ON RETAINER AND THAT WHEN YOU NEED THEM, YOU WILL KIND

 5       OF ENLIST THEIR SERVICES AND THEN PAY THEM.  IT'S GOT PRETTY

 6       SPECIFIC PAYMENT AMOUNTS FOR, YOU KNOW, WHETHER IT'S COSMETICS

 7       VERSUS FOOD, ET CETERA.

 8         IS THAT REALLY -- I MEAN, THIS DOESN'T MENTION LITIGATION.

 9              MR. CLIFFORD:  WELL, YES, IT DOES.  IF YOU GET INTO

10       THE SCHEDULES, YOUR HONOR, THE -- THAT'S ONE OF OUR POINTS

11       HERE.  WE THINK THEY'RE DRIVING THE KANE VERSUS CHOBANI CASE

12       THROUGH AN AGREEMENT THAT WAS ENTERED INTO IN NOVEMBER OF 2010

13       THAT HAD NOTHING TO DO WITH THE KANE VERSUS CHOBANI CASE, AND

14       THAT'S PART OF THE PROBLEM HERE.

15         "AD HOC" HAS A SPECIFIC MEANING, YOU KNOW, AS YOU WELL

16       KNOW, IN THE LAW OF CONTRACT, "FOR A SPECIFIC PURPOSE."

17         AND IF YOU LOOK AT THEIR SCHEDULE OF SERVICES AND THEIR

18       BILLING FOR THAT, WHEN THEY ENGAGE IN CONSULTATION THAT HAS

19       ANYTHING TO DO WITH LITIGATION, THE RATE IS DIFFERENT.

20         ALL OF THE RATES THAT BETTY CAMPBELL CHARGED TO CHOBANI

21       WERE FOR THE NON-LITIGATION-BASED RATE STRUCTURE.

22         IF YOU COMPARE THAT TO OUR BILLING, SHE BILLS US AT THE

23       LITIGATION RATE STRUCTURE.

24         SO IF SHE WAS THEIR EXPERT, THEN THE ONLY TWO PEOPLE WHO

25       DIDN'T KNOW ABOUT IT WERE BETTY CAMPBELL, OR SHE'S LYING, AND
```

```
1     THE BILLING DEPARTMENT BECAUSE THEY DIDN'T BILL THEM THAT WAY,

2     WHICH IS ONE OF THE REASONS WHY I ASKED THEM TO GIVE TO YOU, IN

3     CAMERA, ALL OF THEIR BILLS, WHICH THEY DON'T DO.

4          THE COURT:  ALL RIGHT.  WHAT'S YOUR RESPONSE TO THAT,

5     MR. RESCH?

6          MR. RESCH:  SHE WAS A CONSULTANT IN THE LITIGATION.

7     SHE BILLED US UNDER THE CONSULTING RATE.

8          "AD HOC" IS EXACTLY WHAT YOUR HONOR THOUGHT IT WAS.  I

9     THINK -- I DON'T AGREE WITH THE WAY COUNSEL INTERPRETS "AD

10    HOC."  THIS WAS THE AGREEMENT.  THEY PROVIDED SERVICES FROM THE

11    TIME OF THE AGREEMENT, OR SHORTLY THEREAFTER, AND THE BILLS

12    SHOW CONSULTATION ABOUT THIS LITIGATION.

13         THE REASON THAT WE PUT IN SELECT ENTRIES FROM THE BILLS WAS

14    TO SHOW THE COURT, WITHOUT REVEALING OR WAIVING ANY PRIVILEGE,

15    THAT SHE WAS CONSULTING.

16         SO THE CONSULTING RATE -- THE LITIGATION RATE THAT'S SET

17    FORTH THERE, MY UNDERSTANDING WAS THAT THAT WOULD BE CHARGED IF

18    SHE WAS GOING TO TESTIFY.  AND SO SHE -- THAT IS A CONSULTANT

19    FOR LITIGATION.

20         THE BILLS THAT SHE HAS REFERENCE THIS CASE SPECIFICALLY,

21    AND I'M CHOBANI'S OUTSIDE COUNSEL IN THIS CASE HAVING EXTENSIVE

22    DISCUSSIONS WITH HER.

23         SO YOU HAVE THE BILLS, YOU HAVE THE AGREEMENT, YOU HAVE

24    MR. DEGNAN'S DECLARATION FROM KING & SPALDING, YOU HAVE

25    MS. KING'S DECLARATION FROM CHOBANI.
```

```
1        THIS IS -- THERE'S REALLY NO PLACE TO DISPUTE THAT SHE WAS
2    WORKING WITH ME ON THIS CASE.
3        AND, YOUR HONOR, AS I SAY IN MY DECLARATION, I SPOKE
4    SPECIFICALLY ABOUT THE ALLEGATIONS IN THIS CASE AND DEFENDING
5    THIS CASE IN DETAIL WITH HER, PARAGRAPH-BY-PARAGRAPH, THE SAME
6    LANGUAGE THAT SHE WENT THROUGH WITH PLAINTIFFS' COUNSEL.
7            THE COURT:  AND WHAT WAS SHE?  A CONSULTING EXPERT?
8            MR. RESCH:  YES.
9            THE COURT:  HAD YOU MADE A DECISION ABOUT WHETHER SHE
10   WAS GOING TO BE A TESTIFYING EXPERT AT THIS POINT?
11           MR. RESCH:  NO.
12           MR. CLIFFORD:  AND, YOUR HONOR, THAT'S THE SAME
13   CAPACITY THAT SHE WAS HIRED FOR BY THE BARRETT LAW GROUP, AND
14   IF YOU LOOK AT THAT -- AT THOSE BILLS, IT'S THE LITIGATION
15   RATE.
16       IT IS -- SO THE POINT IS THAT WE MAINTAIN THAT THE -- THAT
17   THEY ENTER INTO A NEW CONTRACT WITH EVERY, EVERY NEW
18   UNDERTAKING.  THEY HAD SOME KIND OF UNDERTAKING IN NOVEMBER OF
19   2010 THAT THEY REFUSED -- AND IT IS THEIR RIGHT, AS IS THEIR
20   RIGHT -- TO TELL US ABOUT.
21       I THINK THE COURT HAS A RIGHT TO ASK ABOUT IT IN CAMERA.
22       BUT THE POINT BEING THAT WE BELIEVE THAT --
23           THE COURT:  BUT EAS OBVIOUSLY THOUGHT IT HAD A
24   CONFLICT WITH CHOBANI.
25           MR. CLIFFORD:  YES, YOUR HONOR.  BUT IT DIDN'T HAVE
```

1    TO BE --

2              THE COURT:  IT WAS ON THE LIST AND THEY WON'T PROVIDE

3    INFORMATION ABOUT WHAT IT WAS GOING TO BE.

4              MR. CLIFFORD:  BUT IT DIDN'T HAVE TO BE

5    LITIGATION-BASED.

6       IF, FOR AN EXAMPLE -- IF, FOR AN EXAMPLE, THERE WAS NO --

7    IF THERE WAS NO LITIGATION PREDICATE AND SOMEONE CAME TO EAS

8    WITH A CASE THAT THEY WANTED TO TALK ABOUT ADVERSE TO CHOBANI,

9    WITHOUT LITIGATION AT ALL, FROM WHAT ED STEEL HAS TOLD US --

10   AND IT'S IN THE MATERIAL FROM HERRINGTON AND NELKIN -- THEY

11   WOULD NOT WORK ON A CASE WHERE CHOBANI WAS ADVERSE IF A

12   COMPETITOR CAME.  THEY HAD A BUSINESS RELATIONSHIP.

13      SO IT'S -- IT'S A LEAP TO SAY AND IMPORT TO HERRINGTON AND

14   NELKIN THAT THEY KNEW THAT THE CHOBANI CONFLICT, HIDDEN AMONG

15   13 OTHERS, HAD ANYTHING TO DO WITH LITIGATION, AS A LITIGATION

16   BASE.

17           AND IT'S INEXPLICABLE, IF YOU LOOK AT WHAT COUNSEL SAYS --

18              THE COURT:  I ASSUME YOUR AGREEMENT, SINCE YOU ALL

19   ONLY DO LITIGATION AND YOU DON'T ACTUALLY DO FOOD PRODUCTS --

20              MR. CLIFFORD:  IT'S THE SAME AGREEMENT.  IT'S THE

21   SAME -- IF YOU LOOK AT THE RECORDS, THE RECORDS SHOW YOU THE

22   SAME -- IT WAS ABSOLUTELY --

23              THE COURT:  SO IT WAS -- EVEN THOUGH IF YOU'RE HIRED

24   FOR LITIGATION, YOU STILL GET AN AD HOC CONSULTING AGREEMENT?

25              MR. CLIFFORD:  YES.  OUR AGREEMENT IS ALMOST

```
 1        IDENTICAL, AND THAT'S OUR POINT.  IT'S A -- "AD HOC" HAS A

 2        DEFINITION.  "AD HOC" MEANS "FOR A SPECIFIC PURPOSE."  IT

 3        DOESN'T JUST SAY, "THIS IS OUR AGREEMENT."  IT SAYS, "THIS IS

 4        AN AD HOC AGREEMENT AND IT'S FOR A SPECIFIC PURPOSE."

 5            SO SOME SPECIFIC PURPOSE OCCURRED IN NOVEMBER OF 2010, AND

 6        SO IF A COMPETITOR OF CHOBANI CAME TO EAS AND HAD ANYTHING TO

 7        DO WITH BEING ADVERSE TO CHOBANI, EVEN IN A NON-LITIGATION

 8        BASE, WE WERE TOLD THEY WOULD NOT, AS A MATTER OF COURTESY,

 9        BUSINESS COURTESY, WORK FOR THEM.

10            SO THE IDEA THAT WE KNEW THAT SHE WAS AN EXPERT IS JUST NOT

11        FACTUAL.

12                MR. RESCH:  YOUR HONOR, AN AD HOC AGREEMENT IS

13        EXACTLY WHAT YOUR HONOR SAID IT WAS.  THEY'VE BEEN OPERATING

14        UNDER THIS IN VARIOUS ISSUES AS THEY COME UP.  IT'S BILLED AND

15        HANDLED UNDER THAT AGREEMENT.  THERE'S NO QUESTION ABOUT THAT.

16                MR. CLIFFORD:  AND I DIDN'T CHALLENGE --

17                MR. RESCH:  EXCUSE ME.

18                MR. CLIFFORD:  BUT I DIDN'T CHALLENGE THE --

19                THE COURT:  OKAY.  LET HIM FINISH, PLEASE.

20                MR. CLIFFORD:  OKAY.

21                THE COURT:  YOU'VE GONE ON FOR A LONG TIME.

22                MR. RESCH:  THANK YOU.

23                MR. CLIFFORD:  ALL RIGHT.

24                MR. RESCH:  AND, YOUR HONOR, WHETHER OR NOT IT WAS IN

25        LITIGATION, WHICH IT WAS AS THE BILLS MAKE CLEAR AND THE
```

1    DECLARATION MAKES CLEAR, OR AS A CONSULTING ARRANGEMENT IN

2    ANTICIPATION OF LITIGATION, FOR EXAMPLE, IS NOT THE POINT.

3        SHE GOT THE CONFIDENTIAL INFORMATION.  THEY ALERTED

4    PLAINTIFFS' COUNSEL THERE WAS A CONFLICT.

5        MR. CLIFFORD IS STATING THAT HOW DID THEY SPECIFICALLY KNOW

6    WHAT THE CONFLICT WAS?  THEY DIDN'T KNOW IT WAS A LITIGATION

7    CONFLICT.

8        BUT THEY DON'T JUST GET TO HEAR THERE'S A CONFLICT WITH AN

9    EXPERT THEY WANT TO HIRE AND THEN GO OFF CHARGING.

10       THAT'S THE WHOLE POINT OF SHADOW TRAFFIC.  ONCE THEY HEAR

11   THERE'S A CONFLICT, THEY'VE GOT AN OBLIGATION AT THAT POINT.

12   THEY CAN'T JUST BURY THEIR HEAD IN THE SAND AND GO FORWARD AND

13   HOPE THAT THE CONFLICT ISN'T SOMETHING THAT'S GOING TO HAPPEN

14   WHICH HAS HAPPENED.

15       AND THE FACT THAT THEY KEEP TALKING ABOUT WHAT MS. CAMPBELL

16   MIGHT HAVE THOUGHT OR WHAT MS. CAMPBELL MIGHT HAVE LIED ABOUT,

17   THAT IS PRECISELY WHY LAWYERS CANNOT RELY ON EXPERTS.  THAT'S

18   PRECISELY THE WHOLE FOUNDATION FOR THE RULING IN SHADOW

19   TRAFFIC, AND OTHER CASES, THAT YOU CANNOT DELEGATE THIS TYPE OF

20   RESPONSIBILITY TO AN EXPERT, A LAY EXPERT WITH A PECUNIARY

21   INTEREST IN TAKING ON THE ADDITIONAL REPRESENTATION.

22       AND ONCE THEY WERE ALERTED THERE WAS A CONFLICT AND DIDN'T

23   DO ANYTHING, WE'RE IN SHADOW TRAFFIC INSTEAD OF THE OTHER

24   CASES, YOUR HONOR.  THAT'S THE WHOLE REASON WE'RE HERE.

25           THE COURT:  HAVE YOU ASKED FOR ANY SANCTION OTHER

```
1     THAN DISQUALIFICATION?

2           MR. RESCH:  WE ASKED FOR BAR ORDERS, YOUR HONOR, IN

3     CONNECTION WITH EAS.

4        BUT IN OUR VIEW, THE CONFIDENTIAL INFORMATION ISSUE, AS

5     MS. PECK AND MR. HAZARD TALKED ABOUT, THAT IS THE APPROPRIATE,

6     APPROPRIATE SANCTION BECAUSE, AS MR. CLIFFORD HAS SAID, SHE

7     WENT THROUGH THOSE CASES PARAGRAPH-BY-PARAGRAPH.

8        THAT'S PRECISELY WHAT WE DID.  THERE WAS NO REASON TO

9     CONFIRM THAT WITH MS. CAMPBELL.  THAT ADMISSION THAT SHE WENT

10    THROUGH THE EXACT SAME PARAGRAPHS IS ALL THAT THIS COURT --

11    IT'S NOT ONLY ALL THAT IT NEEDS, BUT IT SHOWS THE BIG PROBLEM

12    HERE.

13       MY DISCUSSIONS WITH MS. CAMPBELL, YOUR HONOR, WERE NOT

14    SIMPLY, "OH, WHAT IS YOUR VIEW ABOUT THIS DRAFT GUIDANCE THAT'S

15    NOT BINDING?  OKAY.  THANK YOU."

16       WE TALKED ABOUT HOW IT WAS GOING TO BE LITIGATED.  WE

17    TALKED ABOUT ARGUMENTS ABOUT IT.  WE TALKED ABOUT IMPRESSIONS

18    AND ISSUES AND HOW IT WOULD COME UP.  THESE WERE EXTENSIVE

19    DISCUSSIONS.

20          MR. CLIFFORD:  IS THAT A WAIVER OF THE PRIVILEGE?

21          MR. RESCH:  NO, IT'S NOT.

22          MR. CLIFFORD:  OKAY.

23          MR. RESCH:  SO WHEN SHE GOES AND THEN TALKS TO THEM

24    ABOUT IT -- THIS IS NOT JUST ABOUT WHAT'S IN THE PUBLIC RECORD,

25    YOUR HONOR.  THEY'RE GOING THROUGH THEIR ALLEGATIONS ABOUT
```

1      THESE THINGS AND HAVING A BACK AND FORTH FOR SIX HOURS OR MORE.

2           MR. CLIFFORD:  YOUR HONOR, WE HAVE BEEN PROHIBITED

3      FROM PRESENTING TO YOU, BY THEIR BLOCKING THE DEPOSITION FOR

4      BETTY CAMPBELL, THAT THERE WAS NO CONFIDENTIAL COMMUNICATIONS

5      TRANSFERRED TO THE COUNSEL FOR DEL MONTE IN THE DEL MONTE CASE.

6           THE FACT IS THAT WHAT HE JUST DESCRIBED, AT WORST, SHE

7      WOULD HAVE KNOWN THEIR PLAYBOOK, AND PLAY -- UNDER ALL OF THE

8      CASES, HER KNOWING THE PLAYBOOK AND ANSWERING AND GIVING ADVICE

9      ON ALLEGATIONS OF DIFFERENT PRODUCTS IN DIFFERENT LITIGATION

10     IS -- WOULD HAVE SUCH AN ENORMOUSLY DRACONIAN IMPACT ON THIS

11     LITIGATION.

12          THIS IS THE NEW DAUBERT MOTION FROM WHAT I'VE OBSERVED.

13          THE COURT:  LET ME ASK YOU A QUESTION.

14          MR. CLIFFORD:  YEAH.

15          THE COURT:  WHEN YOU GOT THE LIST BACK -- I GUESS

16     MR. HERRINGTON GOT THE LIST BACK FROM EAS SAYING, "WE CAN'T

17     WORK FOR YOU OR ALL OF THESE OTHER COMPANIES," AND HE ASKED,

18     "WHAT'S THE NATURE OF THE CONFLICT?" AND THEY SAY, "WE'RE NOT

19     GOING TO TELL YOU" --

20          MR. CLIFFORD:  RIGHT.

21          THE COURT:  -- YOU'RE JUST GOING TO ACCEPT A FOOD

22     EXPERT'S REPRESENTATION OF WHAT THEIR ETHICAL OBLIGATIONS ARE

23     AND WHAT YOUR ETHICAL OBLIGATIONS ARE?  I MEAN, THAT'S -- YOU

24     HAVE A FULL TEAM OF, WHAT, 25 LAWYERS AND YOU'RE GOING TO LEAVE

25     IT TO A FOOD EXPERT?  I DON'T KNOW IF MR. STEEL IS A FOOD

```
1     EXPERT.  IS HE A FOOD EXPERT OR IS HE THE BUSINESS DEVELOPMENT

2     GUY AT EAS?

3                 MR. CLIFFORD:  FROM WHAT I KNOW, HE'S A BUSINESS GUY.

4                 THE COURT:  OKAY.  SO YOU'RE GOING TO LEAVE IT TO THE

5     BUSINESS GUY AND THE FOOD EXPERT TO TELL YOU WHAT YOUR ETHICAL

6     OBLIGATIONS ARE?

7                 MR. CLIFFORD:  WELL, WHAT WE KNOW --

8                 THE COURT:  YOU HAVE A TEAM OF, WHAT, 30 LAWYERS?

9     HOW MANY LAWYERS ARE YOU ALL IN THIS CASE?

10                MR. CLIFFORD:  WELL, NOT -- WELL, THERE'S A

11    DIFFERENCE AS WE APPEAR IN FRONT OF YOU ON JULY 27TH, OR 25TH,

12    THAN WE WERE BACK THEN.  I WASN'T EVEN ON THE TEAM BACK THEN.

13        BUT THE -- AND THEY WANT TO DISQUALIFY ME, TOO, AND THAT'S

14    PART OF ONE OF MY POINTS TO THE COURT.

15                THE COURT:  NO, BUT WHAT'S THE ANSWER TO MY QUESTION?

16                MR. CLIFFORD:  WELL, THE ANSWER TO YOUR QUESTION IS

17    I -- WE DON'T --

18                THE COURT:  ARE YOU GOING TO LEAVE IT TO THE BUSINESS

19    PERSON FOR AN FDA --

20                MR. CLIFFORD:  WE DO NOT AGREE --

21                THE COURT:  -- COMPANY TO TELL YOU WHAT YOUR ETHICAL

22    OBLIGATIONS ARE?

23                MR. CLIFFORD:  WE DO NOT AGREE WITH THE IDEA THAT

24    WHEN YOU'RE DEALING WITH A COMPANY AS BIG AS EAS, AND A COMPANY

25    WHEN THEY SAY, IN THE CONTEXT OF THE WHOLE CONVERSATION, THAT
```

1    "THERE ARE ANY NUMBER OF THINGS THAT COULD LEAD US NOT TO WANT

2    TO WORK ON A CASE IN WHAT WE CONSIDER TO BE A CONFLICT, LEGAL,

3    ETHICAL, BUSINESS, OR OTHERWISE," IT WOULDN'T -- THERE ARE

4    EXPERTS WHO WOULD TELL YOU IT WOULD BE IMPROPER FOR THESE

5    LAWYERS TO GO MEDDLING INTO THE AFFAIRS OF EAS WITH THESE OTHER

6    COMPANIES.

7        ARE WE SAYING THAT THOSE -- THAT HERRINGTON HAD AN

8    OBLIGATION, WHEN HE HEARD THAT, TO PICK UP THE PHONE AND CALL

9    DEFENSE COUNSEL IN EVERY ONE OF THE OTHER CASES AND SAY, "ARE

10   YOU HIRING EAS OR HAVE YOU HIRED BETTY CAMPBELL?"

11       BECAUSE, ONCE AGAIN, THE REPORT WAS EAS HAD THE CONFLICT.

12   IT WAS NOT THAT BETTY CAMPBELL HAD THE CONFLICT.  THAT'S A BIG

13   DIFFERENCE HERE.  OKAY?  THAT'S A BIG DIFFERENCE HERE.

14       AND EAS DOES A LOT OF BUSINESS FOR A LOT OF REASONS AND IN

15   A LOT OF WAYS.  CHECK THEIR WEBSITE.

16       SO, YOU KNOW, WHEN THEY -- WHEN THE -- ADD TO THAT "WE

17   WILL NOT BE APPEARING AGAINST YOU," NO MATTER HOW WE WANT TO

18   INTERPRET THAT "APPEARING," WHETHER IT'S CONSULTING OR

19   OTHERWISE, AND AT SOME JUNCTURE -- MAYBE THEY'RE TWO YOUNG

20   GULLIBLE GUYS WHERE -- HERE'S A LADY AND MR. -- YOU KNOW,

21   MS. CAMPBELL AND MR. STEEL, IF THEY HAD A MEETING THE WEEK

22   BEFORE WITH MR. RESCH GIVING HIM EXPERT WITNESS TESTIMONY, I

23   MEAN, AT SOME JUNCTURE, AS HUMAN BEINGS, DON'T YOU HAVE AN

24   ABILITY TO ACCEPT WHAT, WHAT IS BEING REPRESENTED TO YOU?

25       AND THAT'S WHY THE LAW SAYS IT'S NOT ENOUGH --

```
 1                THE COURT:  BUT WHAT IS BEING REPRESENTED IS "I HAVE
 2       A CONFLICT WHICH I WILL NOT TELL YOU ABOUT."
 3                MR. CLIFFORD:  YES.
 4                THE COURT:  SO WHAT DOES THAT MEAN?  FINE?
 5                MR. CLIFFORD:  THAT MEANS YOU PUT IT IN THE FULL
 6       CONTEXT.
 7                THE COURT:  IT'S FINE?
 8                MR. CLIFFORD:  PUT IT IN THE FULL CONTEXT.  COUPLE
 9       WITH THAT THE CONTEMPORANEOUS, SIMULTANEOUS REMARK THAT "WE
10       WILL NOT BE WORKING AGAINST YOU."  COUPLE THAT, JUDGE.  PUT THE
11       TWO TOGETHER.
12                THE COURT:  "WE WILL NOT BE APPEARING AGAINST YOU" IS
13       IN THERE JUST AS MUCH, IF NOT MORE.
14                MR. CLIFFORD:  I ACCEPT --
15                THE COURT:  THERE'S MORE "WE WILL NOT BE APPEARING
16       ADVERSE AGAINST YOU."
17                MR. CLIFFORD:  I ACCEPT YOU'RE GETTING ANCHORED ON
18       THAT WORD.
19                THE COURT:  YEAH.
20                MR. CLIFFORD:  BUT I AM TELLING YOU -- YOUR HONOR,
21       THEY DID NOT SEE THE ISSUE THAT WE'RE SEEING HERE MONTHS LATER.
22       THEY -- YOU KNOW, THEY'VE BEEN FORTHRIGHT ENOUGH TO TELL YOU,
23       WHICH IS WHY THE LAW SAYS LET'S SEE IF THERE WAS A TRANSFER OF
24       CONFIDENTIAL INFORMATION MATERIALLY RELATED TO THIS CASE.
25            AND THEY HAVE NOT DONE THAT.  THEY ARE NOT ENTITLED TO THE
```

1    PRESUMPTION ABOUT IT.

2         AND EVEN IF THEY DID, NELKIN AND HERRINGTON'S DECLARATIONS

3    SPEAK TO THE FACT THAT THEY DID NOT GET ANYTHING.

4         AND THE ONLY WAY THAT THEY COULD HAVE GOTTEN IT, THE ONLY

5    WAY, YOU'D HAVE TO CONCLUDE THAT IT WAS IN HER THOUGHT PROCESS

6    AND SOMEHOW INTUITIVELY IN WHAT SHE'S TELLING THEM ABOUT 11

7    OTHER COMPLAINTS, SHE'S SPEAKING WITH THE THOUGHTS OF RESCH,

8    AND THERE'S NO EVIDENCE OF THAT.

9         WE GAVE THEM THE OPPORTUNITY TO GO GET IT AND THEY REFUSED.

10   THEY FIRED HER.  WE DIDN'T.  THEY HAD FULL ACCESS TO HER.  THEY

11   CAN TAKE HER DEPOSITION RIGHT NOW.

12        MR. RESCH:  TWO CLOSING POINTS, YOUR HONOR?

13        THE COURT:  OKAY, YES.  I DO NEED TO CALL MY OTHER

14   CASE.

15        MR. RESCH:  ALL RIGHT.  THE FIRST THING, YOUR HONOR,

16   IS THIS ISSUE OF WHEN THERE'S A CONFLICT AND WHETHER

17   MS. CAMPBELL WAS OR EAS WAS -- I DON'T KNOW.  DID THEY EVER ASK

18   WHETHER MS. CAMPBELL HAD A CONFLICT?  I MEAN, AT THAT POINT

19   WHEN THEY DON'T GET INFORMATION, THE LAW TELLS US THAT THEY

20   HAVE AN OBLIGATION.  THEY CAN'T BURY THEIR HEAD IN THE SAND.

21        THEY MAY NOT HAVE KNOWN ABOUT SHADOW TRAFFIC, YOUR HONOR.

22   I DON'T KNOW.  THESE -- THEY'RE NOT CALIFORNIA LAWYERS.  IT'S

23   POSSIBLE THEY DIDN'T KNOW ABOUT SHADOW TRAFFIC.

24        BUT THEY'RE CHARGED WITH KNOWING THAT UNDER THE RULES OF

25   THIS COURT, AND THAT -- THEY HAD AN OBLIGATION WHEN THEY HEARD

1    THERE WAS A CONFLICT.

2         AND, AGAIN, I DON'T KNOW WHETHER THEY ASKED THAT QUESTION

3    ABOUT MS. CAMPBELL SPECIFICALLY.

4         AND THEN THE SECOND POINT, YOUR HONOR, A LOT HAS BEEN MADE

5    ABOUT, WELL, WE CAN GO ASK BETTY CAMPBELL ABOUT WHETHER THERE

6    WAS A TRANSFER.

7         WE DON'T NEED TO BECAUSE WHAT WE KNOW, AND WE TAKE AS FACT,

8    IT'S ADMITTED AND IT'S UNDISPUTED THAT THEY WENT THROUGH THE

9    VERY SAME LANGUAGE AND ALLEGATIONS THAT I HAD GONE THROUGH WITH

10   HER.

11        UNDER SHADOW TRAFFIC, THAT IS REALLY THE END OF THAT

12   ANALYSIS.  IT DOES NOT REQUIRE, AS MR. CLIFFORD SEEMS TO IMPLY,

13   SOME SORT OF DIRECT COMMUNICATION OF WHAT I TOLD HER AND USING

14   MY NAME OR CHOBANI'S NAME.

15        IT'S JUST NOT POSSIBLE, GIVEN THE TIME PERIOD BETWEEN OUR

16   COMMUNICATIONS -- SHE'S ACTING FOR BOTH AT THE SAME TIME --

17   THAT WHAT I TOLD HER DID NOT INFLUENCE WHAT SHE WAS SAYING.

18        YOUR HONOR, THIS IS, IN CLOSING, AGAIN, EXACTLY WHY YOU

19   CAN'T RELY ON AN EXPERT AS THEY DID.  THIS IS EXACTLY WHY THIS

20   CASE IS LIKE SHADOW TRAFFIC AND NOT LIKE COLLINS AND WHY

21   DISQUALIFICATION IS NECESSARY.

22             THE COURT:  WHAT ABOUT MR. CLIFFORD'S POINT, THOUGH,

23   THAT -- I'M NOT SURE WHAT I'M GOING TO DO AT THIS POINT.  I

24   STILL NEED TO THINK ABOUT IT SOME MORE.

25        BUT IF MR. NELKIN AND MR. HERRINGTON WERE TO BE

```
1      DISQUALIFIED, I ASSUME THAT -- WHY SHOULDN'T IT JUST BE THOSE

2      TWO INDIVIDUALS?

3              MR. RESCH:  THE REASON, YOUR HONOR, IS THAT THEY --

4      THERE IS NO EVIDENCE OF A WALL, AND I SPOKE TO MR. HERRINGTON

5      AND IT WAS CLEAR TO ME, AS IT'S CLEAR FROM MR. CLIFFORD'S

6      COMMENTS FRANKLY, THAT THERE WAS A SHARING OF INFORMATION

7      AMONGST THE PLAINTIFFS' LAWYERS AS TO WHAT MS. CAMPBELL SAID TO

8      THEM AND THESE VERY ALLEGATIONS.

9          AND THEY ARE RESPONSIBLE FOR THE POSITION THEY FIND

10     THEMSELVES IN.  SO THAT'S WHY.

11         IT'S NOT OUR DOING.  IF THEY HAD WALLED THEM OFF BECAUSE OF

12     THIS ISSUE, THEN WE WOULD HAVE A MORE LIMITED DISQUALIFICATION

13     MOTION.

14         THIS IS WHY WE ASKED ALL THOSE QUESTIONS ON FEBRUARY 4TH.

15     THIS IS WHY WE OFFERED TO ARBITRATE THIS ISSUE.  WE WANTED TO

16     GET THIS RESOLVED.

17         BUT THEY DIDN'T ANSWER OUR QUESTIONS AND NOW WHAT WE COME

18     TO LEARN, WHAT WE COME TO LEARN IS THAT THEY DID HAVE

19     DISCUSSIONS ABOUT THE SAME ALLEGATIONS AND THEY SHARED IT

20     THROUGHOUT THEIR GROUP.

21         AND IF -- THAT'S A DECISION THAT THEY MADE AND THAT HAS --

22     THAT HAS CONSEQUENCES UNDER THE LAW.

23              MR. CLIFFORD:  YOUR HONOR, WHAT HE ISN'T -- IT'S NOT

24     GOING TO ACCOMPLISH WHAT THEY ARE TRYING TO ACCOMPLISH TO

25     DISQUALIFY -- I THINK THAT -- BY MY COUNT, IT'S ABOUT 90
```

```
1         LAWYERS THAT YOU'D BE TALKING ABOUT.

2            HIM SAYING WE DON'T HAVE --

3                  THE COURT:  THERE ARE 90 LAWYERS REPRESENTING KANE IN

4         THIS CASE?

5                  MR. CLIFFORD:  WELL, IF YOU -- NO, NO, NO.  IF YOU

6         ADD UP -- NO, NO.  AND THAT'S PART OF THE PROBLEM WITH THE

7         RELIEF THEY SEEK.  IF YOU ADDED UP ALL OF THE LAWYERS IN EACH

8         AND EVERY ONE OF THE LAW FIRMS THEY'RE TALKING ABOUT, NUMBER

9         ONE, IT'S -- I THINK IT WOULD COME TO 90.

10            SO WHERE DO WE --

11                 THE COURT:  BUT ARE ALL OF THOSE LAWYERS WORKING ON

12        THIS CASE?  THE ATTORNEYS FEES ARE GOING TO BE HUGE.

13                 MR. CLIFFORD:  NO.  BUT HE'S ASKING FOR THE

14        DISQUALIFICATION OF THE LAW FIRMS.  HE'S NOT -- HE'S NOT --

15        IT'S -- ONE OF MY POINTS IS THAT IF YOU'RE GOING TO DO THIS,

16        THEN I WOULD ASK THAT YOU APPOINT A SPECIAL MASTER OR SOMETHING

17        TO DETERMINE WHO SHOULD AND WHO SHOULD NOT BE DISQUALIFIED,

18        BECAUSE -- AND THEN ALSO THERE IS NO EVIDENCE WHATSOEVER THAT

19        THERE WAS A TRANSFER --

20                 THE COURT:  HOW MANY LAWYERS ARE WORKING ON THIS

21        CASE?

22                 MR. CLIFFORD:  -- OF CONFIDENTIAL INFORMATION TO ALL

23        THE LAWYERS IN THIS CASE.

24            WHAT'S THAT?

25                 THE COURT:  HOW MANY LAWYERS ARE WORKING ON THIS CASE
```

```
1      FOR THE PLAINTIFFS?

2             MR. CLIFFORD:  WELL, ON THIS PARTICULAR CASE, I THINK

3      IF WE WERE TO LOOK AT THE SERVICE LIST, IT'S MAYBE A DOZEN.  I

4      MEAN, MANY OF US -- I PRO HAC'ED IN, FOR EXAMPLE, SO THAT I

5      COULD DEAL WITH THIS ISSUE.  BEYOND THAT, I'VE NOT WORKED ON

6      THE CASE.

7             THE COURT:  BUT I'VE SEEN YOU AT THE PRELIMINARY

8      INJUNCTION HEARING.

9             MR. CLIFFORD:  WELL, I CAME --

10            THE COURT:  I THINK YOU CAME TO THE MOTION TO

11     DISMISS.

12            MR. CLIFFORD:  I CAME TO WATCH.

13            THE COURT:  I'M SORRY?

14            MR. CLIFFORD:  I CAME TO WATCH.  I CAME TO --

15            THE COURT:  SO WHY DID YOU GET STUCK WITH DOING THE

16     D.Q. MOTION?

17            MR. CLIFFORD:  WELL, I DON'T KNOW.  BECAUSE I'M A

18     GLUTTON FOR PUNISHMENT, OR MAYBE MY SKIN IS THICKER THAN

19     OTHERS.  I'VE BEEN A LAWYER FOR LONGER.

20            THE COURT:  YOU GOT THE SHORT END OF THE STICK.

21            MR. CLIFFORD:  YOU KNOW WHAT?  I FEEL GOOD ABOUT --

22     YOU KNOW WHAT I WORRY ABOUT?  THESE ARE TWO YOUNG LAWYERS WHO,

23     IF ANYTHING, WERE BAMBOOZLED BY A COMPANY.  ONE OF HIS RELIEFS

24     IS TO DISQUALIFY EAS.

25            THE COURT:  OH, THAT'S GOING TO HAPPEN.  THAT IS
```

```
1    GOING TO HAPPEN.

2              MR. CLIFFORD:  DO YOU KNOW WHAT A BLACK MARK IT IS, A

3    DARK MARK, WHATEVER MARK YOU WANT TO CALL IT, ON THE CAREERS OF

4    TWO YOUNG LAWYERS TO SAY THAT THEY SHOULD BE DISQUALIFIED UNDER

5    THESE FACTS?  I'M ASKING YOU NOT TO DO SOMETHING THAT

6    DRACONIAN.

7         THERE'S NO SHOWING OF HARM HERE, NONE WHATSOEVER.  IN FACT,

8    IF YOU --

9              THE COURT:  WELL, I AM DISTURBED, THOUGH, THAT THE

10   SAME ALLEGATIONS ABOUT, YOU KNOW, WHETHER THESE LABELS, IN

11   FACT, VIOLATE FDA GUIDANCE, WARNING LETTERS, CALIFORNIA LAW,

12   THAT -- I AM A LITTLE BIT DISTURBED THAT THE EXACT SAME CLAIMS

13   WERE DISCUSSED IN DAY LONG MEETINGS WITHIN SIX DAYS OF EACH

14   OTHER.

15             MR. CLIFFORD:  BUT ISN'T THAT HER EXPERTISE?  AND

16   DOESN'T SOME OF THEIR KNOWLEDGE OF -- I MEAN, ONE OF THE THINGS

17   ABOUT -- IF YOU LOOK AT THE BASIS FOR THE -- THE REASON FOR THE

18   DISQUALIFICATION IS TO PRESERVE THE INTEGRITY OF THE JUSTICE

19   SYSTEM.

20        HERE ARE TWO LAWYERS THAT, THAT ARE -- IN THAT LIGHT, THAT

21   ARE UNWITTINGLY TALKING TO THIS LADY.

22             THE COURT:  UNWITTINGLY BECAUSE THEY TOOK A BUSINESS

23   DEVELOPMENT PERSON'S ETHICAL ADVICE WHO TOLD THEM, "WE HAVE A

24   CONFLICT.  WE WILL NOT WORK WITH YOU AGAINST THESE COMPANIES."

25        THEY SAID, "OKAY.  ALL RIGHT.  LET'S GO AHEAD."
```

```
 1          I MEAN --
 2                MR. CLIFFORD:  WELL, YOU KNOW, IF THAT'S --
 3                THE COURT:  I MEAN, THAT'S --
 4                MR. CLIFFORD:  YOUR HONOR, IF THAT'S -- AND MY RETORT
 5     TO THAT IS THAT THERE COULD BE SO MANY DIFFERENT REASONS WHY.
 6     IT'S NOT LIKE THEY IGNORED THE OBVIOUS.
 7          IF YOU LOOK AT ALL THE OTHER CASES, WHETHER IT'S SHADOW
 8     TRAFFIC --
 9                THE COURT:  THAT'S THE OTHER THING.  IF THEY DIDN'T
10     EXPLORE -- IF THERE WERE A LOT OF REASONS WHY -- I MEAN, WHAT
11     KIND OF POLICY DO WE WANT TO SET?  DO WE WANT TO SET, OKAY --
12                MR. CLIFFORD:  WELL, ONE OF THEM IS --
13                THE COURT:  -- JUST TAKE THE BUSINESS DEVELOPMENT
14     PERSON'S WORD AT A CONSULTING COMPANY AND YOU'RE FINE?  IS
15     THAT --
16                MR. CLIFFORD:  AND WHEN YOU GO WRONG -- WHEN YOU GO
17     WRONG -- LET'S FOLLOW THE RULE OF LAW THAT SAYS LET'S MAKE
18     SURE -- YOU KNOW, LET'S DO SOMETHING TO YOU, BUT LET'S MAKE
19     SURE THAT WE KNOW THAT THERE WAS A TRANSFER OF CONFIDENTIAL
20     INFORMATION.
21          AND YOU DON'T KNOW THAT AND THEY'RE -- WHEN THEY FIRED HER
22     AND WHEN I WAIVED THE PRIVILEGE GIVING THEM FULL ACCESS TO HER,
23     THEY CAN'T STAND BEFORE YOU AND CREDIBLY SAY THAT THE BASIS OF
24     THE PRESUMPTION IS BEING SATISFIED.
25          THE BASIS OF THE PRESUMPTION IS -- BECAUSE ALL THESE CASES
```

```
 1    ARE SIDE SWITCHING CASES BY AND LARGE -- THAT YOU DON'T HAVE

 2    ACCESS TO THAT OTHER WITNESS ANYMORE AND, THEREFORE, THAT'S WHY

 3    WE'RE GOING TO PRESUME THAT THERE WAS A TRANSFER TO THE NEW

 4    LAWYERS.

 5        THEY CAN'T HAVE THAT HERE BECAUSE THEY CAN GO TALK -- THEY

 6    CAN PICK UP THE PHONE RIGHT NOW AND TALK TO HER.  SO MY --

 7            THE COURT:  ALL RIGHT.  WELL, I'M GOING TO GO AHEAD,

 8    AND WE'VE BEEN GOING NOW ALMOST TWO AND A HALF HOURS AND I DO

 9    HAVE TO GIVE MS. SHORTRIDGE A BREAK.

10            MR. RESCH:  YOUR HONOR --

11            THE COURT:  I'M GOING TO THANK YOU ALL VERY MUCH.  I

12    GREATLY APPRECIATE ALL THE INFORMATION THAT YOU HAVE PROVIDED

13    AND I WILL GO BACK AND TAKE A FURTHER LOOK AT THIS.

14        I WANT TO THANK EVERYONE.

15            MR. RESCH:  THANK YOU, YOUR HONOR.

16            MR. CLIFFORD:  THANK YOU, YOUR HONOR.

17            THE COURT:  OKAY.  I'M GOING TO APOLOGIZE TO MY NEXT

18    CASE.  LET'S TAKE JUST A 12 MINUTE BREAK, PLEASE.  THANK YOU.

19        (THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

20

21

22

23

24

25
```

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  AUGUST 8, 2013

19

20

21

22

23

24

25