UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KATIE KANE, *et al.*, individuals, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CHOBANI, INC.,<br><br>                    Defendant. | Case No.: 12-CV-02425-LHK<br><br>ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT |

Before the Court is Defendant Chobani, Inc.'s ("Defendant" or "Chobani") Motion to Reconsider the Court's July 12, 2013 Order on Defendant's Motion to Dismiss the Second Amended Complaint. ECF No. 146. Plaintiffs Katie Kane, Arianna Rosales, and Darla Booth (collectively "Plaintiffs") oppose, ECF No. 147, and Defendant replies, ECF No. 148. Having considered the submissions of the parties, the relevant law, the oral arguments of the parties, and the record in this case, the Court GRANTS Defendant's Motion to Reconsider and consequently GRANTS Defendant's underlying Motion to Dismiss the Second Amended Complaint, ECF No. 38.

1

Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## I. BACKGROUND

### A. Plaintiffs' Factual Allegations

Plaintiffs allege that they purchased Defendant's yogurt products. ("SAC") ECF No. 35, ¶¶ 93-95. Specifically, Plaintiffs allege that they purchased the pomegranate, lemon, peach, vanilla, strawberry, and blueberry flavors of Defendant's Chobani Greek Yogurt. SAC ¶¶ 93-95. Plaintiffs contend that Defendant's "Chobani Greek Yogurt" and "Chobani Greek Yogurt Champions"[1] (collectively, "Yogurts") are mislabeled. SAC ¶¶ 1, 4-6. Plaintiffs' mislabeling allegations fall into three categories:

*Evaporated Cane Juice ("ECJ") Allegations* - Plaintiffs allege that Defendant's labels refer to the sweetener in Defendant's Yogurts as "evaporated cane juice" ("ECJ"). SAC ¶ 10. Plaintiffs contend that ECJ is essentially just "sugar" or "dried cane syrup." SAC ¶¶ 10, 12. Plaintiffs allege that the use of the term ECJ to describe this ingredient is false and misleading and conceals the fact that the sweetening ingredient is "sugar" or "dried cane syrup." SAC ¶ 12. Plaintiffs further allege that Defendant's use of the term ECJ violates various Food and Drug Administration ("FDA") regulations requiring manufacturers to refer to ingredients in food products by their "common and usual names." SAC ¶ 56 (citing 21 C.F.R. §§ 101.3, 101.4, 102.5); SAC, Ex. C (FDA Draft Guidance for Industry: Ingredients Declared as Evaporated Cane Juice) (stating that it is the "FDA's view that the term 'evaporated cane juice' is not the common or usual name of any type of sweetener"). Plaintiffs further allege that because the Standard of Identity for Yogurt, which governs when a product may be called a "yogurt," does not list ECJ as an authorized sweetener, Defendant was prohibited from marketing its products as yogurt. SAC ¶¶ 53-55 (citing 21 C.F.R. § 131.200 ("Standard of Identity for Yogurt")). To the extent Plaintiffs' claims are based on Defendant's use of the term ECJ on the Yogurts' labeling, the Court refers to these claims generally as the "ECJ Claims."

*No Sugar Added Claims* - Plaintiffs also allege that Defendant claims that its Yogurts do not include any added sugar. SAC ¶ 66. Specifically, Plaintiffs cite two statements made on

---

[1] As will be discussed *infra*, Plaintiffs do not allege that they purchased the Chobani Greek Yogurt Champions product.

2

Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Defendant's website. The first statement is as follows:

> **Sugar isn't listed as an ingredient in your 0% Plain. Where do the 7g come from?**
>
> The 7g of sugar listed on the nutrient facts panels of our 0% and 2% Plain Chobani comes from a naturally occurring type of sugar found in all dairy products called "lactose."
>
> This lactose often called "milk sugar," accounts for these 7g as *we don't add sugar to our yogurt*.

*Id.* (emphasis added by Plaintiffs). Additionally, Defendant states:

> **Does Chobani Champions contain extra sugar?**
>
> No way! *Just because Champions is made for kids doesn't mean that we need to add extra sugar.*
>
> You won't find any high fructose corn syrup or artificial ingredients, flavors, or colors in our yogurt. Just low-fat milk sourced from local-area farms; real fruit, lightly sweetened with evaporated cane juice; pure clover honey (in our Honey-Nana flavor); life and active cultures; and probiotics.
>
> We believe in delicious, healthy products that are made with only natural ingredients.

SAC ¶ 67 (emphasis added by Plaintiffs). The Court refers to the italicized representations—"Just because Champions is made for kids doesn't mean that we need to add extra sugar" and "we don't add sugar to our yogurt"—as the "No Sugar Added Representations." Plaintiffs also allege, without citing any specific statement or source, that Defendant "utilizes various media to disseminate claims that [] its yogurt has 'no sugar added.'" SAC ¶ 68. Plaintiffs contend that, because Defendant's Yogurts include ECJ, these statements are false and misleading and violate FDA labeling requirements pertaining to the use of the phrases "no sugar added," "no added sugar," and "without added sugar." SAC ¶ 69. The Court refers to Plaintiffs' claims based on the No Sugar Added Representations as the "No Sugar Added Claims."

*All Natural Claims* - Finally, Plaintiffs allege that Defendant has falsely stated that its Yogurts contain "[o]nly natural ingredients" and are "all natural." SAC ¶¶ 5-6, 12. The Court refers to Defendant's representations regarding the Yogurts' natural quality and use of natural ingredients as the "All Natural Representations." Plaintiffs allege that these representations appeared on the

3

labeling for Defendant's Yogurts and on Defendant's website. *Id.*[2] Plaintiffs allege that these representations were false and misleading because the Yogurts include artificial ingredients, flavorings, and colorings as well as chemical preservatives. SAC ¶¶ 80-82. While the SAC is not entirely clear as to the specific ingredient Plaintiffs contend was unnatural, it appears that Plaintiffs are concerned with Defendant's inclusion of "fruit or vegetable juice" "for color." *See* SAC ¶¶ 22, 81. Because fruit for color is the only unnatural ingredient that Plaintiffs have specifically identified, Plaintiffs' claims alleging that the Yogurts included unnatural ingredients are limited to this ingredient. The Court refers to Plaintiffs' claims based on the All Natural Representations as the "All Natural Claims."

Plaintiffs allege that they each "read the labels on Defendant's [Yogurts], including the [i]ngredient, 'evaporated cane juice' and the '[a]ll [n]atural [i]ngredients' and/or '[o]nly [n]atural [i]ngredients' claims on the labels, before purchasing them." SAC ¶¶ 93-95. Plaintiffs allege that they "believed Defendant's [Yogurts] contained only natural sugars from milk and fruit and did not contain added sugars or syrups" and that the Yogurts "contained only natural ingredients." *Id.* Plaintiffs also allege that, "[h]ad Plaintiff[s] known Defendant's [Yogurts] contained added dried cane syrup and unnatural ingredients, [they] would not have purchased" them. *Id.* Plaintiffs further allege that they "would not have purchased Defendant's [Yogurts] had they known they were not capable of being legally sold or held." SAC ¶ 97.

Plaintiffs allege nine causes of action. Plaintiffs' first cause of action is for violation of the unlawful prong of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, predicated on violations of: (1) the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (2) the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; and (3) California's Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code §§ 109875 *et seq.* SAC ¶¶ 109-119. The Sherman Law incorporates "[a]ll [federal] food labeling regulations and any amendments to those regulations." Cal. Health & Safety Code §

---

[2] The Court notes that based on the images of the Yogurts provided in the SAC, it does not appear that the "all natural" claim appears on the label. Rather, the label states that Defendant's Yogurts contain "[o]nly natural ingredients." *See* SAC ¶¶ 5-6.

4
Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

110100(a). Plaintiffs also allege causes of action for: (1) violation of the UCL's unfair prong, SAC ¶¶ 120-128; (2) violation of the UCL's fraud prong, SAC ¶¶ 129-135; (4) violation of the FAL because Defendant's labeling and advertising are "misleading and deceptive," SAC ¶¶ 136-143; (5) violation of the FAL because Defendant's advertising is "untrue," SAC ¶¶ 144-151; (6) violation of the CLRA, SAC ¶¶ 152-164; (7) unjust enrichment, SAC ¶¶ 165-168; (8) violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.*, SAC ¶¶ 169-179; and (9) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, SAC ¶¶ 180-189.

### B. Procedural Background

Plaintiffs filed their Original Complaint on May 14, 2012. ECF No. 1. Plaintiffs filed their First Amended Complaint on August 30, 2012. ECF No. 14. Plaintiffs filed the SAC on October 10, 2012. ECF No. 35. Defendant moved to dismiss the SAC on November 12, 2012. ("Mot.") ECF No. 38. Plaintiffs filed an Opposition to this Motion on January 14, 2013. ("Opp'n") ECF No. 42. Defendant filed a Reply on February 11, 2013. ("Reply") ECF No. 46. The Court held a hearing on the Motion to Dismiss on March 28, 2013. ECf No. 79.

On April 24, 2013, the Court granted the parties leave to file briefs to address the Ninth Circuit's decision in *Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013). ECF No. 95. Both parties filed their supplemental briefs on May 1, 2013. ECF Nos. 96, 97.

On July 12, 2013, this Court issued an Order granting in part and denying in part Defendant's Motion to Dismiss. ("July 12 Order") ECF No. 125. Defendant filed a Motion for Leave to file a Motion for Reconsideration of that Order on July 22, 2013. ECF No. 128. Following a Case Management Conference on July 25, 2013, at which the parties stipulated to allowing Defendant to file a Motion for Reconsideration limited to "(1) the Court's characterization of Plaintiffs' ECJ theory, and (2) whether the doctrine of primary jurisdiction should apply to preclude Plaintiffs' ECJ claims," the Court granted Defendant's Motion for Leave and VACATED the July 12 Order. ECF No. 131, at 1-2. Plaintiffs thereafter filed a Motion for Leave to file their own Motion for Reconsideration, ECF No. 137, which the Court denied on August 14, 2013, ECF No. 144.

5

Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Defendant filed its Motion for Reconsideration on August 21, 2013. ("MTR") ECF No. 146. Plaintiffs filed their Opposition to the Motion for Reconsideration on August 28, 2013, ("MTR Opp'n") ECF No. 147, to which Defendant replied on September 3, 2013, ("MTR Reply") ECF No. 148.[3]

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction will be granted if the Complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560

---

[3] Plaintiffs have also filed two Requests for Judicial Notice with the Court. The first accompanied their Opposition to the Motion to Dismiss, ECF No. 43, while the second accompanied their Opposition to the Motion for Reconsideration, ECF No. 150. Defendant opposes both Requests. ECF Nos. 47, 151. Plaintiffs' First Request for Judicial Notice asks the Court to judicially notice various publicly available FDA warning letters and guidance documents, as well as photographs of Defendant's product labels. *See* ECF No. 43. These exhibits are all either public records or materials referenced in the Complaint, and, accordingly, the Court finds that they are appropriate for judicial notice. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (court may, on a motion to dismiss, take judicial notice of documents referenced in the complaint); *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-1166, 2009 WL 6597891, at 2 (S.D. Cal. Dec. 23, 2009) (court may take judicial notice of documents made available to the public on government agency websites).

Plaintiffs' Second Request for Judicial Notice asks the Court to take judicial notice of two posts appearing on Defendant's Facebook page that, in Plaintiffs' view, are relevant to their argument that they have adequately pleaded that they relied on Defendant's alleged misrepresentations concerning ECJ. *See* ECF No. 150; *see also* Discussion *infra* Part III.A.2.a. The Court declines to take judicial notice of these documents. Irrespective of whether information contained in Facebook posts may qualify for judicial notice, whether as information that is "generally known within the territorial jurisdiction of the trial court" or as information that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), the posts at issue here are simply irrelevant to the issues currently before the Court. The posts both post-date the filing of the SAC and therefore Plaintiffs' could not have relied on them in deciding to purchase Defendant's Yogurts. Accordingly, the Court GRANTS Plaintiffs' First Request for Judicial Notice and DENIES Plaintiffs' Second Request for Judicial Notice.

(9th Cir. 1988). If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction, *see Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010), by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011) (at the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met).

**B.  Rule 8(a)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

7

motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks omitted).

### C. Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted). The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

### D. Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose

8

Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III. DISCUSSION

Defendant seeks to dismiss Plaintiffs' Second Amended Complaint ("SAC") on a number of grounds, including lack of standing; failure to allege facts showing that a "reasonable consumer" is likely to be deceived by the challenged advertising; preemption; primary jurisdiction; and failure to state a claim for purposes of Federal Rules of Civil Procedure 8(a) and 9(b). Mot. at 1-2. The Court will not address every one of Defendant's arguments, however, because, as discussed below, it finds that the SAC fails to adequately demonstrate that Plaintiffs have standing to pursue their UCL, FAL, and CLRA claims. The Court further finds that Plaintiffs' claims for Unjust Enrichment and violation of the Song-Beverly and Magnuson-Moss Warranty Acts fail, because none states a viable cause of action.

### A. Standing

#### 1. Legal Standards

##### a. Article III Standing

A federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) ("'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'") (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling.

9

Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

*Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Article III's standing requirements may be satisfied by allegations that a plaintiff purchased a product he otherwise would not have purchased, or spent more on such product, in reliance on the defendant's misrepresentations. *See, e.g.*, *Brazil v. Dole Food Co.*, --- F. Supp. 2d ---, 2013 WL 1209955, at *11-13 (N.D. Cal. Mar. 25, 2013) (holding that "Brazil suffered a concrete and particularized injury . . . [because] he allegedly was deceived, and then paid money that he would not otherwise have paid had he known about the true nature of Defendants' products"). "The party invoking federal jurisdiction bears the burden of establishing these elements. . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

### b. UCL, FAL, and CLRA Standing

In addition to the requirements imposed by Article III, the UCL, FAL, and CLRA all require Plaintiffs to demonstrate standing. To have standing under the FAL and the CLRA, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result. *See, e.g.*, Cal. Bus. & Prof. Code § 17535 (providing that a plaintiff must have "suffered injury in fact and ha[ve] lost money or property as a result of a violation of this chapter"); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (finding plaintiff's CLRA claim failed because plaintiff failed to allege facts showing that he "relied on any representation by" defendant).

Turning to the UCL, the UCL prohibits business practices that are unlawful, unfair, or fraudulent. Courts have held that, to establish standing under the UCL's fraud prong, a plaintiff must demonstrate that she actually relied upon the allegedly fraudulent misrepresentation. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). Courts have extended this actual reliance requirement to claims under the UCL's unlawful prong to the extent "the predicate unlawful conduct is based on misrepresentations." *Durell*, 183 Cal. App. 4th at 1363. Moreover, in *Kwikset Corp. v. Superior Court*, the California Supreme Court suggested that the actual reliance requirement applies whenever the underlying misconduct in a UCL action is fraudulent conduct.

10

Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

*See* 51 Cal. 4th 310, 326 (2011) (holding that plaintiff was required to demonstrate actual reliance to establish standing to pursue claims under the UCL's unlawful prong because his claims were "based on a fraud theory involving false advertising and misrepresentations to consumers" (internal quotation marks omitted)). Thus, the Court concludes that the actual reliance requirement also applies to claims under the UCL's unfair prong to the extent such claims are based on fraudulent conduct. *See*, *e.g.*, *In re Actimmune Mktg. Litig.*, No. 08-2376, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010) *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (holding "that a plaintiff must plead 'actual reliance,' even if their [*sic*] claim arises under the unlawful or unfair prongs, so long as the pleadings assert a cause of action grounded in misrepresentation or deception.").

Here, the gravamen of Plaintiffs' claims under the UCL's unlawful, unfair, and fraud prongs is that Defendant's labeling was deceptive. *See, e.g.*, SAC ¶¶ 71 (alleging that "the term 'evaporated cane juice' misleads consumers"); ¶¶ 84-85 (alleging that Defendant's use of the word "natural" was likely to deceive reasonable consumers); ¶¶ 109-119 (alleging claim under the UCL's unlawful prong based on Defendant's violations of the advertising and misbranding provisions of the Sherman Law, as well as the FAL, which "forbids untrue and misleading advertising," and CLRA); ¶ 124 (alleging that Defendant's marketing, advertising, and labeling violated the unfair prong of the UCL because it was "deceptive"); ¶ 132 (alleging that Defendant's labeling violated the fraud prong of the UCL because it contained "misrepresentations and material omissions"). Accordingly, Plaintiffs must demonstrate actual reliance and economic injury.

**2. Analysis**

Defendant argues that Plaintiffs lack standing under Article III, as well as the UCL, FAL, and CLRA because they fail to allege a coherent, plausible theory of reliance. Mot. at 9; MTR at 4. "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *In re Tobacco II*, 46 Cal. 4th at 326 (citation and alteration omitted). "A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." *Id.* (internal

11

Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

quotation marks omitted). Significantly, "while a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct, the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Id*. at 328. Further, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Id*. at 327. As set forth above, the alleged misrepresentations fall into three categories: (1) ECJ Claims; (2) No Sugar Added Claims; and (3) All Natural Claims. The Court considers whether Plaintiffs have adequately alleged reliance for each category of representations and then turns to Plaintiffs' allegations of reliance concerning products they did not purchase.

### a. ECJ Claims

Plaintiffs allege that the term ECJ concealed the fact that the ingredient was essentially white sugar or dried cane syrup. SAC ¶¶ 10, 12, 53-64. Plaintiffs further allege that, based on the labels, they believed the Yogurts contained "only natural sugars from milk and fruit and did not contain added sugars or syrups." SAC ¶¶ 93-95. Plaintiffs assert that they would not have purchased the Yogurts had they known that the Yogurts "contained added dried cane syrup." *Id.*

The Court agrees with Defendant that Plaintiffs have not alleged facts sufficient to show, for purposes of either Rule 8(a) or Rule 9(b),[4] that Plaintiffs believed the Yogurts contained "only

---

[4] Plaintiffs must satisfy the heightened pleading standards for fraud under Rule 9(b) with respect to all of their UCL, FAL, and CLRA claims. Even if "fraud is not a necessary element of a [particular] claim," Rule 9(b) will apply if the plaintiff has "allege[d] a unified course of fraudulent conduct and rel[ied] entirely on that course of conduct as the basis of [the] claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). In such a case, the claim "is said to be 'grounded in fraud,'" *id.*, and must be pleaded with particularity, *see Kearns*, 567 F.3d at 1127 (holding that, where "TAC allege[d] a unified fraudulent course of conduct," claims were "grounded in fraud" and the "entire complaint" had to be pleaded "with particularity").
Here, Rule 9(b) applies to Plaintiffs' UCL unlawful claims based on Defendant's alleged violations of the FAL and the CLRA because the underlying FAL and CLRA claims allege that Defendant's representations on its labeling and in its advertising were "misleading and deceptive," SAC ¶ 137, "untrue," SAC ¶ 145, "misrepresented" the truth, SAC ¶¶ 139, 147, and "constitut[ed]… fraud[]," SAC ¶ 161. Plaintiffs' UCL unlawful claim predicated on Defendant's alleged violation of the Sherman Law is premised on the same allegations of false and misleading labeling representations as Plaintiffs' other claims. Because the alleged violations of the Sherman Law are premised on the same "unified course of fraudulent conduct" as Plaintiffs' other claims,

12

Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

natural sugars from milk and fruit and did not contain added sugars or syrups." Significantly, the SAC suggests that Plaintiffs understood that dried cane *syrup* was a form of sugar, since Plaintiffs refer to sugar and dried cane syrup interchangeably throughout the SAC. *See, e.g.*, SAC ¶ 10 (ingredient list for "Chobani[] Greek Yogurt, Pomegranate flavor . . . fails to list 'sugar' or 'dried cane syrup' as an ingredient"); ¶ 55 (ECJ is "a false and misleading name for another food or ingredient that has a common or usual name, namely sugar or dried cane syrup"). However, the SAC fails to explain how Plaintiffs could have realized that dried cane syrup was a form of sugar, but nevertheless believed that evaporated cane *juice* was not. What is more, the SAC fails to allege what Plaintiffs believed evaporated cane juice to be if not a form of sugar. Indeed, Plaintiffs do not allege that there is some other form of cane besides sugar cane.[5] Absent *some* factual allegation concerning what Plaintiffs believed ECJ to be if not a form of sugar or a juice containing some form of sugar, Plaintiffs' allegations that they read the label, were aware that the Yogurts contained ECJ, and nevertheless concluded that the Yogurts contained "only natural sugars from milk and fruit and did not contain added sugars or syrups" is simply not plausible.

In its Original Order on the Motion to Dismiss, the Court concluded that even though Plaintiffs failed to adequately plead reliance based on a theory that they were unaware that Defendant's Yogurts contained any sweeteners beyond "natural sugars from milk and fruit," Plaintiffs had nevertheless adequately pleaded reliance. *See* July 12 Order at 11-12. Specifically, the Court found that Plaintiffs had adequately pleaded reliance by alleging that Defendant's use of the term ECJ "plausibly suggested that the product is healthier than refined sugars and syrups," and that Plaintiffs would not have purchased the Yogurts had they known that ECJ was actually just "white sugar or dried cane syrup (refined forms of sugar with little nutritional value)." *See id.*

---

Plaintiffs' UCL unlawful claim predicated on the Sherman Law is subject to Rule 9(b) as well. *See Brazil*, 2013 WL 1209955, at *14.

[5] At the July 11, 2013 hearing on Plaintiffs' Motion for a Preliminary Injunction, Plaintiffs' counsel admitted that there was no other form of cane besides sugar cane. ECF No. 127, at 17:5-12. Although Plaintiffs' Opposition to the Motion to Reconsider now informs the Court that there are, in fact, multiple forms of cane besides sugar cane (such as, apparently, bamboo cane, sorghum cane, and even corn), *see* MTR Opp'n at 6 n.3, these allegations appear nowhere in the SAC, and in ruling on a motion to dismiss, the Court is limited to the factual allegations that appear in the complaint, *see Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

13

Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

However, Plaintiffs disavowed this theory at the July 25, 2013 Hearing on Defendant's Motion to Disqualify Plaintiffs' experts and counsel, *see* ECF No. 143, at 14:3-9, and stipulated to allowing Defendant to file a Motion for Reconsideration of the Court's July 12 Order, *see id.* at 40:9-41:1. Plaintiffs' Opposition to the Motion for Reconsideration also disavows this theory. *See* MTR Opp'n at 4 ("Plaintiffs do not claim that Plaintiffs believed ECJ was a healthier form of sugar . . . .").

Plaintiffs' allegations in the SAC regarding whether they believed ECJ to be "healthier than refined sugars and syrups" are far from clear. Although the SAC makes various statements concerning the healthful properties of unprocessed sugar cane, *see* SAC ¶ 62, the Court agrees with Defendant that this "healthier than refined sugars and syrups" theory, which Plaintiffs have disavowed, is not clearly articulated in the SAC. Thus, the Court finds that the SAC fails to plead reliance based on a theory that Defendant's ECJ statements deceived Plaintiffs into thinking that ECJ was "healthier than refined sugars and syrups."

Although Plaintiffs' Opposition to the Motion for Reconsideration disavows the July 12 Order's "healthier than refined sugars and syrups" theory, the same Opposition simultaneously distances itself from this disavowal by claiming that the SAC adequately pleads reliance based on allegations that Plaintiffs "believed ECJ was some type of ingredient that was healthier than sugar." MTR Opp'n at 3. This argument fails. For one thing, it is a just a restatement of the theory that Plaintiffs believed the Yogurts contained only "natural sugars from milk and fruit," which the Court has already concluded is not plausible. In addition, this "some type of healthier ingredient" theory of reliance does not appear in the SAC. Accordingly, the Court finds that the SAC's allegations of reliance for the ECJ claims are insufficient to survive a motion to dismiss.

Because the Court concludes that the SAC's allegations concerning Plaintiffs' reliance on Defendant's ECJ statements are insufficiently pleaded for purposes of Rules 8(a) and 9(b), it finds that Plaintiffs have failed to demonstrate that they have standing to bring these claims. Accordingly, the Court GRANTS Defendant's Motion to Dismiss the ECJ Claims for lack of standing. Because Plaintiffs may be able to correct the deficiencies in their ECJ reliance

14
Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

allegations, this dismissal is without prejudice.

### b. No Sugar Added Claims

The Court next finds that Plaintiffs have not sufficiently alleged reliance with respect to the No Sugar Added Claims. As alleged in the SAC, these claims are based on Defendant's statements on its website that "we don't add sugar to our yogurt" and that "Just because Champions is made for kids doesn't mean that we need to add extra sugar." SAC ¶ 66-67 (emphasis omitted). Under the UCL and the FAL, as modified by Proposition 64, Plaintiffs are typically required to establish reliance by alleging facts showing they "viewed the defendant's advertising." *Kwikset*, 51 Cal. 4th at 321. The CLRA imposes a similar reliance requirement. *See Durell*, 183 Cal. App. 4th at 1367. Here, however, Plaintiffs do not allege that they ever viewed Defendant's website. *See Id.* at 1363 (holding that there was no reliance where "SAC [did] not allege [plaintiff] ever visited [defendant's] Web site").

Plaintiffs argue that, notwithstanding Plaintiffs' failure to allege that they viewed Defendant's website, the Court may still find that Plaintiffs relied on Defendant's statements. *See* Opp'n at 11. Citing *In re Tobacco II*, Plaintiffs contend that Plaintiffs need not allege that they viewed Defendant's website because Defendant's website statements were part of a "long-term advertising campaign" and "[w]here [a] 'plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.'" *Id.* (quoting *In re Tobacco II*, 46 Cal. 4th at 312). Plaintiffs' reliance on *In re Tobacco II* is misplaced.

In *In re Tobacco II*, the California Supreme Court held that plaintiffs, who had been exposed to a "decades-long campaign of deceptive advertising" aimed at down-playing the negative health effects of smoking were not required to identify with particularity the specific advertisements upon which they relied. 46 Cal. 4th at 306, 328. However, the *In re Tobacco II* Court also emphasized that plaintiffs were still required to allege facts showing that defendants' advertisements "were an immediate cause of the" plaintiffs' decisions to purchase defendants' cigarettes. *Id*. Thus, as explained by the California Court of Appeal in *Pfizer Inc. v. Superior Court*,

15

*In re Tobacco II* "does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign" may bring a claim for relief. 182 Cal. App. 4th 622, 632 (2010). Rather, *In re Tobacco II* stands for the narrower, and more straight-forward proposition that, where a plaintiff has been exposed to numerous advertisements over a period of decades, the plaintiff is not required to "plead with an *unrealistic degree* of specificity [the] particular advertisements and statements" that she relied upon. *In re Tobacco II*, 46 Cal. 4th at 328 (emphasis added).

Here, while Plaintiffs allege generally that "Defendant's misrepresentations and material omissions are part of an extensive labeling, advertising[,] and marketing campaign," SAC ¶ 96, Plaintiffs have not alleged that they were exposed to this campaign. More importantly, Plaintiffs have not alleged that they were exposed to any advertisements featuring statements similar to the No Sugar Added Representations on Defendant's website. Furthermore, Plaintiffs have not alleged anything approaching a "decades-long campaign of deceptive advertising." *In re Tobacco II*, 46 Cal. 4th at 327. *In re Tobacco II* therefore does not salvage Plaintiffs' claims.

Plaintiffs additionally argue that, because the claims on Defendant's website violate FDA labeling requirements, Defendant's Yogurts were misbranded, and thus, were not capable of being sold legally. Opp'n at 11 & n.6. Plaintiffs point out that the SAC alleges that they "would not have purchased Defendant's [Yogurts] had they known they were not capable of being legally sold or held," *id.* at 12 (quoting SAC ¶ 97), and argue that this suffices to establish reliance regardless of whether Plaintiffs viewed the alleged misrepresentations on Defendant's website or not, *id.* at 11-12. The Court disagrees.

Plaintiffs' "illegal product" theory would eviscerate the enhanced standing requirements imposed by Proposition 64 and the California Supreme Court's decision in *Kwikset*. As explained in *Kwikset*, the voters enacted Proposition 64 in 2004 as a means of "confin[ing] standing to those actually injured by a defendant's business practices and [] curtail[ing] the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, *viewed the defendant's advertising*, or had any other business dealing with the defendant." 51 Cal. 4th at 321

16
Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

(emphasis added) (internal quotation marks omitted). Were the Court to hold that Plaintiffs, who never viewed the No Sugar Added Representations, have standing to bring claims based solely upon allegations that they would not have purchased a product that was misbranded, purchasers who never "viewed the defendant's advertising" or misleading labeling would have standing to sue. Such a holding is inconsistent with Proposition 64 and *Kwikset*.[6][7]

Accordingly, the Court finds that Plaintiffs have not sufficiently pleaded reliance and thus fail to establish standing with respect to the No Sugar Added Claims. The Court therefore DISMISSES these claims. However, because Plaintiffs may be able to correct the aforementioned deficiencies, Plaintiffs' claims are dismissed without prejudice.

### c.     All Natural Claims

The Court also finds that Plaintiffs have failed to allege facts showing reliance upon Defendant's All Natural Representations. Plaintiffs allege that Defendant stated, on the Yogurts' labeling and on its website, that the Yogurts contain "[o]nly natural ingredients" and are "all natural." SAC ¶¶ 5-6, 12. Plaintiffs allege that these statements were misleading because some of Defendant's Yogurts, specifically the pomegranate flavor, are colored "artificially" using "fruit or vegetable juice concentrate." SAC ¶ 81. Plaintiffs allege that they would not have purchased the Yogurts had they known the Yogurts "contained . . . unnatural ingredients." SAC ¶¶ 93-95.

As noted by Defendant, however, Defendant's labeling explicitly discloses that Defendant adds "fruit or vegetable juice concentrate [*for color*]." *See* SAC ¶ 13 (emphasis added) (quoting label). Plaintiffs purport to have read the label, including the ingredient list. *See* SAC ¶¶ 93-95 (stating that each Plaintiff read "the labels on Defendant's [Yogurts] including" statements made in

---

[6] Moreover, Plaintiffs' allegations seem to suggest that Defendant failed to disclose the *fact of Defendant's alleged non-compliance with labeling laws*. For Defendant to be liable for failing to disclose this fact, however, Defendant must have a duty to disclose. *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) (holding that plaintiff's UCL claim based on defendant's failure to disclose fees it charged to sellers failed where plaintiff failed to "allege any affirmative duty to disclose" such fees). Here, Plaintiffs have not alleged that Defendant had a duty to disclose or identified the basis for this duty (*e.g.*, fiduciary duty, duty as a seller, etc.).

[7] The requirements of Proposition 64 and *Kwikset* apply equally to Plaintiffs' ECJ and All Natural Claims. Thus, Plaintiffs' "illegal product" theory does not establish standing as to those claims either.

17
Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

the ingredient lists). Because the labels clearly disclosed the presence of fruit or vegetable juice concentrate in the Yogurts, it is not plausible that Plaintiffs believed, based on Defendant's "[o]nly natural ingredients" or "all natural" representations, that the Yogurts did not contain added fruit juice. Consequently, Plaintiffs' allegations of reliance fail, and Plaintiffs' All Natural Claims are dismissed. However, because Plaintiffs may be able to cure the deficiencies, Plaintiffs' claims are dismissed without prejudice.

### d. Products Plaintiffs Did Not Purchase

Finally, the Court finds that Plaintiffs have failed to adequately demonstrate standing with regard to products they did not purchase. Plaintiffs allege that they purchased the pomegranate, lemon, peach, vanilla, strawberry, and blueberry flavors of Chobani Greek Yogurt. *See* SAC ¶¶ 93-95. The SAC, however, includes claims based on other products—namely, the Chobani Greek Yogurt Champions Yogurts and other flavors of Chobani Greek Yogurt—that Plaintiffs do not claim to have purchased. *See* SAC ¶¶ 6, 14. Defendant argues that Plaintiffs lack standing to pursue claims based on products Plaintiffs did not purchase. *See* Mot. at 11-12. As recognized in *Miller v. Ghirardelli Chocolate Co.*, however, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (collecting cases).

With respect to this case, the Court notes at the outset that it is difficult to discern in the SAC which products Plaintiffs are contending contained each representation and for which products these representations were false. In any amended complaint, Plaintiffs are ORDERED to include a list or a table specifically setting forth: (1) which products, including specific flavors, Plaintiffs are including within this lawsuit; (2) which representations appeared on each product; and (3) which representations were false, misleading, or unlawful with respect to each product.

In any event, Plaintiffs' allegations regarding reliance for products they did not purchase fail for the reasons discussed above. *Supra* Part III.A.2.a-c. Furthermore, they fail for the additional reason that Plaintiffs have failed to adequately allege substantial similarity. Although the alleged

18

Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

*misrepresentations* appear to be similar across all Defendant's products, *see, e.g.*, SAC ¶ 14 (alleging that both purchased and non-purchased products use the term ECJ on their labels), Plaintiffs do not allege facts sufficient to show that the *products* Plaintiffs did not purchase are "substantially similar" to those that they did. Accordingly, the Court dismisses Plaintiffs' claims based on products Plaintiffs did not purchase. However, because Plaintiffs may be able to amend the complaint to address these deficiencies, the Court's dismissal is without prejudice.

In sum, the Court finds that Plaintiffs have failed to adequately plead reliance with respect to all three categories of Defendant's alleged misrepresentations, both for products Plaintiffs purchased and for those that they did not. Accordingly, Plaintiffs' UCL, FAL, and CLRA claims are DISMISSED without prejudice.

### B. Unjust Enrichment and Warranty Claims

Defendant next argues that Plaintiffs' seventh cause of action for unjust enrichment must be dismissed. *See* Mot. at 24. The Court agrees. As recognized by this Court in *Brazil*, "there is no cause of action for unjust enrichment under California law." *Id.*, 2013 WL 1209955, at *18; *see, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (collecting cases).

The Court also finds that Plaintiffs' eighth cause of action for violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act") and ninth cause of action for violation of the Magnuson-Moss Warranty Act ("MMWA") must be dismissed. Plaintiffs' claim under the Song-Beverly Act fails because this act does not cover warranties made with respect to "consumables," Cal. Civ. Code § 1791(a), and Defendant's Yogurts are consumables.

Plaintiffs' claim under the MMWA, which creates a civil cause of action for consumers to enforce the terms of implied or express warranties, *see* 15 U.S.C. § 2310(d), similarly fails. The MMWA applies only to products that cost more than five dollars. 15 U.S.C. § 2302(e). Here, Plaintiffs allege that they paid less than five dollars for their yogurt. *See* SAC ¶¶ 93-95 (alleging that Plaintiffs paid between $1.60 and $1.89 for their Yogurts). Moreover, the MMWA applies to "written warrant[ies]," 15 U.S.C. § 2301(6)(A), and, as recognized by this Court in *Brazil*, "'product descriptions [such as 'all natural'] do not constitute warranties against a product defect'

for the purposes of a MMWA claim[].” *See Brazil*, 2013 WL 1209955, at *17 (quoting *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-2910, 2012 WL 2990766, at *3 (N.D. Cal. July 20, 2012)).

Accordingly, Plaintiffs' unjust enrichment, Song-Beverly Act, and MMWA claims are DISMISSED. Moreover, because Plaintiffs cannot show that: (1) unjust enrichment is a separate cause of action; (2) the Yogurts were not consumables; (3) the Yogurts cost $5 or more; or (4) product descriptions qualify as warranties, these claims are dismissed with prejudice. *See Carvalho*, 629 F.3d at 892 (a court "may . . . deny leave to amend due to . . . futility of amendment.").

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS with leave to amend Defendant's Motion to Dismiss Plaintiffs' UCL, FAL, and CLRA claims. The Court GRANTS with prejudice Defendant's Motion to Dismiss Plaintiffs' unjust enrichment, Song-Beverly Act, and MMWA claims.

If Plaintiffs wish to file an amended complaint addressing the deficiencies identified in this Order, Plaintiffs must do so within 21 days of this Order. Failure to meet the 21-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiffs may not add new claims or parties without seeking Defendant's consent or leave of the Court pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: September 19, 2013

_____
LUCY H. KOH
United States District Judge

20

Case No.: 12-CV-02425-LHK
ORDER GRANTING MOTION TO RECONSIDER JULY 12, 2013 ORDER ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT