1   Ben F. Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
2   1871 The Alameda, Suite 425
    San Jose, CA 95126
3   Telephone:  (408) 369-0800
    Fax:  (408) 369-0752
4   pgore@prattattorneys.com

5   Darren L Brown (*pro hac vice*) (TX SBN 03108350)
    PROVOST ✯ UMPHREY LAW FIRM, LLP
6   490 Park Street
    Beaumont, TX 77701
7   Telephone: (409) 838-8881
    Fax: (409) 813-8630
8   dbrown@pulf.com

9   *Attorneys for Plaintiffs*

10

11

12                  IN THE UNITED STATES DISTRICT COURT

13             FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                            SAN JOSE DIVISION

15

16   KATIE KANE, an individual, DARLA          Case No.  CV 12-02425 LHK
     BOOTH, an individual, and ARIANNA
17   ROSALES, an individual, on behalf of      **THIRD AMENDED CLASS ACTION AND**
     themselves and all others similarly       **REPRESENTATIVE ACTION**
     situated,
18                                             **THIRD AMENDED COMPLAINT FOR**
                    Plaintiffs,                **DAMAGES, EQUITABLE AND**
19                                             **INJUNCTIVE RELIEF**
     v.
20                                             **JURY TRIAL DEMANDED**
     CHOBANI, INC., also formerly known
21   as AGRO-FARMA, INC.,

22                  Defendant.

23

24          Plaintiffs, through their undersigned attorneys, bring this lawsuit against Defendant

25   Chobani, Inc., also formerly known as Agro-Farma, Inc., (hereafter, "Chobani" or "Defendant")

26   as to their own acts, upon personal knowledge, and as to all other matters upon information and

27   belief.  In order to remedy the harm arising from Defendant's illegal conduct which has resulted

28   in unjust profits, Plaintiffs bring this action on behalf of themselves and (1) a nationwide class of

consumers and/or, in the alternative, (2) a statewide class of California consumers both of whom, within the last four years, purchased any Chobani Greek Yogurt product: (1) labeled with the ingredient "evaporated cane juice" and/or (2) labeled "All Natural", "All Natural Ingredients" or "Only Natural Ingredients," but which in fact contain artificial ingredients and/or artificial colors and coloring (collectively, products in categories No. 1 and 2 are referred to herein as "Misbranded Food Products").[1]

**DEFINITIONS**

1.      "Class Period" is May 14, 2008 to the present.

2.      "Purchased Products" means Chobani's Greek Yogurt in the following flavors: Lemon, Vanilla, Pomegranate, Peach, Blueberry and Strawberry yogurt products that were purchased by Plaintiffs during the Class Period. Photographs of representative labels of some of the Purchased Products are included within Exhibits 1, 2 and 3 attached hereto and incorporated herein for all purposes.

3.      "Substantially Similar Products" are the Chobani Greek yogurt products listed in Table 1 below.  Each of these listed products: (1) make the same label misrepresentations, as described herein, as the Purchased Products and (2) violate the same regulations of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, *et seq.* (the "Sherman Law") as the Purchased Product, as described herein. Substantially Similar Products are all Greek yogurt products like the Purchased products. They differ primarily by flavoring or container style and are manufactured from the same primary ingredients (Cultured Pasteurized Nonfat Milk, Cream, Live and Active Cultures: S. Thermophilus, L. Bulgaricus, L. Acidophilus, Bifidus and L. Casei).  All of the Purchased Products and Substantially Similar Products contain the ingredients Evaporated Cane Juice (hereafter sometimes referred to as "ECJ") as well as others.  Eleven of the Eighteen flavors of the Purchased Products and Substantially Similar Products contain artificial coloring agents such as turmeric, fruit juice and vegetable juice as noted in Table 1.

---

[1]  This case includes all flavors of the "Purchased Products" and the "Substantially Similar Products" as defined herein.

1        4.      "Misbranded Products" are the Purchased Products and the Substantially Similar Products identified herein.

5.      Upon information and belief, these Purchased Products and Substantially Similar Products are Chobani Greek yogurt products, sold during the class period and listed below in Table 1.  Plaintiffs reserve the right to supplement this list if evidence is adduced during discovery to show that other Chobani Greek yogurt products had labels which violate the same provisions of the Sherman Law and have the same label representations as the Purchased Products.  Table 1 below shows the Purchased Products and Substantially Similar Products that are misbranded and at issue in this case, the corresponding label violation and/or misrepresentation, and the statute and/or regulation that is violated thereby.

## CHOBANI MISBRANDED PRODUCTS – TABLE 1

| NO. | PRODUCT | FLAVOR | LABEL VIOLATION/ MISREPRESENTATION | REGULATION/ - LAW VIOLATED BY USE OF ECJ | REGULATION/ LAW VIOLATED BY USE OF ALL NATURAL/ ONLY NATURAL INGREDIENTS |
|---|---|---|---|---|---|
| 1 | Chobani Greek Yogurt | Apple-Cinnamon | ECJ | 21 CFR 101.30 21 CFR 101.4(a)(1) 21 CFR 101.4(b)(20) 21 CFR 102.5 21 CFR 131.200 21 CFR 184.1854 21 CFR 1.21 21 CFR 120.1 (a) 21 CFR 168.130 Cal. Health & Safety Code §110100 §110390 §110395 §110398 §110400 §110505 §110660 §110705 §110710 §110725 §110760 §110770 §110775 §110825 Cal. Food & Agriculture Code §§36671 §§36672 §§36673 21 USC 343 | Not applicable to this flavor. |
| 2 | Chobani Greek Yogurt | Black Cherry | ECJ | Same as above | Not applicable to this flavor. |

| NO. | PRODUCT | FLAVOR | LABEL VIOLATION/ MISREPRESENTATION | REGULATION/ - LAW VIOLATED BY USE OF ECJ | REGULATION/ LAW VIOLATED BY USE OF ALL NATURAL/ ONLY NATURAL INGREDIENTS |
|---|---|---|---|---|---|
| 3 | Chobani Greek Yogurt | Blood Orange | ECJ<br><br>All Natural/Only Natural Ingredients/ All Natural Ingredients | Same as above | 21 CFR 1.21<br>21 CFR 70.3<br>21 CFR 101.22<br>21 CFR 101.4 (b)<br><br>Cal. Health & Safety Code<br>§110100<br>§110390<br>§110395<br>§110398<br>§110400<br>§110660<br>§110705<br>§110740<br>§110760<br>§110770<br>§110775<br>§110725<br><br>FDA Compliance Policy Guide §587.100<br><br>21 USC 343 |
| 4 | Chobani Greek Yogurt | Blueberry* | ECJ | Same as above | Not applicable to this flavor. |
| 5 | Chobani Greek Yogurt | Lemon* | ECJ<br><br>All Natural/Only Natural Ingredients/ All Natural Ingredients | Same as above | Same as No. 3 above |
| 6 | Chobani Greek Yogurt | Mango | ECJ<br><br>All Natural/Only Natural Ingredients/ All Natural Ingredients | Same as above | Same as No. 3 above |
| 7 | Chobani Greek Yogurt | Passion Fruit | ECJ | Same as above | Not applicable to this flavor. |
| 8 | Chobani Greek Yogurt | Peach* | ECJ | Same as above | Not applicable to this flavor. |

| 9 | Chobani Greek Yogurt | Pomegranate* | ECJ<br><br>All Natural/Only Natural Ingredients/ All Natural Ingredients | Same as above | Same as No. 3 above |
| 10 | Chobani Greek Yogurt | Pineapple | ECJ<br><br>All Natural/Only Natural Ingredients/ All Natural Ingredients | Same as above | Same as No. 3 above |
| 11 | Chobani Greek Yogurt | Raspberry | ECJ<br><br>All Natural/Only Natural Ingredients/ All Natural Ingredients | Same as above | Same as No. 3 above |
| 12 | Chobani Greek Yogurt | Strawberry* | ECJ<br><br>All Natural/Only Natural Ingredients/ All Natural Ingredients | Same as above | Same as No. 3 above |
| 13 | Chobani Greek Yogurt | Strawberry-Banana | ECJ<br><br>All Natural/Only Natural Ingredients/ All Natural Ingredients | Same as above | Same as No. 3 above |
| 14 | Chobani Greek Yogurt | Vanilla* | ECJ | Same as above | Not applicable to this flavor. |
| 15 | Chobani Champions Greek Yogurt | Honeynana | ECJ<br><br>All Natural/Only Natural Ingredients/ All Natural Ingredients | Same as above | Same as No. 3 above |
| 16 | Chobani Champions Greek Yogurt | Orange Vanilla | ECJ<br><br>All Natural/Only Natural Ingredients / All Natural Ingredients | Same as above | Same as No. 3 above |
| 17 | Chobani Champions Greek Yogurt | Vanilla-Chocolate Chunk | ECJ | Same as above | Not applicable to this flavor. |
| 18 | Chobani Champions Greek Yogurt | Very Berry[2] (Berry Nana) | ECJ<br><br>All Natural/Only Natural Ingredients/ All Natural Ingredients | Same as above | Same as No. 3 above |

*Purchased Products

---

[2] See Exhibit 4, a photograph of a representative container of Chobani Champions Greek Yogurt-Very Berry Flavor, attached hereto and incorporated herein for all purposes.

*Third Amended Class Action Complaint*          Case No. CV 12-02425 LHK

## SUMMARY OF THE CASE

6.     Plaintiffs' case has two facets.  The first is the "UCL unlawful" part. Plaintiffs' first cause of action is brought pursuant to the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").   *See,* First Cause of Action below. Plaintiffs allege that Defendant packages and labels the Purchased Products in violation of California's Sherman Law which adopts, incorporates – and is identical – to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").   These violations (which do not require a finding that the labels are "misleading") render the Purchased Products and Substantially Similar Products "misbranded".  Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.  Indeed, the sale, purchase or possession of misbranded food is a criminal act in California and the FDA even threatens food companies with seizure of misbranded products.   This "misbranding" – standing alone without any allegations of deception by Defendant other than the failure to disclose as per its duty, the material fact that the product was illegal, or review of or reliance on the labels by Plaintiffs – gives rise to Plaintiffs' first cause of action under the UCL unlawful prong and is a strict liability claim.

7.     The second aspect to this case is the "deceptive" part. Plaintiffs allege that the labels on the Purchased Products and the Substantially Similar Products – aside from being unlawful under the Sherman Law – are also misleading, deceptive, unfair and fraudulent. Plaintiffs describe these labels and the ways in which they are misleading.  Each Plaintiff alleges that she reviewed the labels on the respective Purchased Products that she purchased, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products.   Moreover, the very fact that Defendant sold such illegal Purchased Products and Substantially Similar Products and did not disclose this fact to consumers is a deceptive act in and of itself.  Plaintiffs would not have purchased a product that is illegal to own or possess.  Had Defendant informed Plaintiffs of this fact there would have been no purchases.  Plaintiffs relied upon the Defendant's implied representation that Defendant's products were illegal that arose

from Defendant's material omission of the facts that its products were illegal.

8.     Plaintiffs did not know, and had no reason to know, that Defendant's products were misbranded under the Sherman Law and bore food labeling claims despite failing to meet the requirements to make those food labeling claims. Similarly, Plaintiffs did not know, and had no reason to know, that Defendant's products were false and misleading.

9.     In order to remedy the harm arising from Defendant's illegal conduct, which has resulted in unjust profits, Plaintiffs bring this action on behalf of a nationwide class of consumers and/or alternatively, a California class of consumers who, within the Class Period, purchased Defendant's Purchased Products and Substantially Similar Products (1) labeled with an "All Natural" or "All Natural Ingredients"  or "Only Natural Ingredients" claim despite containing highly processed, artificial or synthetic ingredients, or artificial colors or coloring; or (2) labeled with the ingredient "evaporated cane juice" when such ingredient was not "juice" but was actually sugar(s) or syrup(s).

10.     Identical California and federal laws require truthful, accurate information on the labels of packaged foods. The law is clear: misbranded food cannot legally be sold, possessed, has no economic value and is legally worthless. Purchasers of misbranded food are entitled to a refund of their purchase price.

11.     Identical California and federal laws regulate the content of labels on packaged food.  The FDCA of requirements were adopted by the California Sherman Law.  Under both the Sherman Law and FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

12.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement.

13.     Under California law, a food product that is "misbranded" cannot legally be

1    manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold,

2    possessed, have no economic value, and are legally worthless.  Plaintiffs and members of the

3    Class who purchased these products paid an unwarranted premium for these products.

4            14.     Chobani's website, www.chobani.com, and all linked Chobani websites, including

5    but not limited to www.chobanichampions.com, are incorporated into the label for each of

6    Defendant's respective products. The Purchased Products and the Substantially Similar Products

7    contain one or the other of these website addresses. According to the FDA, and as a matter of law,

8    the Chobani website and Chobani Champions website and all linked websites constitute the

9    labeling of any product bearing these web addresses.

10           15.     If a manufacturer, like Chobani, is going to make a claim on a food label, the label

11   must meet certain legal requirements that help consumers make informed choices and ensure that

12   they are not misled and that label claims are truthful, accurate, and backed by scientific evidence.

13   As described more fully below, Defendant has sold products that are misbranded and are

14   worthless because (i) the labels violate the Sherman Law and, separately, (ii) Defendant made,

15   and continues to make, false, misleading and deceptive claims on its labels.

16           16.     Plaintiffs bring this action under California law, which is identical to federal law,

17   for a number of the Defendant's food labeling practices which are both (i) unlawful and (ii)

18   deceptive and misleading to consumers.  These include:

19           a.      Representing food products to be "all natural," or to have "all natural
                     ingredients" or "only natural ingredients" when they contain added artificial color
20                   and other artificial ingredients;

21           b.      Making unlawful and misleading "evaporated cane juice" claims;

22                                              **BACKGROUND**

23           17.     Chobani conducts its yogurt business throughout the United States and

24   internationally.  Chobani has also done business in the past as Agro-Farma Inc., before changing

25   that name to Chobani, Inc. in January, 2012.  Chobani's sales have increased from almost nothing

26   in 2007, to $257 million in 2010, over $500 million in 2011, approximately $1 billion currently

27   and are expected to reach $1.5 billion in 2014.[3]  Chobani is one of the nation's top three

28   _____
     [3]  *See* Walsh, M., *Chobani Takes Gold in the Yogurt Aisle*, (July 31, 2012) *available at*

manufacturers of yogurt and has approximately 20% of the yogurt market in the United States and up to 60% of the Greek yogurt market.  And, as of May 2012, Chobani was the top selling yogurt in the United States, shipping 1.7 million cases weekly to grocery and shopper club stores nationwide.[4]  Chobani Greek Yogurt products are sold at a premium price.

18.     Chobani's marketing strategy takes into account that American consumers are becoming more health conscious and are increasingly searching for wholesome, natural foods to maintain a healthy diet.  In, fact, 80% of the general population thought that whether a product was natural or had natural ingredients was an important product attribute that was relevant to their purchase decision. Product labels have assumed an important role in assisting consumers in making healthy and informed food choices.

19.     Chobani has responded to consumers' demand for nutritious foods by including nutrition information on its products and actively promoting the naturalness and health benefits of its products.  For example, Chobani makes the following representations regarding its yogurt:

- "This unique straining process is what makes Chobani "Greek" and full of flavor and health benefits:  Only natural ingredients. No preservatives. No artificial flavors."

- "We . . . lightly sweeten our real fruit chunks with evaporated cane juice, a natural type of unrefined sweetener."

20.     Many of these health-benefit representations appear directly on the Chobani Greek Yogurt Product packaging:

---

[4] http://www.businessweek.com/articles/2012-07-31/chobani-takes-gold-in-the-yogurt-aisle  (last visited August 15, 2012).

[4] *See* Ransom, D., *Chobani Yogurt's Success Starts Where a Giant Left Off*, (May 25, 2012) *available at* http://www.entrepreneur.com/blog/223668 (last visited August 15, 2012).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





*Third Amended Class
Action Complaint*

*Case No. CV 12-02425 LHK*

1

2          21.     They also appear on the Chobani® Greek Yogurt Champions product package – a

3   line of yogurt designed to appeal to kids - as demonstrated in the exemplar below:



16          22.     While most current Chobani labels claim "all natural ingredients" or "only natural

17   ingredients, these claims represent a labeling change from prior product packaging from the

18   earlier part of the class period when Chobani employed an "all natural" claim that did not include

19   the word "ingredients." Chobani has since substituted the claims "all natural ingredients" or "only

20   natural ingredients" for the claim "all natural" on most of its products.  This distinction is not

21   significant, however, as Chobani's use of artificial ingredients rendered all claims related to

22   naturalness false and misleading. Moreover, to Plaintiffs and any reasonable consumer the claim

23   "all natural" and the claims "all natural ingredients" or "only natural ingredients" mean the same

24   thing – the product is composed exclusively of natural ingredients and does not contain any

25   ingredients that are unnatural or artificial. Exhibit 5, attached hereto and incorporated herein for

26   all purposes, contains sample screen shot photographs of containers of Chobani's Greek Yogurt

27   pomegranate and blueberry flavors as such existed on Chobani's website in May and June of

28   2011        and        retrieved        from        the        Wayback        Machine        at

web.archive.org/web/20110616144639/http:/www.chobani.com.  The highlighted portions of the container labels on these screen shot photographs, show, based upon information and belief, that Chobani used the phrase "All Natural" on its Greek Yogurt products in May and June of 2011.

23.    Defendant's website, www.Chobani.com, is also dedicated to promoting the purported naturalness, nutritional, and health qualities of its yogurt products.  On the website's "frequently asked questions" page, Chobani states:

**What are the health benefits of Chobani?**

There are so many! Where should we start?

Chobani is a naturally good for you indulgence. We strain Chobani, which results in a tasty, creamy yogurt that has two times more protein than regular yogurt.

Chobani also contains five types of live and active cultures including three strains of probiotics. Plus, it's authentically rich and creamy so it's a good-for-you way to satisfy your sweet tooth.

*See* http://chobani.com/products/faq/.

24.    Chobani also encourages consumers visiting its website to "health-ify" their favorite recipes by substituting the Misbranded Food Products in place of less nutritious ingredients.[5]

25.    Chobani's active promotion of the purported naturalness, nutritional and health benefits of its Misbranded Food Products violates California and federal law.

26.    For example, the Nutrition Facts for Chobani's Greek Yogurt, Pomegranate flavor, state that it has 19 grams of sugar, but the ingredient section fails to list "sugar" or "dried cane syrup" as an added ingredient.  Instead, the label lists "Evaporated Cane Juice" as an ingredient – which is a highly refined added sweetener devoid of nutritional value - despite the fact that the FDA has specifically warned companies not to use this term because 1) it is "false and misleading;" 2) it violates a number of labeling regulations designed to ensure that manufacturers label their products with the common and usual names of the ingredients they use and accurately describe the ingredients they utilize; and 3) the ingredient in question is not a "juice."[6]  A

---

[5] *See* http://chobani.com/core/wp-content/themes/chobani/media_kit/About-Chobani.pdf

[6] Guidance for Industry: Ingredients declared as Evaporated Cane Juice; Draft Guidance (Oct. 2009)  *available   at*   http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/ GuidanceDocuments/FoodLabelingNutrition/ucm181491.htm (last visited August 13, 2012).

1   products ingredient list is the only place a consumer can look to determine if "added sugar", as

2   opposed to intrinsic or naturally occurring sugar, has been added as an ingredient.

3        27.    In other marketing literature, Chobani represents that "evaporated cane juice" is "a

4   natural type of unrefined sweetener."  Chobani fails to disclose the fact that that "evaporated cane

5   juice" is, in its ordinary and commonly understood terms, "sugar," and/or "dried cane syrup" and

6   that it is a refined sweetener.  For example, on the "About" section of Chobani's website[7]

7   Defendant states that Chobani Greek Yogurt contains "Only natural ingredients.  No

8   preservatives.  No artificial flavors."  Further, in the "facts" section of its website[8] Defendant

9   states that:

10   **It says on your cups that Chobani is "all natural."  What does that mean?**

11   Although the U.S. Food and Drug Administration (FDA) has yet to release a
12   formal definition for the term "natural", to us it recognizes that a product is free of
      processed ingredients along with artificial colors, preservatives, flavors and
13   sweeteners.  And that's exactly what Chobani is.

14   You won't see anything listed on our ingredient labels that looks like it's straight
      from a scary science experiment.  Just local milk in our plain varieties, real fruit in
15   our fruit on the bottom Chobani and pure clover honey in our Honey Chobani.

16   And,

17        28.    By way of example, the list of ingredients for Chobani's Greek Yogurt,

18   Pomegranate flavor is as follows:

19

20

21

22

23

24

25

26

27

28

---

[7] Available at http://chobani.com/about/ (last accessed on May 29, 2012).
[8] Available at http://chobani.com/about/faqs/ (last accessed on May 29, 2012).

*Third Amended Class
Action Complaint*
    *Case No. CV 12-02425 LHK*

| **Nutrition Facts** | Amount Per Serving | %Daily Value* | Amount Per Serving | %Daily Value* |
|---|---|---|---|---|
| Serving Size: 6oz (170g)<br>Servings Per Container 1 | **Total Fat** 0g | **0%** | **Total Carbohydrate** 21g | **7%** |
| | Saturated Fat 0g | **0%** | Dietary Fiber 0g | **0%** |
| | *Trans* Fat 0g | | Sugars 19g | |
| **Calories** 140<br>Calories from Fat 0 | **Cholesterol** 0mg | **0%** | **Protein** 14g | **28%** |
| *Percent Daily Values (DV) are based on a 2,000 calorie diet.* | **Sodium** 75mg | **3%** | | |
| | Vitamin A 0% • Vitamin C 0% • Calcium 15% • Iron 2% | | | |

**INGREDIENTS: NONFAT YOGURT** (CULTURED PASTEURIZED NONFAT MILK. LIVE AND ACTIVE CULTURES: S. THERMOPHILUS, L. BULGARICUS, L. ACIDOPHILUS, BIFIDUS AND L. CASEI). **FRUIT ON THE BOTTOM** (EVAPORATED CANE JUICE, POMEGRANATE SEEDS, POMEGRANATE JUICE CONCENTRATE, PECTIN, NATURAL FLAVOR, LOCUST BEAN GUM, FRUIT AND VEGETABLE JUICE CONCENTRATE [FOR COLOR]).

29.     The above nutritional facts panel and ingredients list is typical of all Purchased Products and Substantially Similar Products 1) in its use of evaporated cane juice as an ingredient and its omission of "sugar" or "syrup" as an added ingredient2) in its use of the unnatural ingredients, the artificial colorants, "fruit and vegetable juice (for color)" (stated as "turmeric (for color" in the lemon and pineapple flavors). Exhibit 6, attached hereto and incorporated herein for all purposes, contains printouts from the www.chobani.com website of photographs of the labels and ingredient list of the Purchased Products and Substantially Similar Products at issue.

30.     If a manufacturer makes a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled.  As described more fully below, Defendant has made, and continues to make, unlawful as well as false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.  These laws recognize that reasonable consumers are likely to choose products claiming to be natural or to have a health or nutritional benefit over otherwise similar food products that do not claim such properties or benefits or that disclose certain ingredients.  More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition.

31.     Defendant has made, and continues to make, false and deceptive claims on its Misbranded Food Products in violation of federal and California laws.  In particular, Defendant has violated federal and California labeling regulations by listing sugar and/or sugar cane syrups as "evaporated cane juice."  According to the FDA, the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including sugar or dried cane syrup because sugar has a standard of identity defined by regulation in 21 C.F.R. § 101.4b (20); 21 CFR 184.1854.  The common or usual name for this ingredient is "sugar".  According to the FDA, sweeteners derived from sugar cane or sugar cane syrup should not be listed in the ingredient declaration by names that suggest that the ingredients are juice, such as "evaporated cane juice."  The FDA considers such representations to be "false and misleading" under section 403(a)(1) of the FDCA (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 C.F.R. § 102.5.

32.     Defendant has also made unlawful "all natural" and "all natural ingredients" and "only natural ingredients" claims on its Misbranded Food Products, in that Defendant has violated labeling regulations mandated by federal and California law which forbid the use of such labeling if the product contains artificial ingredients and/or artificial colors and coloring.

33.     Under California law, food is misbranded if it bears or contains any artificial ingredient, artificial color or coloring, unless its labeling states that fact (California Health & Safety Code §110740).  California's law is identical to federal law on this point.

34.     Pursuant to 21 C.F.R. §101.22 which has been adopted by California, "[a] statement of artificial ingredients, artificial color or coloring, shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food."

35.     Defendant recognizes that use of artificial colors precludes use of "natural".  Defendant's use of color that the State of California has deemed to be "artificial" then precludes use of the term natural under FDA, California Law and Chobani's own definition.

36.     Defendant's violations of law include the illegal advertising, marketing, distribution, delivery and sale of Defendant's Misbranded Food Products to consumers in California and throughout the United States.

37.     Defendant has made, and continues to make, misleading and unlawful ingredient and "all natural" claims on food labels of its Misbranded Food Products that are prohibited by federal and California law and which render these products misbranded.     Defendant's false and misleading labeling practices stem from its global marketing strategy.   Thus, the violations, misrepresentations and material omissions are similar across product labels and product lines.

38.     Consumers have paid a premium price for Misbranded Food Products that they have been misled into believing do not contain added sugars or syrups and do not contain artificial ingredients and colors.

### PARTIES

39.     Plaintiff Kane is a resident of Los Gatos, California who purchased various flavors of Chobani's Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the "Class Period").

40.     Plaintiff Booth is a resident of Los Gatos, California who purchased various flavors of Chobani's Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the "Class Period").

41.     Plaintiff Rosales is a resident of El Centro, California who purchased various flavors of Chobani's Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the "Class Period").

42.     Chobani, Inc. is a New York corporation doing business in the State of California and throughout the United States of America.   Chobani, Inc., has previously been served with process.

43.     Defendant is a leading producer of retail yogurt products, including the Misbranded Food Products.  Defendant sells its food products to consumers through grocery and other retail stores throughout California and the United States.

1

**JURISDICTION AND VENUE**

2       44.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)

3   because this is a class action in which: (1) there are over 100 members in the proposed class;

4   (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims

5   of the proposed class members exceed $5,000,000 in the aggregate.

6       45.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28

7   U.S.C. § 1331, because it arises under the laws of the United States.

8       46.     The Court has jurisdiction over the California claims alleged herein pursuant to 28

9   U.S.C. § 1367, because they form part of the same case or controversy under Article III of the

10  United States Constitution.

11      47.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

12  28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

13  between citizens of different states.

14      48.     The Court has personal jurisdiction over Defendant because a substantial portion

15  of the wrongdoing alleged in this Amended Complaint occurred in California, Defendant is

16  authorized to do business in California, has sufficient minimum contacts with California, and

17  otherwise intentionally avails itself of the markets in California and the United States through the

18  promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by

19  this Court permissible under traditional notions of fair play and substantial justice.

20      49.     Because a substantial part of the events or omissions giving rise to these claims

21  occurred in this District and because this Court has personal jurisdiction over Defendant, venue is

22  proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

23

**FACTUAL ALLEGATIONS**

24

   A.   **Identical California And Federal Laws Regulate Food Labeling**

25      50.     Food manufacturers are required to comply with identical federal and state laws

26  and regulations that govern the labeling of food products.  First and foremost among these is the

27  FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101 et. seq.

28      51.     Pursuant to the Sherman Law, California has expressly adopted the federal

*Third Amended Class
Action Complaint*          *Case No. CV 12-02425 LHK*

labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health & Safety Code § 110100.

52.     In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.  For example, a food product is misbranded under California Health & Safety Code §110660 if its labeling is false and misleading in one or more particulars.  Further, it is misbranded under California Health & Safety Code §110740 if it contains artificial flavoring, artificial coloring and chemical preservatives but fails to adequately disclose that fact on its labeling; and is misbranded under Cal.  Health & Safety Code §110725 if it fails to use the common and usual name to identify an ingredient in the product.

**B.     Defendant's Use of "Evaporated Cane Juice" As An Ingredient on Its Labels is Unlawful**

53.     All of Chobani's Greek Yogurt products at issue have unlawfully utilized the illegal term ECJ in the ingredient list on their labels.

54.     Chobani unlawfully uses the illegal term "Evaporated Cane Juice" on its package labels, instead of the proper term sugar.[9]

55.     Chobani uses the term ECJ to make its products appear healthier than a product that contains "added sugar" as an ingredient.  This illegal label term is used to increase sales and to charge a premium by making a product seem healthier than it is in reality by making it appear that no sugar has been added as an ingredient to Chobani's Greek Yogurt.

---

[9] Plaintiffs allege that the ingredient called "evaporated cane juice" by Defendant was in fact sugar. It is possible, however, that instead of adding crystallized sugar as the ingredient at issue that the Defendant added dried sugar cane syrup as the ingredient as the ingredient at issue. The common and usual name of such a syrup is "dried cane syrup" as detailed in 21 C.F.R. § 168.130. Regardless of whether the ingredient in question was sugar or dried cane syrup, calling the ingredient ECJ is unlawful and violates the same state and federal statutory and regulatory provisions and is contrary to FDA policy and guidance. Moreover, the use of the term ECJ renders the products misbranded and illegal to sell or possess regardless of whether the ECJ refers to sugar or sugar cane syrup. While Plaintiffs allege that the ingredient in question was in fact sugar, the Plaintiffs' allegations that ingredient listed as ECJ was sugar should be read to mean the ingredient listed as ECJ was sugar or, in the alternative, dried cane syrup.

56.     Each of the "purchased products" and "substantially similar products" at issue in this case are misbranded in the same way in that they list "evaporated cane juice" in the ingredient list and omit the term "sugar" or "syrup" as an added ingredient.

57.     Exemplar labels are provided in Exhibits 1-4.  These exhibits are true, correct and accurate photographs of Chobani's ingredient labels of some of the Purchased Products and representative of the labels on the Substantially Similar Products in their use of ECJ. In addition to the products for which labels are provided, Chobani has listed ECJ as an ingredient in each and every one of its Greek Yogurt products including the Substantially Similar Products.

58.     Chobani's product labeling fails to accurately identify sugar as an "added ingredient" of its Greek Yogurt products. Rather, the label identifies "Evaporated Cane Juice" as an ingredient, despite the fact that the FDCA requires that the ingredient be called "sugar" or "dried cane syrup." The ingredient is not "juice," but is "sugar" or "syrup." 21 C.F.R. § 101.4 (a)(1) provides "[i]ngredients required to be declared on the label or labeling of a food…shall be listed by common or usual name… ." The common or usual name for an ingredient is the name established by common usage or by regulation." 21 C.F.R. § 102.5.  These federal regulations have been adopted by California pursuant to the Sherman Law.  As discussed below, ECJ is not the common or usual name of any sweetener as established by common usage or by regulation.

59.     Consistent with the common and usual name regulations, the FDA has specifically warned companies not to use the term "Evaporated Cane Juice."   The FDA has issued these warnings because a label containing the term ECJ (1) is "false and misleading"; and (2) it is a violation of a number of labeling regulations designed to ensure that manufacturers label their products with the common and usual names of the ingredients they use and accurately describe the ingredients they utilize; and (3) the ingredient in questions is not a juice.

60.     According to the FDA's published policy, "evaporated cane juice" is simply a "false and misleading" way of describing sugar, and therefore, it is improper to disguise sugar in a product as a type of "juice."

61.     In October of 2009, the FDA issued *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice*, *Draft Guidance*, ("2009 ECJ Guidance") (*emphasis* added) which advised industry that:

> [T]he term "evaporated can juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as  "evaporated cane juice" because that term falsely suggests that the sweeteners are juice…

> "Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree."…

> As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food… shall be listed by common or usual name…"  The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)).  The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))…

> Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)…

> The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried can syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

> Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." **FDA considers such representations to be false and misleading** under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21CFR 102.5.  Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30). (emphasis added).

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.html.

62. The FDA's position is clear: labels listing "evaporated cane juice" are "false and misleading." ECJ is an unlawful term because it is not the common or usual name for sugar. The ingredient listed as "evaporated cane juice" on Defendant's labels is really "sucrose" as defined in 21 C.F.R. § 184.1854 which is required to be listed as "sugar". While FDA regulations generally provide that "[t]he name of an ingredient shall be a specific name and not a collective (generic) name," the regulations expressly provide that "[f]or purposes of ingredient labeling, the term *sugar* shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter." 21 C.F.R. § 101.4(b)(20)(emphasis in original). 21 C.F.R. § 184.1854 lists the chemical names and identifies "sucrose", CAS number and structure of sugar/sucrose (C12 H22 O11, CAS Reg. No. 57-50-11-1, β-D-fructofuranosyl-α-D-glucopyranoside) as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers and includes products "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated." The ingredient identified as ECJ meets this definition and is sucrose. As such, Defendant cannot call its sweetener ingredient "evaporated cane juice," but must call it "sugar" or alternatively, "dried cane syrup" pursuant to FDA regulations.

63. It is well established FDA policy that ingredients must always be declared by their common and usual names. In its October 2009 *Guidance for Industry: A Food Labeling Guide (6. Ingredient Lists)*, the FDA advises:

> Should the common or usual name always be used for ingredients?
>
> **Answer:** Always list the common or usual name for ingredients unless there is a regulation that provides for a different term. For instance, use the term "sugar" instead of the scientific name "sucrose."
>
> "INGREDIENTS: Apples, Sugar, Water, and Spices"
>
> See also section 4 question 3. 21 CFR 101.4(a)

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm064880.htm#common.

64.     Defendant could easily have complied with the FDA and Sherman Law labeling regulations by simply following the FDA's clear example and listing "sugar" on the ingredient list instead of resorting to the illegal term "evaporated cane juice."

65.     When the food industry first approached the FDA in 1999 with the idea of calling sugar "evaporated cane juice," the FDA responded with a guidance letter ("2000 Guidance Letter"), saying that certain sweeteners have "well recognized common or usual name[s]" and the common or usual name of "[t]he product extracted from sugar cane is either 'sugar' [21CFR § 101.4(b)(20) and 184.1854], or 'cane sirup' [21 CFR § 168.130]."  The 2000 Guidance Letter went on to point out to the industry that sweeteners such as the sugar at issue here:

> should not be declared in the ingredient declaration by names which suggest that the ingredients are juice, e.g "evaporated _ juice" or "_nectar", or in such a way as to suggest that the ingredients contain no sugar, e.g. "natural extract of _". Such representations are false and misleading and fail to reveal the basic nature of the food and its characterizing properties, i.e. the ingredients are sugar or syrups. They are not juice and we should also point out that it is false and misleading to include any of these sweeteners in the fruit juice percentage declaration on the label. As you know, many of FDA's criminal prosecutions of manufacturers and seizures of fruit juices for economic adulteration have involved precisely these sweeteners being misrepresented in such a way as to mislead consumers.
>
> We are concerned about the potential of these ingredients to be labeled in such a way as to mislead consumers. We trust that the foregoing will be helpful in providing guidance on the appropriate labeling of these ingredients.

66.     Since it issued the 2000 Guidance Letter, the FDA has sent out numerous warning letters to food manufacturers putting the food industry on notice that ECJ is not the common or usual name of any sweetener, and that its use on food labels is unlawful. Pursuant to FDA policy, warning letters are issued for violations of regulations that the FDA considers to be "violations of regulatory significance".  The FDA warning letters some of which were issued before 2009 and others after the 2009 ECJ Guidance have all expressly stated that "evaporated cane juice" is not the common or usual name of any type of sweetener and that it is not "juice". FDA has stated that the proper way to declare this ingredient can be found on the FDA website in the 2009 ECJ Guidance.

67.     The FDA has not wavered from its position that "evaporated cane juice" is a false and misleading term that violates numerous labeling regulations and misbrands products since it

1    was first set out in 2000. Despite the FDA's  numerous policy statements, warning letters and

2    guidance, including the issuance of the 2009 ECJ Guidance which merely reiterates a position the

3    FDA has taken for at least a full decade, Chobani failed to remove the unlawful term ECJ from

4    their misbranded food products' ingredient lists.

5         68.    Plaintiffs and the Class paid a premium price for Chobani products with the illegal

6    term ECJ listed on their labels. Plaintiffs would not have purchased these products had they

7    known the products (1) contained sugar as an added ingredient, and (2) were illegal to sell and

8    possess nor would they have expended the purchase price for products that were worthless due to

9    their illegality.

10        69.    Plaintiffs and the Class have been damaged by Chobani's illegal conduct in that

11   they purchased misbranded and worthless products that were illegal to sell or possess.

12        70.    Plaintiffs' unlawful ECJ claims are brought pursuant to the unlawful prong of

13   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 and the Consumers Legal

14   Remedies Act, Cal. Civ. Code §1750, *et seq*.  Plaintiffs allege that Defendant packaged and

15   labeled the Purchased Products and Substantially Similar Products in violation of California's

16   Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the federal

17   Food Drug & Cosmetics Act, 21 U.S.C. § 301 *et. seq.* ("FDCA").  Purchased Products and Class

18   Products with this identical type of ECJ labeling violations are "misbranded."

19        71.    21 C.F.R. §§ 101.3, 101.4 and 102.5, which have been adopted by California,

20   prohibit manufacturers from referring to foods by anything other than their common and usual

21   names.[10]

22

23   _____

[10] Pursuant to 21 C.F.R. §102.5 the common or usual name must accurately describe the basic
24   nature of the food or its characterizing properties or ingredients, and may not be "confusingly
     similar to the name of any other food that is not reasonably encompassed within the same name"
25   (21 C.F.R. 102.5(a)). Defendant's use of the term ECJ fails this requirement because that term
     does not accurately describe the basic nature of the food or its characterizing properties or
26   ingredients, and may not be "confusingly similar to the name of any other food that is not
     reasonably encompassed within the same name. Here the true nature of the ingredient is a type of
27   added sugar added to sweeten food. The characterizing properties of this ingredient were falsely
     misrepresented as a juice when in fact they were a sugar or syrup. Defendant hid this fact by
28   unlawfully using a confusing name (a type of juice) that is not reasonably encompassed within the
     same name.

72.     21 C.F.R. § 101.4, which has been adopted by California, prohibits manufacturers from referring to ingredients by anything other than their common and usual names. It specifically specifies in subsection (b)(20) that "[f]or purposes of ingredient labeling, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter." 21 C.F.R. § 101.4(b)(20). 21 C.F.R. § 184.1854 lists the chemical names, CAS number and structure of sugar/sucrose (C12 H22 O11, CAS Reg. No. 57-50-11-1, β-D-fructofuranosyl-α-D-glucopyranoside) as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers products "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated."

73.     The Federal Register makes clear that the definition of sugar/sucrose in 21 C.F.R. § 184.1854 was specifically modified by the FDA to cover sugar/sucrose that was obtained by the evaporation of sugar cane juice stating:

> In addition, the agency notes that the description of sucrose in proposed § 184.1854(a) does not explicitly cover the extraction, by pressing, of sugar cane juice from sugar cane or beet juice from sugar beets and also does not mention the evaporation of the extracted sugar cane juice or beet juice. Therefore, the agency has modified § 184.1854(a) to include "pressing" as a possible extraction procedure and "evaporated" as a step in the refinement of sucrose.

53 F.R. 44862.

74.     Chobani has violated the regulatory provisions detailed above by failing to use the common or usual name for sugar as mandated by law. In particular, Chobani used the unlawful term ECJ on its products in violation of numerous federal and state labeling regulations designed to protect consumers from illegal misbranded products in direct violation of express FDA policy as quoted above.

75.     Defendant Chobani violated 21 C.F.R. §§ 101.4 and 102.5 (adopted and incorporated by reference by Sherman Law § 110100 and Sherman Law § 110725). Sherman Law § 110725 mandates that a product is misbranded if the common and usual ingredient names are not used. Therefore, Chobani violated the UCL's unlawful prong by misbranding its products with ECJ instead of using the term "sugar"; or the alternative term "dried cane syrup."

76.     Chobani's act of selling an illegally misbranded product violates Sherman Law § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded. The sale of a misbranded product results in an independent violation of the unlawful prong of the UCL that is separate from any labeling violation.

77.     Pursuant to Sherman Law § 110825, the sale of such a misbranded product (*i.e.* one whose label fails to use the common and usual ingredient name as required by law) constitutes a criminal act punishable by up to twelve month in jail.  As a result, the injury to the Class arises from the Defendant illegally selling a product it misbranded, the sale of which is a criminal act. Plaintiffs and the Class have been unlawfully deprived of money in an illegal transaction that occurred because the Defendant sold them a worthless, illegal product that could not be legally sold or possessed. Due to the law's prohibition of possession of such a product, consumers have been unwittingly placed, solely and directly by Chobani's conduct, in a legal position that no reasonable consumer would choose. Consumers have thus been directly injured by the Defendant's illegal act of unlawfully selling them an illegal product. This harm goes beyond mere economic injury.

78.     Numerous FDA warning letters, which are issued only for violations of regulatory significance, have made it clear that the use of the term "evaporated cane juice" is unlawful because the term does not represent the common or usual name of a food or ingredient. These warning letters state that foods that bear labels that contain the term evaporated cane juice are misbranded. Such unlawful conduct by Defendant Chobani is actionable under California law irrespective of any reliance by consumers such as Plaintiffs.

79.     Under California law, a food product that is misbranded cannot be legally manufactured, advertised, distributed, possessed or sold. Because these products are illegal to possess, they have no economic value and are legally worthless. Indeed, the sale or possession of misbranded food is a criminal act in California. The sale of misbranded products is illegal under federal law as well, as previously stated, and can result in the seizure of the misbranded products and imprisonment of those involved. When Plaintiffs and the Class purchased an illegally misbranded product (such as the Purchased Products and Substantially Similar Products), there is

1    causation and injury even absent reliance on the ECJ misrepresentation that misbranded the
2    product.

3          80.    The unlawful sale of Misbranded food products that are illegal to sell or possess–
4    standing alone without any allegations of deception by Defendant other than the implicit
5    misrepresentation that its products are legal to sell or possess, or any review of or reliance on the
6    particular labeling claims by Plaintiffs – gives rise to Plaintiffs' cause of action under the UCL
7    and the CLRA. In short, Defendant's injury causing unlawful conduct is the only necessary
8    element needed for UCL liability under the unlawful prong. All Plaintiffs need to show is that
9    they bought an unlawful product that they would not have otherwise purchased absent the
10   Defendant's failure to disclose the material fact that the product was unlawful to sell or possess.
11   Therefore, this claim does not sound in fraud; instead, it alleges strict liability pursuant to the
12   above cited provisions of the federal law and Sherman Law.

13         81.    The Plaintiffs were injured by the loss of the purchase price in an illegal
14   transaction, the illegality of which Plaintiffs were unaware, and which the Defendant had a duty
15   to disclose.  Defendant misled Plaintiffs to believe that the Chobani Yogurt products were legal to
16   purchase and possess.  Had Plaintiffs known that the Chobani products were misbranded, they
17   would not have bought Defendant's products.   Plaintiffs relied on the Defendant's explicit ECJ
18   representations and representation that its products were "All Natural", contained "All Natural
19   Ingredients" or "Only Natural Ingredients", and contained no artificial colors.  As a result of such
20   reliance, Plaintiffs thought that Chobani's yogurt was preferable to other similar products lacking
21   such statements.  Plaintiffs further relied upon the Defendant's implicit representation based on
22   Defendant's material omission of material facts that these Chobani Yogurt products were legal to
23   sell and possess.  Reasonable consumers would be, and were, misled in the same manner as
24   Plaintiffs.  Defendant had a duty to disclose the illegality of their misbranded products because
25   (a) they had exclusive knowledge of material facts not known or reasonably accessible to the
26   Plaintiffs; and (b) the Defendant actively concealed such material facts from the Plaintiffs.  The
27   Defendant had a duty to disclose the information required by the labeling laws discussed herein
28   because of the disclosure requirements contained in those laws and because in making their

"natural" claims, they made partial representations that are misleading because other material facts were not being disclosed.  In addition, Plaintiffs were injured because they were unwittingly placed in legal jeopardy due to the possession of Defendant's illegal and misbranded products. No reasonable consumer would buy a product that was illegal to sell or possess.

82.     Defendant's practices violated a number of laws as set forth in Table 1 and ¶¶170-178 below which render the Purchased Products and Substantially Similar products misbranded.

83.     Defendant's act of selling a misbranded product violates Sherman Law § 110760 (unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded). The sale of a misbranded product results in an independent violation of the unlawful prong that is separate from the labeling violations listed above. When Plaintiffs purchased Defendant's misbranded products there was causation and injury even absent reliance on the misrepresentation/omission that misbranded the product. This injury arises from the unlawful sale of an illegal product that is crime to sell and crime to possess. Plaintiffs were deprived of money in an illegal sale and given a worthless illegal product in return.  In addition, due to the law's prohibition of possession of such a product, consumers have been unwittingly placed by the Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

84.     Thus, in this case, where Defendant unlawfully sold products containing the unlawful term ECJ there is 1) a violation of specific labeling regulations and 2) an independent violation of the unlawful prong due to the Defendant's sale of an illegal product that is unlawful to possess. The Plaintiffs would not have bought the misbranded food products had they known or had Defendant disclosed the material fact that the misbranded food products were illegal to sell and possess. The Plaintiffs were injured by the Defendant's unlawful act of selling them an illegal product that was illegal to sell or possess[11].

C.     **Defendant's Use of "Evaporated Cane Juice" as an Ingredient on Its Labels is Fraudulent, Deceptive and "Misleading" Because It Fails to Identify "Added Sugar"**

85.     The Plaintiffs were health conscious consumers who wished to avoid "added

---

[11] The same analysis applies to the analysis of Defendant's illegal "natural" claims and violations of the Standard of Identity for yogurt.

sugars" in the yogurt products they purchased. "Added sugar" is a recognized term that has a distinct meaning as described below. The Plaintiffs were unaware that the Chobani yogurt products they were purchasing contained "added sugars" that were *added* as an ingredient into Defendant's yogurt during processing or preparation. While Plaintiffs were aware that the Chobani yogurt products contained some sugars, they believed these sugars were naturally occurring sugars that were found *naturally* in the ingredients used by Chobani such as fruit (fructose) and milk (lactose).  The Plaintiffs were unaware that the Chobani yogurt products they purchased contained "added sugar". The reason that Plaintiffs were unaware of this fact was that Chobani utilized the false and misleading term "evaporated cane juice" to identify the *added sugar* it added as an ingredient to its yogurt product. The FDA deems the term "evaporated cane juice" to be "false and misleading" because 1) it "fail[s] to reveal the basic nature of the food and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups)" and 2) "sweeteners derived from sugar cane syrup are not juice."

86.      Plaintiffs who scanned the ingredient lists of the Chobani products for forms of added sugar failed to recognize the term "evaporated cane juice" as a form of added sugar. This is hardly surprising since 1) the FDA considers the term to be false and misleading *because* it fails to reveal that the ingredient is a sugar or a syrup; 2) juice is considered to be a healthy food that does not contain added sugars, 3) most lists of added sugars and sugar aliases do not list evaporated cane juice as an added sugar or sugar alias; and 4) consumer studies confirm that most purchase decisions are made in a fraction of a second and thus the potential for a false and misleading term to mislead is significant. Moreover, as discussed below, the Nutrition Facts listing of total sugars does not allow a consumer to determine if a product has any added sugars. Consumers are only able to determine the presence of added sugars by reading a products ingredient list.  Companies like Chobani that mislabel their sugars in the ingredient list with false and misleading terms frustrate this capability by hiding the added sugar. In addition, the inclusion of words such as "juice" or "cane" into the false and misleading term evaporated cane juice do not mitigate the false and misleading nature of the term and in fact in the case of a word like "juice" actually makes it misleading in the eyes of the FDA since it is an added sugar and not a

juice. In contrast, the failure to utilize words like "sugar" or "syrup" to describe the ingredient identified by Chobani as evaporated cane juice is false and misleading because it conceals the fact that the ingredient is in fact an added sugar, namely an added sugar or syrup sweetener.

87.    The Plaintiffs' desire to avoid added sugars was reasonable. Added sugar is a known health risk that consumers are advised to avoid by the United States government, scientific and educational institutions, and food related companies such as grocery store chains and food manufacturers. All of these entities know and publish: 1) there is a distinction between added sugars and naturally occurring sugars; 2) added sugars have no beneficial nutritional value, contribute only empty calories and have recognized health risks 3) consumers should either eliminate or greatly limit their consumption of added sugars and foods containing added sugars; 4) it is the ingredient list and not the nutrition facts panel of a food's label that informs consumers of the presence of added sugars; and 5) consumers need to be careful to avoid added sugar that is disguised by another name.

88.    The 2010 Dietary Guidelines promulgated by U.S. Department of Health and Human Services and the U.S. Department of Agriculture make clear that 1) there is a distinction between "added sugars" and naturally occurring sugars; 2) consumers should either eliminate or greatly limit their consumption of added sugars and foods containing added sugars; 3) it is the ingredient list and not the nutrition facts portion of a food's label that informs consumers of the presence of "added sugars." Available at:

http://www.health.gov/dietaryguidelines/dga2010/DietaryGuidelines2010.pdf.

89.    The 2010 Dietary Guidelines indicate that consumers should "[l]imit calorie intake from … added sugars "and "[c]hoose foods prepared with little or no added sugars." *Id.* It further states: *"[u]se the Nutrition Facts label* to choose …. packaged foods with less total sugars, and *use the ingredients list* to choose foods with little or no added sugars." *Id. These* Guidelines indicate that:

> An important underlying principle is the need to control calorie intake to manage body weight and limit the intake of food components that increase the risk of certain chronic diseases. This goal can be achieved by consuming fewer foods that are high in sodium, solid fats, **added sugars**, and refined grains and, for those who drink, consuming alcohol in moderation.

*Id. (emphasis added).*

90.    The 2010 Dietary Guidelines also define "added sugars":

**"added sugars**—Sugars, syrups, and other caloric sweeteners that are added to foods during processing, preparation, or consumed separately. Added sugars do not include naturally occurring sugars such as those in fruit or milk. Names for added sugars include: brown sugar, corn sweetener, corn syrup, dextrose, fructose, fruit juice concentrates, glucose, high-fructose corn syrup, honey, invert sugar, lactose, maltose, malt syrup, molasses, raw sugar, turbinado sugar, trehalose, and sucrose".

*Id.*

91.    Further, the 2010 Dietary Guidelines make clear that consumers who wish to avoid added sugars must read the ingredient list and cannot rely on the Nutrition Facts line item listing of total sugars:

THE FOOD LABEL: A USEFUL TOOL

"Using the Food Label to Track Calories, Nutrients, and Ingredients" (Appendix 4) provides detailed guidance that can help Americans make healthy food choices.

The Nutrition Facts label provides information on the amount of calories; beneficial nutrients, such as dietary fiber and calcium; as well as the amount of certain food components that should be limited in the diet, including saturated fat, trans fat, cholesterol, and sodium.

**The ingredients list can be used to find out whether a food or beverage contains solid fats, added sugars**, whole grains, and refined grains.

*Id.* (emphasis added).

92.    Furthermore, these 2010 Dietary Guidelines confirm that it is the ingredients list and not the Nutrition Facts portion of the label that lets consumers determine whether added sugars are present in a product such as Chobani's yogurt that has milk and/or fruit ingredients. Appendix 4 states:

INGREDIENTS LIST

The ingredients list can be used to find out whether a food or beverage contains synthetic trans fats, solid fats, added sugars, whole grains, and refined grains.

NUTRITION FACTS LABEL
 The Nutrition Facts label provides the total amount of sugars (natural and added), but does not list added sugars separately. Natural sugars are found mainly in fruit and milk products. Therefore, for all foods that do not contain any fruit or milk ingredients, the total amount of sugars listed in the Nutrition Facts label

approximates the amount of added sugars. For foods that contain fruit or milk products, added sugars can be identified in the ingredients list.

The ingredients list can be used in the same way to identify foods that are high in added sugars. Added sugars that are often used as ingredients are provided in Table A4-2.

93.     Table A4-2 of the 2010 Dietary Guidelines lists a number of examples of added ingredients that can be listed as an ingredient in a food product's ingredient list. Table A4-2 states:

Examples of Added Sugars That Can Be Listed as an Ingredient:

Anhydrous dextrose, Lactose, Brown sugar, Malt syrup, Confectioner's powdered sugar, Maltose, Corn syrup, Maple syrup, Corn syrup solids, Molasses, Dextrin Nectars (e.g., peach nectar, pear nectar), Fructose Pancake syrup, High-fructose corn syrup, Raw sugar, Honey Sucrose, Invert sugar, Sugar, and White granulated sugar.

94.     The list above does not indicate that ECJ is a form of added sugar. However, the 2010 Dietary Guidelines indicate that while ECJ is not recognized by the FDA as an ingredient name, this added sugar is sometimes listed as an ingredient on the labels of food products stating:

Other added sugars may be listed as an ingredient but are not recognized by FDA as an ingredient name. These include cane juice, evaporated corn sweetener, fruit juice concentrate, crystal dextrose, glucose, liquid fructose, sugar cane juice, and fruit nectar.

*Id.*

95.     Other federal government agencies adopt a similar approach to added sugars. For instance, the National Institute of Health 1) confirms the health risks posed by added sugar, 2) indicates the need to read the ingredient list to find added sugars and 3) utilizes a list that fails to include the false and misleading term evaporated cane juice.

96.     The National Institute of Health publishes the following about "added sugar":

Added Sugars

With both the USDA Food Patterns and the Dietary Approaches to Stop Hypertension (DASH) Eating Plan, added sugars mean more calories without more nutrients. For some people, added sugars can lead to higher levels of fats in the blood, raising their risk of heart disease.

Read the ingredients label to see if the processed food you are eating has added sugar. Key words on the label to look for:

- brown sugar
- corn sweetener
- corn syrup
- dextrose
- fructose
- fruit juice concentrate
- glucose
- high-fructose corn syrup
- honey

- invert sugar
- lactose
- maltose
- malt syrup
- molasses
- raw sugar
- sucrose
- sugar
- maple syrup

http://www.nia.nih.gov/health/publication/whats-your-plate/solid-fats-added-sugars

97.     The United States government's approach to added sugars is echoed by other scientific, educational and medical entities. For example, the American Heart Association ("AHA") states the following about "added sugar":

> There are two types of sugars in American diets: naturally occurring sugars and added sugars.
>
> - Naturally occurring sugars are found *naturally* in foods such as fruit (fructose) and milk (lactose).
>
> - Added sugars include *any* sugars or caloric sweeteners that are *added* to foods or beverages during processing or preparation (such as putting sugar in your coffee or adding sugar to your cereal). Added sugars (or added sweeteners) can include natural sugars such as white sugar, brown sugar and honey as well as other caloric sweeteners that are chemically manufactured (such as high fructose corn syrup).

http://www.heart.org/HEARTORG/GettingHealthy/NutritionCenter/Sugars-101_UCM_306024_Article.jsp

98.     The American Heart Association cautions consumers that the Nutrition Facts panel is not the place to look for "added sugar":

> **Finding added sugars in food**
>
> Unfortunately, you can't tell easily by looking at the nutrition facts panel of a food if it contains added sugars. The line for "sugars" includes both added and natural sugars. Naturally occurring sugars are found in milk (lactose) and fruit (fructose). Any product that contains milk (such as yogurt, milk or cream) or fruit (fresh, dried) contains some *natural* sugars.
>
> Reading the ingredient list on a processed food's label can tell you if the product contains added sugars, just not the exact amount if the product also contains natural sugars.
>
> Names for added sugars on labels include:

- Brown sugar
- Corn sweetener
- Corn syrup
- Fruit juice concentrates
- High-fructose corn syrup
- Honey
- Invert sugar
- Malt sugar
- Molasses
- Raw sugar
- Sugar
- Sugar molecules ending in "ose" (dextrose, fructose, glucose, lactose, maltose, sucrose)
- Syrup

http://www.heart.org/HEARTORG/GettingHealthy/NutritionCenter/Sugars-101_UCM_306024_Article.jsp.  Like the United States government's list, this list also fails to contain the term evaporated cane juice.

99.     In addition, the AHA warns that consumers "need to reduce added sugar" in their diets and therefore the AHA has recommended very strict added sugar guidelines stating:

Over the past 30 years, Americans have steadily consumed more and more added sugars in their diets, which has contributed to the obesity epidemic. Reducing the amount of added sugars we eat cuts calories and can help you improve your heart health and control your weight.

The American Heart Association recommends limiting the amount of added sugars you consume to no more than half of your daily discretionary calorie allowance. For most American women, this is no more than 100 calories per day and no more than 150 calories per day for men (or about 6 teaspoons per day for women and 9 teaspoons per day for men) *(emphasis added)*.

http://www.heart.org/HEARTORG/GettingHealthy/NutritionCenter/Sugars-101_UCM_306024_Article.jsp

100.     Similarly, the Harvard School of Public Health takes the same position with respect to added sugar. According to the Harvard School of Public Health:

Added Sugar in the Diet

Your body doesn't need to get any carbohydrate from added sugar. That's why the Healthy Eating Pyramid says sugary drinks and sweets should be used sparingly, if at all, and the Healthy Eating Plate does not include foods with added sugars.

The American Heart Association (AHA) has recommended that Americans drastically cut back on added sugar to help slow the obesity and heart disease epidemics.

- The AHA suggests an added-sugar limit of no more than 100 calories per day (about 6 teaspoons or 24 grams of sugar) for most women and no more than 150 calories per day (about 9 teaspoons or 36 grams of sugar) for most men.

- There's no nutritional need or benefit that comes from eating added sugar. A good rule of thumb is to avoid products that have a lot of added sugar

http://www.hsph.harvard.edu/nutritionsource/cereal-sugar-content/.

101.    The Harvard School of Public Health further notes that "[S]ome ingredient lists mask the amount of sugar in a product and informed consumers how to avoid being fooled by such practices stating:

**How to spot added sugar on food labels**

Spotting added sugar on food labels can require some detective work. Though food and beverage manufacturers list a product's total amount of sugar per serving on the Nutrition Facts Panel, they are not required to list how much of that sugar is added sugar versus naturally occurring sugar. That's why you'll need to scan the ingredients list of a food or drink to find the added sugar.

When you eat an apple or carrot or bowl of steel-cut oatmeal, you know what you are eating—an apple or carrot or steel-cut oats. That's not the case with ready-to-eat breakfast cereals, cookies, frozen dinners, or any of the thousands of other processed foods. Think of these as terra incognita, and the ingredient list on the package as your map to it. But like an old pirate map, some ingredient lists are designed to confuse and muddle rather than lead you to the treasure. The biggest sleight of hand involves sugar. ……

The Nutrition Facts Label isn't much help. By law, it must list the grams of sugar in each product. But some foods naturally contain sugar, while others get theirs from added sweeteners, and food labeling laws don't require companies to spell out how much sugar is added….

Why does this matter? …

The American Heart Association (AHA) has recommended that Americans drastically cut back on added sugar to help slow the obesity and heart disease epidemics. (2) The AHA's suggested added sugar threshold is no more than 100 calories per day (about 6 teaspoons or 24 grams of sugar) for most women and no more than 150 calories per day (about 9 teaspoons or 36 grams of sugar) for most men.

http://www.hsph.harvard.edu/nutritionsource/cereal-sugar-content/ .

102.    While the Harvard School of Public Health notes it is possible to compare different products and utilize math to figure out the amount (as opposed to the presence) of added sugar in certain types of properly labeled products that disclose the presence of added sugar, the comparison approach   suggested by the school does not work when 1) the added sugar is

disguised by a false and misleading term like ECJ that conceals the presence of added sugar. According to the Harvard School of Public Health:

> Nutrition sleuths can compare the labels of two similar products—one with [added] sugar, one without—and do a little math to figure out how much sugar is added sugar. For example, a 6-ounce, fat-free plain Stonyfield Farm yogurt has 12 grams of sugar. The ingredients list shows no added sugar, so all of the yogurt's sugar comes from lactose, the sugar that is naturally found in milk. A fat-free vanilla Stonyfield Farm yogurt has 24 grams of sugar; the extra 12 grams is added sugar from "naturally milled organic sugar."

*Id.*

103.    This approach does not work where there is no sweetener listed in the ingredient list that is recognized as an added sugar. In such a situation it is only possible to determine that one product has more total sugar than another but because of the concealed added sugar this would appear to consumers as merely the difference between levels of naturally occurring sugar in the two products.  It also is impractical to expect consumers who make purchase decisions in a fraction of a second to be have to perform mathematical calculations utilizing information gleaned from two separate product labels.

104.    A term like ECJ that purports to be a juice conceals the presence of added sugars because by definition, 100% juice is a source of natural sugars and no added sugars. Thus as confirmed by University of Florida "100% fruit juice has no added sugars." https://edis.ifas.ufl.edu/pdffiles/FY/FY135800.pdf. Thus, accurate descriptions are necessary in ingredient lists because:

> although the [nutritional facts] panel is helpful for finding total sugar, it does not differentiate between natural sugar and added sugars. For example, sugar would be listed on the Nutrition Facts Panel for both 100% orange juice and an orange drink, but only the orange drink will have sugar added to it.

*Id.*

105.    The Mayo Clinic also is on record confirming 1) the difference between added sugar and naturally occurring sugar; 2) the health risks posed by added sugar; 3) the need to avoid added sugars and limit consumption of foods containing added sugars; 4) the importance of the ingredient list in identifying added sugar; 5) the inability to use the Nutrition Facts line item for sugar to determine whether added sugar was present and 6) the numerous names used for added

sugars. According to the Mayo Clinic:

**Added sugar: Don't get sabotaged by sweeteners -**

**Do you know how much sugar is in your diet? See why added sugar is a concern and how you can cut back.**

"Added sugar" refers to sugars and syrups added to foods during processing.

**Why is added sugar a problem?**

Foods with a lot of added sugar contribute extra calories to your diet but provide little nutritional value. In addition, added sugar is often found in foods that also contain solid fats.

Eating too many foods with added sugar and solid fats sets the stage for potential health problems, such as:

- **Poor nutrition.** If you fill up on foods laden with added sugar, you may skimp on nutritious foods, which means you could miss out on important nutrients, vitamins and minerals. Regular soda plays an especially big role. It's easy to fill up on sweetened soft drinks and skip low-fat milk and even water — giving you lots of extra sugar and calories and no other nutritional value.

- **Weight gain.** There's usually no single cause for being overweight or obese. But added sugar may contribute to the problem. Many foods and beverages contain lots of sugar, making them more calorie-dense. When you eat foods that are sugar sweetened, it is easier to consume more calories than if the foods are unsweetened.

- **Increased triglycerides.** Triglycerides are a type of fat in the bloodstream and fat tissue. Eating an excessive amount of added sugar can increase triglyceride levels, which may increase your risk of heart disease.

- **Tooth decay.** All forms of sugar promote tooth decay by allowing bacteria to proliferate and grow. The more often and longer you snack on foods and beverages with either natural sugar or added sugar, the more likely you are to develop cavities, especially if you don't practice good oral hygiene.

In the 2010 Dietary Guidelines for Americans, the U.S. Department of Agriculture (USDA) recommends that no more than about 5 to 15 percent of your total daily calories come from added sugar and solid fats.

The American Heart Association has even more-specific guidelines for added sugar — no more than 100 calories a day from added sugar for most women and no more than 150 calories a day for most men. That's about 6 teaspoons of added sugar for women and 9 for men.

Unfortunately, most Americans get more than 22 teaspoons — or 355 calories — of added sugar a day, which far exceeds these recommendations.

http://www.mayoclinic.com/health/added-sugar/my00845.

106.    The Mayo Clinic Reports that:

Identifying added sugar can be confusing. Most people look at the Nutrition Facts part of the label for the total number of grams of sugar in a serving of the product. It's important to realize, however, that the amount shown includes natural sugars found in certain ingredients, such as grain, fruit and milk. The only reliable way to identify added sugar is to look at the ingredient list….Know that sugar goes by many different names, though.

**Different names for added sugar**

Sugar goes by many different names, depending on its source and how it was made. This can also make it hard to identify added sugar, even when you read ingredient lists and food labels.

http://www.mayoclinic.com/health/added-sugar/my00845.

107.    Not only do government and nationally recognized health institutions and associations advise on the manners in which to detect and determine added sugar, but reputable food related companies such as grocery store chains and food manufacturers have adopted a similar approach with respect to added sugars: For example the Shoprite chain of grocery stores states that:

The nutrition panel of packaged foods lists the total amount of sugars in a serving of food. This number includes sugars found naturally in food as well as the sugar that is added. The ingredient list must state all the sugars which are added to the product.

Sugar can often be "disguised" on food labels since there are many different forms and names for sugar. ….

What's the bottom line?

Choose healthy foods that contain natural sugars most often and limit your consumption of foods high in added sugar. Be an informed shopper. Read the ingredient panel to be sure you are truly getting a product without a lot of added sugar.

http://www.shoprite.com/for-your-family/dietitians-corner/archives/sugar-by-any-other-name-is-still-sugar/

108.    Similarly, the Publix chain of grocery stores states:

Controlling added sugars is important because it helps us avoid excess calories, which can lead to increased weight and triglycerides—two factors that can put you at higher risk of obesity, heart attack and stroke.

The AHA suggests women limit their intake of added sugars to 6 teaspoons daily; men should limit intake to 9 teaspoons. The recommendations do not apply to naturally occurring sugars, such as those found in fruits, vegetables or dairy

products.

Check food label ingredients for hidden sugars like corn syrup, fructose, dextrose, molasses or evaporated cane juice.

http://www.publix.com/wellness/greenwise/products/ProductDetail.do?id=1930.

109.    Similarly, Atkins Nutritionals, the company behind the Atkins line of food products states:

**Finding Added Sugars**

Taking control of your health is about focusing on carbohydrate foods that are high in nutrients and fiber. That's why added sugar in any form should be avoided in the weight loss phases of Atkins. No matter what it's called sugar has virtually no nutritional value.

**What's the Difference?**

*Naturally occurring sugars,* found in dairy products or in fruit or vegetables, for instance, are an organic part of the food, and they are perfectly acceptable. An example: sugar free ice cream has some naturally occurring sugars from the milk and cream with which it is made. That same ice cream might also include some strawberries (which contain fruit sugar). Both sugars are natural, making the ice cream suitable for healthy lifestyles.

*Added sugars* lurk in many foods and not just in the form of sucrose (table sugar). Added sugar is often disguised with misleading names in packaged foods. These include cane sugar and evaporated cane juice, brown sugar, beet sugar or any other ingredient ending in "sugar," as well as syrups (or syrup solids) such as maple, corn or cane. Many ingredients ending in "ose" are also sugars, although exceptions include sucralose and cellulose.

To complicate matters, a natural sugar, such as fructose, is considered an added sugar from a regulatory point of view and can also take the form of an added sugar when it's included in processed foods. The Nutrition Facts panel tells you the number of grams of sugars in a serving, but because it lumps together all sugars, it does not distinguish between integral and added sugars. Instead, you'll need to go to the ingredients list. If you see fructose listed instead of fruit, for example, even though that sugar has a natural source, you'll know it's an added ingredient you should limit your exposure to. Here are various aliases for added sugars:  brown sugar, cane syrup, corn sweetener, corn syrup, corn syrup solids, dextrose, fructose, fruit juice concentrate, galactose, glucose, high-fructose corn syrup, honey, invert sugar, lactose, malt, maltose, malt syrup, maple syrup, molasses, raw sugar, rice syrup, and sucrose.

http://www.atkins.com/Science/Articles---Library/Sugar/Finding-Added-Sugars.aspx

110.    Chobani yogurt has significant added sugar. For example, a single cup of Chobani's Vanilla Chocolate Chunk yogurt has 32 grams of sugar of which 25 are added sugar. This exceeds the entire AHA daily limit for added sugar for women which is 24 grams (6

teaspoons at 4 grams per teaspoon). http://circ.ahajournals.org/content/120/11/1011.full.pdf/. Similarly, a single cup of the Chobani Vanilla yogurt purchased by Plaintiff Rosales now has 16 grams of sugar of which 9 are added sugar. This equates to 37.5% of the AHA daily limit of 24 grams added sugar for women. Moreover, for many consumers the AHA actually recommends even lower daily limits of added sugar. For individuals with an 1800 daily calorie requirement the AHA recommends a daily limit of 20 grams of added sugar. For individuals with a 1600 daily calorie requirement the AHA recommends a daily limit of 12 grams of added sugar. http://circ.ahajournals.org/content/120/11/1011.full.pdf. A single cup of Chobani's Vanilla Chocolate Chunk yogurt is 125% of the daily limit for added sugars for an 1800 calorie a day diet and more than 200% of the daily limit for added sugars for a 1600 calorie a day diet. Similarly, a single cup of the Chobani Vanilla yogurt purchased by Plaintiff Rosales is 45% of the daily limit for added sugars for an 1800 calorie a day diet and 75% of the daily limit for added sugars for a 1600 calorie a day diet.

111.    In addition, a number of food evaluation systems recognize the unhealthiness and lack of desirability of added sugar.  Therefore, systems like NuVal penalize products like Chobani Yogurt which contain added sugar and specifically distinguish between added sugar and naturally occurring sugar.  Thus, Chobani yogurt, with ECJ, actually ranks lower than other Greek Yogurts and is considered less nutritious than products like Wonder white bread, ham and cookies.  By hiding the sugar in its yogurt, Chobani was able to make its yogurt look more nutritious than its competitor's yogurts and more nutritious than it actually was.  Some flavors of Chobani Yogurt actually received NuVal scores because of their added sugars that were far below those of competing Greek yogurts and which ranked them at the lowest end of the scoring spectrum for yogurt, down in a range that Chobani itself classified as "bad" and "ugly".

112.    All varieties of Chobani yogurt other than its plain varieties have significant added sugar. This added sugar is hidden from consumers, such as the Plaintiffs,  by Chobani's unlawful practice of using the false and misleading term "evaporated cane juice" in the ingredient lists of its flavored yogurts instead of the term sugar which is the name mandated by state and federal law. The labeling laws violated by Chobani were designed to ensure that consumers receive the

1   information they need to make informed decisions so that, for example, consumers looking for

2   added sugar can find it when they look for it in the ingredient list.

3       113.   The Plaintiffs would not have bought the Chobani yogurt products they bought had

4   they known they contained "added sugar." Although Plaintiffs read the ingredient lists of the

5   Chobani yogurt they purchased, they did not realize that evaporated cane juice was 1) sugar or a

6   syrup; 2) a form of added sugar; 3) a refined sugar or 4) not a juice. Plaintiffs' failure to realize

7   that evaporated cane juice was 1) sugar or a syrup; 2) a form of added sugar; 3) a refined sugar or

8   4) not a juice was reasonable and any reasonable consumer would have been mislead by the false

9   and misleading term evaporated cane juice.

10       114.   Plaintiffs would not have bought the Chobani yogurt products they purchased if

11   they had known they contained an added sugar or syrup; a refined sugar or sweetener; or that

12   evaporated cane juice was not a juice but rather sugar or syrup and an added sugar and a refined

13   sweetener. The Nutrition Facts panels of the Chobani yogurts purchased by Plaintiffs did not

14   reveal the presence of added sugars, and the false and misleading term evaporated cane juice in

15   the ingredient list concealed the presence of any added sugar or refined sugar.

16       115.   When Plaintiffs read the ingredient list they did not realize that there was added

17   sugar in the Defendant's yogurt because they did not recognize the term ECJ as being sugar

18   because the term (which the FDA has held to be a false and misleading term) misled them. ECJ

19   was not the common or usual term for the ingredient in question which was actually a refined

20   form of sugar or cane syrup.  Defendant's use of a term that included the word juice, but not the

21   words sugar or syrup, failed to accurately characterize the ingredient in question and the FDA

22   concurs with this allegation. While Plaintiffs could determine the total amount of sugars in the

23   product from the nutritional facts table assuming it was accurate, they could not determine if there

24   were any added sugars/syrups because the Defendant's ingredient lists concealed the presence of

25   such added sugars by the use of a the false and misleading term ECJ. Plaintiffs could also not

26   determine the relative amount of any added sugars because the term ECJ was not recognized by

27   them as a sugar and thus its relative position in the ingredient list (where ingredients are required

28   to be listed in descending order by weight) did not inform them of the level of added sugar.

116.   Defendant's failure to utilize either the term "sugar" or the term "syrup" to describe the ingredient it identified as evaporated cane juice failed to reveal the basic nature of the ingredient and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups). According to the FDA:

> FDA's regulatory approach for the nomenclature of sugar and syrups is that sugar is a solid, dried, and crystallized food; whereas syrup is an aqueous solution or liquid food. FDA's regulations permit the term "sugar" as part of the name for food that is solid, dried, and crystallized, specifically the standards of identity for dextrose monohydrate (21 CFR 168.111) and lactose (21 CFR 168.122), and the GRAS regulation for sucrose (21 CFR 184.1854). FDA's regulations provide for the terms "syrup" or "sirup" for food that is liquid or is an aqueous solution, specifically the standards of identity for glucose sirup (21 CFR 168.120), cane sirup (21 CFR 168.130), maple sirup (21 CFR 168.140), sorghum sirup, (21 CFR 168.160), and table sirup (21 CFR 168.180). FDA's approach is consistent with the common understanding of sugar and syrup as referenced in a dictionary.

117.   Based on the inclusion of the word "evaporated" in the term evaporated cane juice, Plaintiffs would show that the sweetener in the Defendant's yogurt is sugar, a dried crystallized ingredient, as defined in 21 C.F.R. § 101.4(b)(20) and 21 C.F.R. § 184.1854. However, even if the added sugar was a form of cane syrup, it would make no difference. In either case the Defendant utilized a false and misleading term, evaporated cane juice, to conceal the fact that Defendant was utilizing an added sugar to sweeten it yogurt.   In either case the false and misleading term, evaporated cane juice, failed to reveal the basic nature of the ingredient and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups).

118.   While FDA regulations provide that "[t]he name of an ingredient shall be a specific name and not a collective (generic) name" the regulations expressly provide that "[f]or purposes of ingredient labeling, the term *sugar* shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter. 21 C.F.R. § 101.4(b)(20)(emphasis in original). 21 C.F.R. § 184.1854 list the chemical names, CAS number and structure of sugar/sucrose (C12 H22 O11, CAS Reg. No. 57-50-11-1, β-D-fructofuranosyl-α-D-glucopyranoside) as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers products "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated." As such, Defendant was required to identify the

1    ingredient in question as sugar and could not call it evaporated cane juice.

2         119.    The term "sugar" indicates to reasonable consumers the ingredient sugar.

3    Similarly, the term syrup connotes a type of sweetener that contains sugar.  Syrup is defined by

4    numerous dictionaries as some variation of "a concentrated solution of sugar in water" ("a

5    concentrated solution of sugar in water;" "a concentrated solution of a sugar, such as sucrose, in

6    water;" a thick sticky liquid consisting of a concentrated solution of sugar and water;" "a very

7    sweet, thick light colored liquid made by dissolving sugar in water;" "a sweet liquid made from

8    sugar and water;" etc. Thus, had the Defendant used  the words sugar or syrup to describe the

9    ingredient it described as evaporated cane juice it could have informed consumers of the presence

10   of added sugar. The Defendant's failure to utilize either term concealed the presence of added

11   sugars in the Defendant's yogurt products.

12        120.    Defendant further concealed the presence of added sugars in its yogurt products by

13   utilizing the false and misleading term evaporated cane juice to describe an added sweetener that

14   was not in fact juice but was rather sugar. According to the FDA:

15       The product extracted from sugar cane is either "sugar" (21 CFR §101.4(b)(20)
         and § 184.1854), or "cane syrup" if the product conforms to the standard of
16       identity for "cane sirup" (21 CFR §168.130).... These sweeteners should not be
         declared in the ingredient declaration by names which suggest that the ingredients
17       are juice, e.g "evaporated juice" or "nectar", or in such a way as to suggest that the
         ingredients contain no sugar, e.g."natural extract of _". Such representations .... fail
18       to reveal the basic nature of the food and its characterizing properties, i.e. the
         ingredients are sugar or syrups. They are not juice. .. .. .. As you know, many of
19       FDA's criminal prosecutions of manufacturers and seizures of fruit juices for
         economic   adulteration  have  involved  precisely  these  sweeteners  being
20       misrepresented in such a way as to mislead consumers. ......We trust that the
         foregoing will be helpful in providing guidance on the appropriate labeling of
21       these ingredients.

22   http://www.regulations.gov/#!documentDetail;D=FDA-2009-D-0430-0005.

23        121.    The FDA has repeatedly made clear that:

24
         FDA's current policy is that sweeteners derived from sugar cane syrup should not
25       be declared as "evaporated cane juice" because that term falsely suggests that the
         sweeteners are juice…. "Juice" is defined by 21 CFR 120.1(a) as "the aqueous
26       liquid expressed or extracted from one or more fruits or vegetables, purees of the
         edible portions of one or more fruits or vegetables, or any concentrates of such
27       liquid or puree." Although FDA does not dispute that sugar cane is a member of
         the vegetable kingdom in the broad sense of classifying an article as "animal,"
28       "vegetable," or "mineral," the agency considers the term "vegetable" in the context
         of the juice definition to refer more narrowly to edible plant parts that consumers

1
2
3
4
5
6
7
8

are accustomed to eating as vegetables in their diet. Sugar cane is not a vegetable in this sense. While consumers can purchase pieces of sugar cane, consumers do not eat sugar cane as a "vegetable" but instead use it as a source of sugar by chewing on the cane or its fibers or by placing the cane in a beverage to sweeten it. There are other plant juices used for human food that similarly are not "vegetable juice" or "fruit juice" for purposes of the juice definition; e.g., maple syrup and sorghum syrup. In summary, FDA's view is that the juice or extract of sugar cane is not the juice of a plant that consumers are accustomed to eating as a vegetable in their diet and is not, therefore, "juice" as contemplated by the regulation defining that term.

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm181491.htm.

9
10
11
12
13

122.    The FDA has further confirmed that:

"evaporated cane juice" and other sweeteners derived from sugar cane syrup are not "juice" as defined in 21 CFR 120.1…. Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5 … sweeteners derived from sugar cane syrup are not juice…

14
15
16
17
18
19
20
21
22
23

123.    It was thus false and misleading for the Defendant to use the term evaporated cane juice to identify the added sugar derived from sugar cane it used as an ingredient. Moreover, reasonable consumers do not consider juice to be a sugar or syrup or a refined sugar. Thus, it was false and misleading for the Defendant to use the term evaporated cane juice to describe the refined sugar (or in the alternative syrup) its yogurts used as a sweetener. Nor do reasonable consumers consider juice to be an added sugar. To the contrary, consumers are instructed by the federal government and other entities that if they wish to avoid added sugar they should look for juice because juice is not an added sugar nor does it contain added sugar and is thus a way to avoid added sugars. Thus, it was false and misleading for the Defendant to use the term evaporated cane juice to describe the added sugar its yogurts used as a sweetener.

24
25
26

124.    Moreover, it is clear that the term evaporated cane juice was intended to and did mislead consumers about the presence of sugars. In fact industry participants have openly discussed this act.

27
28

125.    For example, the in-house magazine for Whole Foods (which has been sued for the illegal and deceptive use of the term ECJ) contains an article entitled "Could Cane Juice"

Evaporate?" which details the following:

> A regulatory issue on the U.S. Food and Drug Administration's (FDA) backburner, and one that is therefore flying under the radar, involves the fate of the sweetener evaporated cane juice. Like high fructose corn syrup's ongoing name battle, this is a question of language, not substance. According to Jim Morano, Ph.D., technical affiliate of Suzanne's Specialties, New Brunswick, NJ, FDA has taken exception to the use of the word "juice" to describe this sugar cane-based sweetener on product labels…..The agency feels that the term fails to reveal the defining property of the sweetener, that the ingredients are sugars or syrups, and so the term may be false and misleading to consumer.
>
> "It's only been the last 15 years that we've had the ability to use sugar. In the beginning in the health food industry, sugar was a bad word," says Morano. Sugar was often considered to be a violation of the natural tenet, even though it is, of course, natural. Though times have changed, this negative connotation still clings to sugar for many shoppers. Therefore, if FDA takes away the term "evaporated cane juice," essentially dictating that it be referred to as a type of cane sugar, Morano believes the jig may be up for this sweetener, at least when it comes the natural market.
> http://www.wholefoodsmagazine.com/grocery/features/sweeteners-rising.

126.    Similarly, according to the CEO of ASSURKKAR Sugar Company in Costa Rica, which provides raw sugar to U.S. companies, the term is wrongly used in the food industry, "prostituted" he put it. "Nowadays the food companies are trying to sell more 'natural' products, so they use the most impressive or high impact wording to call the customers' attention" • he said. In reality, the "evaporated cane juice" that is used in food products is a very processed form of sugar, unequivocally the same as refined white sugar.

http://www.processedfreeamerica.org/index.php?option=com_content&view=article&id=535:raw-sugar.

127.    Additionally, Judy Sanchez, a spokesperson for the U.S. Sugar Corp., confirms that "All sugar is evaporated cane juice," "They just use that for a natural-sounding name for a product."   http://www.npr.org/blogs/thesalt/2012/10/18/163098211/evaporated-cane-juice-sugar-in-disguise.

128.    Defendant's use of the word "cane" was not sufficient to advise Plaintiffs that "evaporated cane juice" was sugar.  The term "cane" is not exclusively a reference to sugar or sugar cane. Many other types of cane exist and are used in foods, for example, bamboo cane and sorghum cane, both which produce juice.  See e.g. 21 C.F.R. § 168.160 ("sorghum cane"). Corn is a form of cane. There are over 1000 species just of bamboo and over 10,000 members of the

family of plants that includes corn and sugar cane. Most common berries such as blackberries, raspberries, blue berries and goji berries grow on canes and are referred to as "cane berries." Of course, Defendant utilized the term "cane" with the term "juice," a defined, regulated term not commonly associated with sugar or added sugar.

129.    Moreover, the cane sugar utilized as an ingredient by Chobani was far removed from natural sugar cane or unrefined sugar cane juice. Natural sugar cane is described by sources as healthy and nutritious, containing vitamins, minerals, enzymes, fibers, and phytonutrients that help the body digest naturally occurring sugars, such as lactose, glucose and fructose. It also is reported to contain vitamins A, C, B1, B2, B6, niacin, and pantothenic acid, which work synergistically with the minerals to nourish the body. Sugar cane also reportedly contains a unique mix of antioxidant polyphenols. The polyphenols, vitamins, and minerals present in sugar cane are claimed to help slow down the absorption of the sugars and prevent the sharp rise in blood sugar levels associated with refined sugar. [12] Similarly, raw sugar cane juice has been described as a "wonder food" that has many beneficial properties. For example, one website states:

> Sugarcane is a tall grass with a stout, jointed and fibrous stalk that looks similar to bamboo. As a member of the grass family, its juice has a high potency equivalent to wheatgrass juice, only with less chlorophyll and more sugar content. However, counter to what you might think, sugarcane juice contains only about fifteen percent total sugar content, all of which is in a raw unrefined form. The rest of the juice consists of water brimming with an abundance of vitamins and minerals. Sugarcane is rich in calcium, chromium, cobalt, copper, magnesium, manganese, phosphorous, potassium and zinc. It also contains iron and vitamins A, C, B1, B2, B3, B5, and B6, plus a high concentration of phytonutrients (including chlorophyll), antioxidants, proteins, soluble fiber and numerous other health supportive compounds. Working synergistically, these nutrients provide a supremely health-promoting food which has been studied for its role in fighting cancer, stabilizing blood sugar levels in diabetics, assisting in weight loss, reducing fevers, clearing the kidneys, preventing tooth decay, and a host of other health benefits.

http://www.processedfreeamerica.org/index.php?option=com_content&view=article&id=535:raw-sugar. The "evaporated cane juice" in the Chobani's yogurt products contains none of these health benefits because during processing the nutrients have been pressed, boiled and strained

---

[12] See McCaffree, D., The Truth About Evaporated Cane Juice, Processed-Free America (Nov. 1, 2010) available at http://www.processedfreeamerica.org/resources/health-news/405-the-truth-about-evaporated-cane-juice?format=pdf.

1   out.[13]

2   130.   Thus, evaporated cane juice is neither "juice" nor only subject to "evaporation" – a

3   process that absent pressing, boiling, and separation would leave the sugar crystals with their

4   nutrients still intact. [14]*Id.* In truth, evaporated cane juice is little different than added refined

5   sugar. Refined sugar and evaporated cane juice both have 111 calories per ounce. Both types of

6   sugar come from the same cane crop, and they are both about 99% sucrose (*i.e.*, empty calories)

7   and not the 15% sucrose content ascribed to raw sugar cane juice.[15]

8   131.   Not only is it plausible that a reasonable consumer who seeks to avoid added sugar

9   might be deceived and misled by Chobani's use of ECJ as an ingredient, that is exactly Chobani's

10  goal.

11  132.   For instance, recognizing that the absence of added sugars and syrups is important

12  to consumers and affects their purchasing decisions as evidenced by, *inter alia*, the "FAQ" pages

13  of Chobani's website:

14  **Sugar isn't listed as an ingredient in your 0% Plain.  Where do the 7g come from?**

15

16  The 7g of sugar listed on the nutrient facts panel of our 0% and 2% Plain Chobani comes from a naturally occurring type of sugar found in all dairy products called "lactose."

17

18  This lactose, often called "milk sugar," accounts for these 7g as **we don't add sugar to our yogurt.**

19  *See* http://chobani.com/products/faq/ (emphasis added) (last visited October 4, 2012).

20  Furthermore, Chobani continues to mislead its customer today by telling them on its

21  website's Facebook blog that Chobani does not add sugar to its yogurt:

22  _____

23  [13] During refinement, the sugarcane juice is pressed from the sugar cane and boiled at high temperatures. The boiling destroys the enzymes and many of the nutrients. The juice is then

24  separated into a sugar stream and a molasses stream. Most of the minerals from the sugar cane go into the molasses, leaving the sugar stream virtually void of nutrients. To further refine it

25  (removing any remaining nutrients), the sugar stream is then crystallized through evaporation." McCaffree, D., The Truth About Evaporated Cane Juice, Processed-Free America (Nov. 1, 2010),

26  [14] *Id.*

    [15] *See id.* (stating that "[a]nother important aspect of natural sugar cane is the balance of the

27  different types of sugars. Raw natural sugar has a balance of sucrose, glucose, and fructose, whereas refined sugars are almost exclusively sucrose (the fructose and glucose have been

28  washed out). The more sucrose, the more it raises your blood sugar").

1

2   **Tracy Campanella**  I love Chobani's flavor but there's too much sugar  it'd be

3   great if you came out with a reduced sugar version, sweetened naturally
            *18 August 24 at 8:15 pm via mobile*

4   **Chobani**   No added sugar here, Tracy.  Most of the sugars in or cups come

5   directly from the milk and the fruit, with a little added evaporated cane juice to
    make it taste great! Of course, you could always try out a plain cup and add your

6   own fruit, granola, nuts, or whatever toppings your heart desires, with a lower
    sugar content.  Happy spooning!

7            *26 August 24 at 8:34 pm*

8   https://www.facebook.com/Chobani

9

10  133.    Chobani gives the same "no added sugar" assurance in response to a similar

    inquiry on its Chobani Champions Kids product website:
11
    **Does Chobani Champions contain extra sugar?**
12
    No way! ***Just because Champions is made for kids doesn't mean that we need to***
13  ***add extra sugar***.

14  You won't find any high fructose corn syrup or artificial ingredients, flavors, or
    colors in our yogurt. Just low-fat milk sourced from local-area farms; real fruit,
15  lightly sweetened with evaporated cane juice; pure clover honey (in our Honey-
    Nana flavor); live and active cultures; and probiotics.
16
    We believe in delicious, healthy products that are made with only natural
17  ingredients.

18  *See* http://chobanichampions.com/faq (emphasis added) (last visited October 4, 2012).

19  134.    Defendant's use of the term "evaporated cane juice" misleads consumers into

20  paying a premium price for inferior or undesirable ingredients or for products that contain

21  ingredients not listed on the label.

22  135.    Plaintiffs and the class paid a premium price for the Misbranded Food Products.

23  **D.      The Standard of Identity for Yogurt Does Not Permit the Use of Evaporated
            Cane Juice As An Ingredient**
24

25  136.    California has adopted a standard of identity for yogurt which is identical to the

26  federal standard of identity for yogurt.  California Health & Safety Code § 110505.  California's

27  Standard of Identity for yogurt, will change if and when the federal standard changes, but not

28  before.  Therefore, until the federal standard is changed, the California standard remains in place

1    and consistent with existing federal standard of identity.

2         137.    The California Standard of Identity for yogurt which is identical to (21 C.F.R. §

3    131.200) prohibits the inclusion of any nutritive carbohydrate sweeteners not listed in the

4    standard of identity. "Evaporated cane juice" is not included on the list of allowed sweeteners

5    which is limited to:

6         sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); brown sugar;
          refiner's sirup; molasses (other than blackstrap); high fructose corn sirup;
7         fructose; fructose sirup; maltose; maltose sirup, dried maltose sirup; malt extract,
          dried malt extract; malt sirup, dried malt sirup; honey; maple sugar; or any of the
8         sweeteners listed in part 168 of this chapter [21], except table sirup.

9

10   21 C.F.R. §131.200 (d)(2)

         138.    As discussed herein, "evaporated cane juice" is an unlawful term in that it is a
11
     false and misleading name for another food or ingredient that has a common or usual name,
12
     namely sugar or dried cane syrup.  A food which purports to be a standardized product but which
13
     contains ingredients not recognized in the standard of identity is misbranded, even if the label
14
     accurately describes the ingredients.  Even if evaporated cane juice is considered to be the
15
     common or usual name of a type of sweetener different from sugar, that sweetener is not
16
     authorized for use in yogurt and its presence would preclude the product it is added to from being
17
     called or sold as yogurt.
18
         139.    The Plaintiffs allege that ECJ is in fact sugar, but this fact is disputed by Chobani
19
     which claims on its website and its pleadings that ECJ is a different sweetener than sugar or
20
     syrup.  Pleading in the alternative, to the extent that Chobani's position is true (which Plaintiffs
21
     dispute,) and ECJ is different sweetener from sugar or dried cane syrup, then Chobani's use of
22
     said sweetener violates the California standard of identity for yogurt.  In addition, California Food
23
     and Agricultural Code §36671 expressly requires:  "Prior to the use of any sweetener in a dairy
24
     product, the sweetener must be approved by the U.S. FDA for use in that milk product.
25
     Therefore, unless Chobani can demonstrate that the FDA has approved the use of ECJ in yogurt,
26
     Chobani's use of "ECJ" would violate Cal. Agr. Code §§36671-36673.   Chobani cannot
27
     demonstrate this. While "sugar" and other sweeteners have been recognized as safe and approved
28

1    for use in foods, no such approval exists for "ECJ".

2

3    **E.      Defendant Makes False And Unlawful "All Natural" And "All Natural Ingredients" And/Or "Only Natural Ingredients" Claims**

4        140.    Defendant's "all natural" and "all natural ingredients" and "only natural

5    ingredients" claims violate Federal and California law because they are 1) false and misleading

6    and 2) violate express state and federal regulations. For these flavors of the Purchased Products

7    and Substantially Similar Products that contain artificial ingredients and artificial colors, as set

8    forth in Table 1, such products contain false and misleading "natural" claims.  These artificial

9    ingredients include color additives which constitute artificial coloring and thus render

10   Defendant's products unnatural.  Any representation of naturalness (as as "All Natural", "Only

11   Natural Ingredients" or "All Natural Ingredients") on the label of a product containing these

12   artificial ingredients is false, misleading and unlawful.

13       141.    Representations regarding naturalness drive sales and consumers are increasingly

14   shunning products that are artificial and not natural. This is particularly true for certain segments

15   of the market that are important to yogurt companies like Chobani. Natural products typically

16   command a market premium. Thus, companies like Chobani whose products contain artificial

17   ingredients like artificial colors have a powerful incentive to misrepresent the nature of their

18   products and ingredients.

19       142.    Marketing research showed that consumers were increasingly interested in all

20   natural foods that did not contain chemical preservatives or artificial flavors.  In fact, consumer

21   surveys had established that 1) 80% of the general population thought the fact that a product

22   contained no preservatives or artificial ingredients was a product attribute that was

23   very/somewhat important when purchasing a food product; 2) 81% of the general population

24   thought the fact that a product was natural was very/somewhat important when purchasing a food

25   product; and 3) % of the general population thought the fact that a product contained no  artificial

26   colors was very/somewhat important when purchasing a food product. Moreover, the percentage

27   of consumers indicating that such product attributes were important to their purchasing decisions

28   was increasing annually.

143.    Of likely particular concern to the Defendant was the fact that certain key segments of their consumer base placed even greater importance on these product attributes than the general population. For example, Defendant was likely concerned about the 19% of the U.S. general population classified as Lifestyles Of Health And Sustainability ("LOHAS") consumers since the LOHAS consumers were more likely than the general population to purchase a yogurt. Consumer surveys had established that 1) 95% of LOHAS consumers thought the fact that a product contained no artificial ingredients was a product attribute that was very/somewhat important when purchasing a food product.

144.    In addition to LOHAS consumers, Chobani also had to take into account other segments of the market such as Naturalites who comprised about 19% of the U.S. general population and were avid users of natural products and whose preferences for natural products lacking artificial ingredients was almost as strong as LOHAS consumers. Consumer surveys had established that 1) 90% of Naturalites consumers thought the fact that a product contained no artificial ingredients was a product attribute that was very/somewhat important when purchasing a food product.

145.    These consumer preferences pose a significant threat to the Defendant's core food business because many of their yogurt products like these purchased by Plaintiffs 1) were not natural; 2) contained artificial ingredients; and artificial colors.

### *1.    Chobani Yogurts Contain Artificial Colors and Coloring*

146.    21 C.F.R. § 101.22 and 21 C.F.R. § 70.3 define what constitutes an "artificial color" and "artificial coloring." Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements of 21 C.F.R. § 101.22 and 21 C.F.R. § 70.3 as its own. California Health & Safety Code § 110100.

147.    By definition, as a matter of law, any "color additive" as defined by 21 C.F.R. § 70.3 is an "artificial color" and an artificial ingredient.  21 C.F.R. § 101.22(a)(4) expressly states that "[t]he term artificial color or artificial coloring means any "color additive" as defined in 70.3(f) of this chapter." 21 C.F.R. § 101.22(a)(4).

148.    21 C.F.R. § 70.3 makes clear that any added color regardless of whether it is

derived from a natural source or not, is an "artificial color" and a form of "artificial coloring." 21 C.F.R. § 70.3 expressly states that:

> Food ingredients such as cherries, green or red peppers, chocolate, and orange juice which contribute their own natural color when mixed with other foods are not regarded as color additives; but where a food substance such as beet juice is deliberately used as a color, as in pink lemonade, it is a color additive.

21 C.F.R. § 70.3. Thus, for example the blueberries used to color Chobani's blueberry yogurt are not a "color additive," however, any "vegetable or fruit juice", other than pomegranate juice, used to color Chobani's pomegranate yogurt would be a "color additive" and thus, by definition, as a matter of law, an "artificial color" and a form of "artificial coloring." It is further self-evident that any ingredient that is classified as an "artificial color" or "artificial coloring" is an "artificial ingredient" and could not possibly be classified or truthfully represented as a "natural ingredient."

149.    Thus, the turmeric that artificially colored the Chobani lemon yogurt purchase by Plaintiffs Kane and Rosales was a "color additive" and an "artificial color" and a form of "artificial coloring" and an artificial ingredient. As such, the Chobani lemon yogurt purchased by Plaintiffs Kane and Rosales was falsely labeled due to the representations on it product label that it was "all natural" and contained "only natural ingredients." Similarly, the "vegetable and juice" (other than pomegranate) that artificially colored the Chobani strawberry and pomegranate yogurt purchased by Plaintiffs Kane, Booth and Rosales were "color additives" and "artificial colors" and forms of "artificial coloring" and artificial ingredients. As such, the Chobani strawberry and pomegranate yogurt purchased by Plaintiffs Kane, Booth and Rosales was falsely labeled due to the representations on their product labels that they were "all natural" and contained "only natural ingredients."

150.    In addition to being contrary to the express provisions of 21 C.F.R. § 101.22 and 21 C.F.R. § 70.3, Chobani's "natural" claims violate other state and federal laws and are contrary to FDA guidance and policy.

151.    21 U.S.C. §343(a) and California Health & Safety Code § 110660 both prohibit food manufacturers from using labels that contain the terms "natural" and "all natural" when they contain artificial ingredients and flavorings, artificial coloring and chemical preservatives. The

1    labels of such products are false and misleading and thus misbranded pursuant to 21 U.S.C.

2    §343(a) and California Health & Safety Code § 110660. As misbranded products, these products

3    are illegal to sell or possess.

4        152.    In its rule-making and public warning letters to food manufacturers, the FDA has

5    repeatedly stated its policy to restrict the use of the term "natural" in connection with added color,

6    synthetic substances and flavors as provided in 21 C.F.R. § 101.22.

7        153.    The FDA considers use of the term "natural" on a food label to be truthful and

8    non-misleading when "nothing artificial or synthetic…has been included in, or has been added to,

9    a food that would not normally be expected to be in the food." *See* 58 FR 2302, 2407, January 6,

10   1993.

11       154.    The FDA has expressly stated that it:

12       will maintain its current policy …. not to restrict the use of the term "natural"
         except for ***added color***, synthetic substances, and flavors as provided in § 101.22.
13       Additionally, the agency will maintain its policy … regarding the use of "natural,"
         as meaning that ***nothing artificial or synthetic (including all color additives***
14       ***regardless of source***) has been included in, or has been added to, a food that would
         not normally be expected to be in the food.
15

16   58 FR 2302, 2407, January 6, 1993.

17       155.    Thus, according to the FDA, any added coloring precludes the use of the term

18   "natural" even if the coloring is derived from natural sources.

19       156.    The FDA has repeatedly issued enforcement and warning letters to companies that

20   utilize colors derived from natural sources and fail to disclose that those colorings are "artificial

21   colors" and "artificial coloring" or worse falsely represent those added colors as being "natural"

22   the way Defendant did in the yogurts sold to Plaintiffs. The warning letters have targeted either

23   the exact artificial color at issue in this case (like the turmeric used to artificially color the

24   Chobani lemon yogurt bought by Plaintiffs Kane and Rosales) or types of fruit or vegetable juice

25   used as artificial coloring in the exact same manner as the fruit and vegetable juice used to

26   artificially color the Chobani strawberry and pomegranate yogurt purchased by Plaintiffs Kane,

27   Booth and Rosales.

28       157.    Defendant's "all natural" and "only natural ingredients" labeling practices also

violate FDA Compliance Guide CPG Sec. 587.100, which states: "[t]he use of the words "food color added," "natural color," or similar words containing the term "food" or "natural" may be erroneously interpreted to mean the color is a naturally occurring constituent in the food.  Since all added colors result in an artificially colored food, we would object to the declaration of any added color as "food" or "natural." Likewise, both 21 U.S.C. § 343(k) and California Health & Safety Code § 110740 prohibit the use of artificial flavoring, artificial coloring and chemical preservatives unless those ingredients are adequately disclosed on the labeling. Products that fail to comply with the provisions of 21 U.S.C. § 343(k) and California Health & Safety Code § 110740 are misbranded and illegal to sell or possess.

158.    Defendant's yogurts were unlawfully labeled for two additional reasons. First, the FDA has made clear in warning letters that artificial colors such as the ones at issue in this case must be listed in the ingredient list by their common or usual name and that it violates the common and usual name rules (such as 21 C.F.R. § 101.4) to use a collective or generic name like fruit juice or vegetable juice as the Defendant did. The law requires specificity so that consumers like the Plaintiffs can determine what exact coloring agents are being added and whether they are artificially coloring the products to which they are being added.  Manufacturers cannot legally use generic or collective terms to hide the fact that they like the Defendant are using some different juice to color a product than the listed flavor of the product.

159.    Thus for example, the FDA told a manufacturer its food products were improperly labeled because:

> Generally, the ingredients required to be in the ingredient statement must be declared by a specific common or usual name, and not a collective (generic) name, in accordance with 21 CFR 101.4(a)-(b). The ingredient statement on your Berry Juice incorrectly declares Berry Juices instead of the specific type of berry juice(s) contained in the product (e.g. raspberry juice).

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2005/ucm075264.htm.

160.    The FDA thus makes clear that merely listing the collective or generic terms fruit juice or vegetable juice for color in an ingredient list is insufficient to put a consumer on notice that the product contains an added artificial color. Thus, Chobani's practice of using a generic term like fruit juice or vegetable juice instead of say grape juice, beet juice or carrot juice to hide

that the color comes from a fruit other than the flavoring fruit or from a vegetable other than cane (and thus is artificial and unnatural per the FDA), violates the common name rule of 21 C.F.R. § 101.4.  While the labels on certain flavors may have indicated "(for color)" that does not mean that Plaintiffs knew or recognized that artificial color had been added.

161.    Second as detailed below, Plaintiffs allege that the fruit and vegetable juices added to the artificially colored yogurt they purchased were not merely artificial because they were "color additives" and "artificial colors" and forms of "artificial coloring" and thus artificial ingredients but also because these juices were highly processed unnatural substances far removed from the fruits or vegetables they were supposedly derived from and in fact were more akin to synthetic dyes like coal tar dyes. Representing such dyes as natural is false and misleading.

162.    In addition to the artificially colored yogurt products described above,  Defendant has unlawfully labeled a number of its other yogurt products as being "All Natural" or having "All Natural ingredients" and/or "Only natural ingredients" when they actually contain artificial colors and artificial coloring.  These products include those listed in Table 1.  These artificially colored Chobani yogurt products are substantially similar to the artificially colored Chobani yogurt products purchased by the Plaintiffs. Like the artificially colored Chobani yogurts purchased by the Plaintiffs all of the substantially similar artificially colored Chobani products 1) are yogurt; 2) contain the same primary ingredients (Cultured Pasteurized Nonfat Milk, Cream, Live and Active Cultures: S. Thermophilus, L. Bulgaricus, L. Acidophilus, Bifidus and L. Casei; 3) contain the same artificial colors (turmeric, vegetable juice and fruit juice); 4) contain overlapping ingredients including Evaporated Cane Juice and others; and 5) differ primarily by flavoring agent.  Moreover, these substantially similar products bore the same claims of naturalness ("All Natural" and/or "All Natural Ingredients" and/or "Only Natural Ingredients" claims) as did the artificially colored yogurts purchased by the Plaintiffs.

163.    While the ingredient lists of Chobani's yogurt disclosed that one or more ingredients functioned as "(color)," the ingredient list did not disclose that by the coloring agents were "artificial colors" and "artificial coloring" even though they were in fact "artificial colors" and "artificial coloring"  by definition as a matter of law pursuant to 21 C.F.R. [section signs]

70.3 and 101.22.  Even Chobani itself confirms that in Chobani's view the term "natural" means "a product is free of processed ingredients along with **artificial colors**, preservatives, flavors and sweeteners." Thus, Chobani's prominent claims on both the front and back of its packages that it yogurt was "all natural" or contained "all natural ingredients" or "only natural ingredients" were all demonstrably false because they contained "artificial colors" and "artificial coloring". Plaintiffs like the vast majority of the general population view the presence of artificial coloring negatively. Plaintiffs shared Chobani's opinion that the presence of "artificial colors" and "artificial coloring" precluded any claim that a product or its ingredients were natural. Chobani's practice of representing its products and their ingredients as natural in violation of the law, Chobani's own position and reasonable consumer expectations mislead Plaintiffs into the erroneous belief that these products were all natural and their ingredients were all natural and that the products did not contain any artificial ingredients or coloring.  Plaintiffs would not have bought the Purchased Products with added color had they known the color was artificial. Plaintiffs claim is not that they were unaware that the products had an ingredient that provided color but rather they were unaware that there was any form of artificial color in the products.

### 2. *Chobani Yogurts Contain Unnatural Ingredients And Artificial Ingredients and Colors*

164.    Natural products are products that are free from artificial ingredients, added colors, preservatives or any other ingredient that does not exist in nature or would not be expected by consumers to be in that product.  Natural ingredients are ingredients that occur naturally in nature and are not synthetic or highly processed.  This interpretation is in accord with the FDA's current policy with respect to what is natural where the FDA has indicated the use of "natural," means "that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." This interpretation is in also in accord with the approach the USDA adopted in its Labeling Policy Book where it indicated that to be natural that 1) a product does not contain any artificial flavor/color/chemical preservative per 21 C.F.R. 101.22 and 2) products and ingredients could only be minimally processed.

165.    Defendant not only agrees with such an approach but has represented to consumers that all of its products and ingredients meet an even higher natural standard in the "facts" section of its website[16] Defendant states that:

**It says on your cups that Chobani is "all natural."  What does that mean?**

Although the U.S. Food and Drug Administration (FDA) has yet to release a formal definition for the term "natural", to us it recognizes that a product is free of processed ingredients along with artificial colors, preservatives, flavors and sweeteners.  And that's exactly what Chobani is.

166.    The color additives utilized by Chobani in its yogurts fail to be natural by any definition including the FDA's, the USDA's and Chobani's own definition.

167.    Plaintiffs were unaware that the colors added by Chobani, were "unnatural" or classified as artificial by the FDA, the USDA, Chobani or law or regulation. Although the ingredient lists disclosed "fruit or vegetable juice (for color)" or "turmeric (for color)", there was no disclosure that any of these ingredients were artificial or unnatural or synthetic. Moreover, because of Chobani's improper and unlawful use of collective and generic terms like "fruit juice" or "vegetable juice," Plaintiffs were unable to determine from the ingredient lists whether the colors Chobani added were using some different juice to color a product than the listed flavor of the product.  Thus, Plaintiffs relied on Chobani's other labeling statements like "All Natural" and/or "Only Natural Ingredients" to determine whether the Chobani yogurt products they purchased were in fact all natural and contained only all natural ingredients. Based on the false and unlawful representations regarding naturalness that appeared on the labels of all the Chobani yogurt products they purchased, Plaintiffs were under the false impression that the Chobani yogurt products they purchased were 100% natural and contained no ingredients that were unnatural, artificial or synthetic. Plaintiffs would not have bought the Chobani yogurt products they bought had they known that "juice," or the colors added by Chobani, were "unnatural" or classified as artificial by the FDA, the USDA, Chobani or law or regulation.

168.    In addition to Chobani's violation of the artificial color rules, Chobani's violation of the common and usual name rules for ingredients like added color, Chobani's violation of the

---

[16] Available at http://chobani.com/about/faqs/ (last accessed on May 29, 2012).

FDA and USDA policies on naturalness, Chobani's uses "natural" in a manner contrary to the normal understood meaning of the word.  Even Chobani's own understanding of the word "natural" as stated on its website results in the Chobani yogurt products purchased by Plaintiffs being misbranded under specific misbranding provisions of state and federal law such as California Health & Safety Code § 110725 (failure to use common and usual name of ingredient misbrands products) California Health & Safety Code § 110740 (failure to adequately disclose artificial colors on product labels misbrands products) as well as generic misbranding provisions such as 21 U.S.C . §  343(a) and California Health & Safety Code § 110660 (products are misbranded if their labeling is false or misleading in any particular).

169.   As misbranded products the Chobani yogurt products misbranded as "All Natural" and/or "Only Natural Ingredients" were illegal to sell or possess under both State and federal law. For example, California Health & Safety Code § 110760 expressly provides that it is "unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded." This provision is criminal in nature and punishable on a strict liability basis by imprisonment and fines.  The Plaintiffs would never have purchased the Defendant's yogurt products if they knew they were misbranded and that it was illegal to sell or possess such products. No reasonable consumer would knowingly purchase an illegal product.  Plaintiffs relied on Chobani's implicit representations that the Chobani yogurt products being purchased by Plaintiffs were not misbranded and were legal to sell and possess. An obligation to disclose exists for purposes of a claim under the UCL or CLRA under "four circumstances" of which three apply here: (1) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiffs; (2) when the defendant actively conceals a material fact from the plaintiffs; [or] (3) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." Chobani as the manufacturer, packager, labeler and initial seller of the Chobani yogurt products purchased by the Plaintiffs had a duty to disclose 1) the artificial nature of the ingredients in the products it was misrepresenting as having only natural ingredients; 2) the fact that's its products were in fact not all natural or made with all natural ingredients; and 3) that its products were misbranded and illegal to sell and possess. Chobani had exclusive

knowledge of material facts not known or reasonably accessible to the Plaintiffs; (2) Chobani actively concealed material facts from the Plaintiffs; and (3) Chobani made partial representations that are misleading because some other material fact has not been disclosed."  Chobani's failure to disclose the information it had a duty to disclose constitute material misrepresentations and materially misleading omissions which mislead the Plaintiffs who relied on Chobani in this regard to disclose all material facts accurately and truthfully and fully.

**F.      Defendant has Knowingly Violated Numerous Federal and California Laws**

170.    Defendant has violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements or statements on products and product packaging, labeling or any other medium used to directly or indirectly induce the purchase of a food product.

171.    Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

172.    Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

173.    Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

174.    Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented to be for special dietary uses, and their labels fail to bear information concerning their vitamin, mineral, and other dietary properties that federal regulations have prescribed as necessary in order fully to inform purchasers as to their value for such uses.

175.    Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

176.    Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or

1    proffer for delivery any such food.

2        177.    Defendant has violated California Health & Safety Code § 110725 which makes it

3    unlawful for any person to fail to list each ingredient by its common and usual name.

4        178.    Defendant has violated California Health & Safety Code § 110760 which makes it

5    unlawful for any person manufacture, sell, deliver, hold or offer for sale any food that is

6    misbranded.

7    **G.    Plaintiffs Purchased Defendant's Misbranded Food Products**

8        179.    Plaintiffs care about the nutritional content of food and seeks to maintain a healthy

9    diet.  During the Class Period, Plaintiffs spent more than twenty-five dollars ($25.00) on the

10   Purchased Products.

11       180.    Plaintiffs read and reasonably relied on the labels on Defendant's Purchased

12   Products before purchasing it as described herein.  Plaintiffs relied on Defendant's labeling as

13   described herein and based and justified the decision to purchase Defendant's products, in

14   substantial part, on the label.

15       181.    At point of sale, Plaintiffs did not know, and had no reason to know, that the

16   Purchased Products were unlawful and misbranded as set forth herein, and would not have bought

17   the product had he known the truth about it, *i.e.*, that the product was illegal to purchase and

18   possess.

19       182.    After Plaintiffs learned that Defendant's Purchased Products were falsely labeled,

20   each of them stopped purchasing them.

21       183.    As a result of Defendant's unlawful misrepresentations, Plaintiffs and thousands of

22   others in California and throughout the United States purchased the Purchased Products and the

23   Substantially Similar Products at issue.

24       184.    Defendant's labeling as alleged herein is false and misleading and was designed to

25   increase sales of the products at issue.  Defendant's misrepresentations are part of its systematic

26   labeling practice and a reasonable person would attach importance to Defendant's

27   misrepresentations in determining whether to purchase the products at issue.

28       185.    A reasonable person would also attach importance to whether Defendant's

products are "misbranded," i.e., legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiffs would not have purchased Defendant's products had they known they were not capable of being legally sold or held.

186.    Plaintiffs' purchases of the Purchased Products damaged Plaintiffs because misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.

### Plaintiff Katie Kane

187.    Plaintiff Kane cares about the nutritional content of food and seeks to maintain a healthy diet.  Starting approximately one year before this suit was filed until shortly before her claims were filed, Plaintiff Kane read the labels on Defendant's Misbranded Food Products, including the Ingredient, "evaporated cane juice" and the "All Natural", "All Natural Ingredients" and/or "Only Natural Ingredients" claims on the labels, before purchasing them.  Based on those representations, Plaintiff purchased several Chobani Greek Yogurt products (including the pomegranate and lemon flavors) at grocery stores and third-party retailers, including Safeway, in and around Los Gatos, California.  She paid approximately $1.69 for each 6-ounce Chobani Greek Yogurt product during this time period.  Based on the Product labels, Plaintiff believed Defendant's products that she purchased contained only natural sugars from milk and fruit and did not contain added sugars or syrups.  Further, Plaintiff believed Defendant's products that she purchased contained only natural ingredients. Likewise, at point of sale, Plaintiff did not know, and had no reason to know, that Defendant's "evaporated cane juice" and "All Natural", "All Natural Ingredients" and/or "Only Natural Ingredients" claims were unlawful and unauthorized as set forth herein.  Had Plaintiff known Defendant's products that she purchased contained added sugar or syrup and unnatural and artificial ingredients, she would not have purchased the Products.  As a result, Plaintiff suffered injury-in-fact and lost money.

188.    Plaintiff would show that she seeks to avoid and/or minimize added sugar in the yogurt products that she purchases.  Plaintiff would show that at the time she read the labels of Defendant's Greek Yogurt products, she attempted to determine whether Defendant's Yogurt

products contained "added sugar" by reading the ingredient list.  She would further show that when she read the ingredient list of Defendant's Greek Yogurt product to determine if sugar had been added as an ingredient, "sugar" was not listed thus she was led to believe that Defendant's Greek Yogurt product that she purchased did not contain added sugar as an ingredient.  She did not know that the ingredient "evaporated cane juice" was, in reality, sugar at the time she made her purchase.   Had she known "evaporated cane juice" was the same thing as added sugar or syrup, Plaintiff would not have purchased Defendant's yogurt product.  Plaintiff would show that while she did not know what evaporated cane juice was at the time she purchased Defendant's yogurt product, because of the fact it used the term "juice", it sounded like something healthy.

### *Darla Booth*

189.    Plaintiff Booth cares about the nutritional content of food and seeks to maintain a healthy diet.  Starting approximately two years before this suit was filed until shortly before her claims were filed, Plaintiff Booth read the labels on Defendant's products that she purchased including the Ingredient, "evaporated cane juice" and the "All Natural", "All Natural Ingredients" and/or "Only Natural Ingredients" claims on the labels, before purchasing them.  Based on those representations, Plaintiff purchased several Chobani Greek Yogurt products (including the pomegranate and peach flavors) at grocery stores and third-party retailers, including Whole Foods, in and around Los Gatos, California.  She paid approximately $1.89 for each 6-ounce Chobani Greek Yogurt product during this time period.  Based on the Product labels, Plaintiff believed Defendant's products that she purchased contained only natural sugars from milk and fruit and did not contain added sugars or syrups.  Further, Plaintiff believed Defendant's products that she purchased contained only natural ingredients.  Likewise, at point of sale, Plaintiff did not know, and had no reason to know, that Defendant's "evaporated cane juice" and "All Natural", "All Natural Ingredients" and/or "Only Natural Ingredients" claims were unlawful and unauthorized as set forth herein. Had Plaintiff known Defendant's products that she purchased contained added sugar or syrup and unnatural or artificial ingredients, she would not have purchased the Products.  As a result, Plaintiff suffered injury-in-fact and lost money.

190.    Plaintiff would show that she seeks to avoid and/or minimize added sugar in the

yogurt products that she purchases.  Plaintiff would show that at the time she read the labels of Defendant's Greek Yogurt products, she attempted to determine whether Defendant's Yogurt products contained "added sugar" by reading the ingredient list.  She would further show that when she read the ingredient list of Defendant's Greek Yogurt product to determine if sugar had been added as an ingredient, "sugar" was not listed thus she was led to believe that Defendant's Greek Yogurt product that she purchased did not contain added sugar as an ingredient.  She did not know that the ingredient "evaporated cane juice" was, in reality, sugar at the time she made her purchase.   Had show known "evaporated cane juice" was the same thing as added sugar or syrup, Plaintiff would not have purchased Defendant's yogurt product.  Plaintiff would show that while she did not know what evaporated cane juice was at the time she purchased Defendant's yogurt product, because it used the term "juice", it sounded like something healthy.

### Arianna Rosales

191.    Plaintiff Rosales cares about the nutritional content of food and seeks to maintain a healthy diet.  Starting approximately two years before this suit was filed until shortly before her claims were filed, Plaintiff Rosales read the labels on Defendant's Misbranded Food Products, including the Ingredient, "evaporated cane juice" and the "All Natural", "All Natural Ingredients" and/or "Only Natural Ingredients" claims on the labels, before purchasing them.  Based on those representations, Plaintiff purchased several Chobani Greek Yogurt products (including the Vanilla, Strawberry, Blueberry, and Lemon flavors) at grocery stores and third-party retailers, including Vons and Wal-Mart, in and around El Centro, California.   She paid approximately $1.60 for each 6-ounce Chobani Greek Yogurt product during this time period.  Based on the Product labels, Plaintiff believed Defendant's products that she purchased contained only natural sugars from milk and fruit and did not contain added sugars or syrups.  Further, Plaintiff believed Defendant's products that she purchased contained only natural ingredients.  Likewise, at point of sale, Plaintiff did not know, and had no reason to know, that Defendant's "evaporated cane juice" and "All Natural Ingredients" and/or "Only Natural Ingredients" claims were unlawful and unauthorized as set forth herein. Had Plaintiff known Defendant's products that she purchased contained added sugar or syrup and unnatural or artificial ingredients, she would not have

1    purchased the Products.  As a result, Plaintiff suffered injury-in-fact and lost money.

2           192.    Plaintiff would show that she seeks to avoid and/or minimize added sugar in the

3    yogurt products that she purchases.  Plaintiff would show that at the time she read the labels of

4    Defendant's Greek Yogurt products, she attempted to determine whether Defendant's Yogurt

5    products contained "added sugar" by reading the ingredient list.  She would further show that

6    when she read the ingredient list of Defendant's Greek Yogurt product to determine if sugar had

7    been added as an ingredient, "sugar" was not listed thus she was led to believe that Defendant's

8    Greek Yogurt product that she purchased did not contain added sugar as an ingredient.  She did

9    not know that the ingredient "evaporated cane juice" was, in reality, sugar at the time she made

10   her purchase.   Had she known "evaporated cane juice" was the same thing as added sugar or

11   syrup, Plaintiff would not have purchased Defendant's yogurt product.  Plaintiff would show that

12   while she did not know what evaporated cane juice was at the time she purchased Defendant's

13   yogurt product, because of the fact it used the term "juice", it sounded like something healthy.

14          193.    Plaintiffs' are not claiming that they believed ECJ was a "healthy sugar" or

15   "healthier form of sugar"  at the time of purchase; but rather, that at the time of purchase they

16   believed ECJ was some type of ingredient that was healthier than sugar due to its inclusion of the

17   word juice and its omission of the words sugar or syrup. At the time of purchase they did not

18   realize this ingredient was sugar, let alone a refined sugar or an added sugar.  To the extent ECJ

19   suggests that the product is derived from a juice, it plausibly suggests that ECJ is healthier than

20   refined sugars and syrups and that products that contain ECJ are healthier products than those that

21   contain added sugar as an ingredient. Plaintiffs allege that they believed the term ECJ was a

22   healthier term than sugar or syrup or conversely that sugar was an unhealthier term than ECJ.

23   While this equates to alleging that Plaintiffs believed ECJ was healthier than sugar, this is quite

24   different, however, from alleging ECJ was a healthier form of sugar. In fact, Plaintiffs claim is

25   that they were deceived because ECJ is really sugar or dried cane syrup whose presence as an

26   ingredient was concealed from Plaintiffs and not a claim that ECJ is a healthier form of sugar.

27   Plaintiffs' allegation is that ECJ is really the same thing as sugar and therefore should have been

28   labeled as sugar. Plaintiffs allege that because Plaintiffs were deceived about ECJ being healthier

than sugar they were deceived about Chobani being healthier than yogurts that listed sugar instead of ECJ. Plaintiffs purchasing decisions were affected by Chobani's deceptive practice of labeling sugar as ECJ. Plaintiffs wished to avoid added sugar or syrup added as an ingredient. They did not recognize ECJ as an added sugar or syrup added as an ingredient.

194.   Defendant's labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.   Defendant's misrepresentations and material omissions are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's misrepresentations and material omissions in determining whether to purchase the products at issue.

195.   A reasonable person would also attach importance to whether Defendant's products were legal for sale, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiffs would not have purchased Defendant's Misbranded Food Products had they known they were not capable of being legally sold or held.

## **CLASS ACTION ALLEGATIONS**

196.   Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States, or in the alternative, all persons in the state of California who, within the last four years, purchased Defendant's Greek Yogurt Products: (1) labeled with the ingredient, "Evaporated Cane Juice" and /or (2) labeled "All Natural", "All Natural Ingredients" and/or "Only Natural Ingredients" but which actually contain artificial ingredients, flavorings, coloring, and/or chemical preservatives (the "Class").

197.   The following persons are expressly excluded from each Class:  (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

198.   This action can be maintained as a class action because there is a well-defined community of interest in the litigation and each proposed Class is easily ascertainable.

199.   <u>Numerosity</u>:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that each Class numbers in the thousands, and that joinder of all Class members is impracticable.

200.   <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include:

a.   Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its food products it sold to consumers;

b.   Whether the food products at issue were misbranded as a matter of law;

c.   Whether Defendant made unlawful and misleading ingredient and natural claims with respect to its food products sold to consumers;

d.   Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

e.   Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

f.   Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class; and

g.   Whether Defendant was unjustly enriched by its deceptive practices.

201.   <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the members of each Class because Plaintiffs bought Defendant's Misbranded Food Products during the Class Period. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiffs and each Class sustained similar injuries arising out of Defendant's conduct in violation of California law. The injuries of each member of each Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members of each class and represents a common thread of misconduct resulting in injury to all members of each Class.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the member of each Class and are based on the same legal theories.

202.   <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of each Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of either Class's members.   Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of each Class.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of each class and will diligently discharge those duties by seeking the maximum possible recovery for each Class.

203.   <u>Superiority</u>:   There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of each Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of each Class member's rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.   Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

204.   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to FED. R. CIV. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive or equitable relief with respect to each Class as a whole.

205.   The prerequisites to maintaining a class action pursuant to FED. R. CIV. P. 23(b)(3) are met as questions of law or fact common to each class member predominate over any questions

affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

206.    Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Unlawful Business Acts and Practices

207.    Plaintiffs incorporate by reference each allegation set forth above.

208.    Defendant's conduct constitutes unlawful business acts and practices.

209.    Under California Law, unlawful injury causing conduct, such as Defendant's unlawful sale of an illegal product, is the only element necessary for the UCL claim.  No reliance is necessary.  Plaintiffs' claims here are based upon California law which is identical to the federal laws California adopted.

210.    Defendant sold Plaintiffs and the class the Purchased Products and Substantially Similar Products that were not capable of being legally sold or possessed and have no economic value and thus legally worthless.  Plaintiffs and the class lost money as a direct result of Defendant's unlawful conduct.

211.    Defendant sold Misbranded Food Products, the Purchased Products and Substantially Similar Products in California and throughout the United States during the Class Period.

212.    Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

213.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

214.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

1   Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

2   215.   Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

3   Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

4   216.   Defendant sold Plaintiffs and the Class Misbranded Food Products that were not

5   capable of being sold, or legally held and which were legally worthless.  Plaintiffs and each Class

6   paid a premium price for the Misbranded Food Products.

7   217.   As a result of Defendant's illegal business practices, Plaintiffs and the members of

8   each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining

9   such future conduct and such other orders and judgments which may be necessary to disgorge

10  Defendant's ill-gotten gains and to restore to any Class Member any money paid for the

11  Misbranded Food Products.

12  218.   Defendant's unlawful business acts present a threat and reasonable continued

13  likelihood of injury to Plaintiffs and each Class member.

14  219.   As a result of Defendant's conduct, Plaintiffs and the members of each Class,

15  pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

16  conduct by Defendant, and such other orders and judgments which may be necessary to disgorge

17  Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food

18  Products by Plaintiffs and the members of each Class.

19
20
                                **SECOND CAUSE OF ACTION**
                        **Business and Professions Code § 17200, *et seq.***
                        <u>**Unfair Business Acts and Practices**</u>
21
22  220.   Plaintiffs incorporate by reference each allegation set forth above.

23  221.   Defendant's conduct as set forth herein constitutes unfair business acts and

24  practices.

25  222.   Defendant sold Misbranded Food Products in California and throughout the United

26  States during the Class Period.

27  223.   Plaintiffs and the members of each Class suffered a substantial injury by virtue of

28  buying Defendant's Misbranded Food Products that they would not have purchased absent

1    Defendant's illegal conduct.

2        224.   Defendant's deceptive marketing, advertising, packaging and labeling of its

3    Misbranded Food Products and its sale of unsalable misbranded products that were illegal to

4    possess were of no benefit to consumers, and the harm to consumers and competition is

5    substantial.

6        225.   Defendant sold Plaintiffs and the members of each Class Misbranded Food

7    Products that were not capable of being legally sold or held and that were legally worthless.

8    Plaintiffs and the members of each Class paid a premium price for the Misbranded Food

9    Products.

10       226.   Plaintiffs and the members of each Class who purchased Defendant's Misbranded

11   Food Products had no way of reasonably knowing that the products were misbranded and were

12   not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably

13   avoided the injury each of them suffered.

14       227.   The consequences of Defendant's conduct as set forth herein outweigh any

15   justification, motive or reason therefor.  Defendant's conduct is and continues to be unlawful,

16   unscrupulous, contrary to public policy, and is substantially injurious to Plaintiffs and the

17   members of each Class.

18       228.   As a result of Defendant's conduct, Plaintiffs and the members of each Class,

19   pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

20   conduct by Defendant, and such other orders and judgments which may be necessary to disgorge

21   Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food

22   Products by Plaintiffs and the members of each Class.

23

24                         **THIRD CAUSE OF ACTION**
                **Business and Professions Code § 17200,** *et seq.*
25                  <u>**Fraudulent Business Acts and Practices**</u>

26

27       229.   Plaintiffs incorporate by reference each allegation set forth above.

28       230.   Defendant's conduct as set forth herein constitutes fraudulent business practices

1    under California Business and Professions Code sections § 17200, *et seq.*

2         231.    Defendant sold Misbranded Food Products in California and throughout the United

3    States during the Class Period.

4         232.    Defendant's misleading marketing, advertising, packaging and labeling of the

5    Misbranded Food Products and misrepresentations and material omissions that the products were

6    capable of sale, capable of possession and not misbranded were likely to deceive reasonable

7    consumers, and in fact, Plaintiffs and the members of each Class were deceived.  Defendant has

8    engaged in fraudulent business acts and practices.

9         233.    Defendant's fraud and deception caused Plaintiffs and the members of each Class

10   to purchase Defendant's Misbranded Food Products that they would otherwise not have

11   purchased had they known the true nature of those products.

12        234.    Defendant sold Plaintiffs and the members of each Class Misbranded Food

13   Products that were not capable of being sold or legally held and that were legally worthless.

14   Plaintiffs and the members of each Class paid a premium price for the Misbranded Food

15   Products.

16        235.    As a result of Defendant's conduct as set forth herein, Plaintiffs and each Class,

17   pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

18   conduct by Defendant, and such other orders and judgments which may be necessary to disgorge

19   Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food

20   Products by Plaintiffs and the members of each Class.

### FOURTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### <u>Misleading and Deceptive Advertising</u>

236.    Plaintiffs incorporate by reference each allegation set forth above.

237.    Plaintiffs assert this cause of action for violations of California Business and

Professions Code § 17500*, et seq.* for misleading and deceptive advertising against Defendant.

238.    Defendant sold Misbranded Food Products in California and throughout the United

1 | States during the Class Period.

2 | 239. Defendant engaged in a scheme of offering Defendant's Misbranded Food

3 | Products for sale to Plaintiffs and the members of each Class by way of, *inter alia*, product

4 | packaging and labeling, and other promotional materials.  These materials misrepresented and/or

5 | omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's

6 | advertisements and inducements were made within California and throughout the United States

7 | and come within the definition of advertising as contained in Business and Professions Code

8 | §17500, *et seq.* in that such product packaging and labeling, and promotional materials were

9 | intended as inducements to purchase Defendant's Misbranded Food Products and are statements

10 | disseminated by Defendant to Plaintiffs and the members of each Class that were intended to

11 | reach the members of each Class.  Defendant knew, or in the exercise of reasonable care should

12 | have known, that these statements were misleading and deceptive as set forth herein.

13 | 240. In furtherance of its plan and scheme, Defendant prepared and distributed within

14 | California and nationwide via product packaging and labeling, and other promotional materials,

15 | statements that misleadingly and deceptively represented the composition and the nature of

16 | Defendant's Misbranded Food Products.  Plaintiffs and the members of each Class necessarily

17 | and reasonably relied on Defendant's materials, and were the intended targets of such

18 | representations.

19 | 241. Defendant's conduct in disseminating misleading and deceptive statements in

20 | California and nationwide to Plaintiffs and the members of each Class was and is likely to

21 | deceive reasonable consumers by obfuscating the true composition and nature of Defendant's

22 | Misbranded Food Products in violation of the "misleading prong" of California Business and

23 | Professions Code § 17500, *et seq.*

24 | 242. As a result of Defendant's violations of the "misleading prong" of California

25 | Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the

26 | expense of Plaintiffs and the members of each Class.  Misbranded products cannot be legally sold

27 | or held and are legally worthless.  Plaintiffs and the members of each Class paid a premium price

28 | for the Misbranded Food Products.

243.     Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

### FIFTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### <u>Untrue Advertising</u>

244.     Plaintiffs incorporate by reference each allegation set forth above.

245.     Plaintiffs assert this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

246.     Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

247.     Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiffs and the members of each Class by way of product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiffs and the members of each Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

248.     In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products.  Plaintiffs and the members of each Class were the intended targets of such representations and would reasonably be deceived by

Defendant's materials.

249.    Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiffs and the members of each Class by obfuscating the contents, nature and quality of Defendant's Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

250.    As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the members of each Class.  Misbranded products cannot be legally sold or held and are legally worthless.  Plaintiffs and the members of each Class paid a premium price for the Misbranded Food Products.

251.    Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

## SIXTH CAUSE OF ACTION
## Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

252.    Plaintiffs incorporate by reference each allegation set forth above.

253.    This cause of action is brought pursuant to the CLRA.  On June 25, 2012, Plaintiff Kane provided Defendant with notice pursuant to Cal. Civ. Code § 1782.

254.    Defendant's violations of the CLRA were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

255.    Consequently, Plaintiffs and the members of each Class are entitled to actual and punitive damages against Defendant for its violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the members of each Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the members of each Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

256. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

257. Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

258. Plaintiffs and the members of each Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

259. Defendant's Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

260. By engaging in the conduct set forth herein, Defendant has violated and continues to violate Sections 1770(a)(5) of the CLRA, (because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

261. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

262. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

263. By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

264. Plaintiffs request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If

Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the members of each Class will continue to suffer harm.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendant as follows:

A.     For an order certifying this case as a national class action, and also a separate and distinct California class action and appointing Plaintiffs and their counsel to represent each Class;

B.     For an order awarding all relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780;

C.     For an order requiring Defendant to immediately cease and desist from selling its Misbranded Food Products listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.     For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.     For an order awarding attorneys' fees and costs;

F.     For an order awarding punitive damages;

G.     For an order awarding pre-and post-judgment interest; and

H.     For an order providing such further relief as this Court deems proper.

1

2
Dated:  October 10, 2012.                    Respectfully submitted,

3

4
                                               /s/ Ben F. Pierce Gore
                                             Ben. F. Pierce Gore (SBN 128515)
5                                            PRATT & ASSOCIATES
                                             1901 S. Bascom Avenue, Suite 350
6                                            Campbell, CA  95008
                                             Telephone:  (408) 429-6506
7                                            Fax:  (408) 369-0752
                                             pgore@prattattorneys.com
8

9
                                               /s/ Darren L. Brown
10                                           Darren L. Brown (SBN 03108350)
                                             *(pro hac vice)*
11                                           PROVOST & UMPHREY
                                             490 Park Street
12                                           Beaumont, TX 77701
                                             Telephone:  (409) 838-8881
13                                           Fax:  (409) 813-8630
                                             dbrown@pulf.com
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28