MAYER BROWN LLP
DALE J. GIALI (SBN 150382)
*dgiali@mayerbrown.com*
MICHAEL L. RESCH (SBN 202909)
*mresch@mayerbrown.com*
STEVEN E. RICH (SBN 198412)
srich@mayerbrown.com
ANDREW Z. EDELSTEIN (SBN 218023)
*aedelstein@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone:  (213) 229-9500
Facsimile:  (213) 625-0248

Attorneys for Defendant
CHOBANI, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| KATIE KANE, *et al.*, individuals, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHOBANI, INC.,<br><br>Defendant. | Case No. CV 12-02425-LHK<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:          February 20, 2014<br>Time:          1:30 p.m.<br>Courtroom:   8<br><br>The Hon. Lucy H. Koh<br><br>Complaint filed:  May 14, 2012 |

## NOTICE OF MOTION AND MOTION

### TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** on February 20, 2014 at 1:30 p.m. in Courtroom 8 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Lucy H. Koh, Defendant Chobani, Inc. ("Chobani") will and hereby does move the Court for an order dismissing, with prejudice, the Third Amended Complaint (the "TAC") and each claim therein filed by plaintiffs Katie Kane, Darla Booth, and Arianna Rosales ("plaintiffs").

This motion is made pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1) and 12(b)(6), and is based on the following grounds:

1. As the Court already ruled in dismissing plaintiffs' Second Amended Complaint (the "SAC"), it is not plausible that *plaintiffs* were deceived by the alleged product labeling, and therefore the TAC has not adequately alleged reliance, causation, and injury as required for plaintiffs to have standing, or to state a claim, under Article III and Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), §§ 17500 *et seq.* ("FAL"), and §§ 1750 *et seq.* ("CLRA").  Plaintiffs also lack standing to assert claims based on products they never purchased and statements they never read.

2. It is not plausible that a *reasonable consumer* would be deceived by the alleged product labeling and therefore the TAC has not adequately alleged reliance, causation, and injury as required to state a claim under the UCL, FAL, and CLRA.

3. Plaintiffs' state law claims are expressly and impliedly preempted by uniform federal labeling law promulgated by Congress and the FDA, or at a minimum would require the Court to adjudicate issues (including the interpretation of FDA regulations) that should be left to the FDA under the primary jurisdiction doctrine.

4. The TAC fails to plead with particularity the claims against Chobani, as required by Rule 9(b).

5. Plaintiffs may not bring suit on behalf of non-California consumers where no nexus between California and the non-California putative class members is alleged.

This motion is based on this notice of motion, the accompanying statement of issues to be decided,

1

1  the accompanying memorandum of points and authorities, all pleadings and documents on file in this

2  case, and on such other written and oral argument as may be presented to the Court.

3

4  DATED:  October 28, 2013                    MAYER BROWN LLP

5

6                                              By:  _____/s/ *Dale J. Giali*_____

7                                                    Dale J. Giali

8                                              Attorneys for Defendant CHOBANI, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT; CASE NO. CV-12-02425-LHK

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.      Are the rulings included in the Court's Order dismissing the SAC (Dkt. 153) binding and enforceable as to the claims in the TAC?

2.      Is it plausible that plaintiffs were deceived by the alleged product labeling, when the Court already ruled it is not plausible and plaintiffs have made no meaningful change to the allegations?

3.      Is it plausible that a reasonable consumer would be deceived by the product labeling?

4.      As the Court's Order on the SAC required, must the TAC contain plausible allegations of reliance, causation, and injury for plaintiffs to have standing and state a claim under Article III and the UCL, FAL, and CLRA?

5.      Are plaintiffs' state law claims expressly preempted by 21 U.S.C. § 343-1?

6.      Are plaintiffs' state law claims impliedly preempted by 21 U.S.C. § 337?

7.      Do plaintiffs' claims require the Court to adjudicate issues that fall under the primary jurisdiction doctrine of the FDA?

8.      May plaintiffs assert claims based on products they never purchased and statements they never read?

9.      Are the claims against Chobani pled with particularity as required by Rule 9(b)?

10.      May plaintiffs bring suit on behalf of non-California consumers where no nexus between California and the non-California putative class members is alleged?

1

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................................1

II.  THE COURT HAS CONSIDERED AND REJECTED THE ALLEGATIONS AND
     LEGAL THEORIES IN THE TAC ...........................................................................3

     A.   ECJ Claims.................................................................................................3

          1.   Theory No. 1 – i.e., plaintiffs had no idea ECJ was a sweetener – was
               rejected by the Court but is still alleged in the TAC.................................4

          2.   Theory No. 2 – i.e., plaintiffs had no idea ECJ was a sweetener but believed
               it was some type of ingredient healthier than sugar – was rejected by the
               Court but is still alleged in the TAC .........................................................5

          3.   Theory No. 3 – i.e., plaintiffs believed ECJ was a healthier form of sugar –
               is expressly disavowed in the TAC...........................................................6

     B.   No Sugar Added Claims/Website Statements.................................................6

     C.   Natural Claims ...........................................................................................7

     D.   Products Plaintiffs Did Not Purchase ...........................................................9

III. PLAINTIFFS IGNORE THE PRIOR DISMISSAL OF THEIR "STRICT LIABILITY"
     THEORY – A DECISION THE COURT GOT EXACTLY RIGHT ............................10

     A.   Plaintiffs' "Strict Liability" Theory Has Been Made Repeatedly By Plaintiffs And
          Rejected Repeatedly By The Court...............................................................10

     B.   Plaintiffs' "Strict Liability" Theory Is Not Separate From Deception ..............11

     C.   Plaintiffs' Strict Liability Theory Also Fails For Lack Of Causation ...............13

          1.   Plaintiffs were not injured "as a result of" any violation of the law...............14

          2.   Plaintiffs have suffered no cognizable injury under their strict liability
               theory ...................................................................................................15

IV.  NUMEROUS ADDITIONAL GROUNDS INDEPENDENTLY SUPPORT DISMISSAL .........18

     A.   The Reasonable Consumer Would Not Be Deceived In The Manner Alleged .................18

     B.   Plaintiffs' Claims Are Expressly Preempted .................................................19

     C.   The FDA Has Primary Jurisdiction Over Plaintiffs' ECJ Claims.......................20

     D.   Plaintiffs' Claims Are Impliedly Preempted..................................................23

     E.   The TAC Does Not Satisfy Fed. R. Civ. P. 9(b).............................................24

     F.   Plaintiffs May Not Sue For Non-California Sales ...........................................25

V.   PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND AGAIN............................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atl. Cleaners & Dyers v. United States*,
   286 U.S. 427 (1932) ............................................................................................ 17

*Brazil v. Dole Food Co., Inc.*,
   2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) .......................................... 11, 13

*Buckman v. Plaintiffs; Legal Comm.*,
   531 U.S. 341 (2001) ............................................................................................ 24

*Cytosport, Inc. v. Vital Pharm., Inc.*,
   894 F. Supp. 2d 1285 (E.D. Cal. 2012) ............................................................. 21

*Delacruz v. Cytosport, Inc.*,
   2012 WL 2563857 (N.D. Cal. June 28, 2012) .................................................. 19

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) .......................................................................... 11

*Ferretti v. Pfizer Inc.*,
   2012 WL 3638541 (N.D. Cal. Aug. 22, 2012) .................................................... 3

*Hairston v. South Beach Beverage Co., Inc.*,
   2012 WL 1893818 (C.D. Cal. May 18, 2012) ..................................................... 9

*Holistic Candlers & Consumers Assoc. v. Food & Drug Admin.*,
   664 F.3d 940 (D.C. Cir. 2012) ........................................................................... 21

*Hood v. Wholesoy*,
   2013 WL 3553979 (N.D. Cal. July 12, 2013) ................................................... 21

*In re Actimmune Mktg. Litig.*,
   2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) ............................... 11, 15, 16, 17

*In re Cheerios Marketing & Sales Practices Litigation*,
   2012 WL 3952069 (D.N.J. Sept. 10, 2012) ....................................................... 17

*In re Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145 (2010) ............................................................................ 14

*Katz v. Cal-W. Reconveyance Corp.*,
   2010 WL 3768049 (N.D. Cal. Sept. 21, 2010) ................................................... 3

*Kwikset v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ................................................................................. passim

ii

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ........................................................... 18

*Loreto v. Procter & Gamble Co.*,
   515 F. App'x 576 (6th Cir. 2013) ..................................................... 24

*Mason v. Coca-Cola Co.*,
   774 F. Supp. 2d 699 (D.N.J. 2011) .................................................. 19

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ........................................................... 25

*Miller v. Ghirardelli Chocolate Co.*,
   912 F. Supp. 2d 861 (N.D. Cal. 2012) ................................................ 9

*Park v. Welch Foods, Inc.*,
   2013 WL 5405318 (N.D. Cal. Sept. 26, 2013) ................................... 11

*Pelayo v. Nestlé U.S.A., Inc.*,
   2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) ....................................... 9

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013) ......................................................... 23

*Red v. Kroger Co.*,
   2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ..................................... 22

*Rooney v. Sierra Pac. Windows*,
   2011 WL 5034675 (N.D. Cal. Oct. 11, 2011) ..................................... 14

*Sevidal v. Target Corp.*,
   189 Cal. App. 4th 905 (2010) ........................................................... 14

*Stengel v. Medtronic Inc.*,
   704 F.3d 1224 (9th Cir. 2013) (en banc) ..................................... 23, 24

*Summit Tech., Inc. v. High-Line Med. Instruments Co.*,
   922 F. Supp. 299 (C.D. Cal. 1996) ................................................... 11

*Taradejna v. General Mills, Inc.*
   909 F. Supp. 2d 1128 (D. Minn. 2012) ......................................... 22, 23

*Trazo v. Nestlé USA, Inc.*,
   2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ..................................... 19

*Turek v. General Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) ...................................................... 19, 22

*United States v. Havelock*,
   664 F.3d 1284 (9th Cir. 2012) (en banc) ......................................... 17

iii

*Viggiano v. Hansen Natural Corp.*,
   2013 WL 2005430 (C.D. Cal. May 13, 2013) ................................................................ 9

*Warren v. Guelker*,
   29 F.3d 1386 (9th Cir. 1994) ................................................................................ 3

*Werdebaugh v. Blue Diamond Growers*,
   2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) ........................................... 21, 23, 24

*Williamson v. Reinalt-Thomas Corp.*,
   2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ............................................... 25

*Wilson v. Frito-Lay North America, Inc.*,
   -- F. Supp. 2d --, 2013 WL 5777920 (N.D. Cal. Oct. 24, 2013) .............................. passim

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ................................................................ 13

STATUTES

21 U.S.C. § 343-1 ................................................................................................ 19, 20

21 U.S.C. § 343 .................................................................................................... 19, 20

Health & Saf. Code § 110100 .......................................................................... 24

Health & Saf. Code § 110390, ....................................................................... 12

Health & Saf. Code § 110395 ......................................................................... 12

Health & Saf. Code § 110398 ......................................................................... 12

Health & Saf. Code § 110400 ......................................................................... 12

Health & Saf. Code § 110460 ......................................................................... 17

Health & Saf. Code § 110725,

Health & Saf. Code § 110760 ................................................................. 12, 13, 17

Health & Saf. Code § 110765 .................................................................. 12, 13

Health & Saf. Code § 110825 .................................................................. 12, 13

OTHER AUTHORITIES

21 C.F.R. § 10.115 ............................................................................... 20, 21, 22, 23

21 C.F.R. § 70.3 ........................................................................................... 12, 19

21 C.F.R. § 73.250 ................................................................................................ 19

iv

21 C.F.R. § 101.22 ................................................................................. 12, 18, 19

21 C.F.R. § 101.3,

21 C.F.R. § 101.4 .............................................................................................. 20

21 C.F.R. § 101.9 .............................................................................................. 20

21 C.F.R. § 102.5 .............................................................................................. 20

21 C.F.R. § 131.200 ......................................................................................... 20

21 C.F.R. § 101.60 ........................................................................................... 20

21 C.F.R. § 101.30 ........................................................................................... 12

21 C.F.R. § 120.1(a) ........................................................................................ 12

21 C.F.R. § 168.130(a) ................................................................................. 6, 20

21 C.F.R. § 172.165 ........................................................................................... 6

21 C.F.R. § 173.10 ............................................................................................. 6

21 C.F.R. § 173.45 ............................................................................................. 6

21 C.F.R. § 173.75 ............................................................................................. 6

21 C.F.R. § 184.1854(a) ..................................................................................... 6

Fed. R. Civ. Proc. 9(b) ............................................................................. 8, 24, 25

74 F.R. 2443 (Jan. 15, 2009) ........................................................................... 23

74 F.R. 2455 (Jan. 15, 2009) ........................................................................... 23

## I.    INTRODUCTION

On September 19, 2013, the Court issued its order dismissing the SAC (the "Order").  Dkt. 153.  In the Order, the Court held that plaintiffs failed to make plausible allegations of reliance and, therefore, lacked standing to assert their claims.  *Id*. at 9:12-15.  The Court provided plaintiffs with an opportunity to amend their complaint, and plaintiffs responded by turning their 41-page SAC into the 77-page TAC.  Dkt. 154.  Quantity, however, is no substitute for standing.  In blatant disregard of the Order, the TAC ignores the Court's holdings and asserts the same bankrupt theories.  This shows that plaintiffs are unable to address the deficiencies in their claims, and the TAC should be dismissed with prejudice.

**ECJ Claims.**  In its Order, the Court held that absent some factual allegation concerning what plaintiffs "believed ECJ to be if not a form of sugar or a juice containing some form of sugar," plaintiffs' alleged belief that Chobani's products contained "only natural sugars from milk and fruit and did not contain added sugars or syrups" is "simply not plausible."  Order, 13:10-14.  Plaintiffs requested leave to seek reconsideration of this ruling (Dkt. 137 at 5:20-7:13),[1] and their request was denied (Dkt. 144).  Apparently, plaintiffs decided to obtain that reconsideration briefing by re-pleading the same allegations in the TAC and planning to address the arguments again in response to this motion.  Such a strategy is improper and should not be countenanced.

Specifically, despite the Court's Order, plaintiffs maintain in the TAC that they did not know what evaporated cane juice was and still allege their belief that the products contained "only natural sugars from milk and fruit and did not contain added sugars or syrups."  TAC ¶¶ 187, 189, 191.  This is not the only ECJ theory rejected by the Order and re-alleged by plaintiffs.  The Order also rejected plaintiffs' theory that they "believed ECJ was some type of ingredient that was healthier than sugar," as "just a restatement" of the first implausible theory.  Order, 14:14-20.  Yet, the TAC makes that same allegation.  TAC ¶¶ 188, 190, 192-93.

**No Sugar Added Claims/Website Statements.**  The Order unequivocally rejected plaintiffs' effort to rely on Chobani's website given that plaintiffs did not allege "that they ever viewed Defendant's

---

[1] Plaintiffs sought leave to seek reconsideration of the Court's initial July 12, 2013 order on Chobani's motion to dismiss the SAC (Dkt. 125), which contained the same language quoted above regarding the implausibility of plaintiffs' allegations.  On July 25, 2013, the Court vacated its July 12 order (Dkt. 131) in anticipation of Chobani's motion for reconsideration, which was filed on August 21, 2013 (Dkt. 146).

website." Order, 15:10-12. Plaintiffs still do not allege that they ever viewed Chobani's website, and yet the TAC contains statements from the website. TAC ¶¶ 22, 23, 27, 29, 132, 133, 168, 169.

**Natural Claims.** Relying on the facts that "Defendant's labeling explicitly discloses that Defendant adds 'fruit or vegetable concentrate [*for color*]'" and that plaintiffs "read the label," the Order dismissed plaintiffs' natural claims. Order, 17:18-18:5 (emphasis in Order). Ignoring the Order, however, plaintiffs still pursue their color-based natural claims – even though all 11 products that are part of the natural claim "explicitly disclose[]" what ingredient is added "*[for color]*" (*see* TAC Table 1; ¶¶ 28, 167; Exs. 2-4, 6) and plaintiffs still allege they read the ingredient list (TAC ¶¶ 187, 189, 191).

**Products Plaintiffs Did Not Purchase.** Without standing to sue on the products they allegedly did purchase, plaintiffs have no standing as to other products. Order, 18:25-26. Moreover, the Order concluded that plaintiffs had not alleged "facts sufficient to show that the *products* Plaintiffs did purchase are 'substantially similar' to those that they did." Order, 19:3-4 (contrasting similarity of misrepresentations with similarity of products). Plaintiffs still do not allege the products are similar. Take, for example, the Chobani Champions products alleged in the TAC as being marketed to children and having different packaging. TAC Table 1, ¶ 21, Ex. 4. Yet, no plaintiff alleges she purchased a Champions product. *See* TAC Table 1, ¶¶ 187-192.

**Plaintiffs' Strict Liability & Illegal Product Theories.** In opposing Chobani's motion to dismiss the SAC, plaintiffs presented strict liability and illegal product theories, arguing that they do not need to allege reliance or deception as part of their unlawful claim. *See* Dkt. 42 at 1:6-10, 4:5-6, 5:12-15, 10:1-2. Relying on, among other things, Proposition 64 and *Kwikset*, the Court soundly and correctly rejected the theories. Order, 10:11-11:19, 16:15-17:5; *see also Wilson v. Frito-Lay North America, Inc.*, -- F. Supp. 2d --, 2013 WL 5777920, at *6, *8 (N.D. Cal. Oct. 24, 2013) (dismissing with prejudice plaintiffs' strict liability theory). Significantly, plaintiffs previously moved for leave to seek reconsideration of the Court's ruling (Dkt. 137 at 1:7-5:20), and after Chobani filed its opposition (Dkt. 142 at 2:3-6:6), the Court denied plaintiffs' motion (Dkt. 144). Nonetheless, the TAC persists in alleging the same strict liability and illegal product theories the Court rejected and then refused to reconsider. *See, e.g.,* TAC ¶¶ 6, 10, 13, 15, 36, 68-69, 76-77, 79-81, 83-84, 186, 209-10, 216, 224-25. The TAC cannot be used as a vehicle to obtain the reconsideration plaintiffs were previously denied.

The TAC should be dismissed with prejudice for these reasons, as well as the numerous independent grounds set forth below.  *See* Section IV *infra*.

## II.   THE COURT HAS CONSIDERED AND REJECTED THE ALLEGATIONS AND LEGAL THEORIES IN THE TAC

This Court is well-familiar with the pleading rules governing motions to dismiss.  Order, 6-11.  Because the TAC was filed after the Court's detailed and unambiguous Order, as well as after the Court's denial of plaintiffs' motion for leave to seek reconsideration (Dkt. 144), additional principles apply.

In short, plaintiffs are bound by the Order, were instructed to incorporate its holdings in any amended complaint (Order, 20:15-16), and are not at liberty to simply repeat allegations and theories that have been rejected by the Court.  *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (repleading dismissed claims and theories is sanctionable); *Katz v. Cal-W. Reconveyance Corp.*, 2010 WL 3768049 (N.D. Cal. Sept. 21, 2010) (dismissing claim with prejudice where plaintiff alleges no facts to cure deficiency identified by the court); *Ferretti v. Pfizer Inc.*, 2012 WL 3638541 (N.D. Cal. Aug. 22, 2012) (dismissing complaint without leave to amend because plaintiff failed to cure deficiencies identified in earlier iteration of complaint).

Throughout the TAC, however, plaintiffs do exactly what is prohibited.  Each of the theories and primary allegations already has been briefed by the parties and considered and rejected by the Court.  The Court got it exactly right on the SAC and should reaffirm its rulings in dismissing the TAC, and this time with prejudice.  *See, e.g.,* Order, 9:3-7.

### A.   ECJ Claims

Plaintiffs have done their absolute best to obfuscate the nature of their ECJ claims in their 77-page TAC.  Once the smoke clears, however, the analysis is straightforward.  Plaintiffs have not (and indeed could not) comply with the Court's Order and, therefore, the ECJ claims should be dismissed.

Between the Court's orders and the parties' briefing, three ECJ theories have emerged: (1) plaintiffs had no idea ECJ was a sweetener; (2) plaintiffs had no idea ECJ was a sweetener but believed it was "some type of ingredient that was healthier than sugar;" and (3) plaintiffs knew that ECJ was a sweetener but believed it was a healthier form of sugar than white sugar.  The Court has rejected the first two theories, and plaintiffs have disavowed the third.

1.  **Theory No. 1 – *i.e.*, plaintiffs had no idea ECJ was a sweetener – was rejected by the Court but is still alleged in the TAC**

**The Court has rejected plaintiffs' theory that they had no idea ECJ was a sweetener.**  In the SAC, plaintiffs' beliefs were alleged in paragraphs 9-95.  In relevant part, plaintiffs alleged that (i) they read the ingredient, "evaporated cane juice," (ii) they believed the products "contained only natural sugars from milk and fruit and did not contain added sugars or syrups," and (iii) had they known the products "contained added dried cane syrup," they "would not have purchased the Products."  SAC ¶¶ 93-95.  In moving to dismiss the SAC, Chobani argued, among other things, that having read the ingredient evaporated ***cane*** juice and knowing dried ***cane*** syrup was a form of sugar, plaintiffs' purported belief that the products "contained only natural sugars from milk and fruit and did not contain added sugars or syrups" was not plausible.  Dkt. 38 at 2:6-23, 8:22-10:14.  Having no response to the specific plausibility arguments made by Chobani, plaintiffs' opposition ignored the arguments and instead argued that plaintiffs are not required to allege reliance.  *See* Dkt. 42; Dkt. 46 at 2:15-3:1.  In its Order, the Court rejected the theory holding that:

> Absent *some* factual allegation concerning what Plaintiffs believed ECJ to be if not a form of sugar or a juice containing some form of sugar, Plaintiffs' allegations that they read the label, were aware that the Yogurts contained ECJ, and nevertheless concluded that the Yogurts contained "only natural sugars from milk and fruit and did not contain added sugars or syrups" is simply not plausible.

Order, 13:10-14 (emphasis in original).  In doing so, the Court noted that "the SAC suggests that Plaintiffs understood that dried cane *syrup* was a form of sugar, since Plaintiffs refer to sugar and dried cane syrup interchangeably throughout the SAC.  However, the SAC fails to explain how Plaintiffs could have realized dried cane syrup was a form of sugar, but nevertheless believed that evaporated cane *juice* was not." Order, 13:1-6 (quoting SAC ¶¶ 10, 55) (citations omitted) (emphasis in original).[2]

**The TAC still asserts the theory that plaintiffs had no idea ECJ was a sweetener**.  In the TAC, plaintiffs ignore the Court's Order and still allege that they did not know ECJ was a sweetener.  More specifically, each plaintiff still alleges that she believed the products "contained only natural sugars from milk and fruit and did not contain added sugars or syrups" (TAC ¶¶ 187, 189, 191) – *i.e.*, the precise

---

[2] Plaintiffs understood that the Court had rejected their ECJ theory, as they sought reconsideration of that ruling.  Dkt. 137 at 5:20-7:14.  Chobani opposed plaintiffs' request (Dkt. 142 at 6:7-7:10), and the Court denied plaintiffs' request to seek reconsideration.  Dkt. 144.

language already rejected by the Court.  Each plaintiff also alleges that because the word "sugar" was not listed, she believed that the products "did not contain added sugar as an ingredient."  TAC ¶¶ 188, 190, 192; *see also* TAC ¶ 193 (plaintiffs "did not realize this ingredient was sugar, let alone a refined sugar or an added sugar").  The TAC, however, is still missing any plausible *"allegation concerning what Plaintiffs believed ECJ to be if not a form of sugar or a juice containing some form of sugar,"* and still shows that plaintiffs read the label and were aware that the products contained ECJ.[3]  Order, 13:10-14.  As such, the theory is no better this time around and should be dismissed again.[4]

> **2.      Theory No. 2 – *i.e.*, plaintiffs had no idea ECJ was a sweetener but believed it was some type of ingredient healthier than sugar – was rejected by the Court but is still alleged in the TAC**

**The Court has rejected the "healthier than sugar" theory.**   In opposing Chobani's reconsideration motion, plaintiffs relied on the theory that they believed ECJ was an unknown ingredient that was healthier than sugar.  Dkt. 147 at 3.  The Court unambiguously rejected the theory:

> Although Plaintiffs' Opposition to the Motion for Reconsideration disavows the July 12 Order's "healthier than refined sugars and syrups" theory, the same Opposition simultaneously distances itself from this disavowal by claiming that the SAC adequately pleads reliance based on allegations that Plaintiffs "believed ECJ was some type of ingredient that was healthier than sugar."  This argument fails.  For one thing*, it is just a restatement of the theory that Plaintiffs believed the Yogurts contained "only natural sugars from milk and fruit," which the Court has already concluded is not plausible*.

---

[3] The TAC does contain allegations about other, less common forms of cane (TAC ¶ 128), but there is ***no allegation*** that these plaintiffs ever believed that is what "evaporated cane juice" referred to when they read the ingredient list.  The lack of such an allegation is not surprising.  When people read the word "cane" in an ingredient list, they do not think of bamboo or sorghum cane.  That's why plaintiffs' own lawyer responded in the following way to the Court's inquiries: "**The Court:** But what kind of cane is there other than sugar cane?  **Mr. Barrett:** *None*.  **The Court:** Candy Cane?  I mean, what are people thinking of when they're looking at cane juice?  Are they thinking asparagus?  I mean, I'm asking you, what are they thinking of when they see cane juice?  **Mr. Barrett:** Well, I don't know . . . what they are thinking of."  Dkt. 127 at 17:5-14 (emphasis added).

[4] Like in the SAC, "dried cane syrup" is referenced throughout the TAC.  *See* TAC ¶ 26 (the ingredient section fails to list "sugar" or "dried cane syrup" as an added ingredient); ¶ 27 (Chobani fails to disclose the fact that that "evaporated cane juice" is, in its ordinary and commonly understood terms, "sugar," and/or "dried cane syrup"); ¶ 75 (discussing "alternative term 'dried cane syrup'"); ¶ 138 (describing ECJ as sugar or dried cane syrup); ¶ 193 ("ECJ is really sugar or dried cane syrup").  Tellingly, plaintiffs removed the reference to "dried cane syrup" from the specific allegations regarding their purchases and instead discuss only "syrup."  *Compare* SAC ¶¶ 93-95 *with* TAC ¶¶ 187-192.  They cannot run so easily from the SAC's allegations, or the "dried cane syrup" allegations that appear elsewhere in the TAC.  Moreover, plaintiffs Kane and Booth submitted declarations in support of their preliminary injunction motion stating that they would not have made the purchases if they had known the products contained "dried cane syrup."  Dkt. 109-1, Dkt. 112.  The dilemma for plaintiffs is that they must allege "dried cane syrup" would have impacted their purchase decision, because that is the term used by the FDA in the draft guidance that plaintiffs are so eager to embrace.

Order at 14:14-22 (emphasis added).

**The TAC still alleges the "healthier than sugar" theory.** Ignoring the Court's Order, the TAC alleges that plaintiffs "believed ECJ was some type of ingredient that was healthier than sugar. . . ." TAC ¶ 193; *see also* TAC ¶ 188 ("because of the fact it used the term 'juice,' it sounded like something healthy"), ¶ 190 (same), ¶ 192 (same). This is precisely the same argument that plaintiffs advanced in opposing Chobani's reconsideration motion and should be rejected as "just a restatement" of the first theory the Court already (correctly) found to be implausible.[5]  Order, 14:18-20.

### 3. Theory No. 3 – *i.e.*, plaintiffs believed ECJ was a healthier form of sugar – is expressly disavowed in the TAC

Plaintiffs have consistently disavowed that they ever believed ECJ was a healthier form of sugar. *See* Dkt. 146 at 1:7-24, 5:7-6:6 (collecting plaintiffs' admissions, including *e.g.*, Dkt. 143 at 14:3-9 (plaintiffs' counsel confirming "[t]hat is not our theory")). The TAC unequivocally disavows the theory as well. TAC ¶ 193 ("Plaintiffs are not claiming that they believed ECJ was a 'healthy sugar' or 'healthier form of sugar'"); *id*. ("Plaintiffs' claim is . . . not a claim that ECJ is a healthier form of sugar"). As such, Chobani will not devote any further space to this theory.

In short, the TAC alleges two ECJ theories. Both theories have already been rejected by the Court. As such, the ECJ claims should be dismissed with prejudice.

### B. No Sugar Added Claims/Website Statements

In the Order, the Court held that "Plaintiffs have not sufficiently alleged reliance with respect to . . . Defendant's statements on its website . . . [because] Plaintiffs do not allege that they ever viewed Defendant's website." Order, 15:3-12. The TAC completely ignores this part of the Court's order. Plaintiffs still do not allege that they ever viewed the website (TAC ¶¶ 187-193), but nonetheless quote

---

[5] The TAC itself impeaches plaintiffs' reliance on the word "juice" as supporting an implied belief that evaporated cane juice is (a) healthy, and (b) not a sugar. For example, the TAC cites lists published by the National Institute of Health and the American Heart Association identifying "fruit *juice* concentrate" as an added sugar to watch out for. *See, e.g.*, TAC ¶¶ 96, 98. Moreover, the FDA itself uses the term "cane *juice*" and other similar terms for the juice of sugar cane, further confirming there is no plausible basis for believing "juice" is a healthy ingredient that contains no sugar. *See* 21 C.F.R. § 168.130(a) ("juice of sugarcane" and "such juice"); § 184.1854(a) ("Sucrose is obtained by crystallization from sugar cane . . . juice"); § 172.165 ("sugar cane juice" and "sugar juice"); § 173.10 ("cane sugar juice"); § 173.45 ("sugar juice" and "cane sugar juice"); and § 173.75 ("sugar juice").

and cite statements from Chobani's website (TAC ¶¶ 22, 23, 27, 29, 132, 133, 168, 169).  As such, plaintiffs' website/no sugar added allegations are improper and should be dismissed with prejudice. Order, 15:3-12; *see also Wilson*, 2013 WL 577920, at *5-6 (dismissing claims based on findings that website statements are not part of the label, and plaintiff never alleges she relied on the website).[6]

## C.   Natural Claims

In the TAC, plaintiffs allege that Chobani's "only natural ingredients" and "all natural" statements are misleading because some of the yogurt products contain ingredients added for color.  TAC ¶¶ 29, 167, Table 1, Exs. 2-4, 6.  The Court already rejected this theory:

> The Court also finds that Plaintiffs have failed to allege facts showing reliance upon Defendant's All Natural Representations.  Plaintiffs allege that Defendant stated, on the Yogurts' labeling and on its website, that the Yogurts contain "[o]nly natural ingredients" and are "all natural."  SAC ¶¶ 5-6, 12.  Plaintiffs allege that these statements were misleading because some of Defendant's Yogurts, specifically the pomegranate flavor, are colored "artificially" using "fruit or vegetable juice concentrate."  SAC ¶ 81.  Plaintiffs allege that they would not have purchased the Yogurts had they known the Yogurts "contained . . . unnatural ingredients."  SAC ¶¶ 93-95.
>
> As noted by Defendant, however, Defendant's labeling explicitly discloses that Defendant adds "fruit or vegetable juice concentrate [*for color*]."  *See* SAC ¶ 13 (emphasis added) (quoting label).  Plaintiffs purport to have read the label, including the ingredient list.  *See* SAC ¶¶ 93-95 (stating that each Plaintiff read "the labels on Defendant's [Yogurts] including" statements made in the ingredient lists).  Because the labels clearly disclosed the presence of fruit or vegetable juice concentrate in the Yogurts, it is not plausible that Plaintiffs believed, based on Defendant's "[o]nly natural ingredients" or "all natural" representations, that the Yogurts did not contain added fruit juice.  Consequently, Plaintiffs' allegations of reliance fail, and Plaintiffs' All Natural Claims are dismissed.

Order, 17:11-18:5 (emphasis in Order).

**The TAC relies on the same "natural" theory as the one already dismissed by the Court.** Plaintiffs' natural claim has not changed.  According to the TAC, Chobani's natural statements are misleading because they contain ingredients "added for color," namely (i) turmeric, and (ii) fruit and vegetable juice concentrate.  *See, e.g.*, TAC ¶¶ 29, 167, Ex. 6.  If there were any doubt, Table 1 in the TAC confirms the theory underlying plaintiffs' natural claim is the same as the theory in the SAC.  Table 1 identifies the 18 products at issue in this case.  Only 11 of those products have an ingredient added for

---

[6] Plaintiffs also ignore the portion of the Court's order regarding Facebook posts that post-date plaintiffs' purchases of the products.  In denying plaintiffs' request for judicial notice of such posts, the Court held that "Plaintiffs could not have relied on [such posts] in deciding to purchase Defendant's Yogurts." Order, 6 n.3.  Nonetheless, plaintiffs include one such post in the TAC.  TAC ¶ 132.

color, and plaintiffs have limited their natural claim to those 11 products.  Table 1, Ex. 6.  In doing so, plaintiffs have excluded from their natural claim any products that do not include an ingredient added for color.  It is therefore clear that plaintiffs are continuing to allege a color-based natural claim in this case.[7]

**The 11 products that are part of plaintiffs' natural claim all disclose that an ingredient has been added "for color."**  In dismissing plaintiffs' natural claims in the SAC, the Court relied on the fact that "Defendant's labeling explicitly discloses that Defendant adds 'fruit or vegetable juice concentrate [*for color*].'"  Order, 17:18-20 (quoting label) (emphasis in Order).  The same is true with respect to each product subject to plaintiffs' natural claim in the TAC.  *See* TAC ¶ 28 (ingredient list showing "Fruit and Vegetable Juice Concentrate *[For Color]*) (emphasis added); *id.* ¶ 167 ("the ingredient lists disclosed 'fruit or vegetable juice (for color)' or 'turmeric (for color)'"); *id.* Table 1, Exs. 2-4 (showing "representative" labels with "[for color]" on ingredient list), *id.*, Ex. 6 (showing that all 11 products identify an ingredient "for color").

**Plaintiffs still allege they read the ingredient lists, and the pertinent purchase allegations have not changed at all.**  In the SAC, plaintiffs' purchase allegations are contained in paragraphs 93-95.  Of particular importance in the SAC, plaintiffs "purport to have read the label, including the ingredient list."  Order, 17:20-18:1 (citing SAC ¶¶ 93-95).  The TAC is no different, as both complaints contain identical allegations that plaintiffs "read the labels," including the ingredient list, as well as their other allegations regarding the natural claim.  *Compare* SAC ¶ 93 *with* TAC ¶ 187 for plaintiff Kane; SAC ¶ 94 *with* TAC ¶ 189 for plaintiff Booth; SAC ¶ 95 *with* TAC ¶ 191 for plaintiff Rosales.

**Accordingly, based on the Order alone, plaintiffs lack standing to pursue the natural claims in the TAC.**  Having read the ingredient lists showing the product contains fruit and vegetable juice *[for color]* or turmeric *[for color]*, plaintiffs simply have no plausible basis to allege they were deceived by the

---

[7] Plaintiffs also include a passing reference to the fruit and vegetable juices being "highly processed unnatural substances far removed from the fruits or vegetables they were supposedly derived from and in fact were more akin to synthetic dyes like coal tar dyes."  TAC ¶ 161.  Plaintiffs provide no basis whatsoever for an allegation that fruit and vegetable juice is unnatural, or explain with specificity what they contend is unnatural about that particular ingredient.  This is not only significant given that the TAC's allegations must comply with Rule 9(b), but the Court can rest assured that if plaintiffs had any legitimate, good faith basis to claim the ingredient is unnatural, this theory would have been highlighted in a meaningful way from the beginning of the case.  Thus, as in the SAC, the only discernible natural claim in the TAC is that the products contain an ingredient "for color."

1   natural representations.  As such, the natural claims should be dismissed for the same reasons they were

2   previously dismissed, but this time with prejudice.  *See Pelayo v. Nestlé U.S.A., Inc.*, 2013 WL 5764644,

3   at *5 (C.D. Cal. Oct. 25, 2013) ("to the extent there is any ambiguity regarding the definition of 'All

4   Natural' with respect to each of the [products], it is clarified by the detailed information contained in the

5   ingredient list"); *see also Viggiano v. Hansen Natural Corp.*, 2013 WL 2005430, at *9 n.38 (C.D. Cal.

6   May 13, 2013); *Hairston v. South Beach Beverage Co., Inc*., 2012 WL 1893818, at *5 (C.D. Cal. May 18,

7   2012).

8          **D.     Products Plaintiffs Did Not Purchase**

9          In the Order, the Court held that plaintiffs "failed to adequately demonstrate standing with regard

10  to products they did not purchase."  Order, 18:8-9.  The Court held that the claims as to products-not-

11  purchased fail for all the same reasons as plaintiffs' other claims.  *Id*., 18:25-26.  The same result applies

12  to the TAC – *i.e.*, because plaintiffs have no standing as to the products they allegedly did purchase, they

13  surely have no standing to sue on other products.

14         The Court also held that plaintiffs lacked standing for products not purchased "for the additional

15  reason that Plaintiffs have failed to adequately allege substantial similarity."  *Id*., 18:26-27.  The Court

16  reasoned that "[a]lthough the alleged *misrepresentations* appear to be similar . . ., Plaintiffs do not allege

17  facts sufficient to show that the *products* Plaintiffs did not purchase are 'substantially similar' to those

18  that they did."  *Id*., 18:27-19:4 (emphasis in original).

19         The TAC, like the SAC before it, fails to allege facts sufficient to show that the *products* plaintiffs

20  did not purchase are "substantially similar" to those that they did.  The TAC makes a single conclusory

21  statement that "Substantially Similar Products are all Greek yogurt products like the Purchased products.

22  They differ primarily by flavoring or container style and are manufactured from the same primary

23  ingredients."  TAC ¶ 3, 162.  This allegation is insufficient.  For example, plaintiffs plead that Chobani®

24  Greek Yogurt Champions is "a line of yogurt designed to appeal to kids" (TAC ¶ 21), but nowhere do

25  plaintiffs offer any explanation of how this product allegedly targeted at kids and which plaintiffs never

26  bought, is similar to the products they did buy with different packaging and not alleged to be marketed to

27  kids.  *See, e.g., Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 870 (N.D. Cal. 2012) (no

28  standing where products not substantially similar because marketed to different audiences); *Wilson*, 2013

MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT; CASE NO. CV-12-02425-LHK

WL 5777920, *3-5 (dismissal with prejudice of product not purchased due to failure to plead with detail).

## III.   PLAINTIFFS IGNORE THE PRIOR DISMISSAL OF THEIR "STRICT LIABILITY" THEORY – A DECISION THE COURT GOT EXACTLY RIGHT

### A.   Plaintiffs' "Strict Liability" Theory Has Been Made Repeatedly By Plaintiffs And Rejected Repeatedly By The Court

In addition to the "deception" allegations addressed above, plaintiffs also repeat their alleged separate "strict liability" facet under the UCL "unlawful" cause of action. TAC, ¶ 6 ("'misbranding' – standing alone without . . . deception . . . or review of or reliance on the labels by Plaintiffs – gives rise to . . . strict liability"). This theory was alleged in the SAC (*see, e.g.*, Dkt. 35, ¶¶ 23, 87, 89, 91, 92, 111, 116) and permeated the multi-round proceedings assessing the legal sufficiency of the SAC.[8] In dismissing the SAC, the Court recognized that plaintiffs are making a "strict liability" argument, and, more to the point, flatly rejected it:

> Plaintiffs additionally argue that, because the claims on Defendant's website violate FDA labeling requirements, Defendant's Yogurts were misbranded, and thus, were not capable of being sold legally. Opp'n at 11 & n.6. Plaintiffs point out that the SAC alleges that they "would not have purchased Defendant's [Yogurts] had they known they were not capable of being legally sold or held," *id.* at 12 (quoting SAC ¶ 97), and argue that this suffices to establish reliance regardless of whether Plaintiffs viewed the alleged misrepresentations on Defendant's website or not, *id.* at 11–12. The Court disagrees.
>
> Plaintiffs' "illegal product" theory would **eviscerate the enhanced standing requirements** imposed by Proposition 64 and the California Supreme Court's decision in *Kwikset*. As explained in *Kwikset*, the voters enacted Proposition 64 in 2004 as a means of "confin[ing] standing to those actually injured by a defendant's business practices and [ ] curtail[ing] the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant." [Citation omitted]. Were the Court to hold that Plaintiffs, who never viewed the No Sugar Added Representations, have standing to bring claims based solely upon allegations that they would not have purchased a product that was misbranded, purchasers who never "viewed the defendant's advertising" or misleading labeling would have standing to sue. Such a holding is inconsistent with Proposition 64 and *Kwikset*.
>
> \* \* \*
>
> The requirements of Proposition 64 and *Kwikset* apply equally to Plaintiffs' ECJ and All Natural Claims. Thus, Plaintiffs' "illegal product" theory does not establish standing as to

---

[8] *See, e.g.*, **Pltfs Opp. to Mot. to Dismiss** (Dkt. 42) at 1:6-10, 4:5-6, 5:12-15; **Chobani's Reply to Mot. to Dismiss** (Dkt. 46) at 1:1-8, 3:20-4:20; **Mar. 28, 2013 Hrg.** (Dkt. 81) at 10:23-24, 11:10-12:9, 12:18-21, 15:13-24, 20:11-15; **July 12, 2013 (vacated) Order** (Dkt. 125) 4:16-23, 9:20-10:2, 13:26-14:17; **Pltfs Mot. for Leave to Reconsid**. (Dkt. 137) at 1:19-22, 1:23-2:1, 4:17-5:2, 5:10-12; **Chobani's Opp. to Mot. for Leave** (Dkt. 142) at 2:3-5:10; **Aug. 14, 2013 Order Denying Leave** (Dkt. 144); **July 11, 2013 Hrg.** (Dkt. 127) at 19:2-7, 31:23-32:19, 34:8-14; 41:22-43:6, 47:4-7, 49:15-50:17; and **July 25, 2013 Hrg.** (Dkt. 143) at 9:12-17, 9:12-17, 14:13-24, 15:6-25, 9:12-17, 14:25-15:4, 9:12-17, 15:4-6, 8-21, 9:12-17, 17:12-24, 9:12-17, 14:25-21:5, 9:12-17, 21:14-27:25.

those claims either.

Order, 16:15-17:5 & n.7; *see also id.* at 11:10-19 & n.4; *Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418, at *8-9 (N.D. Cal. Sept. 23, 2013).[9]

### B.   Plaintiffs' "Strict Liability" Theory Is Not Separate From Deception

The true underlying predicate for the "strict liability" theory is the exact same predicate as the deception theory: the yogurt bore allegedly "false or misleading" labels. TAC ¶ 11. That is fatal for plaintiffs, because what matters is the substance of the claim, not the form.

"A consumer's burden of pleading causation in a UCL action . . . hinge[s] on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010); *see also In re Actimmune Mktg. Litig.*, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010) (same). Thus, when a plaintiff alleges "unlawful" conduct on the basis of statutes that "simply codify prohibitions against certain specific types of misrepresentations," the claim must be treated as a fraud claim, not a freestanding unlawful-conduct claim. *Kwikset v. Super. Ct.*, 51 Cal. 4th 310, 326, n.9 (2011); *see also, e.g., Park v. Welch Foods, Inc.*, 2013 WL 5405318, at *4 (N.D. Cal. Sept. 26, 2013) (when "the crux of Plaintiffs' 'unlawful' UCL claim is premised on a uniform course of fraudulent conduct," the court should treat it as a fraud claim; *Wilson*, 2013 WL 5777920, *7-8).

*Actimmune* dismissed a "strict liability" claim based on reasoning directly applicable here:

> Because this case, as in *Tobacco II*, *Durell* and *Laster*, involved representations intended to persuade a consumer to purchase a product, the court holds that plaintiffs must plead actual reliance in order to establish their standing under the UCL. [¶] Accordingly, the elements that comprise plaintiffs' unlawful-prong claims are: (1) a violation of the FDCA and/or the Sherman Laws, namely off-label marketing of Actimmune; (2) actual reliance upon the off-label marketing; and (3) injury.

*Actimmune*, 2010 WL 3463491, at *8-9.

That settles the matter because each and every law that Chobani's labels are alleged to violate is, in fact, about just one thing – misleading product labels.

***FDCA regulations***.   Plaintiffs allege that Chobani violated numerous federal regulations. TAC ¶¶

---

[9] Plaintiffs' "strict liability" theory would also "eviscerate" the California legislature's decision to prohibit private rights of action under the Sherman Law (*Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 317 (C.D. Cal. 1996)), because plaintiffs' theory would effectively create such a cause of action requiring proof of a violation and nothing more.

31, 54 n.9, 58-62, 65, 72, 116-120, 137.  But as plaintiffs candidly acknowledge, the reason for these regulations is to avoid "false and misleading" labeling.  TAC ¶ 31.  For example, as plaintiffs allege, "'evaporated cane juice' is simply a 'false and misleading' way of describing sugar."  TAC ¶ 60.  In other words, these regulations "simply codify prohibitions against certain specific types of misrepresentations." *Kwikset*, 51 Cal. 4th 310, 326, n.9.[10]

*The Sherman Law*.  The same is true of the alleged violations of the Sherman Law.  TAC ¶¶ 6, 213.  Because those supposed violations turn on the Sherman Law's incorporation of the FDCA (TAC ¶¶ 6, 52, 70), they add nothing new.  Plaintiffs point, for example, to Health & Safety Code §§ 110390, 110395, 110398, and 110400 (TAC ¶¶ 170-172), which they describe as forbidding the "dissemina[tion of] false or misleading food advertisements or statements" (TAC ¶ 170); the manufacture, sale, or delivery of "falsely advertised food" (TAC ¶ 171); and the delivery of "food that has been falsely advertised" (TAC ¶ 17).  And plaintiffs allege that Chobani violated Health & Safety Code §§ 110725, 110755, 110760, 110765, 110770, and 110825 by manufacturing, holding, offering for sale, selling, and delivering "food that is misbranded."  TAC ¶¶ 77, 173-178.  But food is misbranded under the Sherman Law when it is packaged with "false or misleading" labels.  TAC ¶ 52.  Once again, all the claims are at base about alleged false advertising and misleading labels.

*The UCL/CLRA*.  Plaintiffs' "unlawful" allegations that Chobani's conduct violates the UCL and CLRA (TAC ¶¶ 214, 215, 236-264) are, on their face, claims alleging deceptive labels.

No matter how plaintiffs attempt to posture it, their single, overarching theory is that, "if a manufacturer, like Chobani, is going to make a claim on a food label, the label must meet certain legal requirements that . . . ensure that [consumers] are not misled."  TAC ¶ 15.  The TAC is thus one-dimensional: it is all misrepresentation, all the time.  And as this Court has already concluded in this case, because "the gravamen of Plaintiffs' claims under the UCL's unlawful, unfair, and fraud prongs is that

---

[10] None of the other federal regulations that plaintiffs cite provides any basis for concluding otherwise.  Plaintiffs point to 21 C.F.R. § 120.1(a) (TAC ¶¶ 61, 121-122), for example, which provides that a "juice sold as such or used as an ingredient in beverages" must meet certain processing requirements. But Chobani yogurt is sold as yogurt, not as a beverage. For the same reason, plaintiffs' citation to 21 C.F.R. § 101.30 (TAC Table 1), which requires beverage manufacturers to disclose the percentage of fruit or vegetable juice in their juice-containing beverages, is also irrelevant. Similarly, Plaintiffs cite 21 C.F.R. §§ 70.3 and 101.22 (TAC ¶ 34, 146-148, 152, 163-164), which merely "define what constitutes an 'artificial color' and 'artificial coloring.'" TAC ¶ 146.

1  Defendant's labeling was deceptive, . . . Plaintiffs must [plead with particularity and] demonstrate actual

2  reliance and economic injury." Order, 11:10-19.

3  **C. Plaintiffs' Strict Liability Theory Also Fails For Lack Of Causation**

4  Under plaintiffs' strict liability theory, there is no reliance on the allegedly mislabeling labels. As

5  a result, plaintiffs recognize that the alleged unlawful act could ***not*** cause any alleged economic damage

6  arising from any such non-existent reliance – *i.e.*, the alleged "premium price for inferior or undesirable

7  ingredients. TAC ¶ 134. Realizing their dilemma of not having an injury flowing from the alleged

8  unlawful act, plaintiffs hypothesize that they "have been unlawfully deprived of money in an illegal

9  transaction" because Chobani "sold them a worthless, illegal product that could not be legally sold or

10  possessed." TAC ¶ 77; *see also id.* ¶¶ 9, 209. And, plaintiffs contend, they have been "placed in legal

11  jeopardy due to the possession of Defendant's illegal and misbranded products," which "directly injured"

12  them in a manner that "goes beyond mere economic injury." *Id*. Thus, they contend, they are "entitled to

13  a refund of their purchase price" (TAC ¶ 10) on a "strict liability" basis (TAC ¶¶ 6, 80).

14  Plaintiffs' illegal-purchase-and-possession approach is flawed in every conceivable respect and

15  has already been rejected by the Court in this case and others. Plaintiffs are wrong to suppose that they

16  can prove that they suffered an injury "as a result of" Chobani's allegedly illegal conduct without proving

17  reliance. They are wrong to claim that they were injured within the meaning of Proposition 64 by being

18  "placed in legal jeopardy." And they are wrong that the Sherman Law makes it illegal for consumers to

19  purchase and possess misbranded food products in the first place. The California Supreme Court

20  considered and decisively rejected the same theory of liability in *Kwikset*.[11] The plaintiffs in that case

21

22  [11] In the TAC, plaintiffs once again try an end around Proposition 64 and *Kwikset* by alleging that
   Chobani breached some duty to disclose "the illegality of their misbranded products." TAC ¶ 81.

23  Plaintiffs tried this in the SAC, and the Court held that plaintiffs "have not alleged that Defendant had a
   duty to disclose or identified the basis for this duty." Order, 17 n.6. Chobani had no such affirmative

24  duty to plaintiffs, as this Court recognized in rejecting the "counterintuitive proposition that a product's
   label must disclose the fact of its own illegality." *Brazil v. Dole Food Co., Inc.* 2013 WL 5312418, at *10

25  (N.D. Cal. Sept. 23, 2013); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th Cir. 2012)
   (manufacturer's duty to disclose only triggered when there is an unreasonable safety hazard). Indeed, if

26  plaintiffs could dodge the pleading requirements with such a theory, every UCL claim (including the one
   in *Kwikset*) could be converted to a duty to disclose case. That is not the law. Further, even if it had a

27  duty to disclose, Chobani ***did*** disclose that ingredients were added for color, that the products contained
   ECJ, and the total grams of sugars – none of which is disputed. In any event, reliance is still required for

28  this fraud by omission theory, and plaintiffs cannot allege reliance.

advanced the position that California law made it "unlawful for any person, firm, corporation or association to sell or offer for sale in this State [specifically mislabeled] merchandise." 51 Cal. 4th at 317, n.1; *see also Open. Br. of Real Parties*, 2009 WL 2954740, at *18 (Cal. Aug. 11, 2009). The California Supreme Court held that such a theory was inadequate as a matter of law under Proposition 64 to constitute an actionable claim.[12]  This Court should do the same here.[13]

### 1.  Plaintiffs were not injured "*as a result of*" any violation of the law

Absent a showing of reliance, plaintiffs cannot allege they were injured "*as a result of*" buying allegedly falsely-labeled products.  As this Court has already observed, a UCL unlawful claim requires more than a "transactional nexus" between a purchase and a statutory violation; "there must be a causal connection between the harm suffered and the unlawful business activity." *Rooney v. Sierra Pac. Windows*, 2011 WL 5034675, at *9-12 (N.D. Cal. Oct. 11, 2011).  In applying that principle in another of the Barrett-Gore food false advertising cases against Frito-Lay, Judge Conti **recently dismissed with prejudice an identical "strict liability" theory**:

> Plaintiffs also fail to plead that they ever saw, read, or were even aware of any website before this suit. Plaintiffs admit this but claim it is irrelevant because, according to them, there is no requirement that a purchaser rely on a particular statement in order to bring a UCL unlawfulness claim based on that statement. Opp'n at 13. According to Plaintiffs, misbranded food products are unlawful by nature and therefore actionable. *Id*. Plaintiffs are wrong.  ***Holding for them on this point would be an affront to state and federal standing rules***.  Federal standing requires an injury, and California law requires UCL plaintiffs to plead injury and reliance – a legislative decision based specifically on curtailing lawsuits by plaintiffs who have had no contact with advertising, for example. [Citing *Kwikset*.]  Ignoring these basic legal rules would invite lawsuits by all manner of plaintiffs who could simply troll grocery stores and the Internet looking for any food product that might form the basis of a class-action lawsuit.  Surely that is not the point of these consumer protection laws.
>
> *    *    *
>
> The issue at this point is therefore whether Plaintiffs establish, at the pleading stage, that Defendant's alleged violation of labeling laws alone – separate from any alleged fraud or

---

[12] *See also Sevidal v. Target Corp.,* 189 Cal. App. 4th 905, 928, 923 n.6 (2010) (no UCL unlawful prong liability for violating a California statute making it "unlawful to sell or offer for sale" products with a false "made in the U.S.A." representation, absent purchasers at least viewing the representation).

[13] To be sure, before Proposition 64, a UCL "plaintiff needed only to show that the defendant engaged in a practice that was unlawful, unfair, or fraudulent and that the defendant may have acquired money or property by means of that practice." *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010). Proposition 64 did away with the excessively permissive regime. Proposition 64's express purpose was to "prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact." Prop. 64, § 1(c) ("Findings and Declarations of Purpose").

deception connected with Plaintiffs' reliance or injury – supports a UCL unlawfulness claim. On this point, the Court finds for Defendant. ***To the extent that Plaintiffs' first cause of action for UCL unlawfulness relies solely on Defendant's alleged violation of the Sherman Law or FDA regulations, that claim is DISMISSED WITH PREJUDICE because Plaintiffs fail to allege reliance under this theory.***

*Wilson*, 2013 WL 5777920, at*6, *8 (emphasis added); *see also* Order, 16:22-23 (if accepted, strict liability theory "would eviscerate the enhanced standing requirements imposed by Proposition 64").

As aptly put by the *Actimmune* court:

Establishing that a defendant violated a law only accomplishes ***half*** of a plaintiff's burden in a UCL unlawful prong action. If plaintiffs, here, can make out a violation of the FDCA or the Sherman Laws, plaintiffs would then be required to prove that they were injured "***as a result of***" defendants' law-violating conduct. In the context of the instant case, the "as a result of" language places the burden on plaintiffs to establish that they actually relied upon the representations delivered through defendants' off-label marketing.

*Actimmune*, 2010 WL 3463491, at *7 (emphasis added).

Significantly, "as a result of" causation means plaintiff must have "contact with the allegedly unlawful *activity*," not simply with the *defendant*. *Id*. Otherwise, the UCL would simply be used to bring "shakedown suits." *Id*.

Plaintiffs describe themselves as "unwitting[]" and "unaware" that the products that they were purchasing were "illegal" (TAC ¶¶ 77, 81) – as though to imply that they did, in fact, rely on an unspoken promise that "the product was [not] illegal" (TAC ¶ 6). Plaintiffs even go so far as to say that Chobani affirmatively "misled Plaintiffs to believe that the Chobani Yogurt products were legal to purchase and possess." TAC ¶ 77 (emphasis added). But if Plaintiffs were right that reliance is not a necessary element of causation for their unlawful-conduct claim (TAC ¶ 80), none of that would matter. Under plaintiffs' theory, any person with *full knowledge* of the supposed misbranding could purchase, consume, and enjoy the product, and then bring suit later for a refund under the UCL's unlawful prong by claiming to have been harmed by a product that was "legally worthless."

### 2. Plaintiffs have suffered no cognizable injury under their strict liability theory

For related reasons, plaintiffs also are wrong to suggest that they have suffered any cognizable injury within the meaning of Proposition 64 under their strict liability theory. That is so for at least three reasons: first, being placed in "legal jeopardy" is not the sort of economic injury sufficient to satisfy Proposition 64 or *Kwikset*; second, a misbranded yogurt is not "worthless" to those who purchase it; and

15

third, it is not illegal to possess a misbranded product.

To begin with, it is not a cognizable injury under Proposition 64 to be, in plaintiffs' words, "placed in legal jeopardy" or in an undesirable "legal position." TAC ¶¶ 81, 83. Rather, plaintiffs "must demonstrate some form of *economic* injury" to have standing under the UCL. *Kwikset*, 51 Cal. 4th at 323 (emphasis added). And to prove economic injury, a UCL plaintiff must show that he or she "(1) surrender[ed] in a transaction more, or acquire[d] in a transaction less, than he or she otherwise would have; (2) ha[d] a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id*. None of that comes close to describing being placed in an undesirable "legal position," which is, at most, a vague, noneconomic anxiety.[14]

Plaintiffs are also wrong to contend that a yogurt cup that they purchase is "worthless" to them if it is misbranded. It is beyond dispute that plaintiffs received a real, tangible benefit from their purchases – they obtained real products, which we can only assume that they ate (unless the purchases were made solely to gin up a lawsuit), and that they did so without any ill effects. Tellingly, plaintiffs do not allege that the yogurt caused them any actual physical injury because of misbranding (as might be the case if, for example, the yogurt had contained a major allergen that was not disclosed on the label and Plaintiffs got sick from it – which would, of course, require proof of reliance). Plaintiffs do not allege that the yogurt ***would have been different in any way*** if the labels bore the terms that plaintiffs prefer. They do not allege that they attempted to resell the yogurt and had to accept a lower price because the products were misbranded. And plaintiffs do not allege that Chobani was obligated by the Sherman Law (or any other law) to give them the supposedly worthless products for free. Plaintiffs voluntarily parted with their money in exchange for cups of yogurt that they wanted to buy, and that is precisely what they got.

As Judge Patel put it in *Actimmune*, plaintiffs who do not allege reliance will necessarily "have

---

[14] In any event, as a matter of pleading (and common sense), the TAC does not support the "illegal transaction/worthless product" form of injury. Rather, the TAC repeatedly alleges that plaintiffs' injury is a function of being deceived into buying products containing ingredients they specifically wanted to avoid, not that they were harmed in some non-specific way by purchasing products they later learned were "legally worthless" and sold via an "unlawful sale." TAC ¶¶ 38, 68; *see also id.* 2:4-6 and ¶¶ 3 (2:22-25), Table 1 (lists ECJ, natural ingredients as the "violation"), 9 (8:9-13), 15 (informed), 16, 26, 27, 29, 30, 32, 37, 38, 53-64, 68, 71 & n.10, 78, 196; *Wilson*, 2013 WL 5777920, at *8.

MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT; CASE NO. CV-12-02425-LHK

received exactly what they sought" and thus "[can]not possibly [prove that they] suffer[ed] any injury." 2010 WL 3463491, at *9 n.2.  Similarly, the District of New Jersey held in *In re Cheerios Marketing & Sales Practices Litigation*, 2012 WL 3952069 (D.N.J. Sept. 10, 2012), that the plaintiffs' allegation of "an apparent and somewhat arcane [alleged] violation of FDA food labeling regulations" did not render boxes of cereal "essentially worthless," because the violation had no bearing on the "crunchiness, taste, convenience," or other qualities that made the cereal worth purchasing in the first place. *Id.* at *11.

Finally, plaintiffs are wrong that it is "illegal" for them to "possess" (TAC ¶¶ 76, 83) a misbranded product in the first place; and hence, the thrust of their claim that possessing the yogurt put them in legal jeopardy is spurious.  The only statutory provision that plaintiffs cite for their illegal-possession theory is Health & Safety Code § 110760.  TAC ¶ 76, 83.  But that provision says not one word about consumer purchases or possession.  It says only that "[i]t is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded."

No plausible interpretation of those words makes it illegal for a consumer to purchase a misbranded product.  No plausible interpretation creates a cause of action against a consumer for having a misbranded yogurt in his lunchbox.  No plausible interpretation authorizes state health inspectors to search plaintiffs' home refrigerators and file criminal charges for any misbranded yogurt cups that they may find.  In short, there is no meaningful sense in which Section 110760 places plaintiffs or any other consumers in "legal jeopardy" for anything.[15]

---

[15] Section 110760's reference to "hold[ing]" misbranded products, does not help plaintiff. The catalogue of verbs appearing in § 110760 precisely tracks the supply chain: producers "manufacture" food products and "sell" and "deliver" them to distributors; the distributors then "hold" the products in inventory until requested by retailers, which "offer [them] for sale" to retail customers. It would make no sense to read the word "hold," sandwiched as it is between "deliver" and "offer for sale," to cover a consumer's possession after a retail sale has already taken place. *Cf. United States v. Havelock*, 664 F.3d 1284, 1289 (9th Cir. 2012) (en banc) (courts must consider "'the specific context in which [statutory] language is used'"). The statute on its face regulates the steps in the supply chain from the producer, through shippers, wholesalers, and retailers, on the way to the consumer's shopping cart; it does not forbid consumers to own, possess, or eat misbranded products after purchasing them in retail transactions. The California legislature's use of the word "hold" in other sections of the Sherman Law confirms this interpretation. *See Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932) ("identical words used in different parts of the same act" should be given "the same meaning"). The Sherman Law makes it unlawful, for example, for any "person [to] engage in the manufacture, packing, or holding of any processed food in this state unless the person has a valid registration from the department." Health & Saf. Code § 110460. The Sherman Law also makes it "unlawful for any person to transport, hold, or display any potentially hazardous refrigerated food at any temperature above 45 degrees Fahrenheit." *Id.* § 110960. On plaintiffs' presumed reading of the word "hold," consumers would have to register their home kitchens, office break

(cont'd)

---

17

In sum, the TAC collapses into a single theory – misleading product labels.  And after *Kwikset* there can no longer be any doubt that plaintiffs "must demonstrate actual reliance and economic injury," regardless of which UCL prong they invoke.  Order, 11.  That would be true even if it were illegal for a consumer to purchase and possess a misbranded product—which it assuredly is not.

## IV.    NUMEROUS ADDITIONAL GROUNDS INDEPENDENTLY SUPPORT DISMISSAL

### A.    The Reasonable Consumer Would Not Be Deceived In The Manner Alleged

Plaintiffs' false advertising claims are governed by the "reasonable consumer" test, requiring a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 508 (2003).  Plaintiffs' claims fall woefully short of this standard.

**The ECJ Claims**.  No reasonable consumer would be deceived into buying Chobani's products based on the ECJ theory asserted in this case.  *First*, nothing on the label states that the sugars in the product come only from milk and fruit.  *Second*, reasonable consumers (especially those concerned about the source of sugars) know that "cane" refers to a sweetener, just like plaintiffs did.  *See* Order, 13. *Third*, consumers who care about sugar want to know the *amount* of sugars in the product.  The Nutrition Facts Panel ("NFP") accurately discloses the grams of sugar in the product (*see, e.g.*, TAC ¶ 28, Exs. 1-3) and the reasonable consumer – especially one purchasing a product with 13-21 grams of sugars (*id*.) – would not have the heightened sensitivity to the source of sugars plaintiffs claim to have.  Significantly, in requiring manufacturers to include information in the NFP, FDA does *not* ask or allow companies to identify the types of sugars or state whether the sugars were "added."  *Fourth*, the reasonable consumer could not be deceived into thinking "juice" refers to a healthy ingredient that contains no sugar.

**The Natural Claims**.  Plaintiffs allege that Chobani's "natural" representations are deceptive because the products contain an ingredient "for color," even though "the ingredient lists disclosed 'fruit or vegetable juice (for color)' or 'turmeric (for color)'."  TAC ¶ 167.  *First*, consistent with FDA regulations (21 C.F.R. § 101.22(k)), Chobani's label affirmatively discloses that an ingredient is added "for color." TAC ¶ 167 (the ingredient lists disclosed "fruit or vegetable juice (for color)" or "turmeric (for color)").

---

rooms, and dormitory mini-fridges annually under § 110470, and pay at least a $300 registration fee, in order to "hold" any processed foods.

MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT; CASE NO. CV-12-02425-LHK

The reasonable consumer reading "for color" would know that the product contains an ingredient for color. Order, 17-18. **Second**, no reasonable consumer would read Chobani's natural statements and believe the product is free of natural ingredients for color. **Third**, while the TAC cites FDA statements in support of its natural allegations (*see* TAC ¶¶ 146-178), plaintiffs do not allege that the reasonable consumer would be aware of and rely on FDA regulations in purchasing the products and, in any event, a regulatory violation is not synonymous with false advertising. *See Delacruz v. Cytosport, Inc.*, 2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012) (alleged regulatory violation was insufficient to support claim for false advertising); *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 705 n.4 (D.N.J. 2011).

## B. Plaintiffs' Claims Are Expressly Preempted

The NLEA contains an express preemption provision, which provides no state "may **directly or indirectly** establish . . . **any requirement** for the labeling of food **of the type**" regulated by federal law "that is **not identical** to the [federal] requirement." 21 U.S.C. § 343-1 (emphasis added). The purpose of the express preemption was to create uniform national standards regarding the labeling of food. *See, e.g., Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011).[16] To the extent plaintiffs are imposing additional requirements as detailed below, the claims are expressly preempted. *Trazo v. Nestlé USA, Inc.*, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013).

*Color Additives*. Plaintiffs allege that Chobani's natural statements result in misbranding for those products that include color additives. TAC Table 1, ¶¶ 146-163. Color additives – both how they are defined and how their presence in products must be disclosed – are pervasively regulated under the FDCA. *See, e.g.*, 21 C.F.R. §§ 70.3(f), 101.22(a)(4), (c), (k). Those regulations, which are promulgated under 21 U.S.C. § 343(k), are covered by the NLEA preemption provision. 21 U.S.C. § 343-1(a)(2) & (a)(3). By this lawsuit, plaintiffs attempt to impose *non-identical requirements* for products with color additives, including that an ingredient added for color may not be referred to as the ingredient "[For Color]." TAC, ¶¶ 158-160.[17] As detailed in 21 C.F.R. §§ 73.250 and 101.22(k)(2), a fruit juice added for

---

[16] The "not identical" language means what it says. *See Turek*, 662 F.3d at 427 ("Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the test [for NLEA preemption]; identity is.").

[17] Plaintiff disingenuously quotes from an FDA warning letter (TAC ¶ 16), but that warning letter is not related to an ingredient added for color, but rather to the requirement to disclose the various juices in a mixture of juices in a juice beverage product.

color may be stated in exactly the manner as it is on Chobani's labels.

*Sweeteners*.   Plaintiffs allege that the manner in which Chobani declares an ingredient ("evaporated cane juice") results in misbranding because it does not disclose the presence of sugar from sugar cane.  *See, e.g.,* TAC ¶¶ 26, 38, 55, 58, 68, 85.[18]  Sweeteners – including how sweetener ingredients are defined, what types are allowed in yogurt, and how their presence in products (or lack thereof) must be disclosed on the label – are pervasively regulated under the FDCA.  *See, e.g.*, 21 C.F.R. §§ 101.3, 101.4, 101.9, 102.5, 131.200, 101.60, 168.130.  Those regulations, which are promulgated under 21 U.S.C. § 343(g), (i), (k) & (q), are covered by the NLEA's preemption provision.  21 U.S.C. § 343-1(a)(1), (a)(2) & (a)(4).  By this lawsuit, plaintiffs attempt to impose *non-identical requirements* under California consumer protection law for products with sweeteners, including requiring Chobani to disclose whether sweeteners in the product are "added" or naturally-occurring in other of the ingredients (*e.g.*, in the dairy or fruit ingredients).  *See, e.g.,* TAC ¶¶ 26, 38, 55, 58, 68, 85.  But the FDCA requires only that Chobani list a sweetener ingredient by its common or usual name (21 C.F.R. § 101.4(a)(1)) and that the total grams of "sugars" per serving be stated in the Nutrition Facts box (21 C.F.R. § 101.9(c)(6)(ii)).  Significantly, in requiring food manufacturers to list the amount of "sugars," the FDA requires manufacturers to provide a *single* number representing the "sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)," and does not allow food companies to break down the sugars into type or whether they are naturally-occurring.  *Id*.  But that is just the information plaintiffs demand in this lawsuit.  Likewise, plaintiffs rely on nonbinding draft guidance (in violation of 21 C.F.R. § 10.115) (TAC ¶¶ 31, 61), to impose requirements on ingredient names that are not identical to the FDCA.  That, too, is expressly preempted under 21 U.S.C. § 343-1.[19]

**C.   The FDA Has Primary Jurisdiction Over Plaintiffs' ECJ Claims**

Chobani recognizes that this Court previously has declined to apply the primary jurisdiction

---

[18] In another argument that underscores why profit-motivated class action lawyers should not be put in charge of food labeling policy, plaintiffs allege that the ingredient that Chobani calls evaporated cane juice must be called "sugar" under 21 C.F.R. § 101.4(b)(20).  TAC ¶¶ 72-74.  Plaintiffs do not seem to comprehend that their argument entirely undermines their other (primary) argument that the FDA's nonbinding draft guidance requires the same ingredient to be called "dried cane syrup." TAC ¶ 61.

[19] Though plaintiffs repeatedly allege that the Sherman Law incorporates portions of the FDCA (*see, e.g.,* TAC, ¶ 6), they never allege that the Sherman Law incorporates FDA *guidance*, let alone the nonbinding, draft guidance that plaintiffs rely on (TAC, ¶ 61), nor could they.

MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT; CASE NO. CV-12-02425-LHK

doctrine to ECJ claims.  *See Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013).  Chobani respectfully submits, however, that largely due to space constraints, the Court has never ruled with the benefit of having received a full treatment of the issue.  *See, e.g., Werdebaugh*, Dkt. 46 at 13-14 (defendants' motion to dismiss *not* citing 21 C.F.R. § 10.115, explaining FDA's enforcement scheme, or quoting the conspicuous text box on the draft guidance stating that it is not the view of FDA).  The Court received a complete analysis of the issue in Chobani's motion for reconsideration (Dkt. 146), but the Court granted that motion on standing grounds and did not reach the primary jurisdiction question.  Unfortunately, Chobani does not have the space in this motion to address primary jurisdiction in the same level of detail as it did in the reconsideration motion.  But a short recap of that briefing is very telling.

**1. As Judge Rogers recognized, "FDA has not yet set a uniform enforcement standard" regarding ECJ.**  In *Hood*, Judge Rogers determined that the draft guidance "indicates to the Court that the FDA's position is not settled.  So far as it appears, FDA has not yet set a uniform enforcement standard."  *Hood v. Wholesoy*, 2013 WL 3553979, at *5 (W.D. Cal. July 12, 2013).  In contrast, this Court has found that "the 2009 Guidance 'advis[ing] the regulated industry *of the FDA's view* that the term 'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup' *represents the viewpoint of the FDA*."  *Werdebaugh*, at *8 (emphasis added); *see id*. at *11.  But, the guidance contains a bright yellow box stating it is *not* even FDA's "thinking" on ECJ, let alone the agency's viewpoint:

> This draft guidance, when finalized, will represent the Food and Drug Administration's (FDA's) current thinking on this topic. It does not create or confer any rights for or on any person and does not operate to bind FDA or the public. You can use an alternative approach if the approach satisfies the requirements of the applicable statutes and regulations. If you want to discuss an alternative approach, contact the FDA staff responsible for implementing this guidance. If you cannot identify the appropriate FDA staff, call the telephone number listed on the title page of this guidance.

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm181491.htm .  As such, the Court relied on language from the draft guidance *that according to the guidance itself and section 10.115 only applies after the guidance is finalized*.[20]

---

[20] The same is true with respect to FDA warning letters.  *See, e.g., Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 943-4 (D.C. Cir. 2012) (no cause of action based on warning letters because they are not final); *see also Cytosport, Inc. v. Vital Pharm., Inc.*, 894 F. Supp. 2d 1285, 1296 (e.D. Cal. 2012)  ("FDA warning letter is not final a decision by the FDA" and concluding warning letter was insufficient evidence to avoid summary judgment).  *See also* Dkt. 87, 89.

**2.   Judicial resolution of ECJ claims is incompatible with a national uniform labeling standard.**   In enacting federal food labeling laws, "Congress set out to create uniform national standards regarding the labeling of food and to prevent states from adopting inconsistent requirements with respect to the labeling of nutrients."   *See, e.g., Red v. Kroger Co.*, 2010 WL 4262037, at *3 (C.D. Cal. Sept. 2, 2010); *Turek*, 662 F. 3d at 427 ("It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide . . . [as m]anufacturers might have to print 50 different labels").   As *Taradejna v. General Mills, Inc.* put it:

> The Agency's unique role in ensuring such consistency and uniformity is particularly significant here, as several recently-filed yogurt lawsuits throughout the country involve the same or similar issues as found in the instant suit.   The increasing volume of this litigation creates the potential for inconsistent judicial rulings.   This underscores the importance of promoting uniformity by referral of this matter to the FDA.

909 F. Supp 2d 1128, 1135 (D. Minn. 2012) (emphasis added).

These principles apply with particular force to ECJ given the number of ECJ lawsuits.[21]   One court could decide that under California law "evaporated cane juice" is the common or usual name of the ingredient, another court could decide that under Florida law "dried cane syrup" is the common or usual name, and some other court under some other state law could decide that "natural cane sugar" is the common or usual name.   The result: manufacturers would have to print different labels for different states, not to mention the impossible situation they would face when courts reach different conclusions on the same state's law, as they undoubtedly will do.

**3.   The FDA should interpret and apply its technical and integrated regulations to decide the "rules" for ECJ.**   Adjudication of an ECJ claim will require, among other things, a decision whether identification of ECJ on approximately 9,000 products satisfies *the FDA's interpretation* of "common usage."   The FDA is uniquely positioned to decide what its term "common usage" should mean in this context and to apply that interpretation to ECJ.

**4.   The Court should respect FDA's carefully crafted enforcement scheme.**   In its reconsideration motion, Chobani identified the important goals underlying FDA's enforcement scheme set forth in 21 C.F.R. § 10.115.   Dkt. 146 at 3-4, 12-14.   In response, plaintiffs never even mentioned

---

[21] By last count, 39 lawsuits had been filed regarding ECJ – with many more expected given that approximately 9,000 products use the ingredient.

section 10.115, let alone reconciled their civil lawsuit with the enforcement scheme adopted by FDA. Principles of express preemption prohibit plaintiffs from being able to do so.[22]

For these reasons, ECJ claims should be dismissed under the primary jurisdiction doctrine.[23]

### D. Plaintiffs' Claims Are Impliedly Preempted

Chobani acknowledges that this Court previously has concluded that other similarly-pled false advertising claims fit through the "narrow gap" to escape FDCA preemption under *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013). *See Werdebaugh*, 2013 WL 5487236, at *7-8. In doing so, the Court relied on allegations that the conduct violates California's Sherman Law:

> But, unlike the plaintiff in *Perez*, Werdebaugh is not suing *because* Defendant's conduct violates the FDCA. Rather, Werdebaugh is suing because Defendant's conduct allegedly violates California's Sherman Law, which could have imposed the exact same regulations even if the FDCA were never passed. Because Werdebaugh's claims do not exist "solely by virtue of the FDCA," they successfully squeeze through the narrow gap established by *Perez*.

*Id.* at *7. Because the Court relied on the Sherman Law in rejecting implied preemption on similar claims in *Werdebaugh* – and because Chobani previously submitted a separate, stand-alone brief on implied preemption (Dkt. 97) – Chobani will limit its argument here to the Sherman Law issue.

*First*, the preexisting part. As explained in *Stengel v. Medtronic Inc.*, 704 F.3d 1224 (9th Cir. 2013) (en banc), preemption can be avoided only if a "claim is grounded in a traditional category of state law. . . that **predated the federal enactments in question**, and…the claim therefore does not exist solely

---

[22] Specifically, in asking this Court to rely upon and enforce draft guidance and warning letters in violation of section 10.115, plaintiffs are seeking to impose impermissible non-identical requirements. They want to enforce **non-binding** statements of FDA, while at the same time ignoring a **binding** regulation (section 10.115). They want to force upon the Court a **draft, non-binding** interpretation of FDA's common and usual name regulation, while at the same time ignoring FDA's **final, binding** interpretation of its enforcement regulations.

[23] Plaintiffs also allege, as an "alternative theory," that Chobani's use of ECJ violates the standard of identity for yogurt. TAC ¶¶ 134-139. It fails. First, the Order rejected this theory. Order, 2 (defining "ECJ Claims" to include allegations that "because the Standard of Identity for Yogurt, which governs when a product may be called a "yogurt," does not list ECJ as an authorized sweetener, Defendant was prohibited from marketing its products as yogurt") & *id.*, 12-14 (dismissing "ECJ Claims"). Second, the FDA has proposed a new standard of identity for yogurt that allows *any* "safe and suitable sweetening ingredients." 74 F.R. 2443, 2455 (Jan. 15, 2009). ECJ is unquestionably a "safe and suitable sweetening ingredient." Significantly, the FDA has also suggested that it will not enforce violations of the current standard of identity (relied on by plaintiffs) if companies comply with the proposed one (in which ECJ is unquestionably permitted). *Id.* For good reason, the primary jurisdiction doctrine has been applied – and should be applied – in this context. *See Taradejna*, 909 F. Supp. 2d at 1135. In any event, ECJ is in the fruit on the bottom, not the yogurt. *See, e.g.*, TAC ¶28 (ECJ in "fruit on the bottom").

by virtue of those enactments." *Id.* at 1235 (emphasis added) (*quoting Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 (2001). Here, there is no basis to say that California **would** have passed the identical law in an FDCA-less world, and that California theoretically "**could** have" done so does not establish an independent state-law duty **preexisting the FDCA**. The Sherman Law provisions at issue came **after** the FDCA and, therefore, clearly do not constitute **preexisting**, independent state law duties.

**Second**, the independent part. By any measure, the Sherman Law is **not** independent of the FDCA. The Sherman Law incorporates the FDCA, such that if the FDA were to rescind or amend its regulations, the Sherman Law would change too. Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to [federal statutes governing food labeling] in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state"). This just confirms that any claim brought to enforce the Sherman Law "'originates from, is governed by, and terminates according to federal law.'" *Stengel*, 704 F.3d at 1230. As the Sixth Circuit recently held:

> The statute's public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance seeks to enforce the FDCA. Under principles of "implied preemption," therefore, private litigants may not "bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA."

*Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 579, at *2 (6th Cir. 2013).

**Third**, the "narrow" part. Under the Court's ruling in *Werdebaugh*, the "narrow" gap would become a gaping hole. It is hard to imagine what state law claim would **not** fit within the narrow gap. Indeed, if one doesn't like how the FDA enforces the FDCA, all one would have to do is to pass a state statute that facially "mirrors" the FDCA, and then interpret that statute to mean whatever a state legislature, or a court, or a jury, or a plaintiff's lawyer might wish it to mean. So much for the FDCA's national system of food labeling.

## E.     The TAC Does Not Satisfy Fed. R. Civ. P. 9(b)

The Court is well aware of the stringent pleading standard imposed by Rule 9(b). *See* Order, 8:11-24. And, of course, Rule 9(b) applies to the TAC in whole because the "gravamen of plaintiffs' claims under the UCL's unlawful, unfair and fraud prongs is that Defendant's labeling was deceptive." *Id.*, 11:10-11 (citing SAC ¶¶ 71, 84-85, 109-119, 124, 132); *compare* SAC ¶ 71 *with* TAC ¶ 134; *compare*

MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT; CASE NO. CV-12-02425-LHK

SAC ¶¶ 109-119 *with* TAC ¶¶ 207, 208, 211-219; *compare* SAC ¶ 124 *with* TAC ¶ 224; *compare* SAC ¶132 *with* TAC ¶ 232; *see also* Order, 12 n.4 ("Plaintiffs must satisfy the heightened pleading standards for fraud under Rule 9(b)" because they "allege that Defendant's representations on its labeling and in its advertising were 'misleading and deceptive,' 'untrue,' 'misrepresented' the truth, and 'constitut[ed] . . . fraud[].') (citing SAC ¶¶ 137, 145, 139, 147, 161); *compare* SAC ¶ 137 *with* TAC ¶ 237; *compare* SAC ¶145 *with* TAC ¶ 245; *compare* SAC ¶ 139 *with* TAC ¶ 239; *compare* SAC ¶ 147 *with* TAC ¶ 247.

As with the SAC, the TAC fails to satisfy the heightened pleading standard for the same reasons. *See, e.g.,* Order, 12:16-17 (plaintiffs "have not alleged facts sufficient  . . . for 9(b)"); *id.*, 14:23-24 (same).  For example, plaintiffs still fail to allege plausible facts sufficient to show that they reasonably relied on the term "natural" to mean no ingredient was added for color, but read the label disclosing ingredients added "for color."  TAC ¶¶ 167, 187, 189, 191.

### F.     Plaintiffs May Not Sue For Non-California Sales

"With regard to the UCL, FAL, and CLRA, non-California residents' claims are not supported 'where none of the alleged misconduct or injuries occurred in California.'"  *Wilson*, 2013 WL 5777920, at *10.  Chobani is a New York corporation (TAC ¶ 42) and no nexus between non-California putative class members and California is alleged.  *See Wilson*, WL 5777920, at *10; *cf. Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) (because "the law of multiple jurisdictions" would have to apply "variances in state law overwhelm common issues and preclude predominance" for a nationwide class").

## V.     PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND AGAIN

For these reasons, Chobani respectfully requests that the Court dismiss the TAC with prejudice. *See e.g., Williamson v. Reinalt-Thomas Corp.*, 2012 WL 1438812, at *15-16 (N.D. Cal. Apr. 25, 2012).

DATED:  October 28, 2013                              MAYER BROWN LLP

                                                      By:_____/s/ Dale J. Giali_____

                                                      Attorneys for Defendant CHOBANI, INC.