UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KATIE KANE, *et al.*, individuals, on behalf of themselves and all others similarly situated, | Case No.: 12-CV-02425-LHK |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT WITH PREJUDICE |
| v. | |
| CHOBANI, INC., | |
| Defendant. | |

Before the Court is Defendant Chobani, Inc.'s ("Defendant" or "Chobani") Motion to Dismiss Plaintiffs' Third Amended Complaint. ECF No. 158. Plaintiffs Katie Kane, Arianna Rosales, and Darla Booth (collectively "Plaintiffs") oppose the motion, ECF No. 160. Defendant has replied. ECF No. 161. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's Motion to Dismiss the Third Amended Complaint with prejudice.

I.      BACKGROUND

        A.      Plaintiffs' Factual Allegations

        Plaintiffs allege that they purchased Defendant's yogurt products. ECF No. 154, ¶ 2 (Third Amended Complaint, hereinafter "TAC"). Specifically, Plaintiffs allege that they purchased the

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1  pomegranate, lemon, peach, vanilla, strawberry, and blueberry flavors of Defendant's Chobani

2  Greek Yogurt. TAC ¶ 2. Plaintiffs contend that Defendant's "Chobani Greek Yogurt" and

3  "Chobani Greek Yogurt Champions" (collectively, "Yogurts") are mislabeled. TAC ¶¶ 3-5.

4  Plaintiffs do not allege that they purchased any flavor of Chobani Greek Yogurt Champions.[1]

5  Plaintiffs' mislabeling allegations fall into two categories:

6      *Evaporated Cane Juice ("ECJ") Allegations* - Plaintiffs allege that Defendant's labels refer

7  to the sweetener in Defendant's Yogurts as "evaporated cane juice" ("ECJ"). TAC ¶ 19. Plaintiffs

8  contend that ECJ is essentially just "sugar" or "dried cane syrup." TAC ¶¶ 26-27. Plaintiffs allege

9  that the use of the term ECJ to describe this ingredient is false and misleading and conceals the fact

10  that the sweetening ingredient is "sugar" or "dried cane syrup." TAC ¶¶ 54-60. Plaintiffs further

11  allege that Defendant's use of the term ECJ violates various Food and Drug Administration

12  ("FDA") regulations requiring manufacturers to refer to ingredients in food products by their

13  "common and usual names." TAC ¶ 71 (citing 21 C.F.R. §§ 101.3, 101.4, 102.5); *id.* ¶ 61 (FDA

14  Draft Guidance for Industry: Ingredients Declared as Evaporated Cane Juice) (stating that it is the

15  "FDA's view that the term 'evaporated cane juice' is not the common or usual name of any type of

16  sweetener"). Plaintiffs further allege that because the Standard of Identity for Yogurt, which

17  governs when a product may be called a "yogurt," does not list ECJ as an authorized sweetener,

18  Defendant was prohibited from marketing its products as yogurt. TAC ¶¶ 136-137 (citing 21

19  C.F.R. § 131.200 ("Standard of Identity for Yogurt")). To the extent Plaintiffs' claims are based on

20  Defendant's use of the term ECJ on the Yogurts' labeling, the Court refers to these claims

21  generally as the "ECJ Claims."

22      *All Natural Claims* - Plaintiffs also allege that Defendant has falsely stated that its Yogurts

23  contain "[o]nly natural ingredients" and are "all natural." TAC ¶¶ 5, 9. The Court refers to

24  Defendant's representations regarding the Yogurts' natural quality and use of natural ingredients as

25  the "All Natural Representations." Plaintiffs allege that these representations appeared on the

26

27  ───────────────

[1] Plaintiffs do not allege that they purchased the following flavors of Defendant's Chobani
28  Yogurt: apple-cinnamon, black-cherry, blood-orange, mango, passion fruit, pineapple, raspberry, and strawberry banana. *See* TAC ¶ 5, Table 1.

Case No.: 12-CV-02425-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

United States District Court
For the Northern District of California

labeling for Defendant's Yogurts and on Defendant's website. TAC ¶ 22. Plaintiffs allege that

these representations were false and misleading because the Yogurts include artificial colors. TAC

¶ 140. Because "fruit and vegetable juice (for color)" and "turmeric (for color)" are the only

unnatural ingredients that Plaintiffs have specifically identified from Defendant's labels, *see id.* ¶¶

149, 167, Plaintiffs' claims alleging that the Yogurts included unnatural ingredients are limited to

these ingredients. Plaintiffs further allege that the All Natural Representations were "false and

misleading" because "the fruit and vegetable juices . . . were highly processed unnatural substances

far removed from the fruits or vegetables they were supposedly derived from and in fact were more

akin to synthetic dyes like coal tar dyes." TAC ¶ 161. The Court refers to Plaintiffs' claims based

on the All Natural Representations as the "All Natural Claims."

Plaintiffs allege that they each "read the labels on Defendant's [Yogurts], including the

[i]ngredient, 'evaporated cane juice' and the '[a]ll [n]atural,' '[a]ll [n]atural [i]ngredients' and/or

'[o]nly [n]atural [i]ngredients' claims on the labels, before purchasing them." TAC ¶¶ 187, 189,

191. Plaintiffs allege that they "believed Defendant's [Yogurts] contained only natural sugars from

milk and fruit and did not contain added sugars or syrups" and that the Yogurts "contained only

natural ingredients." *Id.* Plaintiffs also allege that, "[h]ad Plaintiff[s] known Defendant's [Yogurts]

that [they] purchased contained added sugar or syrup and unnatural and artificial ingredients, [they]

would not have purchased" them. *Id.* Plaintiffs further allege that they "would not have purchased

Defendant's [Yogurts] had they known they were not capable of being legally sold or held." TAC ¶

195.

Plaintiffs allege six causes of action. Plaintiffs' first cause of action is for violation of the

unlawful prong of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*,

predicated on violations of: (1) the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code

§§ 17500 *et seq.*; (2) the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et*

*seq.*; and (3) California's Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health &

Safety Code §§ 109875 *et seq.* TAC ¶¶ 213-215. The Sherman Law incorporates "[a]ll [federal]

food labeling regulations and any amendments to those regulations." Cal. Health & Safety Code §

110100(a). Plaintiffs also allege causes of action for: (1) violation of the UCL's unfair prong, TAC

3

¶¶ 220-228; (2) violation of the UCL's fraud prong, TAC ¶¶ 229-235; (3) violation of the FAL because Defendant's labeling and advertising are "misleading and deceptive," TAC ¶¶ 236-243; (4) violation of the FAL because Defendant's advertising is "untrue," TAC ¶¶ 244-251; and (5) violation of the CLRA, TAC ¶¶ 252-264.

### B.      Procedural History

#### 1.      Plaintiff's Amendment of Complaints

Plaintiffs filed their original Complaint in this case on May 14, 2012. ECF No. 1. On August 3, 2012, the parties stipulated that Plaintiffs would file a First Amended Complaint. ECF No. 12. Plaintiffs filed their First Amended Complaint on August 30, 2012. ECF No. 14. On October 2, 2012, the Court granted the parties' stipulation to allow Plaintiffs to file a Second Amended Complaint ("SAC"). ECF No. 34. Plaintiffs filed their SAC on October 10, 2012. ECF No. 35. Plaintiffs filed their Third Amended Complaint ("TAC") on October 10, 2013. ECF No. 154.

#### 2.      Plaintiffs' Motion for a Preliminary Injunction

On September 10, 2012, Plaintiffs filed a Motion for a Preliminary Injunction. ECF No. 16. Plaintiffs withdrew this motion on November 1, 2012. ECF No. 37. Three months later, on February 5, 2013, Plaintiffs filed another Motion for a Preliminary Injunction. ECF No. 44. Plaintiffs sought to: (1) enjoin Defendant "from selling, advertising or distributing Chobani Greek Yogurt Products as currently labeled and formulated," and (2) require Defendant "to remove and recall all Chobani Greek Yogurt products, as currently labeled and formulated, from its distributors and retailers." ECF No. 44-25 at 1. On April 15, 2013, Defendant filed an Opposition. ECF No. 86. On June 14, 2013, Plaintiffs filed a Reply. ECF No. 103. The Court held a hearing on the motion on July 11, 2013. ECF No. 127. The Court issued an Order denying the motion on July 15, 2013. ECF No. 126.

#### 3.      Defendant's Motion to Disqualify Plaintiffs' Counsel and Expert

On March 5, 2013, Defendant filed a motion to: (1) Disqualify Plaintiffs' Counsel; (2) Bar Plaintiffs' Counsel from Discussing Issues in this Case with Replacement Counsel; and (3) Bar EAS Consulting Group LLC from Discussing Issues in this Case with Plaintiffs' Counsel or

4

**United States District Court**
For the Northern District of California

1    Replacement Counsel. ECF No. 64. On April 15, 2013, Plaintiffs' Counsel filed an Opposition.

2    ECF No. 84. On June 14, 2013, Chobani filed a Reply. ECF No. 110. A hearing was held on the

3    motion on July 25, 2013. ECF No. 143. On July 29, 2013, Plaintiffs filed a Motion to Stay

4    Decision on the Motion to Disqualify and for Leave to Conduct Discovery. ECF No. 133. On July

5    30, 2013, counsel for Chobani sent an e-mail to the Courtroom Deputy, objecting to the Motion to

6    Stay, and on July 31, 2013, Plaintiffs' Counsel sent a reply by e-mail to the Courtroom Deputy. On

7    August 1, 2013, Plaintiffs' Counsel filed a Notice of Withdrawal of the Motion to Stay. ECF No.

8    139. Also on August 1, 2013, Plaintiffs filed another Motion to Stay Decision and for Leave to

9    Conduct Discovery. ECF No. 140. On August 2, 2013, the Court issued an Order granting in part

10   and denying in part Chobani's Motion to Disqualify, and denying as moot Plaintiffs' Second

11   Motion to Stay. ECF No. 141.

### 4.    Defendants' Motions to Dismiss

13       The Court held a hearing on Defendant's Motion to Dismiss the SAC on March 28, 2013.

14   ECF No. 79. On July 12, 2013, this Court issued an Order granting in part and denying in part

15   Defendant's Motion to Dismiss the SAC. ECF No. 125 ("July 12 Order"). Defendant filed a

16   Motion for Leave to file a Motion for Reconsideration of that Order on July 22, 2013. ECF No.

17   128. Following a Case Management Conference on July 25, 2013, at which the parties addressed

18   Defendant's pending Motion for Leave to file a Motion for Reconsideration and stipulated to

19   allowing Defendant to file a Motion for Reconsideration limited to "(1) the Court's

20   characterization of Plaintiffs' ECJ theory, and (2) whether the doctrine of primary jurisdiction

21   should apply to preclude Plaintiffs' ECJ claims," the Court granted Defendant's Motion for Leave

22   and VACATED the July 12 Order. ECF No. 131, at 1-2. Plaintiffs thereafter filed a Motion for

23   Leave to file their own Motion for Reconsideration, ECF No. 137, which the Court denied on

24   August 14, 2013, ECF No. 144.

25       Defendant filed its Motion to Reconsider the July 12 Order on Defendant's Motion to

26   Dismiss the SAC on August 21, 2013. ECF No. 146. The Court granted the Motion for

27   Reconsideration and dismissed the SAC on September 19, 2013. ECF No. 153 ("September 19

28   Order"). However, the Court granted Plaintiffs leave to amend the pleading deficiencies with

Case No.: 12-CV-02425-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

1    respect to the Plaintiffs' UCL, FAL, and CLRA claims. September 19 Order, at 20.

2          Plaintiffs filed their TAC on October 10, 2013. ECF No. 154. Defendant moved to dismiss

3    the TAC on October 28, 2013. ECF No. 158 ("Mot."). Plaintiffs filed an opposition to this motion

4    on November 12, 2013. ECF No. 160 ("Opp'n"). In support of their Opposition, Plaintiffs have

5    filed two Statements of Recent Decision relevant to the pending Motion. ECF No. 164, 165.

6    Defendant filed a Reply on November 19, 2013. ECF No. 161 ("Reply"). In addition, Defendant

7    has filed two Statements of Recent Decision in support of its motion. ECF Nos. 162, 163.

8    **II.     LEGAL STANDARD**

9          **A.     Rule 12(b)(1)**

10          A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

11   to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter

12   jurisdiction will be granted if the Complaint on its face fails to allege facts sufficient to establish

13   subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th

14   Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the

15   pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual

16   disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560

17   (9th Cir. 1988). If the plaintiff lacks standing under Article III of the U.S. Constitution, then the

18   court lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for

19   a Better Env't*, 523 U.S. 83, 101-02 (1998). Once a party has moved to dismiss for lack of subject

20   matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the

21   court's jurisdiction, *see Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir.

22   2010), by putting forth "the manner and degree of evidence required" by whatever stage of the

23   litigation the case has reached, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also

24   Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011) (at the motion to

25   dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts

26   plausibly explaining" why the standing requirements are met).

27          **B.     Rule 8(a)**

28

**United States District Court**
For the Northern District of California

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks omitted).

### C.    Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with

1   particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor*

2   *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the

3   allegations must be "specific enough to give defendants notice of the particular misconduct which

4   is alleged to constitute the fraud charged so that they can defend against the charge and not just

5   deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

6   1985). Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific

7   content of the false representations as well as the identities of the parties to the

8   misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)

9   (internal quotation marks omitted). The plaintiff must set forth "what is false or misleading about a

10   statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)

11   (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423,

12   429 n.6 (9th Cir. 2001).

13           **D.      Leave to Amend**

14           If the court concludes that the complaint should be dismissed, it must then decide whether

15   to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

16   "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

17   15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez*

18   *v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation

19   omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay,

20   bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

21   amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

22   the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512

23   F.3d 522, 532 (9th Cir. 2008).

24   **III.      DISCUSSION**

25           Defendant seeks to dismiss Plaintiffs' TAC on a number of grounds, including lack of

26   standing; failure to allege facts showing that a "reasonable consumer" is likely to be deceived by

27   the challenged advertising; preemption; primary jurisdiction; and failure to state a claim for

28   purposes of Federal Rules of Civil Procedure 9(b). Mot. at 1-2, 18-24; Reply at 11-15. The Court

8

will not address every one of Defendant's arguments, however, because, as discussed below, the Court finds that Plaintiffs have failed to cure the deficiencies identified in the Court's September 19 Order because the TAC fails to adequately demonstrate that Plaintiffs have standing to pursue their UCL, FAL, and CLRA claims.

### A.    Standing

#### 1.    Legal Standard

##### a.    Article III Standing

A federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) ("'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'") (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling. *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Article III's standing requirements may be satisfied by allegations that a plaintiff purchased a product he otherwise would not have purchased, or spent more on such product, in reliance on the defendant's misrepresentations. *See, e.g.*, *Brazil v. Dole Food Co.*, No. 12–01831, 2013 WL 1209955, at *11-13 (N.D. Cal. Mar. 25, 2013) (holding that "Brazil suffered a concrete and particularized injury . . . [because] he allegedly was deceived, and then paid money that he would not otherwise have paid had he known about the true nature of Defendants' products"). "The party invoking federal jurisdiction bears the burden of establishing these elements. . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

#### b.    UCL, FAL, and CLRA Standing

In addition to the requirements imposed by Article III, the UCL, FAL, and CLRA all require Plaintiffs to demonstrate standing. To have standing under the FAL and the CLRA, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she

9

**United States District Court**
For the Northern District of California

1    suffered economic injury as a result. *See, e.g.*, Cal. Bus. & Prof. Code § 17535 (providing that a

2    plaintiff must have "suffered injury in fact and ha[ve] lost money or property as a result of a

3    violation of this chapter"); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010)

4    (finding plaintiff's CLRA claim failed because plaintiff failed to allege facts showing that he

5    "relied on any representation by" defendant).

6        Turning to the UCL, the UCL prohibits business practices that are unlawful, unfair, or

7    fraudulent. As this Court discussed in its September 19 Order, courts have held that, to establish

8    standing under the UCL's fraud prong, a plaintiff must demonstrate that she actually relied upon

9    the allegedly fraudulent misrepresentation. *See* September 19 Order, at 10; *In re Tobacco II Cases*,

10   46 Cal. 4th 298, 326 (2009). Courts have also extended this actual reliance requirement to claims

11   under the UCL's unlawful prong to the extent "the predicate unlawful conduct is based on

12   misrepresentations." *Durell*, 183 Cal. App. 4th at 1363. Moreover, in *Kwikset Corp. v. Superior

13   Court*, the California Supreme Court suggested that the actual reliance requirement applies

14   whenever the underlying misconduct in a UCL action is fraudulent conduct. *See* 51 Cal. 4th 310,

15   326 (2011) (holding that plaintiff was required to demonstrate actual reliance to establish standing

16   to pursue claims under the UCL's unlawful prong because his claims were "based on a fraud theory

17   involving false advertising and misrepresentations to consumers" (internal quotation marks

18   omitted)). Thus, as stated in this Court's September 19 Order, the actual reliance requirement also

19   applies to claims under the UCL's unfair prong to the extent such claims are based on fraudulent

20   conduct. *See* September 19 Order, at 11; *see also In re Actimmune Mktg. Litig.*, No. 08-2376, 2010

21   WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010) *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (holding "that

22   a plaintiff must plead 'actual reliance,' even if their [*sic*] claim arises under the unlawful or unfair

23   prongs, so long as the pleadings assert a cause of action grounded in misrepresentation or

24   deception.").[2]  In this case, because "the gravamen of Plaintiffs' claims under the UCL's unlawful,

25   unfair, and fraud prongs is that Defendant's labeling was deceptive," the Court concludes, as it did

26

27   _____

     [2] The Court also reiterates, as it held in its September 19 Order, that Plaintiffs must satisfy the

28   heightened pleading standards for fraud under Rule 9(b) with respect to each of their UCL, FAL,
     and CLRA claims. *See* September 19 Order, at 12 n.4.

Case No.: 12-CV-02425-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

1   in its September 19 Order, that "Plaintiffs must demonstrate actual reliance and economic injury."

2   September 19 Order, at 11.

3       In their Opposition, Plaintiffs ask the Court to reconsider its position that Plaintiffs must

4   demonstrate reliance in order to bring their UCL claim under the UCL's "unlawful" prong. Opp'n

5   at 7-14. Plaintiffs concede that the "Court looked unfavorabl[y] on [Plaintiffs'] theory in its order

6   on Defendant's motion to dismiss [the SAC]." Opp'n at 8. In addition to presenting the same

7   arguments Plaintiffs set forth in their opposition to the Defendant's motion to dismiss the SAC,

8   Plaintiffs cite four food labeling opinions issued since this Court's July 12 Order that have

9   concluded that a plaintiff need not demonstrate reliance to bring a claim under the UCL's

10  "unlawful" prong, but need only plead facts to show that it is plausible that the defendant broke a

11  law. *See id.* (citing *Swearingen v. Yucatan Foods, LP*, No. 13-3544, 2014 WL 553537, at *6-7

12  (N.D. Cal. Feb. 7, 2014); *Morgan v. Wallaby Yogurt Co.*, No. 13-00269, 2013 WL 5514563, at *9

13  (N.D. Cal. Oct. 4, 2013); *Gitson v. Trader Joe's Co.*, No. 13-01333, 2013 WL 5513711, at *9

14  (N.D. Cal. Oct. 4, 2013); *Trazo v. Nestlé USA, Inc.*, No. 12-2272, 2013 WL 4083218, at *9 (N.D.

15  Cal. Aug. 9, 2013)).

16      The Court addresses each of Plaintiffs' contentions in turn, and rejects the Plaintiffs'

17  request for reconsideration for the following reasons. First, Plaintiffs themselves concede in their

18  opposition that the California Supreme Court, in *Kwikset*, held that where a UCL claim brought

19  under the "unlawful prong" is premised on "misrepresentation and deception, reliance [is] a[]

20  [required] element." Opp'n at 11 n.4. Second, the Court declines to change its position in light of

21  the continued impact of Proposition 64 and *Kwikset* since the Court's September 19 ruling. *See,*

22  *e.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, No. 12–1586, 2013 WL 5777920, at *7-8 (N.D. Cal. Oct. 24,

23  2013) (citing *Kwikset* and similarly rejecting Plaintiffs' argument that a mislabeling claim can be

24  brought under the UCL's unlawfulness prong absent allegations of reliance); *Bruton v. Gerber*

25  *Prods. Co.*, No. 12–02412, 2014 WL 172111, at *6 (N.D. Cal. Jan. 15, 2014) (holding that there is

26  a reliance requirement for claims brought under the UCL's unlawful prong to the extent "the

27  predicate unlawful conduct is based on misrepresentations.") (citation omitted); *Figy v. Amy's*

28  *Kitchen*, No. 13–3816, 2013 WL 6169503, at *3-4 (N.D. Cal. Nov. 25, 2013) (same). As this Court

Case No.: 12-CV-02425-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

1   explained in its September 19 Order, "the voters enacted Proposition 64 in 2004 as a means of

2   'confin[ing] standing to those actually injured by a defendant's business practices and []

3   curtail[ing] the prior practice of filing suits on behalf of clients who have not used the defendant's

4   product or service, viewed the defendant's advertising, or had any other business dealing with the

5   defendant.'" September 19 Order, at 16-17 (quoting *Kwikset*, 51 Cal. 4th at 321). Third, Plaintiffs'

6   citations to *Morgan*, *Swearingen*, *Gitson*, and *Trazo* do not persuade the Court to change course

7   because these cases do not discuss the impact of Proposition 64 and *Kwikset* on the standing

8   requirements under the UCL, and thus do not address clear California Supreme Court authority on

9   this point. Notably, in *In re Tobacco II Cases*, the California Supreme Court cited *People v.*

10   *Cooper*, 27 Cal. 4th 38, 45 (2002) for the proposition that "[t]o determine the meaning of a statute,

11   we seek to discern the sense of its language, in full context, in light of its purpose," and thereafter

12   concluded that an actual reliance requirement exists under the UCL "in light of [the] intention

13   [behind the enactment of Proposition 64] to limit [private enforcement] actions." 46 Cal. 4th at

14   326.

15        Further, Plaintiffs' citation to *Berger v. Home Depot USA, Inc.*, No. 11–55592, 2014 WL

16   350082, at *4 (9th Cir. Feb. 3, 2014), is unavailing. ECF No. 165. Citing to *In re Tobacco II*'s

17   background discussion of pre-Proposition 64 cases, *Berger* states that alleging "the victim's

18   reliance on the false statements—[] which [is an] element[] of common-law fraud claims—[is] not

19   required to show a violation of California's UCL." 2014 WL 350082, at *4 (citing *In re Tobacco*

20   *II*, 46 Cal. 4th at 312). Plaintiffs' reliance on this statement in the instant case is erroneous,

21   however, because the parties in *Berger* were concerned with pleading requirements for *absent* class

22   members, not representative plaintiffs. *See* Appellant's Opening Brief at 2, *Berger v. Home Depot*

23   *USA, Inc.*, No. 11–55592 ("The district court does not at all discuss the leading California Supreme

24   Court opinion *In re Tobacco II Cases* . . . which holds that absent class members are never required

25   to prove reliance. Did the district court therefore apply an incorrect legal standard to Plaintiff's

26   claims . . . when it denied the motion for class certification based on a belief that class members

27   would have to establish reliance on an individual basis?"). More specifically, *In re Tobacco* stands

28   for two propositions: (1) that even after the enactment of Proposition 64, absent class members still

12

do not have to plead reliance; and (2) that Proposition 64 "imposes an actual reliance requirement on [representative] plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." 46 Cal. 4th at 324, 326. When citing *In re Tobacco*, the Ninth Circuit, in *Berger*, was referencing the traditional pleading requirements for absent class members, who are not at issue in the instant case, and was not referencing the law regarding pleading requirements for representative plaintiffs.

Finally, Plaintiffs' citations to *Medrazo v. Honda of North Hollywood*, 205 Cal. App. 4th 1 (2012), and *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 (2010), are similarly unavailing. Opp'n at 9-11. *Steroid Hormone* was decided *prior* to the California Supreme Court's decision in *Kwikset* and the alleged unlawful conduct in that case was not based on a statute prohibiting specific types of misrepresentations. *Steroid Hormone*, 181 Cal. App. 4th at 150 n.4 (alleging unlawful conduct based on a law prohibiting the sale of a schedule III controlled substance without a prescription). *Medrazo* contains no discussion of *Kwikset*'s statement that the actual reliance requirement applies to claims under the unlawful prong of the UCL where the alleged unlawful conduct is based on a statute that prohibits specific types of misrepresentations.

Accordingly, the Court declines to change its prior holding that Proposition 64, as interpreted by *Kwikset*, requires actual reliance when a claim brought under the UCL's "unlawful prong" is grounded in fraud, as in the instant case.

### 2.    Analysis of Reliance

In the Court's September 19 Order addressing Plaintiffs' SAC, the Court concluded that because Plaintiffs had failed to adequately plead the reliance element of their "ECJ" and "All Natural" Claims, Plaintiffs had failed to demonstrate that they had standing to bring those claims. *See* September 19 Order, at 14, 18. However, the Court gave Plaintiffs leave to amend to cure the pleading deficiencies identified in the Order.[3] *Id.* at 20. The Court further noted that Plaintiffs'

---

[3] In the first two versions of Plaintiffs' Complaint, Plaintiffs had alleged UCL, FAL, and CLRA claims based on "No Sugar Added" representations on Defendant's website. September 19 Order, at 15. Defendant takes issue with Plaintiffs' citations to different website representations throughout the TAC, and requests that the "No Sugar Added" claims be dismissed with prejudice. Mot. at 6-7; *see, e.g.*, TAC ¶¶ 22, 27. However, in their opposition to the instant motion to dismiss, Plaintiffs assert that the TAC no longer alleges a claim based on the "No Sugar Added"

Case No.: 12-CV-02425-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

United States District Court
For the Northern District of California

"failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice." *Id*. Defendant now argues that the TAC fails to cure these deficiencies because the TAC still fails to allege a coherent, plausible theory of reliance. Mot. at 1-9. The Court agrees. Below, the Court addresses why the TAC does not adequately allege reliance with respect to both categories of Defendant's alleged misrepresentations.

### a.   ECJ Claims

As in their Second Amended Complaint, Plaintiffs continue to allege that Defendant's use of the term "evaporated cane juice" is misleading because it conceals the fact that the ingredient is essentially white sugar or dried cane syrup. *See, e.g.*, TAC ¶¶ 29, 55, 60, 86. Plaintiffs also continue to assert they did not know ECJ was sugar, *see* TAC ¶¶ 188, 190, 192, and they instead believed the sugars present in the products "were naturally occurring sugars that were found naturally in the ingredients used by Chobani such as fruit (fructose) and milk (lactose)." TAC ¶ 85.

In their TAC, Plaintiffs also now emphasize that they would not have purchased Defendant's products had they known that the products contained sugar that was "*added* as an ingredient into Defendant's yogurt during [the products'] processing or preparation." *Id.* (emphasis in original); *id.* ¶ 188 ("Had [Plaintiff] known 'evaporated cane juice' was the same thing as added sugar or syrup, Plaintiff would not have purchased Defendant's yogurt product."). Unlike the SAC, the TAC alleges that while Plaintiffs "did not know what evaporated cane juice was at the time [they] purchased Defendant's yogurt product, because of the fact [the labels] used the term 'juice,' it sounded like something healthy." TAC ¶¶ 188, 190, 192.

Plaintiffs' TAC alleges essentially two theories of reliance with respect to Plaintiffs' ECJ claims: (1) Plaintiffs had no idea that ECJ was a sweetener, *see* TAC ¶¶ 188, 190, 192; and (2) Plaintiffs had no idea that ECJ was a sweetener but believed it was "some type of ingredient that was healthier than sugar," *see id.* ¶ 193. The Court agrees with Defendant that neither theory, as alleged in the TAC, cures the deficiencies identified in this Court's September 19 Order.

representations. *See* Opp'n at 5. Because Plaintiffs have disclaimed a theory of misrepresentation based on Chobani's "No Sugar Added" representations, the Court need not address Defendant's request.

14

The Court first addresses Plaintiffs' theory that Plaintiffs had no idea that ECJ was a sweetener. The Court rejected this theory as implausible in its September 19 Order, holding:

> [T]he SAC fails to explain how Plaintiffs could have realized that dried cane syrup was a form of sugar, but nevertheless believed that evaporated cane *juice* was not. What is more, the SAC fails to allege what Plaintiffs believed evaporated cane juice to be if not a form of sugar. Indeed, Plaintiffs do not allege that there is some other form of cane besides sugar cane. Absent *some* factual allegation concerning what Plaintiffs believed ECJ to be if not a form of sugar or a juice containing some form of sugar, Plaintiffs' allegations that they read the label, were aware that the Yogurts contained ECJ, and nevertheless concluded that the Yogurts contained "only natural sugars from milk and fruit and did not contain added sugars or syrups" is simply not plausible.

September 19 Order, at 13 (emphases in original). The Court begins its analysis by first noting that like in the SAC, Plaintiffs' allegations in the TAC continue to suggest that Plaintiffs understood that dried cane syrup was a form of sugar because Plaintiffs repeatedly refer to sugar and dried cane syrup interchangeably throughout the TAC. *See, e.g.*, TAC ¶ 26 ("[T]he ingredient section fails to list 'sugar' or 'dried can syrup' as an added ingredient"); *id.* ¶ 27 ("Chobani fails to disclose the fact that that [sic] 'evaporated can juice' is, in its ordinary and commonly understood terms, 'sugar,' and/or 'dried cane syrup'"); *id.* ¶ 75 (stating that "dried cane syrup" is an "alternative term" for sugar); *id.* ¶ 138 (describing ECJ as "a false and misleading name for another food or ingredient that has a common or usual name, namely sugar or dried cane syrup"); *id.* ¶ 139 ("ECJ is different sweetener from sugar or dried cane syrup"); *id.* ¶ 193 ("ECJ is really sugar or dried cane syrup"). Moreover, Plaintiffs Kane and Booth submitted declarations in support of their preliminary injunction motion stating that they would not have bought Defendant's products if they had known the products contained "dried cane syrup," which indicates that both Plaintiffs understood dried cane syrup was equivalent to sugar. *See* ECF Nos. 109-1, 112.

However, the TAC, like the SAC, continues to fail to explain how Plaintiffs could have realized that dried *cane* syrup was a form of sugar, but nevertheless believed that evaporated *cane* juice was not. The TAC fails to do so despite the fact that the September 19 Order explicitly put Plaintiffs on notice of this deficiency in the SAC. In other words, Plaintiffs still fail to explain what they believed evaporated cane juice to be, if *not* a form of sugar. Instead, Plaintiffs simply add the new allegation that they were "looking for 'added sugar'" and that "Plaintiffs scanned the

Case No.: 12-CV-02425-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    ingredient lists of the Chobani products for forms of added sugar and failed to recognize the term

2    'evaporated cane juice' as a form of added sugar." TAC ¶ 112; *see also* Opp'n at 2-3. While

3    Plaintiffs now cite to public health guidelines that describe the harmful properties of "added

4    sugars," *see* TAC ¶¶ 87-109, these allegations do not answer the question of what Plaintiffs

5    believed evaporated cane juice was when they purchased Defendant's products.

6          The Court notes that while Plaintiffs, in their TAC, allege that there are other less common

7    forms of cane apart from *sugar* cane, including bamboo cane and sorghum cane, TAC ¶ 128;[4] *see*

8    *also* Opp'n at 3 (noting these other forms of cane), Plaintiffs nowhere allege in their TAC that

9    Plaintiffs believed that ECJ actually referred to these other forms of cane when Plaintiffs read the

10   ingredient list on Defendant's products. Furthermore, Plaintiffs' counsel's own statements support

11   the conclusion that it is implausible that Plaintiffs believed that the term "cane" in "evaporated

12   cane juice" referred to these other less common forms of cane when Plaintiffs read the term

13   "evaporated cane juice" in the ingredient list on Defendant's products. At the July 11, 2013 hearing

14   regarding Plaintiffs' motion for a preliminary injunction, the Court asked Plaintiffs' counsel,

15   "[W]hat kind of cane is there other than sugar cane?" ECF No. 127 at 17. Plaintiffs' counsel

16   answered, "None." *Id.* The Court then asked Plaintiffs' counsel what people generally think of

17   when people read "cane juice." *Id.* Plaintiffs' counsel responded: "Well, I don't know – what they

18   are thinking of." *Id.* Plaintiffs' counsel's own admission that he was unaware of any kinds of cane

19   other than sugar cane, combined with the fact that he answered "I don't know – what [people] [are]

20   thinking of" at a hearing which occurred after Plaintiffs had already filed three complaints in this

21   case and three and a half months after the Court's March 28, 2013 hearing on Defendant's motion

22   to dismiss the SAC, further supports a finding that it is simply implausible that Plaintiffs actually

23   thought that the term "cane" in "evaporated cane juice" referred to other forms of cane when

24   Plaintiffs read the term "evaporated cane juice" on Defendant's products.

25

---

26   [4] Specifically, TAC ¶ 128 states: "The term 'cane' is not exclusively a reference to sugar or sugar
     cane. Many other types of cane exist and are used in foods, for example, bamboo cane and
27   sorghum cane, both which produce juice. . . . Corn is a form of cane. There are over 1000 species
     just of bamboo and over 10,000 members of the family of plants that includes corn and sugar
28   cane."

Case No.: 12-CV-02425-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

United States District Court
For the Northern District of California

1        Furthermore, the TAC repeatedly acknowledges that "fruit juice concentrate" is a well-

2 known added sugar. *See* TAC ¶¶ 90, 94, 96, 98, 109. This not only undermines Plaintiffs'

3 purported reliance on the word "juice" in "evaporated cane juice" as denoting something "healthy,"

4 but also renders implausible Plaintiffs' belief that Defendant's yogurt products contained no

5 "added sugars," given that Plaintiffs allege that they read the ingredient "fruit and vegetable juice

6 concentrate" on the Defendant's product labels. *See* TAC ¶¶ 187-193 (alleging that Plaintiffs read

7 Defendant's product labels); *see, e.g.*, ECF Nos. 154-2; 154-7 (displaying how Defendant's

8 product labels included the term "fruit and vegetable juice concentrate").

9        Accordingly, without further factual allegations in support of Plaintiff's theory, the Court

10 rejects Plaintiffs' reliance theory – that Plaintiffs didn't know ECJ was a sweetener and instead

11 believed the sugars present in the products were only "naturally occurring sugars" and not "added

12 sugars" – as implausible for the same reasons stated in this Court's September 19 Order. September

13 19 Order, at 13-14.

14        Before addressing Plaintiffs' second theory that Plaintiffs had no idea that ECJ was a

15 sweetener but believed it was "some type of ingredient that was healthier than sugar," TAC ¶ 193,

16 the Court notes that it appears that the TAC makes various statements, like the SAC did, *see* SAC

17 ¶¶ 62-64, concerning the allegedly healthful properties of unprocessed sugar cane by implying that

18 unlike ECJ and other refined sugars, natural sugar cane is "healthy and nutritious, containing

19 vitamins, minerals, enzymes, fibers, and phytonutrients . . ." TAC ¶ 129. Relying on these similar

20 allegations present in the SAC, the July 12 Order had concluded that even though Plaintiffs failed

21 to adequately plead reliance based on a theory that they were unaware that Defendant's yogurts

22 contained any sweeteners beyond "natural sugars from milk and fruit," Plaintiffs had nevertheless

23 adequately pleaded reliance by alleging that the term ECJ plausibly suggested to Plaintiffs that ECJ

24 was a form of sugar that is healthier than refined sugars and syrups. July Order at 11-12 (citing

25 SAC ¶¶ 62-64). However, Plaintiffs expressly disavowed this theory at the July 25, 2013 Hearing

26 on Defendant's Motion to Disqualify Plaintiffs' counsel and expert, *see* ECF No. 143, at 14:3-9,

27 and stipulated to allowing Defendant to file a Motion for Reconsideration of the Court's July 12

28 Order, *see id.* at 40:9-41:1. Because Plaintiffs' Opposition to the Motion for Reconsideration

17

similarly disavowed this theory, *see* ECF No. 147 at 4 ("Plaintiffs do not claim that Plaintiffs believed ECJ was a healthier form of sugar . . . ."), the Court concluded in the September 19 Order that the SAC failed to plead reliance based on a theory that Defendant's ECJ statements deceived Plaintiffs into thinking that ECJ was a healthier form of sugar. September 19 Order, at 14. Plaintiffs do not resurrect this theory in their opposition to the instant motion to dismiss the TAC, and in fact now expressly disavow the theory in their TAC. *See* TAC ¶ 193 ("Plaintiffs[] are not claiming that they believed ECJ was a 'healthier sugar' or 'healthier form of sugar'"). Accordingly, the Court does not address this theory as a basis to find Plaintiffs have adequately pleaded reliance.

However, instead of claiming that ECJ was a "healthier form of sugar," Plaintiffs assert that they believed ECJ was "some type of ingredient that was healthier than sugar . . ." TAC ¶ 193. Plaintiffs did not specifically allege this theory in the SAC but alleged it for the first time in Plaintiffs' opposition to Defendant's Motion to Dismiss the SAC. Plaintiffs also assert this theory in the TAC. The Court rejected this theory in the September 19 Order because, in addition to not having been specifically alleged in the SAC, Plaintiffs' theory was essentially "just a restatement" that Plaintiffs believed Defendant's yogurts contained only "natural sugars from milk and fruit" because they did not know ECJ was a sweetener — a theory that the Court had already rejected as implausible. *See* September 19 Order, at 13. The September 19 Order specifically stated:

> Although Plaintiffs' Opposition to the Motion for Reconsideration disavows the July 12 Order's "healthier than refined sugars and syrups" theory, the same Opposition simultaneously distances itself from this disavowal by claiming that the SAC adequately pleads reliance based on allegations that Plaintiffs "believed ECJ was some type of ingredient that was healthier than sugar." This argument fails. For one thing, it is just a restatement of the theory that Plaintiffs believed the Yogurts contained "only natural sugars from milk and fruit," which the Court has already concluded is not plausible. In addition, this "some type of healthier ingredient" theory of reliance does not appear in the SAC.

*Id.* at 14. In the TAC, Plaintiffs do not provide any further allegations in support of this theory that ECJ was "some type of ingredient that was healthier than sugar" other than to add the new allegation that "because of the fact [the yogurt labels] used the term 'juice', it sounded like something healthy." TAC ¶¶ 188, 190, 192. However, the TAC undermines Plaintiffs' allegation. The TAC repeatedly acknowledges that "fruit juice concentrate" is a well-known added sugar. *See*

United States District Court
For the Northern District of California

TAC ¶¶ 90, 94, 96, 98, 109. Moreover, the TAC cites various lists published by the National Institute of Health and the American Heart Association which identify "fruit *juice* concentrate" as an added sugar to watch out for. *See, e.g.*, TAC ¶¶ 96, 98 (emphasis added).

The Court is unpersuaded by Plaintiffs' new allegation, as Plaintiffs' vague reformulation of this general theory of reliance still fails to meet the heightened pleading requirement under Rule 9(b), wherein a plaintiff must allege "the who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). Again, the Court concludes that Plaintiffs' theory is essentially just a restatement that Plaintiffs believed Defendant's yogurts contained only "natural sugars from milk and fruit" because they did not know ECJ was a sweetener — a theory that the Court again rejects as implausible above.

In sum, the Court finds that the TAC's allegations concerning Plaintiffs' reliance on Defendant's ECJ statements are still insufficiently pleaded under Rules 8(a) and 9(b). Because Plaintiffs have failed to cure the pleading deficiencies identified by the Court, the Court GRANTS Defendant's motion to dismiss Plaintiffs' ECJ Claims with prejudice due to Plaintiffs' lack of standing. The Court dismisses these claims without leave to amend not only because the September 19 Order held that Plaintiffs' failure to cure the deficiencies in the SAC would result in a dismissal with prejudice, *see* September 19 Order, at 20, but also because amendment appears to be futile. *Leadsinger*, 512 F.3d at 532 (a district court may deny leave to amend due to "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment"); *Swartz v. KPMG LLP,* 476 F.3d 756, 761 (9th Cir. 2007) (futility alone can justify the denial of leave to amend). Thus far, Plaintiffs have had the opportunity to file an original complaint as well as *three* amended complaints. In addition, Plaintiffs have had multiple chances throughout this litigation to present their claims and theories at various hearings, including a preliminary injunction hearing, a hearing on Defendant's motion to dismiss the SAC, a hearing on Defendant's motion to disqualify Plaintiffs' counsel and Plaintiffs' expert, and a case management conference in which the parties addressed Defendant's Motion for Leave to File a Motion for Reconsideration of the Court's July 12 Order. The Court concludes that if Plaintiffs had a legitimate basis to set forth a plausible ECJ claim, Plaintiffs would already have articulated it in a meaningful way in one of their four

19

United States District Court
For the Northern District of California

1  complaints. This is especially true given that this Court's September 19 Order set forth precisely

2  what deficiencies Plaintiffs needed to address with respect to their ECJ claims. Accordingly, the

3  Court refuses to allow Plaintiffs essentially a fifth bite at the apple because amendment appears to

4  be futile. *Carvalho*, 629 F.3d at 892; *Ruiz v. Natl. City Bank*, 2:09CV01586JAMGGH, 2010 WL

5  1006412, at *5 (E.D. Cal. 2010) ("[D]ismissal with prejudice is appropriate given that the Plaintiff

6  has been given two chances to try to plead proper claims against this Defendant."). The Court

7  further notes that because of Plaintiffs' filing of four complaints and Defendant's filing of two

8  motions to dismiss those complaints, this litigation has been pending since Plaintiffs filed their

9  original complaint in May of 2012 and has not moved beyond the pleadings stage. The Court

10  concludes that Defendant should not be required to respond to a continually moving target, and at

11  some point, the litigation must be resolved. *See Franczak v. Suntrust Mortg., Inc.*, Case No. 5:12-

12  cv-01453 EJD, 2013 U.S. Dist. LEXIS 126977, *11-12 (N.D. Cal. Sept. 5, 2013) (denying leave to

13  amend third amended complaint and dismissing case with prejudice because allowing further

14  amendments after Plaintiff has already amended his pleading twice would unduly prejudice

15  defendant who had to continually respond to a "moving target"). This action began in May 2012 —

16  approximately one year and nine months ago — and Plaintiffs have been given multiple chances to

17  cure the deficiencies in their complaints. Given that this Court's discretion to deny leave to amend

18  is particularly broad where a complaint has already been amended, *see Cafasso, U.S. ex rel. v.*

19  *General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011), the Court dismisses

20  Plaintiff's ECJ claims with prejudice.

### b.   All Natural Claims

22       Consistent with their SAC, Plaintiffs allege that Defendant's "All Natural"

23  misrepresentations were deceptive because Defendant's products were artificially colored using

24  fruit or vegetable juice concentrate. TAC ¶¶ 140, 149, 156 (describing turmeric and "fruit and

25  vegetable juice" as artificial coloring in various flavors of Chobani Yogurt). Plaintiffs further

26  allege that Plaintiffs would not have purchased the products had Plaintiffs known Defendant's

27  products had artificial colors. TAC ¶ 163. The Court rejected these allegations as implausible in the

28  September 19 Order because the Defendant's labeling explicitly discloses that Defendant adds

Case No.: 12-CV-02425-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"fruit or vegetable juice [*for color*]," and Plaintiffs had purported to read the label, including the ingredient list. September 19 Order, at 17-18 (emphasis added). The Court reasoned that because the labels clearly disclosed the presence of fruit or vegetable juice concentrate in the yogurts for color, it is not plausible that Plaintiffs believed that the Yogurts did not contain added fruit juice for coloring purposes. *Id.* at 18.

Plaintiffs now contend that they have cured this pleading deficiency with respect to their "All Natural Claims" by "clarifying that it was not just the presence of fruit or vegetable juice for color that made the 'only natural ingredients' or 'all natural' representations unlawful and deceptive, it was also the fact that the coloring agents themselves were not natural products." Opp'n at 6. Specifically, the TAC adds the following new allegation:

> Plaintiffs allege that the fruit and vegetable juices added to the artificially colored yogurt they purchased were not merely artificial because they were "color additives" and "artificial colors" and forms of "artificial coloring" and thus artificial ingredients but also because these juices were highly processed unnatural substances far removed from the fruits or vegetables they were supposedly derived from and in fact were more akin to synthetic dyes like coal tar dyes. Representing such dyes as natural is false and misleading.

TAC ¶ 161.

The Court agrees with Defendant that this sole allegation is insufficient to plead reliance with the particularity required by Rule 8(a) and Rule 9(b). Mot. at 8 n.7. For one thing, Plaintiffs' statement that the turmeric and fruit and vegetable juice concentrate used for color in Defendant's products is more akin to "coal tar dyes" than the "fruits and vegetables they were supposedly derived from," TAC ¶ 161, is merely conclusory. Essentially, Plaintiffs, in the TAC, now allege, for the first time after having filed *three* previous complaints and after participating in multiple hearings before this Court, including a preliminary injunction hearing, a hearing on Defendant's motion to dismiss the SAC, a hearing on Defendant's motion to disqualify Plaintiffs' counsel and expert, and a case management conference in which the parties addressed Defendant's Motion for Leave to File a Motion for Reconsideration of the Court's July 12 Order, that the fruit and vegetable juice concentrate ingredient is not natural due to some undisclosed aspect of that ingredient's processing. While Plaintiffs contend in other parts of the TAC that "natural ingredients

21

are ingredients that occur naturally in nature and are not synthetic or highly processed," *see* TAC ¶ 164, Plaintiffs do not provide any other factual allegations nor provide any basis to support their claim that the color additives which Defendant uses in its yogurts are in fact "highly processed unnatural substances." Plaintiffs also provide no basis whatsoever to support their allegation that fruit and vegetable juice is somehow unnatural, nor explain with any specificity what they contend is "unnatural" about these particular ingredients. Plaintiffs simply restate in other parts of the TAC that "there was no disclosure that any of these ingredients were artificial or unnatural or synthetic." TAC ¶ 167. Furthermore, Plaintiffs fail to explain how or why Defendant's juices were in fact "far removed from the fruits or vegetables they were supposedly derived from." TAC ¶ 161.

Simply put, Plaintiffs do not allege how they thought these juices were processed, nor provide any explanation as to how Defendant "highly processed" the juices in such a way as to render them "unnatural," or how the processing fell short of Defendant's labeling representations. For these reasons, the Court concludes that Plaintiffs' allegations fail under Rule 9(b)'s heightened pleading standard, whereby a plaintiff must set forth precisely "what is false or misleading about a statement, and *why* it is false," *see In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*, (emphasis added), and must allege "the who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). *See also Pelayo v. Nestle USA Inc.*, No. 13-5213, 2013 WL 5764644, at *5 (C.D. Cal. Oct. 25, 2013) (dismissing plaintiffs' claim that defendant's "all natural" representations were misleading because defendant's ingredients were allegedly "unnatural," where plaintiff failed to plausibly allege that the ingredients were in fact unnatural). A reasonable consumer could plausibly believe that "turmeric" and "fruit and vegetable juice" are, in fact, "natural ingredients," and Plaintiffs have failed to allege facts that persuade the Court to conclude it was plausible that Plaintiffs believed otherwise. Because Plaintiffs have failed to sufficiently plead reliance with respect to their "All Natural" claims against Defendant's products, Plaintiffs have failed to demonstrate standing to bring their claims. This is because Plaintiffs must allege that they relied on Defendant's alleged misrepresentations in order to demonstrate standing under the FAL, CLRA, and the UCL. Accordingly, the Court GRANTS

22

United States District Court
For the Northern District of California

1   Defendant's motion to dismiss the Plaintiffs' "All Natural Claims" because of Plaintiffs' lack of

2   standing. As the Court found with respect to Plaintiffs' ECJ claims, the Court dismisses Plaintiffs'

3   "All Natural Claims" without leave to amend not only because the September 19 Order held that

4   Plaintiffs' failure to cure the deficiencies in the SAC would result in a dismissal with prejudice, *see*

5   September 19 Order, at 20, but also because amendment appears to be futile. *Leadsinger*, 512 F.3d

6   at 532. Again, as set forth above, Plaintiffs have already had the opportunity to file a total of four

7   complaints in this case and have had multiple hearings to present their theories and claims,

8   including a preliminary injunction hearing, a hearing on Defendant's motion to dismiss the SAC, a

9   hearing on Defendant's motion to disqualify Plaintiffs' counsel and Plaintiffs' expert, and a case

10  management conference in which the parties addressed Defendant's Motion for Leave to File a

11  Motion for Reconsideration of the Court's July 12 Order. The Court concludes that if Plaintiffs had

12  a legitimate basis to claim that Defendant's juices were "unnatural," Plaintiffs would already have

13  articulated such a plausible theory in a meaningful way in one of their first four complaints or at

14  one of the Court's various hearings. The Court thus dismisses Plaintiffs' "All Natural Claims" with

15  prejudice due to futility of amendment, and also because Defendant should not be required to

16  respond to a continually moving target. *See Franczak v. Suntrust Mortg., Inc.*, Case No. 5:12-cv-

17  01453 EJD, 2013 U.S. Dist. LEXIS 126977, *11-12 (N.D. Cal. Sept. 5, 2013) (denying leave to

18  amend third amended complaint and dismissing case with prejudice because allowing further

19  amendments after Plaintiff has already amended his pleading twice would unduly prejudice

20  defendant who had to continually respond to a "moving target"). Given that Plaintiffs have had

21  multiple chances to cure the deficiencies in their complaints since the inception of this action in

22  May 2012, the Court exercises its discretion to deny leave to amend by dismissing Plaintiffs' "All

23  Natural Claims" with prejudice.[5]

---

24  [5] The Court notes that Plaintiffs' allegations regarding reliance for the ECJ and All Natural claims
25  fail both with respect to products they purchased and products they do not alleged to have
    purchased, for the same reasons as set forth above, *see supra* Part III.A.2.a-b. *Accord*, September
26  19 Order at 18 ("Plaintiffs' allegations regarding reliance for products they did not purchase fail for
    the reasons discussed above. *Supra* Part III.A.2.a-c."). This is because Plaintiffs claim that
27  Defendant made "the same label misrepresentations" with respect to products they do not allege to
    have purchased, *see* TAC ¶ 3, and the TAC does not include any additional allegations solely with
28  respect to these unpurchased products. Thus, the Court again finds, as it did in its September 19

Case No.: 12-CV-02425-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

IV.    CONCLUSION

        For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs'

UCL, FAL, and CLRA claims with prejudice. The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: February 20, 2014



_____

LUCY H. KOH
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Order, that Plaintiffs have failed to adequately demonstrate standing with regard to products they do not allege to have purchased.

Case No.: 12-CV-02425-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT